**Nos. 23-1664, 23-1665, 23-1666, 23-1667, 23-1668, 23-1669, 23-1670, 23-1671, 23-1672, 23-1673, 23-1674, 23-1675, 23-1676, 23-1677, 23-1678, 23-1780**

# United States Court of Appeals
# for the Third Circuit

IN RE: BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,
*Debtor,*

NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH PA., *et al.,*
*Appellants,*

v.

BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, *et al.,*
*Appellees.*

Appeal from the United States District Court
for the District of Delaware (No. 22-cv-01237)

## JOINT APPENDIX VOL. 1 of 7 (A00001 – A00677)
## Part 1 of 2

Deirdre M. Richards
FINEMAN KREKSTEIN
& HARRIS PC
1300 N. King Street
Wilmington, DE 19801
(302) 538-8331

Susan N.K. Gummow
FORAN GLENNON
PALANDECH PONZI &
RUDLOFF P.C.
222 N. LaSalle St., Suite 1400
Chicago, Illinois 60601

Theodore J. Boutrous Jr.
Richard J. Doren
Blaine H. Evanson
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071
(213) 229-7000

Michael A. Rosenthal
James Hallowell
Seth M. Rokosky
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
(212) 351-4000

*Counsel for National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, and the Insurance Company of the State of Pennsylvania*

Joseph T. Baio
Christopher J. St. Jeanos
Mitchell J. Auslander
Charles Dean Cording
Patricia O. Haynes
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000

*Additional Counsel for National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, and the Insurance Company of the State of Pennsylvania*

Ronald P. Schiller
Matthew A. Hamermesh
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103
Telephone: (215) 568-6200

Kathleen M. Miller
SMITH, KATZENSTEIN &
JENKINS LLP
1000 West Street, Suite 501
P.O. Box 410
Wilmington, DE 19899
Telephone: (302) 652-8400

*Counsel for Arch Insurance Company*

Kathleen K. Kerns
POST & SCHELL, P.C.
Four Penn Center – 13th Floor
1600 John F. Kennedy Boulevard
Philadelphia, PA 19103
Phone: (215) 587-1000

George R. Calhoun
IFRAH PLLC
1717 Pennsylvania Ave., N.W.
Suite 650
Washington, DC 20006
Phone: (202) 840-8758

*Counsel for Argonaut Insurance Company and Colony Insurance Company*

Michael J. Joyce
JOYCE, LLC
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:  (302) 388-1944

Kevin Coughlin
Lorraine Armenti
Michael Hrinewski
COUGHLIN MIDLIGE &
GARLAND, LLP
350 Mount Kemble Avenue, PO
Box 1917
Morristown, NJ 07962
Telephone:  (973) 267-0058

John M. Flynn
Britton C. Lewis
CARRUTHERS & ROTH, P.A.
235 N. Edgeworth Street
P.O. Box 540
Greensboro, NC  27401
Telephone:  (336) 478-1146

*Counsel for Arrowood
Indemnity Company*

William H. White Jr.
KIERNAN TREBACH LLP
1233 20th Street, NW, 8th Floor
Washington, DC 20036
Telephone: (202) 712-7000

John E.W. Baay II
GIEGER LABORDE &
LAPEROUOSE, LLC
701 Poydras Street
Suite 4800

Maria Aprile Sawczuk, Esq.
GOLDSTEIN & MCCLINTOCK
LLLP
501 Silverside Road, Suite 65
Wilmington, DE 19809
Telephone: (302) 444-6710

Laura McNally, Esq.
LOEB & LOEB LLP
321 N. Clark Street, Suite 2300
Chicago, IL 60654
312-464-3155

David Christian, Esq.
DAVID CHRISTIAN ATTORNEYS
LLC
105 W. Madison St., Suite 1400
Chicago, Illinois 60602
Telephone: (312) 282-5282

*Counsel for Continental Insurance
Company and Columbia Casualty
Company*

Kathleen M. Miller
SMITH, KATZENSTEIN &
JENKINS LLP
1000 West Street, Suite 501
P.O. Box 410
Wilmington, DE 19899
Telephone: (302) 652-8400

Mary E. Borja
Gary P. Seligman
Ashley L. Criss
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036

New Orleans, LA 70139
Telephone: (504) 561-0400

*Counsel for Appellant
Gemini Insurance Company*

Konrad R. Krebs
CLYDE & CO US LLP
340 Mt. Kemble Ave, Suite 300
Morristown, New Jersey 07960
Telephone: (973) 210-6705

Alexander E. Potente
CLYDE & CO US LLP
150 California Street
15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

David Christian
DAVID CHRISTIAN ATTORNEYS
LLC
105 W. Madison St., Suite 1400
Chicago, Illinois 60602
Telephone: (312) 282-5282

Bruce W. McCullough
BODELL BOVE, LLC
1225 N. King St., Suite 1000
Wilmington, DE 19801-3250
Telephone: (302) 655-6749

*Counsel for Great American
Assurance Company f/k/a
Agricultural Insurance Company,
Great American E&S Insurance
Company f/k/a Agricultural Excess
and Surplus Insurance Company,*

Phone: (202) 719-7000

*Attorneys for General Star
Indemnity Company*

Kathleen M. Miller
SMITH, KATZENSTEIN &
JENKINS LLP
1000 West Street, Suite 501
P.O. Box 410
Wilmington, DE 19899
Telephone: (302) 652-8400

Lloyd A. Gura
Pamela J. Minetto
MOUND COTTON WOLLAN &
GREENGRASS LLP
One New York Plaza 44th Floor
New York, NY 10004
Telephone: (212) 804-4282

*Attorneys for Indian Harbor
Insurance Company, on behalf of
itself and as successor in interest to
Catlin Specialty Insurance
Company*

*and Great American E&S Insurance Company*

Douglas R. Gooding
Jonathan D. Marshall
Bryana T. McGillycuddy
CHOATE, HALL & STEWART
LLP
Two International Place
Boston, MA 02110
Telephone: (617) 248-5000

Kim V. Marrkand
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO PC
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000

R. Karl Hill
SEITZ, VAN OGTROP & GREEN,
P.A.
222 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 888-0600

*Counsel to Liberty Mutual Insurance Company, The Ohio Casualty Insurance Company, Liberty Insurance Underwriters, Inc., and Liberty Surplus Insurance Corporation*

Stephen M. Miller
Carl N. Kunz, III
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801

Marla S. Benedek
COZEN O'CONNOR
1201 N. Market Street, Suite 1001
Wilmington, DE 19801
Telephone:  (302) 295-2024

*Counsel for Traders and Pacific Insurance Company, Endurance American Specialty Insurance Company, and Endurance American Insurance Company*

Louis J. Rizzo, Jr., Esquire
REGER RIZZO & DARNALL LLP
1521 Concord Pike
Brandywine Plaza West Suite 305
Wilmington DE  19803
Telephone: (302) 477-7100

*Counsel for Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company), St. Paul Surplus Lines Insurance Company and Gulf Insurance Company ("Travelers")*

Telephone: (302) 888-6800

*Counsel for Old Republic
Insurance Company*

LOIZIDES, P.A.
Christopher D. Loizides (No. 3968)
1225 North King Street, Suite 800
Telephone: (302) 654-0248
Loizides@loizides.com

LUJAN & WOLFF LLP
Delia Lujan Wolff
Suite 300, DNA Bldg.
238 Archbishop Flores St.
Hagatna, Guam 96910

Telephone: (671) 477-8064/5
dslwolff@lawguam.com

*Counsel for the Lujan Claimants*

GELLERT SCALI BUSENKELL &
BROWN LLC
Charles J. Brown, III (No. 3368)
1201 N. Orange St., 3rd Floor
Wilmington, DE 19801
Telephone: (302) 425-5813
cbrown@gsbblaw.com

DUMAS & VAUGHN, LLC
Gilion C. Dumas
3835 NE Hancock Street, Suite
GLB
Portland, OR 97212
Telephone: (503) 616-5007
gilion@dumasandvaughn.com

*Counsel for the Dumas & Vaughn
Claimants*

# JOINT APPENDIX
## TABLE OF CONTENTS

| VOLUME 1 – Opinions, Orders, and Notices of Appeal | | | |
|---|---|---|---|
| ITEM | D.I. NO. | DESCRIPTION | APPENDIX PAGE |
| 1. | | D. Del. Docket Sheet (No. 22-1237 RGA) | A00001 – A00041 |
| 2. | D.I. 150 | Opinion of the Honorable Richard G. Andrews, filed 3/28/2023 | A00042 – A00196 |
| 3. | D.I. 151 | Order of the Honorable Richard G. Andrews, filed 3/28/2023 | A00197 |
| 4. | D.I. 177 | Notice of Appeal by Lujan Claimants | A00198 – A00220 |
| 5. | D.I. 178 | Notice of Appeal by Liberty Insurance Underwriters Inc., et al. | A00221 – A00239 |
| 6. | D.I. 179 | Notice of Appeal by D&V Claimants | A00240 – A00260 |
| 7. | D.I. 180 | Notice of Appeal by Columbia Casualty Co., et al. | A00261 – A00278 |
| 8. | D.I. 181 | Notice of Appeal by Landmark Insurance Company, et al. | A00279 – A00297 |
| 9. | D.I. 182 | Notice of Appeal by Indian Harbor Insurance Company | A00298 – A00318 |
| 10. | D.I. 183 | Notice of Appeal by Old Republic Insurance Company | A00319 – A00334 |
| 11. | D.I. 184 | Notice of Appeal by Travelers Casualty and Surety Company, Inc. | A00335 – A00352 |
| 12. | D.I. 185 | Notice of Appeal by Great American Assurance Company, et al. | A00353 – A00371 |
| 13. | D.I. 186 | Notice of Appeal by Allianz Global Risks US Insurance Co., et al. | A00372 – A00390 |
| 14. | D.I. 187 | Notice of Appeal by Argonaut Insurance Company, et al. | A00391 – A00409 |
| 15. | D.I. 188 | Notice of Appeal by Gemini Insurance Company | A00410 – A00430 |
| 16. | D.I. 189 | Notice of Appeal by General Star Indemnity Company | A00431 – A00451 |
| 17. | D.I. 190 | Notice of Appeal by Arrowood Indemnity Company | A00452 – A00469 |
| 18. | D.I. 191 | Notice of Appeal by Endurance American Insurance Co., et al. | A00470 – A00488 |
| 19. | D.I. 210 | Notice of Appeal by Arch Insurance Company | A00489 – A00506 |
| 20. | Bankr. D.I. 10136 | Opinion of the Honorable Laurie Selber Silverstein, filed 7/29/2022 | A00507 – A00787 |
| 21. | Bankr. D.I. 10316 | Supplemental Findings of Fact and Conclusions of Law and Order Confirming the Third Modified Fifth Amended Chapter 11 Plan of | A00788 – A01354 |

| | | Reorganization (with Technical Modifications), filed 9/8/2022 (with D.I. 10296) | |
|---|---|---|---|

| VOLUME 2 – Trial Testimony | | | |
|---|---|---|---|
| **ITEM** | **D.I. NO.** | **DESCRIPTION** | **APPENDIX PAGE** |
| 22. | D.I. 9341 | Transcript regarding Hearing Held 3/14/2022 RE: Confirmation (Day 1), filed 3/15/2022 | A01355 – A01622 |
| 23. | D.I. 9354 | Transcript regarding Hearing Held 3/15/2022 RE: Confirmation (Day 2), filed 3/16/2022 | A01623 – A01855 |
| 24. | D.I. 9389 | Transcript regarding Hearing Held 3/16/2022 RE: Confirmation (Day 3), filed 3/18/2022 | A01856 – A02118 |
| 25. | D.I. 9406 | Transcript regarding Hearing Held 3/17/2022 RE: Confirmation (Day 4), filed 3/21/2022 | A02119 – A02434 |
| 26. | D.I. 9407 | Transcript regarding Hearing Held 3/18/2022 RE: Confirmation (Day 5), filed 3/21/2022 | A02435 – A02631 |
| 27. | D.I. 9454 | Transcript regarding Hearing Held 3/21/2022 RE: Confirmation (Day 6), filed 3/23/2022 | A02632 – A02904 |
| 28. | D.I. 9455 | Transcript regarding Hearing Held 3/22/2022 RE: Confirmation (Day 7), filed 3/23/2022 | A02905 – A03128 |
| 29. | D.I. 9482 | Transcript regarding Hearing Held 3/23/2022 RE: Confirmation (Day 8), filed 3/25/2022 | A03129 – A03351 |
| 30. | D.I. 9490 | Transcript regarding Hearing Held 3/24/2022 RE: Confirmation (Day 9), filed 3/25/2022 | A03352 –A03619 |
| 31. | D.I. 9497 | Transcript regarding Hearing Held 3/25/2022 RE: Confirmation (Day 10), filed 3/28/2022 | A03620 – A03738 |
| 32. | DI. 9517 | Transcript regarding Hearing Held 3/28/2022 RE: Confirmation (Day 11), filed 3/30/2022 | A03739 – A03971 |
| 33. | D.I. 9530 | Transcript regarding Hearing Held 3/29/2022 RE: Confirmation (Day 12), filed 3/31/2022 | A03972 – A04226 |
| 34. | D.I. 9562 | Transcript regarding Hearing Held 3/30/2022 RE: Confirmation (Day 13), filed 4/4/2022 | A04227 – A04470 |
| 35. | D.I. 9563 | Transcript regarding Hearing Held 3/31/2022 RE: Confirmation (Day 14), filed 4/4/2022 | A04471 – A04766 |
| 36. | D.I. 9564 | Transcript regarding Hearing Held 4/1/2022 RE: Confirmation (Day 15), filed 4/4/2022 | A04767 – A04849 |
| 37. | D.I. 9578 | Transcript regarding Hearing Held 4/4/2022 RE: Confirmation (Day 16), filed 4/5/2022 | A04850 – A04899 |
| 38. | D.I. 9616 | Transcript regarding Hearing Held 4/6/2022 RE: Confirmation (Day 17), filed 4/8/2022 | A04900 – A05162 |
| 39. | D.I. 9638 | Transcript regarding Hearing Held 4/7/2022 RE: Confirmation (Day 18), filed 4/13/2022 | A05163 – A05418 |
| 40. | D.I. 9639 | Transcript regarding Hearing Held 4/11/2022 RE: Confirmation (Day 19), filed 4/13/2022 | A05419 – A05726 |
| 41. | D.I. 9646 | Transcript regarding Hearing Held 4/12/2022 RE: Confirmation (Day 20), filed 4/14/2022 | A05727 – A06041 |

| 42. | D.I. 9648 | Transcript regarding Hearing Held 4/13/2022 RE: Confirmation (Day 21), filed 4/14/2022 | A06042 – A06234 |
| 43. | D.I. 9656 | Transcript regarding Hearing Held 4/14/2022 RE: Confirmation (Day 22), filed 4/18/2022 | A06235 – A06443 |
| 44. | D.I. 9273 | Declaration of Bruce Griggs, filed 3/10/2022 | A06444 – A06465 |
| 45. | D.I. 9274 | Declaration of Michael Burnett, filed 3/10/2022 | A06466 – A06510 |
| 46. | D.I. 9279 | Declaration of Devang Desai, filed 3/11/2022 | A06511 – A06542 |
| 47. | D.I. 9280 | Declaration of Brian Whittman, filed 3/11/2022 | A06543 – A06671 |
| 48. | D.I. 9309 | Declaration of Adrian Azer, filed 3/12/2022 | A06672 – A06699 |
| 49. | D.I. 9316 | Declaration of William S. Sugden, filed 3/14/2022 | A06700 – A06744 |
| 50. | D.I. 9317 | Declaration of Makeda Murray, filed 3/14/2022 | A06745 – A06786 |
| 51. | D.I. 9388 | Declaration of Charles E. Bates, filed 3/17/2022 | A06787 – A06798 |
| 52. | D.I. 9395 | Declaration of James L. Patton, Jr., filed 3/19/2022 | A06799 – A06829 |
| 53. | D.I. 9396 | Declaration of Aaron Lundberg, filed 3/19/2022 | A06830 – A06862 |
| 54. | D.I. 9397 | Declaration of Catherine Nownes-Whitaker, filed 3/19/2022 | A06863 – A06870 |
| 55. | D.I. 9398 | Declaration of Nancy Gutzler, filed 3/19/2022 | A06871 – A06912 |
| 56. | D.I. 9400 | Declaration of Jessica Horewitz, filed 3/19/2022 | A06913 – A06936 |
| 57. | D.I. 9401 | Declaration of Paul Rytting, filed 3/19/2022 [Excerpt] | A06937 – A06948 |
| 58. | D.I. 9449 | Declaration of Paul Rytting, filed 3/23/2022 [Excerpt] | A06949 – A06960 |
| 59. | D.I. 9481 | Declaration of Jason P. Amala, filed 3/24/2022 | A06961 – A07001 |

| VOLUME 3 – Bankruptcy Court | | | |
| --- | --- | --- | --- |
| ITEM | D.I. NO. | DESCRIPTION | APPENDIX PAGE |
| 60. | D.I. 1 | Voluntary Petition for Non-Individuals Filing for Bankruptcy, filed 2/18/2020 | A07002 – A07018 |
| 61. | D.I. 4 | Debtor's Informational Brief [Excerpt] | A07019 – A07028 |
| 62. | D.I. 16 | Brian Whittman Declaration | A07029 – A07132 |
| 63. | D.I. 17 | Motion to Appoint Judicial Mediator | A07133 – A07150 |
| 64. | D.I. 118 | Debtors-Appellees' Appendix to Consolidated Answering Brief: Volume 6 (SA 3685 Through SA 3821) [Excerpt] | A07151 – A07202 |
| 65. | D.I. 141 | Appointment of UCC | A07203 |
| 66. | D.I. 142 | Appointment of TCC | A07204 |
| 67. | D.I. 147 | National Surety's Motion (I) for Relief from the Automatic Stay or, in the Alternative, (II) to Extend the Stay | A07205 – A07354 |
| 68. | D.I. 211 | Limited Objection of Creditors and Parties in Interest to National Surety Corporation's Motion | A07354 – A07380 |
| 69. | D.I. 230 | Certification of Counsel Regarding National Surety Corporation's Motion | A07381 – A07393 |

| 70. | D.I. 236 | Agreed Order Granting in Part National Surety Corporation's Motion | A07394 – A07396 |
|---|---|---|---|
| 71. | D.I. 486 | Appointment of FCR | A07397 – A07399 |
| 72. | D.I. 557 | Supplement to Debtors' Bar Date Motion | A07400 – A07506 |
| 73. | D.I. 695 | Order Setting Proof of Claim Deadline | A07507 – A07569 |
| 74. | D.I. 812 | Order Appointing Mediators | A07570 – A07594 |
| 75. | D.I. 1145 | Motion to Supplement Bar Date [Excerpt] | A07595 – A07620 |
| 76. | D.I. 2292 | First Mediator's Report | A07621 – A07632 |
| 77. | D.I. 2294 | Proposed Disclosure Statement [Excerpt] | A07633 – A07634 |
| 78. | D.I. 2407 | Transcript of Telephonic Omnibus Hearing (3/17/2021) | A07635 – A07698 |
| 79. | D.I. 2592 | Second Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [Excerpt] | A07699 – A07711 |
| 80. | D.I. 2594 | Initial Disclosure Statement | A07712 – A07940 |
| 81. | D.I. 2624 | Second Mediator's Report | A07941 – A07984 |
| 82. | D.I. 3154 | Objections to Disclosure Statement filed by D & V Claimants | A07985 – A08017 |
| 83. | D.I. 3271 | Great American's Objection to Debtors' Disclosure Statement for Second Amended Chapter 11 Plan | A08018 – A08029 |
| 84. | D.I. 3285 | Argonaut Insurance Company's Objection to Debtors' Disclosure Statement | A08030 – A08034 |
| 85. | D.I. 3523 | The AIG Companies' Objection to Motion for Approval of Debtors' Disclosure Statement | A08035 – A08078 |
| 86. | D.I. 3526 | Objections to Disclosure Statement filed by TCC | A08079 – A08188 |
| 87. | D.I. 3578 | Objection of Liberty Mutual Insurance Company to the Disclosure Statement | A08189 – A08196 |
| 88. | D.I. 3581 | US Trustee's Objections to Disclosure Statement | A08197 – A08216 |
| 89. | D.I. 3949 (admitted as JTX 2669) | Declaration of Nathanial Marshall | A08217 – A08224 |
| 90. | D.I. 4108 | Proposed Amendments to Disclosure Statement | A08225 – A08581 |
| 91. | D.I. 4716 | Transcript regarding Hearing Held 5/19/2021 Re: Disclosure Statement | A08582 – A08848 |
| 92. | D.I. 5219 | Third Mediator's Report | A08849 – A08850 |
| 93. | D.I. 5284 | Fourth Mediator's Report | A08851 – A08852 |

| 94. | D.I. 5287 | Fifth Mediator's Report | A08853 – A08854 |
|---|---|---|---|
| 95. | D.I. 5368 | Third Amended Plan [Excerpt] | A08855 – A08862 |
| 96. | D.I. 5372 | Notice of Filing of Redlines of Third Amended Plan and Proposed Amendments to Disclosure Statement [Excerpt] | A08862 – A08867 |
| 97. | D.I. 5466 | Debtors' Motion For Entry Of An Order, Pursuant To Sections 363(b) And 105(a) Of The Bankruptcy Code, (I) Authorizing The Debtors To Enter Into And Perform Under The Restructuring Support Agreement, And (II) Granting Related Relief | A08868 – A09017 |
| 98. | D.I. 5484 | Fourth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [Excerpt] | A09018 – A09027 |
| 99. | D.I. 6030 | Supplemental Objection to Disclosure Statement filed by D & V Claimants | A09028 – A09044 |
| 100. | D.I. 6052 | Certain Insurers' Supplemental Objection to Motion for Approval of Debtors' Disclosure Statement | A09045 – A09128 |
| 101. | D.I. 6210 | Sixth Mediator's Report | A09129 – A09172 |
| 102. | D.I. 6249 | Debtors' Omnibus Reply in Support of Debtors' Motion for Entry of an Order Approving Disclosure Statement | A09173 – A09390 |
| 103. | D.I. 6416 | Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [Excerpt] | A09391 – A09392 |
| 104. | D.I. 6431 | Amended Disclosure Statement | A09393 – A09830 |
| 105. | D.I. 7398 | November 19, 2021 Hearing Transcript | A09831 – A10060 |
| 106. | D.I. 7745 | Seventh Mediator's Report | A10061 – A10098 |
| 107. | D.I. 7761 | Affidavit of Publication | A10099 – A10118 |
| 108. | D.I. 7772 | Notice of Seventh Mediator's Report | A10119 – A10148 |
| 109. | D.I. 7884 | Eighth Mediator's Report | A10149 – A10176 |
| 110. | D.I. 7924, 7924-1 | Verified Statement of Lujan & Wolff LLP Pursuant to Bankruptcy Rule 2019 [Redacted] | A10177 – A10189 |
| 111. | D.I. 7928 | Ninth Mediator's Report | A10190 – A10216 |
| 112. | D.I. 7929 | Notice of Eighth and Ninth Mediator's Report | A10217 – A10277 |

| 113. | D.I. 7999 | Affidavit of Service of Solicitation Package [Excerpt] | A10278 – A10284 |
|---|---|---|---|
| 114. | D.I. 8056 | Declaration re: Supplemental Notice of Voting Deadline | A10285 – A10307 |
| 115. | D.I. 8095 | Tenth Mediator's Report | A10308 – A10337 |
| 116. | D.I. 8102 | Notice of Tenth Mediator's Report | A10338 – A10371 |
| 117. | D.I. 8190 | The Official Committee of Tort Claimants' Status Report Re: Second Modified Fifth Amended Chapter 11 Plan of Reorganization | A10372 – A10402 |
| 118. | D.I. 8234 | Debtors' Response to the Official Committee of Tort Claimants' Status Report | A10403 – A10515 |
| 119. | D.I. 8378 | Affidavit of Supplemental Service of Solicitation Package [Excerpt] | A10516 – A10518 |
| 120. | D.I. 8647 | Notice of Third Amended Plan Supplement | A10519 – A10588 |
| 121. | D.I. 8687 | Joinder of Archbishop of Agana RCAHC's Plan Objection | A10589 – A10591 |
| 122. | D.I. 8692 | Limited Plan Objection of Claimant IG | A10592 – A10595 |
| 123. | D.I. 8699 | Old Republic Insurance Company's Plan Objection | A10596 – A10663 |
| 124. | D.I. 8708 | Lujan Claimants' Objection to Second Modified Fifth Amended Chapter 11 Plan | A10664 – A10710 |
| 125. | D.I. 8710 | United States Trustee's Objection to Confirmation | A10711 – A10768 |
| 126. | D.I. 8744 | Objections to Confirmation filed by D & V Claimants | A10769 – A10783 |
| 127. | D.I. 8763 | Joinder and Objection of Liberty Mutual Insurance Company to the Second Modified Fifth Amended Chapter 11 Plan of Reorganization | A10784 – A10930 |
| 128. | D.I. 8772 | Eleventh Mediator's Report | A10931 – A10979 |
| 129. | D.I. 8778 | Allianz Insurer's Objection to Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC and Request for Relief From the Plan Discharge and Injunction Provisions | A10980 – A11009 |
| 130. | D.I. 8811 | Unsealed Joint FCR and Coalition Motion for Entry of an Order Striking Portions of Bates Reports and Precluding Testimony Related to Improper Valuation Opinion | A11010 – A11180 |
| 131. | D.I. 8812 | Unsealed Version of the Limited Objection of the Tort Claimants' Committee to Findings Related to the Valuation of Abuse Claims | A11181 – A11193 |

| 132. | D.I. 8813 | Third Modified Fifth Amended Chapter 11 Plan of Reorganization [Excerpt] | A11194 – A11210 |
|---|---|---|---|
| 133. | D.I. 8816-1 | Plan Exhibit – Hartford Settlement Agreement | A11211 – A11327 |
| 134. | D.I. 8819 | Transcript (Feb. 11, 2022) | A11328 – A11451 |
| 135. | D.I. 8858 | Amended Proposed Redacted Versions of Certain Insurers' Objection to Confirmation of Debtors' Chapter 11 Plan [Excerpt] | A11452 – A11564 |
| 136. | D.I. 8886 | Affidavit of Service of Third Modified Fifth Amended Plan [Excerpt] | A11565 – A11566 |
| 137. | D.I. 8904 | Supplemental Disclosure Regarding Plan Modifications and Summary of Chartered Organizations' Options under the Debtors' Modified Chapter 11 Plan of Reorganization, Opt-Out Election Procedures for Participating Chartered Organizations, and Supplemental Voting Deadline of March 7, 2022 at 4:00 p.m. (Eastern Time) for Holders of Class 9 Indirect Abuse Claims | A11567 – A11579 |
| 138. | D.I. 8905 | Notice of Supplemental Voting Deadline of March 7, 2022 at 4:00 p.m. (Eastern Time) for Holders of Class 8 Direct Abuse Claims and Limited Disclosure Regarding Changes in Debtors' Chapter 11 Plan of Reorganization | A11580 – A11586 |
| 139. | D.I. 8907 | Plan Exhibits – Chubb, Zurich, Clarendon, and Methodist Settlement Agreements | A11587 – A11926 |
| 140. | D.I. 8921 | Affidavit of Service of Third Modified Plan Documents [Excerpt] | A11926 |
| 141. | D.I. 9017 | Supplemental Objections to Confirmation filed by D & V Claimants | A11927 – A11929 |
| 142. | D.I. 9031 | Lujan Claimants' Supplemental Objection to Third Modified Fifth Amended Chapter 11 Plan, and Joinder in Objections of United States Trustee and Guam Committee | A11930 – A11944 |
| 143. | D.I. 9033 | Certain Insurers' Supplemental Plan Objection | A11945 – A12125 |
| 144. | D.I. 9074 | Affidavit of Service of Supplemental Voting and Disclosure [Excerpt] | A12126 – A12127 |

| 145. | D.I. 9177-1 | Certain Insurers' Opposition to Valuation of Abuse Claims | A12128 – A12165 |
|---|---|---|---|
| 146. | D.I. 9213 | Affidavit of Service of Supplemental Voting Deadline [Excerpt] | A12166 – A12167 |
| 147. | D.I. 9275 | Final Vote Tabulation [Excerpt] | A12168 – A12170 |
| 148. | D.I. 9305, 9305-1 | Revised Summary Voting Report | A12171 – A12194 |
| 149. | D.I. 9386 | Twelfth Mediator's Report | A12195 – A12221 |
| 150. | D.I. 9387 | Notice of Twelfth Mediator's Report | A12222 – A12252 |
| 151. | D.I. 9442 | Affidavit of Service of Twelfth Mediator's Report | A12253 – A12272 |
| 152. | D.I. 9498 | Affidavit of Service of Notice of Twelfth Mediator's Report | A12273 – A12729 |
| 153. | D.I. 9555 | Notice of Continuing Objection of Archbishop of Agana | A12730 – A12732 |
| 154. | D.I. 9591 | Exhibit Stipulation with Lujan Claimants re Admissibility | A12733 – A12740 |
| 155. | D.I. 9655 | Letter Brief filed by BSA | A12741 – A12747 |
| 156. | D.I. 9689 | Statement Regarding Closing Argument of Liberty Mutual Insurance Company in Support of its Joinder and Objection to the Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC | A12748 – A12764 |
| 157. | D.I. 9690 | Letter from Claimants Regarding Liberty Mutual's Objection | A12765 – A12774 |
| 158. | D.I. 9696 | Revised Third Modified Fifth Amended Plan [Excerpt] | A12775 – A12776 |
| 159. | D.I. 9710 | Letter Brief filed by D & V Claimants | A12777 – A12784 |
| 160. | D.I. 9746 | Certain Insurers' Letter Response | A12785 – A12789 |
| 161. | D.I. 10178 | Corrected Thirteenth Mediator's Report | A12790 – A12796 |
| 162. | D.I. 10188 | Debtors' Motion to Amend and Supplement Findings of Fact and Conclusions of Law in Confirmation Opinion | A12797 – A12900 |
| 163. | D.I. 10190 | Blackline of Conformed Plan | A12901 – A13230 |
| 164. | D.I. 10195 | Notice of 7052 Motion | A13231 – A13233 |
| 165. | D.I. 10215 | Status Conference Transcript (Aug. 18, 2022) | A13234 – A13249 |
| 166. | D.I. 10246 | Lujan Claimants' Objection to 7052 Motion | A13250 – A13254 |
| 167. | D.I. 10247 | Certain Insurers' Objection to Motion to Amend and Supplement the Findings of Fact and | A13255 – A13299 |

| | | Conclusions of Law in the Confirmation Opinion and Objection to Confirmation of Revised Chapter 11 Plan | |
|---|---|---|---|
| 168. | D.I. 10258 | Debtors' Omnibus Reply in Support of Debtors Motion to Amend and Supplement Findings of Fact and Conclusions of Law | A13300 – A13325 |
| 169. | D.I. 10259 | Joint Reply of Tort Claimants' Committee, Coalition of Abused Scouts for Justice, Pfau Cochran Vertetis Amala PLLC and Zalkin Law Firm, PC. and the Future Claimants Representative to Certain Insurers' Objection | A13326 – A13368 |
| 170. | D.I. 10288 | Transcript Regarding Hearing Held 9/1/2022 | A13369 – A13484 |
| 171. | D.I. 10304 | Letter from The Hon. Judge Silverstein re: Language for Paragraph 51(b) | A13485 – A13486 |
| 172. | D.I. 10310 | Certification of Counsel Regarding Confirmation Order | A13487 – A14057 |
| 173. | D.I. 10317 | Transcript Regarding Hearing Held 9/7/2022 | A14058 – A14128 |
| 174. | D.I. 10327 | Order Releasing Century/Chubb Claims | A14129 – A14131 |
| 175. | D.I. 10378 | Notice of Appeal filed by National Union Fire Insurance Company of Pittsburgh, PA, *et al.* [Excerpt] | A14132 – A14158 |
| 176. | D.I. 10379 | Notice of Appeal filed by Travelers Casualty and Surety Company, Inc., *et al.* [Excerpt] | A14159 – A14190 |
| 177. | D.I. 10382 | Notice of Appeal filed by Continental Insurance Company, *et al.* [Excerpt] | A14191 – A14216 |
| 178. | D.I. 10384 | Notice of Appeal filed by Allianz Global Risks US Insurance Company, *et al.* [Excerpt] | A14217 – A14243 |
| 179. | D.I. 10386 | Notice of Appeal filed by Argonaut [Excerpt] | A14244 – A14277 |
| 180. | D.I. 10388 | Notice of Appeal filed by Arrowood Indemnity Company [Excerpt] | A14278 – A14310 |
| 181. | D.I. 10391 | Notice of Appeal filed by Liberty Mutual Insurance Company, *et al.* [Excerpt] | A14311 – A14344 |
| 182. | D.I. 10392 | Notice of Appeal filed by Old Republic Insurance Company [Excerpt] | A14345 – A14378 |
| 183. | D.I. 10393 | Notice of Appeal filed by General Star Indemnity Company [Excerpt] | A14379 – A14415 |
| 184. | D.I. 10396 | Notice of Appeal filed by Indian Harbor Insurance Company [Excerpt] | A14416 – A14452 |
| 185. | D.I. 10398 | Notice of Appeal filed by Munich Reinsurance Company America, Inc. [Excerpt] | A14453 – A14486 |
| 186. | D.I. 10401 | Notice of Appeal filed by Arch Insurance Company [Excerpt] | A14487 – A14522 |
| 187. | D.I. 10403 | Notice of Appeal filed by Great American Assurance Company, *et al.* [Excerpt] | A14523 – A14555 |
| 188. | D.I. 10405 | Notice of Appeal filed by Gemini Insurance Company [Excerpt] | A14556 – A14588 |

| 189. | D.I. 10407 | Notice of Appeal filed by Traders and Pacific Insurance Company, *et al.* [Excerpt] | A14589 – A14622 |
|---|---|---|---|
| 190. | D.I. 10412 | Notice of Appeal filed by D & V Claimants [Excerpt] | A14623 – A14654 |
| 191. | D.I. 10454 | Notice of Appeal filed by Lujan Claimants [Excerpt] | A14655 – A14689 |
| 192. | D.I. 10540 | Stipulation of Dismissal of Archbishop of Agana Appeal | A14690 – A14691 |
| 193. | D.I. 10640 | Order Approving Stipulation Among the BSA, AOA Debtor, and AOA Committee | A14692 – A14712 |
| 194. | Adv. D.I. 54 in 20-50527 | Injunction Order Staying All State Lawsuits | A14713 – A14812 |

| VOLUME 4 – District Court | | | |
|---|---|---|---|
| **ITEM** | **D.I. NO.** | **DESCRIPTION** | **APPENDIX PAGE** |
| 195. | D.I. 22 | Order Granting Motion on Stipulation Regarding Appeals | A14813 – A14843 |
| 196. | D.I. 40 | Brief of Appellants Lujan Claimants | A14844 – A14932 |
| 197. | D.I. 41 | Opening Brief of D&V Claimants | A14933 – A15029 |
| 198. | D.I. 43 | Opening Brief of Liberty Insurance Underwriters Inc., Liberty Mutual Insurance Company, Liberty Surplus Insurance Corporation | A15030 – A15083 |
| 199. | D.I. 45 | Opening Brief of Certain Insurers | A15084 – A15210 |
| 200. | D.I. 66 | Debtors-Appellees' Consolidated Answering Brief | A15211 – A15500 |
| 201. | D.I. 81 | Future Claimants' Representative Answering Brief and Joinder | A15501 – A15582 |
| 202. | D.I. 86 | Answering Brief of Settling Insurers | A15583 – A15660 |
| 203. | D.I. 88 | Compendium of Unreported Decisions Cited in Answering Brief of Future Claimants' Representative | A15661 – A17739 |
| 204. | D.I. 89 | Answering Brief of Coalition of Abused Scouts for Justice, Pfau Cochran Vertetis Amala PLLC, The Zalkin Law Firm, P.C., Tort Claimants' Committee | A17740 – A17810 |
| 205. | D.I. 96 | Appendix to Debtors-Appellees' Answering Brief, Volume 2 | A17811 – A18698 |
| 206. | D.I. 97 | Appendix to Debtors-Appellees' Answering Brief, Volume 3 | A18699 – A19514 |
| 207. | D.I. 106 | Order Approving Stipulation Regarding Designation of Certain Items to be Included in the Record on Appeal Pursuant to Federal Rule of | A19515 – A19535 |

| | | Bankruptcy Procedure 8009, filed 12/14/2022 | |
|---|---|---|---|
| 208. | D.I. 109 | Reply Brief by Certain Insurers | A19536 – A19639 |
| 209. | D.I. 110 | Reply Brief of D&V Claimants | A19640 – A19672 |
| 210. | D.I. 113 | Reply Brief of Appellants Lujan Claimants | A19673 – A19718 |
| 211. | D.I. 130 | Letter to Hon. Richard G. Andrews Regarding Third Circuit Decision | A19719 – A19779 |
| 212. | D.I. 131 | Letter to Hon. Richard G. Andrews Regarding Third Circuit Decision | A19780 – A19781 |
| 213. | D.I. 144 | Transcript of Oral Argument held on 2/9/23 | A19782 – A19952 |
| 214. | D.I. 145 | Transcript of Oral Argument held on 2/10/23 | A19953 – A20117 |
| 215. | D.I. 152 | Emergency Motion for Stay | A20118 – A20146 |
| 216. | D.I. 153 | Affidavit of Deirdre M. Richards | A20147 – A20170 |
| 217. | D.I. 154 | D&V Claimants' Emergency Motion for Stay | A20171 – A20189 |
| 218. | D.I. 156 | Emergency Motion of Lujan Claimants for Stay Pending Appeal | A20190 – A20204 |
| 219. | D.I. 162 | Oral Order | A20205 |
| 220. | D.I. 164 | Response to Emergency Motion | A20206 – A20233 |
| 221. | D.I. 165 | Declaration of Brian Whittman | A20234 – A20251 |
| 222. | D.I. 166 | Declaration of Stephen Ehmann | A20252 – A20253 |
| 223. | D.I. 167 | Declaration of David Stern | A20254 – A20257 |
| 224. | D.I. 168 | Declaration of Evan Smola | A20258 – A20262 |
| 225. | D.I. 169 | Declaration of Irwin Zalkin | A20263 – A20267 |
| 226. | D.I. 170 | Declaration of Peter Janci | A20268 – A20272 |
| 227. | D.I. 171 | Declaration of Patrick Stoneking | A20273 – A20277 |
| 228. | D.I. 172 | Declaration of Paul Mones | A20278 – A20281 |
| 229. | D.I. 173 | Declaration of Jordan Merson | A20282 – A20286 |
| 230. | D.I. 174 | Reply to Emergency Motion | A20287 – A20302 |
| 231. | D.I. 175 | Reply in Support of D&V Claimants' Emergency Motion for Stay | A20303 – A20308 |
| 232. | D.I. 176 | Lujan Claimants' Reply to Appellees' Omnibus Joint Opposition to Motions for Stay Pending Appeal | A20309 – A20319 |
| 233. | D.I. 193 | Memorandum Order | A20320 – A20335 |

| ITEM | JTX NO. | DESCRIPTION | APPENDIX PAGE |
|---|---|---|---|
| **VOLUME 5 – Exhibits** | | | |
| 234. | | Deposition Designations of Mark Kolman, admitted 2/11/2022 [Excerpt] | A20336 – A20339 |
| 235. | | Designated Deposition Transcript of Jesse Lopez [Excerpt] | A20340 – A20397 |
| 236. | JTX 1-14 | Declaration of Shannon R. Wheatman, Ph.D in Support of Procedures for Providing Direct Notice and Supplemental Notice Plan to Provide Notice of Bar Date to Abuse Survivors [D.I. 556] | A20398 – A20459 |
| 237. | JTX 1-159 | Debtors' Motion for Entry of an Order, Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code, (I) Authorizing the Debtors to Enter into and Perform under the Restructuring Support Agreement, and (II) Granting Related Relief, filed 7/1/2021 [D.I. 5466] [Excerpt] | A20460 – A20464 |
| 238. | JTX 1-191 | List of Current Members of the NEC (Exhibit B to Desai Declaration) | A20465 – A20468 |
| 239. | JTX 1-192 | List of Current Members of the NEB (Exhibit E to Desai Declaration) | A20469 – A20471 |
| 240. | JTX 1-278 | Joinder and Supplemental Objection of Liberty Mutual Insurance Company to the Disclosure Statement for the Fourth Amended Chapter 11 Plan of Reorganization [D.I. 6057], admitted 3/24/2022 | A20472 – A20493 |
| 241. | JTX 1-296 | Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [D.I. 6445], admitted 3/15/2022 | A20494 – A20934- |
| 242. | JTX 1-352 | Exhibit 1:  Hartford Insurance Settlement Agreement, filed 2/15/2022 [D.I. 8816-1] | A20935 – A21051 |
| 243. | JTX 1-401 | Debtors' Motion for Entry of an Order (I) Supplementing the Bar Date Order and (II) Granting Related Relief [D.I. 1145], plus Declarations | A21052 – A2199 |
| 244. | JTX 1-409 | Supplemental Order to Bar Date Order [D.I. 1331], admitted 3/29/2022 | A21200 – A21210 |
| 245. | JTX 2-5 | The BSA's Opening Brief in Support of Motion for a Preliminary Injunction Pursuant to Sections 105(a) and 362 of the Bankruptcy Code [Adv. Proc. D.I. 7] – Adversary Proc. # 20-50527 | A21211 – A21265 |
| 246. | JTX 7-2 | Examples and Templates of Local Council | A21266 – A21530 |

12

| | | Articles & Bylaws | |
|---|---|---|---|
| 247. | JTX 7-3 | Local Council Charter Renewals [Excerpt] | A21531 – A21534 |
| 248. | JTX 10 | BSA and Local Council Insurance Policies | A21535 – A21558 |
| 249. | JTX 10-1 | Lexington Insurance Company Policy 3583189, admission stipulated 4/20/2022 | A21559 – A21579 |
| 250. | JTX 10-02 | Lexington Insurance Company Policy 501134, admission stipulated 4/20/2022 | A21580 – A21605 |
| 251. | JTX 10-05 | Lexington Insurance Company Policy 8667104, admission stipulated 4/20/2022 | A21606 – A21625 |
| 252. | JTX 10-6 | National Union Policy 9607508, admission stipulated 4/20/2022 | A21626 – A21647 |
| 253. | JTX 10-7 | Allianz 1980 Umbrella Policy No. UMB 599346, admission stipulated 4/20/2022 | A21648 – A21691 |
| 254. | JTX 10-11 | Agricultural Excess & Surplus Company Policy ELD 3211225, admission stipulated 4/20/2022 | A21692 – A21736 |
| 255. | JTX 10-12 | Liberty Mutual – Agreement for Guarantee of Deductible Reimbursement, admission stipulated 4/20/2022 | A21737 – A21740 |
| 256. | JTX 10-13 | Liberty Mutual – TB1-191-409751-126, admission stipulated 4/20/2022 | A21741 – A22108 |
| 257. | JTX 10-14 | Liberty Mutual – TH1-191-409751-118, admission stipulated 4/20/2022 | A22109 – A22166 |
| 258. | JTX 10-24 | Interstate Fire & Casualty Co. Policy No. XUO 1102274, admission stipulated 4/20/2022 | A22167 – A22206 |
| 259. | JTX 10-30 | National Surety Policy No. XXK 67679605, admission stipulated 4/20/2022 | A22207 – A22227 |
| 260. | JTX 10-36 | Old Republic General Liability Policy, admission stipulated 4/20/2022 | A22228 – A23049 |
| 261. | JTX 10-37 | Old Republic Excess Liability Policy, admission stipulated 4/20/2022 | A23050 – A23079 |
| 262. | JTX 10-39 | St. Paul Surplus, LCO-5518254_93, admission stipulated 4/20/2022 | A23080 – A23105 |
| 263. | JTX-14A | Certain Insurers' Compilation of Proof of Claim Forms, admitted 3/30/2022 | A23106 – A23118 |
| 264. | JTX-14B | Certain Insurers' Compilation of Proof of Claim Forms, admitted 3/30/2022 | A23119 – A23133 |
| 265. | JTX-14C | Certain Insurers' Compilation of Proof of Claim Forms, admitted 3/30/2022 | A23134 – A23146 |
| 266. | JTX 17 | Troop Roster for Troop 172 (Patriots Path Council) (Redacted) | A23147 – A23156 |
| 267. | JTX 23 | Troop Roster for Sanford Troop 37 (Abraham Lincoln Council) (Redacted) | A23157 – A23158 |
| 268. | JTX 43 | Troop Roster for Pack C-3210 (Cape Fear Council) (Redacted) | A23159 – A23162 |
| 269. | JTX 147 | Form of Local Council Bylaws | A23163 – A23202 |

| 270. | JTX 162 | Illinois Complaint filed by National Surety | A23203 – A23218 |
|---|---|---|---|
| 271. | JTX 181 | Texas Complaint against Hartford | A23219 – A23231 |
| 272. | JTX 185 | Texas Complaint against Century, National Surety and Allianz | A23232 – A23253 |
| 273. | JTX 187 | 2010 Articles of Incorporation Template (Mobile Area Council Articles of Incorporation, Art. II. Duration) | A23254 – A23257 |
| 274. | JTX 234 | BSA Bylaws (June 1, 2019) | A23258 – A23283 |
| 275. | JTX-264 | 2020 Chartering Agreement | A23284 – A23285 |
| 276. | JTX 291 | Rules and Regulations of the Boy Scouts of America (September 2020) | A23286 – A23309 |
| 277. | JTX-358 | 2021 Chartering Agreement | A23310 – A23311 |
| 278. | JTX-375 | Email from Coalition regarding Term Sheet sent to Debtors, admitted 3/17/2022 | A23312 – A23313 |
| 279. | JTX-376 | Attachment to email: BSA Term Sheet, February 2, 2021, admitted 3/17/2022 | A23314 – A23323 |
| 280. | JTX-379 | Letter from James Ruggeri to Jessica Lauria, Michael Andolina, Ernest Martin and Adrian Azer, admitted 3/16/2022 | A23324 – A23329 |
| 281. | JTX-380 | Email from Hartford regarding BSA sent to Debtors, admitted 3/17/2022 | A23330 |
| 282. | JTX-445 | Attachment to email: DRAFT BSA TDP–04.10 (MCA Update).DOCX | A23331 – A23356 |
| 283. | JTX 468 | BSA Charter and Bylaws (as amended through May 2021) | A23357 – A23384 |
| 284. | JTX 502 | Attachment to email: Change-Pro Redline of Claims Allowance Procedures | A23385 – A23414 |
| 285. | JTX-505 | Email from Debtors regarding BSA – Claims Allowance Procedures sent to Coalition, FCR, and Mediator | A23415 |
| 286. | JTX-507 | Attachment to email: Comparison of CAP–Coalition Draft 05.26 and BSA-Claims Allowance Procedures-v10.pdf, admitted 3/17/2022 | A23416 – A23437 |
| 287. | JTX-517 | Email from Coalition regarding BSA Claims Allowance Procedures sent to Debtors and Others, admitted 3/17/2022 | A23438 |
| 288. | JTX-518 | Attachment to email: Change-Pro Redline–BSA–Claims Allowance Procedures and Claims Allowance Procedures 05312021.pdf, admitted 3/17/2022 | A23439 – A23462 |
| 289. | JTX 527 | Attachment to email: Claims Allowance Procedures | A23463 – A23482 |
| 290. | JTX 529 | Email from Debtors regarding BSA - Preliminary Comments on Draft CAP sent to Coalition, FCR, and Mediator | A23483 |

| 291. | JTX 533 | Attachment to email: BSA Redline of Claims Allowance Procedures (comparing June 8, 2021 version to June 6, 2021 version) | A23484 – A23532 |
|------|---------|---|---|
| 292. | JTX 537 | Attachment to email: Change-Pro Redline of Claims Allowance Procedures (comparing version 3 and version 4) | A23533 – A23553 |
| 293. | JTX 539 | Attachment to email: Change-Pro Redline of Claims Allowance Procedures (comparing version 3 and version 1) | A23554 – A23577 |
| 294. | JTX-572 | Letter from Ernest Martin/Haynes Boone to BSA Insurers re: Settlement Offer with the Coalition, TCC, and FCR, admitted 3/17/2022 | A23578 – A23580 |
| 295. | JTX-659 | Email from Debtors to Insurers Regarding BSA – Response to Certain Insurers Request for Comments, admitted 3/17/2022 | A23581 – A23586 |
| 296. | JTX 725 | Email from Jeff Hunt to Wendy Kurten, et al. | A23587 – A23591 |
| 297. | JTX-797 | 2013 Resolution | A23592 – A23593 |
| 298. | JTX 1154 | Hartford Pine Tree Council Casualty Insurance Policy No. 04C157992 | A23594 – A23628 |
| 299. | JTX 1155 | Hartford Fire Insurance Co. Policy No. 12CCP500098 | A23629 – A23684 |
| 300. | JTX-1684 | February 24, 2021 Bates White Presentation, "Preliminary Valuation of Proof of Claim Records" (Andrews Exhibit 9) | A23685 – A23718 |
| 301. | JTX-1810 | Debtors' Responses and Objections to Propounding Insurers' First Set of Requests for Admissions (Griggs Exhibit 11), admitted 3/15/2022 | A23719 – A23735 |
| 302. | JTX-1926 | Philmont NEC Retreat Debrief (Desai Exhibit 19), admitted 3/14/2022 | A23736 – A23752 |
| 303. | JTX-2237 | July 14, 2021 Email from Jason Amala re: FW: BSA–"RSA" and latest BSA proposal, admitted 3/31/2022 | A23753 – A23761 |
| 304. | JTX-2646 | Debtors' Responses and Objections to Lujan Claimants' First Set of Requests for Admission to Boys Scouts of America and Delaware BSA, LLC, dated 10/18/2021 | A23762 – A23776 |
| 305. | JTX-2664 | Local Council/Chartered Organization Final Voting Report Data based on Final Voting Report filed January 17, 2022, posted on or about February 21, 2022, on the Omni Agent Solutions website for these consolidated bankruptcy cases, including any amendments or updates to reflect changes in the final vote as a result of the Limited Extended Voting Deadline [Excerpt] | A23777 – A23783 |

| 306. | JTX-2909 | Debtors' (i) Memorandum of Law in Support of Confirmation of Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC and (ii) Omnibus Reply to Plan Confirmation Objections [D.I. 9114], admitted 3/15/2022 | A23784 – A24207 |
|------|----------|----------------------------------------------------------------|------------------|
| 307. | JTX 2910 | Verified Complaint for Damages and Equitable Relief: *Plaintiff v. Roman Catholic Archbishop, et al.* (Superior Court of Guam, No. CV 0207-17) | A24208 – A24219 |
| 308. | JTX 2911 | Plaintiff John Doe 4's First Amended Complaint: John Doe 4 v. Boy Scouts of America, Chicago Area Council, et al. (Circuit Court of Cook County, Illinois, No. 2018 L 211) | A24220 – A24285 |
| 309. | JTX 2912 | Third Amended Complaint: *John Does I-XIX v. Boy Scouts of America, Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints, et al.* (District Court for the District of Idaho, No. 1:13-cv-00275-BLW) | A24286 – A24344 |
| 310. | JTX 2913 | Complaint: *John Doe v. Boy Scouts of America; and Central Minnesota Council, Boy Scouts of America* (State of Minnesota County of Stearns, District Court, Seventh Judicial District, No. []) | A24345 – A24369 |
| 311. | JTX 2914 | Complaint Fraud and Constructive Fraud: *John Doe XX, et al. v. Boy Scouts of America, Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints, et al.* (District Court for the District of Idaho) | A24370 – A24393 |
| 312. | JTX 2916 | Redacted Second Revised Complaint: *John Doe #1, et al. v. Boy Scouts of America Corporation, Fairfield County Council of the Boy Scouts of America, et al.* (Superior Court, Connecticut, J.D. of Stamford/Norwalk at Stamford, No. FST-cv-15-5015023-S) | A24394 – A24469 |
| 313. | JTX 2920 | Trial by Jury Demand: *Plaintiffs v. Boy Scouts of America Corporation, Mobile Area Council Boy Scouts of America, et al.* (Circuit Court of Mobile County, Alabama, No. CV-2016) | A24470 – A24499 |
| 314. | JTX 2921 | Notice of Removal: *A.A. v. the Boy Scouts of America, North Florida Council, Inc., Boy Scouts of America, et al.* (District Court for the Middle of District of Florida Ocala Division) [Excerpt] | A24500 – A24574 |
| 315. | JTX 2947 | Sexual Abuse Survivor Proof of Claim | A24575 – A24668 |
| 316. | JTX-2960 | Coverage Charts for BSA Insurance Policies | A24669 – A24673 |

| | | 1976-2020, admitted 3/24/2022 | |
|---|---|---|---|
| 317. | JTX 2961 | Settled and Unsettled Local Council Policy Information (Excel Format) | A24674 |
| 318. | JTX 2976 | Local Council Charter Renewal for Greenwich NR A2 (January 15, 2020) | A24675 |
| 319. | JTX-3005 | Email from E. Goodman to M. Andolina re: restructuring, dated April 2021, and attachments, admitted 3/14/2022 | A24676 – A24728 |
| 320. | JTX-3007 | TCC status reports with additional attachments, including Bates Rebuttal Report, admitted 3/14/2022 | A24729 – A24841 |
| 321. | JTX-3018 | June 30, 2021 email from E. Martin to T. Jacobs, admitted 3/17/2022 | A24842 – A24846 |
| 322. | JTX-3061 | Statement of the Coalition of Abused Scouts for Justice and FCR in Support of Confirmation of Modified Fifth Amended Chapter 11 Plan of Reorganization for BSA and Delaware BSA [D.I. 9190], admitted 4/4/2022 | A24847 – A24985 |
| 323. | JTX-3070 | Allianz's Answer to National Surety Corporation's Complaint for Declaratory Relief and Counterclaim in JTX-202 Action, admitted 4/4/2022 | A24986 – A25024 |
| 324. | JTX 4000-1 | INA Policy No. 15-12-11 | A25024 – A25075 |
| 325. | JTX 4000-2 | INA Policy No. 70-64-52 | A25076 – A25111 |
| 326. | JTX 4000-4 | INA Policy No. 07-54-09-4 | A25112 – A25194 |
| 327. | JTX 4000-6 | INA Policy No. 4-84-03 | A25195 – A25218 |
| 328. | JTX 4000-8 | Hartford Insurance Policy No. 10 C A43303 | A25219 – A25362 |
| 329. | JTX 4000-9 | Hartford Insurance Policy | A25363 – A25601 |
| 330. | JTX 4000-10 | Hartford Insurance Policy | A25602 – A25982 |
| 331. | JTX 4000-11 | Hartford Insurance Policy No. CBP 109170 | A25983 – A26055 |
| 332. | JTX 4000-12 | Hartford Insurance Policy No. 54 C 990478 | A26056 – A26084 |
| 333. | JTX 4000-13 | Hartford Insurance Policy No. 32 HU 380257 | A26085 – A26095 |

| VOLUME 6 – Miscellaneous | | | |
|---|---|---|---|
| ITEM | JTX NO. | DESCRIPTION | APPENDIX PAGE |
| 334. | JTX 14 | Proof of Claim No. 639 | A26096 – A26110 |
| 335. | JTX 14 | Proof of Claim No. 1248 | A26111 – A26113 |
| 336. | JTX 14 | Proof of Claim No. 4971 | A26114 – A26128 |
| 337. | JTX 14 | Proof of Claim No. 5113 | A26129 – A26132 |
| 338. | JTX 14 | Proof of Claim No. 6346 | A26133 – A26137 |
| 339. | JTX 14 | Proof of Claim No. 8174 | A26138 – A26147 |
| 340. | JTX 14 | Proof of Claim No. 8281 | A26148 – A26159 |
| 341. | JTX 14 | Proof of Claim No. 9123 | A26160 – A26169 |
| 342. | JTX 14 | Proof of Claim No. 9430 | A26170 – A26173 |
| 343. | JTX 14 | Proof of Claim No. 9511 | A26174 – A26177 |
| 344. | JTX 14 | Proof of Claim No. 9558 | A26178 – A26180 |
| 345. | JTX 14 | Proof of Claim No. 10390 | A26181 – A26185 |
| 346. | JTX 14 | Proof of Claim No. 12203 | A26186 – A26193 |
| 347. | JTX 14 | Proof of Claim No. 12530 | A26194 – A26209 |
| 348. | JTX 14 | Proof of Claim No. 343-13 | A26210 – A26212 |
| 349. | JTX 14 | Proof of Claim No. 343-26 | A26213 – A26215 |

| VOLUME 7 - Sealed | | | |
|---|---|---|---|
| ITEM | JTX NO. | DESCRIPTION | APPENDIX PAGE |
| 350. | JTX-1003 | Historic Settlement Spreadsheet | A26216 – A26218 |
| 351. | JTX 14-1670 | Lujan Claimant Proof of Claim | A26219 – A26243 |
| 352. | JTX 14-2433 | Lujan Claimant Proof of Claim | A26244 – A26277 |
| 353. | JTX 14-2885 | Lujan Claimant Proof of Claim | A26278 – A26326 |
| 354. | JTX 14-14993 | D & V Claimant Proof of Claim | A26327 – A26371 |
| 355. | JTX 14-17941 | D & V Claimant Proof of Claim | A26372 – A26449 |
| 356. | JTX 14-40890 | Lujan Claimant Proof of Claim | A26450 – A26507 |
| 357. | JTX 14-44159 | D & V Claimant Proof of Claim | A26508 – A26615 |
| 358. | JTX 14-44934 | D & V Claimant Proof of Claim | A26616 – A26735 |
| 359. | JTX 14-47925 | D & V Claimant Proof of Claim | A26736 – A26850 |
| 360. | JTX 14-48168 | Lujan Claimant Proof of Claim | A26851 – A26928 |
| 361. | JTX 14-58317 | Lujan Claimant Proof of Claim | A26929 – A26984 |
| 362. | JTX 14-67286 | Lujan Claimant Proof of Claim | A26985 – A27084 |
| 363. | JTX 14-73585 | Lujan Claimant Proof of Claim | A27085 – A27102 |

CLOSED,APPEAL,LEAD,Multi−Media Docs

# U.S. District Court
## District of Delaware (Wilmington)
## CIVIL DOCKET FOR CASE #: 1:22−cv−01237−RGA

National Union Fire Insurance Co. of Pittsburgh PA et al. v. Boy Scouts of America & Delaware BSA LLC
Assigned to: Judge Richard G. Andrews
Related Case: 1:22−cv−01121−RGA
Case in other court:  USBK/DE, 20−10343 (LSS)
                      USBK/DE BAP, 22−00052
                      Third Circuit, 23−01664
                      Third Circuit, 23−01665
                      Third Circuit, 23−01666
                      Third Circuit, 23−01667
                      Third Circuit, 23−01668
                      Third Circuit, 23−01669
                      Third Circuit, 23−01670
                      Third Circuit, 23−01671
                      Third Circuit, 23−01672
                      Third Circuit, 23−01673
                      Third Circuit, 23−01674
                      Third Circuit, 23−01675
                      Third Circuit, 23−01676
                      Third Circuit, 23−01677
                      Third Circuit, 23−01678
                      Third Circuit, 23−01780
Cause: 28:0158 Bankruptcy Appeal from Judgment/Order

Date Filed: 09/22/2022
Date Terminated: 03/28/2023
Jury Demand: None
Nature of Suit: 422 Bankruptcy Appeal (801)
Jurisdiction: Federal Question

**Debtor**

| | | |
|---|---|---|
| **Boy Scouts of America and Delaware BSA, LLC** | represented by | **Sophie Rogers Churchill**<br>Morris Nichols Arsht Tunnell LLP<br>1201 N. Market St.<br>Ste 16th Floor<br>Wilmington, DE 19801<br>302−351−9173<br>Email: srchurchill@morrisnichols.com<br>*ATTORNEY TO BE NOTICED* |
| | | **Tori Lynn Remington**<br>Morris, Nichols, Arsht & Tunnell, LLP<br>1201 N. Market Street<br>16th Floor<br>Wilmington, DE 19801<br>302−351−9168<br>Email: tori.remington@troutman.com<br>*ATTORNEY TO BE NOTICED* |

**Appellant**

| | | |
|---|---|---|
| **National Union Fire Insurance Co. of Pittsburgh PA et al.** | represented by | **Deirdre Marie Richards**<br>Fineman Krekstein & Harris PC<br>1300 North King Street<br>Wilmington, DE 19801<br>302−538−8331<br>Email: drichards@finemanlawfirm.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amanda George**
Email: ageorge@gibsondunn.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Blaine H. Evanson**
Email: bevanson@gibsondunn.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James Hallowell**
Email: jhallowell@gibsondunn.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Keith R. Martorana**
Email: kmartorana@gibsondunn.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael Rosenthal**
Email: mrosenthal@gibsondunn.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mitchell A. Karlan**
Email: mkarlan@gibsondunn.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Richard J. Doren**
Email: RDoren@gibsondunn.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Seth M. Rokosky**
Email: srokosky@gibsondunn.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Susan N.K. Gummow**
Email: sgummow@fgppr.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Theodore J. Boutrous , Jr.**
Email: TBoutrous@gibsondunn.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Appellant**

**Lexington Insurance Company**                    represented by    **Deirdre Marie Richards**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amanda George**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Blaine H. Evanson**
(See above for address)
*PRO HAC VICE*

A00002

*ATTORNEY TO BE NOTICED*

**James Hallowell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Keith R. Martorana**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael Rosenthal**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mitchell A. Karlan**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Richard J. Doren**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Seth M. Rokosky**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Susan N.K. Gummow**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Theodore J. Boutrous , Jr.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Appellant**

**Landmark Insurance Company**          represented by **Deirdre Marie Richards**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amanda George**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Blaine H. Evanson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James Hallowell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Keith R. Martorana**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael Rosenthal**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mitchell A. Karlan**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Richard J. Doren**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Seth M. Rokosky**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Susan N.K. Gummow**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Theodore J. Boutrous , Jr.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Appellant**

**The Insurance Company of the State of Pennsylvania**    represented by **Deirdre Marie Richards**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amanda George**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Blaine H. Evanson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James Hallowell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Keith R. Martorana**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael Rosenthal**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

A00004

**Mitchell A. Karlan**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Richard J. Doren**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Seth M. Rokosky**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Susan N.K. Gummow**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Theodore J. Boutrous , Jr.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Appellant**

**Travelers Casualty and Surety Company, Inc.**

represented by **Louis J. Rizzo , Jr.**
Reger Rizzo & Darnall LLP
1521 Concord Pike
Brandywine Plaza West
Suite 305
Wilmington, DE 19803
302–477–7100
Fax: 302–652–3620
Email: lrizzo@regerlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Deirdre Marie Richards**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellant**

**St. Paul Surplus Lines Insurance Company**

represented by **Louis J. Rizzo , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Deirdre Marie Richards**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellant**

**Gulf Insurance Company**

represented by **Louis J. Rizzo , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Deirdre Marie Richards**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellant**

**Old Republic Insurance Company**                represented by    **Carl N. Kunz , III**
Morris James LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899–2306
(302) 888–6811
Email: ckunz@morrisjames.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah Michelle Ennis**
Morris James LLP
500 Delaware Avenue
Suite 1500
Wilmington, DE 19899–2306
302–888–6809
Fax: 302–571–1750
Email: sennis@morrisjames.com
*TERMINATED: 12/21/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen M. Miller**
Morris James LLP
500 Delaware Avenue
Suite 1500
Wilmington, DE 19899–2306
(302) 888–6800
Email: smiller@morrisjames.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Deirdre Marie Richards**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellant**

**General Star Indemnity Company**                represented by    **Ashley L. Criss**
Email: acriss@wiley.law
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gary P. Seligman**
Email: gseligman@wiley.law
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kathleen M. Miller**
Smith, Katzenstein, & Jenkins LLP
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652–8400
Email: kmiller@skjlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mary E. Borja**
Email: mborja@wiley.law
*LEAD ATTORNEY*
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Deirdre Marie Richards**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellant**

**Indian Harbor Insurance Company**             represented by    **Gura A. Lloyd**
Email: lgura@moundcotton.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kathleen M. Miller**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Pamela J. Minetto**
Email: pminetto@moundcotton.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Deirdre Marie Richards**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellant**

**Munich Reinsurance America, Inc.**             represented by    **Thaddeus James Weaver**
Dilworth Paxson LLP
One Customs House–Suite 500
704 King Street, P.O. Box 1031
Wilmington, DE 19801
(302) 571–8867
Fax: (302) 571–8875
Email: tweaver@dilworthlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Deirdre Marie Richards**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William E. McGrath**
Email: wmcgrath@dilworthlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Appellant**

**Arch Insurance Company**             represented by    **Kathleen M. Miller**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew A. Hamermesh**
Email: mhamermesh@hangley.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ronald P. Schiller**
Email: rschiller@hangley.com

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Deirdre Marie Richards**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellant**

**Gemini Insurance Company**                represented by    **Brian A. Sullivan**
Werb & Sullivan
300 Delaware Avenue, 10th Floor
P.O. Box 25046
Wilmington, DE 19899
302–652–1100
Email: bsullivan@werbsullivan.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Deirdre Marie Richards**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John E.W Baay , II**
Email: jbaay@glllaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William H. White , Jr.**
Email: wwhite@kiernantrebach.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Appellant**

**D & V Claimants**                represented by    **Charles J. Brown , III**
Gellert Scali Busenkell & Brown, LLC
1201 N. Orange Street
Suite 300
Wilmington, DE 19801
(302) 425–5813
Fax: (302) 425–5814
Email: cbrown@gsbblaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gilion C. Dumas**
Email: gilion@dumasandvaughn.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Appellant**

**Arrowood Indemnity Company**                represented by    **Michael Joseph Joyce**
Law Office of Joyce LLC
1225 King Street, Suite 800
Wilmington, DE 19801
(302) 388–1944
Email: mjoyce@mjlawoffices.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Deirdre Marie Richards**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Appellant**

| | | |
|---|---|---|
| **The Lujan Claimants**<br>*Tort Claimants* | represented by | **Christopher D. Loizides**<br>Loizides & Associates<br>Legal Arts Building<br>1225 King Street, Suite 800<br>Wilmington, DE 19801<br>(302) 654–0248<br>Email: loizides@loizides.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Delia L. Wolff**
Email: dslwolff@lawguam.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Appellant**

| | | |
|---|---|---|
| **Allianz Global Risks US Insurance Company** | represented by | **David M. Fournier**<br>Troutman Pepper Hamilton Sanders LLP<br>1313 Market Street<br>Ste 5100<br>Wilmington, DE 19899<br>302–777–6587<br>Fax: 302–421–8390<br>Email: david.fournier@troutman.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Marcy J. McLaughlin**
Troutman Pepper Hamilton Sanders LLP
Hercules Plaza
1313 Market Street
P.O. Box 1709, Suite 5100
Wilmington, DE 19899–1709
302–777–6500
Fax: 302–421–8390
Email: Marcy.Smith@troutman.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Deirdre Marie Richards**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellant**

| | | |
|---|---|---|
| **National Surety Corporation** | represented by | **David M. Fournier**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Marcy J. McLaughlin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Deirdre Marie Richards**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellant**

**Liberty Mutual Insurance Company**    represented by    **Robert Karl Hill**
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, DE 19899
(302) 888–0600
Email: khill@svglaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Deirdre Marie Richards**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Douglas R. Gooding**
Email: dgooding@choate.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan D. Marshall**
Email: jmarshall@choate.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kim V. Marrkand**
Email: kvmarrkand@mintz.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Appellant**

**The Ohio Casualty Insurance Company**    represented by    **Robert Karl Hill**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Deirdre Marie Richards**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Douglas R. Gooding**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan D. Marshall**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kim V. Marrkand**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Appellant**

**Liberty Insurance Underwriters Inc.**    represented by    **Robert Karl Hill**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Deirdre Marie Richards**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Douglas R. Gooding**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan D. Marshall**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kim V. Marrkand**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>**Appellant**</u>

**Liberty Surplus Insurance**          represented by    **Robert Karl Hill**
**Corporation**                                          (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Deirdre Marie Richards**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Douglas R. Gooding**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan D. Marshall**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kim V. Marrkand**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>**Appellant**</u>

**Argonaut Insurance Company**         represented by    **Paul A. Logan**
                                                         Post & Schell, P.C.
                                                         300 Delaware Avenue, Suite 1380
                                                         Wilmington, DE 19801
                                                         (302) 251–8856
                                                         Fax: (302) 251–8857
                                                         Email: plogan@postschell.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Deirdre Marie Richards**
(See above for address)
*ATTORNEY TO BE NOTICED*

**George R. Calhoun**
Email: george@ifrahlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kathleen K. Kerns**
Email: kkerns@postschell.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**<u>Appellant</u>**

**Colony Insurance Company**                represented by    **George R. Calhoun**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Kathleen K. Kerns**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Paul A. Logan**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Deirdre Marie Richards**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**<u>Appellant</u>**

**Great American Assurance Company**        represented by    **Bruce D. Celebrezze**
                                                            Email: bruce.celebrezze@clydeco.us
                                                            *LEAD ATTORNEY*
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Bruce W. McCullough**
                                                            Bodell Bove', LLC
                                                            1225 N. King St., Suite 1000
                                                            Wilmington, DE 19801–3250
                                                            302–655–6749
                                                            Fax: 302–655–6827
                                                            Email: bmccullough@bodellbove.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Konrad R. Krebs**
                                                            Email: konrad.krebs@clydeco.us
                                                            *LEAD ATTORNEY*
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Deirdre Marie Richards**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**<u>Appellant</u>**

**Great American E&S Insurance**            represented by    **Bruce D. Celebrezze**
**Company**                                                  (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Bruce W. McCullough**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Konrad R. Krebs**

A00012

(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Deirdre Marie Richards**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellant**

**The Continental Insurance Co.**          represented by  **Laura K. McNally**
Email: lmcnally@loeb.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Maria Aprile Sawczuk**
Goldstein & McClintock LLLP
501 Silverside Road
Suite 65
Wilmington, DE 19809
302–444–6710
Fax: 302–444–6709
Email: marias@restructuringshop.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Deirdre Marie Richards**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellant**

**Columbia Casualty Co.**          represented by  **Laura K. McNally**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Maria Aprile Sawczuk**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Deirdre Marie Richards**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellant**

**Traders and Pacific Insurance Company**          represented by  **Marla S. Benedek**
Cozen & O'Connor
Chase Manhattan Centre
1201 North Market St., Suite 1001
Wilmington, DE 19801
(302) 295–2024
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Deirdre Marie Richards**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellant**

**Endurance American Specialty Insurance Company**

represented by **Marla S. Benedek**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Deirdre Marie Richards**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellant**

**Endurance American Insurance Company**

represented by **Marla S. Benedek**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Deirdre Marie Richards**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellant**

**Interstate Fire & Casualty Company**

represented by **David M. Fournier**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Deirdre Marie Richards**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Appellee**

**Boy Scouts of America**

represented by **Derek C. Abbott**
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658–9200
Email: dabbott@mnat.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew R. Remming**
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302–658–9200
Email: aremming@mnat.com
*ATTORNEY TO BE NOTICED*

**Paige Noelle Topper**
Morris Nichols Arsht and Tunnell
Business Reorganization and Restructuring
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899–1347
302–351–9148
Fax: 302–425–2098
Email: ptopper@mnat.com
*ATTORNEY TO BE NOTICED*

**Tori Lynn Remington**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellee**

**Delaware BSA LLC**                    represented by   **Derek C. Abbott**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew R. Remming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paige Noelle Topper**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tori Lynn Remington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellee**

**Tort Claimants' Committee**          represented by   **James E. O'Neill , III**
Pachulski, Stang, Ziehl & Jones, LLP
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899–8705
(302) 652–4100
Email: joneill@pszjlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Appellee**

**Coalition of Abused Scouts for Justice**   represented by   **Rachel B. Mersky**
Monzack Mersky McLaughlin and
Browder, P.A.
1201 North Orange Street, Suite 400
Wilmington, DE 19801–1155
(302) 656–8162
Email: rmersky@monlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Appellee**

**Future Claimants' Representative**   represented by   **Robert Steven Brady**
Young, Conaway, Stargatt & Taylor LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571–6600
Email: rbrady@ycst.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Edwin J. Harron**
Young, Conaway, Stargatt & Taylor LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571–6600
Email: eharron@ycst.com
*ATTORNEY TO BE NOTICED*

**Jared W. Kochenash**
Young, Conaway, Stargatt & Taylor LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571–6600
Email: jkochenash@ycst.com
*ATTORNEY TO BE NOTICED*

**Kenneth John Enos**
Young, Conaway, Stargatt & Taylor LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571–6600
Email: kenos@ycst.com
*ATTORNEY TO BE NOTICED*

**Kevin A. Guerke**
Young, Conaway, Stargatt & Taylor LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571–6600
Email: kguerke@ycst.com
*ATTORNEY TO BE NOTICED*

<u>Appellee</u>

**The Zalkin Law Firm, P.C.**    represented by    **David M. Klauder**
Bielli & Klauder, LLC
1204 N. King Street
Wilmington, DE 19801
(302)–803–4600
Email: dklauder@bk–legal.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Appellee</u>

**Pfau Cochran Vertetis Amala PLLC**    represented by    **David M. Klauder**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Appellee</u>

**Hartford Accident and Indemnity**    represented by    **Daniel N. Brogan**
**Company**
Benesch, Friedlander, Coplan & Aronoff
LLP
1313 N. Market Street
Suite 1201
Wilmington, DE 19801
302–442–7010
Email: dbrogan@beneschlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Erin R. Fay**
Wilson Sonsini Goodrich & Rosati, P.C.
222 Delaware Ave.
Suite 800
Wilmington, DE 19801
302–304–7600
Fax: 866–974–7329

Email: efay@wsgr.com
*TERMINATED: 03/02/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gregory Joseph Flasser**
Bayard, P.A.
600 N. King Street
Suite 400
Wilmington, DE 19801
(302) 429–4235
Email: gflasser@potteranderson.com
*TERMINATED: 05/12/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Appellee**

**First State Insurance Company**    represented by **Daniel N. Brogan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Erin R. Fay**
(See above for address)
*TERMINATED: 03/02/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gregory Joseph Flasser**
(See above for address)
*TERMINATED: 05/12/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Appellee**

**Twin City Fire Insurance Company**    represented by **Daniel N. Brogan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Erin R. Fay**
(See above for address)
*TERMINATED: 03/02/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gregory Joseph Flasser**
(See above for address)
*TERMINATED: 05/12/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Appellee**

**Navigators Specialty Insurance Company**    represented by **Erin R. Fay**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gregory Joseph Flasser**
(See above for address)
*TERMINATED: 05/12/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

A00017

**Appellee**

**American Zurich Insurance Company**            represented by  **Robert D. Cecil , Jr.**
Tybout, Redfearn & Pell
750 Shipyard Drive, Suite 400
P.O. Box 2092
Wilmington, DE 19899–2092
302–657–5512
Email: rcecil@trplaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rachel A. Jankowski**
Email: rjankowski@crowell.com *(Inactive)*
*TERMINATED: 05/22/2023*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tacie H. Yoon**
Email: tyoon@crowell.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Appellee**

**American Guarantee Insurance
Company**                                        represented by  **Robert D. Cecil , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rachel A. Jankowski**
(See above for address)
*TERMINATED: 05/22/2023*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tacie H. Yoon**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Appellee**

**Steadfast Insurance Company**                  represented by  **Robert D. Cecil , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rachel A. Jankowski**
(See above for address)
*TERMINATED: 05/22/2023*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tacie H. Yoon**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Appellee**

**Clarendon National Insurance
Company**                                        represented by  **Matthew Gernet Summers**
*as successor in interest by merger to*          Ballard Spahr LLP
*Clarendon America Insurance Company*            919 North Market Street
11th Floor
Wilmington, DE 19801–3034

302–252–4465
Fax: 302–252–4466
Email: summersm@ballardspahr.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Appellee**

**River Thames Insurance Company Limited**
*as successor in interest to Union America Insurance Company*

represented by **Matthew Gernet Summers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Appellee**

**Zurich American Insurance Company**
*as successor to Maryland Casualty Company, Zurich Insurance Company, and American General Fire & Casualty Company*

represented by **Matthew Gernet Summers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Appellee**

**Official Committee of Unsecured Creditors**

represented by **Kurt F. Gwynne**
Reed Smith LLP
1201 Market Street
Suite 1500
Wilmington, DE 19801
(302) 778–7550
Fax: (302) 778–7575
Email: kgwynne@reedsmith.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark William Eckard**
Reed Smith LLP
1201 N. Market St.
Suite 1500
Wilmington, DE 19801
302–778–7500
Fax: 302–778–7575
Email: meckard@reedsmith.com
*ATTORNEY TO BE NOTICED*

**Appellee**

**Ad Hoc Committee of Local Councils of the Boy Scouts of America**

represented by **Robert Craig Martin**
DLA Piper LLP
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
302–468–5655
Fax: 302–7787834
Email: craig.martin@dlapiper.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Appellee**

**Federal Insurance Company**

represented by **David Elbaum**
Email: david.elbaum@stblaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stamatios Stamoulis**
Stamoulis & Weinblatt LLC
800 N. West Street, Third Floor
Wilmington, DE 19801

(302) 999–1540
Email: stamoulis@swdelaw.com
*ATTORNEY TO BE NOTICED*

**Appellee**

**Westchester Fire Insurance Company**          represented by   **David Elbaum**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stamatios Stamoulis**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/22/2022 | 1 | Notice of APPEAL FROM BANKRUPTCY COURT appealing the Order entered on 9/8/2022 and Opinion entered 7/29/2022 by Judge Laurie Silverstein in Bankruptcy case number 20–10343 (LSS). Fee Status Paid.– filed by National Union Fire Insurance Co. of Pittsburgh PA et al. (Attachments: # 1 Order on Appeal, # 2 Bankruptcy Court Transmittal)(apk) (Additional attachment(s) added on 9/22/2022: # 3 Opinion on Appeal) (apk). (Additional attachment(s) added on 9/22/2022: # 4 Exhibit A to Order on Appeal) (apk). (Entered: 09/22/2022) |
| 09/22/2022 | | NO DESIGNATION OF RECORD FILED (apk) (Entered: 09/22/2022) |
| 09/22/2022 | | Notice of Bankruptcy Appeal Record Availability. DESIGNATED RECORD on Appeal is available electronically from the docket sheet on file in the Bankruptcy Court. Please do not send paper courtesy copies of the record on appeal to the Clerk's Office unless otherwise directed by chambers. (apk) (Entered: 09/22/2022) |
| 09/22/2022 | 2 | NOTICE of Docketing Bankruptcy Appeal. (apk) (Entered: 09/22/2022) |
| 09/27/2022 | 3 | JOINT Motion for Consolidation and to Approve Stipulation Regarding Appeals from Order Confirming Plan of Reorganization of Boy Scouts of America and Delaware BSA, LLC – filed by Boy Scouts of America and Delaware BSA, LLC. (Attachments: # 1 Exhibit A)(Abbott, Derek) Modified on 9/28/2022 (nms). (Entered: 09/27/2022) |
| 09/28/2022 | | Case Assigned to Judge Richard G. Andrews. Please include the initials of the Judge (RGA) after the case number on all documents filed. Associated Cases: 1:22–cv–01237–RGA through 1:22–cv–01247–RGA; 1:22–cv–01249–RGA through 1:22–cv–01252–RGA, 1:22–cv–01254–RGA, 1:22–cv–01258–RGA and 1:22–cv–01263–RGA (rjb) (Entered: 09/28/2022) |
| 09/29/2022 | | CORRECTING ENTRY: The pro hac motion filed at D.I. 4 on 9/28/2022, has been removed from the docket. The motion was filed by a party that is not a member to this case. The captions on the filing also contained errors. The case is no longer in unassigned status and therefor requires the initials of the assigned judge after the case number. (nms) (Entered: 09/29/2022) |
| 09/30/2022 | 4 | ORAL ORDER: A conference to discuss consolidation structure and an overall briefing schedule for the appeal is set for 10/7/2022, at 11:00 AM in Courtroom 6A. Ordered by Judge Richard G. Andrews on 9/30/2022. Associated Cases: 1:22–cv–01237–RGA et al.(nms) (Entered: 09/30/2022) |
| 10/03/2022 | 5 | STATEMENT of Issues on Appeal and Designation Of Items To Be Included In The Record On Appeal, filed by Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Co. of Pittsburgh PA et al., The Insurance Company of the State of Pennsylvania. (Attachments: # 1 Exhibit A)(Richards, Deirdre) Modified on 10/3/2022 (nms). (Entered: 10/03/2022) |
| 10/04/2022 | 6 | Amended Bankruptcy Court Transmittal regarding D.I. 1 Notice of Appeal. (Attachments: # 1 List of Appellees to be added)(smg) (Entered: 10/04/2022) |
| 10/05/2022 | 7 | MOTION for Pro Hac Vice Appearance of Attorney James Hallowell, Esquire – filed by Landmark Insurance Company, Lexington Insurance Company, National Union |

| | | Fire Insurance Co. of Pittsburgh PA et al., The Insurance Company of the State of Pennsylvania. (Richards, Deirdre) (Entered: 10/05/2022) |
|---|---|---|
| 10/05/2022 | 8 | MOTION for Pro Hac Vice Appearance of Attorney Amanda George, Esquire – filed by Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Co. of Pittsburgh PA et al., The Insurance Company of the State of Pennsylvania. (Richards, Deirdre) (Entered: 10/05/2022) |
| 10/05/2022 | | SO ORDERED, re 8 MOTION for Pro Hac Vice Appearance of Attorney Amanda George, Esq., filed by Landmark Insurance Company, The Insurance Company of the State of Pennsylvania, Lexington Insurance Company, National Union Fire Insurance Co. of Pittsburgh PA et al., and 7 MOTION for Pro Hac Vice Appearance of Attorney James Hallowell, Esq., filed by Landmark Insurance Company, The Insurance Company of the State of Pennsylvania, Lexington Insurance Company, National Union Fire Insurance Co. of Pittsburgh PA et al.. Signed by Judge Richard G. Andrews on 10/5/2022. (nms) (Entered: 10/05/2022) |
| 10/05/2022 | 9 | MOTION for Pro Hac Vice Appearance of Attorney Jessica C. Lauria and Glenn M. Kurtz – filed by Boy Scouts of America, Delaware BSA LLC. (Remington, Tori) (Entered: 10/05/2022) |
| 10/05/2022 | 10 | NOTICE of Appearance by Stamatios Stamoulis on behalf of Century Indemnity Company (Stamoulis, Stamatios) (Entered: 10/05/2022) |
| 10/06/2022 | | SO ORDERED, re 9 MOTION for Pro Hac Vice Appearance of Attorney Jessica C. Lauria and Glenn M. Kurtz, filed by Boy Scouts of America, Delaware BSA LLC. Signed by Judge Richard G. Andrews on 10/6/2022. (nms) (Entered: 10/06/2022) |
| 10/06/2022 | 11 | MOTION for Pro Hac Vice Appearance of Attorney Philip D. Anker – filed by First State Insurance Company, Hartford Accident and Indemnity Company, Navigators Specialty Insurance Company, Twin City Fire Insurance Company. (Fay, Erin) Modified on 10/6/2022 (nms). Modified on 10/6/2022 (nms). (Entered: 10/06/2022) |
| 10/06/2022 | | SO ORDERED, re 11 MOTION for Pro Hac Vice Appearance of Attorney Philip D. Anker, filed by Navigators Specialty Insurance Company, First State Insurance Company, Hartford Accident and Indemnity Company, Twin City Fire Insurance Company. Signed by Judge Richard G. Andrews on 10/6/2022. (nms) Modified on 10/6/2022 (nms). (Entered: 10/06/2022) |
| 10/06/2022 | | CORRECTING ENTRY: The docket text for D.I. 11 and the So Ordered entry that followed has been amended to reflect counsel's correct name. (nms) (Entered: 10/06/2022) |
| 10/06/2022 | 13 | NOTICE of Appearance by Rachel B. Mersky on behalf of Coalition of Abused Scouts for Justice (Mersky, Rachel) (Entered: 10/06/2022) |
| 10/06/2022 | 14 | MOTION for Pro Hac Vice Appearance of Attorney Eric R. Goodman, David J. Molton, Cameron Moxley and Tristan Axelrod – filed by Coalition of Abused Scouts for Justice. (Mersky, Rachel) (Entered: 10/06/2022) |
| 10/06/2022 | 12 | MOTION for Pro Hac Vice Appearance of Attorney Joseph C. Celentino and Richard G. Mason – filed by Ad Hoc Committee of Local Councils of the Boy Scouts of America. (nms) Modified on 10/6/2022 (nms). (nms). (Entered: 10/06/2022) |
| 10/06/2022 | | SO ORDERED, re 12 MOTION for Pro Hac Vice Appearance of Attorney Joseph C. Celentino and Richard G. Mason – filed by Ad Hoc Committee of Local Councils of the Boy Scouts of America. Signed by Judge Richard G. Andrews on 10/6/2022. (nms) (Entered: 10/06/2022) |
| 10/06/2022 | | CORRECTING ENTRY: The pro hac motion filed at D.I. 12 had to be removed and refiled in order to correct a filing issue. (nms) (Entered: 10/06/2022) |
| 10/06/2022 | | SO ORDERED, re 14 MOTION for Pro Hac Vice Appearance of Attorney Eric R. Goodman, David J. Molton, Cameron Moxley and Tristan Axelrod, filed by Coalition of Abused Scouts for Justice. Signed by Judge Richard G. Andrews on 10/6/2022. (nms) (Entered: 10/06/2022) |

| 10/06/2022 | 15 | Joint Designation of Additional Items To Be Included In The Record On Appeal, filed by Boy Scouts of America, Delaware BSA LLC. (Rogers Churchill, Sophie) Modified on 10/6/2022 (nms). (Entered: 10/06/2022) |
|---|---|---|
| 10/07/2022 | | Minute Entry for proceedings held before Judge Richard G. Andrews – Conference to discuss consolidation structure and an overall briefing schedule held on 10/7/2022. Counsel for Appellants: K. Miller, D. Richards, L. Rizzo, T. Weaver. M. Sawczuk, R. K. Hill, D. Fournier, M. Joyce, C. Brown, B. Sullivan, S. Ennis. Counsel for Appellees: D. Abbott, J. O'Neill, R. Brady, R. Mersky, M. Summers, S. Stamoulis, M. Eckard. The parties are to resubmit the motion with the agreed–to changes in terms of consolidation. The parties are also directed to reach out to Chambers once the answering briefs are filed. (Court Reporter Heather Triozzi.) Associated Cases: 1:22–cv–01237–RGA et al. (lah) (Entered: 10/24/2022) |
| 10/12/2022 | 16 | MOTION for Pro Hac Vice Appearance of Attorney Susan N.K. Gummow, Esquire – filed by Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Co. of Pittsburgh PA et al., The Insurance Company of the State of Pennsylvania. (Richards, Deirdre) (Entered: 10/12/2022) |
| 10/12/2022 | 17 | MOTION for Pro Hac Vice Appearance of Attorney Michael Rosenthal, Esquire – filed by Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Co. of Pittsburgh PA et al., The Insurance Company of the State of Pennsylvania. (Richards, Deirdre) (Entered: 10/12/2022) |
| 10/12/2022 | | SO ORDERED, re 17 MOTION for Pro Hac Vice Appearance of Attorney Michael Rosenthal, Esq., filed by Landmark Insurance Company, The Insurance Company of the State of Pennsylvania, Lexington Insurance Company, National Union Fire Insurance Co. of Pittsburgh PA et al., and 16 MOTION for Pro Hac Vice Appearance of Attorney Susan N.K. Gummow, Esq., filed by Landmark Insurance Company, The Insurance Company of the State of Pennsylvania, Lexington Insurance Company, National Union Fire Insurance Co. of Pittsburgh PA et al.. Signed by Judge Richard G. Andrews on 10/12/2022. (nms) (Entered: 10/12/2022) |
| 10/14/2022 | 18 | MOTION for Pro Hac Vice Appearance of Attorney Keith R. Martorana, Esquire – filed by Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Co. of Pittsburgh PA et al., The Insurance Company of the State of Pennsylvania. (Richards, Deirdre) (Entered: 10/14/2022) |
| 10/14/2022 | 19 | MOTION for Pro Hac Vice Appearance of Attorney Blaine H. Evanson, Esquire – filed by Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Co. of Pittsburgh PA et al., The Insurance Company of the State of Pennsylvania. (Richards, Deirdre) (Entered: 10/14/2022) |
| 10/14/2022 | 20 | MOTION for Pro Hac Vice Appearance of Attorney Richard J. Doren, Esquire – filed by Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Co. of Pittsburgh PA et al., The Insurance Company of the State of Pennsylvania. (Richards, Deirdre) (Entered: 10/14/2022) |
| 10/14/2022 | | SO ORDERED, re 18 MOTION for Pro Hac Vice Appearance of Attorney Keith R. Martorana, Esq., filed by Landmark Insurance Company, The Insurance Company of the State of Pennsylvania, Lexington Insurance Company, National Union Fire Insurance Co. of Pittsburgh PA et al., 20 MOTION for Pro Hac Vice Appearance of Attorney Richard J. Doren, Esq., filed by Landmark Insurance Company, The Insurance Company of the State of Pennsylvania, Lexington Insurance Company, National Union Fire Insurance Co. of Pittsburgh PA et al., and 19 MOTION for Pro Hac Vice Appearance of Attorney Blaine H. Evanson, Esq., filed by Landmark Insurance Company, The Insurance Company of the State of Pennsylvania, Lexington Insurance Company, National Union Fire Insurance Co. of Pittsburgh PA et al.. Signed by Judge Richard G. Andrews on 10/14/2022. (nms) (Entered: 10/14/2022) |
| 10/17/2022 | 21 | PROPOSED Order re Motion on Stipulation Regarding Appeals from Order Confirming Plan of Reorganization of Boy Scouts of America and Delaware BSA, LLC (D.I. 3 ), by Boy Scouts of America, Delaware BSA, LLC, Delaware BSA LLC. (Attachments: # 1 Exhibit 1)(Abbott, Derek) Modified on 10/17/2022 (nms). (Entered: 10/17/2022) |

| 10/17/2022 | 22 | ORDER Granting Motion on Stipulation Regarding Appeal From Order Confirming Plan of Reorganization of Boy Scouts of America and Delaware BSA, LLC. Signed by Judge Richard G. Andrews on 10/17/2022. (nms) (Entered: 10/17/2022) |
|---|---|---|
| 10/17/2022 | | Pro Hac Vice Attorney Keith R. Martorana, Blaine H. Evanson, and Richard J. Doren for Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Co. of Pittsburgh PA et al., and The Insurance Company of the State of Pennsylvania added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (mpb) (Entered: 10/17/2022) |
| 10/17/2022 | | Pro Hac Vice Attorney James Hallowell, Michael Rosenthal, Susan N.K. Gummow, and Amanda George for Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Co. of Pittsburgh PA et al., and The Insurance Company of the State of Pennsylvania added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (mkr) (Entered: 10/17/2022) |
| 10/20/2022 | 23 | MOTION for Pro Hac Vice Appearance of Attorney Richard M. Pachulski; Alan J. Kornfeld; Debra I. Grassgreen; Iain A. W. Nasatir; and John W. Lucas – filed by Tort Claimants' Committee. (O'Neill, James) (Entered: 10/20/2022) |
| 10/21/2022 | | SO ORDERED, re 23 MOTION for Pro Hac Vice Appearance of Attorney Richard M. Pachulski; Alan J. Kornfeld; Debra I. Grassgreen; Iain A. W. Nasatir; and John W. Lucas, filed by Tort Claimants' Committee. Signed by Judge Richard G. Andrews on 10/21/2022. (nms) (Entered: 10/21/2022) |
| 10/21/2022 | 24 | MOTION for Pro Hac Vice Appearance of Attorney Kami E. Quinn, Emily P. Grim, Meredith C. Neely, Rachel H. Jennings, Kyle Y. Dechant, and December L. Huddleston – filed by Future Claimants' Representative. (Kochenash, Jared) (Entered: 10/21/2022) |
| 10/21/2022 | | SO ORDERED, re 24 MOTION for Pro Hac Vice Appearance of Attorney Kami E. Quinn, Emily P. Grim, Meredith C. Neely, Rachel H. Jennings, Kyle Y. Dechant, and December L. Huddleston, filed by Future Claimants' Representative. Signed by Judge Richard G. Andrews on 10/21/2022. (nms) (Entered: 10/21/2022) |
| 10/21/2022 | 25 | MOTION for Pro Hac Vice Appearance of Attorney Lorraine Armenti, Michael Hrinewski, and Kevin T. Coughlin – filed by Arrowood Indemnity Company. (Joyce, Michael) (Entered: 10/21/2022) |
| 10/21/2022 | | SO ORDERED, re 25 MOTION for Pro Hac Vice Appearance of Attorney Lorraine Armenti, Michael Hrinewski, and Kevin T. Coughlin, filed by Arrowood Indemnity Company. Signed by Judge Richard G. Andrews on 10/21/2022. (nms) (Entered: 10/21/2022) |
| 10/24/2022 | 26 | MOTION for Pro Hac Vice Appearance of Attorney Theodore J. Boutrous, Esquire – filed by Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Co. of Pittsburgh PA et al., The Insurance Company of the State of Pennsylvania. (Richards, Deirdre) (Entered: 10/24/2022) |
| 10/24/2022 | | SO ORDERED, re 26 MOTION for Pro Hac Vice Appearance of Attorney Theodore J. Boutrous, Esq., filed by Landmark Insurance Company, The Insurance Company of the State of Pennsylvania, Lexington Insurance Company, National Union Fire Insurance Co. of Pittsburgh PA et al.. Signed by Judge Richard G. Andrews on 10/24/2022. (nms) (Entered: 10/24/2022) |
| 10/24/2022 | 27 | MOTION for Pro Hac Vice Appearance of Attorney Delia Lujan Wolff – filed by The Lujan Claimants. (Attachments: # 1 Text of Proposed Order, # 2 Affidavit)(Loizides, Christopher) (Entered: 10/24/2022) |
| 10/25/2022 | | Pro Hac Vice Attorney Theodore J. Boutrous, Jr for Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Co. of Pittsburgh PA et al., and The Insurance Company of the State of Pennsylvania added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (mkr) (Entered: 10/25/2022) |

| 10/25/2022 | 28 | MOTION for Pro Hac Vice Appearance of Attorney Margaret H. Warner, Ryan S. Smethurst, and Alex M. Spisak – filed by Allianz Global Risks US Insurance Company. (Fournier, David) (Entered: 10/25/2022) |
|---|---|---|
| 10/25/2022 | 29 | MOTION for Pro Hac Vice Appearance of Attorney Harris B. Winsberg and Matthew G. Roberts – filed by Allianz Global Risks US Insurance Company, National Surety Corporation, Interstate Fire & Casualty Company. (Fournier, David) (Entered: 10/25/2022) |
| 10/25/2022 | | SO ORDERED, re 27 MOTION for Pro Hac Vice Appearance of Attorney Delia Lujan Wolff, filed by The Lujan Claimants, 28 MOTION for Pro Hac Vice Appearance of Attorney Margaret H. Warner, Ryan S. Smethurst, and Alex M. Spisak, filed by Allianz Global Risks US Insurance Company, and 29 MOTION for Pro Hac Vice Appearance of Attorney Harris B. Winsberg and Matthew G. Roberts, filed by Interstate Fire & Casualty Company, Allianz Global Risks US Insurance Company, National Surety Corporation. Signed by Judge Richard G. Andrews on 10/25/2022. (nms) (Entered: 10/25/2022) |
| 10/25/2022 | 30 | MOTION for Pro Hac Vice Appearance of Attorney Todd C. Jacobs, John E. Bucheit, and Paul J. Esker – filed by Interstate Fire & Casualty Company, National Surety Corporation. (Fournier, David) (Entered: 10/25/2022) |
| 10/25/2022 | | SO ORDERED, re 30 MOTION for Pro Hac Vice Appearance of Attorney Todd C. Jacobs, John E. Bucheit, and Paul J. Esker, filed by Interstate Fire & Casualty Company, National Surety Corporation. Signed by Judge Richard G. Andrews on 10/25/2022. (nms) (Entered: 10/25/2022) |
| 10/25/2022 | 31 | MOTION for Pro Hac Vice Appearance of Attorney Mark D. Plevin, Rachel A. Jankowski, Tacie H. Yoon and Kevin D. Cacabelos of Crowell & Moring LLP, Receipt #3990129 – filed by American Guarantee Insurance Company, American Zurich Insurance Company, Steadfast Insurance Company. (Cecil, Robert) (Entered: 10/25/2022) |
| 10/25/2022 | 32 | ORAL ORDER: The Motion for Pro Hac Vice Appearance (D.I. 31 ) is DENIED without prejudice to renew. All certifications by counsel need to be dated with date on which they were signed. Ordered by Judge Richard G. Andrews on 10/25/2022. (nms) (Entered: 10/25/2022) |
| 10/25/2022 | 33 | MOTION for Pro Hac Vice Appearance of Attorney Mark D. Plevin, Rachel A. Jankowski, Tacie H. Yoon and Kevin D. Cacabelos of Crowell & Moring LLP, Receipt #3990129 – filed by American Guarantee Insurance Company, American Zurich Insurance Company, Steadfast Insurance Company. (Cecil, Robert) (Entered: 10/25/2022) |
| 10/25/2022 | | SO ORDERED, re 33 MOTION for Pro Hac Vice Appearance of Attorney Mark D. Plevin, Rachel A. Jankowski, Tacie H. Yoon and Kevin D. Cacabelos of Crowell & Moring LLP (Receipt #3990129), filed by American Zurich Insurance Company, Steadfast Insurance Company, American Guarantee Insurance Company. Signed by Judge Richard G. Andrews on 10/25/2022. (nms) (Entered: 10/25/2022) |
| 10/28/2022 | 34 | MOTION for Pro Hac Vice Appearance of Attorney Mitchell A. Karlan, Esquire – filed by Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Co. of Pittsburgh PA et al., The Insurance Company of the State of Pennsylvania. (Richards, Deirdre) (Entered: 10/28/2022) |
| 10/28/2022 | | SO ORDERED, re 34 MOTION for Pro Hac Vice Appearance of Attorney Mitchell A. Karlan, Esq., filed by Landmark Insurance Company, The Insurance Company of the State of Pennsylvania, Lexington Insurance Company, National Union Fire Insurance Co. of Pittsburgh PA et al.. Signed by Judge Richard G. Andrews on 10/28/2022. (nms) (Entered: 10/28/2022) |
| 10/28/2022 | | Pro Hac Vice Attorney Mitchell A. Karlan for Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Co. of Pittsburgh PA et al., and The Insurance Company of the State of Pennsylvania added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (mpb) (Entered: 10/28/2022) |

| | | |
|---|---|---|
| 10/31/2022 | [35](underline) | MOTION for Pro Hac Vice Appearance of Attorney Seth M. Rokosky, Esquire – filed by Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Co. of Pittsburgh PA et al., The Insurance Company of the State of Pennsylvania. (Richards, Deirdre) (Entered: 10/31/2022) |
| 10/31/2022 | | SO ORDERED, re 35 MOTION for Pro Hac Vice Appearance of Attorney Seth M. Rokosky, Esq., filed by Landmark Insurance Company, The Insurance Company of the State of Pennsylvania, Lexington Insurance Company, National Union Fire Insurance Co. of Pittsburgh PA et al.. Signed by Judge Richard G. Andrews on 10/31/2022. (nms) (Entered: 10/31/2022) |
| 11/01/2022 | | Pro Hac Vice Attorney Seth M. Rokosky for Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Co. of Pittsburgh PA et al., and The Insurance Company of the State of Pennsylvania added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (mpb) (Entered: 11/01/2022) |
| 11/03/2022 | | Pro Hac Vice Attorney Rachel A. Jankowski for American Guarantee Insurance Company, American Zurich Insurance Company, and Steadfast Insurance Company added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (mpb) (Entered: 11/03/2022) |
| 11/03/2022 | [36](underline) | MOTION for Pro Hac Vice Appearance of Attorney Jonathan D. Marshall – filed by Liberty Insurance Underwriters Inc., Liberty Mutual Insurance Company, Liberty Surplus Insurance Corporation, The Ohio Casualty Insurance Company. (Hill, Robert) (Entered: 11/03/2022) |
| 11/03/2022 | [37](underline) | MOTION for Pro Hac Vice Appearance of Attorney Douglas R. Gooding – filed by Liberty Insurance Underwriters Inc., Liberty Mutual Insurance Company, Liberty Surplus Insurance Corporation, The Ohio Casualty Insurance Company. (Hill, Robert) (Entered: 11/03/2022) |
| 11/03/2022 | [38](underline) | MOTION for Pro Hac Vice Appearance of Attorney Kim V. Marrkand – filed by Liberty Insurance Underwriters Inc., Liberty Mutual Insurance Company, Liberty Surplus Insurance Corporation, The Ohio Casualty Insurance Company. (Hill, Robert) (Entered: 11/03/2022) |
| 11/03/2022 | [39](underline) | MOTION for Pro Hac Vice Appearance of Attorney William E. McGrath, Jr. – filed by Munich Reinsurance America, Inc.. (Attachments: # 1 Certification of Counsel to be Admitted Pro Hac Vice, # 2 Text of Proposed Order)(Weaver, Thaddeus) (Entered: 11/03/2022) |
| 11/03/2022 | | SO ORDERED, re 37 MOTION for Pro Hac Vice Appearance of Attorney Douglas R. Gooding, filed by Liberty Mutual Insurance Company, Liberty Surplus Insurance Corporation, The Ohio Casualty Insurance Company, Liberty Insurance Underwriters Inc., 38 MOTION for Pro Hac Vice Appearance of Attorney Kim V. Marrkand, filed by Liberty Mutual Insurance Company, Liberty Surplus Insurance Corporation, The Ohio Casualty Insurance Company, Liberty Insurance Underwriters Inc., 39 MOTION for Pro Hac Vice Appearance of Attorney William E. McGrath, Jr., filed by Munich Reinsurance America, Inc., and 36 MOTION for Pro Hac Vice Appearance of Attorney Jonathan D. Marshall, filed by Liberty Mutual Insurance Company, Liberty Surplus Insurance Corporation, The Ohio Casualty Insurance Company, Liberty Insurance Underwriters Inc.. Signed by Judge Richard G. Andrews on 11/3/2022. (nms) (Entered: 11/03/2022) |
| 11/04/2022 | | Pro Hac Vice Attorney Kim V. Marrkand,Douglas R. Gooding for Liberty Insurance Underwriters Inc.,Liberty Mutual Insurance Company,Liberty Surplus Insurance Corporation,and for The Ohio Casualty Insurance Company added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (apk) (Entered: 11/04/2022) |
| 11/07/2022 | | Pro Hac Vice Attorney William E. McGrath for Munich Reinsurance America, Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (apk) (Entered: 11/07/2022) |

| 11/07/2022 | 40 | Appellant's BRIEF by The Lujan Claimants. (Loizides, Christopher) (Entered: 11/07/2022) |
|---|---|---|
| 11/07/2022 | 41 | Appellant's BRIEF by D & V Claimants. (Attachments: # 1 Certificate of Service)(Brown, Charles) (Entered: 11/07/2022) |
| 11/07/2022 | 42 | APPENDIX re 41 Appellant's Brief by D & V Claimants. (Attachments: # 1 Certificate of Service)(Brown, Charles) (Entered: 11/07/2022) |
| 11/07/2022 | 43 | Appellant's BRIEF by Liberty Insurance Underwriters Inc., Liberty Mutual Insurance Company, Liberty Surplus Insurance Corporation. (Hill, Robert) (Entered: 11/07/2022) |
| 11/07/2022 | 44 | APPENDIX re 40 Appellant's Opening Brief, filed by The Lujan Claimants. (Loizides, Christopher) Modified on 11/7/2022 (nms). (Entered: 11/07/2022) |
| 11/07/2022 | 45 | Appellant's BRIEF by Allianz Global Risks US Insurance Company, Arch Insurance Company, Argonaut Insurance Company, Arrowood Indemnity Company, Colony Insurance Company, Columbia Casualty Co., Endurance American Insurance Company, Endurance American Specialty Insurance Company, Gemini Insurance Company, General Star Indemnity Company, Great American Assurance Company, Great American E&S Insurance Company, Gulf Insurance Company, Indian Harbor Insurance Company, Interstate Fire & Casualty Company, Landmark Insurance Company, Lexington Insurance Company, Liberty Insurance Underwriters Inc., Liberty Mutual Insurance Company, Liberty Surplus Insurance Corporation, Munich Reinsurance America, Inc., National Surety Corporation, National Union Fire Insurance Co. of Pittsburgh PA et al., Old Republic General Insurance Group, St. Paul Surplus Lines Insurance Company, The Continental Insurance Co., The Insurance Company of the State of Pennsylvania, The Ohio Casualty Insurance Company, Traders and Pacific Insurance Company, Travelers Casualty and Surety Company, Inc.. (Attachments: # 1 Certificate of Compliance)(Richards, Deirdre) (Entered: 11/07/2022) |
| 11/07/2022 | | Pro Hac Vice Attorney Jonathan D. Marshall for Liberty Insurance Underwriters Inc., Liberty Mutual Insurance Company, Liberty Surplus Insurance Corporation, and The Ohio Casualty Insurance Company added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (mkr) (Entered: 11/07/2022) |
| 11/07/2022 | 46 | [SEALED] APPENDIX re 41 Appellant's Brief by D & V Claimants. (Brown, Charles) (Entered: 11/07/2022) |
| 11/07/2022 | 47 | NOTICE of filing the following Non–Paper material(s) in multi media format: Hard Drive containing Appendix. Original Non–paper material(s) to be filed with the Clerk's Office. Notice filed by Deirdre Marie Richards on behalf of Allianz Global Risks US Insurance Company, Arch Insurance Company, Argonaut Insurance Company, Arrowood Indemnity Company, Colony Insurance Company, Columbia Casualty Co., Endurance American Insurance Company, Endurance American Specialty Insurance Company, Gemini Insurance Company, General Star Indemnity Company, Great American Assurance Company, Great American E&S Insurance Company, Gulf Insurance Company, Indian Harbor Insurance Company, Interstate Fire & Casualty Company, Landmark Insurance Company, Lexington Insurance Company, Liberty Insurance Underwriters Inc., Liberty Mutual Insurance Company, Liberty Surplus Insurance Corporation, Munich Reinsurance America, Inc., National Surety Corporation, National Union Fire Insurance Co. of Pittsburgh PA et al., Old Republic General Insurance Group, St. Paul Surplus Lines Insurance Company, The Insurance Company of the State of Pennsylvania (Attachments: # 1 Exhibit A, # 2 Certificate of Service)(Richards, Deirdre) Modified on 11/7/2022 (nms). (Entered: 11/07/2022) |
| 11/07/2022 | 48 | DEFICIENCY NOTICE by the Court issued to D & V Claimants re 46 Sealed Appendix. Upon review it was determined this filing does not comply with Local Rule 5.2(b)(1). Appellant's are requested to supplement the docket with an appropriate certificate of service for the filing. (nms) (Entered: 11/07/2022) |
| 11/07/2022 | 49 | PROPOSED Order Approving Stipulation Regarding Confidentiality Orders and Federal Rule of Bankruptcy Procedure 8009(f), by Boy Scouts of America and Delaware BSA, LLC. (Attachments: # 1 Exhibit A)(Abbott, Derek) Modified on 11/7/2022 (nms). (Entered: 11/07/2022) |

| 11/08/2022 | 50 | ORAL ORDER: The request to Approve the Proposed Order (D.I. 49 ) is DENIED. Ordered by Judge Richard G. Andrews on 11/8/2022. (nms) (Entered: 11/08/2022) |
| 11/08/2022 | 51 | CERTIFICATE of Service for Sealed Appendix (D.I. 46 ) by D & V Claimants, (Brown, Charles) Modified on 11/8/2022 (nms). (Entered: 11/08/2022) |
| 11/08/2022 | | Pro Hac Vice Attorney Tacie H. Yoon for American Guarantee Insurance Company, American Zurich Insurance Company, and Steadfast Insurance Company added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (mpb) (Entered: 11/08/2022) |
| 11/10/2022 | 52 | MOTION for Pro Hac Vice Appearance of Attorney Margaret M. Anderson, Ryan T. Schultz, Adam A. Hachikian, and Kenneth M. Thomas, – filed by Old Republic General Insurance Group. (Ennis, Sarah) (Entered: 11/10/2022) |
| 11/10/2022 | | SO ORDERED, re 52 MOTION for Pro Hac Vice Appearance of Attorney Margaret M. Anderson, Ryan T. Schultz, Adam A. Hachikian, and Kenneth M. Thomas, filed by Old Republic General Insurance Group. Signed by Judge Richard G. Andrews on 11/10/2022. (nms) (Entered: 11/10/2022) |
| 11/11/2022 | 53 | Disclosure Statement pursuant to Rule 7.1: identifying Corporate Parent Continental Casualty Company, Other Affiliate CNA Financial Corporation, Other Affiliate Loews Corporation, Other Affiliate The Continental Corporation for Columbia Casualty Co., The Continental Insurance Co. filed by Columbia Casualty Co., The Continental Insurance Co.. (Sawczuk, Maria) (Entered: 11/11/2022) |
| 11/14/2022 | 54 | MOTION for Leave to File Exhibits Identified in Appendix Under Seal – filed by D & V Claimants. (Attachments: # 1 Proposed Order, # 2 Certificate of Service)(Brown, Charles) Modified on 11/14/2022 (nms). (Entered: 11/14/2022) |
| 11/14/2022 | 55 | MULTI MEDIA DOCUMENT in the form of a thumb drive containing Appendix. Filing related to 47 Notice of Filing Multi Media Materials. (Media on file in Clerk's Office). (nms) (Entered: 11/14/2022) |
| 11/14/2022 | | LOCAL RULE 7.1.1 NOTICE: In accordance with Local Rule 7.1.1, except for civil cases involving pro se parties or motions brought by nonparties, every nondispositive motion shall be accompanied by an averment of counsel for the moving party that a reasonable effort has been made to reach agreement with the opposing party on the matters set forth in the motion. Unless otherwise ordered, failure to so aver may result in dismissal of the motion. The records of this case do not reflect such an averment by counsel for DI # 54 . Please file the averment using the event code STATEMENT, found under OTHER DOCUMENTS. (nms) (Entered: 11/14/2022) |
| 11/14/2022 | 56 | 7.1.1 STATEMENT re 54 MOTION for Leave to File Exhibits Identified in Appendix Under Seal, by D & V Claimants. (Attachments: # 1 Certificate of Service)(Brown, Charles) Modified on 11/14/2022 (nms). (Entered: 11/14/2022) |
| 11/14/2022 | 57 | Notice of Filing Appendix Exhibits ADV 217–222 of Appellant D & V Claimants, by D & V Claimants. (Attachments: # 1 Exhibits, # 2 Certificate of Service)(Brown, Charles) Modified on 11/14/2022 (nms). (Entered: 11/14/2022) |
| 11/14/2022 | 58 | REDACTED VERSION of 46 Appendix, by D & V Claimants. (Attachments: # 1 Exhibit, # 2 Certificate of Service)(Brown, Charles) Modified on 11/15/2022 (nms). (Entered: 11/14/2022) |
| 11/14/2022 | | Set Answering Brief Deadline re 54 MOTION for Leave to File Exhibits Identified in Appendix Under Seal. Answering Brief/Response due date per Local Rules is 11/28/2022. (nms) (Entered: 11/15/2022) |
| 12/01/2022 | 59 | MOTION for Pro Hac Vice Appearance of Attorney David Elbaum – filed by Federal Insurance Company, Westchester Fire Insurance Company. (Stamoulis, Stamatios) (Entered: 12/01/2022) |
| 12/02/2022 | | SO ORDERED, re 59 MOTION for Pro Hac Vice Appearance of Attorney David Elbaum, filed by Westchester Fire Insurance Company, Federal Insurance Company. Signed by Judge Richard G. Andrews on 12/2/2022. (nms) (Entered: 12/02/2022) |

| | | |
|---|---|---|
| 12/05/2022 | 60 | MOTION for Pro Hac Vice Appearance of Attorney Tancred Schiavoni and Jonathan Hacker – filed by Century Indemnity Company. (Stamoulis, Stamatios) (Entered: 12/05/2022) |
| 12/06/2022 | | Pro Hac Vice Attorney David Elbaum for Federal Insurance Company and Westchester Fire Insurance Company added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (mpb) (Entered: 12/06/2022) |
| 12/06/2022 | | SO ORDERED, re 60 MOTION for Pro Hac Vice Appearance of Attorney Tancred Schiavoni and Jonathan Hacker, filed by Century Indemnity Company. Signed by Judge Richard G. Andrews on 12/6/2022. (nms) (Entered: 12/06/2022) |
| 12/06/2022 | 61 | MOTION for Pro Hac Vice Appearance of Attorney James P. Ruggeri – filed by First State Insurance Company, Hartford Accident and Indemnity Company, Navigators Specialty Insurance Company, Twin City Fire Insurance Company. (Flasser, Gregory) (Entered: 12/06/2022) |
| 12/06/2022 | 62 | MOTION for Pro Hac Vice Appearance of Attorney Joel W. Millar of Wilmer Cutler Pickering Hale and Dorr LLP – filed by First State Insurance Company, Hartford Accident and Indemnity Company, Navigators Specialty Insurance Company, Twin City Fire Insurance Company. (Flasser, Gregory) (Entered: 12/06/2022) |
| 12/06/2022 | 63 | MOTION for Pro Hac Vice Appearance of Attorney Joshua D. Weinberg – filed by First State Insurance Company, Hartford Accident and Indemnity Company, Navigators Specialty Insurance Company, Twin City Fire Insurance Company. (Flasser, Gregory) (Entered: 12/06/2022) |
| 12/06/2022 | | SO ORDERED, re 63 MOTION for Pro Hac Vice Appearance of Attorney Joshua D. Weinberg, filed by Navigators Specialty Insurance Company, First State Insurance Company, Hartford Accident and Indemnity Company, Twin City Fire Insurance Company, 62 MOTION for Pro Hac Vice Appearance of Attorney Joel W. Millar of Wilmer Cutler Pickering Hale and Dorr LLP, filed by Navigators Specialty Insurance Company, First State Insurance Company, Hartford Accident and Indemnity Company, Twin City Fire Insurance Company, 61 MOTION for Pro Hac Vice Appearance of Attorney James P. Ruggeri, filed by Navigators Specialty Insurance Company, First State Insurance Company, Hartford Accident and Indemnity Company, Twin City Fire Insurance Company. Signed by Judge Richard G. Andrews on 12/6/2022. (nms) (Entered: 12/06/2022) |
| 12/06/2022 | 64 | MOTION for Pro Hac Vice Appearance of Attorney Stephen Warren – filed by Century Indemnity Company. (Stamoulis, Stamatios) (Entered: 12/06/2022) |
| 12/07/2022 | 65 | MOTION for Pro Hac Vice Appearance of Attorney Douglas K. Mayer and Mitchell S. Levy – filed by Ad Hoc Committee of Local Councils of the Boy Scouts of America. (Martin, Robert) (Entered: 12/07/2022) |
| 12/07/2022 | | SO ORDERED, re 64 MOTION for Pro Hac Vice Appearance of Attorney Stephen Warren, filed by Century Indemnity Company. Signed by Judge Richard G. Andrews on 12/7/2022. (nms) (Entered: 12/07/2022) |
| 12/07/2022 | | SO ORDERED, re 65 MOTION for Pro Hac Vice Appearance of Attorney Douglas K. Mayer and Mitchell S. Levy, filed by Ad Hoc Committee of Local Councils of the Boy Scouts of America. Signed by Judge Richard G. Andrews on 12/7/2022. (nms) (Entered: 12/07/2022) |
| 12/07/2022 | 66 | Consolidated Appellee's Brief, by Boy Scouts of America, Delaware BSA LLC. (Abbott, Derek) Modified on 12/8/2022 (nms). (Entered: 12/07/2022) |
| 12/07/2022 | 67 | Appellee's Brief, by Ad Hoc Committee of Local Councils of the Boy Scouts of America. (Martin, Robert) Modified on 12/8/2022 (nms). (Entered: 12/07/2022) |
| 12/07/2022 | 69 | APPENDIX re 67 Appellee's Brief, by Ad Hoc Committee of Local Councils of the Boy Scouts of America. (Martin, Robert) Modified on 12/8/2022 (nms). (Entered: 12/07/2022) |
| 12/07/2022 | 81 | Appellee's Brief and Joinder, by Future Claimants' Representative. (Attachments: # 1 Certificate of Service)(Brady, Robert) Modified on 12/8/2022 (nms). (Entered: 12/07/2022) |

| 12/07/2022 | 85 | APPENDIX to 81 Appellee's Brief, by Future Claimants' Representative. (Attachments: # 1 FCRA00001–FCRA00107, # 2 FCRA00108–FCRA00257, # 3 FCRA00258–FCRA00487, # 4 FCRA00488–FCRA00525, # 5 FCRA00526–FCRA00852, # 6 FCRA00853–FCRA00865, # 7 FCRA00866–FCRA00872, # 8 FCRA00873–FCRA01202)(Brady, Robert) Modified on 12/8/2022 (nms). (Entered: 12/07/2022) |
|---|---|---|
| 12/07/2022 | 86 | Appellee's Brief, by First State Insurance Company, Hartford Accident and Indemnity Company, Navigators Specialty Insurance Company, Twin City Fire Insurance Company. (Fay, Erin) Modified on 12/8/2022 (nms). (Entered: 12/07/2022) |
| 12/07/2022 | 88 | Compendium of Unreported Decisions re 81 Appellee's Brief by Future Claimants' Representative. (Attachments: # 1 Tab 1, # 2 Tab 2, # 3 Tab 3, # 4 Tab 4, # 5 Tab 5, # 6 Tab 6, # 7 Tab 7, # 8 Tab 8)(Brady, Robert) (Entered: 12/07/2022) |
| 12/07/2022 | 89 | Appellee's Brief, by Coalition of Abused Scouts for Justice, Pfau Cochran Vertetis Amala PLLC, The Zalkin Law Firm, P.C., Tort Claimants' Committee. (O'Neill, James) Modified on 12/8/2022 (nms). (Entered: 12/07/2022) |
| 12/07/2022 | 91 | Disclosure Statement pursuant to Rule 7.1: identifying Corporate Parent INA Financial Corporation, Corporate Parent INA Corporation, Corporate Parent Chubb Limited, Corporate Parent Chubb Group Holdings Inc., Corporate Parent Brandywine Holding Corporation, Corporate Parent Chubb INA Holdings Inc. for Century Indemnity Company filed by Century Indemnity Company. (Stamoulis, Stamatios) (Entered: 12/07/2022) |
| 12/07/2022 | 92 | Disclosure Statement pursuant to Rule 7.1: identifying Corporate Parent Chubb Limited, Corporate Parent Chubb Group Holdings Inc., Corporate Parent Chubb INA Holdings Inc. for Federal Insurance Company filed by Federal Insurance Company. (Stamoulis, Stamatios) (Entered: 12/07/2022) |
| 12/07/2022 | 93 | Disclosure Statement pursuant to Rule 7.1: identifying Corporate Parent Chubb Limited, Corporate Parent Chubb Group Holdings Inc., Corporate Parent Chubb US Holdings Inc. for Westchester Fire Insurance Company filed by Westchester Fire Insurance Company. (Stamoulis, Stamatios) (Entered: 12/07/2022) |
| 12/08/2022 | | CORRECTING ENTRY: The appendices filed at D.I. 68, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 82, 83, 84, and 87 have been removed from the docket. The filings should have been executed in a more efficient way. For instance Volume 1 was comprised of 228 pages, Volume 2 contained 176 pages, Volume 3 had 160 pages, and Volume 4 had 460 pages. Those volumes should have been coupled together. Appellee is directed to refile accordingly. (nms) (Entered: 12/08/2022) |
| 12/08/2022 | 94 | CERTIFICATE OF SERVICE for Appendix (D.I. 85 ) and Compendium of Unreported Decisions (D.I. 88 ), by Future Claimants' Representative. (Brady, Robert) Modified on 12/8/2022 (nms). (Entered: 12/08/2022) |
| 12/09/2022 | 95 | APPENDIX, Volume 1 re 66 Appellee's Brief, by Boy Scouts of America, Delaware BSA LLC. (Attachments: # 1 SA0001 – SA0462, # 2 SA0463 – SA0862)(Abbott, Derek) Modified on 12/9/2022 (nms). (Entered: 12/09/2022) |
| 12/09/2022 | 96 | APPENDIX, Volume 2 re 66 Appellee's Brief, by Boy Scouts of America, Delaware BSA LLC. (Attachments: # 1 SA0863 – SA1741)(Abbott, Derek) Modified on 12/9/2022 (nms). (Entered: 12/09/2022) |
| 12/09/2022 | 97 | APPENDIX, Volume 3 re 66 Appellee's Brief, by Boy Scouts of America, Delaware BSA LLC. (Attachments: # 1 SA1742 – SA2548)(Abbott, Derek) Modified on 12/9/2022 (nms). (Entered: 12/09/2022) |
| 12/09/2022 | 98 | APPENDIX, Volume 4 re 66 Appellee's Brief, by Boy Scouts of America, Delaware BSA LLC. (Attachments: # 1 SA2549 – SA3188)(Abbott, Derek) Modified on 12/9/2022 (nms). (Entered: 12/09/2022) |
| 12/09/2022 | 99 | APPENDIX, Volume 5 re 66 Appellee's Brief, by Boy Scouts of America, Delaware BSA LLC. (Attachments: # 1 SA3189 – SA3684)(Abbott, Derek) Modified on 12/9/2022 (nms). (Entered: 12/09/2022) |

| 12/09/2022 | 100 | [SEALED] APPENDIX, Volume 6 66 Appellee's Brief, by Boy Scouts of America, Delaware BSA LLC. (Attachments: # 1 SA3685 – SA3821, # 2 Certificate of Service)(Abbott, Derek) Modified on 12/9/2022 (nms). (Entered: 12/09/2022) |
|---|---|---|
| 12/09/2022 | 101 | MOTION to Seal Portions of Supplemental Appendix to Debtors–Appellees Consolidated Answering Brief – filed by Boy Scouts of America and Delaware BSA, LLC. (Attachments: # 1 Exhibit A, # 2 Certificate of Compliance)(Remington, Tori) Modified on 12/12/2022 (nms). (Entered: 12/09/2022) |
| 12/12/2022 | | Set Answering Brief Deadline re 101 MOTION to Seal Portions of Supplemental Appendix to Debtors–Appellees Consolidated Answering Brief. Answering Brief/Response due date per Local Rules is 12/27/2022. (nms) (Entered: 12/12/2022) |
| 12/13/2022 | | CORRECTING ENTRY: The Notice of Lodging of Multimedia Filing filed at D.I. 90 has been removed from the docket. Counsel for Appellee's will refile an amended notice of lodging per discussions with chambers. (nms) (Entered: 12/13/2022) |
| 12/13/2022 | 102 | ORAL ORDER: The parties are requested to file a joint letter identifying (1) the issues the parties think should be orally argued regarding the appeal, and (2) the amount of time the parties think should be allocated for each such issue. The letter is due by December 23, 2022. Ordered by Judge Richard G. Andrews on 12/13/2022. (nms) (Entered: 12/13/2022) |
| 12/14/2022 | 103 | NOTICE of filing the following Non–Paper material(s) in multi media format: JTX 10 (BSA and Local Council Insurance Policies), JTX 14 (Proofs of Claim), and JTX 2961 (Settled and Unsettled Local Council Policy Information). Original Non–paper material(s) to be filed with the Clerk's Office. Notice filed by Derek C. Abbott on behalf of Boy Scouts of America, Delaware BSA LLC (Abbott, Derek) Modified on 12/14/2022 (nms). (Entered: 12/14/2022) |
| 12/14/2022 | 104 | PROPOSED Order Approving Stipulation Regarding Designation of Certain Items to Be Included in the Record on Appeal Pursuant to Federal Rule of Bankruptcy Procedure 8009(e), by Boy Scouts of America, Delaware BSA LLC. (Attachments: # 1 Exhibit A)(Abbott, Derek) Modified on 12/14/2022 (nms). (Entered: 12/14/2022) |
| 12/14/2022 | 105 | MULTI MEDIA DOCUMENTS filed by Boy Scouts of America, Boy Scouts of America and Delaware BSA, LLC in the form of a Thumb drive and Game Drive. Filing related to 103 Notice of Filing Multi Media Materials. (*Media on file in Clerk's Office). (nms) (Entered: 12/14/2022) |
| 12/14/2022 | 106 | ORDER Approving Stipulation Regarding Designation of Certain Items to be Included in the Record on Appeal Pursuant to Federal Rule of Bankruptcy Procedure 8009(e). Signed by Judge Richard G. Andrews on 12/14/2022. (nms) (Entered: 12/14/2022) |
| 12/16/2022 | 107 | SO ORDERED Granting 101 MOTION to Seal Portions of Supplemental Appendix to Debtors–Appellees Consolidated Answering Brief. Signed by Judge Richard G. Andrews on 12/16/2022. (nms) (Entered: 12/16/2022) |
| 12/20/2022 | | REDACTION NOTICE: In accordance with section G of the Administrative Procedures Governing Filing and Service by Electronic Means, redacted versions of sealed documents shall be filed electronically within 7 days of the filing of the sealed document. The records of this case do not reflect the filing of a redacted version of DI # 100 . (nms) (Entered: 12/20/2022) |
| 12/21/2022 | 108 | NOTICE of Withdrawal of Appearance of Sarah M. Ennis by Old Republic General Insurance Group (Ennis, Sarah) (Entered: 12/21/2022) |
| 12/21/2022 | 109 | REPLY Brief, by Allianz Global Risks US Insurance Company, Arch Insurance Company, Argonaut Insurance Company, Arrowood Indemnity Company, Colony Insurance Company, Columbia Casualty Co., Endurance American Insurance Company, Endurance American Specialty Insurance Company, Gemini Insurance Company, General Star Indemnity Company, Great American Assurance Company, Great American E&S Insurance Company, Gulf Insurance Company, Indian Harbor Insurance Company, Interstate Fire & Casualty Company, Landmark Insurance Company, Lexington Insurance Company, Liberty Insurance Underwriters Inc., Munich Mutual Insurance Company, Liberty Surplus Insurance Corporation, Munich Reinsurance America, Inc., National Surety Corporation, National Union Fire Insurance Co. of Pittsburgh PA et al., Old Republic General Insurance Group, St. Paul |

| | | |
|---|---|---|
| | | Surplus Lines Insurance Company, The Continental Insurance Co., The Insurance Company of the State of Pennsylvania, The Ohio Casualty Insurance Company, Traders and Pacific Insurance Company, Travelers Casualty and Surety Company, Inc.. (Attachments: # 1 Certificate of Service)(Richards, Deirdre) Modified on 12/21/2022 (nms). (Entered: 12/21/2022) |
| 12/21/2022 | 110 | REPLY Brief, by D & V Claimants. (Attachments: # 1 Certificate of Service)(Brown, Charles) Modified on 12/21/2022 (nms). (Entered: 12/21/2022) |
| 12/21/2022 | 111 | REPLY Brief, filed by Allianz Global Risks US Insurance Company, Landmark Insurance Company, Liberty Insurance Underwriters Inc., Liberty Mutual Insurance Company, Liberty Surplus Insurance Corporation, National Surety Corporation, The Ohio Casualty Insurance Company. (Attachments: # 1 Certificate)(Hill, Robert) Modified on 12/21/2022 (nms). (Entered: 12/21/2022) |
| 12/21/2022 | 112 | EMERGENCY Motion for Extension of Time to File Reply Brief – filed by The Lujan Claimants. (Loizides, Christopher) Modified on 12/21/2022 (nms). (Entered: 12/21/2022) |
| 12/21/2022 | 113 | REPLY Brief, by The Lujan Claimants. (Loizides, Christopher) Modified on 12/22/2022 (nms). (Entered: 12/21/2022) |
| 12/23/2022 | 115 | Letter to Judge Andrews, from the parties, regarding oral argument. (Miller, Kathleen) Modified on 12/27/2022 (nms). (Entered: 12/23/2022) |
| 12/27/2022 | 116 | NOTICE requesting Clerk to remove Danielle Spinelli as co–counsel. Reason for request: leaving the firm listed. (Flasser, Gregory) (Entered: 12/27/2022) |
| 12/27/2022 | | CORRECTING ENTRY: The redacted filing submitted at D.I. 114 has been removed from the docket per discussion between the filer and chambers. Counsel for Debtor–Appellees' will refile a revised redacted version of D.I. 100 . (nms) (Entered: 12/27/2022) |
| 12/30/2022 | 117 | ORAL ORDER: The Emergency Motion for Extension of Time to File Reply Brief (D.I. 112 ) is DISMISSED as moot. Ordered by Judge Richard G. Andrews on 12/30/2022. (nms) (Entered: 12/30/2022) |
| 01/04/2023 | 118 | REDACTED VERSION of 100 Appendix, by Boy Scouts of America and Delaware BSA, LLC. (Remington, Tori) Modified on 1/5/2023 (nms). (Entered: 01/04/2023) |
| 01/04/2023 | 119 | DECLARATION of Blair M. Warner re 118 Redacted Document, by Boy Scouts of America and Delaware BSA, LLC. (Remington, Tori) Modified on 1/5/2023 (nms). (Entered: 01/04/2023) |
| 01/05/2023 | 120 | ORAL ORDER: The redactions (D.I. 118 ) as supported by the Declaration (D.I. 119 ) are APPROVED. Ordered by Judge Richard G. Andrews on 1/5/2023. (nms) (Entered: 01/05/2023) |
| 01/10/2023 | 121 | ORAL ORDER: Argument on the Bankruptcy Appeal is now set for 2/9/2023, and 2/10/2023 in Courtroom 6A. The 8 issues on appeal outlined in the letter filed at D.I. 115 will be heard as follows: Issue 1 will be heard at 9:30 AM on 2/9/2023; Issue 2 and 4 will be heard on 2/9/2023, at 2:00 PM; Issue 3 will be heard on 2/10/2023, at 9:00 AM; and Issues 5 through 8 will be heard on 2/10/2023, at 2:00 PM. Ordered by Judge Richard G. Andrews on 1/10/2023. (nms) (Entered: 01/10/2023) |
| 01/11/2023 | 122 | ORDER Granting 54 MOTION for Leave to File Exhibits Identified in Appendix Under Seal. Signed by Judge Richard G. Andrews on 1/11/2023. (nms) (Entered: 01/11/2023) |
| 01/12/2023 | | Remark: Courtroom 4A will be open to the public as an overflow viewing room for the hearings scheduled on 2/9/2023, and 2/10/2023. (nms) (Entered: 01/12/2023) |
| 01/13/2023 | 123 | MOTION to Supplement the Record – filed by Allianz Global Risks US Insurance Company, Arch Insurance Company, Argonaut Insurance Company, Arrowood Indemnity Company, Colony Insurance Company, Columbia Casualty Co., Endurance American Insurance Company, Endurance American Specialty Insurance Company, Gemini Insurance Company, General Star Indemnity Company, Great American Assurance Company, Great American E&S Insurance Company, Gulf Insurance Company, Indian Harbor Insurance Company, Interstate Fire & Casualty Company, |

| | | |
|---|---|---|
| | | Landmark Insurance Company, Lexington Insurance Company, Liberty Insurance Underwriters Inc., Liberty Mutual Insurance Company, Liberty Surplus Insurance Corporation, Munich Reinsurance America, Inc., National Surety Corporation, National Union Fire Insurance Co. of Pittsburgh PA et al., Old Republic General Insurance Group, St. Paul Surplus Lines Insurance Company, The Continental Insurance Co., The Insurance Company of the State of Pennsylvania, The Ohio Casualty Insurance Company, Traders and Pacific Insurance Company, Travelers Casualty and Surety Company, Inc.. (Attachments: # 1 7.1.1 Statement, # 2 Certificate of Service)(Richards, Deirdre) Modified on 1/13/2023 (nms). (Entered: 01/13/2023) |
| 01/13/2023 | 124 | NOTICE of filing the following Non–Paper material(s) in multi media format: trial exhibits and documents included in the Insurer Appellants' Designation. Original Non–paper material(s) to be filed with the Clerk's Office. Notice filed by Kathleen M. Miller on behalf of Arch Insurance Company, General Star Indemnity Company, Indian Harbor Insurance Company (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Miller, Kathleen) (Entered: 01/13/2023) |
| 01/13/2023 | | Set Answering Brief Deadline re 123 MOTION to Supplement the Record. Answering Brief/Response due date per Local Rules is 1/27/2023. (nms) (Entered: 01/17/2023) |
| 01/17/2023 | 125 | MULTI MEDIA DOCUMENT filed by Arch Insurance Company, General Star Indemnity Company, Indian Harbor Insurance Company in the form of a Portable Storage unit. Filing related to 124 Notice of Filing Multi Media Materials. (*Media on file in Clerk's Office). (nms) (Entered: 01/17/2023) |
| 01/17/2023 | 126 | MOTION for Pro Hac Vice Appearance of Attorney W. Hunter Winstead – filed by Future Claimants' Representative. (Kochenash, Jared) (Entered: 01/17/2023) |
| 01/17/2023 | | SO ORDERED, re 126 MOTION for Pro Hac Vice Appearance of Attorney W. Hunter Winstead, filed by Future Claimants' Representative. Signed by Judge Richard G. Andrews on 1/17/2023. (nms) (Entered: 01/17/2023) |
| 01/19/2023 | 127 | Official Transcript of Scheduling Conference held on 10/7/22 before Judge Richard G. Andrews. Court Reporter Heather M. Triozzi,Email: Heather_Triozzi@ded.uscourts.gov. Transcript may be viewed at the court public terminal or order/purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date, it may be obtained through PACER. Redaction Request due 2/9/2023. Redacted Transcript Deadline set for 2/21/2023. Release of Transcript Restriction set for 4/19/2023. (Triozzi, Heather) (Entered: 01/19/2023) |
| 01/27/2023 | 128 | RESPONSE to 123 MOTION to Supplement the Record, filed by Boy Scouts of America, Delaware BSA LLC. (Abbott, Derek) Modified on 1/30/2023 (nms). (Entered: 01/27/2023) |
| 01/27/2023 | 129 | JOINDER in 128 Response, by Pfau Cochran Vertetis Amala PLLC, The Zalkin Law Firm, P.C., Tort Claimants' Committee. (O'Neill, James) Modified on 1/30/2023 (nms). (Entered: 01/27/2023) |
| 02/01/2023 | 130 | Letter to The Honorable Richard G. Andrews, from Certain Insurers Appellants, regarding recent Third Circuit Decision. (Attachments: # 1 Exhibit A, # 2 Certificate of Service)(Richards, Deirdre) Modified on 2/2/2023 (nms). (Entered: 02/01/2023) |
| 02/02/2023 | 131 | Letter to The Honorable Richard G. Andrews, from Glen M. Kurtz and Derek C. Abbott, regarding response to Appellants' letter (D.I. 130 ). (Abbott, Derek) Modified on 2/3/2023 (nms). (Entered: 02/02/2023) |
| 02/03/2023 | 132 | REPLY Brief re 123 MOTION to Supplement the Record, filed by Allianz Global Risks US Insurance Company, Arch Insurance Company, Argonaut Insurance Company, Arrowood Indemnity Company, Colony Insurance Company, Columbia Casualty Co., Endurance American Insurance Company, Endurance American Specialty Insurance Company, Gemini Insurance Company, General Star Indemnity Company, Great American Assurance Company, Great American E&S Insurance Company, Gulf Insurance Company, Indian Harbor Insurance Company, Interstate Fire & Casualty Company, Landmark Insurance Company, Lexington Insurance Company, Liberty Insurance Underwriters Inc., Liberty Mutual Insurance Company, Liberty Surplus Insurance Corporation, Munich Reinsurance America, Inc., National |

| | | |
|---|---|---|
| | | Surety Corporation, National Union Fire Insurance Co. of Pittsburgh PA et al., Old Republic General Insurance Group, St. Paul Surplus Lines Insurance Company, The Continental Insurance Co., The Insurance Company of the State of Pennsylvania, The Ohio Casualty Insurance Company, Traders and Pacific Insurance Company, Travelers Casualty and Surety Company, Inc.. (Attachments: # 1 Certificate of Service)(Richards, Deirdre) Modified on 2/3/2023 (nms). (Entered: 02/03/2023) |
| 02/07/2023 | 133 | Letter to Honorable Richard G. Andrews from Christopher D. Loizides regarding Requesting excuse from oral argument. (Loizides, Christopher) (Entered: 02/07/2023) |
| 02/07/2023 | 134 | ORAL ORDER: The request to be excused from the hearings scheduled for 2/9/2023, and 2/10/2023 (D.I. 133 ) is GRANTED. Ordered by Judge Richard G. Andrews on 2/7/2023. (nms) (Entered: 02/07/2023) |
| 02/08/2023 | 135 | Letter to Honorable Richard G. Andrews, from Charles J. Brown, III, Esq., regarding request to be excused from oral argument. (Brown, Charles) Modified on 2/8/2023 (nms). (Entered: 02/08/2023) |
| 02/08/2023 | 136 | ORAL ORDER: The request to be excused from the oral arguments scheduled for 2/9/2023, and 2/10/2023 (D.I. 135 ) is GRANTED. Ordered by Judge Richard G. Andrews on 2/8/2023. (nms) (Entered: 02/08/2023) |
| 02/09/2023 | 137 | MOTION for Pro Hac Vice Appearance of Attorney Michael Stoner – filed by Boy Scouts of America, Delaware BSA LLC. (Remington, Tori) (Entered: 02/09/2023) |
| 02/09/2023 | 138 | MOTION for Pro Hac Vice Appearance of Attorney Laura E. Baccash and Ronald Gorsich – filed by Boy Scouts of America, Delaware BSA LLC. (Remington, Tori) (Entered: 02/09/2023) |
| 02/09/2023 | | SO ORDERED, re 137 MOTION for Pro Hac Vice Appearance of Attorney Michael Stoner, filed by Boy Scouts of America, Delaware BSA LLC, and 138 MOTION for Pro Hac Vice Appearance of Attorney Laura E. Baccash and Ronald Gorsich, filed by Boy Scouts of America, Delaware BSA LLC. Signed by Judge Richard G. Andrews on 2/9/2023. (nms) (Entered: 02/09/2023) |
| 02/09/2023 | 139 | MOTION for Pro Hac Vice Appearance of Attorney Blair Warner – filed by Boy Scouts of America, Delaware BSA LLC. (Remington, Tori) (Entered: 02/09/2023) |
| 02/09/2023 | | SO ORDERED, re 139 MOTION for Pro Hac Vice Appearance of Attorney Blair Warner, filed by Boy Scouts of America, Delaware BSA LLC. Signed by Judge Richard G. Andrews on 2/9/2023. (nms) (Entered: 02/09/2023) |
| 02/09/2023 | | Minute Entry for proceedings held before Judge Richard G. Andrews – Argument on the Bankruptcy Appeal (Issues 1, 2 and 4) held on 2/9/2023. Local Counsel for Appellants: D. Richards, M. McLaughlin, K. Miller, M. Sawczuk, M. Joyce, M. Benedek, T. Weaver, C. Kunz, B. McCullough. Local Counsel for Appellees: D. Abbott, J. O'Neill, C. Martin, L. Rizzo, R. Brady, S. Stamoulis. (Court Reporter Heather Triozzi.) (lah) (Entered: 02/09/2023) |
| 02/10/2023 | | Minute Entry for proceedings held before Judge Richard G. Andrews – Argument on the Bankruptcy Appeal (Issues 3, 6, 7 and 8) held on 2/10/2023. Local Counsel for Appellants: D. Richards, M. McLaughlin, K. Miller, M. Sawczuk, M. Joyce, M. Benedek, T. Weaver, C. Kunz, B. McCullough. Local Counsel for Appellees: D. Abbott, J. O'Neill, C. Martin, L. Rizzo, R. Brady, S. Stamoulis. (Court Reporter Heather Triozzi.) (lah) (Entered: 02/13/2023) |
| 02/24/2023 | 140 | Letter to the Court, from dated 12/16/2022, regarding appeal. (nms) (Entered: 02/24/2023) |
| 02/24/2023 | 141 | Letter to the Court, received on 1/23/2023, regarding appeal. (nms) (Entered: 02/24/2023) |
| 02/24/2023 | 142 | Letter to the Court, dated 2/4/2023, regarding appeal. (nms) (Entered: 02/24/2023) |
| 03/02/2023 | 143 | NOTICE of Withdrawal of Counsel Erin R. Fay – filed by First State Insurance Company, Hartford Accident and Indemnity Company, Twin City Fire Insurance Company. (Brogan, Daniel) Modified on 3/2/2023 (nms). (Entered: 03/02/2023) |

| 03/02/2023 | | CORRECTING ENTRY: D.I. 143 has been recoded and the docket text corrected to reflect this filing is a notice and not a motion. (nms) (Entered: 03/02/2023) |
|---|---|---|
| 03/07/2023 | 144 | Official Transcript of Oral Argument held on 2/9/23 before Judge Richard G. Andrews. Court Reporter Heather M. Triozzi,Email: Heather_Triozzi@ded.uscourts.gov. Transcript may be viewed at the court public terminal or order/purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date, it may be obtained through PACER. Redaction Request due 3/28/2023. Redacted Transcript Deadline set for 4/10/2023. Release of Transcript Restriction set for 6/5/2023. (Triozzi, Heather) (Entered: 03/07/2023) |
| 03/07/2023 | 145 | Official Transcript of Oral Argument held on 2/10/23 before Judge Richard G. Andrews. Court Reporter Heather M. Triozzi,Email: Heather_Triozzi@ded.uscourts.gov. Transcript may be viewed at the court public terminal or order/purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date, it may be obtained through PACER. Redaction Request due 3/28/2023. Redacted Transcript Deadline set for 4/10/2023. Release of Transcript Restriction set for 6/5/2023. (Triozzi, Heather) (Entered: 03/07/2023) |
| 03/07/2023 | 146 | Letter to the Court, dated 2/28/2023, regarding appeal. (nms) (Entered: 03/07/2023) |
| 03/23/2023 | 147 | Letter to the Court, dated March 20, 2023, regarding the appeal. (nms) (Entered: 03/23/2023) |
| 03/27/2023 | | Pro Hac Vice Attorney Delia L. Wolff for The Lujan Claimants added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (twk) (Entered: 03/27/2023) |
| 03/28/2023 | 148 | Letter to the Court, received on 3/27/2023, regarding the appeal. (nms) (Entered: 03/28/2023) |
| 03/28/2023 | 149 | Letter to the Court, dated 3/19/2023, regarding the appeal. (nms) (Entered: 03/28/2023) |
| 03/28/2023 | 150 | OPINION. Signed by Judge Richard G. Andrews on 3/27/2023. (nms) (Entered: 03/28/2023) |
| 03/28/2023 | 151 | ORDER: The Motion to Supplement the Record (D.I. 123 ) is hereby DENIED. The Supplemental Findings of Fact and Conclusions of Law, dated September 8, 2022 (D.I. 1 –1) ("Confirmation Order"), is hereby AFFIRMED. The Clerk is directed to CLOSE lead case Civ. No. 22–1237–RGA along with the consolidated cases (***Civil Case Terminated). Signed by Judge Richard G. Andrews on 3/27/2023. (nms) (Entered: 03/28/2023) |
| 03/31/2023 | 152 | Emergency Motion for Stay Pending Appeal and Temporary Stay While the Court Rules on the Motion – filed by Allianz Global Risks US Insurance Company, Arch Insurance Company, Argonaut Insurance Company, Arrowood Indemnity Company, Colony Insurance Company, Columbia Casualty Co., Endurance American Insurance Company, Endurance American Specialty Insurance Company, Gemini Insurance Company, General Star Indemnity Company, Great American Assurance Company, Great American E&S Insurance Company, Gulf Insurance Company, Indian Harbor Insurance Company, Interstate Fire & Casualty Company, Landmark Insurance Company, Lexington Insurance Company, Liberty Insurance Underwriters Inc., Liberty Mutual Insurance Company, Liberty Surplus Insurance Corporation, National Surety Corporation, National Union Fire Insurance Co. of Pittsburgh PA et al., Old Republic General Insurance Group, St. Paul Surplus Lines Insurance Company, The Continental Insurance Co., The Insurance Company of the State of Pennsylvania, The Ohio Casualty Insurance Company, Traders and Pacific Insurance Company, Travelers Casualty and Surety Company, Inc.. (Attachments: # 2 7.1.1 Statement, # 3 Certificate of Service)(Richards, Deirdre) Modified on 3/31/2023 (nms). Modified on 4/3/2023 (nms). (Entered: 03/31/2023) |
| 03/31/2023 | | CORRECTING ENTRY: The Affidavit attached to the motion at D.I. 152 has been removed from that filing. Motions and Afidvits are to be filed independent of each other. Counsel is to refile the affidavit accordingly. (nms) (Entered: 03/31/2023) |

| 03/31/2023 | 153 | AFFIDAVIT of Deirdre M. Richards re 152 Emergency Motion for Stay Pending Appeal and Temporary Stay While the Court Rules on the Motion, filed by Allianz Global Risks US Insurance Company, Arch Insurance Company, Argonaut Insurance Company, Arrowood Indemnity Company, Colony Insurance Company, Columbia Casualty Co., Endurance American Insurance Company, Endurance American Specialty Insurance Company, Gemini Insurance Company, General Star Indemnity Company, Great American Assurance Company, Great American E&S Insurance Company, Gulf Insurance Company, Indian Harbor Insurance Company, Interstate Fire & Casualty Company, Landmark Insurance Company, Lexington Insurance Company, Liberty Insurance Underwriters Inc., Liberty Mutual Insurance Company, Liberty Surplus Insurance Corporation, National Surety Corporation, National Union Fire Insurance Co. of Pittsburgh PA et al., Old Republic General Insurance Group, St. Paul Surplus Lines Insurance Company, The Continental Insurance Co., The Insurance Company of the State of Pennsylvania, The Ohio Casualty Insurance Company, Traders and Pacific Insurance Company, Travelers Casualty and Surety Company, Inc.. (Attachments: # 1 Certificate of Service)(Richards, Deirdre) Modified on 4/3/2023 (nms). (Entered: 03/31/2023) |
| 04/01/2023 | 154 | Emergency Motion for Stay Pending Appeal and a Temporary Stay While the Court Rules on the Motion – filed by D & V Claimants. (Attachments: # 1 7.1.1 Statement , # 2 Certificate of Service)(Brown, Charles) Modified on 4/3/2023 (nms). (Entered: 04/01/2023) |
| 04/01/2023 | 155 | AFFIDAVIT of Charles J. Brown, III re 154 Emergency Motion for Stay Pending Appeal and a Temporary Stay While the Court Rules on the Motion, filed by D & V Claimants. (Attachments: # 1 Certificate of Service)(Brown, Charles) Modified on 4/3/2023 (nms). (Entered: 04/01/2023) |
| 04/01/2023 | 156 | Emergency Motion for Stay Pending Appeal and A Temporary Stay While the Court Rules on the Motion and Joinder – filed by The Lujan Claimants. (Loizides, Christopher) (Additional attachment(s) added on 4/3/2023: # 1 7.1.1 Statement) (nms). Modified on 4/3/2023 (nms). (Entered: 04/01/2023) |
| 04/01/2023 | 158 | DECLARATION of Christopher D. Loizides re 156 Emergency Motion of Lujan Claimants for Stay Pending Appeal and A Temporary Stay While the Court Rules on the Motion; and Joinder, by The Lujan Claimants. (Loizides, Christopher) Modified on 4/3/2023 (nms). (Entered: 04/01/2023) |
| 04/03/2023 |  | CORRECTING ENTRY: D.I. 157 has been removed from the docket. The 7.1.1 Statement filed at that entry has been added to the filing at D.I. 156 . (nms) (Entered: 04/03/2023) |
| 04/03/2023 | 159 | AFFIDAVIT of Charles J. Brown, III re 154 Emergency Motion for Stay Pending Appeal and a Temporary Stay While the Court Rules on the Motion, filed by D & V Claimants. (Attachments: # 1 Certificate of Service)(Brown, Charles) Modified on 4/3/2023 (nms). (Entered: 04/03/2023) |
| 04/04/2023 | 160 | PROPOSED ORDER Approving Stipulation to Extend Word Limits by Boy Scouts of America, Delaware BSA LLC. (Attachments: # 1 Exhibit A)(Abbott, Derek) (Entered: 04/04/2023) |
| 04/04/2023 | 161 | ORDER DENYING Stipulation to Extend Word Limits (D.I. 160 ). Signed by Judge Richard G. Andrews on 4/4/2023. (nms) (Entered: 04/04/2023) |
| 04/04/2023 | 162 | ORAL ORDER: Various appellants having filed Emergency Motions (D.I. 152 , 154 , 156 ) seeking a stay of the Affirmance Order pending final disposition of their appeals to the Third Circuit. It is HEREBY ORDERED THAT: (i) any response to the Emergency Motions shall be filed no later than April 6, 2023; (ii) no replies are required, but, if there are any, they need to be filed no later than April 7, 2023. Ordered by Judge Richard G. Andrews on 4/4/2023. (nms) (Entered: 04/04/2023) |
| 04/05/2023 | 163 | NOTICE of Errata Regarding 156 Emergency Motion of Lujan Claimants for Stay Pending Appeal and A Temporary Stay While the Court Rules on the Motion; and Joinder, by The Lujan Claimants. (Loizides, Christopher) Modified on 4/6/2023 (nms). (Entered: 04/05/2023) |
| 04/06/2023 | 164 | RESPONSE to 156 Emergency Motion of Lujan Claimants for Stay Pending Appeal and A Temporary Stay While the Court Rules on the Motion; and Joinder, 154 |

| | | Emergency Motion for Stay Pending Appeal and a Temporary Stay While the Court Rules on the Motion, 152 Emergency Motion for Stay Pending Appeal and Temporary Stay While the Court Rules on the Motion, filed by Boy Scouts of America, Delaware BSA LLC. (Abbott, Derek) Modified on 4/6/2023 (nms). (Entered: 04/06/2023) |
|---|---|---|
| 04/06/2023 | 165 | DECLARATION of Brian Whittman 164 Opposition to Motions for Stay Pending Appeals, by Boy Scouts of America, Delaware BSA LLC. (Attachments: # 1 Exhibit A)(Remington, Tori) Modified on 4/6/2023 (nms). (Entered: 04/06/2023) |
| 04/06/2023 | 166 | DECLARATION of Stephen Ehmann re 164 Response to Motion, by Boy Scouts of America, Delaware BSA LLC. (Remming, Andrew) Modified on 4/6/2023 (nms). (Entered: 04/06/2023) |
| 04/06/2023 | 167 | DECLARATION of David Stern re 164 Response to Motion, by Boy Scouts of America, Delaware BSA LLC. (Remington, Tori) Modified on 4/6/2023 (nms). (Entered: 04/06/2023) |
| 04/06/2023 | 168 | DECLARATION of Evan Smola re 164 Response to Motion, by Boy Scouts of America, Delaware BSA LLC. (Remming, Andrew) Modified on 4/6/2023 (nms). (Entered: 04/06/2023) |
| 04/06/2023 | 169 | DECLARATION of Irwin Zalkin re 164 Response to Motion, by Boy Scouts of America, Delaware BSA LLC. (Remington, Tori) Modified on 4/6/2023 (nms). (Entered: 04/06/2023) |
| 04/06/2023 | 170 | DECLARATION of Peter B. Janci re 164 Response to Motion, by Boy Scouts of America, Delaware BSA LLC. (Remming, Andrew) Modified on 4/6/2023 (nms). (Entered: 04/06/2023) |
| 04/06/2023 | 171 | DECLARATION of Patrick Stoneking re 164 Response to Motion, by Boy Scouts of America, Delaware BSA LLC. (Remington, Tori) Modified on 4/6/2023 (nms). (Entered: 04/06/2023) |
| 04/06/2023 | 172 | DECLARATION of Paul Mones re 164 Response to Motion, by Boy Scouts of America, Delaware BSA LLC. (Remming, Andrew) Modified on 4/6/2023 (nms). (Entered: 04/06/2023) |
| 04/06/2023 | 173 | DECLARATION of Jordan K. Merson re 164 Response to Motion, by Boy Scouts of America, Delaware BSA LLC. (Remington, Tori) Modified on 4/6/2023 (nms). (Entered: 04/06/2023) |
| 04/07/2023 | 174 | REPLY Brief re 152 Emergency Motion for Stay Pending Appeal and Temporary Stay While the Court Rules on the Motion, filed by Allianz Global Risks US Insurance Company, Arch Insurance Company, Argonaut Insurance Company, Arrowood Indemnity Company, Colony Insurance Company, Columbia Casualty Co., Endurance American Insurance Company, Endurance American Specialty Insurance Company, Gemini Insurance Company, General Star Indemnity Company, Great American Assurance Company, Great American E&S Insurance Company, Gulf Insurance Company, Indian Harbor Insurance Company, Interstate Fire & Casualty Company, Landmark Insurance Company, Lexington Insurance Company, Liberty Insurance Underwriters Inc., Liberty Mutual Insurance Company, Liberty Surplus Insurance Corporation, National Surety Corporation, National Union Fire Insurance Co. of Pittsburgh PA et al., Old Republic General Insurance Group, St. Paul Surplus Lines Insurance Company, The Continental Insurance Co., The Insurance Company of the State of Pennsylvania, The Ohio Casualty Insurance Company, Traders and Pacific Insurance Company, Travelers Casualty and Surety Company, Inc.. (Attachments: # 1 Certificate of Service)(Richards, Deirdre) Modified on 4/7/2023 (nms). (Entered: 04/07/2023) |
| 04/07/2023 | 175 | REPLY Brief re 154 Emergency Motion for Stay Pending Appeal and a Temporary Stay While the Court Rules on the Motion, filed by D & V Claimants. (Attachments: # 1 Certificate of Service)(Brown, Charles) Modified on 4/7/2023 (nms). (Entered: 04/07/2023) |
| 04/07/2023 | 176 | REPLY Brief re 156 Emergency Motion of Lujan Claimants for Stay Pending Appeal and A Temporary Stay While the Court Rules on the Motion; and Joinder, filed The Lujan Claimants. (Loizides, Christopher) Modified on 4/7/2023 (nms). (Entered: 04/07/2023) |

| | | |
|---|---|---|
| 04/10/2023 | 177 | NOTICE OF APPEAL of 150 Memorandum Opinion and 151 Order. Appeal filed by The Lujan Claimants. (Loizides, Christopher) Modified on 4/10/2023 (nms). (Entered: 04/10/2023) |
| 04/10/2023 | 178 | NOTICE OF APPEAL of 150 Memorandum Opinion and 151 Order. Appeal filed by Liberty Insurance Underwriters Inc., Liberty Mutual Insurance Company, Liberty Surplus Insurance Corporation, The Ohio Casualty Insurance Company. (Hill, Robert) Modified on 4/10/2023 (nms). (Entered: 04/10/2023) |
| 04/10/2023 | 179 | NOTICE OF APPEAL of 150 Memorandum Opinion and 151 Order. Appeal filed by D & V Claimants. (Attachments: # 1 Certificate of Service)(Brown, Charles) Modified on 4/10/2023 (nms). (Entered: 04/10/2023) |
| 04/10/2023 | | APPEAL – Credit Card Payment received re 178 Notice of Appeal (Third Circuit), filed by Liberty Mutual Insurance Company, Liberty Surplus Insurance Corporation, The Ohio Casualty Insurance Company, Liberty Insurance Underwriters Inc.. ( Filing fee $505, receipt number ADEDC−4108829.) (Hill, Robert) (Entered: 04/10/2023) |
| 04/10/2023 | 180 | NOTICE OF APPEAL of 150 Memorandum Opinion and 151 Order. Appeal filed by Columbia Casualty Co., The Continental Insurance Co.. (Sawczuk, Maria) Modified on 4/10/2023 (nms). (Entered: 04/10/2023) |
| 04/10/2023 | | APPEAL – Credit Card Payment received re 180 Notice of Appeal (Third Circuit) filed by The Continental Insurance Co., Columbia Casualty Co.. ( Filing fee $505, receipt number ADEDC−4108832.) (Sawczuk, Maria) (Entered: 04/10/2023) |
| 04/10/2023 | 181 | NOTICE OF APPEAL of 150 Memorandum Opinion and 151 Order. Appeal filed by Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Co. of Pittsburgh PA et al. The Insurance Company of the State of Pennsylvania. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Certificate of Service)(Richards, Deirdre) Modified on 4/10/2023 (nms). (Entered: 04/10/2023) |
| 04/10/2023 | | APPEAL – Credit Card Payment received re 179 Notice of Appeal (Third Circuit) filed by D & V Claimants. ( Filing fee $505, receipt number ADEDC−4108838.) (Brown, Charles) (Entered: 04/10/2023) |
| 04/10/2023 | | APPEAL – Credit Card Payment received re 181 Notice of Appeal (Third Circuit), filed by Landmark Insurance Company, The Insurance Company of the State of Pennsylvania, Lexington Insurance Company, National Union Fire Insurance Co. of Pittsburgh PA et al.. ( Filing fee $505, receipt number ADEDC−4108843.) (Richards, Deirdre) (Entered: 04/10/2023) |
| 04/10/2023 | 182 | NOTICE OF APPEAL of 150 Memorandum Opinion and 151 Order. Appeal filed by Indian Harbor Insurance Company. (Attachments: # 1 Certificate of Service)(Miller, Kathleen) Modified on 4/10/2023 (nms). (Entered: 04/10/2023) |
| 04/10/2023 | 183 | NOTICE OF APPEAL of 150 Memorandum Opinion and 151 Order. Appeal filed by Old Republic General Insurance Group. (Kunz, Carl) Modified on 4/10/2023 (nms). (Entered: 04/10/2023) |
| 04/10/2023 | | APPEAL – Credit Card Payment received re 183 Notice of Appeal (Third Circuit) filed by Old Republic General Insurance Group. ( Filing fee $505, receipt number ADEDC−4108871.) (Kunz, Carl) (Entered: 04/10/2023) |
| 04/10/2023 | 184 | NOTICE OF APPEAL of 150 Memorandum Opinion and 151 Order. Appeal filed by Travelers Casualty and Surety Company, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Certificate of Service)(Rizzo, Louis) Modified on 4/10/2023 (nms). (Entered: 04/10/2023) |
| 04/10/2023 | | APPEAL – Credit Card Payment received re 184 Notice of Appeal (Third Circuit), filed by Travelers Casualty and Surety Company, Inc.. ( Filing fee $505, receipt number ADEDC−4108876.) (Rizzo, Louis) (Entered: 04/10/2023) |
| 04/10/2023 | 185 | NOTICE OF APPEAL of 150 Memorandum Opinion and 151 Order. Appeal filed by Great American Assurance Company, Great American E&S Insurance Company. (McCullough, Bruce) Modified on 4/10/2023 (nms). (Entered: 04/10/2023) |
| 04/10/2023 | 186 | NOTICE OF APPEAL of 150 Memorandum Opinion and 151 Order. Appeal filed by Allianz Global Risks US Insurance Company, Interstate Fire & Casualty Company, |

| | | |
|---|---|---|
| | | National Surety Corporation. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Certificate of Service)(McLaughlin, Marcy) Modified on 4/10/2023 (nms). (Entered: 04/10/2023) |
| 04/10/2023 | | APPEAL – Credit Card Payment received re 182 Notice of Appeal (Third Circuit) filed by Indian Harbor Insurance Company. ( Filing fee $505, receipt number ADEDC–4108943.) (Miller, Kathleen) (Entered: 04/10/2023) |
| 04/10/2023 | | USCA Appeal Fees received: $505, receipt number ADEDC–4108886 re 185 Notice of Appeal (Third Circuit) filed by Great American E&S Insurance Company, Great American Assurance Company. (McCullough, Bruce W.) (Entered: 04/10/2023) |
| 04/10/2023 | | USCA Appeal Fees received: $505, receipt number ADEDC–4108909 re 186 Notice of Appeal (Third Circuit), filed by Interstate Fire & Casualty Company, Allianz Global Risks US Insurance Company, National Surety Corporation. (McLaughlin, Marcy J.) (Entered: 04/10/2023) |
| 04/10/2023 | 187 | NOTICE OF APPEAL of 150 Memorandum Opinion and 151 Order. Appeal filed by Argonaut Insurance Company, Colony Insurance Company. (Logan, Paul) Modified on 4/10/2023 (nms). (Entered: 04/10/2023) |
| 04/10/2023 | 188 | NOTICE OF APPEAL of 150 Memorandum Opinion and 151 Order. Appeal filed by Gemini Insurance Company. (Attachments: # 1 Certificate of Service)(Sullivan, Brian) Modified on 4/10/2023 (nms). (Entered: 04/10/2023) |
| 04/10/2023 | | APPEAL – Credit Card Payment received re 187 Notice of Appeal (Third Circuit) filed by Colony Insurance Company, Argonaut Insurance Company. ( Filing fee $505, receipt number ADEDC–4109011.) (Logan, Paul) (Entered: 04/10/2023) |
| 04/10/2023 | | APPEAL – Credit Card Payment received re 188 Notice of Appeal (Third Circuit) filed by Gemini Insurance Company, APPEAL – Credit Card Payment. ( Filing fee $505, receipt number ADEDC–4109020.) (Sullivan, Brian) (Entered: 04/10/2023) |
| 04/10/2023 | | APPEAL – Credit Card Payment received re 177 Notice of Appeal (Third Circuit) filed by The Lujan Claimants. ( Filing fee $505, receipt number ADEDC–4109024.) (Loizides, Christopher) (Entered: 04/10/2023) |
| 04/10/2023 | 189 | NOTICE OF APPEAL of 150 Memorandum Opinion and 151 Order. Appeal filed by General Star Indemnity Company. (Attachments: # 1 Certificate of Service)(Miller, Kathleen) Modified on 4/10/2023 (nms). (Entered: 04/10/2023) |
| 04/10/2023 | | APPEAL – Credit Card Payment received re 189 Notice of Appeal (Third Circuit) filed by General Star Indemnity Company. ( Filing fee $505, receipt number ADEDC–4109119.) (Miller, Kathleen) (Entered: 04/10/2023) |
| 04/10/2023 | 190 | NOTICE OF APPEAL of 150 Memorandum Opinion and 151 Order. Appeal filed by Arrowood Indemnity Company. (Joyce, Michael) Modified on 4/10/2023 (nms). (Entered: 04/10/2023) |
| 04/10/2023 | | APPEAL – Credit Card Payment received re 190 Notice of Appeal (Third Circuit) filed by Arrowood Indemnity Company. ( Filing fee $505, receipt number ADEDC–4109169.) (Joyce, Michael) (Entered: 04/10/2023) |
| 04/10/2023 | 191 | NOTICE OF APPEAL of 150 Memorandum Opinion, 151 Order,, Terminated Case, *(Third Circuit)*. Appeal filed by Endurance American Insurance Company, Endurance American Specialty Insurance Company, Traders and Pacific Insurance Company. (Attachments: # 1 Certificate of Service)(Benedek, Marla) (Entered: 04/10/2023) |
| 04/10/2023 | | APPEAL – Credit Card Payment received re 191 Notice of Appeal (Third Circuit), filed by Endurance American Insurance Company, Traders and Pacific Insurance Company, Endurance American Specialty Insurance Company. ( Filing fee $505, receipt number ADEDC–4109333.) (Benedek, Marla) (Entered: 04/10/2023) |
| 04/11/2023 | 192 | NOTICE of Docketing Record on Appeal from USCA for the Third Circuit re 41 Appellant's Brief filed by D & V Claimants. USCA Case Number 23–1666. USCA Case Manager: Stephanie (SB) (DOCUMENT IS RESTRICTED AND CAN ONLY BE VIEWED BY COURT STAFF) (cg1 ) (Entered: 04/11/2023) |

| 04/11/2023 | 193 | MEMORANDUM ORDER: The Emergency Motions (D.I. 152 , 154 , 156 ) are DENIED. The request for a temporary stay while I decided the motions before me is DISMISSED as moot. The request that I grant a temporary stay to April 27, 2023, is DENIED. Signed by Judge Richard G. Andrews on 4/11/2023. (nms) (Entered: 04/11/2023) |
|---|---|---|
| 04/11/2023 | 194 | NOTICE of Docketing Record on Appeal from USCA for the Third Circuit re 181 Notice of Appeal (Third Circuit) filed by Landmark Insurance Company, The Insurance Company of the State of Pennsylvania, Lexington Insurance Company, National Union Fire Insurance Co. of Pittsburgh PA et al.. USCA Case Number 23−1668. USCA Case Manager: Stephanie (DOCUMENT IS RESTRICTED AND CAN ONLY BE VIEWED BY COURT STAFF) (kr) (Entered: 04/11/2023) |
| 04/12/2023 | 195 | NOTICE of Docketing Record on Appeal from USCA for the Third Circuit re 177 Notice of Appeal (Third Circuit) filed by The Lujan Claimants. USCA Case Number 23−1664. USCA Case Manager: Stephanie (DOCUMENT IS RESTRICTED AND CAN ONLY BE VIEWED BY COURT STAFF) (lml3, ) (Entered: 04/12/2023) |
| 04/12/2023 | 196 | NOTICE of Docketing Record on Appeal from USCA for the Third Circuit re 178 Notice of Appeal (Third Circuit), filed by Liberty Mutual Insurance Company, Liberty Surplus Insurance Corporation, The Ohio Casualty Insurance Company, Liberty Insurance Underwriters Inc.. USCA Case Number 23−1665. USCA Case Manager: Stephanie (DOCUMENT IS RESTRICTED AND CAN ONLY BE VIEWED BY COURT STAFF) (lml3, ) (Entered: 04/12/2023) |
| 04/12/2023 | 197 | NOTICE of Docketing Record on Appeal from USCA for the Third Circuit re 180 Notice of Appeal (Third Circuit) filed by The Continental Insurance Co., Columbia Casualty Co.. USCA Case Number 23−1667. USCA Case Manager: Stephanie (DOCUMENT IS RESTRICTED AND CAN ONLY BE VIEWED BY COURT STAFF) (lml3) (Entered: 04/12/2023) |
| 04/12/2023 | 198 | NOTICE of Docketing Record on Appeal from USCA for the Third Circuit re 182 Notice of Appeal (Third Circuit) filed by Indian Harbor Insurance Company. USCA Case Number 23−1669. USCA Case Manager: Stephanie (DOCUMENT IS RESTRICTED AND CAN ONLY BE VIEWED BY COURT STAFF) (lml3) (Entered: 04/12/2023) |
| 04/12/2023 | 199 | NOTICE of Docketing Record on Appeal from USCA for the Third Circuit re 183 Notice of Appeal (Third Circuit) filed by Old Republic General Insurance Group. USCA Case Number 23−1670. USCA Case Manager: Stephanie (DOCUMENT IS RESTRICTED AND CAN ONLY BE VIEWED BY COURT STAFF) (lml3) (Entered: 04/12/2023) |
| 04/12/2023 | 200 | NOTICE of Docketing Record on Appeal from USCA for the Third Circuit re 184 Notice of Appeal (Third Circuit) filed by Travelers Casualty and Surety Company, Inc.. USCA Case Number 23−1671. USCA Case Manager: Stephanie (DOCUMENT IS RESTRICTED AND CAN ONLY BE VIEWED BY COURT STAFF) (lml3) (Entered: 04/12/2023) |
| 04/12/2023 | 201 | NOTICE of Docketing Record on Appeal from USCA for the Third Circuit re 185 Notice of Appeal (Third Circuit) filed by Great American E&S Insurance Company, Great American Assurance Company. USCA Case Number 23−1672. USCA Case Manager: Stephanie (DOCUMENT IS RESTRICTED AND CAN ONLY BE VIEWED BY COURT STAFF) (lml3) (Entered: 04/12/2023) |
| 04/12/2023 | 202 | NOTICE of Docketing Record on Appeal from USCA for the Third Circuit re 186 Notice of Appeal (Third Circuit), filed by Interstate Fire & Casualty Company, Allianz Global Risks US Insurance Company, National Surety Corporation. USCA Case Number 23−1673. USCA Case Manager: Stephanie (DOCUMENT IS RESTRICTED AND CAN ONLY BE VIEWED BY COURT STAFF) (lml3) (Entered: 04/12/2023) |
| 04/12/2023 | 203 | NOTICE of Docketing Record on Appeal from USCA for the Third Circuit re 187 Notice of Appeal (Third Circuit) filed by Colony Insurance Company, Argonaut Insurance Company. USCA Case Number 23−1674. USCA Case Manager: Stephanie (DOCUMENT IS RESTRICTED AND CAN ONLY BE VIEWED BY COURT STAFF) (lml3) (Entered: 04/12/2023) |

| 04/12/2023 | 204 | NOTICE of Docketing Record on Appeal from USCA for the Third Circuit re 188 Notice of Appeal (Third Circuit) filed by Gemini Insurance Company. USCA Case Number 23–1675. USCA Case Manager: Stephanie (DOCUMENT IS RESTRICTED AND CAN ONLY BE VIEWED BY COURT STAFF) (lml3) (Entered: 04/12/2023) |
| --- | --- | --- |
| 04/12/2023 | 205 | NOTICE of Docketing Record on Appeal from USCA for the Third Circuit re 189 Notice of Appeal (Third Circuit) filed by General Star Indemnity Company. USCA Case Number 23–1676. USCA Case Manager: Stephanie (DOCUMENT IS RESTRICTED AND CAN ONLY BE VIEWED BY COURT STAFF) (lml3) (Entered: 04/12/2023) |
| 04/12/2023 | 206 | NOTICE of Docketing Record on Appeal from USCA for the Third Circuit re 190 Notice of Appeal (Third Circuit) filed by Arrowood Indemnity Company. USCA Case Number 23–1677. USCA Case Manager: Stephanie (DOCUMENT IS RESTRICTED AND CAN ONLY BE VIEWED BY COURT STAFF) (lml3) (Entered: 04/12/2023) |
| 04/12/2023 | 207 | NOTICE of Docketing Record on Appeal from USCA for the Third Circuit re 191 Notice of Appeal (Third Circuit), filed by Endurance American Insurance Company, Traders and Pacific Insurance Company, Endurance American Specialty Insurance Company. USCA Case Number 23–1678. USCA Case Manager: Stephanie (DOCUMENT IS RESTRICTED AND CAN ONLY BE VIEWED BY COURT STAFF) (lml3) (Entered: 04/12/2023) |
| 04/19/2023 | 208 | Letter to the Court, received April 18, 2023, regarding the appeal. (nms) (Entered: 04/19/2023) |
| 04/24/2023 | 209 | STATEMENT OF ISSUES on Appeal filed by Allianz Global Risks US Insurance Company, Argonaut Insurance Company, Arrowood Indemnity Company, Colony Insurance Company, Columbia Casualty Co., Endurance American Insurance Company, Endurance American Specialty Insurance Company, Gemini Insurance Company, General Star Indemnity Company, Great American Assurance Company, Great American E&S Insurance Company, Gulf Insurance Company, Indian Harbor Insurance Company, Interstate Fire & Casualty Company, Landmark Insurance Company, Lexington Insurance Company, Liberty Insurance Underwriters Inc., Liberty Mutual Insurance Company, Liberty Surplus Insurance Corporation, National Surety Corporation, National Union Fire Insurance Co. of Pittsburgh PA et al., Old Republic Insurance Company, St. Paul Surplus Lines Insurance Company, The Continental Insurance Co., The Insurance Company of the State of Pennsylvania, The Ohio Casualty Insurance Company, Traders and Pacific Insurance Company, Travelers Casualty and Surety Company, Inc. (Attachments: # 1 Certificate of Service)(Richards, Deirdre) (Entered: 04/24/2023) |
| 04/24/2023 | 210 | NOTICE OF APPEAL of 150 Memorandum Opinion, and 151 Order. Appeal filed by Arch Insurance Company. (Miller, Kathleen) Modified on 4/24/2023 (nms). (Entered: 04/24/2023) |
| 04/24/2023 | | APPEAL – Credit Card Payment received re 210 Notice of Appeal (Third Circuit) filed by Arch Insurance Company. ( Filing fee $505, receipt number ADEDC–4119654.) (Miller, Kathleen) (Entered: 04/24/2023) |
| 04/24/2023 | 211 | STATEMENT of Issues on Appeal, filed by D & V Claimants. (Attachments: # 1 Certificate of Service)(Brown, Charles) Modified on 4/25/2023 (nms). (Entered: 04/24/2023) |
| 04/24/2023 | 212 | TRANSCRIPT REQUEST by D & V Claimants Already on file in the District Court Clerk's office (Brown, Charles) (Entered: 04/24/2023) |
| 04/24/2023 | 213 | TRANSCRIPT REQUEST by The Lujan Claimants for proceedings held on Feb 9 & 10, 2023 (D.I. 144 and 145). (Loizides, Christopher) (Entered: 04/24/2023) |
| 04/24/2023 | 214 | STATEMENT of Issues on Appeal, filed by The Lujan Claimants. (Loizides, Christopher) Modified on 4/25/2023 (nms). (Entered: 04/24/2023) |
| 04/25/2023 | 215 | TRANSCRIPT REQUEST by Allianz Global Risks US Insurance Company, Argonaut Insurance Company, Arrowood Indemnity Company, Colony Insurance Company, Columbia Casualty Co., Endurance American Insurance Company, Endurance American Specialty Insurance Company, Gemini Insurance Company, General Star Indemnity Company, Great American Assurance Company, Great American E&S |

| | | |
|---|---|---|
| | | Insurance Company, Gulf Insurance Company, Indian Harbor Insurance Company, Interstate Fire & Casualty Company, Landmark Insurance Company, Lexington Insurance Company, Liberty Insurance Underwriters Inc., Liberty Mutual Insurance Company, Liberty Surplus Insurance Corporation, National Surety Corporation, National Union Fire Insurance Co. of Pittsburgh PA et al., Old Republic Insurance Company, St. Paul Surplus Lines Insurance Company, The Continental Insurance Co., The Insurance Company of the State of Pennsylvania, The Ohio Casualty Insurance Company, Traders and Pacific Insurance Company, Travelers Casualty and Surety Company, Inc. for proceedings held on 02/09/2023, 02/10/2023 before Judge Richard G. Andrews, (Attachments: # 1 Certificate of Service)(Richards, Deirdre) (Entered: 04/25/2023) |
| 04/25/2023 | 216 | STATEMENT of Issues on Appeal and Designation of Items to be Included in the Record on Appeal, filed by Arch Insurance Company.(Miller, Kathleen) Modified on 4/25/2023 (nms). (Entered: 04/25/2023) |
| 05/01/2023 | 217 | NOTICE of Docketing Record on Appeal from USCA for the Third Circuit re 210 Notice of Appeal (Third Circuit) filed by Arch Insurance Company. USCA Case Number 23–1780. USCA Case Manager: Stephanie (DOCUMENT IS RESTRICTED AND CAN ONLY BE VIEWED BY COURT STAFF) (sb2, ) (Entered: 05/01/2023) |
| 05/01/2023 | 218 | TRANSCRIPT REQUEST: Transcript Not Needed Already on File, by Arch Insurance Company. (Miller, Kathleen) Modified on 5/2/2023 (nms). (Entered: 05/01/2023) |
| 05/08/2023 | 219 | DESIGNATION OF RECORD on Appeal filed by Boy Scouts of America, Delaware BSA LLC (Abbott, Derek) (Entered: 05/08/2023) |
| 05/11/2023 | 220 | NOTICE of Withdrawal of Counsel Gregory J. Flasser by First State Insurance Company, Hartford Accident and Indemnity Company, Navigators Specialty Insurance Company, Twin City Fire Insurance Company (Brogan, Daniel) (Entered: 05/11/2023) |
| 05/22/2023 | | CORRECTING ENTRY: The notice incorrectly filed as a motion at D.I. 221 has been removed from the docket. Counsel is to refile the notice using a notice filing code. (nms) (Entered: 05/22/2023) |
| 05/22/2023 | 221 | NOTICE of Withdrawal of Appearance and Request for Removal from Service List of Rachel Jankowski, Esquire by American Guarantee Insurance Company, American Zurich Insurance Company, Steadfast Insurance Company (Cecil, Robert) (Entered: 05/22/2023) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: BOY SCOUTS OF AMERICA and DELAWARE BSA, LLC, | : : : | Chapter 11 Case No. 20-10343-LSS (Jointly Administered) |
| Debtors. | : : | |
| | : | |
| NATIONAL UNION FIRE INSURANCE, COMPANY OF PITTSBURGH, PA, *et al*, | : : : | Civ. No. 22-1237-RGA (Lead Case) |
| Appellants, | : : | Civ. Nos. 22-1238-RGA, 22-1239-RGA, 22-1240-RGA, |
| v. | : : | 22-1241-RGA, 22-1242-RGA, 22-1243-RGA, 22-1244-RGA, |
| BOY SCOUTS OF AMERICA and DELAWARE BSA, LLC, *et al.,* | : : | 22-1245-RGA, 22-1246-RGA, 22-1247-RGA, 22-1249-RGA, |
| | : | 22-1250-RGA, 22-1251-RGA, |
| Appellees. | : : | 22-1252-RGA, 22-1258-RGA, & 22-1263-RGA (Consolidated) |

## OPINION

Theodore J. Boutrous, Jr. (argued), Richard J. Doren, Blaine H. Evanson, Gibson, Dunn & Crutcher, LLP, Los Angeles, California; Dierdre M. Richards (argued), Fineman Krekstein & Harris P.C., Wilmington, Delaware; Susan Gummow, Foran Glennon Palandech Ponzi & Rudloff P.C.; Michael A. Rosenthal, Mitchell A. Karlan, James Hallowell, Keith R. Martorana, Seth M. Rokosky, Gibson Dunn & Crutcher LLP, New York, New York, attorneys for appellants National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, and the Insurance Company of the State of Pennsylvania.

Kathleen M. Miller, Smith Katzenstein & Jenkins LLP, Wilmington, Delaware; Ronald P. Schiller, Matthew A. Hamermesh, Hangley Aronchick Segal Pudlin & Schiller, Philadelphia, PA, attorneys for appellant Arch Insurance.

Paul Logan, Post & Schell, P.C., Wilmington, Delaware; John C. Sullivan, Kathleen K. Kerns, Post & Schell, P.C., Philadelphia, Pennsylvania; George R. Calhoun, Ifrah PLLC, Washington, D.C., counsel for appellants Argonaut Insurance Company and Colony Insurance Company.

Michael J. Joyce, Joyce LLC, Wilmington, Delaware; Kevin Coughlin, Lorraine Armenti, Michael Hrinewski, Coughlin Midlige & Garland, LLP, Morristown, New Jersey; Britton C. Lewis, John M. Flynn, Carruthers & Roth, P.A., Greensboro, North Carolina, attorneys for appellant Arrowood Indemnity Company.

Maria Aprile Sawczuk, Goldstein & McClintock LLP, Wilmington, Delaware; Laura McNally, Emily Stone, Loeb & Loeb LLP, Chicago, Illinois; David Christian, David Christian Attorneys LLC, Chicago, Illinois, attorneys for appellants The Continental Insurance Company and Columbia Casualty Company.

Brian A. Sullivan, Werb & Sullivan, Wilmington, Delaware; John E.W. Baay II, Gieger Loborde & Laperouose, LLC, New Orleans, Louisiana; William H. White, Jr., Kiernan Trebach LLP, Washington, D.C., attorneys for appellant Gemini Insurance Company.

Kathleen M. Miller, Smith Katzenstein & Jenkins LLP, Wilmington, Delaware; Mary E. Borja, Gary P. Seligman, Ashley L. Criss, Wiley Rein LLP, Washington, D.C., attorneys for appellant General Star Indemnity Company.

Bruce W. McCullough, Bodell Bove, LLC, Wilmington, Delaware; Bruce D. Celebrezze, Clyde & Co US LLP, San Francisco, California; Konrad R. Krebs, Clyde & Co US LLP, Morristown, New Jersey; David Christian, David Christian Attorneys LLC, Chicago, Illinois, attorneys for appellants Great American Assurance Company, f/k/a Agricultural Insurance Company; Great American E&S Insurance Company, f/k/a Agricultural Excess and Surplus Insurance Company; and Great American E&S Insurance Company.

Kathleen M. Miller, Smith Katzenstein & Jenkins LLP, Wilmington, Delaware; Lloyd A. Gura, Pamela J. Minetto, Mound Cotton Wollan & Greengrass LLP, New York, New York, attorneys for appellant Indian Harbor Insurance Company, on behalf of itself and as successor in interest to Catlin Specialty Insurance Company.

R. Karl Hill, Seitz, Van Ogtrop & Green, P.A., Wilmington, Delaware; Douglas R. Gooding (argued), Jonathan D. Marshall, Choate, Hall & Stewart LLP, Boston, Massachusetts; Kim V. Marrkand, Laura Bange Stephens, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo PC, Boston, Massachusetts, attorneys for appellants Liberty Mutual Insurance Company, The Ohio Casualty Insurance Company, Liberty Insurance Underwriters, Inc. and Liberty Surplus Insurance Corporation.

Thaddeus J. Weaver, Dilworth Paxson LLP, Wilmington, Delaware; William E. McGrath, Jr. Dilworth Paxon LLP, Princeton, New Jersey, attorneys for appellant Munich Reinsurance America, Inc. f/k/a American Re-Insurance Company.

Stephen M. Miller, Carl N. Kunz, III, Sarah M. Ennis, Morris James LLP, Wilmington, Delaware; Margaret M. Anderson, Ryan T. Schultz, Adam A. Hachikian, Kenneth M. Thomas, Fox Swibel Levin & Carroll LLP, Chicago, Illinois, attorneys for appellant Old Republic Insurance Company.

Marla S. Benedeck, Cozen O'Connor, Wilmington, Delaware, attorneys for appellants Traders and Pacific Insurance Company, Endurance American Specialty Insurance Company, and Endurance American Insurance Company.

Louis J. Rizzo, Reger Rizzo & Darnall LLP, Wilmington, Delaware, attorney for appellants Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company), St. Paul Surplus Lines Insurance Company and Gulf Insurance Company.

David M. Fournier, Marcy J. McLaughlin Smith, Troutman Sanders Hamilton Sanders LLP, Wilmington, Delaware; Harris B. Winsberg (argued), Matthew G. Roberts, Parker Hudson, Rainer & Dobbs LLP, Atlanta, Georgia; Margaret H. Warner, Ryan S. Smethurst, Alex M. Spisak, McDermott Will & Emery, Washington, D.C., attorneys for appellant Allianz Global Risks U.S. Insurance Company.

David M. Fournier, Marcy J. McLaughlin Smith, Troutman Sanders Hamilton Sanders LLP, Wilmington, Delaware; Harris B. Winsberg, Matthew G. Roberts, Parker Hudson, Rainer & Dobbs LLP, Atlanta, Georgia; Todd J. Jacobs, John E. Bucheit, Paul J. Esker, Bradley Riley Jacobs, P.C., Chicago, Illinois, attorneys for appellants National Surety Corporation and Interstate Fire & Casualty Company.

Gilion Dumas (argued), Dumas & Vaughn, LL, Portland, Oregon; Charles J. Brown, III, Gellert Scali Busenkell & Brown LLC, Wilmington, Delaware, attorneys for appellants the D&V Claimants.

Delia Lujan Wolff (argued), Lujan & Wolff LLP, Hagatna, Guam; Christopher D. Loizides, Loizides, P.A., Wilmington, Delaware, attorneys for appellants the Lujan Claimants.

Jessica Lauria (argued), Glenn M. Kurtz (argued), White & Case LLP, New York, New York; Michael C. Andolina, Matthew E. Linder, Laura E. Baccash, Blair M. Warner, White & Case LLP, Chicago, Illinois; Ronald K. Gorsich, White & Case LLP, Los Angeles, California; Michael Stoner (argued), Haynes & Boone, Dallas, Texas; Derek C. Abbott, Andrew R. Remming, Paige N. Topper, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware, attorneys for debtor-appellees Boy Scouts of America and Delaware BSA, LLC.

R. Craig Martin, DLA Piper, LLP (US), Wilmington, Delaware; Richard G. Mason (argued), Douglas K. Mayer, Joseph C. Celentina, Mitchell S. Levy, Wachtell, Lipton, Rosen & Katz, New York, New York, attorneys for appellee Ad Hoc Committee of Local Councils of the Boy Scouts of America.

Kami E. Quinn (argued), Rachel H. Jennings, Kyle Y. Dechant, December L. Huddleston, Gilbert LLP, Washington, D.C.; Robert S. Brady (argued), Edwin J. Harron, Kenneth J. Enos, Ashley E. Jacobs, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware, attorneys for appellee the Future Claimants' Representative.

Philip D. Anker (argued), Wilmer Cutler Pickering Hale and Dorr LLP, New York, New York; James P. Ruggeri, Joshua D. Weinberg, Ruggeri Parks Weinberg LLP, Washington, D.C.; Joel Millar, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C.; Erin R. Fay, Gregory J. Flasser, Bayard, P.A., Wilmington, Delaware, attorneys for appellees Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, and Navigators Specialty Insurance Company.

Robert D. Cecil, Tybout, Redfearn & Pell, Wilmington, Delaware; Mark D. Plevin, Kevin D. Cacabelos, Crowell & Morning LLP, San Francisco, California; Tacie H. Yoon, Rachel A. Jankowski, Crowell & Morning LLP, Washington, D.C., attorneys for appellees American Zurich Insurance Company, American Guarantee Insurance Company, and Steadfast Insurance.

3

Matthew G. Summers, Chantelle D. McClamb, Ballard Spahr LLP, Wilmington, Delaware; Harry Lee, John O'Connor, Steptoe & Johnson, LLP, Washington, D.C.; Stephen Warren, attorneys for appellees Clarendon National Insurance Company, as successor in interest by merger to Clarendon America Insurance Company; River Thames Insurance Company Limited; and Zurich American Insurance Company, as successor to Maryland Casualty Company, Zurich Insurance Company, and Maryland American General Insurance Company.

Stamatios Stamoulis, Stamoulis & Weinblatt LLC, Wilmington, Delaware; Tancred Schiavoni, O'Melveny & Meyers LLP, New York, New York; Stephen Warren, O'Melveny & Meyers LLP, Los Angeles, California; Jonathan D. Hacker, O'Melveny & Meyers LLP, Washington, D.C., attorneys for appellees Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America.

Stamatios Stamoulis, Stamoulis & Weinblatt LLC, Wilmington, Delaware; Simpson Thacher & Bartlett LLP, New York, New York, attorneys for Federal Insurance Company and Westchester Fire Insurance Company.

Richard M. Pachulski, Alan J. Kornfeld, Debra I. Grassgreen, Iain A.W. Nasatir, Pachulski Stang Ziehl & Jones LLP, Wilmington, Delaware, attorneys for the Official Committee of Tort Claimants.

Rachel B. Mersky, Monzack Mersky and Browder, P.A., Wilmington, Delaware; David J. Molton, Eric R. Goodman, Brown Rudnick LLP, New York, New York; Sunni P. Beville, Tristan G. Axelrod, Brown Rudnick LLP, Boston, Massachusetts, attorneys for the Coalition of Abused Scouts for Justice.

David M. Klauder, Bielli & Klauder, LLC, Wilmington, Delaware; Thomas E. Patterson, Daniel J. Bussel, Robert J. Pfister, Sasha M. Gurvitz, KTBS Law LLP, Los Angeles, California, attorneys for each of The Zalkin Law Firm, P.C. and Pfau Cochran Vertetis Amala PLLC.

March 27, 2023

ANDREWS, UNITED STATES DISTRICT JUDGE:

The above-captioned consolidated appeals, arising in the chapter 11 cases of debtors Boy

Scouts of America and Delaware BSA, LLC (together, "BSA" or "Debtors"), were taken from

the Bankruptcy Court's Order, dated September 8, 2022 (D.I. 1-1) ("Confirmation Order"),

making certain findings of fact and conclusions of law and confirming BSA's plan of

reorganization (Bankr. D.I. 10296) ("Plan"),[1] together with the Bankruptcy Court's related

Opinion, dated July 29, 2022 (Bankr. D.I. 10136), *In re Boy Scouts of Am.*, 642 B.R. 504 (Bankr.

D. Del. 2022) ("Confirmation Opinion"), which approved key elements of the Plan.

The Plan embodies a global resolution of Scouting[2]-related sexual abuse ("Abuse")

claims.  The cornerstone of the Plan is a series of settlements, resolving a complex array of

overlapping liabilities and insurance rights, that will establish what is apparently the largest

sexual abuse compensation fund in the history of the United States—the Settlement Trust.  These

settlements are the product of nearly two years of mediation and provide at least $2.46 billion in

cash and property to the Settlement Trust benefiting Abuse Survivors, plus significant

unliquidated assets, including valuable insurance rights worth up to another $4 billion plus.  *In re*

*Boy Scouts of Am.*, 642 B.R. at 616; (Bankr. D.I. 9280 ¶¶ 52, 55).  The Plan "channels" to the

Settlement Trust all Abuse Claims against BSA, the Related Non-Debtor Entities, the Local

Councils, certain Chartered Organizations, and those covered by insurance policies issued by the

Settling Insurance Companies and provides for coextensive nonconsensual releases of the

---

[1] The docket of the Chapter 11 cases, captioned *In re Boy Scouts of Am. and Del. BSA, LLC*, No. 20-10343-LSS (Bankr. D. Del.), is cited herein as "Bankr. D.I. __."  The appendix (D.I. 95-100) filed contemporaneously with Appellees' consolidated answering brief (D.I. 66) is cited herein as "SA__."  The appendix (D.I. 46) filed contemporaneously with D&V Claimants' opening brief (D.I. 41) is cited herein as "ADV__," and the appendix (D.I. 44) filed contemporaneously with Lujan Claimants' opening brief (D.I. 40) is cited herein as "ALW__".  "A.__" refers to documents in the Notice of Lodging of Multimedia Filing filed by the Certain Insurers (D.I. 47).
[2] Capitalized terms not defined herein have the meaning ascribed to them in the Plan.

channeled Abuse Claims ("Releases"). The channeled Abuse Claims will be processed, liquidated, and paid by the Settlement Trustee in accordance with the Settlement Trust Agreement and Trust Distribution Procedures (D.I. 1-4 Ex. A) ("TDP" or "TDPs") which were the subject of intensive negotiations by BSA and various constituencies during the chapter 11 cases. The Channeling Injunction and Releases are the "cornerstone of the Plan," and are necessary to ensure an equitable process by which abuse Survivors' claims will be administered and paid. *In re Boy Scouts of Am.*, 642 B.R. at 610. This Court's affirmance of the Confirmation Order is a condition precedent to the Plan going effective. (D.I. 66 at 8-9).

The Bankruptcy Court characterized BSA's chapter 11 proceedings as "an extraordinary case by any measure"—and indeed every aspect of the record bears this out. *In re Boy Scouts of Am.*, 642 B.R. at 517. Unlike the typical chapter 11 debtor, BSA is a Congressionally created, non-profit organization, existing for over a hundred years, and operating through tens of thousands of non-debtor entities—Local Councils and Chartered Organizations. The number and nature of claims faced by the Debtor is staggering and apparently unprecedented—82,209 unique and timely claims asserting the type of abuse for which, as the Bankruptcy Court observed, "no compensation will ever be enough." *Id.* at 518. Perhaps nowhere is the extraordinary nature of this case more apparent, however, than in the efforts of the many constituencies and their professionals over the past several years to negotiate and confirm a plan. During three years of chapter 11 proceedings there were thousands of hours of mediated negotiations among more than a dozen stakeholder groups, fifty-nine hearings, a twenty-two day confirmation trial, and 300 pages of opinion and supplemental findings. The Plan was supported by every estate fiduciary and nearly every organized creditor group—a commendable result for such a lengthy, contentious, and "emotionally charged" proceeding. The Plan, if upheld, will ensure the survival of an American institution, not only so that it may continue carrying out its charitable mission,

6

but as a means to arguably more important ends: providing long-awaited compensation to abuse Survivors and implementing youth protection measures to ensure that the crimes and mistakes of the past are not repeated.

The case is extraordinary. More prosaically, though, the Plan must meet the requirements of the Bankruptcy Code for confirmation, and several parties argue strenuously that it did not. Fifteen sets of Appellants, all non-settling insurance companies, called "Certain Insurers" or "Insurers" in this opinion, filed one set of arguments. (D.I. 45). Two of the fifteen sets of insurance companies, Liberty and Allianz, separately raised additional issues. (D.I. 43). Two sets of abuse claimants raised issues. (D.I. 41: D.I. 40). One set is represented by the law firm of Dumas & Vaughn, and they are referred to as "D&V Claimants." The other set is represented by the law firm of Lujan & Wolff, and they are referred to as "Lujan Claimants." On the appellee side, BSA, the Ad Hoc Committee of Local Councils, the Future Claimants' Representative, the Coalition of Abused Scouts for Justice ("Coalition"), and Settling Insurance Companies ("Appellees") have each filed briefs in support of the Confirmation Order.

Appellants argue on many fronts that the Plan did not meet requirements for confirmation, and I have carefully considered each of these arguments. Based on the record, Appellants have failed to put forth evidence that would demonstrate clear error in the Bankruptcy Court's careful findings of facts. Finding no error in the Bankruptcy Court's legal conclusions either, I will affirm the Confirmation Order.

## I.     BACKGROUND

The Confirmation Opinion sets forth detailed background facts that are not repeated here, including: the delivery of Scouting and the relationship between and among BSA, Local Councils, Chartered Organizations, and related non-Debtor entities, *see In re Boy Scouts of Am.*, 642 B.R. at 521-24; the sexual abuse lawsuits, *see id.* at 525-26; BSA's complex insurance

7

A00048

program, including coverage for BSA as the Insured, Coverage for Local Councils as Additional Insureds, and Coverage for Chartered Organizations as Additional Insureds, *see id.* at 526-30; prepetition coverage litigation, including resolutions and attempts to resolve abuse claims, *see id.* at 530-32; post-petition events, including the bar date order, mediations, the Plan process and voting, continued mediation and additional settlements, and the development of the Settlement Trust Agreements, the TDPs, and the Youth Protection terms, *see id.* at 533-49; and finally, the plan modifications, supplemental disclosure, and confirmation, *see id.* at 550-52.

As the Bankruptcy Court observed, and as was confirmed at oral argument, the facts supporting Plan confirmation are largely uncontroverted, whereas the import of the facts is very much in dispute. *In re Boy Scouts of Am.*, 642 B.R. at 521 n.1. This Opinion includes only a general overview of the Debtors' business, the sexual abuse claims, the insurance policies, and the core components of the settlements embodying the Plan. Otherwise, I do not repeat the thorough background and detailed findings made by the Bankruptcy Court, except as necessary to discuss the legal issues raised on appeal and to address the one disputed finding of fact: whether it was clear error for the Bankruptcy Court to find that the Plan likely pays Direct Abuse claimants in full.

### A.    Overview of BSA, Local Councils and Chartered Organizations

BSA has existed since 1916. BSA's charitable mission is to prepare young people for life by instilling in them the values of the Scout Oath and Law and encouraging them to be trustworthy, kind, friendly and helpful. BSA trains young men and women in responsible citizenship, character development, and self-reliance through participation in a wide range of outdoor activities, educational programs, and career-oriented programs in partnership with community organizations. Congress recognized the "importance and magnitude" of BSA's work

8

and observed that BSA "tends to conserve the moral, intellectual, and physical life of the coming generation." *See* H.R. Rep. No. 64-130, at 245 (1916).

Scouting operates through a network of organizations that share a common charitable mission. BSA, in accordance with its congressional charter, develops and disseminates the structure and content of the Scouting program, owns and licenses intellectual property, and establishes merit badge requirements and membership qualifications. BSA also purchases general liability insurance that is shared among BSA, Local Councils, and Chartered Organizations (since the 1970s) and provides shared technical support, accounting, human resources and other corporate services to the Local Councils. Each of these Local Councils and Chartered Organizations, along with BSA, form part of an interconnected organizational structure that is crucial to carrying out BSA's mission.

Most Scouts never interact with the national BSA organization directly. Instead, the tens of thousands of Scouting units nationwide—*e.g.*, "troops," "packs," and "dens"—are organized locally, through "Chartered Organizations," including churches, schools, and civic associations, which are often referred to as Scouting's partners. These Scouting units and their Chartered Organization partners are, in turn, supported by the Local Councils. The Bankruptcy Court found that it takes:

> all three levels of organization to deliver Scouting—national, which sets policy and provides administrative services, Local Councils, which charter Organizations, recruit Scouts and volunteer leaders and enforce BSA rules and regulations, and Chartered Organizations, which provide facilities and use Scouting to further one of their goals of youth character development, career skill development, community service, patriotism, military and veteran recognition or faith-based youth ministry.

*In re Boy Scouts of Am.*, 642 B.R. at 597. Approximately 250 Local Councils in the United States cover geographic areas of varying size, population, and demographics. Each Local Council is a non-profit organization incorporated under applicable state law. The Local Councils

9

are chartered by BSA on an annual basis to facilitate the delivery of the Scouting program. Local Councils are led by paid professional adult leaders with assistance from volunteers and their own boards of directors and senior management. Pursuant to BSA bylaws, BSA may revoke or refuse to renew a Local Council charter at any time in its sole discretion and in the best interest of Scouting. In such circumstances, the articles of incorporation for the Local Council provide that such council will take the actions necessary to dissolve the entity.

BSA relies on Local Councils for services essential to Scouting, including funding local Scouting programs and initiatives, recruiting Scouts and volunteer leaders, Scout and volunteer training, opportunities for rank advancement, local enforcement of BSA's policies, rules, and regulations, and registration of members and leaders. In addition, Local Councils own and operate hundreds of unique camps and other properties that host outdoor activities, educational programs, and leadership training for youth involved in BSA's Scouting programs.

Through Local Councils, BSA maintains relationships with local donors and Chartered Organizations, which currently sponsor more than 44,000 local Scouting units throughout the country. These relationships, vital to the success of Scouting, drive membership and provide essential funding. Without a Local Council operating in a particular region, BSA would lose access to the resources necessary to operate Scouting units in such region. Thus, if a Local Council were to dissolve or file for bankruptcy, it would be difficult for BSA to reestablish the community ties necessary for a successful Scouting program.

BSA receives services and support from certain Related Non-Debtor Entities. These entities include (a) BSA Asset Management, LLC, a Delaware limited liability company that provides BSA with investment management and advisory services; (b) BSA Commingled Endowment Fund, LP, a Delaware limited partnership through which BSA's and certain Local Councils' investments are managed by BSA Asset Management, LLC; (c) BSA Endowment

10

A00051

Master Trust, a non-profit trust established for investing funds contributed to the BSA

Commingled Endowment Fund, LP; (d) National Boy Scouts of America Foundation, a non-

profit corporation that partners with Local Councils and other donors by providing support for

major-gift fundraising efforts and managing donor-advised funds; (e) Learning for Life, a non-

profit corporation that provides important education programs and mentoring to young people for

future career opportunities; (f) Arrow WV, Inc., a non-profit corporation that owns, develops,

and leases the Summit Bechtel Family National Scout Reserve high adventure base in West

Virginia to BSA; and (g) Atikaki Youth Ventures Inc. and Atikokan Youth Ventures Inc., non-

share capital corporations formed under the laws of Canada that own and operate the BSA

portions of the Northern Tier High Adventure Base located in Canada. There is "no record that

any of the Non-Related Debtor Entities is involved in anything other than Scouting." *In re Boy

Scouts of Am.*, 642 B.R. at 598.

      **B.**      **Overview of Abuse Claims**

      Prior to the Petition Date, BSA was a defendant in a significant number of Abuse-related

lawsuits and claims asserted by Abuse Survivors. Most of these lawsuits also named non-debtor

entities as co-defendants, including Local Councils, Chartered Organizations, and certain Related

Non-Debtor Entities. The Abuse allegations in these claims and complaints ranged in severity,

and plaintiffs generally sought economic and noneconomic damages, punitive damages, and non-

monetary relief. The vast majority of the Abuse Claims settled before the Petition Date involved

allegations of Abuse that occurred more than thirty years ago. As a result of a growing trend of

changes in state statutes of limitations for claims related to childhood sexual abuse, the number

of Abuse claims against BSA sharply increased during the time period immediately preceding

BSA's chapter 11 Cases. Since 2002, approximately seventeen states have enacted legislation

allowing victims of sexual abuse to assert claims that previously would have been barred by statutes of limitation. More than a dozen of those states did so in 2019.

Beginning in 2016, BSA, with the assistance of its national coordinating counsel handling Abuse claims litigation, Ogletree Deakins Nash, Smoak & Stewart, worked to resolve Abuse Claims that were either the subject of pre-litigation demands or pending lawsuits. BSA sought to implement a coordinated, uniform approach for investigating, defending, and resolving Abuse Claims and ensuring consistent defense and claim resolution strategies across the country. With certain exceptions, BSA generally administered and defended Abuse Claims on behalf of Local Councils, Related Non-Debtor Entities, and Chartered Organizations, as well as authorizing and paying settlement amounts related to Abuse Claims, such that these entities did not bear the costs of litigation or settlement of Abuse Claims. BSA was able to resolve approximately 250 prepetition Abuse Claims and spent approximately $150 million on these efforts between 2017 and 2019, including Abuse Claims asserted against BSA, Local Councils, and/or Related Non-Debtor Entities. During 2018-2019, BSA, with assistance of legal and financial advisors, began to explore strategic options for achieving an equitable and global out-of-court resolution of Abuse Claims. In late 2019, BSA participated in a mediation with counsel to certain Abuse Survivors and some of BSA's insurers. The mediation was unsuccessful.

On February 18, 2020 (the "Petition Date"), BSA filed for relief under chapter 11 the Bankruptcy Code. On May 26, 2020, the Bankruptcy Court entered an order establishing November 16, 2020 as the deadline for holders of claims, including Abuse Claims, to file them (Bankr. D.I. 695) ("Bar Date Order"). The Bar Date Order also approved procedures for the provision of notice to known and unknown survivors of Scouting-related abuse, and procedures for the confidential submission of Abuse Claims. As of the bar date, approximately 82,200

12

unique and timely Direct Abuse Claims, 14,000 largely, if not entirely, contingent and unliquidated Indirect Abuse Claims, and 950 non-abuse claims were filed in the chapter 11 cases.

**C.    Overview of Insurance Program**

BSA's insurance program has evolved over the last eighty years, with variations in insurance carriers, covered entities, type and amount of limits, and the use of deductibles. Nearly all years have some available coverage for Abuse Claims, whether through a per-occurrence limit, an aggregate limit, or both.

Between at least 1935 and 1982, BSA purchased primary insurance policies providing coverage for Abuse Claims, with the limits of liability subject to a per-person or per-occurrence limit, but no aggregate limit. A per-occurrence limit represents how much an insurance policy will pay for any one occurrence whereas an aggregate limit represents the overall amount a policy will pay for all occurrences that take place during the policy period; once the applicable payments made by these policies reach the aggregate limit, the policy will no longer respond to claims. Certain of the older policies during this period are missing or are disputed. From 1969 to 1982, BSA purchased excess insurance policies, which are triggered once the primary insurance coverage is exhausted. Again, most of these excess policies provide per-occurrence coverage with no aggregate limit, meaning that once the primary policy's per-occurrence limit is exhausted, the excess policy attaches to cover any remaining value of the claim. As a result, the policies can repeatedly pay out the per-occurrence limits. Beginning in 1983, BSA insurance policies generally incorporated aggregate limits for Abuse Claims. Because of these aggregate limits, BSA purchased significantly more layers of excess coverage. In the post-1982 period alone, approximately $3.6 billion of coverage is potentially available within the policies' aggregate limits (after accounting for prior settlements and exhaustion of coverage).

13

Starting in 1986 and continuing through 2018, BSA purchased primary and first-layer excess policies that have deductibles that match the policies' limits of liability, dollar for dollar. (Bankr. D.I. 9398, Gutzler Decl. ¶¶ 12-13). The "matching deductible" policies required BSA to pay or reimburse the deductibles before excess coverage attached to cover the remaining value of a claim to the extent it exceeded the limits of the underlying policies. (*Id.*) During these years, BSA procured significant excess insurance coverage above the "matching deductible" primary and first-layer excess policies. In most years, the BSA had over $140 million in excess insurance coverage available for a single coverage year. (*Id.*).

Beginning in 2019 and continuing to the present, BSA discontinued its practice of procuring policies with matching deductibles. In addition to providing insurance coverage to BSA, the BSA insurance program also provided insurance coverage to Local Councils beginning in 1971. Prior to 1971, Local Councils were not insureds under BSA's insurance program; instead, they independently purchased insurance policies. For a brief period in the 1970s, BSA offered each Local Council the opportunity to pay a premium to be added as an additional insured (i.e., a party with rights to the insurance coverage) on BSA's insurance policies. Many Local Councils elected this option; others continued to purchase coverage independently. Starting in 1975, all Local Councils became insureds under BSA's insurance program, whether as an additional insured (between 1975 and 1977) or as a named insured (between 1978 and the present). Beginning in 1976, BSA also amended its policies to provide coverage for Chartered Organizations. Starting in 1978, BSA specifically included Chartered Organizations as insureds on its insurance policies, albeit with some variation in coverage. Some, but not all, Chartered Organizations are also listed as additional insureds on their Local Council's independent insurance policies.

14

D.      **Overview of Mediation and Plan Process**

By filing the chapter 11 cases, BSA sought a global resolution that would achieve their dual objectives of (i) providing an equitable, streamlined, and certain process by which abuse survivors may obtain compensation for Abuse while preserving trust assets such as insurance policies and (ii) ensuring that BSA has the ability to continue its vital charitable mission.

On June 9, 2020, the Bankruptcy Court appointed three mediators in the chapter 11 cases to aid BSA in achieving consensus. For nearly two years, BSA engaged in near-continuous mediation with every major creditor constituency in the chapter 11 cases, including the Certain Insurers. Mediation ultimately led to overwhelming support for the Plan by key constituencies, including (i) the representatives of almost all abuse survivors, including the official committee appointed by the United States Trustee ("UST") to represent Abuse Survivors ("Tort Claimants' Committee"), the Future Claimants' Representative, the Coalition (an ad hoc committee representing more than 70,000 Abuse Survivors), and the Pfau/Zalkin claimants (certain survivors represented by two law firms), (ii) the Settling Insurance Companies, (iii) the Debtors' prepetition secured lender, JPMorgan Chase Bank, (iv) the official committee for general unsecured creditors ("Creditors' Committee"), (v) the Ad Hoc Committee for Local Councils, (vi) and various Chartered Organizations, including The Church of Jesus Christ of Latter-day Saints (TCJC), a long-time Chartered Organization that ended its relationship with BSA in 2019, the United Methodist ad hoc committee, representing the United Methodist Entities involved in Scouting, and the Roman Catholic ad hoc committee ("RCAHC") representing Roman Catholic Entities involving in Scouting. The Archbishop of Agaña (the "Archbishop") and the official creditors' committee in the AOA's bankruptcy case ("AOA Committee"), which opposed the Plan, have since settled with the Debtors and no longer dispute the Confirmation Opinion and Confirmation Order. The final voting results following solicitation of votes on the Plan

15

demonstrate overwhelming creditor support for the Plan, with all voting classes voting to accept.

With respect to Debtor BSA, 85.72% of holders of Class 8 Direct Abuse Claims and 82.41% of

Class 9 Indirect Abuse Claims voted to accept the Plan. *See In re Boy Scouts of Am.*, 642 B.R. at

617 (finding that 85% acceptance by Class 8 constituted overwhelming creditor support for the

Plan); Bankr. D.I. 9275.

### E.    The Core Components of the Plan

The settlements achieved through mediation and embodied in the Plan resulted in

substantial monetary and other valuable contributions to the Settlement Trust and non-monetary

contributions to the Scouting mission (including an enhanced Youth Protection Program). The

Plan and Confirmation Order create the Settlement Trust. It is funded with more than $2.46

billion in cash and property and is assigned insurance and other rights under policies of the

Debtors, Local Councils, and certain Chartered Organizations. The Settlement Trust will also be

entitled to pursue additional recoveries for the benefit of Abuse Survivors against non-settling

parties, including many Chartered Organizations and insurance companies. (D.I. 1-4 Art. IV.O).

### 1.    Contributions and Settlements

BSA's contributions[3] to the Settlement Trust include the following: (i) the BSA

Settlement Trust Note in the principal amount of $80 million, (ii) the Insurance Assignment, (iii)

BSA's right, title, and interest in and to the Artwork, which is deemed to be valued at

approximately $59 million, (iv) the BSA Cash Sharing Amount, (v) the Oil and Gas Interests,

valued at approximately $7.6 million, (vi) BSA's Settlement Trust Causes of Action, and (vii)

---

[3] Contributions also include BSA's Net Unrestricted Cash and Investments as of the Plan's effective date, which includes net proceeds of the sale of certain assets, after Reorganized BSA has received proceeds of a loan by the National Boy Scout Foundation in the amount of $42.8 million, less certain amounts, including certain exit fees and interest to be paid to JPMorgan Chase Bank, allowed administrative expenses, and allowed tax claims. (D.I. 1-4 at Art. I A.185).

16

the assignment of any Perpetrator Indemnification Claims held by BSA. (D.I. 1-4 Art I.A.45). The Local Councils are also providing valuable contributions to the Settlement Trust, including, in the aggregate: (i) $500 million in cash or real property, (ii) the DST Note, a non-recourse interest-bearing promissory note in the principal amount of $100 million, (iii) the Local Council Insurance Rights, and (iv) material insurance rights in the BSA Insurance Policies. (D.I. 1-4 Art. V.S.1.a). The Local Councils will also make the Chartered Organization Contribution of approximately $40 million to obtain certain protections for Participating Chartered Organizations. (D.I. 1-4 Art. I.A.181).

The Plan also includes valuable Insurance Settlements with Hartford, Century and Chubb, Zurich, and Clarendon ("Settling Insurance Companies"). In exchange for the benefits of the Channeling Injunction and Releases, the Settling Insurance Companies will make cash contributions of more than $1.6 billion to the Settlement Trust as consideration for the purchase of their respective policies. The Insurance Settlements also resolve certain other disputes between the parties to the benefit of BSA's estates and other parties in interest. (Bankr. D.I. 6210; Bankr. D.I. 7745; Bankr. D.I. 7929; Bankr. D.I. 8102). Finally, the Plan includes other settlements with critical constituencies to BSA, including (a) a settlement with the United Methodist Entities providing, among other things, a $30 million contribution to the Settlement Trust and a partnership to strengthen Youth Protection efforts and Methodist partnerships with Scouting (Bankr. D.I. 7884, 7929, 8907); (b) the JPMorgan Chase Bank/Creditors' Committee Settlement (Bankr. D.I. 2292; D.I. 1-4 Art. V.S.2); and (c) the Tort Claimants' Committee/Abuse Survivor Settlement, under which BSA agreed to certain governance changes to the Settlement Trust, the addition of an optional Independent Review Option in the TDP, the Youth Protection Program, and clarifications to certain Plan terms (Bankr. D.I. 8772).

17

###### 2.   Youth Protection Program

BSA is committed to becoming the gold standard in Abuse prevention. BSA's Youth Protection Program will be strengthened by Plan provisions, which ensure that Abuse Survivors play a key role in shaping BSA's future youth protection efforts. The provisions were the result of months of cooperative discussions and mediation sessions including a group of Survivors affiliated with the Coalition, who formed what became known as the Survivors Working Group, affiliated with the Coalition, Survivors from the Tort Claimants' Committee, representatives from BSA and Local Councils, and a number of youth protection experts. As a result of the Youth Protection Program, BSA will engage in a number of initiatives, including (a) hiring a Youth Protection executive with extensive experience in prevention of childhood abuse, (b) forming a Youth Protection Committee, and (c) conducting an extensive review and update of existing policies. (D.I. 1-4, Ex. L). BSA will also appoint a qualified survivor of abuse in Scouting to the organization's national executive board. (Bankr. D.I. 8647).

###### 3.   Chartered Organizations

There are three categories of Chartered Organization participation in the Plan that enable the global resolution of Scouting-related Abuse Claims. First, Contributing Chartered Organizations, which includes the United Methodist Entities, are those that make a substantial contribution to the Settlement Trust in an amount deemed sufficiently substantial by BSA or, after the Plan goes effective, the Settlement Trust, and become a Protected Party with respect to the Channeling Injunction and Releases. (D.I. 1-4 Art. I.A.86). Second, Participating Chartered Organizations, the default under the Plan, receive Limited Protected Party status and more limited protection of the Channeling Injunction and Releases. (D.I. 1-4 Art. I.A.199; Bankr. D.I. 9280 ¶ 191). Third, Opt-Out Chartered Organizations may opt out of participation in the Plan and will remain liable for all Scouting-related Abuse Claims regardless of whether such Abuse

18

A00059

Claims arose before or after January 1, 1976, with a limited exception for Abuse Claims covered under an insurance policy issued by a Settling Insurance Company. (D.I. 1-4 Art. I.A.196; Bankr. D.I. 9280 ¶ 197; Bankr. D.I. 9395 ¶ 32).

    **4.**     **Channeling Injunction and Releases**

To facilitate a global resolution of Abuse Claims, the Plan channels to the Settlement Trust all Scouting-related Abuse Claims against BSA, Related Non-Debtor Entities, Local Councils, Contributing Chartered Organizations, Settling Insurance Companies, and their respective Representatives—collectively defined under the Plan as "Protected Parties"—and provides for corresponding Releases in favor of such parties. The Plan also channels to the Settlement Trust and provides for corresponding releases of (a) all Post-1975 Chartered Organization Abuse Claims against Participating Chartered Organizations and their Representatives—collectively defined under the Plan as "Limited Protected Parties,"—and (b) all Opt-Out Chartered Organization Abuse Claims against Opt-Out Chartered Organizations and their Representatives. (D.I. 1-4 Arts. X.F, X.J.3). All the monetary contributions provided to the Settlement Trust by resolving Abuse Claims against the Protected Parties and Limited Protected Parties under the Plan are only possible because of the Channeling Injunction, Insurance Entity Injunction, and Releases. *In re Boy Scouts of Am.*, 642 B.R. at 586. The structure is critical to securing the contributions from the Local Councils, Chartered Organizations, and Settling Insurance Companies, and unlocking BSA's insurance for the benefit of the Settlement Trust. *Id.* at 605.

    **F.**     **The Confirmation Hearing, Opinion, and Order**

BSA's contested confirmation hearing commenced on March 14, 2022, and continued for twenty-two trial days. *In re Boy Scouts of Am.*, 642 B.R. at 552. Fifteen days were devoted to the submission of testimony and evidence, and seven days were devoted to oral argument. *Id.*

The trial record is extensive. Twenty-six witnesses, eleven of whom were qualified as experts, provided written or live testimony and were subject to cross-examination. *Id.* The hearing transcripts for the confirmation hearing total more than 5,000 pages.[4] More than one thousand exhibits, totaling tens of thousands of pages, and portions of six recorded depositions were admitted into evidence. *Id.* At the close of the confirmation hearing, the Bankruptcy Court took the matter under advisement. *Id.* The opinions of many of BSA's expert witnesses were not challenged by competing expert opinions or testimony. For example, no party produced a witness to contradict the opinions of Dr. Charles Bates (who testified as to the range of aggregate values of Direct Abuse Claims for the purposes of confirmation) or Nancy Gutzler (who testified as to the reasonableness of the insurance settlements, as well as the amount of insurance available from Non-Settling Insurance Companies).

On July 29, 2022, the Bankruptcy Court issued the Confirmation Opinion. The Confirmation Opinion did not confirm or deny confirmation of the Plan, as there were still certain issues to be addressed. But the Confirmation Opinion approved the key elements of the Plan. Following issuance of the Confirmation Opinion, BSA, in consultation with the other Plan supporters, modified the Plan and prepared a revised proposed Confirmation Order that conformed to and supplemented the Confirmation Opinion. To this end, on August 12, 2022, BSA filed the Debtors' Motion to Amend and Supplement the Findings of Fact and Conclusions of Law in the Confirmation Opinion (Bankr. D.I. 10188) ("Rule 7052 Motion"), which requested the Bankruptcy Court's authorization to amend and supplement the Confirmation Opinion and entry of the proposed Confirmation Order confirming the modified Plan. During a status conference held on August 18, 2022, the Bankruptcy Court acknowledged the need for certain

---

[4] Bankr. D.I. 9341, 9354, 9389, 9406, 9407, 9408, 9409, 9454, 9455, 9482, 9490, 9497, 9517, 9530, 9544, 9562, 9563, 9564, 9578, 9616, 9638, 9639, 9646, 9648, 9656.

findings not discussed in the Confirmation Opinion to be included in the revised Confirmation Order, and it encouraged the parties to work together to accomplish this goal. (*See* Bankr. D.I. 10215 at 11:4–12:14).

The Bankruptcy Court held hearings on September 1 and September 7, 2022. (Bankr. D.I. 10288; Bankr. D.I. 10317). Before each hearing, BSA mediated with Appellants about potential Plan modifications and revisions to the proposed Confirmation Order. (*See* Bankr. D.I. 10288 at 8:2-9:9; Bankr. D.I. 10317 at 4:23- 8:20). At each of the hearings, the Bankruptcy Court afforded all parties an opportunity to raise issues that they believed were not addressed in the Confirmation Opinion. (Bankr. D.I. 10288 at 11:7–23, 14:21–23; Bankr. D.I. 10317 at 8:21– 23). The Certain Insurers proposed twelve categories of revisions to the proposed Confirmation Order and modified Plan, and the Lujan Claimants objected to modifications related to the Insurance Settlement Agreements. (Bankr. D.I. 10246, 10247).

At the September 1, 2022 hearing, the Bankruptcy Court reviewed the changes made to the proposed Confirmation Order and the modified Plan that were in dispute, ruled on certain of these issues, and made its own modifications to the proposed Confirmation Order. (Bankr. D.I. 10288). The Bankruptcy Court ultimately directed parties to negotiate certain remaining disputed provisions. (*Id.* at 112:1–113:10). The parties were unable to resolve all issues. (Bankr. D.I. 10317 at 4:23–8:20).

At the September 7, 2022 hearing, the Bankruptcy Court ruled on all outstanding issues other than a dispute about the judgment reduction provision contained in the Plan. (*See id.* 70:11–16). The Bankruptcy Court requested that the parties submit competing proposed judgment reduction provisions. (*Id.* 69:24-70:2). Thereafter, the Bankruptcy Court issued a letter ruling largely accepting the provision proposed by BSA and certain other Plan supporters. (Bankr. D.I. 10304). BSA then submitted a revised form of Confirmation Order incorporating

21

such language. (Bankr. D.I. 10310). The Bankruptcy Court entered the Confirmation Order on September 8, 2022 (Bankr. D.I. 10316) and the Pre-Petition Century/Chubb Companies Claims Order on September 12, 2022 (Bankr. D.I. 10327). As the latter order recognizes, "[n]o objection was filed to this component of the Century and Chubb Companies Insurance Settlement Agreement and the entry of this Order." (Bankr. D.I. 10327 at 2).

These appeals followed.

### G.    The Appeals

On October 17, 2022, I entered an Order approving a stipulation among the parties which provides for the consolidation and expedited briefing and review of the appeals. (D.I. 22). The parties filed more than 900 pages of mostly non-duplicative merits briefing. (D.I. 40, 41, 43, 45, 66, 67, 81, 86, 89, 109, 110, 111, 113, 130, 131).[5] On January 13, 2022, Certain Insurers filed a Motion to Supplement the Record. (D.I. 123). The Motion to Supplement the Record is fully briefed. (D.I. 128, 129, 132). On February 9 & 10, 2023, I held about five hours of oral argument. (*See* D.I. 144, 145). The appeals are ripe for decision.

## II.    JURISDICTION

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. District courts have jurisdiction to hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). The Confirmation Order is a final order. *See In re Energy Future Holding Corp.*, 596 B.R. 473, 476 (D. Del. 2019).

## III.    STANDARD OF REVIEW

The bankruptcy court's factual findings are reviewed for clear error. *See In re Millennium Lab Holdings II, LLC*, 591 B.R. 559, 570 (D. Del. 2018), *aff'd*, 945 F.3d 126 (3d

---

[5] I received several letters from holders of Direct Abuse Claims urging me to affirm the Confirmation Order. (D.I. 140-142, 146).

22

Cir. 2019); *In re W.R. Grace & Co.*, 475 B.R. 34, 75 (D. Del. 2012), *aff'd*, 729 F.3d 332 (3d Cir. 2013). A bankruptcy court's factual findings "may only be overturned if they are 'completely devoid of a credible evidentiary basis or bear[] no rational relationship to the supporting data.'" *In re Fruehauf Trailer Corp.*, 444 F.3d 203, 210 (3d Cir. 2006) (quoting *Citicorp Venture Capital, Ltd. v. Comm. of Creditors*, 323 F.3d 228, 232 (3d Cir. 2003)). A bankruptcy court's legal conclusions, including a determination that it has subject matter jurisdiction, are reviewed *de novo. See In re Fed.-Mogul Glob. Inc.*, 402 B.R. 625, 630 (D. Del. 2009). Mixed questions of law and fact are reviewed under a mixed standard, affording a clearly erroneous standard to factual findings but exercising plenary review of the court's interpretation and application of those facts to legal precepts. *In re HomeBanc Mortg. Corp.*, 945 F.3d 801, 810–11 (3d Cir. 2019).

## IV.    PARTIES' CONTENTIONS

The Plan and Confirmation Order are challenged by both the Non-Settling Insurance Companies and by two sets of claimants. I summarize the main arguments.

Certain Insurers, arguing for the Non-Settling Insurance Companies, principally challenge the Bankruptcy Court's determination that the Plan was proposed in good faith, asserting that the Plan and the TDP are the result of a collusive bargain between BSA and the Abuse Survivors' representatives (the Coalition, the Tort Claimants' Committee, and/or the Future Claimants' Representative) to inflate Debtors' claim exposure at the Certain Insurers' expense. According to BSA, the Certain Insurers did not discharge their burden of proving that the Bankruptcy Court's factual findings underlying the good faith determination were "completely devoid" of evidence and failed to demonstrate collusion or evidence to support other allegations of bad faith. Certain Insurers' second challenge is that Plan abrogates their contractual rights. According to BSA, this contention is demonstrably wrong, as the Plan and

23

TDP preserve the insurance policy obligations as they existed prepetition, and the Bankruptcy

Court further confirmed that any defenses of the Certain Insurers are preserved. Two Non-

Settling Insurance Companies—Allianz and Liberty—raise specific issues with respect to their

Indirect Abuse Claims and further argue that the Bankruptcy Court erred in approving judgment

reduction provisions in the Plan.

Lujan Claimants raise a number of issues in these appeals. Lujan Claimants assert claims

against both BSA and the Archbishop, an opt-out Chartered Organization, which filed its own

bankruptcy case under chapter 11 in December 2019 in the United States District Court of Guam.

Those claims stem from Abuse perpetrated by Father Louis Brouillard and allege that he abused

them not only as a Scoutmaster, but also in his capacity as a Catholic priest in settings unrelated

to Scouting. Lujan Claimants further argue that the Plan violates the automatic stay issued in the

Archbishop's bankruptcy. According to BSA, Lujan Claimants lack standing to make this

argument, and the confirmation of the Archbishop's plan of reorganization has rendered their

arguments moot. Lujan Claimants challenge the Insurance Settlements on the basis that they did

not meet the Third Circuit standard for approval. Lujan Claimants further assert that the Plan,

which channels their claims against insurers to the Settlement Trust, impermissibly conflicts with

a Guam statute which provides plaintiffs with a right of direct action against the insurers of

persons or entities liable for personal injury. Lujan Claimants contend that the Guam direct

action statute governs the "business of insurance." If it does, then any provision of the

Bankruptcy Code that could support the channeling of the Lujan Claimants' direct action claims

against insurance companies to the Settlement Trust violates the McCarran-Ferguson Act.

According to Appellees, the Bankruptcy Court correctly determined that the Guam direct action

statute does not govern the "business of insurance," as that term has been construed by the

Supreme Court, for purposes of the Act.

24

D&V Claimants and Lujan Claimants challenge the Bankruptcy Court's exercise of subject matter jurisdiction over third-party claims against the non-debtor Local Councils and Chartered Organizations including determinations that (i) approval of the Channeling Injunction and Releases, to the extent they release third-party claims, fall under "arising in" jurisdiction in the context of plan confirmation, and (ii) the Bankruptcy Court had "related to" jurisdiction over the third-party claims.  Even if the jurisdictional requirements were met, D&V and Lujan Claimants argue, the third-party releases do not exhibit the hallmarks of permissible non-consensual releases set forth by the Third Circuit—necessity to the reorganization and fairness—and the Bankruptcy Court failed to set forth specific factual findings to support these conclusions.  According to Appellees, the Bankruptcy Court's jurisdictional analysis was sound, and it committed no clear error in finding that the third-party releases satisfied the Third Circuit standard.

D&V Claimants further assert that the Plan is not fair and equitable to current and future holders of Direct Abuse Claims.  According to Appellees, the Settlement Trust will be governed by comprehensive process-oriented guidelines for paying current claims, while also ensuring that sufficient funds remain to continue to compensate future claims going forward.

There are also arguments (i) that the Bankruptcy Court erred in determining that the Plan satisfies the best interest of creditors test of § 1129(a)(7) of the Bankruptcy Code and (ii) that it further erred in determining that the Plan properly classifies the Lujan Claimants in accordance with § 1122 of the Bankruptcy Code, and (iii) that BSA violated certain notice requirements in confirming the Plan.

## V.    DISCUSSION

I will first address the one challenged finding of fact in these appeals—whether the Bankruptcy Court's finding that holders of Direct Abuse Claims are likely to be paid in full

25

A00066

under the Plan is clearly erroneous. Next, I will turn to the most critical components of the

Plan—(i) approval of the Channeling Injunction and Releases, (ii) assignment of the Insurance

Policies, and (iii) approval of the Insurer Settlements—without which compensation of Survivors

would not be possible. I will then address arguments challenging BSA's satisfaction of certain

plan confirmation requirements under the Bankruptcy Code, along with those challenges to the

Plan's treatment of Indirect Abuse Claims and its judgment reduction provision. Finally, I will

address the challenges to the Bankruptcy Court's good faith determination, which requires

consideration of the totality of the circumstances and implicates several of the foregoing issues.

**A.      Holders of Direct Abuse Claims Are Likely to Be Paid in Full Under the Plan**

This finding is relevant to—although not required by—the Bankruptcy Court's legal

conclusions that (1) substantial consideration is being given in exchange for the third-party

releases, and (2) that the Plan, by definition, meets the best interest of creditors test as to

claimants in Class 8 (Direct Abuse Claims).

**1.  Aggregate Value of Direct Abuse Claims**

Only one valuation expert testified at trial as to the aggregate value of Direct Abuse

Claims. That was BSA's expert, Dr. Charles Bates. Dr. Bates spent approximately eight hours

on the stand. Among other things, Dr. Bates estimated the total value of Direct Abuse Claims

and Future Claims as of the filing of the petition, assuming the claims would be resolved at

values consistent with prepetition settlements. Within the scope of this work, Dr. Bates

evaluated trends in the proofs of claim submitted in the BSA case. Based on his estimate of the

aggregate value, the Bankruptcy Court found that BSA had shown, by a preponderance of the

evidence, that the Direct Abuse Claims will more likely than not be paid in full. *In re Boy Scouts

of Am.*, 642 B.R. at 560.

26

A00067

Lujan and D&V Claimants challenge this finding and also challenge the credibility of Dr. Bates's testimony on the range of aggregate values of the Direct Abuse Claims. (*See* D.I. 40 at 33; D.I. 41 at 75–78). These are quintessential factual issues that the Bankruptcy Court resolved in favor of confirmation. A bankruptcy court's factual findings "may only be overturned if they are 'completely devoid of a credible evidentiary basis or bear[] no rational relationship to the supporting data.'" *Fruehauf Trailer*, 444 F.3d at 210 (quoting *Citicorp Venture Capital*, 323 F.3d at 232). The record here supports the Bankruptcy Court's finding.

The Bankruptcy Court found that Dr. Bates "was qualified without objection as an expert in claim valuation, mass tort matrixes and trust distribution structures." *In re Boy Scouts of Am.* 642 B.R. at 553. To arrive at the range of aggregate values, Dr. Bates employed a frequency severity model:

> The frequency severity model takes guidance from historical claims about their values and characteristics to come up with averages for groups of claims within the historical data pool. It then applies those averages to groups of claims within the subject pool that share similar characteristics to come up with an aggregate valuation of the subject pool. This methodology necessarily includes testing [through] scenario analysis which requires an evaluation of the assumptions used to value and group the claims to see the impact on the analysis if factors are changed.

*Id.* at 554 (citing Bankr. D.I. 9454 at 116:11-19). The Bankruptcy Court found the frequency severity model "is an accepted valuation methodology within the valuation community" and is the methodology that Dr. Bates employs in each of the many "mass tort case[s] in which he has provided expert testimony." *Id.* (Bankr. D.I. 9454 at 115:4-116:2).

The Bankruptcy Court found, and the record reflects that, consistent with the severity frequency methodology, Dr. Bates first analyzed historical data about BSA's prepetition settlements with Abuse claimants. (Bankr. D.I. 9454 at 56:18-21, 100:13-18). Dr. Bates grouped the Historical Abuse Claims by size of payment to claimants and observed a wide

variation in settlement amounts—including that a significant amount of the aggregate value of the settlements was concentrated in a small number of high value claims. (*Id.* 104:20-105:15, 106:5-10). Dr. Bates further isolated the most severe claims—penetration claims—and observed a distinct bimodal distribution pattern: fifty-five percent of the claims were resolved for less than $300,000 and about thirty-three percent of the claims settled for over $900,000, with relatively few claims settling for values in between. Dr. Bates looked at the facts underlying the Historical Abuse Claims and identified repeat abusers as the primary driver of highest settlement values. (*Id.* at 112:5-114:20). Dr. Bates equated repeat abuser to institutional responsibility and/or knowledge. (*Id.*) Dr. Bates also observed that the settlement average was higher for penetration claims than for claims involving sex acts without penetration, which in turn were higher than for claims involving groping/touching. Using this data, Dr. Bates established a benchmark value for penetration claims of $212,500 for once-identified abusers and $975,000 for repeat abusers. He then discounted those values by 54% for claims of other sex acts ($114,750/$526,500) and by one-half again for claims of groping/touching ($57,375/$263,250).

Having established these benchmarks based on Historical Abuse Claims, Dr. Bates segmented the proofs of claim filed in the bankruptcy case into categories that overlap the data in the Historical Abuse Claims based on severity (penetration, lesser sex acts, and groping/touching) and whether the abuser was a repeat abuser or once-identified abuser. He then discounted the Historical Abuse Claims benchmarks by 20% to account for the age difference between the claimants asserting Historical Abuse Claims and claimants who filed the proofs of claim, as the Historical Abuse Claims reflect that settlement values decrease significantly based on the delay in asserting the allegations. (*Id.* at 139:9-140:14). Dr. Bates also applied assumptions for "other relationships"—*i.e.*, non-BSA relationship between a victim and an abuser—another proxy for institutional responsibility. Applying the Historical Abuse Claim

benchmarks to this set of data and assumptions, Dr. Bates established an aggregate Initial Benchmark Valuation of $2.5 billion.

As the Bankruptcy Court explained, "The Initial Benchmark Valuation changed over time." *In re Boy Scouts of Am.*, 642 B.R. at 555 n.241.   In Spring 2021, when using data from Proofs of Claim in Tranche IV, Dr. Bates arrived at a valuation of $4.75 billion, which was used in connection with Debtors' estimates in the Disclosure Statement.  In Fall, 2021, when using data from the Proofs of Claim in Tranche VI, Dr. Bates arrived at a valuation of $5.84 billion, which accounted for (i) the passage of revival statutes in four states and (ii) amendments to several thousand proofs of claim adding the names of abusers and the Abuse suffered.  Upon further review the Tranche VI data, Dr. Bates observed that there were anomalous single-Abuse claims that resulted in relatively high-value settlements.  (B.D.I. 9454 at 183:5-184:5).  In researching ineligible volunteer files and/or contemporaneous news reports of Abuse, Dr. Bates learned that claims classified as single abuser claims were, in actuality, repeat abuser claims. (*Id.* at 185:9-20).  Updating that information in the Tranche VI data set ultimately resulted in the $2.5 billion Initial Benchmark Valuation.  As the Bankruptcy Court noted, "These changes in the Initial Benchmark Valuation were the result of updated information and not any change in the methodology."  *In re Boy Scouts of Am.*, 642 B.R. at 555 n.241 (citing B.D.I. 9454 at 186:5-11)).

The record reflects that Dr. Bates next tested his assumptions developing a list of "plus" and "minus" factors that would move the Initial Benchmark Valuation up or down, as applicable. (*Id.* 165:8-12; 175:21-176:2). These factors account for unknowable future possibilities such as (i) a change in the legal landscape (*e.g.,* passing of revival statutes), (ii) one or more claimants supplying information not currently contained in the Proofs of Claim, or (iii) more future claimants coming forward. (*Id.* 174:8-180:17). To account for these, Dr. Bates determined a

relative likelihood and the relative impact of each factor. (*Id.* 180:18-25). Dr. Bates landed on a 50% variance around his first benchmark valuation of $4.75 billion to create an appropriate valuation range of $2.4 to $7.1 billion for the Direct Abuse Claims. (*Id.* 181:18-25). The valuation range is inclusive of future claims. *In re Boy Scouts of Am.*, 642 B.R. at 556. "The range was admittedly large[,] reflective of the inherent uncertainties in the Direct Abuse Claims." *Id.* (citing Bankr. D.I. 9454 at 97:8-23). Based on the record and its assessment of Dr. Bates's credibility, the Bankruptcy Court found that the best estimate of the aggregate value of the Abuse Claims fell within the lower quartile of Dr. Bates's range of $2.4 billion to $7.1 billion—"between $2.4 billion and $3.6 billion." *Id.* at 558 (citing Bankr. D.I. 9454 at 97:10-23; 190:17-191:6).

The Bankruptcy Court noted that "none of the objectors challenged his use of the frequency severity model, suggested another analysis or undercut his conclusions." *In re Boy Scouts of Am.*, 642 B.R. at 558. As the only valuation expert, "Dr. Bates's analysis was thorough and credible based on the data available," and "also undisputed." *Id.*

Lujan Claimants and D&V Claimants argue that Dr. Bates contradicted his own prior testimony because he adjusted his aggregate valuation range during the course of the chapter 11 cases. Specifically, they assert Dr. Bates applied arbitrary criteria for the purpose of reducing the aggregate value of claims to $2.5 billion, including (i) "greatly reducing the value of the 77% of claims involving "single abuser" claims—those claims that identify an abuser not identified in any other claim, and (ii) assigning "zero value" for any claim with an expected value below $200,000. (D.I. 40 at 32-33; D.I. 41 at 75). These arguments are not supported by the record.

The record reflects that Dr. Bates's aggregate valuation range did not change from his initial stated range of $2.4 billion to $7.1 billion. Following "the creation of the [$2.4 to $7.1 billion valuation] range, however, Dr. Bates reviewed the expert reports filed by others in this

case, received additional information regarding repeat abusers . . . and performed additional

analysis." *In re Boy Scouts of Am.*, 642 B.R. at 556. As the Bankruptcy Court explained, Dr.

Bates's ultimate opinion that the range was most likely in the lower quartile of this initial range

was informed by updated information regarding the historical data he relied on to perform his

analysis, which led him to conclude that values in the lower quartile of the valuation range were

much more likely than the upper quartile. *Id.* at 555 n.241; Bankr. D.I. 9454 at 186:12–19 ("I

still believe that the overall range of 2.4 to 7.1 is a range that is a feasible range . . . [b]ut the

most likely portion of that range is in the lower quartile.")). Specifically, Dr. Bates testified that

he found more of the historical high-value resolutions involved repeat abuser claims, which

lowered the average for single abuser claims. (Bankr. D.I. 9454 at 183:5-184:5; 15:9–186:11).

Dr. Bates further determined that the majority of pending claims are single abuse claims. (*Id.* at

48:1-9). Thus, Dr. Bates's belief that the aggregate range was most likely in the lower quartile

was "the result of updated information and not any change in the methodology." *In re Boy

Scouts of Am.*, 642 B.R. at 555 n.241.

D&V Claimants further challenge the Bankruptcy Court's acceptance of Dr. Bates's

valuation range because his analysis arbitrarily assigned "zero value" for any claim with an

expected value below $200,000, based solely on his opinion that "plaintiffs' attorneys would not

take cases in the tort system with settlement values under $200,000." (D.I. 41 at 76). As BSA

points out, this argument confuses a point that Dr. Bates made during his testimony about why

low value claims were not historically pursued in the tort system. (*See* Bankr. D.I. 9454 at

146:15-152:20, 156:1-23). The record reflects that Dr. Bates did assign an estimate of what such

claims would be worth if pursued in the tort system, even though in the tort system many of such

claims would not be pursued, as the expected recovery on such claims were below the threshold

of economic viability to plaintiffs' firms working on a contingency fee basis. (*See id.*) Dr. Bates

31

A00072

testified that, in the bankruptcy context, such claims have value associated with them due to lower economic barriers, and, thus, claims with an expected value below $200,000 were indeed included in Dr. Bates's estimation. (*See id.* at 158:20-159:2). Thus, while a claim valued below $200,000 may not have had sufficient value to be prosecuted by a contingency fee counsel in the tort system, Dr. Bates's analysis not only included those claims but also concluded that they likely constitute the majority of claims filed in the chapter 11 cases. (*See id.*)

D&V Claimants further challenge the Bankruptcy Court's acceptance of Dr. Bates's valuation range based on its low estimation of the number of expected Future Abuse Claims. *In re Boy Scouts of Am.*, 642 B.R. at 556 (citing Bankr. D.I. 9454 at 198:20–199:19). As the Bankruptcy Court explained, and as the record supports, in order to determine the impact of Future Abuse Claims (a "plus" factor) on his aggregate Benchmark Valuation, Dr. Bates performed a regression analysis and estimated that 400 future claims would be asserted. (Bankr. D.I. 9454 at 198:20-25-199:1-19). Dr. Bates testified that his analysis followed the downward trend in the trajectory of claims since the 1960s. (*See id.*) D&V Claimants cite the Future Claimants' Representative's estimation that there would be approximately 11,000 Future Abuse Claims with an aggregate value of $5 billion. (D.I. 41 at 78; *see* ADV 173). The Bankruptcy Court did not, however, assign any weight to the Future Claimants' Representative's testimony regarding the number or value of Future Abuse Claims. *In re Boy Scouts of Am.*, 642 B.R. at 556 n.246. It reasoned that the Future Claimants' Representative was not offered for the purpose of valuing Direct Abuse Claims; that he is not an expert; and that "there was no support offered for this position." *Id.* I agree this uncredited testimony does not negate the Bankruptcy Court's finding that the Plan likely provides for payment in full. D&V Claimants also point to Tort Claimants' Committee's estimate that aggregate value range of Abuse Claims is $13.5 billion to $73.2 billion. (*See* D.I. 41 at 78 (citing Bankr. D.I. 6445)). The Tort Claimants' Committee did

32

A00073

not offer any expert witness testimony, however, and the Bankruptcy Court did not give any evidentiary weight to the Tort Claimants' Committee's estimate.

The Bankruptcy Court's reliance upon Dr. Bates's uncontroverted and well-reasoned expert opinion, as opposed to unsubstantiated statements by non-experts, is not clearly erroneous. The arguments of Lujan Claimants and D&V Claimants fail.

### 2. Value of the Settlement Trust Assets

The Bankruptcy Court found that the "fully noncontingent funding is $2,484,200,000, which is already within the [$2.4 billion to $3.6 billion] range of Direct Abuse Claims." *In re Boy Scouts of Am.*, 642 B.R. at 561. It noted that, "The committed, but contingent funding could bring another $200 million into the Settlement Trust. These funds, together with the available allocated insurance against Non-Settling Insurance Companies brings the total to $3,005,519,886 to $3,084,746,854, well over the Initial Benchmark Valuation and quite comfortably within the aggregate range." *Id.* "Finally, the Settlement Trust assets include an additional $4 billion in currently unallocated insurance against Non-Settling Insurance Companies." *Id.*

Lujan Claimants challenge the Bankruptcy Court's finding that "Direct Abuse Claims will more likely than not be paid in full" by arguing that "recovery up to 100%" depends on hypothetical future insurance settlements." (*See* D.I. 40 at 34). But the Bankruptcy Court determined that that the fully noncontingent funding is $2,484,200,000, which is just within the $2.4 billion to $3.6 billion range. *In re Boy Scouts of Am.*, 642 B.R. at 561. The Bankruptcy Court also took into account the committed, but contingent, funding in the amount of $200 million. The Bankruptcy Court also took into account an additional estimated $4.2 to $4.4 billion in currently unallocated insurance against Non-Settling Insurance Companies, and unliquidated additional contributions from Chartered Organizations, which provide a total potential recovery of more than $7 billion. (*See* Bankr. D.I. 9398 ¶ 121; Bankr. D.I. 9490 at

40:13-41:11.61). Taking all of these funding sources into account, the Bankruptcy Court found

that funding for the Settlement Trust is "well over" the initial Benchmark Valuation and

"comfortably" within the aggregate range. *Id.* Neither Lujan Claimants nor D&V Claimants

provided any expert or evidence at trial to prove otherwise.

D&V Claimants argue that no expert testimony or other evidence is needed to show that

the Bankruptcy Court clearly erred on this point; rather, it is evident from the record, as the

Bankruptcy Court's Settlement Trust Asset Valuation fails to take into account the estimated cost

to administer the Settlement Trust. (*See* D.I. 145, 2/10/2023 Hr'g Tr. at 22:8-23:7). According

to D&V Claimants, these expenses, estimated at around $200 million, are funds which will not

be available for distribution on account of Direct Abuse Claims, and thus fully noncontingent

funding of the Settlement Trust is short of $2.4 billion. (*See id.*) Given the value of the

substantial contributions to the Settlement Trust, including noncontingent and contingent sources

of funding which could amount to $7 billion, any discrepancy attributable to the expenses of

administering the Settlement Trust fails to establish that the Bankruptcy Court's finding, that

"Direct Abuse Claims will more likely than not be paid in full," is "completely devoid of a

credible evidentiary basis." *In re Fruehauf Trailer*, 444 F.3d at 210.

D&V Claimants' remaining arguments are unavailing. They cite an out-of-circuit

decision involving a non-mass tort debtor, *In re Wool Growers Cent. Storage Co.*, 371 B.R. 768

(Bankr. N.D. Tex. 2007), in support of their argument that the Plan should not have been

confirmed because it does not pay claimants in full. (*See* D.I. 41 at 79). Unlike this case, the

bankruptcy court in *Wool Growers* determined that the plan did not provide for payment in full

because the evidence established that creditors would recover only 60%-70% of their claims.

371 B.R. at 771, 778. Here, the Bankruptcy Court found payment in full based on the

uncontroverted evidence. Finally, D&V Claimants argue that the Bankruptcy Court failed to

34

address their payment-in-full objections to the Plan but rather only focused on the Certain

Insurers' objection. (*See* D.I. 41 at 79). The record reflects that the Bankruptcy Court addressed

all of the objectors' arguments—indeed, it specifically mentioned the D&V Claimants' cross-

examination of Dr. Bates in the Confirmation Opinion. *See In re Boy Scouts of Am.*, 642 B.R. at

556 n.246, 558.

I see no clear error in the Bankruptcy Court finding that the Plan would likely provide for

payment in full of Direct Abuse Claims. The evidence marshalled in support of this conclusion

was more than sufficient to sustain the finding. Despite the opportunity, D&V and Lujan

Claimants did not offer any evidence or expert testimony of their own to convince the

Bankruptcy Court otherwise.

**B.    Channeling Injunction and Releases**

At issue in these appeals is a set of releases specific to the Abuse Claims ("Scouting-

Related Releases"). These are found in the Channeling Injunction (Article X.F and X.G), the

Insurance Entity Injunction (Article X.H), Releases by Holders of Abuse Claims (Article X.J.3)

and Releases among Contributing Chartered Organizations and Settlement Parties (Article X.

J.5). Except for the latter, which is a consensual release among certain parties, the Scouting-

Related Releases are nonconsensual third-party releases. These releases run in favor of the

Settling Insurance Companies, Local Councils, Chartered Organizations, and their

Representatives. Holders of Abuse Claims object to these releases on jurisdictional and other

grounds. Specifically, D&V and Lujan Claimants argue that the Bankruptcy Court lacked

subject matter jurisdiction to confirm the Plan and to approve the Channeling Injunction and

Releases therein, challenging both the legal and factual bases for the Confirmation Opinion.

Appellees assert that the Bankruptcy Court correctly determined jurisdiction to grant the

35

A00076

Scouting-Related Releases, which were demanded by parties making contributions to the

Settlement Trust and otherwise satisfy the Third Circuit's standard for approval.

        **1.**    **Subject Matter Jurisdiction**

        **a.**    **"Arising In" Jurisdiction**

The Bankruptcy Court determined it had subject matter jurisdiction to confirm the Plan

both because (i) the Channeling Injunction and Releases were "arising in" title 11 in the context

of plan confirmation, and (ii) it had "related to" jurisdiction over the Abuse Claims that are the

subject of the Channeling Injunction and Releases.[6]  The Bankruptcy Court noted that "this is a

confirmation hearing" which is "a proceeding that 'by its nature, and not the particular factual

circumstance, could arise only in the context of a bankruptcy case.'"  *In re Boys Scouts of Am.*,

642 B.R. at 588-89 (quoting *In re New Century TRS Holding, Inc.*, 505 B.R. 431, 441 (Bankr. D.

Del. 2014)).  Lujan Claimants argue that releases of claims against non-debtor third parties are

not permissible merely because they are contained in a plan of reorganization.  (*See* D.I. 40 at 7-

8).  Debtors and Settling Insurance Companies argue that the Bankruptcy Court was correct in

approving the Plan containing the Channeling Injunction and Releases based on "arising in"

jurisdiction.  Settling Insurance Companies further contend that the permissibility of the

Channeling Injunction and Releases is not a jurisdictional issue.  (*See* D.I. 86 at 26).

Federal bankruptcy jurisdiction is defined by 28 U.S.C. § 1334.  Section 1334(b) confers

upon the district courts "original and exclusive jurisdiction of all cases under title 11," and

"original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in

---

[6] BSA contends that the Bankruptcy Court determined subject matter jurisdiction existed because Channeling Injunction and Releases were "arising under" title 11 in the context of plan confirmation. (D.I. 66 at 122-23). The Confirmation Opinion does not contain this determination. *See In re Boy Scouts of Am.*, 642 B.R. at 589 (finding "arising in," but not ruling on "arising under").

or related to cases under title 11." 28 U.S.C. § 1334(b).  The Bankruptcy Code permits district

courts to refer most matters to a bankruptcy court.  *See* 28 U.S.C. §§ 157(a)  This broad

jurisdictional grant allows bankruptcy courts to "deal efficiently and expeditiously with all

matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards,* 514 U.S. 300, 308

(1995) (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984)).

     As the Third Circuit has explained, bankruptcy court jurisdiction potentially extends to

four types of title 11 matters: (1) cases under title 11, (2) proceedings "arising under" title 11, (3)

proceedings "arising in" a case under title 11, and (4) proceedings "related to" a case under title

11.  *See Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.),* 372 F.3d 154, 162 (3d Cir.

2004).  The first three categories, "[c]ases under title 11, proceedings arising under title 11, and

proceedings arising in a case under title 11 are referred to as 'core' proceedings"—which the

Bankruptcy Court may hear and determine—while "proceedings 'related to' a case under title 11

are referred to as 'non-core' proceedings," as to which the Bankruptcy Court may only hear and

make proposed findings of fact and conclusions of law unless all parties consent. *In re*

*Combustion Eng'g,* 391 F.3d at 225; *In re Essar Steel Minnesota LLC,* 47 F.4th 193, 198 (3d Cir.

2022).

     The first category, "cases" under title 11, as used in 28 U.S.C. § 1334(a), "refers merely

to the bankruptcy petition itself," and is not applicable here. *In re Marcus Hook Dev. Park, Inc.,*

943 F.2d 261, 264 (3d Cir. 1991).  The term "proceeding," on the other hand, as used in 28

U.S.C. § 1334(b) to describe the remaining three types of title 11 matters, refers "to the steps

within the 'case' and to any subaction within the case that may raise a disputed or litigated

matter." *In re Combustion Eng'g,* 391 F.3d at 226 n. 38 (quoting *In re Wolverine Radio Co.,* 930

F.2d 1132, 1141 n.14 (6th Cir. 1991)).  "Put differently, 'anything that occurs within a case is a

proceeding,' *see* 1 Collier on Bankruptcy ¶ 3.01[4][b] at 3–19 (15th ed. rev. 2003) (quoting H.R.

Rep. No. 595, 95th Cong., 1st Sess. 445 (1977)), including all 'controversies, adversary proceedings, contested matters, suits, actions or disputes.' *Id.* ¶ 3.01[3] at 3–13." *Id.*

As the Third Circuit recently explained, a proceeding "arises under" the Bankruptcy Code "when the cause of action is based on a right or remedy expressly provided by the Bankruptcy Code." *In re Essar Steel*, 47 F.4th at 197 (*quoting In re Weiand Auto. Indus.*, 612 B.R. 824, 854 (Bankr. D. Del. 2020) (internal quotation marks omitted)). BSA and Settling Insurance Companies argue, "Confirmation of a plan arises under the Bankruptcy Code because it is the Code that grants the bankruptcy court authority to confirm a plan that meets the requirements set forth in section 1129 of the Code." (*See* D.I. 86 at 26-27). *See also* 1 Collier on Bankruptcy ¶ 3.01[3][e][i] ("confirmation of a plan" is a proceeding "aris[ing] under title 11"). "Proceedings 'arising in' a case under [the Bankruptcy Code] include matters that, though not explicitly mentioned in the Code, would not exist outside of bankruptcy. Related matters are generally causes of action under state law that are imported into the bankruptcy because of their impact on the size of the debtor's estate, and hence the distribution to the debtor's creditors." *In re Essar Steel,* 47 F.4th at 197 (quoting *Weiand Auto. Indus.*, 612 B.R. at 854).

Here, the Bankruptcy Court held that, in the context of the plan confirmation hearing, "arising in" jurisdiction existed to confirm the Plan containing the Channeling Injunction and Releases, because a confirmation hearing is a proceeding that "by its very nature, and not the particular factual circumstance, could only arise in the context of a bankruptcy case." *In re Boy Scouts of Am.*, 642 B.R. at 588-89 (quoting *In re New Century TRS Holdings, Inc.*, 505 B.R. 431, 441 (Bankr. D. Del. 2014); 1 Collier on Bankruptcy ¶ 3.01[4][c][iv] at 3-31 (15th ed. rev. 2005)).

That the Bankruptcy Court had either "arising in" or "arising under" subject matter jurisdiction over the proceeding to confirm the Plan is not controversial. Whether the Bankruptcy Court had subject matter jurisdiction over the third-party claims that are to be

enjoined and released under the Plan seems to be a separate analysis under Third Circuit law.

Appellees agree, at least in part. Settling Insurance Companies argue that whether the Plan could

be confirmed with the Channeling Injunction and Releases "is a separate question of substantive

authority under the Bankruptcy Code, not of subject-matter jurisdiction":

> Section 1334 gave the bankruptcy court the jurisdiction to determine whether the
> Plan is lawful and should be confirmed. To determine whether the Plan is lawful,
> the court had to determine whether the Bankruptcy Code authorizes a plan to
> include a non-debtor injunction or release and, if so, whether the requirements for
> approving such a provision were met on the facts of this case. But those are not
> jurisdictional questions; they are merits questions, which the bankruptcy court had
> the power to determine in the exercise of its jurisdiction over the plan-
> confirmation proceeding.

(D.I. 86 at 26-27). This argument echoes points raised by the Bankruptcy Court in *In re*

*Millennium Lab Holdings II, LLC*, 575 B.R. 252, 287 n.160 (Bankr. D. Del. 2017), *aff'd*, 591

B.R. 559 (D. Del. 2018), *aff'd on other grounds*, 945 F.3d 126 (3d Cir. 2019). Among many

points raised in the insightful analysis of jurisdictional issues was whether the traditional "related

to" analysis is the proper analytical framework with respect to plans containing releases. *See id.*

at 287 n.160 (citing *In re Charles St. Afr. Methodist Episcopal Church of Bos.*, 499 B.R. 66, 99

(Bankr. D. Mass. 2013) ("It may or may not be appropriate for a court exercising bankruptcy

jurisdiction to confirm a plan containing a third-party release—and, if it is appropriate, the

manner and degree of relation of the released claim to the case are certainly factors in the

analysis—but the court undoubtedly has jurisdiction to adjudicate the plan, even without

recourse to its related-to jurisdiction.")).

Whether the analysis is characterized as jurisdictional or as a determination of the merits,

it is clear to me that the permissibility of third-party releases does not end with whether the

Bankruptcy Court had "arising in" or "arising under" jurisdiction to confirm the Plan containing

them. Rather, a separate analysis is required with respect to a Plan's release of claims and/or

39

suits between third parties.  As Third Circuit law currently stands, that separate analysis is

described as jurisdictional: "Bankruptcy court jurisdiction potentially extends to four types of

title 11 matters: . . . Proceedings 'related to' a title 11 case include causes of action owned by the

debtor that become property of the bankruptcy estate under 11 U.S.C. § 541(a), as well as suits

between third parties that conceivably may have an effect on the bankruptcy estate."  *In re*

*Combustion Eng'g*, 391 F.3d at 225-26 (quoting *Celotex*, 514 U.S. at 308 n.5, and applying "the

seminal test for determining 'related to' jurisdiction over third-party claims").

     In *Combustion Engineering,* the Third Circuit also considered whether the Bankruptcy

Court had jurisdiction to approve non-consensual third-party releases in the context of a plan of

reorganization.  There, a prepackaged Chapter 11 reorganization plan provided that all asbestos

claims against Combustion Engineering and two of its non-debtor affiliates were to be channeled

through a post-confirmation trust created under § 524(g), to which all three entities were to

contribute.  *Id.* at 201.  The plan also provided for a § 105(a) injunction barring any asbestos-

related claims against the three entities.  *Id.*  One of the issues on appeal was whether the

bankruptcy court should have approved the plan injunction as to the non-debtor affiliates.  There,

the Third Circuit did not address the bankruptcy court's "arising in" jurisdiction, despite the

injunction having been approved in the plan confirmation context.  Rather, the Third Circuit

undertook a detailed "related to" claim analysis, applying the test articulated in *Pacor, Inc. v.*

*Higgins*, 743 F.2d 984 (3d Cir. 1984), and later clarified by *In re Federal-Mogul, Inc.*, 300 F.3d

368 (3d Cir. 2002), to the released claims.  *See In re Combustion Eng'g*, 391 F.3d at 226-33.

     The Third Circuit did not address "arising in" jurisdiction in *Combustion Engineering,*

which the Bankruptcy Court noted.  *In re Boy Scouts of Am.*, 642 B.R. at 589.  When the Court

of Appeals does not address an issue, one should not jump to conclusions.  *See, e.g., In re Essar*

*Steel Minnesota, LLC,* 47 F.4th at 199-200 (distinguishing prior Third Circuit precedent applying

<div align="center">40</div>

<div align="center">A00081</div>

"related to" analysis because "[w]e never addressed whether these proceedings could also qualify as "core" matters under "arising under" or "arising in" jurisdiction). While it seems unlikely that the *Combustion Engineering* court would have engaged in such a lengthy "related to" claim analysis if "arising in" jurisdiction to release those same claims was otherwise readily apparent in the plan confirmation context, I need not weigh in on this issue; based on the Confirmation Opinion's thorough analysis, I conclude that the Bankruptcy Court had, at a minimum, "related to" jurisdiction over the claims at issue. *In re Boy Scouts of Am.*, 642 B.R. at 589-91 ("courts and counsel are accustomed to analyzing third-party releases in the context of related-to jurisdiction and I will do so here.").

### b.   "Related to" Jurisdiction

In *Pacor, Inc. v. Higgins,* the Third Circuit established that a proceeding is "related to" a chapter 11 proceeding if the "outcome of [the] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984), *overruled in part by Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 124-25 (1995). The Third Circuit has noted, "the key inquiry no doubt is conceivability." *Nuveen Mun. Truste ex rel. Nuveen High Yield Bond Fund v. WithumSmith Brown PC,* 693 F.3d 283 (3d Cir. 2012). "Certainty, or even likelihood of effect on the estate being administered in bankruptcy, is not a requirement." *Copelin v. Spirco, Inc.*, 182 F.3d 174, 179 (3d Cir. 1999) (cleaned up). An action thus generally is "related to" a bankruptcy proceeding "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Pacor,* 743 F.2d at 994. As the Third Circuit has noted, the Supreme Court endorsed *Pacor's* conceivability standard with the caveats that "related to" jurisdiction "cannot be limitless," and that the critical component of the *Pacor* test is that "bankruptcy courts have no jurisdiction over proceedings that

41

A00082

have no effect on the estate of the debtor." *See Nuveen Mun.*, 692 F.3d at 294 (quoting *Celotex*, 514 U.S. at 308 & n.6).

Whether a claim is sufficiently "related to" a bankruptcy case to warrant the exercise of subject matter jurisdiction depends on the facts and circumstances of the particular case. *In re W.R. Grace & Co.*, 591 F.3d 164, 174 n.9 (3d Cir. 2009). The Third Circuit has further instructed that third-party claims against non-debtors are "related to" a bankruptcy case where the action against the non-debtor "affect[s] the bankruptcy [] without the intervention of yet another lawsuit." *Id.* at 173 (citing *In re Fed.-Mogul Glob. Inc.*, 300 F.3d 368, 382 (3d Cir. 2002); *In re Combustion Eng'g*, 391 F.3d at 232). Courts may therefore exercise "related to" jurisdiction over third-party claims where the debtor is the real party defendant or where the claims implicate indemnification obligations owed by, or insurance policies shared with, the debtor. *See, e.g., A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999-1002 (4th Cir. 1986) (finding "related to" jurisdiction based on findings of identity of interest, express indemnification rights, and shared insurance); *see also In re Combustion Eng'g*, 391 F.3d at 228, 230-31 (noting that corporate affiliation may be sufficient for "related to" jurisdiction "if supported by factual findings demonstrating that a suit against [non-debtors] would deplete the estate or effect its administration" and finding that shared insurance may be sufficient if supported by evidence of automatic liability); *In re W.R. Grace*, 591 F.3d at 171 (indicating that for a finding of "related to" jurisdiction indemnification rights must accrue upon the filing of the claim without the intervention of another lawsuit).

The Bankruptcy Court found that the third-party claims subject to the Channeling Injunction and Releases have a "conceivable effect" on BSA's estates. *In re Boy Scouts of Am.*, 642 B.R. at 592. It found that "related to" jurisdiction exists with respect to the Abuse Claims "for any or all" of several reasons, *id.* at 589-91, including: (a) a clear identity of interest based

42

A00083

on interconnectedness among BSA and the other Protected Parties, Limited Protected Parties, and Opt-Out Chartered Organizations (collectively, "Releasees"), which each benefit from the protections afforded by the Channeling Injunction and Releases, *id.* at 589-90 (Bankr. D.I. 9341 at 263:14–264:1); (b) shared insurance coverage among BSA, the Local Councils, and the Chartered Organizations, which, if depleted, would reduce the property of BSA's estate that would otherwise be available for distribution to creditors, *id.* at 590 (Bankr. D.I. 9341 at 263:14–264:1); (c) contractual indemnification obligations among BSA, Local Councils, and certain of the other Releasees, including Chartered Organizations and BSA's Representatives, which obligations, when triggered, would deplete property of the estates, *id.*; and (d) BSA's residual interest in all Local Council property in the event of any such entity's dissolution or revocation of its charter, *id.* at 590; *see also id.* at 523 n.25.[7] BSA argues that each of these reasons are independently sufficient to provide jurisdiction, and that when considered together, the Bankruptcy Court's exercise of subject matter jurisdiction was well founded. (D.I. 66 at 128-29).

### i.    Corporate Affiliation or Identity of Interest

The Bankruptcy Court found that an identity of interests between BSA and the Releasees supported its exercise of "related to" jurisdiction. *In re Boy Scouts of Am.*, 642 B.R. at 589-90. "Related to" jurisdiction is appropriately exercised where there is an identity of interest between a non-debtor codefendant and the debtor, such that the debtor is the real party in interest. *See McCartney v. Integra Nat'l Bank North*, 106 F.3d 506, 510 (3d Cir. 1997) (extending the automatic stay to nonbankrupt codefendants where "there is such identity between the debtor and

---

[7] For similar reasons, the Bankruptcy Court determined (and such determination was uncontested) that it also had "related to" jurisdiction over Abuse Claims asserted against Related Non-Debtor Entities and the Debtors' officers, directors, and other Representatives. *In re Boy Scouts of America*, 642 B.R. at 592-93.

43

the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.") (citing *A.H. Robins*, 788 F.2d at 999); *In re Dow Corning Corp.,* 86 F.3d 482, 493 (6th Cir. 1996) (noting that "[t]he degree of identity between a debtor and nondebtor codefendants" is an important factor and holding that there was "related to" subject matter jurisdiction over claims pending against nondebtor defendants).

Courts have found an identity of interest between a debtor and a non-debtor where third-party claims center on the debtor's product or operations and allege joint responsibility among the debtor and non-debtor defendants. *See, e.g., In re Dow Corning*, 86 F.3d at 492–94 & n.11 (finding identity of interest where litigation centered on debtor's role as manufacturer and/or supplier and claims demonstrated a relatedness between the parties); *A.H. Robins*, 788 F.2d at 996, 1014 (finding identity of interest with respect to claims arising out of use of a single device manufactured by the debtor); *In re W.R. Grace*, 386 B.R. at 30–32 (finding identity of interest where debtor's conduct and operations were "at the core" of third-party claims against non-debtors); *cf. In re Combustion Eng'g*, 391 F.3d at 230-31 (distinguishing "single product" case law and declining to exercise "related to" jurisdiction over claims arising out of non-debtors' product line, which products were not manufactured or distributed by the debtor or subject to contractual indemnification obligations of the debtor). In other words, "the existence of strong interconnections between the third party and the bankruptcy" commonly serves as the basis for the exercise of "related to" jurisdiction. *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 321 (S.D.N.Y. 2003) (collecting cases).

The Bankruptcy Court made several findings related to the interconnectedness of BSA with the Local Councils and Chartered Organizations. First, the Bankruptcy Court found that it takes all three constituencies to deliver the Scouting program: "BSA sets the structure and

44

content of the Scouting program. BSA charters Local Councils on an annual basis to ensure that

Scouting is available in their geographic locations. Local Councils annually charter Chartered

Organizations and the two work together to form troops, pacs, dens and other units and to

provide Scouting experiences to boys and girls." *In re Boy Scouts of Am.*, 642 B.R. at 589-90.

This finding is supported by the testimony of Devang Desai, a volunteer member of the BSA's

National Executive Board, the National Executive Committee, and the Bankruptcy Task Force,

who testified, "Because of the interconnectedness of a local council with the national

organization and our local chartering partners, we can't continue to deliver the mission of

Scouting without them." *Id.* (Bankr. D.I. 9341 at 263:14-264:1). The Bankruptcy Court further

found:

> [P]repetition, plaintiffs often treated BSA, Local Councils and Chartered Organizations
> as jointly responsible for Direct Abuse Claims, pleading that each was responsible for the
> conduct not only of themselves, but of others. A lawsuit against a Local Council or a
> Chartered Organization, therefore, could have an immediate impact on BSA. Plaintiffs
> allege one harm—a singular Direct Abuse Claim—and they seek a single recovery from
> BSA, a Local Council and a Chartered Organization (as well as a perpetrator and perhaps
> others).

*Id.*

D&V Claimants argue on appeal that these findings "do not establish that direct claims

against these non-debtors are derivative of [*i.e.*, depend on] Debtors' liability." (D.I. 41 at 28).

"Any common law claims against Local Councils and Chartered Organizations are direct claims,

not derivative. Such claims would only result in a potential indemnity claim against BSA, and

there would have to be 'another lawsuit' (theoretically) before any third-party claim had an

impact on the bankruptcy estate." (*Id.* at 34-35). The Bankruptcy Court rejected this argument,

and so do I. "The proper inquiry," according to the Third Circuit,

> is to review the law applicable to the claims being raised against the third party
> (and when necessary to interpret state law) to determine whether the third-party's
> liability is wholly separate from the debtor's liability or instead depends on it . . . .

> [T]his approach does not require the reviewing court to decide state-law claims on the merits. It does, however, require it to ascertain what liability under the relevant law demands.

*In re W.R. Grace & Co.*, 13 F.4th 279, 286 (3d Cir. 2021). A claim against a third party may be derivative even if the claim is based on the third party's own misconduct. *See id.* The mere fact that "a third party is alleged to have engaged in some wrongdoing is not enough to render a claim against it independent if its liability depends on the debtor's liability." *Id.*

The Bankruptcy Court found that claims against Local Councils and Chartered Organizations are not wholly separate from claims against BSA. This finding is not clearly erroneous. As BSA points out, the main theories of liability against Local Councils and Chartered Organizations are (i) negligence, and (ii) respondeat superior. *In re Boy Scouts of Am.*, 642 B.R. at 600; *see* SA 1602, SA 2291, SA 1614, SA 618. As to the negligence-based Scouting-related Abuse Claims asserted against the Releasees, I agree those claims are not and could never be "wholly separate from the debtor's liability." (D.I. 66 at 132-34) (quoting *In re W.R. Grace & Co.*, 900 F.3d 126, 137 (3d Cir. 2018)). Similar to the plaintiffs' claims against the insurer in *W.R. Grace*, though not to the same extent, the liabilities of the Local Councils and the Chartered Organizations in this case "depend[] on the debtor's liability." *In re W.R. Grace*, 900 F.3d at 136.

Abuse Survivors often assert such dependence. (*See, e.g.,* SA 529 (Complaint against BSA and Chartered Organizations) ¶ 141 (asserting, "At all relevant times . . ., Defendant BSA invited and encouraged Plaintiffs to participate in the Scouting program it administered and controlled. Its invitation created a special, fiduciary relationship, wherein Plaintiffs and their parents relied upon Defendant BSA's years of experience and judgment in selecting morally upright and trustworthy men to lead Scout troops . . . Parents gave Defendant BSA authority to act *in loco parentis* over Plaintiffs at BSA meetings, camping trips, hiking trips, and in private

46

A00087

social situations during Scouting activities. Defendant BSA also invited Plaintiffs into a commercial relationship by requiring him to pay yearly dues and other fees and required purchases, in exchange for participating in Scouting"); *id.* ¶ 142 ("Defendant BSA represented that the Scout leaders it selected, controlled, and/or approved were appropriate and trustworthy mentors and leaders for young boys. It also promoted Scouting as being safe and beneficial for boys—physically, emotionally, and spiritually. Defendant BSA . . . emphasized the friendly and paternalistic role a Scout leader should play in a young boy's life" including "specific statements in various editions of the *Boy Scout Handbook*); *id.* ¶ 147 ("Despite the special relationship that Defendant BSA maintained with Plaintiffs prior to and during their time in Scouting, BSA never made any warnings . . . that significant numbers of Scout leaders had abused boys in the past . . . Despite its knowledge of the use of Scouting by child molesters, Defendant BSA knowingly failed to change the Scouting program in any meaningful way to attempt to reduce the number of Scouts abused by Scout leaders until after Plaintiffs' time in Scouting, and nonetheless concealed this fact"); *see also* SA 2360-61 ¶ 11 (complaint asserting similar allegations against BSA and Chartered Organizations).

The evidence at trial demonstrated that such claims are based upon the Scouting system that BSA designed and has implemented at a local level by granting charters to Local Councils and Chartered Organizations in accordance with BSA's Rules and Regulations. *In re Boy Scouts of Am.*, 642 B.R. at 600-01. The Local Councils and Chartered Organizations follow BSA's protocol with respect to volunteers. *See id.* at 525. A part of that protocol involves BSA maintaining an ineligible volunteer file. (*See id.*; SA 1614, SA 2381, SA 618 ¶ 150).

BSA's youth protection standards and Scouting programming are also key to the plaintiffs' various negligence-based theories of liability. (*See id.* at 601 nn.451–53 (citing SA 3697 ¶¶ 6, 14, 39-40, 49; SA 529 ¶¶ 141–42, 147; SA 2357 ¶ 11; SA 1602 ¶ 28; SA 2291 ¶¶ 44–

47

45; SA 1614 ¶¶ 21–23, 27–28, 87–88; SA 618 ¶ 124)). Indeed, the evidence demonstrated that it

is these policies and procedures that guide factfinders to determine whether there was

negligence. (SA 1614 (referencing BSA's policies and procedures in a complaint against BSA);

SA 2381 (same); SA 618 (same)). Like the programs themselves, the liability in these

negligence cases is rooted in a system that was created by, and necessarily implicates at every

level, BSA. *In re Boy Scouts of Am.*, 642 B.R. at 525, 600-01; Bankr. D.I. 9273 ¶¶ 6, 18–19; *see,*

*e.g.*, SA 2357 ¶ 11. This is reflected in BSA's historic practice of jointly defending and settling

abuse claims on behalf of Local Councils and Chartered Organizations.[8] (*See* Bankr. D.I. 9273

¶¶ 4–9, 17–18, 20, 48). Because BSA's conduct was always at issue in Abuse Claims, BSA was

the "real party defendant" in defending Abuse Claims. *See A.H. Robins*, 788 F.2d at 999; *see*

*also In re Boy Scouts of Am.*, 642 B.R. at 599 (acknowledging BSA's historical prepetition

practices).

    As the Bankruptcy Court recognized, Lujan and D&V Claimants' own prepetition

complaints rely upon the interconnected relationship that they now attempt to downplay, as the

---

[8] D&V Claimants and Lujan Claimants cite several cases in which BSA did not universally settle or defend cases on behalf of BSA, the Local Councils, and the Chartered Organizations—what the parties refer to as the "tripartite group." (*See* D.I. 40 at 14–15; D.I. 41 at 33–34). In support, Claimants cite nine lawsuits in which plaintiffs alleged abuse for which defendants were liable but that were unrelated to Scouting. The record supports that BSA handled Scouting-related Abuse Claims (and only Scouting-related Abuse Claims) on behalf of the entire tripartite group. (Bankr. D.I. 9273 ¶¶ 4–6, 9–19, 29). The record reflects that claims that alleged abuse outside of the Scouting context, such as claims asserted against the AOA and TCJC (unrelated to their roles as Chartered Organizations), were handled differently. (Bankr. D.I. 9273 ¶ 20; *see also* Bankr. D.I. 9354 at 191:11-192:6 (Griggs describing that Guam was an exception because the perpetrator of abuse, Father Brouillard, encountered claimants first within the church and then brought such claimants into Scouting); Bankr. D.I. 9273 ¶ 4). BSA asserts that where claims against BSA were dismissed but claims against other members of the tripartite group were not, the cases were distinguished by unique circumstances. The record supports BSA's argument, and I agree these instances are not a departure from the Debtors' overall historical practice of jointly defending and settling Abuse Claims on behalf of Local Councils and Chartered Organizations.

complaints "repeatedly implicate BSA's wrongdoing in their claims against Local Councils and Chartered Organizations." *In re Boy Scouts of Am.*, 642 B.R. at 600. Examples from the prepetition complaints filed by Mr. Aguon and the D&V Claimants include assertions that: (i) BSA and Local Councils controlled the selection of Scout leaders and exercised ultimate authority over who could be a Scout leader (*see, e.g.*, ALW 255 ¶¶ 11, 14; SA 0529 ¶¶ 141-42); (ii) BSA conspired with the Local Council and Chartered Organization in carrying out the tortious and unlawful conduct described in the complaint (*see, e.g.*, ALW 255 ¶¶ 11, 14; SA 2357 ¶ 11); and (iii) BSA was aware of the Abuse perpetrated against scouts since shortly after it started, kept that information secret, and did nothing to change the Boy Scouts program (*see, e.g.*, ALW 255 ¶ 39; SA 0529 ¶ 147).

Lujan Claimants argue that "survivors have direct claims against nondebtors based on the independent liability of these nondebtors and which do not depend on a finding of either Debtor's liability." (D.I. 40 at 15).

First, evidence of Abuse claims fitting that description claims is absent from the record. As the Bankruptcy Court observed, "Mr. Griggs testified that prepetition, plaintiffs often sued BSA, Local Councils and Chartered Organizations together. Conversely, he was not aware of any claims made against a Chartered Organization that did not include a claim against either BSA or a Local Council." *In re Boy Scouts of Am.*, 642 B.R. at 597. "Complaints filed prepetition by the Lujan Claimants and the D&V Claimants are no exception." *Id.* For example:

> [P]repetition, Mr. Aguon (who testified at trial) sued BSA, the Aloha Council and the Archbishop of Agana (as well as others) asserting that all defendants were negligent in hiring and retaining Brouillard, breached a fiduciary duty and confidential relationship with the plaintiff and are all vicariously liable for the abuser under a theory of [respondeat] superior. Mr. Aguon also alleges that each defendant is the agent, servant and/or employee of the other defendant, is the alter ego and partner of the other defendants, and each defendant ratified the acts of the others. So, too, complaints filed by the D&V Claimants naming BSA and TCJC assert that BSA was a "vertically-integrated organization" with BSA at the top of

49

the structure and sponsoring organizations and local councils at the "lower
levels." The D&V Claimants allege that BSA and TCJC "jointly agreed to control
and operate Scout troops." Further, they allege that "Defendants fraudulently
misrepresented, failed to disclose and/or actively concealed the dangers and
prevalence of child abuse in Scouting."

*Id.* at 597-98 (footnotes omitted) (citing ALW 255 ¶ 14; SA 0529 ¶ 27; SA 2357 ¶ 11; SA

0529 ¶ 121).  Lujan Claimants filed proofs of claims asserting BSA bears responsibility

for Scouting-related Abuse and identifying both Local Councils and Chartered

Organizations for the same liabilities attributable to BSA.  *Id.* at 597-98; SA 3697 ¶ 14.

Second, to the extent such direct claims are non-Abuse claims, those claims are not

released under the Plan.  The Plan clearly provides that liability that is not connected to BSA is

not released.  For example, with respect to Mixed Claims (which are claims that include both

Scouting and non-Scouting-related Abuse), only those portions of Mixed Claims arising from

Scouting will be channeled and released.  (*See* D.I. 1-4 Arts. I.A.18, I.A.184, I.A.258, I.A.259).

There can therefore be no concern that there is only an "incidental" relationship connecting the

Channeling Injunction and Releases to BSA.  *In re W.R. Grace*, 900 F.3d at 137.

In sum, I find no error in the Bankruptcy Court's determination that there is a clear

identity of interest based on interconnectedness among BSA and the Releasees, each of which

will benefit from the protections afforded by the Channeling Injunction and Releases.

## ii.    Shared Insurance Coverage

The Bankruptcy Court further found that shared insurance among BSA and the Releasees

supported its exercise of "related to" jurisdiction.  *In re Boy Scouts of Am.*, 642 B.R. at 590.

Courts have found "related to jurisdiction over claims against non-debtors based in part on

shared insurance policies."  *In re Combustion Eng'g*, 391 F.3d at 226.  The record supports the

Bankruptcy Court's finding that, for more than 45 years, BSA's insurance program has provided

coverage for Abuse Claims to all Local Councils and, by 1978, all Local Councils were added as

named insureds under BSA's insurance policies. (Bankr. D.I. 9316 ¶ 11; Bankr. D.I. 9398 ¶¶ 15, 17; Bankr. D.I. 9398 ¶ 18; Bankr. D.I. 9490 19:6-7). Chartered Organizations have been named as additional insureds under both BSA's policies and the Local Councils' policies for certain periods of time. (SA 3824; Bankr. D.I. 9398 ¶ 25; Bankr. D.I. 9490 at 22:12-19; Bankr. D.I. 9398 ¶ 19). In addition, certain independent policies issued to Local Councils also insured Chartered Organizations. *In re Boy Scouts of Am.*, 642 B.R. at 528; Bankr. D.I. 9490 at 103:22-104:2; ADV 717.

A dollar-for-dollar reduction of the Debtor's available insurance coverage—property of the estate under § 541 of the Bankruptcy Code—without the need for an intervening action is precisely the type of effect on the estate that can adversely affect the Debtor's reorganization and provide the basis for "related to" jurisdiction over a third-party claim. *See, e.g., SN Liquid., Inc. v. Icon Int'l, Inc. (In re SN Liquid., Inc.)*, 388 B.R. 579, 584 (Bankr. D. Del. 2008) ("Depletion of insurance proceeds which results from indemnification for defense costs would adversely affect the Debtors' estate."); *see also MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 92–93 (2d Cir. 1988) (noting that where "third parties [sought] to collect out of the proceeds of Manville's insurance policies on the basis of Manville's conduct . . . plaintiffs' claims are inseparable from Manville's own insurance coverage and are consequently well within the Bankruptcy Court's jurisdiction over Manville's assets."); *In re Quigley Co.*, 676 F.3d 45, 47 (2d Cir. 2012) ("[W]here litigation of [the suits] against Pfizer would almost certainly result in the drawing down of insurance policies that are part of the bankruptcy estate of Quigley, the exercise of bankruptcy jurisdiction to enjoin these suits was appropriate.").

The Bankruptcy Court made detailed findings of fact in this regard. *In re Boy Scouts of Am.*, 642 B.R. at 590. It found that "from at least 1976 forward, Debtors provided insurance to both Local Councils and Chartered Organizations." *Id.* Moreover, BSA's primary policies

51

contain per-occurrence limits of liability that restrict potential recoveries for injuries arising from a single occurrence, regardless of the number of insureds. *Id.* As a result, "if an insurer paid out its per occurrence limits to plaintiff A to either a Chartered Organization or Local Council, there would be no insurance remaining to respond to a claim on the policy by BSA for Abuse alleged against it by plaintiff A." *Id.* Later policies contained "aggregate limits applicable to all claims," such that, again, "[p]ayment of any claims against any insured counts against the aggregate limits, thereby depleting the insurance policies." *Id.* Thus, "any call by Local Councils and Chartered Organizations on BSA's insurance has the potential to diminish property of the estate." *Id.* As the Bankruptcy Court further found, "No second suit is necessary to establish the existence of this liability." *Id.* These findings are supported by the record and are not clearly erroneous. It is settled law that bankruptcy courts have "related to" jurisdiction over such claims against insurance assets.

D&V Claimants' main argument is that the Third Circuit has held that shared insurance, by itself, is insufficient to give rise to "related to" jurisdiction. (D.I. 41 at 24, 36-37). But the Third Circuit recognized in *Combustion Engineering* that shared insurance can provide a basis for exercising "related to" jurisdiction over claims against non-debtors, citing the Fourth Circuit's decision in *A.H. Robins* and other decisions "finding 'related to' jurisdiction over claims against non-debtors based in part on shared insurance policies." *In re Combustion Eng'g*, 391 F.3d at 232-33. As Settling Insurance Companies correctly point out, although *Combustion Engineering* held that the shared insurance did not support "related to" jurisdiction in that case, it did so only because the bankruptcy court failed to make findings of fact that "[t]he shared insurance has one cap and that all insureds are under the same cap," such that claims against the co-insured non-debtors would deplete the debtor's insurance. *Id.* at 233 (noting "we would ordinarily remand on the shared insurance issue" for further fact finding, but the challenged

52

A00093

injunction was legally invalid anyway). Here, the Bankruptcy Court made precisely such findings. The shared insurance is subject to shared per-occurrence or aggregate limits such that any claim against a co-insured Local Council or Chartered Organization could deplete the estate's insurance. *In re Boy Scouts of Am.*, 642 B.R. at 526-31. The only other Third Circuit case D&V Claimants cite, *Continental*, did not address subject matter jurisdiction, but rather addressed the validity of a non-debtor injunction solely on the merits. *In re Cont'l Airlines*, 203 F.3d at 216-17 (shared insurance alone not a basis to grant injunction absent findings of necessity and fairness).

As the Bankruptcy Court based its "related to" jurisdiction on several other grounds, this Court need not decide whether shared insurance, standing alone, is sufficient to confer jurisdiction. The record here contains ample evidence of complex and competing claims against BSA's insurance which supports subject matter jurisdiction over claims against the Releasees.

### iii.    Contractual Indemnification Obligations

The Bankruptcy Court further found that BSA's and Local Councils' indemnification obligations supported its exercise of "related to" jurisdiction over the third-party claims. *In re Boy Scouts of Am.*, 642 B.R. at 590-91 (citing SA 3823, Proofs of Claim 14-1 through 14-15). "The contractual obligations of BSA and Local Councils to indemnify Chartered Organizations is immediate. No second lawsuit is necessary to establish the existence of this liability." *Id.* at 591. Lujan and D&V Claimants argue there was insufficient documentary evidence of BSA's (and the Local Councils') contractual obligations to indemnify the Local Councils and Chartered Organizations. (D.I. 40 at 8-9, 12-15; D.I. 41 at 28-35, 39-44).

Indemnification rights of non-debtors against a debtor support "related to" jurisdiction over third-party claims against the non-debtors where "the right to indemnification is clearly established and has accrued upon a filing of a civil action." *In re Lower Bucks Hosp.*, 488 B.R.

53

A00094

303, 314 (E.D. Pa. 2013), *aff'd*, 571 F. App'x 139 (3d Cir. 2014). To give rise to subject matter

jurisdiction, such indemnification rights cannot be contingent on the factual findings of

subsequent litigation. *Id.* at 314; *see also In re Combustion Eng'g,* 391 F.3d at 231

(indemnification rights are not clearly established or accrued where the lawsuit "would not,

itself, result in the indemnification against the debtor"); *In re Fed.-Mogul,* 300 F.3d 368 (same).

Here, Chartered Organizations have asserted contractual claims (as well as common law claims)

against both BSA and Local Councils for indemnification for losses related to Abuse Claims,

including in thousands of proofs of claim filed in the chapter 11 cases. *In re Boy Scouts of Am.,*

642 B.R. at 590 (citing SA 3823, Proofs of Claim 14-1 through 14-15); SA 406–SA 472.

     According to Lujan Claimants, the Bankruptcy Court's finding of indemnity obligations

was erroneous as "no evidence showed that Survivors' claims against nondebtors result in

automatic liability against BSA." (D.I. 40 at 12). "Debtors produced no evidence of prepetition

written indemnification agreements." *Id.* Lujan Claimants cite testimony of BSA National

Coordinating Counsel Bruce Griggs that he was aware of no written indemnification agreements

between BSA and Chartered Organizations (*see* A.1307, A.1336-37) and that of William

Sugden, counsel to the Atlanta Area Council and the designated Rule 30(b)(6) witness of the Ad

Hoc Committee of Local Councils, who testified that he was aware of no written indemnification

agreement between BSA and Local Councils (*see* A.2106, A.6197-98).

     The record reflects that, in recognition of the critical roles that Chartered Organizations

and Local Councils play in the delivery of Scouting, BSA adopted board resolutions on October

30, 2013, in which it agreed to defend and indemnify Chartered Organizations, in addition to

maintaining and providing general liability insurance for Chartered Organizations in connection

with the delivery of Scouting. *In re Boy Scouts of Am.,* 642 B.R. at 590; ADV 721. Further,

every year since 2014 each Local Council signs an Annual Charter Agreement with each

<div align="center">54</div>

<div align="center">A00095</div>

Chartered Organization that provides the Chartered Organization with a contractual right of indemnification against the Local Council with respect to any Scouting-related Abuse Claim. (ADV 717). Since 2014, the Annual Charter Agreements have provided, "The Local Council agrees to: . . . [i]ndemnify the Charter Organization in accordance with the resolutions and policies of the National Executive Board of the Boy Scouts of America." (Bankr. D.I. 9316 ¶ 69). Finally, the record establishes that Local Councils' indemnification obligations to Chartered Organizations may diminish BSA's residual interest in Local Council property. *See In re Boy Scouts of Am.*, 642 B.R. at 591. I agree with the Bankruptcy Court that BSA's and Local Councils' indemnification obligations support the Bankruptcy Court's exercise of "related to" jurisdiction.

D&V Claimants assert that Annual Charter Agreements do not create indemnity obligations because they did not exist at the time that most Abuse Claims arose. (*See* D.I. 41 at 40, 44). The Bankruptcy Court rejected the argument that the Annual Charter Agreements cannot support "related to" jurisdiction because they did not exist at the time at the time most of the underlying Direct Abuse Claims occurred. I agree. The promises in these agreements are broad enough to relate to claims whenever they actually occurred. D&V Claimants cite no law for the proposition that subject matter jurisdiction looks backward to the time of the underlying harm. *See In re Boy Scouts of Am.*, 642 B.R. at 591 n.422.

Appellants further argue that such indemnity obligations do not confer subject matter jurisdiction because another action would need to be filed before the current action could affect a bankruptcy proceeding. (*See* D.I. 41 at 39-40). *See In re W.R. Grace,* 591 F.3d at 172; *In re Fed.-Mogul*, 300 F.3d at 382. But the record demonstrates that BSA's and Local Councils' contractual indemnification obligations, including the duty to defend, are immediate and clearly established, that they accrued by the filing of Abuse Claims, and that they are in no way

dependent on potential third-party claims. I find no error in the Bankruptcy Court's determination that no second lawsuit is necessary to establish the existence of this liability. *In re Boy Scouts of Am.*, 642 B.R. at 591 ("A ruling in a lawsuit against a Chartered Organization or Local Council has an immediate impact on Debtors' estates.").

Appellants' argument that there is insufficient documentary evidence of BSA's (and the Local Councils') contractual obligations to indemnify the Local Councils and Chartered Organizations fails to show that the exercise of "related to" jurisdiction over third-party claims was legally flawed.

### iv.    Residual Interest in Local Councils' Property

As a further basis for its exercise of "related to" jurisdiction, the Bankruptcy Court found that BSA's residual interest in Local Council property constitutes property of the estate. *In re Boy Scouts of Am.,* 642 B.R. at 523, n.25 & 590. "While that interest is, of course, subject to all superior interests, including the payment of valid claims against the Local Council, that interest is nonetheless property of the estate. Any diminishment of that interest impacts the Debtors and property of the estate." *Id.* at 590.

Lujan Claimants argue that BSA's "residual interest in Local Council property" is insufficient to confer subject matter jurisdiction, as BSA's interest is only in what remains after payment of valid claims against a Local Council, and therefore it has no interest in Local Council property used to pay claims. (D.I. 40 at 13-14). D&V Claimants assert that, because the residual interest is subject to all superior interests, including valid claims against a Local Council, it is "impossible" that payment of claims against a Local Council would diminish BSA's interest. (D.I. 41 at 38). But BSA has a residual interest in all Local Council property, and the payment of debts by a Local Council, including on account of Abuse Claims, reduces the value of that residual interest to the detriment of the estate.

56

Bankruptcy courts indisputably have jurisdiction over property of the debtor. *See* 28 U.S.C. § 1334(e) (granting "exclusive jurisdiction . . . of property of the estate"). Claims against property of the estate fall within a bankruptcy court's "related to" jurisdiction. *See Pacor*, 743 F.2d at 996 n.15 (actions that "sought to affect property of the estate" are within "related to" jurisdiction). As the Bankruptcy Court found, BSA holds a contingent interest in Local Council property that would be triggered by BSA's termination of a Local Council charter or by the dissolution of a Local Council. This interest is set forth in BSA's Bylaws and Rules and Regulations, as well as in the form of Local Council bylaws. *In re Boy Scouts of Am.*, 642 B.R. at 523, n.25. (BSA Bylaws Art. VI § 1, cl.2). Although Local Councils are legally separate entities that hold title to property in their own name, such property automatically reverts to BSA upon the revocation of the Local Council's charter or the Local Council's dissolution. BSA's residual interest is indisputably "property of the estate." *See* 11 U.S.C. § 541 (broadly defining property of the estate as including "all legal or equitable interests of the debtor in property"). Accordingly, the Bankruptcy Court correctly recognized that any Abuse Claim that diminishes the assets of a Local Council or triggers the Local Councils' indemnification obligations to Chartered Organizations would also necessarily diminish the assets of BSA's estates. *In re Boy Scouts of Am.*, 642 B.R. at 590.

I need not determine whether such a residual interest, alone, is sufficient to confer subject matter jurisdiction over these claims. It contributes.

I find no error in the Bankruptcy Court's exercise of "related to" jurisdiction to confirm the Plan containing the Channeling Injunctions and Releases, based on identity of interest, shared insurance, contractual indemnity, and residual property interests, each of which is supported by careful findings.

57

A00098

2.   **Statutory Authority**

D&V and Lujan Claimants argue that there is no statutory authority for the Bankruptcy Court to grant non-consensual third-party releases. They are wrong. The Third Circuit, courts within the Third Circuit, and other courts have repeatedly recognized the statutory authority of bankruptcy courts to issue nonconsensual third-party releases under appropriate circumstances. *See, e.g., In re Cont'l Airlines*, 203 F.3d at 214-15 (holding that a third-party injunction would be proper under § 105(a) if the proponents of the injunction demonstrated with specificity that such an injunction was both necessary to the reorganization and fair); *Glob. Indus.,* 645 F.3d at 206 (explaining that a third-party injunction under § 105(a) requires showing with specificity that an injunction is both necessary to the reorganization and fair) (citing *Cont'l Airlines*, 203 F.3d at 214).

The Bankruptcy Court began with the Third Circuit's decision in *Continental,* which states that the Bankruptcy Code "does not explicitly authorize the release and permanent injunction of claims against non-debtors, except in one instance not applicable here"—*i.e.,* section 524(g). "Notwithstanding," the Bankruptcy Court explained, "the Third Circuit [in *Continental*] did not adopt the logic of those courts precluding third-party releases in all instances. Rather, for the next twenty years, the Third Circuit (and courts within this circuit) has permitted nonconsensual third-party releases in narrow circumstances where the releases are fair and necessary to the reorganization." *In re Boy Scouts of Am.*, 642 B.R. at 594 (citing *Global Indus.*, 645 F.3d at 206; *In re United Artists*, 315 F.3d at 227).

The Third Circuit reiterated this conclusion in *In re Millennium Lab Holdings, II, LLC,* 945 F.3d 126, 135 (3d Cir. 2019). "While [the Third Circuit] did not reach the merits of the third-party releases granted in that instance," the Bankruptcy Court explained, "it did conclude that a bankruptcy court is constitutionally authorized to confirm a plan containing nonconsensual

58

A00099

third-party releases if it concludes that the releases are integral to the debtor-creditor relationship." *In re Boy Scouts of Am.*, 642 B.R. at 594. I agree with the Bankruptcy Court's observation that the recent *Millennium* ruling "suggests an implicit recognition that the granting of third-party releases is still permissible as part of the confirmation process." *Id.* As the Bankruptcy Court further explained, "The granting of such releases, therefore, must be found in the bankruptcy court's ability, in appropriate circumstances, to exercise its inherent equitable power consistent with §§ 105(a), 1123(a)(5), and 1123(b)(6) of the Bankruptcy Code." *Id.*

Congress enacted several provisions that provide bankruptcy courts the flexibility to accommodate unique, case-specific circumstances, and the Bankruptcy Court correctly relied upon them as the statutory basis for the nonconsensual third-party releases in the Plan. *See id.* at 594-95. Section 105(a) empowers the court to adopt flexible remedies, consistent with its powers as a court of equity, as "necessary or appropriate to carry out the provisions of" the Bankruptcy Code; § 1123(a)(5) requires a plan to provide "adequate means" of implementation "[n]otwithstanding any otherwise applicable nonbankruptcy law" and provides a non-exhaustive list of potential mechanisms; and § 1123(b)(6) allows a plan to include "any other appropriate provision not inconsistent with applicable provisions of [the Bankruptcy Code]."

Viewed together, these provisions confer what the Supreme Court has described as a bankruptcy court's "residual authority" to formulate plans that enable successful and value-maximizing reorganizations, including relief not specifically authorized elsewhere in the Bankruptcy Code. *See United States v. Energy Res. Co.*, 495 U.S. 545, 549 (1990). In *Energy Resources*, the Supreme Court held that the bankruptcy court had the authority under §§ 105(a) and 1123(b)(6), even though the Bankruptcy Code did not explicitly so provide, to reallocate the debtor's tax liabilities "if the bankruptcy court determines that this [reallocation] is necessary to the success of a reorganization plan." *Id.* at 549; *see id.* at 551. *Energy Resources* demonstrates

59

that §§ 105(a) and 1123(b)(6) are sufficiently broad to authorize plan provisions that are both fair and necessary to the reorganization, including third-party releases, so long as such provisions are not inconsistent with the Bankruptcy Code.

Based on these provisions, the Third Circuit, courts within the Third Circuit, and other courts have recognized the statutory authority of bankruptcy courts to issue nonconsensual third-party releases under appropriate circumstances. *See In re Cont'l Airlines*, 203 F.3d at 214–15; *Glob. Indus.*, 645 F.3d at 206; *In re Airadigm Commc'ns*, 519 F.3d 640, 657 (7th Cir. 2008) ("residual authority" derived from sections 105(a) and 1123(b)(6) "permits the bankruptcy court to release third parties from liability to participating creditors if the release is 'appropriate' and not inconsistent with any provision of the Bankruptcy Code."); *In re Seaside Eng'g & Surveying*, 780 F.3d 1070, 1076–79 (11th Cir. 2015) (citing § 105 in approving third party releases); *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 93–94 (2d Cir. 1988) (citing § 105(a) in affirming order enjoining suits against third parties); *In re A.H. Robins Co.*, 88 B.R. 742, 754 (E.D. Va. 1988) (citing § 105 in approving third party releases).

The Court must also reject D&V and Lujan Claimants' reliance on *In re Purdue Pharma*, 635 B.R. 26 (S.D.N.Y. 2021) for the proposition that the Bankruptcy Court lacked statutory authority to approve the Channeling Injunction and Releases. The district court's decision in *Purdue* is currently on appeal before the Second Circuit, and that decision departs from existing Second Circuit precedent, which, like the Third Circuit, holds that bankruptcy courts are authorized to enjoin and release third-party claims against non-debtors where such releases are integral to the debtor's reorganization. *See In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 141–42 (2d Cir. 2005); *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 293 (2d Cir. 1992); *In re Johns-Manville Corp.*, 843 F.2d 636, 640, 649 (2d Cir. 1988).

Finally, Lujan Claimants and D&V Claimants argue that the Channeling Injunction and Releases are prohibited under §§ 524(e) and 524(g) of the Bankruptcy Code. The Bankruptcy correctly rejected both arguments.

Section 524(e) of the Bankruptcy Code only allows "discharge of a debt of the debtor" and "does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). Claimants argue that the Plan goes further by affecting the liability of non-debtors, not for the liability of the Debtors' debts, but for their own debts. But the Third Circuit has rejected the argument that § 524(e) bars non-consensual third-party releases. *See In re PWS Holding*, 228 F.3d at 247 (determining that *Continental* "did not treat § 524(e) as a per se rule barring any provision in a reorganization plan limiting the liability of third parties," but rather "concluded . . . the releases at issue were impermissible because the hallmarks of permissible non-consensual releases . . . [were] absent"); *In re Mallinckrodt PLC*, 639 B.R. 837, 868 n.70 (Bankr. D. Del. 2022) (noting releases are not the equivalent of a discharge) *aff'd sub. nom., Sanofi-Aventis U.S. LLC v. Mallinckrodt plc*, 2022 WL 17839904 (D. Del. Dec. 22, 2022), *appeal docketed*, No. 23-1111 (3d Cir. Jan. 23, 2023).

The Bankruptcy Court rejected the argument, based on the inclusion of § 524(g) in the Bankruptcy Code, that nonconsensual third-party releases are not appropriate in any other setting. I agree that § 524(g), which expressly authorizes third-party releases in asbestos cases, does not render such releases impermissible in non-asbestos cases. *See In re Boy Scouts of Am.*, 642 B.R. at 594-95. As the Bankruptcy Court pointed out, Congress enacted a rule of construction in § 524(g) that contradicts the inference that Lujan and D&V Claimants ask this Court to make, legislating that "[n]othing in . . . the amendments made by [§ 524(g)-(h)] shall be construed to modify, impair, or supersede any other authority the court has to issue injunctions in connection with an order confirming a plan of reorganization." Bankruptcy Reform Act, Pub. L.

103-394 § 111(b) (1994); *see also* 140 Cong. Rec. 27,692 (Oct. 4, 1994). Section 524(g) thus cannot be used as a basis to prohibit relief otherwise allowed by the Bankruptcy Code.

### 3. *Continental* Hallmarks of Permissible Nonconsensual Releases

Having determined that the Bankruptcy Court correctly determined that it had jurisdictional and statutory authority to approve the Channeling Injunction and Releases, D&V and Lujan Claimants must show that the Bankruptcy Court committed clear error in its underlying factual findings. (D.I. 40 at 23-34; D.I. 41 at 58-79). Under Third Circuit law, the *Continental* "hallmarks" of permissible nonconsensual releases—fairness and necessity to the reorganization—guide the Bankruptcy Court's review of third-party releases. *See In re Boy Scouts of Am.*, 642 B.R. at 595 (citing *In re Cont'l Airlines*, 203 F.3d at 212). Following a detailed and thorough review of the relevant facts, the Bankruptcy Court concluded that the Channeling Injunction and Releases satisfy the *Continental* hallmarks. *See id.* at 616-19. The applicable legal standard—the *Continental* hallmarks—is uncontroverted.[9] Whether approval of the Channeling Injunction and Releases was appropriate depends on the Bankruptcy Court's analysis of the particular facts of the case, and the Court reviews the Bankruptcy Court's findings of fact for clear error. *See Glob. Indus.*, 645 F.3d at 206 (conducting detailed case-specific factual inquiry);.*Cont'l Airlines*, 203 F.3d at 217 (same); *In re Wash. Mut., Inc.*, 442 B.R. 314, 345 (Bankr. D. Del. 2011) ("Determining the fairness of a plan which includes the release of

---

[9] The parties briefed whether the factors considered in *In re Master Mortgage*, 168 B.R. 930, 937 (Bankr. W.D. Mo. 1994) were met, and the Bankruptcy Court, in its thorough analysis, considered those factors as well, ultimately returning to the *Continental* "hallmarks." *See In re Boy Scouts of Am.*, 642 B.R. at 596-616. As the Bankruptcy Court noted, "While *Master Mortgage* is not the law of the Third Circuit for approval of nonconsensual third-party releases, those factors, as well as others, can inform the analysis of whether the *Continental* hallmarks have been met." *Id.* at 596. Thus, I do not separately review using a *Master Mortgage* analysis.

non-debtors requires the consideration of numerous factors and the conclusion is often dictated by the specific facts of the case.").

D&V and Lujan Claimants argue that the Channeling Injunction and Releases are not necessary because, according to them, BSA could have confirmed a "BSA-only" plan of reorganization that does not contain releases in favor of third parties. (*See* D.I. 40 at 26; D.I. 41 at 64). D&V and Lujan Claimants also contend that the Channeling Injunction and Releases are not fair because they were approved without what the D&V and Lujan Claimants believe to be sufficient consideration from the Local Councils and Chartered Organizations. These arguments misconstrue the legal standard articulated in *Continental*.

> ### a.    The Channeling Injunction and Releases Are Necessary to the Reorganization

Under the Third Circuit standard, to approve a nonconsensual third-party release, the Bankruptcy Court must find that the release is necessary to the debtor's reorganization. *In re Cont'l Airlines*, 203 F.3d at 214. In *Continental*, the Third Circuit held that the particular third-party releases before it on appeal were not necessary to the reorganization, as there was "nothing in the record to even imply that the success of the . . . reorganization bore any relationship to the release and . . . injunction." *Id.* at 215. The Third Circuit subsequently clarified in *Global Industrial* that necessity and fairness mean showing that the liability of the third party is "sufficiently onerous to jeopardize the debtors' reorganization" if not channeled to a trust under the debtor's plan of reorganization. *In re Global Indus.*, 645 F.3d at 206. As courts in the Third Circuit have held, the necessity prong requires demonstration that "the success of the . . . reorganization [bears] a relationship to the release" of the nonconsensual parties, and that the releases have provided "a critical financial contribution" to the plan "in exchange for receiving a release of liability." *In re Cont'l Airlines*, 203 F.3d at 215.

63

D&V and Lujan Claimants argue that the Channeling Injunction and Releases are unnecessary because the BSA proposed—more than two years prior to the confirmation hearing—the "BSA Toggle Plan," which contained an option for a potential BSA-only plan. (*See* D.I. 40 at 26; D.I. 41 at 65–67). This argument misconstrues the necessity prong of the *Continental* standard. The record reflects that the BSA Toggle Plan was never solicited; indeed it was structured as a "cramdown" plan on Survivors. (Bankr. D.I. 6445). There is no evidence that a BSA-only plan would have been feasible—either for the future of the BSA or as a means of providing compensation to Survivors.

Among other things, the success of a plan of reorganization for the BSA depends upon the BSA's future membership revenue, which, in turn, depends on Local Councils and Chartered Organizations resolving their abuse liabilities and continuing to deliver the Scouting program. The Bankruptcy Court found that "[m]embership drives BSA's finances," which "depends on Local Councils and Chartered Organizations to both maintain and recruit Scouts." *In re Boy Scouts of Am.,* 642 B.R. at 610. According to the Bankruptcy Court, the "evidence is unrefuted" that, without the Channeling Injunction and Releases for Local Councils and Chartered Organizations, the "BSA is likely to suffer a drop in membership, significantly affecting revenue and putting into serious question BSA's ability to continue as a national organization." *Id.* at 617. Mr. Whittman of Alvarez & Marsal, BSA's financial advisor, who participated in mediation discussions and confirmed the arms-length nature of the negotiations, testified that (i) absent the Channeling Injunction and Releases for Local Councils, there would be "significant" Local Council bankruptcy filings (which the Ad Hoc Committee for Local Councils' witness, Mr. Sugden, agreed with), and (ii) absent the Channeling Injunction and Releases for Chartered Organizations, there would be a significant impact on membership and operation. *Id..* (Bankr. D.I. 9316 ¶¶ 11, 68; Bankr. D.I. 9407 at 35:15–36:9, 188:6–13; SA 2141). The record reflects

64

A00105

that the Local Councils' contribution to the Settlement Trust, as well as the contribution of their insurance rights, would not have been possible without the Channeling Injunction and Releases. (Bankr. D.I. 9316 ¶ 68 ("[I]f Abuse Claims against Local Councils are not channeled to the Settlement Trust, Local Councils will not make the Local Council Settlement Contribution.")).

For these reasons, the Bankruptcy Court found that the BSA-only plan was "not a true resolution and would leave claimants racing to the courthouse, filing suits across the country, and BSA in shambles." *In re Boy Scouts of Am.*, 642 B.R. at 611. A BSA-only plan would spiral the organization into a "death trap of litigation with minimal recoveries in sight," and Survivors—many of whom have been waiting decades to receive a meaningful recovery—would miss out on the recoveries made possible by this Plan. *See id.* at 613. The record further reflects that a BSA-only plan would fail to unlock the value from the Abuse Insurance Policies and provide virtually no recovery to holders of Abuse Claims. (Bankr. D.I. 2594 Art. II.A (disclosing that under the BSA-only plan the recovery for holders of Direct Abuse Claims would be as little as 1% of their claims); Bankr. D.I. 4108 (same); Bankr. D.I. 4716 at 73:9–14, 80:21–81:16 (counsel for the Tort Claimants' Committee characterizing the BSA Toggle Plan as a "death trap plan")).

The Bankruptcy Court found that the Channeling Injunction and Releases were necessary to maximize the value of the estates for the benefit of holders of Abuse Claims and made specific findings in support. *In re Boy Scouts of Am.*, 642 B.R. at 616-17. The foundation of the Plan consists of contributions to the Settlement Trust by the Releasees of approximately $2.5 billion in cash and property, as well as other assets the Bankruptcy Court determined have a value of more than $4 billion. *Id.* Without the Channeling Injunction and Releases, the Bankruptcy Court found that these contributions would not have been made. The "Settling Insurers and Local Councils would not make their monetary contributions to the Settlement Trust," and the "Participating Chartered Organizations, Related Non-Debtor Entities and their respective

65

Representatives who are additional insureds would not contribute their insurance rights to the Settlement Trust [without the Channeling Injunction and Releases] . . . . [It] is illogical to believe these settlements could be achieved without releases and this conclusion is supported by the record." *Id.* at 610-11; *see also* Bankr. D.I. 9517 at 79:11–21 (Whittman) ("I believe [the Channeling Injunction and Releases] were necessary in order to maximize the value of the [insurance] policies, I believe they were necessary in order to secure this deal that is a set of interlocking, interrelated deals").

Moreover, the amounts payable under the Insurance Settlement Agreements, together with the contributions from Local Councils, Related Non-Debtor Entities, and Chartered Organizations, are each essential to the success of the Plan insofar as they provide the overwhelming majority of funding to the Settlement Trust for the benefit of holders of Abuse Claims. The Bankruptcy Court found that, absent the "global settlements of insurance coverage disputes" with BSA's two primary insurance carriers, Hartford and Century/Chubb Companies, "these cases would devolve into a morass of coverage litigation," and recoveries "would be delayed for countless years." *In re Boy Scouts of Am.*, 642 B.R. at 610; *see also* Bankr. D.I. 9517 at 66:23–67:2 (Whittman)] ("[A]bsent these insurance settlements . . . I'm not sure that the BSA would have been able to reorganize."). The Hartford and Century/Chubb Companies settlements also "provided a template" for settlements with Zurich and Clarendon and may serve as the template for future settlements with Non-Settling Insurance Companies after BSA's emergence from bankruptcy. " *In re Boy Scouts of Am.*, 642 B.R. at 610-11. The Bankruptcy Court also cited "undisputed evidence" showed that "without the Scouting-Related Releases, the Settling Insurance Companies would not settle their liability." *Id.* at 616. (*See also* Bankr. D.I. 9395 ¶ 31). As the Bankruptcy Court found, in a world without the Channeling Injunction and

Releases, "the insurance proceeds may or may not be available." *In re Boy Scouts of Am.*, 642 B.R. at 616.

Lujan Claimants further contend that the Channeling Injunction and Releases are not necessary because earlier versions of the Plan did not provide releases for the Archbishop, Century and Chubb Companies, Clarendon, Zurich, or Roman Catholic Entities, which are now receiving releases under the confirmed Plan. (*See* D.I. 40 at 26). Again, there is no evidence that such earlier versions of the Plan would have been feasible—either for the future of the BSA or as a means of providing compensation to Survivors. Lujan Claimants further argue that there was no determination by the Bankruptcy Court that BSA's successful reorganization requires the release of Roman Catholic Entities and other religious entities. (*See* D.I. 40 at 28). But under the Plan, the Roman Catholic Entities fall under the umbrella of Participating Chartered Organizations; therefore, all of the Bankruptcy Court's findings relating to the necessity of releases for Participating Chartered Organizations include Roman Catholic Entities (and any other religious Chartered Organizations that did not become Opt-Out Chartered Organizations with respect to Scouting-related Abuse Claims). (*See* D.I. 1-4 Art. V.S.8 ("[A]ll Roman Catholic Entities, other than those that have specifically opted out of such treatment . . . shall be treated as Participating Chartered Organizations.")). Consequently, Lujan Claimants' argument ignores the evidence establishing that the Channeling Injunction and Releases for Participating Chartered Organizations (which includes Roman Catholic Entities and religious Chartered Organizations) are necessary. (Bankr. D.I. 9395 ¶¶ 30–31; Bankr. D.I. 9316 ¶¶ 67–70; Bankr. D.I. 9280 ¶¶ 191–93, 199).

The Bankruptcy Court determined that "BSA needs to resolve the Abuse litigation in order to move forward," and that the Plan, supported by the Channeling Injunction and Releases, accomplishes just that. *In re Boy Scouts of Am.*, 642 B.R. at 617. D&V and Lujan Claimants

67

A00108

have failed to demonstrate that the Bankruptcy Court erred in determining that the Channeling Injunction and Releases were necessary to the BSA's reorganization, as required by *Continental*.

### b.    The Channeling Injunction and Releases Are Fair

Under Third Circuit law, the Bankruptcy Court must also find that the Channeling Injunction and Releases are fair. *In re Cont'l Airlines*, 203 F.3d 214. Courts in the Third Circuit have interpreted *Continental*'s fairness prong to require that the parties whose claims are being released receive adequate consideration in exchange for such releases. *See, e.g., Mallinckrodt*, 639 B.R. at 867 (noting that "[t]he [Third Circuit's] review of cases [in *Continental*] indicated that . . . fairness dictates that 'it is necessary to provide adequate consideration to a claimholder being forced to release claims against non-debtors'") (quoting *In re Cont'l Airlines*, 203 F.3d at 212-13); *David v. Weinstein Co. Holdings*, 2021 WL 979603, at *6 (D. Del. Mar. 16, 2021) ("Part of the inquiry into the fairness of non-consensual third-party releases is determining whether reasonable consideration is given in exchange for the releases."). Indeed, the Third Circuit in *Continental* framed the legal question as "whether there are circumstances under which we might validate a non-consensual release that is both necessary and given in exchange for fair consideration." *In re Cont'l Airlines*, 203 F.3d at 214 n.11. I have held that the adequacy of consideration given in exchange for releases of claims is reviewed for clear error. *See Exide Holdings*, 2021 WL 3145612, at *13.

The Bankruptcy Court determined that the Channeling Injunction and Releases are fair to holders of Abuse Claims because "the Plan provides a mechanism for payment of all or substantially all Direct Abuse Claims" and therefore holders of Direct Abuse Claims "are being treated fairly for the releases they are granting." *In re Boy Scouts of Am.*, 642 B.R. at 617. As previously addressed herein, no party presented evidence at trial to challenge this critical finding. D&V and Lujan Claimants claim that they are being forced to release claims against Local

68

Councils, Chartered Organizations, and Settling Insurance Companies "while receiving little to nothing in exchange." (D.I. 40 at 24; *see also* D.I. 41 at 59–64). The Bankruptcy Court rejected this assertion based on unrefuted evidence, finding that D&V and Lujan Claimants, like other holders of Abuse Claims, can expect to be paid in full. Because D&V and Lujan Claimants will receive under the Plan all the compensation to which they would be entitled in the tort system, D&V and Lujan Claimants are receiving "adequate consideration" as required by *Continental*. Appellants provide no basis to disturb the Bankruptcy Court's fairness determination.

The fairness of the Channeling Injunction and Releases is also evidenced by the fact that holders of Direct Abuse Claims "voted overwhelmingly in favor of the Plan." *In re Boy Scouts of Am.*, 642 B.R. at 617, 660; *see also* Bankr. D.I. 9280 ¶ 56. The Bankruptcy Court found that more than 85% of holders of Direct Abuse Claims voted to accept the Plan, which constitutes "overwhelming acceptance." *Id.* at 617. The Plan also has the support of JPMorgan Chase Bank, the Creditors' Committee, the Tort Claimants' Committee, the Future Claimants' Representative, the Coalition, and the Settling Insurance Companies. *Id.* The Bankruptcy Court concluded that the settlements are preferable to the alternative after conducting an exhaustive review of, among other things, the fairness of the settlements and the impediments to collection. The vast majority of claimants similarly situated to the D&V and Lujan Claimants agreed.

Finally, the Bankruptcy Court's findings regarding the transparency and rigor of the process by which Local Councils' contributions to the Settlement Trust were calculated supports the fairness of the releases given in exchange. *See In re Boy Scouts of Am.*, 642 B.R. at 602-03. Each Local Council is contributing a fixed amount of cash and property based on a formula that fairly and equitably allocates the Local Council Settlement Contribution. (*See generally* Bankr. D.I. 9316; Bankr. D.I. 9280 ¶¶ 234–35). The formula was developed over many months and accounts for disparities between Local Councils' claims exposure, applicable statutes of

limitation, and financial capacity. (*See* Bankr. D.I. 9316 ¶¶ 24–43; Bankr. D.I. 9280 ¶¶ 232–35; D.I. 1-3 at 141–44).

The Bankruptcy Court cited several other aspects of the contributions and resulting Settlement Trust that supported the fairness of the releases given in exchange, including: (a) "more timely assessment and payment" of claims, and "more equal treatment across claimants," in comparison with resolution in the tort system, *In re Boy Scouts of Am.*, 642 B.R. at 617; (b) consistency with the manner in which claimants sued and settled claims with BSA (i.e., as a group), *id.*; (c) the "multiple options" provided under the TDP to holders of Direct Abuse Claims to pursue litigation in the tort system, *id.*; and (d) Survivors' need for global resolution after waiting decades, *id.* (*See also* Bankr D.I. 9280 ¶¶ 43–51, 53–56). All these findings are well supported by the record.

D&V and Lujan Claimants' additional arguments misapprehend the fairness standard. For instance, the D&V Claimants argue that the Local Councils' aggregate contribution is unfair by comparing the BSA's versus Local Councils' percentages of "liquid assets" being contributed to the Settlement Trust. (*See* D.I. 41 at 62 ("BSA is paying 67% of its liquid assets to the Settlement Trust . . . Local Councils are getting releases of all abuse claims in exchange for [contributing] only 30% of their liquid assets."). I agree with BSA that this argument is a red herring. The standard articulated in *Continental* is the adequacy of the consideration given to the party whose claims are released, not the cost imposed on the released party. *See, e.g.*, *Mallinckrodt*, 639 B.R. at 874 (assessing fairness in terms of value provided to claimants in exchange for nonconsensual third party releases).

D&V Claimants further argue that, without knowing the assets and potential liabilities of each organization receiving a release, it is "impossible" to know if the claimants giving the releases are getting fair consideration in return. (*See* D.I. 41 at 61). Lujan Claimants likewise

70

A00111

complain that "no analysis was done" of Chartered Organizations' or, excluding Century/Chubb, the Settling Insurance Companies' assets or liability exposure. (*See* D.I. 40 at 24–25, 31). But these arguments fail to account for the significant value of the insurance rights that the Local Councils and Chartered Organizations are contributing to the Settlement Trust and the nonmonetary aspects of the Plan that the Bankruptcy Court determined to be fair to holders of Abuse Claims.

D&V Claimants also assert that the Bankruptcy Court failed to make certain specific findings of fact that support the Channeling Injunction and Releases. (*See* D.I. 41 at 67–68). Indeed, in *Continental*, the Third Circuit determined that the bankruptcy court "never specifically addressed the release and permanent injunction" of the released claims and found the confirmation order lacked "any findings" that the release was fair and necessary to the reorganization. *See In re Cont'l Airlines*, 203 F.3d at 214. But the Confirmation Opinion includes countless specific findings of fact that support each aspect of the necessity and fairness of Channeling Injunction and Releases under *Continental*. This argument is contrary to the record.

Finally, D&V Claimants argue that they did not have sufficient notice of released Representatives: "while there is a list attached to the Plan of more than 100,000 Chartered Organizations released, the Plan does not identify all the Chartered Organizations" nor the "Representatives" of Local Councils or Chartered Organizations who will be released. (*See* D.I. 41 at 67). The Bankruptcy Court, however, found that a "complete list of Chartered Organizations can be found at Boy Scouts of America Restructuring Website, http://omniagentsolutions.com/bsa/." *In re Boy Scouts of Am.*, 642 B.R. at 524 n.26; Bankr. D.I. 9275 ¶ 7. The website is repeatedly referenced throughout the solicitation packages served on all holders of Direct Abuse Claims. (Bankr. D.I. 7999; Bankr. D.I. 8378). "Representatives" is a

71

A00112

defined term in the Plan, and the definition provides sufficient details to put claimants on notice

of the Representatives receiving a release. (D.I. 1-4 Art. I.A.249). And no party disputes that

Representatives must be included in the Channeling Injunction and Releases as part of the global

resolution under the Plan; certain Representatives are insureds under the BSA Insurance Policies,

and claims against such Representatives would therefore impact the proceeds of the BSA

Insurance Policies absent a release. (Bankr. D.I. 9316 ¶ 68 ("[W]ithout coverage for

Representatives, a Local Council will likely face indemnity/contribution claims from such

Representatives, rendering a "global resolution" illusory."); *id.* ¶ 70 ("I am confident that without

the releases and channeling injunctions contained in the Plan of (a) Local Councils, (b) Local

Councils' Representatives, (3) Chartered Organizations, and (4) Chartered Organizations'

Representatives, Local Councils will not make the Local Council Settlement Contribution or the

Supplemental LC Contribution."); SA 92 (providing requirement to indemnify Representatives)).

    D&V and Lujan Claimants have failed to demonstrate clear error in any of the

Bankruptcy Court's factual findings supporting the necessity and fairness of the Channeling

Injunction and Releases, nor have they shown any error in the Bankruptcy Court's analysis under

the Third Circuit standard.

    **C.    Assignment of Insurance Rights**

    Certain Insurers urge me to reverse the Confirmation Order on the basis that the

Insurance Assignment contemplated by the Plan impermissibly abrogates their contracts. (*See*

D.I. 45 at 77-90). The Insurance Assignment includes "the assignment and transfer to the

Settlement Trust" of all "rights, claims, benefits, or Causes of Action of the Debtors, Related

Non-Debtor Entities, Local Councils, or Contributing Chartered Organizations under or with

respect to the Abuse Insurance Policies (but not the policies themselves)." (Plan Art. 1.A.157).

The Plan does not assign the entire insurance "policies," Certain Insurers complain. (D.I. 45 at

72

A00113

25 (citing Plan Art. 1.A.157; TDPs, Art. V.C)).  "Nor does it purport to assign any of BSA's contractual obligations to its insurers or say anything at all about whether BSA or anyone else remains obligated to comply with those contractual obligations."  (*Id.*)  According to Certain Insurers, the Plan's provisions effecting such a transfer are impermissible and render it unconfirmable.

Certain Insurers cite cases for the proposition that bankruptcy courts "do not have the power to rewrite contracts to allow debtors to continue to perform on more favorable terms."  *In re Crippin*, 877 F.2d 594, 598 (7th Cir. 1989).  The contracts at issue contain very important rights and obligations that are fundamental to the bargain, Certain Insurers assert, and assigning the contracts without assigning the corresponding obligations "rewrites" those contracts.  The obligations integral to the bargain cited by Certain Insurers include: (1) defense rights, which provide insurers with the right to associate in the defense and investigation of claims, as well as the right to defend lawsuits and make any settlements they deem expedient; (2) cooperation obligations, which require the insured to assist and cooperate in the insurer's investigation, defense, and settlement of claims, including by providing relevant materials and testimony; (3) consent obligations and "no action conditions," which obligate the insured to obtain its insurer's consent to a settlement and to further provide that no action lies against the insurer for breach unless a trial results in a judgment against the insured (or the claimant, insured, and insurer have agreed in writing to settle the claim); and (4) assignment obligations, which require the insured to obtain its insurers' consent to an assignment of the contract.  (*See* D.I. 45 at 16).  Certain Insurers argue that the Plan does not specifically provide for BSA or the Settlement Trustee to cooperate in the defense of claims or to obtain consent to settlements or other resolutions, and such "a plan that impermissibly modifies insurance contracts is not confirmable as a matter of law."  (*Id.* at 80).

73

A00114

"Under the Bankruptcy Code, if a contract is not executory, a debtor may assign, delegate, or transfer rights *and/or* obligations under section 363 of the Bankruptcy Code, provided that the criteria of that section are satisfied." *In re Boy Scout of Am.*, 642 B.R. at 668 (quoting *In re Am. Home Mortg.*, 402 B.R. 87, 92-93 (Bankr. D. Del. 2009) (emphasis in original)). The Insurance Policies are not executory contracts, *id.* at 668 n. 729, and no insurer argues otherwise. "Assuming § 363 is the operative section, . . . Debtors can transfer their property rights consistent with applicable state law." *Id.* The Bankruptcy Court found that § 363 was satisfied: "The Plan's transfer of rights under BSA Insurance Policies (the "Debtor Policy Assignment") is authorized and permissible notwithstanding any terms of any policies or provisions of applicable law that are argued to prohibit the assignment or transfer of such rights." (D.I. 1-1 ¶ II.I.2).

Certain Insurers identify no authority that stands for the proposition that interests under their policies could not be assigned. Debtors routinely assign their insurance policy interests to a settlement trust. *See, e.g., In re Combustion Eng'g,* 391 F.3d at 218 n.27 ("The Bankruptcy Code expressly contemplates the inclusion of debtor insurance policies in the bankruptcy estate.")*; In re Kaiser Aluminum Corp.*, 343 B.R. 88, 95 (D. Del. 2006); *In re Fed.-Mogul, Inc.*, 385 B.R. 560, 567 (Bankr. D. Del. 2008) ("[Section] 1123(a)(5)(B) expressly contemplates that the debtor's interests in the policies may be assigned to a trust or other entity."); *see also In re Congoleum Corp.*, 2008 WL 4186899, at *2 (Bankr. D.N.J. Sept. 2, 2008) ("[A] plan of reorganization may assign insurance policies to a personal injury trust.").

Certain Insurers do not cite any language in the Plan or the TDP abrogating the BSA's obligations under the insurance policies. To the contrary, the TDP is explicit in not modifying the insurance policies and preserving the policy obligations as they existed prepetition:

74

A00115

> Nothing in these TDP shall modify, amend or supplement, or be interpreted as modifying, amending, or supplementing the terms of any Insurance Policy or rights and obligations under an Insurance Policy assigned to the Settlement Trust to the extent such rights and obligations are otherwise available under applicable law and subject to the Plan and Confirmation Order. The rights and obligations, if any, of the Non-Settling Insurance Companies relating to these TDP, or any provision hereof, shall be determined pursuant to the terms and provisions of the Insurance Policies and applicable law.

(D.I. 1-4, Ex. A, Art. V.C). The Plan again references preserving those obligations in the assignment provision:

> The Settlement Trust's rights under any insurance policies issued by the Non-Settling Insurance Companies, including the effect of any failure to satisfy conditions precedent or obligations under such policies (other than, in case of the BSA Insurance Policies, the terms of any policies or provision of applicable law that are argued to prohibit the assignment or transfer of such rights), shall be determined under the law applicable to each policy in subsequent litigation.

(D.I. 1-1 ¶ II.I.2(e)). Moreover, the TDP provide:

> The Bankruptcy Court has authorized the Insurance Assignment pursuant to the Plan and the Confirmation Order, and the Settlement Trust has received the assignment and transfer of the Insurance Actions, the Insurance Action Recoveries, the Insurance Settlement Agreements (if applicable), the Insurance Coverage, and all other rights or obligations under or with respect to the Insurance Policies (but not the policies themselves) in accordance with the Bankruptcy Code.

(D.I. 1-4, Ex. A, Art. V.C). The Bankruptcy Court repeatedly referred to the obligations as part of the policies, not as having been abrogated: "If the obligations form the basis for claims, they will be treated accordingly. If the obligations are conditions precedent, then the Non-Settling Insurance Companies may be able to assert those conditions as a defense to performance." *In re Boy Scouts of Am.*, 642 B.R. at 669. An "obligation" cannot form the basis of the claim or be a condition precedent if it has been abrogated. Thus, obligations under the insurance policies are not abrogated by the Plan. It appears Certain Insurers' real concern is that, in the future, the Settlement Trustee will breach the policies by not complying with their conditions. (*See* D.I. 45

75

A00116

at 84-85). I agree with BSA that speculation about a potential alleged future breach of the insurance policies does not constitute abrogation or provide a basis for overturning the Plan.

Certain Insurers argue that the protective language contained in the Plan is not sufficient to safeguard their rights because any such protections are expressly "subject to the Plan and Confirmation Order"—the very documents containing/authorizing the "Insurance Assignment," which assigns the benefits but not the burdens of the contracts. (*See* D.I. 45 at 84). The language at issue provides, "Nothing in these TDP shall modify, amend, or supplement . . . the terms of any Insurance Policy or rights and obligations under an Insurance Policy assigned to the Settlement Trust to the extent such rights and obligations are otherwise available under applicable law and subject to the Plan and Confirmation Order." (D.I. 1-4, Ex. A, Art. V.C). Certain Insurers complain that these provisos, which were not contained in earlier drafts of the TDPs, render the protective language, "at best, circular and, at worst, illusory" as this language "purported to abrogate such protections to the extent they were in conflict with other prejudicial provisions in the plan." (*Id.* at 41, 84-85). I don't agree with this reading. The plain meaning of this provision is clear that Insurers' rights and obligations under an Insurance Policy are preserved "to the extent such rights and obligations are otherwise available under applicable law." Thus, Insurers keep the whole gamut of permissible contractual rights under state law except, for example, anti-assignment provisions that are not "otherwise available" under the Bankruptcy Code. Similarly, Insurers' rights and obligations under an Insurance Policy are preserved "subject to the Plan and Confirmation Order," which, for example, assign rights under Policies to the Litigation Trust—an assignment not otherwise contemplate or authorized by the Policies.

Certain Insurers further argue that the Plan prejudices their rights because they have lost the ability to minimize liability by participating in defense. (*See* D.I. 45 at 84-85). While the

claims process "does not contain provisions requiring the Settlement Trustee to . . . permit insurer participation, nothing prohibits her from doing so." *In re Boy Scouts of Am.*, 642 B.R. at 656. This argument is unsupported by the evidence. First, they have not lost that right. Second, while Certain Insurers' expert, Professor Harrington, provided helpful testimony within his expertise as to the key clauses in commercial general liability policies that help reduce "moral hazard" and permit insurers to offer coverage at lower premiums, as the Bankruptcy Court found, his other conclusions "about the actual impact of the loss of contractual rights is all in the hypothetical." *Id.* at 655. Professor Harrington conceded that he did not know how insurance companies participate in the underlying Abuse litigation, so the Bankruptcy Court did "not accept his opinions regarding the impact of the TDP (or his reading of them) . . . or his conclusions about the 'difficulty' an insurance company may face in future coverage litigation." *Id.* at 656.

Certain Insurers assert that future failure to involve them in the defense will result in inflated awards that "would fundamentally alter the economic bargain between the parties." (D.I. 45 at 62). But Certain Insurers introduced no evidence that future awards would be inflated, and the record evidence contradicts this argument. Moreover, the bargain between the parties is set forth in the terms of the insurance policies, and it is for the Certain Insurers to pay covered claims, and not to pay claims that are not covered or are otherwise subject to a coverage defense. If there is future award that reaches an Insurer, and it disputes its obligation to pay that award, then it will raise its coverage defense, and that defense will be adjudicated on the then-existing facts. But the policies do not allow, and there never was a bargain to allow, the Certain Insurers to prevent BSA from compensating survivors of childhood abuse or otherwise resolving claims.

Certain Insurers further contend that the Plan does not specifically provide for BSA or the Settlement Trustee to cooperate in the defense of claims or consent to settlements or other resolutions, but there is no requirement for a plan of reorganization to provide those rights to insurers. Moreover, BSA could always settle claims without the Insurer's consent, and it has done so numerous times in the past, subject to the risk of coverage defense. (*See* Bankr. D.I. 9354 at 91:2-8). The Settlement Trust is no different. If the Insurers believe that there is some future breach of their insurance contracts, they retain the right to raise that defense to coverage.

Certain Insurers cite their expert's testimony that the contracts at issue anticipated that claims would be "settled within the context of the court system." (*See* Bankr. D.I. 9530 at 23:23-25 (Harrington)). But Certain Insurers cite no language in the contracts limiting settlements to those actions tried in court, and the record supports that such claims are routinely settled without the need for litigation. Even assuming there were such language, I would agree with BSA that Certain Insurers' rights under the contracts, including its right to assert a breach, are preserved.

Certain Insurers' final argument, that the Bankruptcy Court was required to decide all insurance coverage issues prior to approving the assignment of rights, is unavailing. (*See* D.I. 45 at 87). The requirements for confirmation do not include any right to coverage dispute resolution, much less with respect to future alleged claims. The Bankruptcy Court correctly determined not to adjudicate future breaches that had not occurred, and might not occur. *In re Boy Scouts of Am.*, 642 B.R. at 656 ("I will not anticipate how an insurance coverage court will interpret the Plan, the TDP or any confirmation order that may be entered"). As Professor Harrington acknowledged, he does not know "'how anything will come out.'" *Id.* As the Bankruptcy Court held, "This issue will be resolved by a coverage court in the event of any disputes." *Id.* at 670. "[W]hile there may be some issues that are global in nature, insurance coverage litigation is often before the coverage court on whether an insurer must pay a specific

78

settlement entered into by the insured without the insurer's consent. This would appear to be a fact intensive inquiry." *Id.* at 653.

I find no error in the Bankruptcy Court's conclusion that the Insurance Assignment does not impermissibly abrogate Certain Insurers' contracts.

**D.    Approval of the Insurance Settlements Is Supported by the Record**

Following mediation, Debtors entered into settlements with Settling Insurance Companies, Hartford, Chubb, Zurich, and Clarendon. The Insurer Settlements bring an aggregate of $1,656,000,000 to the Settlement Trust. The settlements are similar in structure and provide for: (i) the payment by the insurer of an agreed amount on an agreed schedule to the Settlement Trust to be used to pay Abuse Claims; (ii) the assignment of the Local Council Insurance Policies to the estate and the sale of the Local Council Insurance Policies and the BSA Insurance Policies (collectively, "Abuse Insurance Policies") to the insurer under § 363 free and clear of all claims and interests of all parties; and (iii) a complete release from all parties (*i.e.,* other Protected Parties, the Limited Protected Parties/Participating Chartered Organizations, the Future Claimants' Representative, the Coalition, and the Settlement Trust) of all causes of action arising out of their respective insurance policies and any liability for Abuse Claims. The settlement also requires the channeling to the Settlement Trust of the Abuse Claims for various periods of time, which differ based on whether the claim relates to a Contributing Chartered Organization, a Participating Chartered Organization, or an Opt-Out Chartered Organization. Through this combination of affirmative relief and protections, the Settling Insurance Companies will obtain a complete release of liability for Abuse Claims on behalf of themselves, the named insured(s) under their policies, and any additional insureds (whether specifically named or categorically identified). The Bankruptcy Court approved the Insurance Settlements, which it

determined were essential to the reorganization. "Without these settlements, there is no Plan." *Id.* at 562.

Lujan Claimants challenge certain of those Insurance Settlements, arguing, among other things, that the policy proceeds are not property of the estate and that the Bankruptcy Court erred in approving the releases of claims against the Settling Insurance Companies. (D.I. 40 at 34-62).

### 1. The Insurance Settlements Meet the *Martin* Standard

Lujan Claimants challenge the Bankruptcy Court's finding that the Insurance Settlements satisfy the settlement approval standard. (D.I. 40 at 62–64). Bankruptcy courts consider the following factors (the "*Martin* factors") when determining whether to approve a settlement under Bankruptcy Rule 9019: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Myers v. Martin (In re Martin),* 91 F.3d 389, 393 (3d Cir. 1996). I review the Bankruptcy Court's approval of a settlement "for an abuse of discretion," which is "a deferential standard of review." *In re Nutraquest, Inc.*, 434 F.3d 639, 645 (3d Cir. 2006). A reviewing court will "not disturb an exercise of discretion unless there is a definite and firm conviction that the court . . . committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Id.* (quoting *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 320 (3d Cir. 2001)). Accordingly, to reverse the Bankruptcy Court's approvals of the Insurance Settlements, I must determine that such approvals "rest on a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Id.* (internal quotes and citations omitted).

Lujan Claimants fail to show an abuse of discretion. The Bankruptcy Court approved the Insurance Settlements based on an extensive evidentiary record that formed the basis for its determination that BSA had satisfied the *Martin* standard. *In re Boy Scouts of Am.*, 642 B.R. at

80

A00121

563-68. Based on specific findings as to each Settling Insurance Company, including the amount of its contribution, existing or potential coverage litigation issues, and the complexity and risk associated with litigating those issues, the Bankruptcy Court concluded that the Insurance Settlements "resolv[e] complex insurance coverage issues, saving years of litigation and expense and yielding more timely recoveries for holders of Direct Abuse Claims." *Id.* at 564. Although Lujan Claimants quibble with the Bankruptcy Court's assessment of the *Martin* factors, they fail to demonstrate that the Bankruptcy Court abused its discretion in approving the Insurance Settlements. As the Bankruptcy Court recognized, a settlement "need not be the best that can be achieved," and a court "need only conclude that the settlement falls within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness." *Id.* at 568 (quoting *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008)). Lujan Claimants do not dispute the evidentiary standard, and they do not show that any of the Insurance Settlements fell below "the lowest point in the range of reasonableness."

As to the individual *Martin* factors, the Bankruptcy Court analyzed the first and third *Martin* factors—the probability of success and the complexity of the litigation—together and found that they support the approval of the Insurance Settlements. Specifically, the Bankruptcy Court determined that insurance coverage litigation (including the Illinois Action, Century Texas Action, and Hartford Texas Action)—with potentially billions of dollars at stake—would have been complex, costly, risky, and lengthy, with no guarantee of success. *See Id.* at 564. "In analyzing the compromise or settlement agreement under the *Martin* factors, courts should not have a 'mini-trial' on the merits." *In re W.R. Grace*, 475 B.R. at 77-78. BSA presented an extensive evidentiary record reflecting the complexity, cost, risk, and delay that would attend the coverage litigation. (*See, e.g.*, Bankr. D.I. 9398 ¶¶ 68–72, 76–77, 83, 87, 91, 95, 100, 104 (Gutzler Declaration addressing the significant risk that future rulings in favor of Settling

81

Insurance Companies' coverage defenses could substantially reduce available coverage for Abuse Claims and that coverage litigation would be complex and a drain on the Debtors' resources); Bankr. D.I. 9490 at 162:1-169:2 (Gutzler testimony regarding same); Bankr. D.I. 9280 ¶¶ 104, 132-33, 166-67, 180 (Whittman Declaration stating that the settlements "avoid the costs, risks, uncertainty and delay associated with protracted litigation")). Lujan Claimants assert that the Settling Insurance Companies' coverage defenses are "without merit" and therefore that the Bankruptcy Court erred in approving the Insurance Settlements. (D.I. 40 at 62-64). But a court's evaluation of the first and third *Martin* factors is not influenced by one party's confidence in its litigation position. *See Mallinckrodt*, 639 B.R. at 864. The uncontroverted evidence establishes that, notwithstanding the parties' views on the merits, litigation would have been complex, costly, risky, and time-intensive.

The second *Martin* factor—difficulties in collection—is also satisfied (for Century/Chubb) or was not at issue (other insurers). The Bankruptcy Court found that BSA (and the Future Claimants' Representative) "had significant concerns regarding Century's ability to honor its agreements going forward" based on evidence that "Century is in runoff paying claims." *In re Boy Scouts of Am.*, 642 B.R. at 565. This conclusion is supported in the record. As Ms. Gutzler, BSA's insurance expert, testified, "Century is not an income-generating insurer through the continued receipt of premiums and there is significant uncertainty regarding the assets available to satisfy Century Indemnity Company's obligations to the Debtors and to Century's other policyholders"; *see also* Bankr. D.I. 9398 ¶ 86; Bankr D.I. 9280 ¶¶ 129–33 (expressing concern regarding Century's ability to pay any future judgment, "including the fact that Century is in run-off and has a statutory surplus of only $25 million.")).

Finally, the Bankruptcy Court found that the fourth *Martin* factor—the paramount interest of the creditors—was satisfied. It recognized that, without the Insurance Settlements,

82

A00123

"there is no Plan," and the Plan, including the approximately $1.656 billion being contributed to the Settlement Trust by the Settling Insurance Companies under the Insurance Settlements, provides for the likely payment in full of all Abuse Claims, including those of the Lujan Claimants. Despite Lujan Claimants' assertions otherwise, the Bankruptcy Court found that:

> [A]ll three groups representing holders of Direct Abuse Claims (i.e., the Tort Claimants' Committee, the Coalition and the Future Claimants' Representative) now support the Settling Insurer Settlements . . . . Their support satisfies me that Debtors have met their burden to show that the Settling Insurer Settlements are in the paramount interest of creditors.

*In re Boy Scouts of Am.*, 642 B.R. at 568. The Bankruptcy Court did not err in allowing overwhelming creditor support to speak for itself. *See Police & Fire Ret. Sys. of the City v. Ambac Fin. Grp., Inc. (In re Ambac Fin. Grp., Inc.)*, 2011 WL 6844533, at *6 (S.D.N.Y. Dec. 29, 2011) (holding that, because "the unsecured creditors . . . are the parties who stand to benefit from any recovery" under the settlement, "[t]he Bankruptcy Court was therefore justified in placing significant weight on the Creditors Committee's support for the 9019 Order").

The Bankruptcy Court rejected Lujan Claimants' argument that BSA should have considered the effect of the Insurance Settlements on the particular claims of the Lujan Claimants, noting that "the money coming into the Settlement Trust does not disadvantage the Lujan Claimants more than other creditors." *In re Boy Scouts of Am.*, 642 B.R. at 568. The Bankruptcy Court further found, "Given the nature of mass tort litigation, it is impossible to focus on specific creditors when reviewing a resolution of obligations under insurance policies against which coverage can be sought on 82,209 claims." *Id.* Thus, Lujan Claimants have failed to prove that the Bankruptcy Court erred in determining that the Insurance Settlements were in the paramount interest of the creditors—even if they were opposed by a small minority of creditors. For the foregoing reasons, Lujan Claimants have failed to prove that the Bankruptcy Court abused its discretion in approving the Insurance Settlements.

### 2. Policies Can Be Sold Free and Clear of Lujan Claimants' Rights

Lujan Claimants assert that the Plan violates the automatic stay issued in the Archbishop's bankruptcy case. (*See* D.I. 40 at 64-66). According to BSA, Lujan Claimants lack standing to make this argument, and, in any event, the confirmation of the Archbishop's plan of reorganization has rendered their arguments moot.

Prior to the filing of BSA's bankruptcy, the Archbishop filed its own petition for chapter 11 relief in the United States District Court of Guam – Bankruptcy Division (the "Guam Court").[10] On November 13, 2020, the Archbishop filed a proof of claim in BSA's bankruptcy proceeding. (SA 473). In September 2021, after resolution of a dispute between the Archbishop and the Guam Court's AOA Committee over the AOA Committee's derivative standing to enforce the automatic stay in connection with the Archbishop's purported rights under BSA Insurance Policies in the Archbishop's bankruptcy, the Archbishop took additional actions, including objecting to BSA's Plan. (Bankr. D.I. 8687, 9555). BSA also filed an objection to confirmation of the reorganization solicited in the Archbishop's Bankruptcy ("AOA Plan") as well as a proposed settlement in the Archbishop's case in order to defend against the impairment of BSA's interests with respect to certain of the BSA Insurance Policies. (SA 1682, SA 1819, SA 1837).

Thereafter, the parties mediated the disputes between the BSA Plan and the AOA Plan (SA 867), reached an agreement that resolved their respective objections ("AOA Stipulation"), and obtained approval of the settlement from both the Bankruptcy Court and the Guam Court. (SA 2117). The AOA Plan (AOA D.I. 1044; SA 1925) was revised to be in accord with BSA's Plan, and the two plans of reorganization allow for holders of Abuse Claims, including the Lujan

---

[10] *See In re Archbishop of Agaña*, Case No. 19-00010 (Bankr. D. Guam – Bankr. Div.). The docket of this chapter 11 case is cited herein as "AOA D.I. ___."

Claimants, to receive distributions from the settlement trusts established in each of the chapter 11 cases simultaneously to the extent applicable. (*See, e.g.*, SA 1869 at 33:10-34:4; SA 2000 § 13.7; SA 2001 § 13.9 ("Nothing in this Plan . . . affirmatively authorizes the Trust, Reorganized Debtor, any Protected Party, Class 3 Claimant, or Class 4 Claimant to act in violation of applicable law or affirmatively authorizes such persons to violate . . . any relevant and operative provision(s) of the BSA Confirmation Opinion, the BSA Plan, or the BSA Confirmation Order, including the injunctions and releases provided or approved thereunder"). On October 20, 2022, the Guam Court confirmed the AOA Plan, and the Archbishop withdrew its appeal of the Confirmation Order. (AOA D.I. 1093; Bankr. D.I. 10540).

Despite the settlement and release of all issues with respect to the AOA Bankruptcy and neutrality of the BSA's and AOA's Plans with respect to insurance interests, Lujan Claimants contend that the Plan violates the automatic stay in the AOA Bankruptcy. (*See* D.I. 40 at 64-66). According to BSA, this argument fails as a preliminary matter, and I agree. Lujan Claimants lack standing, as the AOA—the only party with standing to assert a stay violation—has voluntarily dismissed its appeal of the Confirmation Opinion and the Confirmation Order with prejudice. (*See Archbishop of Agaña v. Boy Scouts of America*, No. 22-1254-RGA, D.I. 7). Therefore, neither the Archbishop, nor any party purportedly acting on behalf of the Archbishop, may now appeal the Confirmation Order. *See* Fed. Rule. Bankr. P. 8002.

Moreover, Lujan Claimants lack independent standing to enforce the Archbishop's automatic stay. In rejecting similar arguments at confirmation, the Bankruptcy Court held, "Lujan Claimants have no standing to raise the rights of the Archbishop." *In re Boy Scouts of Am.*, 642 B.R. at 569 n.329; Bankr. D.I. 9638 at 39:8-13. The Ninth Circuit, which has jurisdiction over the District Court of Guam where the Archbishop's bankruptcy was filed, has held that "a creditor has no independent standing to appeal an adverse decision regarding a

85

violation of the automatic stay." *In re Pecan Groves of Ariz.*, 951 F.2d 242, 245 (9th Cir. 1991)

(rejecting argument that the purpose of the automatic stay is to protect both the debtor and

creditors). The Ninth Circuit has further held that creditors do not have an independent right to

enforce alleged stay violations. *See In re Barrett*, 833 F. App'x 668, 670 (9th Cir. 2020) ("[I]f

the trustee does not seek to enforce the protections of the automatic stay, then no other party may

challenge acts purportedly in violation of the automatic stay, because 11 U.S.C. § 362 is intended

solely to benefit the debtor estate").

     Here, the Archbishop has dismissed its appeal, has not sought to enforce its automatic

stay against BSA in any forum, and is barred under the AOA Stipulation from joining in the

Lujan Claimants' appeal. Under clear Ninth Circuit precedent, Lujan Claimants have no

independent standing to enforce the Archbishop's automatic stay. Because Lujan Claimants do

not have standing to enforce the automatic stay on behalf of the Archbishop or in their own right,

I will not permit Lujan Claimants to pursue their stay-related arguments.

### 3. The McCarran-Ferguson Act Does Not Reverse Preempt Bankruptcy Code Provisions Supporting the Channeling Injunction

     Lujan Claimants objected to confirmation on the basis that the Plan, which channels their

claims against insurers to the Settlement Trust, impermissibly conflicts with a Guam statute

which provides plaintiffs with a right of direct action against the insurers of persons or entities

liable for personal injury—here, BSA, Local Councils, and Chartered Organizations. (*See* D.I.

40 at 34-35 (citing 22 Guam Code Ann.§ 18305)). Lujan Claimants argue that the Guam direct

action statute governs the "business of insurance." If so, any provision of the Bankruptcy Code

that could support the channeling of its direct action claims against insurance companies to the

Settlement Trust violates their rights under the McCarran-Ferguson Act. *See* 15 U.S.C. §

1012(b).

The McCarran-Ferguson Act provides in relevant part: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). "The Act was enacted in response to a Supreme Court decision concluding that insurance transactions are subject to federal regulation under the Commerce Clause." *In re Boy Scouts of Am.*, 642 B.R. at 579 (citing *Securities & Exch. Com'n v. National Securities,* 393 U.S. 453, 458-59 (1969)). "The McCarran-Ferguson Act is intended to confirm that states, not the federal government, can regulate the business of insurance." *Id.* "The McCarran-Ferguson Act [is] an exception to the standard preemption rules in certain instances involving state statutes regulating the insurance industry [and] is said to 'reverse preempt' federal law." *In re Patriot National, Inc.,* 623 B.R. 696, 709 (D. Del. 2020).

In enacting the McCarran-Ferguson Act, Congress was concerned with the "core of the 'business of insurance.'" *National Securities,* 393 U.S. at 460. As the Bankruptcy Court explained, these are concerns with the type of state regulations that center around the "contract of insurance"—"the type of policy which could be issued, its reliability, interpretation and enforcement." *In re Boy Scouts of Am.*, 642 B.R. at 580; *see National Securities,* 393 U.S. at 460. "The focus of pre-emptive state regulation is the relationship between the insurance company and its policyholder." *In re Boy Scouts of Am.*, 642 B.R. at 380 (citing *National Securities,* 393 U.S. at 460). "Statutes aimed at protecting or regulating this relationship [between insurer and insured], directly or indirectly, are laws regulating the 'business of insurance.'" *Id.* (quoting *National Securities,* 393 U.S. at 460). The Bankruptcy Court concluded that the "Guam direct action statute does not regulate the business of insurance as that term is used in the [McCarran-Ferguson Act, and] . . . does not prohibit the channeling of the

Lujan Claimants' claims to the Settlement Trust thereby effectively extinguishing their procedural right to sue an insurance company." *Id.* at 584. I agree.

I must first assess a threshold question: whether the conduct regulated by Guam constitutes the "business of insurance." *U.S. v. Del. Dep't of Insur.*, 2021 WL 3012728, at *10-*16 (D. Del. July 16, 2021), *report adopted,* 2021 WL 4453606, at *10 (D. Del. Sept. 29, 2021), *appeal docketed,* No. 21-3008 (3d Cir. Nov. 1, 2021) (argued Nov. 8, 2022). If it does not, the inquiry ends, and the McCarran-Ferguson Act does not apply. *See id.* at *10. If the threshold question is answered in the affirmative, then reverse preemption will apply if three requirements are met: (i) the federal law at issue does not specifically relate to the business of insurance; (ii) the state law regulating the activity was enacted for the purpose of regulating the business of insurance; and (iii) applying federal law would invalidate, impair or supersede the state law. *Id.* at *9.

In framing the challenged conduct, the Bankruptcy Court cited the channeling of Lujan Claimants' direct action claims against insurance companies to the Settlement Trust. Channeling those claims, they assert, runs counter to the Guam direct action statute which provides that Lujan Claimants may sue insurers directly. The Guam direct action statute provides:

> Liability Policy: Direct Action. On any policy of liability insurance the injured person or his heirs or representatives shall have a right of direct action against the insurer within the terms and limits of the policy, whether or not the policy of insurance sued upon was written or delivered in Guam, and whether or not such policy contains a provision forbidding such direct action, provided that the cause of action arose in Guam. Such action may be brought against the insurer alone, or against both the insured and insurer.

22 G.C.A. § 18305. As the Bankruptcy Court observed, the Guam statute does focus on who can sue an insurance company. But that observation does not resolve whether this conduct amounts to the "business of insurance." *In re Boy Scouts of Am.*, 624 B.R. at 581. The Bankruptcy Court noted the three criteria set forth by the Supreme Court for determining whether a particular

practice is part of the business of insurance: "(1) whether the practice has the effect of

transferring or spreading a policyholder's risk; (2) whether the practice is an integral part of the

policy relationship between the insurer and the insured; and (3) whether the practice is limited to

entities within the insurance industry." *Del. Dep't of Insur.*, 2021 WL 3012728, at *13 (citing

*Sabo v. Metro. Life Ins. Co.*, 137 F.3d 185, 191 (3d Cir. 1998)).  As the Bankruptcy Court noted,

"None of these criteria is necessarily determinative in itself." *In re Boy Scouts of Am.*, 624 B.R.

at 581 (citing *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129 (1982)).

Applying these factors, the Bankruptcy Court explained that, "permitting an injured party

to sue his offender's insurer" (1) "does not transfer or spread the risk between the insurer and the

insured"; (2) "is not an integral part of the policy relationship between the insurer and the

insured"; and (3) "is not directed at parties in the insurance industry, or even a purchaser of

insurance." *In re Boy Scouts of Am.*, 624 B.R. at 581.  The Bankruptcy Court thus concluded

that the Guam direct action statute does not regulate the "business of insurance":

> The Guam direct action statute is not directed at the relationship between the
> insured and the insurer and it does not dictate the terms of the insurance policy.
> Instead, it is aimed at a non-party to the insurance contract and a party adverse to
> both the insured, if liability is disputed as it is here, and the insurer.  It is not
> aimed at policyholder protection, but rather at the protection of a stranger to the
> contract.

*Id.* Noting these factors are "the starting point of the inquiry," the Bankruptcy Court turned to

the Supreme Court's guidance as to the "business of insurance" in *National Securities*:

> Certainly the fixing of rates is part of [the "business of insurance"] . . . [t]he
> selling and advertising of policies . . . and the licensing of companies and their
> agents . . . are also within the scope of the statute. Congress was concerned with
> the type of state regulation that centers around the contract of insurance . . . . The
> relationship between insurer and insured, the type of policy which could be
> issued, its reliability, interpretation, and enforcement—these were the core of the
> "business of insurance."  Undoubtedly, other activities of insurance companies
> relate so closely to their status as reliable insurers that they to[o] must be placed
> in the same class. But whatever the exact scope of the statutory term, it is clear
> where the focus was—it was on the relationship between the insurance company

and the policyholder. Statutes aimed at protecting or regulating this relationship, directly or indirectly[,] are laws regulating the "business of insurance."

*Id.* at 581-82 (quoting *National Securities*, 393 U.S. at 460). Notwithstanding that the Guam direct action statute arguably could fall into the "enforcement" language used by the Supreme Court, the Bankruptcy Court observed that the statute "in no way protects or regulates the relationship between the insurance company and the policyholder. In other words, it is not for the protection of policyholders." *Id.* at 582.

Finally, the Bankruptcy Court cited the District of Guam's own construction of such statutes, including its explanation that "[d]irect action statutes serve the general purpose of permitting an injured person to sue the liability insurance carrier directly; thereby, protecting the public at large by providing remuneration from the financially responsible entity." *Heikkila v. Sphere Drake Ins. Underwriting Mgmt., Ltd.*, 1997 WL 995625, at *4 (D. Guam Aug. 29, 1997). Indeed, as the Bankruptcy Court noted, the Guam District Court has described the direct action as procedural in nature, not substantive: the statute is "not a cause of action, but merely a citation of a procedural statute that enables a [p]laintiff to name [a defendant's] insurer(s) in any substantive claim (s)he may have against [defendant]." *In re Boy Scouts of Am.*, 642 B.R. at 583 (quoting *Cruz Reyes v. United States*, 2010 WL 5207583, at *7 (D. Guam Dec. 15, 2010)). "The goal of this statute," the Bankruptcy Court explained, is therefore "not policyholder protection nor does it change the payment provisions of the policy or the spread of risk between the insurer and insured. Instead, it is a procedural law granting standing to sue or, at best, some collection remedy for a creditor of the policyholder in the event the creditor can prove the policyholder's liability and the policy covers the loss." *Id.*

I agree with the Bankruptcy Court's analysis. As the Bankruptcy Court explained, "the Supreme Court has steadily focused on who the state statute is aimed at and what it is meant to

90

A00131

protect," *id.* at 582, holding that even where a state statute expressly addresses insurance companies, the statute nonetheless falls outside of the McCarran-Ferguson Act if—like the Guam direct action statute—the relevant provision is aimed not at protecting policyholders but instead at benefitting third parties.

The cases cited in the Confirmation Opinion further support the Bankruptcy Court's conclusion. For example, in *National Securities*, the Supreme Court held that a state statute protecting the stockholders of insurance companies in insurance-company mergers did not involve the "business of insurance." 393 U.S. at 460. "It is true that the state statute applies only to insurance companies." *Id.* But it "regulate[s] . . . the relationship between a stockholder and the company," whereas "the statutory term" "business of insurance" focuses "on the relationship between the insurance company and the policyholder." *Id.* Likewise, in *Fabe*, the Court held that a state statute governing the priority of payment in insurance-company liquidations regulated the "business of insurance" only to the extent the statute protected policyholders, but not to the extent it protected employees and general creditors. *Fabe*, 508 U.S. at 505-06, 508-10. The same is true here. As the District Court of Guam has emphasized, it is merely "a procedural law granting standing to sue," *Cruz Reyes*, 2010 WL 5207583, at *7, in order to "protect[] . . . a stranger to the contract." *In re Boy Scouts of Am.*, 642 B.R. at 581. Because that stranger's rights remain entirely dependent on the insured's rights, which in turn are unaffected by the statute, the statute does not regulate the "business of insurance" and hence does not preempt the Bankruptcy Code's free-and-clear sale provisions or other provisions that support the channeling of claims to the Litigation Trust.

Arguing that the Bankruptcy Court erred in reaching this conclusion, Lujan Claimants cite several decisions construing direct action statutes under Louisiana, Georgia, and New York law. According to Lujan Claimants, each of these cases concluded that the direct action statute

at issue was a law governing the business of insurance. None of these decisions requires a different outcome.

In *Evans*, the district court held that Louisiana's direct action statute was enacted for the purpose of regulating the business of insurance. *Evans v. TIN, Inc.*, 2012 WL 2343162, at *10 & n.20 (E.D. La. June 20, 2012). As Settling Insurance Companies point out, this case did not involve the Bankruptcy Code or the Guam direct-action statute, but instead held that a Louisiana direct-action statute involved the business of insurance and reverse-preempted the Federal Arbitration Act. As The Bankruptcy Court noted, *Evans* is distinguishable for several reasons. That court downplayed the fact that the Louisiana statute regulates the insured-injured person relationship, not the insurer-insured relationship, addressing it in a footnote. *In re Boy Scouts of Am.*, 642 B.R. at 583; *Evans*, 2012 WL 2343162, at *10 & n.20. The *Evans* court found this distinction immaterial because the Louisiana statute, unlike the Guam statute, had a broader purpose of requiring that all insurance policies be executed for the benefit of injured persons as well as policyholders. *Id.* at 583-84; *Evans*, 2012 WL 2343162, at *10 & n.20. Finally, the Guam District Court has stated that the Louisiana direct action statute has "no binding, and little persuasive, effect" on Guam's direct action statute. *Heikkila*, 1997 WL 995625, at *4 n.4. I agree with Settling Insurance Companies that, to the extent *Evans*'s brief discussion can be read to mean that a direct-action statute like Guam's necessarily regulates the "business of insurance," it conflicts with the Supreme Court's narrow reading of reverse-preemption under the McCarran-Ferguson Act.

The *Wadsworth* decision cited by Lujan Claimants is also distinguishable because it does not address whether a direct action statute regulates the "business of insurance." At issue in that case was the federal Liability Risk Retention Act ("LRRA"). The LRRA permits risk retention groups—liability insurance companies, owned and operated by members, offering commercial

92

A00133

liability insurance for the mutual benefit of those owner-insureds, who must be exposed to

similar risks and be members of the same industry. *See* 15 U.S.C. § 3901(a)(4). The LRRA also

contains sweeping preemption language that sharply limits the authority of states to regulate,

directly or indirectly, the operation of risk retention groups chartered in another state. *See id.* §

3902(a)(1) (preempting "any State law . . . to the extent that such law [] would . . . make

unlawful, or regulate, directly or indirectly, the operation of a risk retention group"). In

*Wadsworth*, a risk retention group domiciled in Arizona was sued under the New York direct

action statute and argued that New York statute was preempted by the federal LRRA.

      Thus, unlike the case at bar, reverse preemption under the McCarran-Ferguson Act was

not at issue in *Wadsworth*.[11] In the case at bar, the Bankruptcy Court considered the threshold

question of whether the conduct regulated by the state law (the Guam direct action statute)

constitutes the "business of insurance"—*i.e.,* "the relationship between insurer and insured"—

such that the McCarran-Ferguson Act may apply to "reverse preempt" the applicable federal

law—Bankruptcy Code provisions supporting the Channeling Injunction. *Wadsworth,* on the

other hand, considered not whether the conduct regulated by the state law (New York's direct

action statute) regulated the "business of insurance" for purposes of application of the McCarran-

Ferguson Act, but rather, whether the New York direct action statute "regulate[d], directly or

indirectly, the operation of [the] risk retention groups" chartered in another state, such that the

direct action statute was preempted by LRRA. *See Wadsworth*, 748 F.3d at 105-08. As the

Second Circuit observed, despite "the general presumption, specifically reinforced by the

---

[11] The McCarran-Ferguson Act precludes the application of a federal statute in the face of state
law "enacted ... for the purpose of regulating the business of insurance," if the federal statute
does not "specifically relat[e] to the business of insurance," and would "invalidate, impair, or
supersede" the state's law. *See Fabe*, 508 U.S. at 500–01. As the *Wadsworth* court noted, the
federal statute at issue, the LRRA, "is, without question, a federal statute that specifically relates
to the business of insurance." *Wadsworth*, 748 F.3d at 109.

McCarran–Ferguson Act, that insurance regulation is generally left to the states, the language and purpose of the LRRA clearly announce Congress's explicit intention to preempt state laws regulating risk retention groups." *Id.* at 105-06. Whether the New York direct action statute regulated risk retention groups in violation of the LRRA—not the business of insurance—was the primary inquiry in *Wadsworth,* and therefore it is not instructive here.

Notwithstanding that *Wadsworth* is not analogous, Lujan Claimants rely on *dicta* in which the court notes that the New York direct action statute "was undoubtedly enacted to regulate the business of insurance." *Wadsworth*, 748 F.3d at 109. As discussed, this determination was not necessary to the ultimate holding in the case, and the only support for its conclusion that the New York direct action statute was enacted to regulate the business of insurance is that the statute "requires insurance policies issued in that state to contain a provision permitting a direct action against a tortfeasor's insurer." *See id.* While it is possible that a direct action statute requiring policy language aimed at protecting policyholders—as opposed to benefitting third parties—may be read as regulating the "business of insurance," such language is not present in the New York direct action statute (or the Guam direct action statute), and *Wadsworth* undertook no relevant analysis.

Like *Wadsworth*, the *Reis* decision involved a Georgia direct action suit against a risk retention group that was governed by the LRRA and not chartered or domiciled in Georgia. *Reis v. OOIDA Risk Retention Group, Inc.*, 303 Ga. 659, 665-66 (2018). At issue was whether the LRRA preempted Georgia's motor carrier and insurance carrier direct action statutes with respect to risk retention groups, thus precluding the direct action against the risk retention group. *Reis,* 303 Ga. at 659. Like *Wadsworth*, the *Reis* court looked to LRRA's provision § 3902(a)(1), which provides in relevant part that "a risk retention group is exempt from any State law . . . to the extent that such law . . . would make unlawful, or regulate, directly or indirectly, the

94

operation of a risk retention group." *Reis,* 303 Ga. at 661 (quoting 15 U.S.C. § 3902(a)(1)).  The

trial court concluded that LRRA preempted Georgia's direct action statutes after finding that the

statutes would "'regulate, directly or indirectly the operation of the risk retention group as

prohibited by 15 [USC] § 3902 (a)(1).'"  *Id.* at 662-63.  Plaintiffs argued on appeal that Georgia's

direct action statutes did not "regulate the operation of risk retention groups" but rather were

"financial responsibility laws," as set forth in 15 U.S.C. § 3905(d).  Because nondomiciliary

states have the authority to specify acceptable means for risk retention groups to demonstrate

"financial responsibility," as a condition for granting the risk retention group a license or

permitting it to undertake specified activities within the state's borders, plaintiffs argued that

Georgia's direct action statutes were not preempted by the LRRA.  The Georgia Supreme Court

disagreed.  *See id.* at 666.

Like *Wadsworth, Reis* focused on whether direct action statutes at issue "regulate[d] the

operation of risk retention groups"[12]—not the "business of insurance"—such that they would be

preempted by the LRRA.  *Reis* did not address the McCarran-Ferguson Act or consider whether

the Georgia direct action statutes regulated the "business of insurance" for purposes of a reverse

preemption analysis.  None of *Evans, Wadsworth,* and *Reis* require a different outcome.

---

[12] In determining whether Georgia's direct action statutes would "regulate the operation of risk retention groups," the *Reis* court looked to LRRA's § 3902 exemptions, which specifically apply to "laws governing the insurance business." 15 U.S.C. 3902(b). Construing the term "insurance business," the *Reis* court referenced the "business of insurance" analysis applied in *Pireno.* The Supreme Court in *Pireno* had to determine whether an insurer's use of a peer review committee constituted the "business of insurance" exempted from antitrust laws by the McCarran-Ferguson Act, so *Pireno* looked to the recognized factors: whether the practice effectively transfers or spreads a policyholder's risk; whether it is an integral part of the contractual relationship between the insurer and the insured; and whether the practice is limited to entities within the insurance industry. *See Reis,* 303 Ga. at 665 (citing *Pireno,* 458 U.S. at 129). Lujan Claimants make much of the *Reis* court's conclusion that "[t]he direct action statutes would impact operation of the business of insurance of a risk retention group," but, as discussed, this is not the relevant inquiry. *Id.* at 665-66.

I find no error in the Bankruptcy Court's careful application of the Third Circuit standard of *Sabo* or its conclusion that the Guam direct action statute does not regulate the "business of insurance" as that term is used in the McCarran-Ferguson Act.

**D.    BSA Demonstrated By Preponderance of Evidence that the Plan Meets the Requirements of the Bankruptcy Code**

A debtor must prove by a preponderance of the evidence that its proposed plan satisfies all requirements of § 1129 of the Bankruptcy Code. *See, e.g., In re Tribune Co.*, 464 B.R. 126, 151-52 (Bankr. D. Del. 2011), *aff'd in part*, 587 B.R. 606 (D. Del. 2018). I review *de novo* the Bankruptcy Court's conclusions under § 1129. *In re Tribune*, 587 B.R. 606, 612 (D. Del. 2018) ("reviewing *de novo* the Bankruptcy Court's construction of Section 1129 and relevant provisions of the Bankruptcy Code.")

**1.    The Plan Satisfies the Best Interest of Creditors Test under § 1129(a)(7)**

The Bankruptcy Court held that BSA had established by a preponderance of the evidence that the Plan satisfies the requirements of § 1129(a)(7) of the Bankruptcy Code. *In re Boy Scouts of Am.*, 642 B.R. at 665-66 (having determined "that holders of Direct [Abuse] Claims will [be] paid in full under the Plan. [Thus,] the Plan, by definition, meets the best interest test as to claimants in Class 8 [Direct Abuse Claims]"). Determination of liquidation value is a factual inquiry, and this Court reviews that finding for clear error. *In re Akorn, Inc.*, 2021 WL 4306222, at *13 (D. Del. Sept. 21, 2021) (citing *In re PWS Holdings*, 228 F.3d at 250).

Lujan Claimants assert that the Plan fails § 1129(a)(7)'s "best interest of creditors" test because Lujan Claimants would be able to pursue various claims and direct action rights against non-debtor Local Councils, Chartered Organizations, and Insurers in a chapter 7 liquidation, which claims and rights are enjoined under the Plan. (*See* D.I. 40 at 66-71). This argument fails on multiple grounds.

96

Section 1129(a)(7), known as the "best interest of creditors test," is a protection for individual creditors whose claims are impaired. *In re Boy Scouts of Am.*, 642 B.R. at 661 (citing *Bank of America Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle II*, 526 U.S. 434, 441 n.13 (1999)). It provides that, even if voting results in an accepting class, a plan may not be confirmed unless each holder of a claim has accepted the plan or "will receive or retain under the plan on account of such claim . . . value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date." *Id.* (quoting 11 U.S.C. § 1129(a)(7)).

To satisfy that requirement, BSA prepared a liquidation analysis for BSA and Related Non-Debtor Entities. (*See* Bankr. D.I. 9280 ¶ 240). This analysis demonstrates that the Plan satisfies § 1129(a)(7). Although not required to do so, BSA also prepared a consolidated liquidation analysis of the Local Councils. *Id.* BSA further adjusted its analysis to account for the impact of a hypothetical liquidation on insurance recoveries. (*See id.* ¶ 241). Based on these liquidation analyses, as supported by the uncontroverted expert testimony of Mr. Whittman, BSA confirmed—and the Bankruptcy Court agreed—that each class of creditors receives equal or better treatment under the Plan than under a hypothetical liquidation. *See In re Boy Scouts of Am.*, 642 B.R. at 666 ("each Class of claims is receiving more than it would in a chapter 7 case."); Bankr. D.I. 9280 ¶ 242. It further "determined based on the record presented that Class 8 holders of Direct [Abuse] Claims will be paid in full under the Plan" and thus "the Plan, by definition, meets the best interest test as to claimants in Class 8." *Id.* No party, including Lujan Claimants, offered any evidence to rebut BSA's liquidation analysis. *See id.* at 664 (noting that "[n]o party cross-examined Mr. Whittman on his liquidation analysis or, [except for certain other objections not raised on appeal], in any way challenged Mr. Whittman's specific calculations,

assumptions or conclusions"). There is, therefore, no support for Lujan Claimants' challenges to the Bankruptcy Court's best interest of creditors determination.

As to Lujan Claimants' argument that the Plan fails the best interest test of § 1129(a)(7) because they would be able to pursue various claims and direct action rights against non-debtor Local Councils, Chartered Organizations, and insurers in a chapter 7 liquidation, this argument assumes without evidence that such actions would result in greater recoveries. (D.I. 40 at 66-70). Lujan Claimants argue that in a chapter 7 scenario, certain maximum insurance coverage limits would be available to satisfy their disputed claims. BSA counters that Lujan Claimants submitted no evidence to support this contention or to demonstrate that it would hold true in a chapter 7 liquidation. (D.I. 66 at 230-31). Lujan Claimants' arguments also fail, BSA argues, because (a) the Plan satisfies the plain language of § 1129(a)(7), (b) the Lujan Claimants' claims against Chartered Organizations are too speculative to be included in any liquidation analysis, and (c) the Plan provides for payment in full of Abuse Claims. I agree with BSA.

a.    **The Plan Satisfies the Plain Language of § 1129(a)(7)**

Lujan Claimants assert that BSA was required to include the value of claims released against third parties under the Plan in their liquidation analysis. (D.I. 40 at 70-71). Section 1129(a)(7) requires only that an impaired creditor "receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7." 11 U.S.C. § 1129(a)(7). The "plain language" of § 1129(a)(7) does not support the Lujan Claimants' argument because the text focuses only on claims against the debtor. *In re Boy Scouts of Am.*, 642 B.R. at 665. "[A]s a matter of grammar," the required comparison under § 1129(a)(7) "is between the amount that the objecting creditor would receive under the plan on account of its claim and what it would 'so' receive—that is, on account of its claim—if the

98

A00139

debtor were liquidated under chapter 7." *Id.* at 663 (quoting *Purdue Pharma*, 633 B.R. at 110).

The amount that a creditor may receive or retain on account of claims against third parties in a

liquidation is therefore irrelevant.  I agree with the Bankruptcy Court that this plain-text

interpretation correctly "leaves an analysis of third-party releases to the relevant third-party

standard (in the Third Circuit, *Continental*)." *Id.* Finally, the Bankruptcy Court's interpretation

of the best interest of creditors test is grounded in established precedent.[13]

Lujan Claimants rely on an out-of-circuit bankruptcy court decision, *In re Conseco*, for

the proposition, "A plan of reorganization is unconfirmable for violating the best interests of

creditors test where the plan requires that creditors who are entitled to a Chapter 7 liquidation

distribution must release nondebtors in order to receive any payment under the Chapter 11 plan."

(*See* D.I. 40 at 67 (citing *In re Conseco, Inc.*, 301 B.R. 525, 527-28 (Bankr. N.D. Ill. 2003))).

However, the statement Lujan Claimants rely upon was made in *dicta* describing a prior version

of the plan at issue in the decision.  The plan at issue in *Conseco* included a settlement whereby

certain creditors who accepted additional consideration under a plan also agreed to third-party

---

[13] *See, e.g., Purdue Pharma*, 633 B.R. at 110 (holding that the plain language of section
1129(a)(7) does not require that a liquidation analysis include an analysis of a claimant's rights
against third parties in a liquidation); *W.R. Grace*, 475 B.R. at 149-50 (concluding that the best
interest test considers only the amount that claimants would obtain from the estates in a
hypothetical chapter 7 liquidation, not the amount claimants would allegedly recover from the
estates' insurers); *In re Plant Insulation Co.*, 469 B.R. 843, 887 (Bankr. N.D. Cal. 2012)
(explaining that the "most natural interpretation of section 1129(a)(7) is that it addresses only the
amount the dissenting creditor would receive or retain on its claim against the debtor" in a
hypothetical chapter 7 scenario); *see In re Dow Corning*, 237 B.R. 380, 411 (Bankr. E.D. Mich.
1999) (holding that the best interest test examines only the dividend the creditor would receive
from the chapter 7 trustee—and only that amount—for comparison with the dividend available
under the plan" and observing that courts applying the nearly identical test under chapter 13
"uniformly hold that amounts obtainable from other sources, such as guarantors, are irrelevant"
to the inquiry).  *But see In re Ditech Holding*, 606 B.R. 544, 610-14 (Bankr. S.D.N.Y. 2019)
(holding that, in the context of a § 363 sale under a plan, certain estimable third party interests
must be included in the liquidation analysis) and *In re Quigley Co.*, 437 B.R. 102, 145 (Bankr.
S.D.N.Y. 2010) (finding that the value of third party derivative claims could be estimated and
therefore must be included in the liquidation analysis).

releases. *Conseco,* 301 B.R. at 528. A group of creditors challenged the releases, but the court found that because the releases were voluntary, they were not "compulsory releases that would require justification by special circumstances." *Id.* at 527. *Conseco*'s holding therefore did not call into doubt the cases in this circuit finding that "the condition requiring a release in order to receive a distribution does not violate the best interest of creditors test." *In re Wash. Mut., Inc.,* 461 B.R. 200, 251 (Bankr. D. Del. 2011), *unrelated parts vacated,* 2012 WL 1563880 (Bankr. D. Del. Feb. 24, 2012).

> **b.**    **Lujan Claimants' Claims Against Chartered Organizations Are Too Speculative to be Included in a Liquidation Analysis**

Even assuming that, in some circumstances, claims against non-debtors should be considered under § 1129(a)(7), Lujan Claimants' claims against certain non-Debtor entities are speculative. They have offered no evidence to estimate their claims nor any expert or other testimony to suggest the insurance coverage that they claim exists is valid or collectible. As the Bankruptcy Court recognized, in the few cases where a court has included claims against third parties in the best interest test, they have done so when such claims "are neither speculative nor incapable of estimation and exist as of the date of the hypothetical chapter 7 case." *In re Boy Scouts of Am.,* 642 B.R. at 663; *see also Ditech Holding,* 606 B.R. at 610-14 (holding that "when weighing [third-party] claims in a liquidation analysis, the claims cannot be speculative or incapable of estimation"); *Quigley,* 437 B.R. at 145 (same). The Bankruptcy Court distinguished the chapter 11 cases from *Ditech* and *Quigley,* noting that there are "82,209 different claims against tens of thousands of different third-parties such that it would be impossible to value any particular claims." *In re Boy Scouts of Am.,* 642 B.R. at 664. In response to Lujan Claimants' speculation that their claims are worth substantial amounts, the Bankruptcy Court noted that, on average, "[each of] the prepetition settlement of claims against BSA for Abuse committed by the

same perpetrator, Brouillard . . . settled for $57,000." *Id.* If Lujan Claimants' claims and

potential recoveries in a chapter 7 liquidation were not highly speculative and unliquidated, but

instead could be reliably calculated, they should have produced evidence to that effect to rebut

BSA's liquidation analysis.

### c.    The Plan Provides for Payment in Full of Abuse Claims

Finally, the Plan satisfies the best interest of creditors test because the Lujan Claimants

are likely to be paid in full.  Regardless of whether claims against third parties are included in the

best interest test, the Bankruptcy Court's determination that the holders of Abuse Claims will

likely be paid in full necessarily shows that "the Plan, by definition, meets the best interest test as

to claimants in Class 8." *Id.* at 666 (citing *Quigley*, 437 B.R. at 145).

For these reasons, I find no error in the Bankruptcy Court's conclusion that BSA

demonstrated by a preponderance of the evidence that the Plan satisfies § 1129(a)(7).

### 2.    The Plan Properly Classifies the Claims of Lujan Claimants Pursuant to § 1122(a)

Lujan Claimants complain that the Plan violates § 1122 of the Bankruptcy Code because

their claims are not "substantially similar" to other Direct Abuse Claims in Class 8; unlike other

creditors in Class 8, Lujan Claimants argue, they hold direct action rights against Insurers.  (D.I.

40 at 71-72).  Additionally, they are subject to "an open civil statute of limitations to bring suit

for child sexual abuse," and therefore "should have been separately classified." (*Id.* at 72).  The

Bankruptcy Court rejected these arguments. *See In re Boy Scouts of Am.*, 642 B.R. at 633-34.[14]

---

[14] As BSA notes, the issue raised by Lujan Claimants is a purely academic one, as the
Bankruptcy Court has found that Direct Abuse Claims will likely be paid in full, and Lujan
Claimants have offered no grounds for error.  The class in which the Lujan Claimants are placed
does not matter if they are paid all they could be due.  Thus, they are not "parties aggrieved"
with appellate standing on this issue.

Section 1122(a) provides that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). As the Third Circuit has recognized, a plan proponent has significant flexibility in creating multiple classes under a plan of reorganization so long as a reasonable basis exists and all claims in a particular class are substantially similar. *See, e.g., John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 158–59 (3d Cir. 1993) (explaining that classification is proper in a cram-down case where each class represents a voting interest "sufficiently distinct and weighty to merit a separate voice in the decision whether the proposed reorganization should proceed"); *In re Armstrong World Indus., Inc.*, 348 B.R. 136, 159 (Bankr. D. Del. 2006) (explaining that § 1122 is satisfied "when a reasonable basis exists for the structure, and the claims or interests within each particular class are substantially similar"). The Bankruptcy Court concluded that the Plan comported with § 1122(a), as there was a rational basis for classifying all Direct Abuse Claims together in Class 8. *In re Boy Scouts of Am.*, 642 B.R. at 634-35. "As to the Lujan Claimants, . . . I find that their claims against BSA are substantially similar to other claimants in the class as they are similar in legal character vis-à-vis BSA." *Id.* at 634.

As to the direct action rights and open civil statute of limitations characteristics that purportedly distinguish Lujan Claimants from other claims in Class 8, the Bankruptcy Court stressed, "It is the nature of the claims being classified that is significant not the nature of other claims or interests a creditor might have." *Id.* (quoting *In re AOV Indus., Inc.*, 792 F.2d 1140, 1150-51 (D.C. Cir. 1986) (ruling that the existence of a third party guarantor is irrelevant for classification purposes) (internal citations omitted)). Lujan Claimants challenge this ruling, arguing that the Bankruptcy Code requires their different treatment. (D.I. 40 at 71-72).

102

Lujan Claimants' argument is premised on their interpretation that "substantially similar" requires that all claims within a class be identical in all respects. That is not the law. In evaluating whether claims in the same class are substantially similar for purposes of § 1122(a), the question is "whether the claims in a class have the same or similar legal status in relation to the debtor." *In re Piece Goods Shops Co.,* 188 B.R. 778, 788 (Bankr. M.D.N.C. 1995) (recognizing that a debtor could appropriately classify all unsecured claims, including "trade, tort, unsecured notes, or deficiency claims of secured debtors," in a single class); *see also In re AOV Indus.,* 792 F.2d at 1150-51 (noting that "the focus of the classification is the legal character of the claim as it relates to the assets of the debtor"). Lujan Claimants' claims share the same legal status in relation to BSA as all other Direct Abuse Claims under the Plan. All holders of Class 8 claims have unliquidated and unsecured personal injury claims against BSA and, accordingly, "exhibit a similar effect" on BSA's estates. *In re W.R. Grace*, 475 B.R. at 37. The asserted differences—direct action rights and open statutes of limitations—do not change the character of those claims against BSA. As the Bankruptcy Court correctly observed, a direct action right is simply a procedural right that does not change the character of the claims. *See In re Boy Scouts of Am.*, 642 B.R. at 634. Similarly, a statute of limitations is a defense, which does not change the character of a personal injury claim. *Id.* "Indeed, it would be impracticable to attempt to determine the relative strengths and weaknesses of 82,209 disputed, unliquidated personal injury claims," *id.*, and attempt to place such substantially similar claims into multiple classes. Nor is such an exercise required. *See In re Resorts Int'l, Inc.,* 145 B.R. 412, 448 (Bankr. D.N.J. 1990) ("even though some class members may have stronger claims, or stronger defenses than others, they may be classified together so long as their claims are substantially similar and their treatment is approximately equal").

103

I find no error in the Bankruptcy Court's determination that Debtors carried their burden of demonstrating by a preponderance of the evidence that classification of claims was proper.

### 3. The Plan Provides Equal Treatment for Holders of Direct Abuse Claims in Accordance with § 1123(a)(4)

Lujan Claimants assert that the Plan violates the equal treatment requirement of § 1123(a)(4) of the Bankruptcy Code because certain claimants are providing greater consideration than other claimants while not being commensurately compensated in return. (*See* D.I. 40 at 72-74). Specifically, they assert that (a) claimants that hold direct action rights are entitled to greater consideration in exchange for giving up these rights, and (b) the Plan violates § 1123(a)(4) because some Survivors are enjoined from pursuing their claims directly against a Chartered Organization while other Survivors retain this right. *See id.* According to BSA, both arguments fail, and Lujan Claimants should not be permitted preferential treatment for themselves to the detriment of other claimants. (D.I. 66 at 242-45).

Section 1123(a)(4) requires that a plan shall "provide the same treatment for each claim or interest of a particular class unless the holder of a particular claim or interest agrees to a less favorable treatment" for such claim. This provision means that "all claimants in a class must have the same opportunity for recovery." *In re W.R. Grace & Co.*, 729 F.3d 311, 327 (3d Cir. 2013). On this basis, the Bankruptcy Court concluded that (a) the Lujan Claimants' direct action rights did not warrant separate classification because such rights are procedural in nature, and (b) "equal treatment" does not mean "equality of consideration." *In re Boy Scouts of Am.*, 642 B.R. at 638. Moreover, Class 8 Direct Abuse Claims "are all disputed and unliquidated," and "[t]he treatment for each claimant in Class 8 is specified in the TDP, which provide each claimant multiple avenues to liquidate his claim, at the election of the claimant." *Id.* Accordingly, Lujan

Claimants are receiving the same opportunity to recover on their claims, consistent with §

1123(a)(4).

Lujan Claimants do not contend that their opportunity to recover on their claims against

BSA differs in any way from other holders of Direct Abuse Claims; rather, they contend that

they are providing more consideration than other Survivors, in the form of the loss of their direct

action rights, without being appropriately compensated in exchange. As the Bankruptcy Court

correctly observed, Lujan Claimants' unequal treatment argument is "really just the flip side of

the Lujan Claimants' § 1122(a) argument," in which they seek separate classification and

enhanced treatment under the Plan on account of their direct action rights. *In re Boy Scouts of

Am.*, 642 B.R. at 637. As discussed, the Bankruptcy Court correctly concluded that Lujan

Claimants' direct action rights do not warrant separate classification because those rights are

procedural in nature and do not give the Lujan Claimants extra substantive rights.

Lujan Claimants further contend that the Plan treats Survivors unequally as some

Survivors must release claims against Chartered Organizations and related religious entities,

while other Survivors retain their claims against such nondebtors. (*See* D.I. 40 at 73). "In other

words, Survivors who lose their claims against chartered organizations and related religious

entities are giving up more rights, and therefore paying more consideration, in exchange for their

distribution and while not being compensated for the loss of their claims. The Survivors who are

being compelled to surrender their claims include those who were first abused after 1975 and

those whose claims are released and enjoined under settling insurer injunctions." (*Id.*) In their

plan confirmation objection, Lujan Claimants relied on their direct action rights to support their

unequal treatment argument (*see* Bankr. D.I. 8708 at 39-40), and BSA contends that this

additional argument—that only some holders of Direct Abuse Claims are deemed under the Plan

to release Chartered Organizations that are co-liable for their claims—was raised for the first

time on appeal, and therefore has been waived. (D.I. 66 at 244-45). According to Lujan Claimants, this issue was presented to the Bankruptcy Court, but Lujan Claimants cite only oral argument and an objection, filed following the close of briefing and the trial in response to BSA's 7052 Motion to amend the proposed findings of fact and conclusions of law. (*See* D.I. 113 at 35-36 (citing Bankr. D.I. 9639 at 294-95; Bankr. D.I. 10246 at 3)).

Even assuming that Lujan Claimants have preserved this argument for appeal, they fail to specify whether they are among the group of creditors that is supposedly being treated unequally in being enjoined from pursuing the Chartered Organizations that are co-liable for their claims. It is unclear how Lujan Claimants could be part of this group, however, as their claims against the Archbishop, which is an Opt-Out Chartered Organization, are uniquely preserved. *See In re Boy Scouts of Am.*, 642 B.R. at 615. Regardless, as BSA points out (D.I. 66 at 245 n.88), the judgment reduction provision set forth in Article X.N of the Plan moots any argument with respect to unequal treatment of Survivors that may have claims against a Chartered Organization that are not channeled, as that provision expressly contemplates this situation and instructs a court to set off or credit a judgment in this circumstance. (D.I. 1-4 § X.N). Based on the foregoing provisions, Lujan Claimants do not have standing to make this argument.

### 4. Treatment of Future Claimants

D&V Claimants argue that the treatment of current Direct Abuse Claims is not fair and equitable as compared to Future Abuse Claims, because a holder of a Future Abuse Claim—i.e., a minor or a person whose Abuse Claim arose prior to the Petition Date, but who was at the time unaware of such claim as a result of "repressed memory" to the extent such concept is recognized by the relevant state or territory—was not required to file a proof of claim by the Bar Date. (*See* D.I. 41 at 80-81). According to BSA, D&V Claimants did not raise this issue in their objections to confirmation of the Plan and have thus not preserved it for appeal. (*See* Bankr. D.I.

106

A00147

8744; Bankr. D.I. 9017). D&V Claimants state the argument was presented to the Bankruptcy Court, but they cite only cross-examination of the Future Claimants' Representative (Bankr. D.I. 9482 at 112:11-124:19) and oral argument (Bankr. D.I. 9646 at 309:10-312:13) together with their purported reservation of the right "to make additional arguments at the Confirmation Hearing" contained in their plan objection (Bankr. D.I. 8744).[15]

Assuming this issue is properly before me, however, D&V Claimants have cited no authority supporting their contention, and the Court is aware of none. Rather, the reverse is true, as incorporating the fair and equitable treatment of Future Abuse Claims into the Plan was necessitated by due process concerns. The creation of a trust to compensate these claimants and the appointment of a legal representative to act as a fiduciary for their interests in the bankruptcy case have been endorsed by numerous courts in mass tort chapter 11 cases as appropriate mechanisms for a debtor to comply with the requirements of due process and to obtain a discharge from this type of claim. *See, e.g., Hexcel Corp. v. Stepan Co. (In re Hexcel Corp.),* 239 B.R. 564, 568-69 (N.D. Cal. 1999) ("[T]he claimants' interests had already been represented in the bankruptcy proceedings through the creation of the trust funds and the appointment of class representatives. Had this not been the case, it is doubtful that plaintiffs' claims could properly be deemed to have been discharged in bankruptcy.") (citing *In re A.H. Robins,* 88 B.R. 742, 743 (E.D. Va. 1988), *aff'd,* 880 F.2d 694 (4th Cir. 1989); *In re Johns-Manville Corp.,* 36 B.R. 743, 745-46 (Bankr. S.D.N.Y. 1984)).

The channeling of Future Abuse Claims to the Settlement Trust preserves the due process rights of these claimants, following the mechanisms approved by courts in other mass tort

---

[15] As with other arguments raised by D&V Claimants, this argument is academic in light of the Bankruptcy Court's finding that Abuse Claims (which includes current Direct Abuse and Future Abuse Claims) will be paid in full. D&V Claimants, therefore, are not "parties aggrieved" with appellate standing on this issue.

bankruptcy cases, while also permitting BSA to obtain the channeling and discharge injunction and fresh start. Moreover, it is common practice in mass tort bankruptcies to classify current and future claimants in the same class and to provide future claimants with additional time to file their as-yet unmanifested claims. Providing holders of Future Abuse Claims with additional time to assert their claims because, by definition, as "futures" they were unable to assert their claims by the Bar Date, comports with principles of fairness, due process, and common sense. In any event, all such claimants receive the same treatment, as required by § 1123(a)(4).

Finally, I reject as hyperbole D&V Claimants' speculation that holders of Direct Abuse Claims will have to wait "80 to 90 years" for Future Abuse Claims to be filed, during which holders of Direct Abuse Claims will be awaiting their compensation from the Settlement Trust. (*See* D.I. 41 at 80-82). First, the only competent testimony on this subject is that there are likely only 400 Future Abuse Claims. *In re Boy Scouts of Am.*, 642 B.R. at 556 n.246; Bankr. D.I. 9454 at 198:20-199:19). The addition of 400 Future Abuse Claims to the already over 82,200 current Direct Abuse Claims (0.5%) is not material, nor will it lead to the catastrophic inequity that D&V Claimants predict. Second, as evidenced by the TDP, the Settlement Trust will be governed by comprehensive process-oriented guidelines for paying current claims, while also ensuring that sufficient funds remain to continue to compensate remaining current, as well as future, claims going forward. Distributions from the Settlement Trust to current Direct Abuse Claims will not be delayed because of Future Abuse Claims; rather, the Settlement Trustee may make distributions to holders of current or future Direct Abuse Claims when those claims are allowed under the procedures set forth in the TDP. (*See, e.g.,* D.I. 1-4, Ex. A, Art. IX (providing process for payment upon final determination of an Allowed Abuse Claim); D.I. 1-4, Ex. B Art. 4 (same)).

Accordingly, D&V Claimants' argument that the Plan is not fair and equitable to holders of current Direct Abuse Claims lacks support.

### 5.    The Bankruptcy Court Properly Authorized Plan Modifications

Lujan Claimants make several Plan modification-related arguments, asserting that (a) BSA did not satisfy the correct standard required for a Rule 7052 Motion, (b) BSA's Rule 7052 Motion impermissibly bypassed Plan-related notice requirements, and (c) the Plan was materially and adversely modified without proper notice following confirmation. (*See* D.I. 40 at 74-78).

Lujan Claimants argue that the modifications were not permitted under Bankruptcy Rule 7052 as a "vehicle" to confirm an "alternative plan of reorganization." (D.I. 40 at 74; *see also id.* at 78). The record reflects that BSA timely submitted the Rule 7052 Motion, which sought to supplement, or, in certain instances, amend, particular findings of fact and conclusions of law in the Confirmation Opinion. Lujan Claimants posit that the BSA was required but failed to "show manifest injustice without amendment or supplement of the Opinion or any newly discovered evidence justifying amendment or supplement." (*See* D.I. 40 at 78). As an initial matter, the Bankruptcy Court contemplated a supplemental order that would work in tandem with the Confirmation Opinion. (*See* Bankr. D.I. 10215 at 11:13-22 (Bankruptcy Court noting, "I actually wasn't focused on Rule 7052 which maybe applies or maybe doesn't . . . I appreciate the timing concern and the need to file a motion. . . . All this order is supposed to do is memorialize the opinion to the extent that there are additional findings that needed to be made."). In any event, limited corrections to findings of fact were required in order to avoid future confusion or mistakes which could result in manifest injustice for the BSA and plan supporters. (*See* Bankr. D.I. 10188 at 11-16). The Bankruptcy Court clearly had authority to supplement or amend its own Confirmation Opinion under any number of rules and provisions, including § 105(a) of the Code.

The record further reflects that notice of the Rule 7052 Motion was extensive, and BSA did not "bypass requirements for plan confirmation" in violation of the twenty-eight-day notice requirement of Bankruptcy Rule 2002(b). (*See* D.I. 40 at 74). As detailed above, the plan confirmation hearing began on March 14, 2022 and lasted twenty-two trial days over a six-week period, during which the Bankruptcy Court addressed objections from numerous parties including the Lujan Claimants. *In re Boy Scouts of Am.*, 642 B.R. at 550. BSA provided extensive notice of the confirmation hearing, which was adequate and complied with the Bankruptcy Code and Bankruptcy Rules, as set forth in a specific finding contained in the Confirmation Order:

> All necessary service and notice with respect to confirmation of the Plan, including all releases and injunctions thereunder, on all known and unknown creditors and other parties in interest was adequate and sufficient under the circumstances of the Chapter 11 Cases and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice is necessary or shall be required.

(D.I. 1-1 ¶ II.B). Thereafter, the record reflects that Lujan Claimants had ample time to consider the discrete modifications requested by BSA, file objections, and participate in the hearing on the Rule 7052 Motion. The Confirmation Opinion was issued on July 29, 2022. Any Rule 7052 Motion was required to be filed within fourteen days of the Bankruptcy Court's issuance of the Confirmation Opinion. The motion was timely filed on August 12, 2022. (Bankr. D.I. 10188). On August 15, 2022, the Bankruptcy Court established an appropriate objection deadline of August 24, 2022, and a hearing date of September 1, 2022 with respect to the Rule 7052 Motion. (*See* Bankr. D.I. 10195). Lujan Claimants thus had nearly one month following entry of the Confirmation Opinion and two weeks from the filing of the Rule 7052 Motion to object and had at least seventeen days prior to the hearing on the Rule 7052 Motion to consider BSA's proposed Confirmation Order. Moreover, Lujan Claimants did in fact object to the Rule 7052 Motion and

110

actually participate at the September 1, 2022 hearing. (*See* Bankr. D.I. 10246; Bankr. D.I. 10288 at 52:25–56:11, 79:11–80:8, 100:7–110:6).

Pursuant to the Rule 7052 Motion, BSA requested amendment of findings related to: (1) the United Methodist ad hoc committee's contributions, (2) a settlement with the law firm of Pachulski Stang Ziehl & Jones, and (3) exculpation provisions in the Plan. (*See* Bankr. D.I. 10188 at 11-16). Lujan Claimants did not object to the amendment of any of these specific findings, only the process by which BSA proposed the amendments. Because Lujan Claimants did not include written objections to the specific findings in their Rule 7052 objection, they have not preserved these arguments on appeal. *Watkins v. Int'l Union Sec. Police and Fire Professionals of Am.*, 2016 WL 1166323, at *4 n.4 (D. Del. Mar. 23, 2016) (argument not included in written objections need not be considered); *Thompson v. TCT Mobile*, 2020 WL 1531333, *7 n.3 (D. Del. Mar. 31, 2020) (same); *In re Mallinckrodt*, 639 B.R. at 892 n.178 (same). Even assuming that Lujan Claimants have preserved these arguments, however, they are unavailing.

Lujan Claimants assert that BSA materially and adversely modified the Plan without proper notice after confirmation to incorporate modifications that (a) resolved the RCAHC's objections to the Plan, and (b) implemented a fraud-prevention provision in the Confirmation Order as required by the Confirmation Opinion. (*See* D.I. 40 at 74-78). At the outset, Lujan Claimants misstate the facts and timing of the settlement that resolved the RCAHC's Plan objections. Lujan Claimants assert that "the Plan now includes third-party releases and injunctions of Survivors' claims which were not in the earlier plan, namely, the releases and injunctions in favor of Roman Catholic Entities," citing the definition of Roman Catholic Entities set forth in the Confirmation Order and arguing that the Plan "now treats those undisclosed entities as Participating Chartered Organizations." (D.I. 40 at 74–75). But the resolution of the

111

RCAHC's Plan objections was disclosed in a term sheet filed with a mediator's report on March 17, 2022 and announced at the beginning of the confirmation hearing with the exact language that the Lujan Claimants argue was added after confirmation. (Bankr. D.I. 9387; Bankr. D.I. 9406 at 8:1–10:21). The mediator's report and term sheet were also served on parties in interest, including Lujan Claimants. (Bankr. D.I. 9442; Bankr. D.I. 9498). That notice clearly stated that the terms of the settlement would be included in the Plan in exchange for resolution of the RCAHC's Plan objections, and the terms were subsequently incorporated into the modified version of the Plan. (Bankr. D.I. 9696; Bankr. D.I. 9697). Lujan Claimants had twenty-eight days from the disclosure of the resolution of the RCAHC Plan objection to the end of the confirmation hearing to raise this issue, but they did not.

The settlement with the RCAHC provided for certain clarifications, which were incorporated directly into the Plan, and the record reflects that no party objected to the RCAHC resolution at any time prior to the issuance of the Confirmation Opinion. The RCAHC settlement was served on, among others, the Bankruptcy Rule 2002 list parties, parties that had filed a notice of appearance or requested notice, *pro se* parties, all parties entitled to vote on the Plan or their counsel, and Chartered Organizations. (*See* Bankr. D.I. 9498). Lujan Claimants' purported objection was first raised well past any conceivable deadline to do so and they never filed any pleading challenging the RCAHC settlement. After issuing the Confirmation Opinion, the Bankruptcy Court held multiple hearings on the form of Confirmation Order and the BSA's Rule 7052 Motion. Lujan Claimants' objection to the Rule 7052 Motion, filed on August 24, 2022, does not mention the RCAHC settlement either. (*See* Bankr. D.I 10246). It was not until the September 1 hearing on the Rule 7052 Motion that Lujan Claimants orally challenged the RCAHC settlement and related clarifications to the Plan. The Bankruptcy Court ruled that the objection was untimely:

> I am not going to change anything with respect to the Roman Catholic resolution. It was filed . . during confirmation, but which extended way beyond the filing of this particular resolution and any objections should have been raised at that point in time. There was plenty of time to do it . . . . I think it was fairly covered . . . by the [Confirmation] [O]pinion and, again, if there was a specific issue, it should have been raised specifically.

(Bankr. D.I. 10288 at 111:1-17). Lujan Claimants have provided no evidence to support that the waiver finding is clearly erroneous.

Finally, Lujan Claimants' argument that the modifications are material and adverse are unavailing. The Bankruptcy Code permits modifications of a plan "at any time" prior to confirmation. 11 U.S.C. § 1127(a). The Bankruptcy Code further provides that all voting creditors who previously accepted a plan will be deemed to have accepted the modified plan. *Id.* Bankruptcy Rule 3019(a) specifies that post-solicitation plan modifications do not require re-solicitation if the modifications do not adversely change the treatment of parties who previously voted for the plan. As such, courts have found that only "material" and "adverse" modifications require re-solicitation. *See In re Fed.-Mogul Glob. Inc.*, 2007 WL 4180545, at *39 (Bankr. D. Del. Nov. 16, 2007); *In re Century Glove, Inc.*, 1993 WL 239489, at *3 (D. Del. Feb. 10, 1993).

A plan modification is immaterial unless it will "so affect a creditor or interest holder who accepted the plan that such entity, if it knew of the modification, would be likely to reconsider its acceptance." *In re Am. Solar King*, 90 B.R. at 824; *see also In re New Power Co.*, 438 F.3d 1113, 1117–18 (11th Cir. 2006) (explaining that a party's "vote for or against a plan" may be applied "to a modified plan unless the modification materially and adversely changes" the party's treatment).

Applying this standard, it is unclear how any change could be deemed material and adverse to Lujan Claimants, when holders of Direct Abuse Claims are likely to be paid in full under the Plan—both before and after Plan modifications were made. Notwithstanding, Lujan

Claimants take specific issue with the definition of "Roman Catholic Entities" in the resolution with the RCAHC, asserting that the modified definition "expands" the number of parties being released under the Plan and captures entities that may not share insurance with BSA and may not be Chartered Organizations. (D.I. 40 at 75-76). Lujan Claimants contend that these entities were not adequately disclosed in connection with soliciting votes on the Plan. (*Id.* at 76). The record reflects the RCAHC resolution simply clarifies that the listed entities were recognized by BSA. (Bankr. D.I. 9386 (Twelfth Mediator's Report attaching terms of the RCAHC Term Sheet to "be appended to and incorporated by reference in the Plan or the Confirmation Order," defining "Roman Catholic Entities," and providing that the "Plan and/or the Confirmation Order shall be amended to provide that Roman Catholic Entities other than those that have specifically opted out of such treatment . . . shall be treated as Participating Chartered Organizations, provided that the RCAHC withdraws its [plan] Objections . . .); Bankr. D.I. 9387 (notice of settlement attaching RCAHC Term Sheet)).

Moreover, only "Abuse Claims" are being released under the Plan. Abuse Claims, by definition, are claims against, among others, Limited Protected Parties such as the Roman Catholic Entities that "alleged Scouting-related Abuse that occurred prior to the Petition Date." (*See* D.I. 1-4 Art. I.A.18). If Lujan Claimants have claims against religious orders that are not related to Scouting, those are not released under the Plan. If such claims are Scouting-related, then they relate to claims against BSA and its insurance and are properly treated under the Plan. The Bankruptcy Court noted this point in the Confirmation Opinion: "Of course, the Archbishop will have to defend non-Abuse Claims (i.e., abuse claims unrelated to Scouting) but those claims are not covered by the BSA Insurance Policies." *In re Boy Scouts of Am.*, 642 B.R. at 577. Thus, the RCAHC settlement creates no risk that the injunctions will spill past their intended effect and the Bankruptcy Court's jurisdiction.

114

Lujan Claimants assert that a fraud-prevention provision added to the Plan to conform with the Confirmation Opinion materially and adversely affects the Lujan Claimants such that re-solicitation is required. (*See* D.I. 40 at 76-78). This argument, which implies that Lujan Claimants' claims would be negatively impacted by a process designed to identify and address fraudulent claims, also must be rejected. As BSA points out, the TDP is not designed to pay fraudulent claims; rather, the detection of fraudulent claims is also part of the review process. As the Bankruptcy Court noted, a provision that would aid in eliminating fraudulent claims from the claim pool is not materially adverse to Lujan Claimants; rather such a procedure can only benefit those claimants who believe they have valid claims. (*See* Bankr. D.I. 10288 at 104:10–13).

The Bankruptcy Court appropriately overruled Lujan Claimants' objections related to the Plan modifications.

### E.    Indirect Abuse Claims and Judgment Reduction Provision

Non-Settling Insurance Companies Allianz and Liberty challenge the Bankruptcy Court's rulings on the treatment of Indirect Abuse Claims and the judgment reduction provisions set forth in the TDP and Confirmation Order. (*See* D.I. 43 at 14-41).

#### 1.    The Plan's Treatment of Indirect Abuse Claims Is Proper

Indirect Abuse Claims are claims for contribution, indemnity, reimbursement, or subrogation with respect to Abuse Claims asserted by Local Councils, Chartered Organizations, and Insurance Companies that are being channeled to the Settlement Trust for liquidation in accordance with the TDP. (*See* D.I. 1-4, Art. III.B.11). Article IV.B of the TDP sets forth specific requirements for Indirect Abuse Claims to be eligible for compensation from the Settlement Trust. (D.I. 1-4, Ex. A, Art. IV.B). Among other things, an indirect abuse claimant (1) must have a valid Indirect Abuse Claim, (2) "that is not subject to (a) disallowance under section 502 of the Bankruptcy Code, including subsection (e) thereof, (subject to the right of the

115

holder of the Indirect Abuse Claim to seek reconsideration by the Settlement Trustee under section 502(j) of the Bankruptcy Code), or is not otherwise legally invalid, or (b) subordination under sections 509(c) or 510 of the Bankruptcy Code, or otherwise under applicable law," and (3) must establish that (a) such claimant has paid in full the underlying liability for a Direct Abuse Claim for which the claimant seeks payment, (b) such claimant has released the Settlement Trust and Protected Parties from liability for the Direct Abuse Claim, and (c) the Indirect Abuse Claim is not subject to a valid defense. (D.I. 1-4, Ex. A Art. IV. B).

Liberty and Allianz argue that the Bankruptcy Court erred in confirming the Plan because the TDPs impermissibly shift the burden of the claims allowance process onto the holders of Indirect Abuse Claims. (*See* D.I. 43 at 13). "In overruling the Insurers' objection to the Plan as to this issue, the Bankruptcy Court erroneously conflated claim treatment with claim allowance." (*Id.*) These arguments are not persuasive.

As noted in the Confirmation Opinion, this is an extraordinary case. *In re Boy Scouts of Am.,* 642 B.R. at 517, 619.  The difficulty in adjudicating tens of thousands of tort claims in bankruptcy cases has led to the creation of streamlined procedures, like the TDPs, to resolve tort claims under a trust in numerous cases.  The TDPs establish an orderly, alternative mechanism to verify, evaluate, and resolve Abuse Claims, which predominantly involve state law issues, without overwhelming the Bankruptcy Court.  To litigate tens of thousands of claims before the Bankruptcy Court would take decades and would result in uncertainty and delay.  Moreover, considerable resources would be expended litigating claims, diminishing the assets available for distribution to Survivors.  The TDPs avoid this outcome by permitting Abuse Claims to be resolved in an effective, fair, and cost-efficient manner, maximizing overall distributions to Survivors.  Providing procedures to facilitate this process and to encourage settlement and compromise promote important policies of the Bankruptcy Code and should be encouraged. *See,*

*e.g., In re Martin*, 91 F.3d at 393 ("[t]o minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy'"); *In re Elder*, 325 B.R. 292, 298-300 (N.D. Cal. 2005) (finding "the Plan merely attempts to reduce the number of time-consuming objection hearings by offering parties a chance to settle claims objections through the Plan Administrator prior to requesting a hearing before the court," and "[s]uch compromises should be encouraged in the bankruptcy context.").

If a holder of an Indirect Abuse Claim disagrees with the Trustee's decision regarding its Indirect Abuse Claim, the claimant may seek *de novo* review. (*See* D.I. 1-4, Ex. A, Art. XI.C). As the Bankruptcy Court observed, "the indirect abuse claimants are entitled to a review in front of me and they can argue whatever they want to argue with respect to burden shifting at that point in time and who has the burden when they're in front of me, if that's where they want to be." (Bankr. D.I. 10288 at 89:16-20). Thus, the rights of holders of Indirect Abuse Claims under § 502 of the Bankruptcy Code are protected.

As other courts have noted, so long as claims may receive judicial review, "there is nothing inherently inappropriate" about a plan administrator (or the trustee) "being given the ability to compromise and settle claims objections." *In re Elder*, 325 B.R. at 298-300.

According to Liberty and Allianz, the Bankruptcy Court failed to recognize the distinction between claim allowance and claim treatment, foreclosing them from arguing that the Plan's claims allowance provisions for Indirect Abuse Claims are improper. (*See* D.I. 43 at 21-25). The central premise underlying Liberty and Allianz's plan objection (and argument on appeal) is that the TDPs treated Indirect Abuse Claims unfairly and inequitably compared to Direct Abuse Claims. (*See, e.g.*, Bankr. D.I. 8778 ¶¶ 5, 19, 29 & 33; Bankr. D.I. 8698 ¶ 1). The Bankruptcy Court considered and overruled these objections in that context. "To the extent that Liberty and/or Allianz object to the process of resolving Indirect Abuse Claims because it is

117

different than the process for resolving Direct Abuse Claims, this objection is overruled. It is evident that the claims are different in nature and the factors and analysis that go into resolving these claims are, of necessity, different." *In re Boy Scouts of Am.,* 642 B.R. at 672.

The goal of the TDPs is to avoid litigating tens of thousands of claims. To achieve this goal—as countless other mass-tort trusts have done—the TDPs request that claimants, both for Direct and Indirect Claims, provide relevant information. This requirement is not, as Liberty and Allianz contend, an "unjustified burden" or "a gauntlet of requirements." To the contrary, "the requested information is simply a necessary means of procedural efficiency." *See In re Heath,* 331 B.R. 424, 436-37 (B.A.P. 9th Cir. 2005) (agreeing with the "majority" of courts that in the context of claim objections, "creditors have an obligation to respond to formal or informal requests for information"); *In re Hopkins Fabrication, LLC,* 2022 WL 1237794, *20-21 (D. Conn. Apr. 26, 2022) (following *Heath* and noting *Heath* requires creditors to provide requested information "whether or not the proof of claim constitutes prima facie evidence of the claim's validity and amount"). Requesting sufficient documentation from sophisticated parties to aid this process, while also affording judicial review, is not a remarkable procedure. It does not violate the Bankruptcy Code or the Bankruptcy Rules.

## 2. The Plan's Treatment of Intra-Insurer Contribution Claims Is Appropriate

Allianz and Liberty assert that the Plan fails in regard to their potential "Recovery Claims." By "Recovery Claims," they mean contribution or similar claims against the Settling Insurance Companies (which are enjoined by the Plan). Such claims would arise if a coverage court[16] enters a judgment requiring a non-settling insurance company (such as Allianz and Liberty) to pay more than their share of liability for a particular Abuse Claim or Claims, and

---

[16] A coverage court is simply any court handling coverage litigation.

some of that liability is otherwise allocable to Settling Insurance Companies. Allianz and

Liberty contend that the Plan's judgment reduction provisions do not provide an adequate

remedy for such Recovery Claims. (*See* D.I. 43 at 25-41). First, Allianz and Liberty complain

that "the judgment reduction clause does not fairly compensate [them] for the loss of [Recovery]

claims," including their contribution claims. (*Id.* at 27-37). Second, Allianz and Liberty take

issue with the judgment reduction provision, which provides that any reduction to which an

Insurer is entitled may not be offset from the underlying judgment until the reduction is "final

and nonappealable," whereas the full (unreduced) underlying judgment is not so restricted." (*See*

*id.* at 37-41). Accordingly, Allianz and Liberty assert that the Trust may require payment of the

underlying judgment before they have the opportunity to offset via a Recovery Claim.

### a.    Judgment Reduction Is an Adequate Remedy for the Recovery Claims

Allianz and Liberty argue that the Plan does not fully compensate their contingent future

Recovery Claims against Settling Insurers in all circumstances, and, thus, the Plan should not

have been confirmed. As BSA and the Future Claimants' Representative point out (D.I. 66 at

267-68; D.I. 81 at 36-37), the Recovery Claims are not constitutionally protected property rights,

and they are adequately protected by the Plan's judgment reduction provisions.

Recovery Claims arise only where one insurer has paid "more than its fair share" for

claims against its insured. *See McDermott, Inc. v. AmClyde*, 511 U.S. 202, 209, 215 (1994).

Here, as BSA and the Future Claimants' Representative argue, it is unlikely that Insurers will

ever be required by judgment to pay "more than their fair share" in the first instance. (D.I. 81 at

81; D.I. 66 at 266-67). Under the TDPs, only the Trust may assert claims for coverage against

Insurers. (*See* D.I. 1-4,t Ex. A, Art. X). In other words, the Insurers will never be the subject of

a judgment directly for an Abuse Claim. Thus, any judgment against an Insurer will be rendered

by a coverage court—which will apply the terms and conditions of their policies that provide, for example, that the policy only provides coverage excess of the Settling Insurance Companies— and which will enter a judgment consistent with those policies.

Allianz and Liberty concede that usually (*i.e.*, to the extent their contribution claim against a Settling Insurer does not exceed the underlying judgment from which it arises), an insurer's rights are protected by the existing judgment reduction clause. (*See* D.I. 43 at 4-5). The issue Allianz and Liberty complain of only occurs if the claim against a Settling Insurance Company exceeds the judgment against it, which they posit may occur with respect to "defense costs associated with [an] Insurance Action and/or Abuse Claim," that it has successfully defended. (D.I. 43 at 35). In such circumstances, Allianz or Liberty would obtain a judgment against the Trust (since suits against the Settling Insurance Companies have to be brought against the Trust) that exceeds whatever it owes the Trust. First, Allianz and Liberty provide no support for the proposition that they would ever have a Recovery Claim against Settling Insurance Companies for the costs of defending a coverage action. Second, despite their complaints, the TDPs streamline and reduce defense costs by resolving claims consensually through an out-of-court process. Thus, the likelihood that an Insurer is saddled with significant costs of defending Abuse Claims in the tort system is small.

Adequate protection need not provide "full" protection; rather, as the name suggests, adequate protection includes that which suffices under the circumstances. *In re Plant Insulation Co.*, 469 B.R. 843, 876 (Bankr. N.D. Cal.) ("The Non-Settling Insurers need not be compensated in full," but conditions should "mitigate the greatest hardships of the injunction" and "should not impose conditions that would undermine the purposes of section 524(g)"), *aff'd*, 485 B.R. 203 (N.D. Cal. 2012), *rev'd on other grounds*, 734 F.3d 900 (9th Cir. 2013), *and aff'd on other grounds*, 544 F. App'x 669 (9th Cir. 2013); *see In re O'Connor*, 808 F.2d 1393, 1396-97 (10th

120

Cir. 1987) ("courts have considered 'adequate protection' a concept which is to be decided flexibly on the proverbial 'case-by-case' basis," and is fact finding subject to clearly erroneous review). Many courts have agreed that a judgment reduction clause, like the one in this case, protects this right appropriately. *See In re Duro-Dyne Nat'l Corp.*, 2020 WL 6270691, at \*65 (D.N.J. Oct. 23, 2020) (confirming Plan over insurer objection to judgment reduction provision); *In re PNC Fin. Servs. Grp., Inc.*, 440 F. Supp. 2d 421, 438, 452-53 (W.D. Pa. 2006) (approving partial settlement of claims where non-settling defendants would "enjoy the benefit of a corresponding judgment reduction for the elimination of its contribution claims against any released party"); *In re Tribune Co.*, 464 B.R. at 179 (proposed plan's bar order was substantively fair to the non-settling defendants because they were protected by the proportionate judgment reduction provision).

In each case where courts have addressed this issue in the mass-tort context, the structures of those plans provided for the continued assertion of claims directly against non-settling insurers in the tort system. *See In re Plant Insulation*, 469 B.R. at 855; *In re Duro-Dyne Nat'l Corp.*, 2020 WL 6270691, at \*38. The Insurers' alleged rights here are more speculative and less specific than in those cases. Finally, even the courts in those cases have found that an entitlement to contribution is not sufficiently specific and well-protected to rise to the level of a property right. *See In re Plant Insulation*, 469 B.R. at 881.

Even where a substantial number of injury claims continue to be asserted against non-settling insurers in the tort system, courts have found that insurers are appropriately protected from defense overpayment recovery claims by judgment reduction because the number of claims an insurer must defend is reduced, reducing their defense costs overall. *Id.* at 878. Here, where the TDPs were designed to resolve virtually all claims through out-of-court processes, protection for the Insurers is greatly increased. Their net expenditures for the defense of Abuse Claims are

121

likely to be substantially reduced by the Plan, rendering the protection provided at least "adequate." In contrast, further protection of this contingent, theoretical right could require the Trust to create reserves and delay payments to claimants, or to expend its resources forecasting these hypotheticals. The *Plant* court recognized the deleterious impact of such a scheme on a trust for personal injury victims. *Id.* at 879.

In support of the proposition that they are entitled to further protection, Allianz and Liberty cite a case decided under Ninth Circuit law, *In re Fraser's Boiler Service, Inc.*, 2019 WL 1099713 (W.D. Wash. Mar. 8, 2019). That decision, as the Future Claimants' Representative points out (D.I. 81 at 41-42), rested on (i) the Ninth Circuit's blanket prohibition against non-debtor releases, a prohibition that the Third Circuit has rejected, (ii) the existence of a separate prepetition contract among insurers as the basis for contribution claims, which does not exist here, and (iii) a plan structure that contemplated non-settling insurers would continue regularly defending claims in the tort system. The *Fraser's Boiler* decision is not compelling here.

### b. The Judgment Reduction Clause's Mutually Applicable Finality Requirement Does Not Render the Plan Unconfirmable

Allianz and Liberty object to the "finality requirement" in the judgment reduction provision, which they say requires that their entitlement to a contribution claim must be reduced to a final judgment before the Trust must reduce its judgment against the Insurers if their judgment is to offset the Trust's judgment. (D.I. 43 at 37-41). Allianz and Liberty acknowledge only in passing that the Plan's judgment reduction provision was modified to provide that the Trust "shall not seek to enforce" its own judgment until the Insurers' claim becomes final and non-appealable—an issue which they won. (*Id.* at 40). Thus, the harms that Allianz and Liberty speculate may befall them if the Trust seeks to enforce its judgment before final judgment on any contribution claim is foreclosed by the Plan. Notwithstanding, Allianz and Liberty complain this

additional language is "cold comfort" because it lacks a specific enforcement mechanism. (*Id.*)

However, they cite no evidence for the proposition that the Trustee is likely to ignore the

governing Plan Documents, and they can enforce this provision as any party would enforce

restrictions or limitations on the Trustee's powers—by seeking injunctive protection or damages

from a court of competent jurisdiction. That Allianz and Liberty do not receive their preferred

judgment reduction mechanisms did not render the Plan unconfirmable.

For these reasons, I find no error in the Bankruptcy Court's rulings with respect to the

Plan's provisions addressing Indirect Abuse Claims and the judgment reduction provisions.

### F.    The Bankruptcy Court Correctly Determined that the Plan Was Proposed in Good Faith Pursuant to § 1129(a)(3)

Certain Insurers argue the Plan was not proposed "in good faith." This argument is not to

be confused with whether the bankruptcy petition was filed in good faith. Certain Insurers do

not challenge a single factual finding underlying the Bankruptcy Court's good faith

determination. (*See* D.I. 144, 2/9/2023 Hr'g Tr. at 14:17-14:24). The main thrust of their

argument on appeal is that the Bankruptcy Court erroneously "took a piecemeal approach"—that

it considered, in isolation, each of the issues raised by Certain Insurers with respect to the Plan

and determined that no single aspect of the Plan alone demonstrated a lack of good faith. (*See*

D.I. 45 at 3; *id.* at 67 (arguing that the Bankruptcy Court "erroneously analyzed the record

evidence piecemeal, concluding that certain elements such as the explosion of claims or BSA's

proposed findings, did not in isolation demonstrate a lack of good faith.") Had the Bankruptcy

Court properly considered the issues raised by Certain Insurers together as a whole, under the

applicable totality of the circumstances approach, Certain Insurers argue, the Bankruptcy Court

would have drawn a different conclusion. Instead, the Bankruptcy Court "missed the forest for

the trees and confirmed a plan that was likely to inflate the number and value of claims

123

A00164

Case: 23-1664    Document: 62-1    Page: 189    Date Filed: 07/24/2023

regardless of merit and seeks to hamstring insurers' ability to defend themselves. This is not good faith, and the bankruptcy court committed reversible error in holding otherwise." *Id.* at 67-68.

I agree with BSA that Certain Insurers are not really arguing for a different conclusion based on a totality of the circumstances approach. Rather, what Certain Insurers seek are "different underlying factual findings to support a different conclusion." (D.I. 131). Indeed, Certain Insurers assert that the Bankruptcy Court should have found that BSA colluded with survivors (D.I. 45 at 45–51), that the Plan inflated claim values (*id.* at 25–31), that the Plan abrogated insurance rights (*id.* at 32–34), that the Plan bound insurers to pay awards (*id.* at 37), and that the Plan eliminated insurer coverage defenses (*id.*). The Bankruptcy Court's findings on each of these matters is subject to a clear error standard of review. None of these findings support a legal conclusion that the Plan was not proposed in good faith.

1.    **Applicable Standards**

a.    **Standard of Review**

In the context of determining whether a bankruptcy petition (as opposed to a plan) was filed in good faith, the Third Circuit recently explained that such a conclusion is an "ultimate fact." *In re LTL Management,* 58 F.4th 738, 753 (3d Cir. 2023). As the Third Circuit explained:

> Facts subject to clear-error review include those that are basic, the historical and narrative events elicited from the evidence presented at trial, and those that are inferred, which are drawn from basic facts and are permitted only when, and to the extent that, logic and human experience indicate a probability that certain consequences can and do follow from the basic facts. These are distinguished from an "ultimate fact," which is a legal concept with a factual component. Examples include negligence or reasonableness. Reviewing an ultimate fact, we separate its distinct factual and legal elements and apply the appropriate standard to each component.

> Concluding a bankruptcy petition is filed in good faith is an "ultimate fact." While the underlying basic and inferred facts require clear-error review, the

124

A00165

> culminating determination of whether those facts support a conclusion of good
> faith gets plenary review as essentially a conclusion of law.

*Id.* (internal citations and quotations omitted).

Following briefing, Certain Insurers filed a letter brief explaining that the *In re LTL*

*Management* decision should be considered in my determination of the standard of review

applicable to the Bankruptcy Court's good faith determination under § 1129(a)(3).  According to

Certain Insurers, "*LTL* confirms that whether a debtor has demonstrated good faith is a legal

question subject to *de novo* review."  (D.I. 130 at 1).  Thus, Certain Insurers assert, this Court

"takes a fresh look at the bankruptcy court's analysis."  *See id.* (quoting *In re LTL*, 58 F.4th at

753) (internal quotations omitted).  Assuming that a good faith determination is an "ultimate

fact" for purposes of § 1129(a)(3) as well,[17] basic and inferred facts underlying the good faith

determination are still reviewed for clear error.  *In re LTL*, 58 F.4th at 753.  Plenary review is

applied only to the "culminating determination of whether those facts support a conclusion of

good faith."  *Id.*

    **b.**    **Good Faith Determination**

---

[17] This is not an obvious conclusion.  *See In re Plant Insulation Co.*, 544 F. App'x 669, 671 (9th Cir. 2013) ("The bankruptcy court's finding of good faith is evaluated for clear error.").  The Third Circuit has explained:
> The question of whether a Chapter 11 bankruptcy petition is filed in good faith is a judicial doctrine, distinct from the statutory good faith requirement for confirmation pursuant to § 1129(a)(3).  The judicial doctrine inquires into the motivation for proceeding in bankruptcy, and requires an examination of all of the facts and circumstances and depends upon an amalgam of factors, none of which is dispositive.  In contrast, the good-faith confirmation requirement is narrower and focuses primarily on the plan itself, and on whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

*In re Am. Capital Equipment, LLC*, 688 F.3d 145, 157 (3d Cir. 2012) (internal quotations and citations omitted).

Section 1129(a)(3) provides that the court shall confirm a plan only if "[t]he plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C § 1129(a)(3). "For purposes of determining good faith under section 1129(a)(3), the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *In re Abbotts Dairies*, 788 F.2d at 150 n.5 (cleaned up) (quoting *In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984)).

"In its assessment, the court should keep in mind that the purpose of the Bankruptcy Code is to give debtors a reasonable opportunity to make a fresh start." *In re W.R. Grace*, 475 B.R. at 87 (cleaned up). "The factors which a court should consider in determining a debtor's good faith include if the plan: (1) fosters a result consistent with the [Bankruptcy] Code's objectives; (2) has been proposed with honesty and good intentions and with a basis for expecting that reorganization can be effected; and (3) [reflects] a fundamental fairness in dealing with the creditors." *Id.* at 87-88 (citation omitted). Courts examine the "totality of the circumstances" when analyzing these factors, none of which is dispositive. *Id.* at 88. As the Bankruptcy Court correctly observed, "[T]hat there might be another plan, or even a better one, is not grounds to find a lack of good faith." *In re Boy Scouts of Am.*, 642 B.R. at 660; *see also In re Tonopah Solar Energy, LLC*, 2022 WL 982558, at *8 (D. Del. Mar. 31, 2022) (affirming finding of good faith under § 1129(a)(3) "[e]ven assuming a better settlement could be reached"); *In re Spansion, Inc.*, 426 B.R. 114, 128 (Bankr. D. Del. 2010) ("Even assuming the Alternative Rights Offering provides 'a better deal' for some creditors, the Debtors' refusal to accept the proposal does not, on its own, demonstrate 'bad faith.'") (citing *In re Celotex Corp.*, 204 B.R. 586, 611-12 (Bankr. M.D. Fla. 1996)).

Bankruptcy Courts have "considerable discretion" in making the "factually specific," "case-by-case" determinations involved in analyzing good faith. *In re W.R. Grace*, 475 B.R. at

126

87. A bankruptcy court's factual findings "may only be overturned if they are 'completely devoid of a credible evidentiary basis or bear[] no rational relationship to the supporting data.'" *Fruehauf Trailer*, 444 F.3d at 210 (quoting *Citicorp Venture Capital*, 323 F.3d at 232).

### 2.    The Good Faith Determination Is Well Supported by the Record

Certain Insurers assert that the Bankruptcy Court "never answered the fundamental question whether the plan as proposed was in good faith." (D.I. 45 at 67). I disagree. The Bankruptcy Court literally found that the "Plan has been proposed in good faith." (D.I. 1-1 ¶ II.D). The record reflects that the Bankruptcy Court's determination was based on its consideration of the totality of the circumstances and an overwhelming volume of evidence that was largely uncontroverted.

"The Supreme Court of the United States has specifically identified two purposes of Chapter 11 as: (1) preserving going concerns; and (2) maximizing property available to satisfy creditors." *In re W.R. Grace*, 475 B.R. at 88 (citing *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999)); *see also In re Thgh Liquidating LLC*, 2020 WL 5409002, at *7 (D. Del. Sept. 9, 2020) (One "honest" purpose in developing a plan of reorganization is to "maximiz[e] value for the Debtors, their estates, and their creditors."). Here, the Bankruptcy Court correctly concluded that the Plan was proposed in good faith because it is consistent with the purposes and objectives of the Bankruptcy Code: "The Plan fosters a result consistent with the Code, is proposed for the purpose of reorganizing and delivers value to creditors." *In re Boy Scouts of Am.*, 642 B.R. at 645; D.I. 1-1 ¶ II.D.

The record establishes that, after filing the chapter 11 cases due to the "tremendous financial pressure" imposed by the sharp increase in the number of Abuse Claims, BSA maintained two consistent objectives: (1) to timely and equitably compensate abuse survivors and (2) to emerge from bankruptcy with the capability to continue to carry out its charitable

127

A00168

mission. "[T]he Plan contains a series of compromises that represent a good faith effort to achieve consensual resolution, maximize recoveries for creditors, resolve Scouting-related Abuse Claims as a whole, and provide recoveries for abuse survivors through the Settlement Trust." (Bankr. D.I. 9280 ¶ 43; ¶ 55). "[T]he organization, through the efforts of many of the insurers and chartered partners, and our local council partners have been able to forge a pathway . . . to emerge from this process while achieving the twofold objectives that the Boy Scouts of America set out to do, which were, one, to equitably compensate our victims, two, to allow the mission of Scouting to continue." (Bankr. D.I. 9341 at 41:20-25 (Desai)).). Certain Insurers did not introduce any evidence refuting BSA's intent to compensate creditors and to reorganize. The Bankruptcy Court therefore credited unrefuted evidence of BSA's intention to reorganize through "a global resolution that balanced the competing interests of Chartered Organizations, Insurance Companies, and abuse survivors" and "provided the BSA with the opportunity to survive the Bankruptcy and fulfill its mission of Scouting." (Bankr. D.I. 9279 ¶ 23).

Certain Insurers did not dispute that BSA's plan to compensate survivors and reorganize BSA is consistent with the purposes and objectives of the Bankruptcy Code. Consequently, the Bankruptcy Court did not err in finding that "the Plan fosters a result consistent with the [Bankruptcy] Code, [and] is proposed for the purpose of reorganizing and delivers value to creditors." *In re Boy Scouts of Am.*, 642 B.R. at 645; (D.I. 1-1 § II.D). "Overall, I find that the claims being compromised bring significant value to the estate, enabling Debtors to fund the Settlement Trust with substantial insurance proceeds in a timely fashion." *Id.* at 568. "Many survivors have been waiting for thirty, forty or even fifty years to tell their stories and receive a meaningful recovery. This Plan makes that happen." *Id.* at 613.

128

A00169

### 3.    The Bankruptcy Court Properly Considered the Totality of the Circumstances

Certain Insurers assert that the Bankruptcy Court "analyzed the record evidence piecemeal, concluding that [the evidence] . . . did not in isolation demonstrate a lack of good faith." (D.I. 45 at 67). I find no support for this contention. The Bankruptcy Court stated at the outset of the Confirmation Opinion, "These findings of fact draw on the trial testimony and the admitted exhibits." *In re Boy Scouts of Am.*, 642 B.R. at 521 n.1. The Bankruptcy Court considered the testimony of twenty-six witnesses, including "portions of six video depositions," "over one thousand exhibits," "designated and counter-designated portions of eight depositions," and "six days of oral argument." *Id.* at 552-53. In resolving countless confirmation-related issues and objections, the Bankruptcy Court analyzed and cited to the record evidence hundreds of times. The Confirmation Opinion contains 765 footnotes, a sizeable portion of which cite evidence from the trial record. The section of the Confirmation Opinion addressing the Debtors' satisfaction of the good faith requirement alone contains approximately fifty citations to the evidentiary record (i.e., references to declarations, submitted evidence, and trial testimony)—the aggregation of all of the evidence admitted at trial. *See id.* at 521 n.1; *id.* at 633 n.558. The Bankruptcy Court's analysis demonstrates that the totality of evidence included Plan negotiations, mediation efforts, the terms of the Plan, the TDP, including the Claims Matrix, the professionals that structured and documented the arrangement, the careful consideration of BSA's board and committees, the views of representative survivors, and the support of every major constituency in the case.

In support of their argument that the Bankruptcy Court considered each piece of evidence in isolation, Certain Insurers quote the Bankruptcy Court's finding, "I reject out-of-hand the notion that this explosion of claims, alone, could be grounds for denial of confirmation." (D.I.

129

A00170

45 at 67 (quoting *In re Boy Scouts of Am.*, 642 B.R. at 652)). But the use of the word "alone" here does not indicate that the issue was viewed in isolation. Rather, the Bankruptcy Court used the word "alone" in responding to the Certain Insurers' "argument that this 'explosion' of claims alone is grounds to deny confirmation of the Plan." *Id.* (citing witness testimony and summarizing Certain Insurers' argument). Other excerpts of the Confirmation Opinion cited by Certain Insurers also do not reflect or support their contention that the Bankruptcy Court viewed each argument or piece of evidence in isolation. (*See* D.I. 45 at 67).

That the Bankruptcy Court added or removed some provisions of the Plan was also "legally erroneous," Certain Insurers argue: "A bankruptcy judge determining whether a plan is proposed in good faith is not tasked with simply removing portions of the plan that it finds problematic. If the plan as a whole is proposed with ulterior motives, it should not be confirmed." (*Id.* at 69). In support of this argument, Certain Insurers cite cases holding that the good faith inquiry should be focused "more to the process of plan development than the content of the plan." (D.I. 45 at 69 (quoting *In re Emerge Energy Servs. L.P.*, 2019 WL 7634308, at *16 (D. Del. Dec. 5, 2019) and citing *In re RTI Holding Co.*, 2021 WL 4994414, at *9 (Bankr. D. Del. 2021) ("The requirement of § 1129(a)(3) 'speaks more to the process of plan development than to the content of the plan.'")).[18] Certain Insurers do not dispute that "the [bankruptcy] court in this case improved the plan by directing BSA to strike the prejudicial findings and permitting insurers to defend themselves in coverage litigation, just as it did when it required the proposal of ani-fraud measures" (*Id.*) But in Certain Insurers' view, "The very fact that BSA was forced to improve these and other individual aspects of the plan merely shows that BSA has yet to come

---

[18] I am not sure that I agree with "the process" being more important than "the content." The Third Circuit cases seem to be more concerned with the content. In any event, I assume the importance of the process for the sake of this opinion.

to the court with clean hands with respect to the plan as a whole; BSA proposed a plan for illegitimate purposes, and the bankruptcy court was forced to solve (part of) the problem." (*Id.* at 72). Certain Insurers cite no authority for their argument that a plan modified to come into compliance with the confirmation opinion is then not proposed in good faith (because it was the bankruptcy court that guided the modification).

As discussed below, I find no support in the record for Certain Insurers' argument that the Plan was proposed with ulterior motives, that the Plan's development process suffered from BSA's unclean hands, or that the Plan process otherwise indicates a lack of good faith.

### 4.    Allegations of Bad Faith Are Not Supported by the Evidence

Certain Insurers' primary challenge to the Plan is based on their assertion that the Trust (through its Trustee) will award "inflated claim values" that are "worlds apart from BSA's prepetition claims history[,]" which the Certain Insurers will be required to pay. (D.I. 45 at 2, 5, 60-68, 72-74). Certain Insurers introduced no evidence to support those arguments or to show that the Bankruptcy Court committed clear error in rejecting their position.

#### a.    There Is No Support for the Allegation that the Plan Inflates Claims

The record supports the Bankruptcy Court's finding that the Settlement Trust is intended to replicate the BSA's prepetition claim history—not inflate the value of the claims. (Bankr. D.I. 9309 ¶¶ 9-10; Bankr. D.I. 9273 ¶¶ 49-63). The lead developers and drafters of the TDP and related documents were law firms and an economics firm. (*See generally* Bankr. D.I. 9309; *see also id.* ¶ 12). Mr. Azer was a lead attorney, and the economist team was led by Dr. Bates. The record reflects that Mr. Azer and Dr. Bates met repeatedly with Mr. Griggs (BSA's national coordinating counsel) to understand and document BSA's prepetition practices and experiences. (Bankr. D.I. 9309 ¶ 4-10; Bankr. D.I. 9273 ¶¶ 49-50). Mr. Azer testified that he and teams of

lawyers drafted the TDP, including criteria for claims and mitigating and aggravating factors,

based on BSA's prepetition practices and experiences. (Bankr. D.I. 9309 ¶¶ 4-10). Mr. Griggs

testified that the TDP is consistent with BSA's prepetition practices and experiences, which he in

fact determined and supervised. (Bankr. D.I. 9273 ¶¶ 9, 52-63). Certain Insurers introduced no

evidence to refute Mr. Griggs's testimony about prepetition practices and experience, or Mr.

Azer's and Mr. Griggs's testimony that the TDP is consistent with those prepetition practices.

The Claims Matrix—the section of the TDP that provides guidance as to valuing

claims—was formulated by the economist team, led by Dr. Bates, and the record reflects that he

and his team have vast experience in structuring trust distribution procedures in mass tort cases.

(Bankr. D.I. 9454 at 95:6-22). Dr. Bates testified that his assignment was to design the TDP base

matrix values and scalars that were consistent with BSA's historical abuse settlements and

litigation outcomes. (Bankr. D.I. 9455 at 31:22-32:7). Dr. Bates further testified that the TDP

base matrix values and scalars were designed to be used by the Settlement Trustee to emulate the

tort system and to replicate the values that Abuse Claims would have received had they been

litigated outside of the chapter 11 cases. (Bankr. D.I. 9454 at 96:14-20). Dr. Bates further

testified that, in his expert opinion, the combination of base values and scalars set forth in the

TDP was consistent with the BSA's historical abuse claim settlement values. (Bankr. D.I. 9454

at 226:1-4).

> The base matrix values and scal[a]rs that are at hand for the trustee to be able to
> valuate the individual claims and assign to them appropriate values that would be
> consistent with those claims as if they were filed in the tort system, but perhaps
> even better than that in that they would be able to be consistently applied and
> equitably applied across all of the claimants by having the same procedures used
> for all of them.

(Bankr. D.I. 9454 at 98:2-9).

Certain Insurers challenge good faith in developing the TDP, arguing that the prepetition claim pool differs from the post-petition claim pool. (*See* D.I. 45 at 3, 21-22). The TDP specifically accounts for those differences, however, through mitigating and aggravating factors and scalars to ensure that new claims are treated consistently with prior practices. (Bankr. D.I. 9454 at 207:15-209:12, 223:11-224:12; Bankr. D.I. 9455 at 33:2-5; *see also* Bankr. D.I. 9406 at 294:10-295:11 (Azer); D.I. 1-4, Ex. A., Art. VIII.C-D). Dr. Bates testified that because of the differences between the claims pools, the value of the average post-petition claim is estimated to be lower than the average prepetition claim. (Bankr. D.I. 9454 at 164:11-14; *id.* at 135:13-15; *id.* at 209:8-10 ("[M]ost of the claims will, to emulate the tort values, be scaled downward from the base matrix values…by design."). The Bankruptcy Court credited Dr. Bates's unrebutted opinion that the TDP will result in awards at lower average values, not inflated values:

> The result of [Dr. Bates's] thought experiment confirmed his view that the value of a Direct Abuse Claim, on average, will be less than the average value of Historical Abuse Claims although the aggregate of such claims could be significant…Dr. Bates' analysis was thorough and credible based on the data available. It was also undisputed….Based on the record and my assessment of Dr. Bates's credibility, there is no reason to disregard Dr. Bates's analysis and conclusions, which I accept for purposes of confirmation as his best estimate of the aggregate valuation of the Direct Abuse Claims.

*In re Boy Scouts of Am.*, 642 B.R. at 557.

The argument that the TDP inflates claim values was also refuted by Michael Burnett of Burnett Risk Control International, LLC, an expert who opined on the reasonableness of the TDP based on his experience evaluating and assessing sexual abuse claims in litigation for over 26 years. (Bankr. D.I. 9274 ¶ 5). Mr. Burnett has evaluated and valued thousands of abuse claims, including over 500 abuse claims in the last year alone, and testified that the TDP is reasonable. (Bankr. D.I. 9274 ¶ 6; Bankr. D.I. 9389 at 42:1-3 ("[M]y opinion is that the TDP mimic what you might get in the tort system and I believe that the TDPs are reasonable.")).

Certain Insurers introduced no evidence contradicting the testimony of these expert witnesses or to otherwise support their argument that future claim values will be inflated. While Certain Insurers retained an economist to rebut Dr. Bates, ultimately they "chose not to use their expert during the confirmation hearing to support their argument that the TDP produce over-inflated values." *In re Boy Scouts of Am.*, 642 B..R at 651. Accordingly, the Bankruptcy Court found the Insurers' position unsupported:

> The Certain Insurers could have chosen to put on their expert to challenge the Base Matrix Value or otherwise clear up any confusion, but they did not. This appears to be all optics. Any misperception, especially when the Certain Insurers chose not to challenge the Base Matrix value through their own expert, is not so egregious as to deny confirmation.

*Id.*; (Bankr. D.I. 9616 at 44:18-45:1).

### b. The Plan Does Not Require Insurers to Pay Future Inflated Awards

Certain Insurers argue that, "at the request of the Coalition [of Abused Scouts for Justice], BSA inserted a number of proposed plan provisions that, combined with the Claims Matrix, were intended to bind non-settling insurers in coverage litigation to inflated claim payments and deprive insurers of any means to challenge the Trustee's determinations." (D.I. 45 at 77). I find no support for the contention that the Plan requires Insurers to pay future inflated awards. Indeed, the Bankruptcy Court held that Certain Insurers would not necessarily be bound by the awards issued by the Settlement Trust: "the allowed amount of a claim does not necessarily correlate to what an insurer is 'obligated to pay' or what 'a loss' is under its insurance policy and 'a finding in the plan' does not equate the two." *In re Boy Scouts of Am.*, 642 B.R. at 632. Rather, a coverage court will determine whether awards are covered by any particular insurance policy to the extent that there is a dispute in the future about that matter:

> The Settlement Trust's rights under any insurance policies issued by Non-Settling Insurance Companies, including the effect of any failure to satisfy conditions

> precedent or obligations under such policies (other than, in the case of the BSA
> Insurance Policies, the terms of any policies or provisions of applicable law that
> are argued to prohibit the assignment or transfer of such rights), shall be
> determined under the law applicable to each such policy in subsequent litigation.

(D.I. 1-1 ¶ II.I.2(e)); *see also In re Boy Scouts of Am.*, 642 B.R. at 632 ("What insurers are

obligated to pay under their policies is an insurance coverage issue that is not before the court.");

*id.* at 656 ("I will not anticipate how an insurance coverage court will interpret the Plan, the TDP

or any confirmation order that may be entered."). Moreover, as discussed, I find no error in the

Bankruptcy Court's determination that the Plan explicitly preserves any defenses that the Certain

Insurers may have. Consequently, if Certain Insurers are correct in predicting that awards will

be inflated, they will be able to defend against coverage to the same extent they would have been

able to defend against coverage for a settlement made without a trust. Courts have recognized

that this is enough to protect insurers. *See In re W.R. Grace*, 446 B.R. at 132 ("[T]he mere fact

that the Trust pays a claim does not bind the non-settling insurer to reimburse the Trust. The

insurer retains its right to object to the claim against it if and when the Trust seeks to recover

from the insurer.").

### c.    No Evidence that the Plan Is Designed to Leverage Insurers

Certain Insurers repeatedly argue that the Plan is designed to create "hydraulic pressure

to settle," colorfully asserting that the Plan was designed to point "an 82,000 claim bazooka at

Insurers [to] create[] 'hydraulic pressure' to settle that serves no legitimate purpose." (*See* D.I.

45 at 6). As BSA points out (D.I. 66 at 66), this argument is based on the faulty premise that

Certain Insurers are bound by future awards.

There is no evidence that the Plan was intended to leverage the Certain Insurers to settle.

The record reflects that the Plan was designed to serve the legitimate purpose of compensating

survivors of childhood abuse in a cost-effective and expedited way, and to allow the Reorganized

BSA to continue its charitable mission of delivering Scouting. As BSA points out, it does not stand to reason that the settling parties formulated a record-breaking Settlement Trust, funded primarily by insurance companies, not for the purpose of fairly compensating Survivors, but rather to somehow leverage the remaining Insurers. Rather, the unrefuted evidence is that the TDP were designed to emulate, to the greatest extent practicable, the prepetition practices of the BSA and its insurance companies for investigating, evaluating, valuing, and resolving Direct Abuse Claims, while simultaneously preserving all of the rights of the Non-Settling Insurance Companies to dispute and litigate coverage issues with the Settlement Trust. (Bankr. D.I. 9309 ¶ 5; *see also* Bankr. D.I. 9406 at 292:17-293:11, 293:20).

### d.    No Support for Allegation that Debtors Failed to Negotiate

Certain Insurers allege that BSA "ceded the pen" on the TDP to Survivors, and never negotiated at all with Certain Insurers.[19]  Indeed, the Certain Insurers were successful in invading mediation privilege based on those allegations. *In re Boy Scouts of Am.*, 642 B.R. at 646 ("Because of their allegations of bad faith, I permitted insurers to take discovery into the mediation process with respect to the development of the TDP."). Certain Insurers further argue that the protections for the Insurers "were nearly always gutted or removed by the claimants'

---

[19] Following completion of appellate briefing, Certain Insurers filed the Motion to Supplement the Record (D.I. 123) which seeks to add to the record certain recent applications, filed by counsel to the Coalition, the Pfau/Zalkin claimants, and RCAHC, which seek Bankruptcy Court allowance of their professional fees on the basis that they have made "substantial contributions" to BSA's chapter 11 cases. These applications contain time entries and assertions of work undertaken by counsel which, Certain Insurers argue, support Certain Insurers' contentions that the Plan was not proposed in good faith—*e.g.*, that the Plan is a result of a "claimant-driven process," and that, as a result of the attorneys' work, "Survivors will receive enhanced compensation." BSA argues that Certain Insurers should not be permitted to reopen the record on appeal to introduce more than three thousand pages of hearsay material that is not part of the trial record. (*See* D.I. 128 at 6). I agree with BSA that admitting untested statements, that are not part of the trial record, after briefing has been completed, would be unfair to Appellees and not helpful to the Court. Accordingly, the Motion to Supplement the Record is denied.

136

A00177

attorneys . . . [a]nd BSA allowed it to happen." (D.I. 45 at 40). I find no support for these contentions.

The record reflects that BSA's attorney, Mr. Azer, was a lead drafter of the TDP, and he testified that BSA had the pen, not the Survivors, and that he never gave up control of the documents to the Survivors or to anyone else. (Bankr. D.I. 9309 ¶ 7). "Q: And had the debtors ceded control of the plan process to the coalition, Tort Claimants' Committee, and FCR? Azer: No, absolutely not . . . Like I said throughout my testimony, we were playing it straight down the fairway, trying to protect everyone's rights, including insurers' contractual rights." (Bankr. D.I. 9406 at 298:11-21 (Azer)). Indeed, Mr. Azer testified that the Survivors had no input into the initial draft, that BSA rejected the survivor model, and that he and other counsel drafted the initial TDP based on a model provided by an insurer. Mr. Azer's testimony was supported by the contemporaneous records. (Bankr. D.I. 9406 at 37:20-48:14; Bankr. D.I. 9309 ¶¶ 14-23; A11673; A11696; *see also* SA 2146, SA 2176, SA 2196, SA 2197, SA 2246, SA 2267; Bankr. D.I. 9406 at 37:20-38:1; D.I. 1-3 at 214). The record reflects that BSA also relied on other mass tort bankruptcy trust distribution procedures. (Bankr. D.I. 9406 at 39:13-24).

With those templates as a starting point, BSA created TDPs with the goal of emulating, to the greatest extent practical, BSA's prepetition practices for resolving sexual abuse claims. (Bankr. D.I. 9309 ¶¶ 5, 9, 42-44; Bankr. D.I. 9406 at 73:5-9). To that end, Mr. Azer consulted with Mr. Griggs who provided the extensive, real-world background that informed (a) the criteria for determining claim validity, and (b) the types of aggravating and mitigating factors considered by the BSA in resolving abuse claims on a prepetition basis. (Bankr. D.I. 9309 ¶¶ 9, 10; Bankr. D.I. 9273 ¶¶ 49-50). "The Debtors exercised good faith throughout the whole process, taking into consideration both the interests of the Direct Abuse Claimants and the Non-Settling Insurance Companies. The BSA never ceded control of the TDP . . . to any other party (be it a

137

A00178

claimant constituency or an insurance company) or colluded with any third party to prejudice the rights of another." (Bankr. D.I. 9309 ¶ 7). Mr. Azer's testimony was not refuted. Indeed, the record reflects that the Certain Insurers did not cross-examine him at trial on this issue.

BSA also relied on its expert consultant, Bates White, economists with expertise on TDPs and claim valuation, to identify base claim values, as well as the amount of the aggravating scaling factors and mitigating scaling factors, that would produce results consistent with the BSA's prepetition practices. (Bankr. D.I. 9309 ¶ 12). The record supports that the Bates White team developed the Claims Matrix based on the BSA's data for prepetition claims resolutions and comprehensive statistical modeling and analyses. (Bankr. D.I. 9454 at 201:10- 230:5). "Dr. Charles Bates, chairman of Bates White LLC and Debtors' retained expert was qualified without objection as an expert in claim valuation, mass tort matrixes and trust distribution procedures. He spent eight hours on the stand." *In re Boy Scouts of Am.*, 642 B.R. at 553. "Dr. Bates's analysis was thorough and credible based on data available. It was also undisputed. No other expert testified on the aggregate valuation of the Direct Abuse Claims." *Id.* at 558. The Bankruptcy Court found:

> Based on the record and my assessment of Dr. Bates's credibility, there is no reason to disregard Dr. Bates's analysis and conclusions, which I accept for the purposes of confirmation as his best estimate of the aggregate valuation of the Direct Abuse Claims. Accordingly, I conclude based on the record of evidence presented and the information known to date regarding the Direct Abuse Claims, that the aggregate valuation of the Direct Abuse Claims is most likely between $2.4 billion and $3.6 billion.

*Id.* at 65-66.

The evidence demonstrates that BSA protected the interests of Certain Insurers, even though they were not settling. (Bankr. D.I. 9309 ¶ 26; Bankr. D.I. 9406 at 40:18-42:19). The written contemporaneous record demonstrates that Mr. Azer negotiated against the Coalition, persistently including protections for the Insurers after they had been stricken by the Coalition.

138

Mr. Azer "in minute detail" walked the Bankruptcy Court through multiple versions of negotiated TDP drafts, demonstrating how and where the BSA protected any existing rights of the Insurers. *In re Boy Scouts of Am.*, 642 B.R. at 646-47. After numerous exchanges of drafts over several months, the parties agreed the Plan should provide that none of the Insurers' rights or obligations were being modified, and preserving any coverage defenses they had. (Bankr. D.I. 9309 ¶¶ 27-41). The Plan proves that those protections demanded by BSA, and repeatedly rejected by the Coalition, are included. Although there were drafts that repeated the same Insurer protection language in multiple provisions, the record supports a finding that those protections were ultimately consolidated because repetition added nothing and "the broad general protections in Article V.C would be clearer, less ambiguous, and protected the interests of Non-Settling Insurance Companies." (Bankr. D.I. 9406 at 149:14-25). The Bankruptcy Court correctly found that consolidating the protections into one provision, rather than including them in several provisions, was a matter of "drafting conventions". *In re Boy Scouts of Am.*, 642 B.R. at 648.

Finally, Certain Insurers' argument that BSA was incentivized to buy votes from Survivors by settling on certain issues is unsupported by evidence. (D.I. 45 at 2, 88-89). The fact that BSA negotiated a settlement with Survivors, however, demonstrates good faith, not bad faith. Negotiations for plan support do not prove, or remotely support, bad faith. Debtors negotiate with creditors in every case and need creditors' support for a consensual plan of reorganization. As the Bankruptcy Court noted, "Debtors are supposed to negotiate plans, as are official committees (i.e., the [Tort Claimants' Committee]). Other constituencies are often involved." *In re Boy Scouts of Am.*, 642 B.R. at 626. BSA could not dictate the terms of an agreement with Survivors, so BSA negotiated in mediation with stakeholders who were willing to engage. (Bankr. D.I. 9309 ¶ 20). Mr. Azer testified, "The insurers were not willing to engage

139

A00180

constructively to seek a mutually agreeable resolution with any sort of creditor support." (*Id.* ¶ 47). "They did not provide input into the [TDP] . . . . [I]nsurers basically refused to provide comments. They threatened us with kind of multi-year litigation if we proceeded." (Bankr. D.I. 9406 at 47:11-15).

### e.     Allegations of Collusion Are Unsupported

Certain Insurers introduced no evidence to support their allegations of collusion.

The Bankruptcy Court noted:

> Because of their allegations of bad faith, I permitted insurers to take discovery
> into the mediation process with respect to the development of the TDP. In their
> confirmation objection, the Certain Insurers represent that "the results of that
> discovery were damning." I disagree. The record developed at trial shows that
> Mr. Azer, Debtors' insurance counsel, penned the initial draft of the TDP . . . .
> Thereafter Mr. Azer never gave up the pen. Mr. Azer testified that Debtors had
> an interest in the TDP because they needed a confirmable plan and that they spent
> significant time negotiating protections for the insurers' contractual rights.

*In re Boy Scouts of Am.*, 642 B.R. at 646. And,

> Based on this record, I cannot find that Debtors colluded with the Coalition or
> other plaintiff representatives to intentionally deprive insurers of their rights. I
> cannot find that Debtors abdicated their responsibility to negotiate a plan or
> proceeded in bad faith. . . . The Certain Insurers' arguments that Debtors colluded
> with the Coalition, rather than negotiated with the Coalition, is wholly
> unsupported by the record.

*Id.* at 648. These findings are not clearly erroneous.

### f.     Remaining Allegations Do Not Demonstrate Lack of Good Faith

***Explosion of claims.*** Certain Insurers argue that the Bankruptcy Court committed clear error in finding that the Plan was proposed in good faith where there has been "an explosion of claims" and the "tens of thousands of meritless or questionable claims was never addressed in this plan." (D.I. 45 at 72). "Rather than seek disallowance of such claims, or propose a plan

140

A00181

that fairly accounted for its actual liability, BSA baked that lack of good faith *into its plan*." (*Id.* at 61).

The proofs of claim were filed by November 16, 2020, long before the Plan was proposed, so it is unclear how the filing of claims factors into an analysis of whether the Plan was proposed in good faith. Certain Insurers cannot impute to BSA the conduct of the plaintiffs' attorneys in soliciting clients. And BSA took certain steps to mitigate the potential for fraud. The record reflects that BSA sought to supplement the Bar Date Order to prevent "what Debtors deemed to be false and misleading statements." *In re Boy Scouts of Am.,* 642 B.R. at 534; (Bankr. D.I. 1145 ¶ 42). As a result of these efforts, the Bankruptcy Court entered the Supplemental Bar Date Order prohibiting the plaintiffs' bar from "continuing to make statements (i) suggesting that abuse claimants may remain anonymous, (ii) indicating a specific value of any potential compensation trust, and (iii) suggesting that abuse claimants will never have to be deposed, appear in court or otherwise prove their claims." *In re Boy Scouts of Am.,* 642 B.R. at 534; (Bankr. D.I. 1331 ¶ 10.A).

Certain Insurers introduced no evidence that any of the claims were invalid. Certain Insurers cite the fact that there were 1,700 abuse claims filed prepetition, and then 82,209 filed post-petition (D.I. 45 at 72-73), but the fact that a bankruptcy proceeding—which will result in a discharge of BSA's liability—attracted the attention of the plaintiffs' bar and Survivors does not prove that the claims are invalid (or provide any ground to not account for them in a plan of reorganization). Certain Insurers had access to all 82,209 proofs of claims and did not challenge a single one. Certain Insurers did introduce evidence about certain group filings at the deadline, but an attorney's effort to preserve claims before they expire does not prove fraud. (*See* Bankr. D.I. 9517 at 221:15-224:21 (explaining that proof of claim forms were submitted, and sometimes

141

A00182

signed on behalf of claimants, at or near the bar date "to protect them from a Draconian bar date in a pandemic" and "avoid the Draconian consequences of missing the bar date")).

Certain Insurers further assert that the "claimants' own expert recognized [that] a significant portion [of claims] are likely fraudulent." (D.I. 45 at 2). They cite to a statement made by a witness who was not retained or qualified as an expert to evaluate the prevalence of fraud in the claim pool, and who did not evaluate the claim pool. (*See* Bankr. D.I. 9517 at 197:17-24 (proffering Dr. Conte as an expert witness to opine on the characteristics of the allegations, survivor profiles, and legal issues presented by the proofs of claim, but not to evaluate the claim pool for instances of fraud)). Dr. Conte said during a deposition that his reaction was that, given the number of claims, "a significant portion of that 80,000 . . . are probably not real claims," without defining what would constitute a significant portion or providing any data or analysis to support his belief, much less a report. (Bankr. D.I. 9517 at 202:20-22). *See Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*, 2019 WL 4198194, at *7 (D. Del. Sept. 4, 2019) (excluding opinion that contains "no actual analysis"). But the number of claims alone does not indicate fraud, as BSA has served more than 130 million Americans since its inception (Bankr. D.I. 16 ¶ 6), and Dr. Conte's testimony indicates no awareness of that total or whether the number of claims—representing 0.06% of the population—was unreasonably large given the total population. In contrast, Dr. Bates comprehensively analyzed the difference between pre-petition and post-petition claim numbers and concluded that the increase of claims post-petition was a result of Survivors' privacy concerns and economic considerations of Survivors and their attorneys. (*See* Bankr. D.I. 9454 at 142:9-146:8). That is, Survivors who were unwilling to engage in costly and public litigation in the tort system came forward in the bankruptcy proceeding to file claims when presented the opportunity to do so through the confidential proof of claim process. (*Id.*) Certain Insurers also cite an analysis by BSA's data

142

management expert that 90% of claimants never reported abuse to Scouting or law enforcement. (D.I. 45 at 22). The fact that children that were abused decades ago did not report, or frequently even understand, abuse does not remotely support the Insurers' argument that "tens of thousands" of the claims are fraudulent. This testimony does not call into question any of the Bankruptcy Court's findings or demonstrate a lack of good faith.

Certain Insurers further argue that the possibility of invalid claims "was never addressed in this Plan." (D.I. 45 at 72). First, the Plan includes numerous provisions for assessing the validity of claims and one of the founding principles of the TDP is the "prevention and detection of any fraud." (D.I. 1-4, Ex. A, Art. I.B.5). For example, the signature page on the proof of claim form requires a signature under penalty of perjury, and contains warnings of substantial consequences for submitting false claims:

> **"Penalty for presenting fraudulent claim has a fine of up to $500,000 or imprisonment of up to five years or both. 18 U.S.C. §§ 152, 157, 2571."**

> **"I have examined the information in the sexual abuse survivor proof of claim and have a reasonable belief that the information is true and correct."**

> **"I declare under penalty of perjury that the foregoing statements are true and correct."**

(A 11596). Moreover, the Bankruptcy Court directed that the Confirmation Order require the Settlement Trustee to "propose procedures to suss out fraudulent claims taking into account factors she deems appropriate, which can include a cost/benefit analysis. Those procedures will be presented to the court. . . . In addition to disallowance of a claim, penalties may include seeking the prosecution of the claimant or claimant's attorney for presenting a fraudulent claim in violation of 18 U.S.C. § 152 and seeking sanctions from the court." *In re Boy Scouts of Am.*, 642 B.R. at 645.

No settlement trust (or litigation) is immune from efforts by unscrupulous people to commit fraud. The Plan includes procedures for denying such claims. That an unscrupulous person might pursue a fraudulent claim does not support an argument that BSA lacked good faith in proposing the plan. Mass tort settlements administered by trusts like the one at issue here are commonplace. *See In re Maremont Corp.*, 601 B.R. 1, 20-21 (Bankr. D. Del. 2019); *In re W.R. Grace & Co.*, 446 B.R. 96, 132 (Bankr. D. Del. 2011) ("The Trustees have a fiduciary duty to ensure that only valid claims are paid. No evidence was proffered to suggest, let alone prove, that Trustee will violate that duty."), *aff'd*, 729 F.3d 311 (3d Cir. 2013).

Certain Insurers' argument that the recovery for bona fide claimants will be reduced by invalid claims is again based on their faulty premise that significant numbers of invalid claims will be provided awards.[20] (D.I. 45 at 74). Certain Insurers further criticize BSA for not seeking to disallow claims, but they cite no authority for the proposition that a debtor should seek to disallow claims, rather than having claims assessed through the TDP, much less that a decision to do so could constitute bad faith. I agree it would have made no sense for BSA to attempt to investigate 82,209 claims in a disallowance proceeding, only to transfer the remaining claims to a Trust for adjudication. This would defeat the purpose and the efficiencies of the TDP.

Finally, Certain Insurers argue that, but for the BSA's bankruptcy proceedings, the "explosion of claims" would not have occurred. (D.I. 45 at 20). Common sense applied to the record in this case suggests that is true, but it does not follow at all that the "explosion" is of invalid claims. The reasons for the "explosion" are unexplained. There is no accounting for the Bar Date, which required all claimants to assert their claims or forever lose them. As the Bankruptcy Court found, the "explosion" of claims "could be a consequence of a bankruptcy

---

[20] No fraud-detection system is foolproof. The reasonable possibility that some fraudulent claimants will escape detection and be paid does not begin to establish lack of good faith.

144

filing and a bar date and an open statute of limitations and the advertising that went on." (*See* Bankr. D.I. 9638 at 191:10-17).

> A debtor's ability to obtain a good faith finding necessary for confirmation certainly cannot turn on the number of claims filed, whether plaintiff lawyers advertised for clients or whether plaintiff lawyers filed claims in derogation of applicable rules. The remedy for inappropriate behavior, if any, rests with state supreme courts and/or disciplinary counsel around the country, any appropriate remedy in this court for persons who failed to perform appropriate diligence before signing proofs of claim and appropriate procedures in the TDP to ferret out any fraudulent claims. Denying confirmation, however, is not an appropriate or proportional remedy.

*In re Boy Scouts of Am.*, 642 B.R. at 652.

    ***Payment of claims subject to statutes of limitations.*** Certain Insurers argue that the Bankruptcy Court should have found that the Plan was not proposed in good faith because the Settlement Trust will pay claims that are subject to a statute of limitations defense, inconsistent with prepetition practices. (D.I. 45 at 28, 38). They rely on the testimony of Ms. Bitar who opined that a Survivor in the tort system "would get nothing" on a time-barred claim, but under the TDP "would get $300,000." (D.I. 45 at 33). First, Ms. Bitar's statement that a Survivor "would get $300,000" in the Settlement Trust is not supported by the terms of the TDP. (Bankr. D.I. 9563 at 52:6-8). In reaching this conclusion, Ms. Bitar took a Base Value and applied a statute of limitations discount. (Bankr. D.I. 9563 at 50:18- 52:8, 122:4-15). But under the TDP, the Settlement Trustee must apply numerous mitigating and aggravating factors to ascertain the value of a claim, so the TDP is not formulated to result in awards equal to the Base Matrix Value number. *In re Boy Scouts of Am.*, 642 B.R. at 651 ("Dr. Bates's testimony was clear: the Base Matrix Values in the TDP are a starting point, not an ending point. In his words, the Base Matrix Values are not 'magic number[s]'; rather, any number could be used . . . one would simply have to modify the Scaling Factors appropriately.")

Second, Ms. Bitar's statement that a Survivor in the tort system "would get nothing" on a time-barred claim is not supported by her experience, as she has never represented BSA or settled an abuse claim. (B.D.I. 9563 at 72:4-73:2). More importantly, her statement is contradicted by evidence demonstrating that claims subject to statute of limitations defenses were sometimes paid prepetition by BSA and its insurers. The testimony at trial established that States consistently revive abuse claims, and that "courts are reluctant to grant dispositive motions on a statute of limitations basis, particularly for something like childhood sexual abuse. Indeed, many of the states that had potentially applicable statutes of limitations also included exceptions (such as discovery exceptions) that would effectively negate a dispositive motion on a statute of limitations defense." (Bankr. D.I. 9273 ¶ 24). Mr. Griggs testified that BSA often settled claims with a statute of limitations defense, even if it was likely to prevail on the defense, and insurers often approved those settlements. (*Id.* ¶¶ 22-26). BSA also paid claims after prevailing on its defense "rather than face the cost and risk of an appeal." (*Id.* ¶ 26). Large settlements paid by BSA and its insurers also arose out of claims where BSA believed it had a viable statute of limitations defense. (*Id.* ¶ 24). Nonetheless, Dr. Bates and his team formulated a Claims Matrix that includes different discounts for statute of limitations defenses based on the strength of the relevant State's statute.

Certain Insurers complain that the statute of limitations defense is a mitigating factor, rather than part of the General Criteria for allowance, but Mr. Griggs testified that the availability of a potential statute of limitations defense was considered a mitigating factor prepetition also, and not a requirement for payment. (D.I. 9273 ¶ 24). The Bankruptcy Court credited Mr. Griggs' unrefuted evidence: "During the trial there was much discussion about the statute of limitations defense. As Mr. Griggs testified, his experience is that even in states with

146

A00187

closed statutes of limitations, courts are hesitant to dismiss on statute of limitations grounds." *In re Boy Scouts of Am.*, 642 B.R. at 634 n.566 (citation omitted).  It further noted:

> There is no 'law' that prevents a defendant (or putative defendant) from settling with or paying a claim made by a personal injury claimant whose claim may be time-barred.  Indeed, the uncontroverted testimony of Mr. Griggs is that prepetition BSA was not often successful in asserting statute of limitations defenses even in states where the defense was viable, and that even when BSA prevailed on a statute of limitations defense it still might subsequently settle the claim.

*Id.* at 658.  Consequently, the Bankruptcy Court did not find "that this result means the Plan was not proposed in good faith." *Id.* at 658.

I find no support for Certain Insurers' assertion that claims subject to statute of limitations defenses would receive nothing outside the Settlement Trust or that the potential availability of the defense should be part of the General Criteria, not a mitigating factor.

***TDP criteria for legal responsibility.***  Certain Insurers argue that "BSA's negligence is not a prerequisite for liability as it would be in the tort system. . . ." and that this supports a lack of good faith.  (D.I. 45 at 28).  But the record reflects that, under the TDP, the Settlement Trustee will consider evidence of "legal responsibility," rather than negligence, because claims other than negligence had been brought on a prepetition basis.  Consequently, the TDP needed to address the potential liability of a Protected Party for all claims, not merely for negligence claims.  (Bankr. D.I. 9309 ¶¶ 50-51; Bankr. D.I. 9406 at 217:20-23 (Azer) ("I think we wanted to encompass all the causes of action, right, so we wanted to make sure we were encompassing everything that could be out there, and this is the reason we used that language.")).

Certain Insurers further contend that the TDP are unfair because they treat negligence only as an aggravating factor that is multiplied against the Base Matrix Value to increase the claim's value.  (D.I. 45 at 28).  Testimony established, however, that "the showing of negligence was subsumed by the General Criteria." (Bankr. D.I. 9309 ¶ 50; *see also* Bankr. D.I. 9273 ¶ 59

("Based on my work as [National Coordinating Counsel], if an underlying plaintiff could

establish, by a preponderance of the evidence, each of the General Criteria, I would have

considered that a claim that should be settled because the claimant likely would be able to show

negligence by the BSA, Local Council, and/or Chartered Organization.")). Moreover, the

evidence supports a finding that the General Criteria is consistent with BSA's prepetition

practices. Specifically, if all the General Criteria was met prepetition, then BSA viewed that as a

sufficient basis to establish negligence and to pay the claim. (Bankr. D.I. 9273 ¶ 59). While

there is a reference to negligence in the "aggravating factors" of the TDP, the unrebutted

testimony is that BSA meant for this to address the issue of notice, rather than legal liability,

which is subsumed by the General Criteria of the TDP. (Bankr. D.I. 9406 at 41:15-22 (Azer)

("[W]e actually had a reference to negligence . . . [I]f the BSA had notice, then it was meant to

allow for an increased dollar value, and I guess the insurers were confused by that. And so,

again, we modified that language to try to make clear our intent in the aggravating factors.").

The testimony further established that treating the degree of notice as an aggravating factor was

consistent with BSA's prepetition practices. (Bankr. D.I. 9273 ¶ 41). In any case, BSA

subsequently revised the TDP after the confirmation hearing to expressly require that "a

Protected Party may be negligent or may otherwise bear legal responsibility" in the final version

of the TDP. (D.I. 1-4, Ex. A, Art. VII.C.2(c).

*Prior versions of the Plan.* Certain Insurers next argue that the Plan was not proposed in

good faith based on certain insurance-related terms that were included in a prior plan. BSA

proposed a plan in February 2022 that included certain insurance-related terms opposed by the

Insurers. (*See* Bankr. D.I. 8813 Art. IX.A.3.w-aa). The Bankruptcy Court declined to approve

certain of those terms. Section 1127(a) provides a debtor with the right to modify its plan, and

then it is that modified plan that needs to satisfy the confirmation requirements, not a prior plan:

148

A00189

"The proponent of a plan may modify such plan at any time before confirmation . . . . After the proponent of the plan files a modification of such plan with the court, the plan that is modified becomes the plan." 11 U.S.C. § 1127(a). Altering plan provisions before and after confirmation is consistent with bankruptcy precedent and procedure. In August 2022, BSA modified the prior plan to comply with the Confirmation Opinion, listed those changes in a plan addendum, and filed a corresponding proposed order confirming the Plan. (*See* Bankr. D.I. 10188, Exs. A, B, Bankr. D.I. 10190). The Bankruptcy Court ultimately confirmed the Plan over the Certain Insurers' objection in September 2022. Certain Insurers cannot challenge the Plan based on terms that are not in it, much less demonstrate that the Bankruptcy Court committed clear error by not making certain factual findings based on terms that BSA did not propose in the confirmed Plan.

Certain Insurers argue that an earlier proposal to retain Professor Eric Green as the trustee supports their argument that the Plan was not proposed in good faith. (D.I. 45 at 34-35, 71-72). The Plan did not propose Professor Green, nor did the prior version, but rather proposed Judge Houser, someone everyone agrees is an "eminently qualified, retired, neutral Federal Judge[]." (Bankr. D.I. 9389 at 50:13-15; D.I. 1-3 at 211 ("[N]o one questions the integrity of the proposed Settlement Trustee."). As addressed above, a challenge directed to a proposal that was not included in the Plan presented for confirmation, and that is not included in the confirmed Plan, is irrelevant. Arguing that BSA engaged in bad faith by initially proposing the appointment of a well-regarded mediator, and then changing the proposal in response to objections by the Insurers, demonstrates the weakness of the "good faith" aspect of the appeals.

***Claim resolution process differs from the tort system***. Certain Insurers repeatedly assert that the Settlement Trust resolution process is different from the tort system. That is correct and does not evidence any lack of good faith. The record supports that the TDP is designed to

149

replicate tort system resolutions in an expedited and cost-effective fashion, as opposed to years-long litigation, which BSA cannot survive. Mass tort settlements establishing an adjudication procedure, or trust distribution procedures, instead of litigation, are commonplace. *See, e.g., In re W.R. Grace*, 446 B.R. 96. As addressed above, the TDP here was fashioned in part on other mass tort resolutions in bankruptcy.

   ***Insurance neutrality in not required by the Bankruptcy Code.*** Certain Insurers assert that the Bankruptcy Court "erroneously declined to engage with the [P]lan's real-world impact because the court believed 'insurance neutrality' is merely a 'standing concept.'" (D.I. 45 at 77). There is no confirmation requirement that a chapter 11 plan be "insurance neutral." *In re Boy Scouts of Am.*, 642 B.R. at 648 (citing *Purdue Pharma*, 633 B.R. at 63 ("[T]here is no requirement that a Chapter 11 plan be 'insurance neutral' in any respect.")).

   Certain Insurers cite *In re Global Industrial Technologies*, 645 F.3d 201, 207-08 (3d Cir. 2011), and *Combustion Engineering*, 391 F.3d at 218, but the Bankruptcy Court correctly found that neither case held that a plan had to be insurance neutral. *In re Boy Scouts of Am.*, 642 B.R. at 667. These cases held that the insurers there had standing to raise challenges to the plan. *Id.* ("[I]f a plan is not 'insurance neutral,' insurance companies have standing (at either the bankruptcy or the appellate level, as applicable) to be heard."). Finally, the Bankruptcy Court did address the real-life impact of the Plan by preserving the Insurers' defenses and ruling that, to the extent a dispute arises in the future, a court with jurisdiction over the matter will determine the dispute based on the then-existing facts. *See id.* at 656.

   ***Case law does not support lack of good faith here.*** The cases cited by Certain Insurers in support of their argument that the Plan was not proposed in good faith do not advance their cause. The appellate cases either do not address good faith or affirm a bankruptcy court's finding of bad faith, the exact opposite of what occurred here. For example, Certain Insurers cite

*In re SGL Carbon*, 200 F.3d 154 (3d Cir. 1999), which did not address confirmation issues. That case dismissed the bankruptcy petition because the debtor was "a financially healthy company" and the "Chapter 11 lacks a valid reorganization purpose . . . " *Id.* at 156, 166 (finding courts have "consistently dismissed Chapter 11 petitions filed by financially healthy companies with no need to reorganize under the protection of Chapter 11."). No one claims BSA was financially healthy when it filed its Petition.

Certain Insurers cite *Global Industrial Technologies*, but that court did not rule on good faith. It merely found that the bankruptcy court erred in holding that the insurers had no standing to object to a plan where their policies were being transferred to a trust, and where the insurers had submitted substantial evidence that 91.5% of the claims were not legitimate. *In re Glob. Indus. Techs.*, 645 F.3d at 207-08. The bankruptcy court in that case found that there was record evidence that "[the debtors] had sold out [the insurers] by setting up a system in which they would pay for newly ginned-up silica claims in exchange for asbestos claimants casting their votes in favor of the [plan]." *Id.* at 214. Indeed, the debtors obtained a list of silica claimants from another company's bankruptcy and then solicited those claims to gain confirmation votes, causing the "explosion of silica claims." *Id.* Although the bankruptcy court had considered some of the insurers' contentions, the Third Circuit remanded to ensure that the insurers had the opportunity to make a full record: "We accept the logical position that a party, granted standing and a full opportunity to participate, may add something meaningful to the record on which the bankruptcy court is called to make a decision." *Id.* at 215 n.33.

Here, Insurers were full participants at trial, but they introduced no evidence of collusion or that any claims were fraudulent—the opposite of what happened in *Global Industrial*. Moreover, the Bankruptcy Court found that the BSA did not collude with the Survivors' counsel based on a careful review of the record. Certain Insurers introduced no evidence to the contrary,

relying primarily on an argument that the BSA was incentivized to collude. (D.I. 45 at 66-67).

The argument was specifically rejected by the Third Circuit in *Federal-Mogul*:

> Insurers also allege the trust mechanism might distort ordinary incentives between insurer and insured, encouraging the Debtor to collude with claimants and impose costs on the insurer. But as Federal-Mogul points out, this shift in incentives is not unique to the asbestos context and occurs in bankruptcy where there is a discharge of the liability of the debtor but not that of the insurer.... Nor did the Insurers provide any evidence of such collusion in this case. Such bare speculation does not establish an increase in risk.

*In re Fed.-Mogul*, 684 F.3d at 380.

The bankruptcy cases relied upon by Certain Insurers present egregious facts not present here.

The bankruptcy court *In re ACandS* determined that the plan was not proposed in good faith because the trust structure was unfair to claimants and dictated by plaintiffs' attorneys that favored their clients over other claimants. *In re ACandS, Inc.*, 311 B.R. 36, 43 (Bankr. D. Del. 2004). Specifically, the conflicted controllers provided a different treatment for the exact same claims, so that their clients would be paid in full even if they were merely exposed to asbestos and were not sick, while someone they did not represent, with the most serious disease, mesothelioma, could get nothing: "[I]t is fundamentally unfair that one claimant with non-symptomatic plural plaques would be paid in full, but while someone with mesothelioma runs a substantial risk of receiving nothing. Both should be compensated based on the nature of their injuries, not based on the influence and cunning of their lawyers." *Id.* at 40, 43.

The bankruptcy court *In re Coram Healthcare* made a factual finding that the plan was not proposed in good faith because the debtors' CEO and president had an actual conflict of interest when entering into an agreement with the debtors' largest creditor, requiring that he take the creditors' instructions. *In re Coram Healthcare*, 271 B.R. 228, 234-35 (Bankr. D. Del. 2001). His annual fee of $1 million was substantially more than the executive's salary from the

debtor, the executive breached his fiduciary duties, and the conflict caused "insidious effects," including the debtors' decision to provide the creditor with $6.3 million interest payment, "with no legal obligation" to do so, harming the debtors' liquidity at a time that they needed cash to achieve "operational advantages, as well as an enhanced negotiating position vis-à-vis its creditors." *Id.* at 236. Neither the executive nor the creditor disclosed the arrangement, until it was uncovered in discovery, and the bankruptcy court found the executive's testimony "unconvincing." *Id.* at 239.

Last, the bankruptcy court in *American Capital Equipment* considered a plan structure materially different from BSA's Plan and determined it was not proposed in good faith. The bankruptcy in that case did not involve tort liability, the debtors did not contribute to the fund, (and would take from the fund), tort claimants were the sole source of funding, funds were designated to pay off only creditors and insurers (rather than tort claimants), and there was an "inherent conflict of interest" as the plan stripped insurers of "procedural and substantive rights without the protections of Section 524(g)." *In re Am. Capital Equipment*, 688 F.3d at 159-60. The Third Circuit held that the "inherent conflict of interest" was "especially concerning" because the debtors were financially incentivized to sabotage their own defense due to a kickback mechanism. *Id.* at 158-60 ("[Debtor] is required to cooperate in its defense, but will be incentivized to do otherwise."). Unlike the debtor in that case, BSA has no conflict of interest, has meaningfully contributed to the Settlement Trust, and has not established a surcharge mechanism at the claimants' expense for the BSA's own gain.

*__The Tort Claimants' Committee/Abuse Survivor Settlement.__* Finally, Certain Insurers argue that the Tort Claimants' Committee/Abuse Survivor Settlement, which provides an Independent Review Option and uncapped recoveries against Non-Settling Insurance Companies, supports its argument that the Plan was not proposed in good faith. A goal of the

153

A00194

TDP was to reflect the BSA's prepetition settlement practices, and the record reflects that BSA and its insurers sometimes paid sexual abuse claims in excess of the $2.7 million maximum cap applicable to a Trust Claim Submission. (Bankr. D.I. 9309 ¶¶ 55-56; Bankr. D.I. 9454 at 237:12-18 (Bates)). The Independent Review Option was intended to address the fact that an earlier version of the TDP that did not provide a pathway for recoveries in excess of $2.7 million for particularly egregious cases. Therefore, the addition of the Independent Review Option is consistent with BSA's prepetition practices. (Bankr. D.I. 9454 237:12-18 (Bates); Bankr. D.I. 9454 at 98:14-99:1 (Bates) ("[The Independent Review Option] [b]asically remov[es] . . . a windfall that the excess insurers had obtained in the original draft of the [TDP]."); *id.* at 235:16-23 (Bates) ("The excess insurers ... pay more, but ... only to the extent that they got a windfall from the original [TDP], which capped itself at [$]2.7 [million]. So, they aren't actually made worse off, relative to what the policies are worth.")). The inclusion of this provision does not demonstrate a lack of good faith. Certain Insurers are not entitled to capped recoveries. Outside of the Settlement Trust, Survivors are able to, and did, pursue claims with uncapped recoveries. (Bankr. D.I. 9273 ¶ 63). Prepetition, BSA paid claims substantially in excess of $2.7 million for egregious cases. (Bankr. D.I. 9273 ¶ 63). If awards under the Independent Review Option are unreasonable, Certain Insurers retain their coverage defenses.

*Other*. I previously rejected Certain Insurers' argument that the Plan's transfer of rights under insurance policies abrogates their contractual rights, which constituted an independent ground for Certain Insurers' challenge to the Bankruptcy Court's good faith determination.

*Summation*. Having considered "the objective factors" highlighted by Certain Insurers—"the plan itself and the process," including whether it resulted from "fundamental fairness in dealing with the creditors," achieved "fundamental fairness and justice," "discouraged debtor misconduct," and "whether the debtor has sought to step outside the equitable limitations

154

A00195

of Chapter 11" (*see* D.I. 144, 2/9/2023 Hr'g Tr. at 15:1-17; *Exide*, 2021 WL 3145612, at *11), I find no support for Certain Insurers' allegations of BSA's collusion, failure to negotiate, or the Plan's inflation of claims at the expense of Certain Insurers' rights and defenses. I further find no evidence demonstrating clear error in the factual findings underlying the Bankruptcy Court's good faith determination. To the extent the Bankruptcy Court's good faith determination is not merely a finding of fact but an "ultimate fact," *In re LTL Management,* 58 F.4th at 753, upon *de novo* review of "the culminating determination of whether th[e underlying] facts support[ed] a conclusion of good faith," I find no error in the Bankruptcy Court's determination based on its detailed analysis of objections and ample support in the record.

## VII.    CONCLUSION

I have endeavored to address all developed arguments raised in these appeals. To the extent not addressed herein, any remaining arguments are rejected. I will therefore affirm the Confirmation Order.

A separate order will be entered.

A00196

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: BOY SCOUTS OF AMERICA and DELAWARE BSA, LLC, | : : : | Chapter 11<br>Case No. 20-10343-LSS<br>(Jointly Administered) |
| Debtors. | : : | |
| _____ | : : | |
| NATIONAL UNION FIRE INSURANCE, COMPANY OF PITTSBURGH, PA, *et al*, | : : : | Civ. No. 22-1237-RGA<br>(Lead Case) |
| Appellants, | : : | Civ. Nos. 22-1238-RGA, 22-1239-RGA, 22-1240-RGA, |
| v. | : | 22-1241-RGA, 22-1242-RGA, |
| BOY SCOUTS OF AMERICA and DELAWARE BSA, LLC, *et al.*, | : : | 22-1243-RGA, 22-1244-RGA,<br>22-1245-RGA, 22-1246-RGA,<br>22-1247-RGA, 22-1249-RGA, |
| | : : | 22-1250-RGA, 22-1251-RGA, |
| Appellees. | : : | 22-1252-RGA, 22-1258-RGA,<br>& 22-1263-RGA (Consolidated) |

## ORDER

For the reasons set forth in the accompanying Opinion, it is hereby ORDERED:

1. The Motion to Supplement the Record (D.I. 123) is hereby DENIED.

2. The Supplemental Findings of Fact and Conclusions of Law, dated September 8, 2022 (D.I. 1-1) ("Confirmation Order"), is hereby AFFIRMED.

3. The Clerk is directed to CLOSE lead case Civ. No. 22-1237-RGA along with the consolidated cases.

Entered this 27ᵗʰ day of March, 2023.

_Richard G. Andrews_
United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>Debtors. | Chapter 11<br><br>Bankruptcy Case No. 20-10343 (LLS) (Jointly Administered) |
| NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA, et al.,<br><br>Appellants,<br><br>v.<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>Appellees. | Case No. 22-cv-01237-RGA (Lead Case)<br><br>Civ. Nos. 22-1238-RGA, 22-1239-RGA, 22-1240-RGA, 22-1241-RGA, 22-1242-RGA, 22-1243-RGA, 22-1244-RGA, 22-1245-RGA, 22-1246-RGA, 22-1247-RGA, 22-1249-RGA, 22-1250-RGA, 22-1251-RGA, 22-1252-RGA, 22-1258-RGA, & 22-1263-RGA (Consolidated) |

## NOTICE OF APPEAL TO
## UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

Appellants Lujan Claimants[1] appeal to the United States Court of Appeals for the Third Circuit from the Opinion [D.I. 150] and Order [D.I. 151] of the district court for the district of Delaware, entered in this case on March 28, 2023, which affirmed the bankruptcy court's Supplemental Findings of Fact and Conclusions of Law and Order Confirming the Third Modified Fifth Amended Chapter 11 Plan of Reorganization (with Technical

---

[1] Lujan Claimants' individual appeal is in Civ. Case No. 22-cv-01258-RGA.

Modifications) for Boy Scouts of America and Delaware BSA, LLC, dated September 8, 2022 [D.I. 1-1].

The parties to the Opinion and Order appealed from and the names and addresses of their respective attorneys are as follows:

| Lujan Claimants (Appellants) | **LOIZIDES, P.A.**<br>Christopher D. Loizides (No. 3968)<br>1225 North King Street, Suite 800<br>Telephone: (302) 654-0248<br>Loizides@loizides.com<br><br>-and-<br><br>**LUJAN & WOLFF LLP**<br>Delia Lujan Wolff<br>Suite 300, DNA Bldg.<br>238 Archbishop Flores St.<br>Hagatna, Guam 96910<br>Telephone: (671) 477-8064/5<br>dslwolff@lawguam.com |
|---|---|
| Dumas & Vaughn Claimants (Appellants) | **GELLERT SCALI BUSENKELL & BROWN LLC**<br>Charles J. Brown, III (No. 3368)<br>1201 N. Orange St., 3rd Floor<br>Wilmington, DE 19801<br>Telephone: (302) 425-5813<br>cbrown@gsbblaw.com<br><br>-and-<br><br>**DUMAS & VAUGHN, LLC**<br>Gilion C. Dumas<br>3835 NE Hancock Street, Suite GLB<br>Portland, OR 97212<br>Telephone: (503) 616-5007<br>gilion@dumasandvaughn.com |

A00199

| National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, and The Insurance Company of the State of Pennsylvania (the "AIG Companies") (Appellants) | **FINEMAN KREKSTEIN & HARRIS PC**<br>Deirdre M. Richards<br>1300 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 538-8331<br>Email: drichards@finemanlawfirm.com<br><br>-and-<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br>Michael A. Rosenthal (*pro hac vice*)<br>Mitchell A. Karlan (*pro hac vice*)<br>James Hallowell (*pro hac vice*)<br>Keith R. Martorana (*pro hac vice*)<br>Seth M. Rokosky (*pro hac vice*)<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 351-4000<br>Email: mrosenthal@gibsondunn.com<br>mkarlan@gibsondunn.com<br>jhallowell@gibsondunn.com<br>kmartorana@gibsondunn.com<br>srokosky@gibsondunn.com<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br>Theodore J. Boutrous Jr. (*pro hac vice*)<br>Richard J. Doren (*pro hac vice*)<br>Blaine H. Evanson (*pro hac vice*)<br>333 South Grand Avenue<br>Los Angeles, California 90071<br>Telephone: (213) 229-7038<br>Email: rdoren@gibsondunn.com<br>bevanson@gibsondunn.com<br>tboutrous@gibsondunn.com<br><br>**FORAN GLENNON PALANDECH PONZI & RUDLOFF P.C.**<br>Susan N.K. Gummow |

3

A00200

| | 222 N. LaSalle St., Suite 1400 |
|---|---|
| | Chicago, Illinois 60601 |
| | Telephone: (312) 863-5000 |
| | Email: sgummow@fgppr.com |
| Allianz Global Risks US Insurance Company (Appellant) | **TROUTMAN PEPPER HAMILTON SANDERS LLP** |
| | David M. Fournier (DE Bar No. 2812) |
| | Marcy J. McLaughlin Smith (DE No. 6184) |
| | Hercules Plaza |
| | 1313 Market Street |
| | Suite 5100 |
| | P.O. Box 1709 |
| | Wilmington, DE 19899-1709 |
| | Telephone: 404.885.3000 |
| | david.fournier@troutman.com |
| | marcy.smith@troutman.com |
| | |
| | -and- |
| | |
| | **PARKER, HUDSON, RAINER & DOBBS LLP** |
| | Harris B. Winsberg (*pro hac vice*) |
| | Matthew G. Roberts (*pro hac vice*) |
| | 303 Peachtree Street NE |
| | Suite 3600 |
| | Atlanta, GA 30308 |
| | Telephone: 404.420.4313 |
| | Facsimile: 404.522.8409 |
| | hwinsberg@phrd.com |
| | mroberts@phrd.com |
| | |
| | -and- |
| | |
| | **McDERMOTT WILL & EMERY LLP** |
| | Margaret H. Warner (*pro hac vice*) |
| | Ryan S. Smethurst (*pro hac vice*) |
| | Alex M. Spisak (*pro hac vice*) |
| | The McDermott Building |
| | 500 North Capitol Street, NW |

4

| | |
|---|---|
| | Washington, DC 20001-1531<br>Telephone: 202.756.8228<br>Facsimile: 202.756.8087<br>mwarner@mwe.com<br>rsmethurst@mwe.com<br>aspisak@mwe.com |
| National Surety Corporation and Interstate Fire & Casualty Company (Appellants) | **TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>David M. Fournier (DE Bar No. 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Hercules Plaza, Suite 5100<br>1313 Market Street<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: 302.777.6500<br>Facsimile: 302.421.8390<br>david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**PARKER, HUDSON, RAINER & DOBBS LLP**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA  30308<br>Telephone: 404.420.4313<br>Facsimile: 404.522.8409<br>hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>-and-<br><br>**BRADLEY RILEY JACOBS PC**<br>Todd C. Jacobs (*pro hac vice*)<br>John E. Bucheit (*pro hac vice*)<br>Paul J. Esker (*pro hac vice*) |

5

| | |
|---|---|
| | 500 West Madison Street<br>Suite 1000<br>Chicago, IL 60661<br>Telephone: 312.281.0295<br>tjacobs@bradleyriley.com<br>jbucheit@bradleyriley.com<br>pesker@bradleyriley.com |
| Arch Insurance Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (No. 2898)<br>1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400<br>kmiller@skjlaw.com<br><br>**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**<br>Ronald P. Schiller (*pro hac vice*)<br>Matthew A. Hamermesh (*pro hac vice*)<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>T: (215) 568-6200<br>F: (215) 568-0300<br>E: rschiller@hangley.com<br>mhamermesh@hangley.com |
| Argonaut Insurance Company and Colony Insurance Company (Appellants) | **POST & SCHELL, P.C.**<br>Paul Logan (No. 3339)<br>300 Delaware Avenue, Suite 1380<br>Wilmington, DE 19801<br>Telephone: (302) 251-8856<br>Email: plogan@postschell.com<br><br>**POST & SCHELL, P.C.**<br>John C. Sullivan (*pro hac vice*)<br>Kathleen K. Kerns (*pro hac vice*)<br>Four Penn Center – 13th Floor<br>1600 John F. Kennedy Boulevard<br>Philadelphia, PA 19103 |

6

A00203

| | |
|---|---|
| | Telephone: (215) 587-1000<br>jsullivan@postschell.com<br>kkerns@postschell.com<br><br>-and-<br><br>**IFRAH PLLC**<br>George R. Calhoun (*pro hac vice*)<br>1717 Pennsylvania Avenue, N.W. Suite 650<br>Washington, DC  20006<br>Telephone: (202) 840-8758<br>george@ifrahlaw.com |
| Arrowood Indemnity<br>Company<br>(Appellant) | **JOYCE, LLC**<br>Michael J. Joyce (No. 4563)<br>1225 King Street, Suite 800<br>Wilmington, DE 19801<br>Telephone: (302) 388-1944<br>Email:  mjoyce@mjlawoffices.com<br><br>-and-<br><br>**COUGHLIN MIDLIGE & GARLAND, LLP**<br>Kevin Coughlin (*pro hac vice*)<br>Lorraine Armenti (*pro hac vice*)<br>Michael Hrinewski (*pro hac vice*)<br>350 Mount Kemble Avenue<br>PO Box 1917<br>Morristown, NJ 07962<br>Telephone: (973) 267-0058<br>Facsimile: 973-267-6442<br>kcoughlin@cmg.law<br>larmenti@cmg.law<br>mhrinewski@cmg.law<br><br>-and-<br><br>**CARRUTHERS & ROTH, P.A.**<br>Britton C. Lewis |

| | |
|---|---|
| | John M. Flynn<br>235 N. Edgeworth Street<br>P.O. Box 540<br>Greensboro, NC  27401<br>Telephone: (336) 478-1146<br>Facsimile: (336) 478-1145<br>jmf@crlaw.com<br>bcl@crlaw.com |
| Continental Insurance Company and Columbia Casualty Company<br>(Appellants) | **GOLDSTEIN & MCCLINTOCK LLLP**<br>Maria Aprile Sawczuk (DE #3320)<br>501 Silverside Road<br>Wilmington, DE 19809<br>302-444-6710<br>marias@goldmclaw.com<br><br>-and-<br><br>**LOEB & LOEB LLP**<br>Laura McNally (*pro hac vice*)<br>Emily Stone (*pro hac vice*)<br>321 N. Clark Street, Suite 2300<br>Chicago, IL 60654<br>312-464-3155<br>lmcnally@loeb.com<br>estone@loeb.com |
| Gemini Insurance Company<br>(Appellant) | **WERB & SULLIVAN**<br>**LEGAL ARTS BUILDING**<br>Brian A. Sullivan (No. 2098)<br>1225 N. King Street<br>Suite 600<br>Wilmington, Delaware 19801<br>Telephone: (302) 652-1100<br>Cell: (302) 757-9932<br>Facsimile: (302) 652-1111<br>Email: bsullivan@werbsullivan.com<br><br>**GIEGER LABORDE & LAPEROUOSE, LLC** |

8

| | John E.W. Baay II (*pro hac vice*) |
|---|---|
| | 701 Poydras Street |
| | Suite 4800 |
| | New Orleans, LA 70139 |
| | Tel.: 504-561-0400 |
| | Fax: 504-561-1011 |
| | Email: jbaay@glllaw.com |
| | |
| | -and- |
| | |
| | **KIERNAN TREBACH LLP** |
| | William H. White Jr (*pro hac vice*) |
| | 1233 20th Street, NW |
| | 8th Floor |
| | Washington, DC 20036 |
| | Tel.: 202-712-7000 |
| | Fax: 202-712-7100 |
| | Email: wwhite@kiernantrebach.com |
| General Star Indemnity Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP** |
| | Kathleen M. Miller (DE Bar No. 2898) |
| | 1000 West Street, Suite 501 |
| | P.O. Box 410 |
| | Wilmington, DE 19899 |
| | Telephone: (302) 652-8400 |
| | Email: kmiller@skjlaw.com |
| | |
| | -and- |
| | |
| | **WILEY REIN LLP** |
| | Mary E. Borja (*pro hac vice*) |
| | Gary P. Seligman (*pro hac vice*) |
| | Ashley L. Criss (*pro hac vice*) |
| | 2050 M Street NW |
| | Washington, DC 20036 |
| | Phone: (202) 719-7000 |
| | Email: mborja@wiley.law |
| | gseligman@wiley.law |
| | acriss@wiley.law |

9

| | |
|---|---|
| Great American Assurance Company, f/k/a Agricultural Insurance Company; Great American E&S Insurance Company, f/k/a Agricultural Excess and Surplus Insurance Company; and Great American E&S Insurance Company (Appellants) | **BODELL BOVÉ, LLC**<br>Bruce W. McCullough (No. 3112)<br>1225 N. King Street, Suite 1000<br>Wilmington, Delaware 19801-3250<br>Telephone: (302) 655-6749<br>bmccullough@bodellbove.com<br><br>-and-<br><br>**CLYDE & CO US LLP**<br>Bruce D. Celebrezze (*pro hac vice*)<br>150 California Street \| 15th Floor<br>San Francisco, California 94111<br>Telephone: (415) 365-9800<br>Facsimile: (415) 365-9801<br>bruce.celebrezze@clydeco.us<br><br>**CLYDE & CO US LLP**<br>Konrad R. Krebs (*pro hac vice*)<br>340 Mt. Kemble Avenue \| Suite 300<br>Morristown, NJ 07960<br>Telephone: (973) 210-6700<br>Facsimile: (973) 210-6701<br>konrad.krebs@clydeco.us<br><br>-and-<br><br>**DAVID CHRISTIAN ATTORNEYS LLC**<br>David Christian (*pro hac vice*)<br>105 W. Madison St., Suite 1400<br>Chicago, Illinois 60602<br>Telephone: (312) 282-5282<br>dchristian@dca.law |
| Indian Harbor Insurance Company, on behalf of itself and as successor in interest to Catlin | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (No. 2898)<br>1000 West Street, Suite 1501<br>P.O. Box 410 |

10

| | |
|---|---|
| Specialty Insurance Company (Appellant) | Wilmington, DE 19899 [Courier 19801] Telephone: (302) 652-8400 Facsimile: (302) 652-8405 kmiller@skjlaw.com<br><br>and<br><br>**MOUND COTTON WOLLAN & GREENGRASS LLP** Lloyd A. Gura (*pro hac vice*) Pamela J. Minetto (*pro hac vice*) One New York Plaza 44th Floor New York, NY 10004 Tel: (212) 804-4282 lgura@moundcotton.com pminetto@moundcotton.com |
| Liberty Mutual Insurance Company, The Ohio Casualty Insurance Company, Liberty Insurance Underwriters, Inc. and Liberty Surplus Insurance Corporation (Appellants) | **SEITZ, VAN OGTROP & GREEN, P.A.** R. Karl Hill (DE Bar No. 2747) 222 Delaware Avenue Suite 1500 Wilmington, DE 19801 Telephone: (302) 888-0600 khill@svglaw.com<br><br>-and-<br><br>**CHOATE, HALL & STEWART LLP** Douglas R. Gooding (*pro hac vice*) Jonathan D. Marshall (*pro hac vice*) Two International Place Boston, MA 02110 Telephone: (617) 248-5000 dgooding@choate.com jmarshall@choate.com<br><br>-and- |

11

A00208

| | |
|---|---|
| | **MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC**<br>Kim V. Marrkand (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 542-6000<br>kvmarrkand@mintz.com |
| Munich Reinsurance America, Inc., formerly known as American Re-Insurance Company (Appellant) | **DILWORTH PAXSON LLP**<br>Thaddeus J. Weaver (DE Bar. No. 2790)<br>704 N. King Street, Suite 500<br>P.O. Box 1031<br>Wilmington, DE 19899-1031<br>(302) 571-8867 (telephone)<br>(302) 351-8735 (facsimile)<br>tweaver@dilworthlaw.com<br><br>-and-<br><br>**DILWORTH PAXSON LLP**<br>William E. McGrath, Jr. (*pro hac vice*)<br>2 Research Way, Suite 103<br>Princeton, NJ 08540<br>(609) 924-6000 (telephone)<br>(215) 893-8537 (facsimile)<br>wmcgrath@dilworthlaw.com |
| Traders and Pacific Insurance Company, Endurance American Specialty Insurance Company, and Endurance American Insurance Company (Appellants) | **COZEN O'CONNOR**<br>Marla S. Benedek (No. 6638)<br>1201 N. Market Street, Suite 1001<br>Wilmington, DE 19801<br>Telephone: (302) 295-2024<br>Facsimile: (302) 250-4498<br>mbenedek@cozen.com |
| Old Republic Insurance Company (Appellant) | **MORRIS JAMES LLP**<br>Stephen M. Miller (No. 2610)<br>Carl N. Kunz, III (No. 3201)<br>500 Delaware Avenue, Suite 1500<br>Wilmington, Delaware 19801 |

12

| | |
|---|---|
| | Telephone: (302) 888-6800 |
| | Facsimile: (302) 571-1750 |
| | smiller@morrisjames.com |
| | ckunz@morrisjames.com |
| | |
| | -and- |
| | |
| | **FOX SWIBEL LEVIN & CARROLL LLP** |
| | Margaret M. Anderson (*pro hac vice*) |
| | Ryan T. Schultz (*pro hac vice*) |
| | Adam A. Hachikian (*pro hac vice*) |
| | Kenneth M. Thomas (*pro hac vice*) |
| | 200 W. Madison Street, Suite 3000 |
| | Chicago, Illinois 60606 |
| | Telephone: (312) 224-1200 |
| | Facsimile: (312) 224-1201 |
| | panderson@foxswibel.com |
| | rschultz@foxswibel.com |
| | ahachikian@foxswibel.com |
| | kthomas@foxswibel.com |
| Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company), St. Paul Surplus Lines Insurance Company and Gulf Insurance Company (Appellants) | **REGER RIZZO & DARNALL LLP** <br> Louis J. Rizzo, Jr. (DE Bar No. 3374) <br> 1521 Concord Pike Suite 305 <br> Brandywine Plaza West <br> Wilmington DE  19803 <br> Telephone: (302) 477-7100 <br> Facsimile: (302) 652-3620 <br> lrizzo@regerlaw.com |
| Boy Scouts of America, Delaware BSA, LLC (Debtors/Appellees and Debtors in Possession) | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP** <br> Derek C. Abbott (No. 3376) <br> Andrew R. Remming (No. 5120) <br> Paige N. Topper (No. 6470) <br> 1201 North Market Street, 16th Floor <br> P.O. Box 1347 <br> Wilmington, Delaware 19899-1347 |

13

Telephone: (302) 658-9200
dabbott@morrisnichols.com
aremming@morrisnichols.com
ptopper@morrisnichols.com

– and –

**WHITE & CASE LLP**
Jessica C. Lauria (*pro hac vice*)
Glenn M. Kurtz (*pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: jessica.lauria@whitecase.com
gkurtz@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina
Matthew E. Linder
Laura E. Baccash
Blair M. Warner
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
mandolina@whitecase.com
mlinder@whitecase.com
laura.baccash@whitecase.com
blair.warner@whitecase.com

– and –

**WHITE & CASE LLP**
Ronald K. Gorsich
Doah Kim
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone: (213) 620-7700

14

| | |
|---|---|
| | rgorsich@whitecase.com |
| | doah.kim@whitecase.com |
| Tort Claimants' Committee (Appellee) | **PACHULSKI STANG ZIEHL & JONES LLP** |
| | Richard M. Pachulski (*pro hac vice*) |
| | Alan J. Kornfeld (*pro hac vice*) |
| | Debra I. Grassgreen (*pro hac vice*) |
| | Iain A.W. Nasatir (*pro hac vice*) |
| | James E. O'Neill (No. 4042) |
| | 919 North Market Street, 17th Floor |
| | P.O. Box 8705 |
| | Wilmington, DE 19899-8705 (Courier 19801) |
| | Telephone: (302) 652-4100 |
| | Fax: (302) 652-4400 |
| | Email: rpachulski@pszjlaw.com |
| | akornfeld@pszjlaw.com |
| | dgrassgreen@pszjlaw.com |
| | inasatir@pszjlaw.com |
| | joneill@pszjlaw.com |
| Coalition of Abused Scouts for Justice (Appellee) | **MONZACK MERSKY AND BROWDER, P.A.** |
| | Rachel B. Mersky (No. 2049) |
| | 1201 North Orange Street, Suite 400 |
| | Wilmington, Delaware 19801 |
| | Telephone: (302) 656-8162 |
| | Fax: (302) 656-2769 |
| | Email: rmersky@monlaw.com |
| | |
| | –and– |
| | |
| | **BROWN RUDNICK LLP** |
| | David J. Molton, Esq. (*pro hac vice*) |
| | Eric R. Goodman, Esq. (*pro hac vice*) |
| | Seven Times Square |
| | New York, NY 10036 |
| | Telephone: (212) 209-4800 |
| | Fax: (212) 209-4801 |
| | Email: dmolton@brownrudnick.com |
| | egoodman@brownrudnick.com |

15

| | |
|---|---|
| | –and–<br><br>**BROWN RUDNICK LLP**<br>Sunni P. Beville, Esq. (*pro hac vice*)<br>Tristan G. Axelrod, Esq. (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 856-8200<br>Fax: (617) 856-8201<br>Email: sbeville@brownrudnick.com<br>taxelrod@brownrudnick.com |
| Future Claimants' Representative (Appellee) | **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br>Robert S. Brady (No. 2847)<br>Edwin J. Harron (No. 3396)<br>Kenneth J. Enos (No. 4544)<br>Ashley E. Jacobs (No. 5635)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Fax: (302) 571-1253<br>Email: rbrady@ycst.com<br>eharron@ycst.com<br>kenos@ycst.com<br>ajacobs@ycst.com<br><br>-and-<br><br>**GILBERT LLP**<br>Kami E. Quinn (*pro hac vice*)<br>Rachel H. Jennings (*pro hac vice*)<br>Kyle Y. Dechant (*pro hac vice*)<br>December L. Huddleston (*pro hac vice*)<br>700 Pennsylvania Ave, SE<br>Suite 400<br>Washington, DC 20003<br>Telephone: (202) 772-2200<br>Fax: (202) 772-3333 |

16

| | |
|---|---|
| | Email: quinnk@gilbertlegal.com<br>jenningsr@gilbertlegal.com<br>dechantk@gilbertlegal.com<br>huddlestond@gilbertlegal.com |
| The Zalkin Law Firm, P.C. and Pfau Cochran Vertetis Amala PLLC (Appellees) | **KTBS LAW LLP**<br>Thomas E. Patterson (*pro hac vice*)<br>Daniel J. Bussel (*pro hac vice*)<br>Robert J. Pfister (*pro hac vice*)<br>Sasha M. Gurvitz (*pro hac vice*)<br>1801 Century Park East, Twenty-Sixth Floor<br>Los Angeles, California 90067<br>Telephone: (310) 407-4000<br>Fax: (310) 407-9090<br>Email: tpatterson@ktbslaw.com<br>dbussel@ktbslaw.com<br>rpfister@ktbslaw.com<br>sgurvitz@ktbslaw.com<br><br>-and-<br><br>**BIELLI & KLAUDER, LLC**<br>David M. Klauder, Esquire (No. 5769)<br>1204 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 803-4600<br>Fax: (302) 397-2557<br>Email: dklauder@bk-legal.com |
| Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, and Navigators Specialty Insurance Company (Appellees) | **BAYARD, P.A.**<br>Erin R. Fay (No. 5268)<br>Gregory J. Flasser (No. 6154)<br>600 North King Street, Suite 400<br>Wilmington, DE 19801<br>Telephone: (302) 655-5000<br>Fax: (302) 658-6395<br>Email: efay@bayardlaw.com<br>gflasser@bayardlaw.com<br><br>-and- |

17

| | |
|---|---|
| | **RUGGERI PARKS WEINBERG LLP**<br>James P. Ruggeri (*pro hac vice*)<br>Joshua D. Weinberg (*pro hac vice*)<br>1875 K Street, N.W., Suite 600<br>Washington, D.C. 20006-1251<br>Telephone: (202) 469-7750<br>Fax: (202) 469-7751<br>Email: jruggeri@ruggerilaw.com<br>jweinberg@ruggerilaw.com<br><br>-and-<br><br>**WILMER CUTLER PICKERING HALE AND DORR LLP**<br>Philip D. Anker (*pro hac vice*)<br>7 World Trade Center<br>250 Greenwich Street<br>New York, N.Y. 10007<br>Telephone: (212) 230-8890<br>Fax: (212) 230-8888<br>Email: philip.anker@wilmerhale.com<br><br>Joel Millar (*pro hac vice*)<br>1875 Pennsylvania Avenue N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 663-6000<br>Fax: (202) 663-6363<br>Email: joel.millar@wilmerhale.com |
| Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>800 N. West Street<br>Third Floor Wilmington, Delaware 19801<br>Telephone: 302 999 1540<br>Fax: 302 762 1688<br>Email: stamoulis@swdelaw.com<br><br>-and- |

18

| | |
|---|---|
| America (Appellees) | **O'MELVENY & MYERS LLP**<br>Tancred Schiavoni (*pro hac vice*)<br>Times Square Tower<br>7 Times Square<br>New York, New York 10036-6537<br>Telephone: (212) 326-2000<br>Fax: (212) 326-2061<br>Email: tschiavoni@omm.com<br><br>**O'MELVENY & MYERS LLP**<br>Stephen Warren (*pro hac vice*)<br>400 South Hope Street<br>Los Angeles, California 90071<br>Telephone: (213) 430-6000<br>Fax: (213) 430-6407<br>Email: swarren@omm.com<br><br>**O'MELVENY & MYERS LLP**<br>Jonathan D. Hacker (*pro hac vice*)<br>1625 Eye Street, N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 383-5300<br>Email: jhacker@omm.com |
| Federal Insurance Company and Westchester Fire Insurance Company (Appellees) | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>8000 N. West Street, Third Floor<br>Wilmington, Delaware 19801<br>Telephone: (302) 999-1540<br>Email: stamoulis@swdelaw.com<br><br>-and-<br><br>**SIMPSON THACHER & BARTLETT LLP**<br>David Elbaum (*pro hac vice*)<br>425 Lexington Avenue<br>New York, New York 10017<br>Telephone: (212) 455-2000 |

19

A00216

| | Email: david.elbaum@stblaw.com |
|---|---|
| American Zurich Insurance Company, American Guarantee Insurance Company, and Steadfast Insurance Company (Appellees) | **TYBOUT, REDFEARN & PELL**<br>Robert D. Cecil, Jr. (No. 5317)<br>501 Carr Road, Suite 300<br>Wilmington, Delaware 19899<br>Telephone: (302) 658-6901<br>Email: rcecil@trplaw.com<br><br>-and-<br><br>**CROWELL & MORING LLP**<br>Mark D. Plevin (*pro hac vice*)<br>Kevin D. Cacabelos (*pro hac vice*)<br>Three Embarcadero Center, 26th Floor<br>San Francisco, California 94111<br>Telephone: (415) 986-2800<br>Email: mplevin@crowell.com<br>kcacabelos@crowell.com<br><br>Tacie H. Yoon (*pro hac vice*)<br>Rachel A. Jankowski (*pro hac vice*)<br>1001 Pennsylvania Ave., N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 624-2500<br>Email: tyoon@crowell.com<br>rjankowski@crowell.com |
| Clarendon National Insurance Company, as successor in interest by merger to Clarendon America Insurance Company; River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company | **BALLARD SPAHR LLP**<br>Matthew G. Summers (No. 5533)<br>Chantelle D. McClamb (No. 5978)<br>919 N. Market Street, 11th Floor<br>Wilmington, Delaware 19801-3034<br>Telephone: (302) 252-4428<br>Fax: (302) 252-4466<br>Email: summersm@ballardspahr.com<br>mcclamb@ballardspahr.com<br><br>-and- |

20

A00217

| | |
|---|---|
| Limited, on its own behalf and in turn as successor to St. Katherine Insurance Company Limited); and Zurich American Insurance Company, as successor to Maryland Casualty Company, Zurich Insurance Company, and Maryland General Insurance Company (Appellees) | **STEPTOE & JOHNSON LLP**<br>Harry Lee (*pro hac vice*)<br>John O'Connor (*pro hac vice*)<br>1330 Connecticut Avenue NW<br>Washington, DC 20036<br>Telephone: (202) 429-8078<br>Fax: (202) 429-3902<br>Email: hlee@steptoe.com<br>joconnor@steptoe.com |
| Ad Hoc Committee of Local Councils of the Boy Scouts of America (Appellee) | **DLA PIPER, LLP (US)**<br>R. Craig Martin (No. 5032)<br>1201 North Market Street, Suite 2100<br>Wilmington, Delaware 19801-1147<br>Telephone: (302) 468-5655<br>Email: craig.martin@dlapiper.com<br><br>-and-<br><br>**WACHTELL, LIPTON, ROSEN & KATZ**<br>Richard G. Mason (*pro hac vice*)<br>Douglas K. Mayer (*pro hac vice*)<br>Joseph C. Celentino (*pro hac vice*)<br>Mitchell S. Levy (*pro hac vice*)<br>51 West 52nd Street<br>New York, New York 10019<br>Telephone: (212) 403-1000<br>Email: RGMason@wlrk.com<br>DKMayer@wlrk.com<br>JCCelentino@wlrk.com<br>MSLevy@wlrk.com |

21

Dated:   Wilmington, Delaware       Respectfully Submitted,

April 10, 2023                          /s/ Christopher D. Loizides
                                        Christopher D. Loizides (No. 3968)
                                        LOIZIDES, P.A.
                                        1225 North King Street, Suite 800
                                        Wilmington, DE 19801
                                        Phone: 302.654.0248
                                        Email: Loizides@loizides.com

                                        and

                                        LUJAN & WOLFF LLP

                                         /s/ Delia Lujan Wolff
                                        Delia Lujan Wolff
                                        Suite 300, DNA Bldg.
                                        238 Archbishop Flores St.
                                        Hagatna, Guam 96910
                                        Phone: (671) 477-8064/5
                                        Facsimile: (671) 477-5297
                                        Email:  dslwolff@lawguam.com

                                        *Attorneys for Lujan Claimants*

22

A00219

# APPENDIX A

The foregoing Notice of Appeal was filed by the following creditors who each filed a Sexual Abuse Survivor Proof of Claim and are represented by Lujan & Wolff LLP. The numbers below are the claim numbers for each creditor's Sexual Abuse Survivor Proof of Claim, including amendments thereto.

| 248 | 2991 | 6824 | 25063 | 79403 |
|---|---|---|---|---|
| 1551 | 3051 | 7976 | 25069 | 79769 |
| 1670 | 3120 | 7977 | 33028 | 80328 |
| 1677 | 3385 | 8037 | 35352 | 80655 |
| 1746 | 3610 | 8038 | 35354 | 80982 |
| 1757 | 3612 | 10548 | 38591 | 87715 |
| 1765 | 3614 | 11250 | 40889 | 87757 |
| 1913 | 3616 | 11251 | 40890 | 96418 |
| 1953 | 4855 | 14187 | 45700 | 96419 |
| 2003 | 4857 | 15104 | 45702 | 103377 |
| 2010 | 4859 | 15139 | 48168 | 103378 |
| 2011 | 5646 | 17480 | 58317 | 4858 |
| 2394 | 5646 | 18860 | 58370 | 4860 |
| 2403 | 5648 | 18873 | 67267 | |
| 2433 | 5655 | 22872 | 67286 | |
| 2597 | 6432 | 22873 | 67293 | |
| 2840 | 6434 | 22874 | 73585 | |
| 2885 | 6823 | 23388 | 73607 | |

23

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| | |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Bankruptcy Case No. 20-10343-LSS |
| | (Jointly Administered) |
| Debtors. | |
| | |
| NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA, *et al.*, | Case No. 22-cv-01237-RGA[1] |
| Appellants, | |
| v. | |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | |
| Appellees. | |

## NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

NOTICE IS HEREBY GIVEN that Appellants Liberty Mutual Insurance Company, The Ohio Casualty Insurance Company, Liberty Insurance Underwriters, Inc., and Liberty Surplus Insurance Corporation, appeal to the United States Court of Appeals for the Third Circuit from the final Order and accompanying Opinion of the United States District Court for the District of

---

[1] Appellants' bankruptcy appeal originally had the following caption and case number: *Liberty Mutual Insurance Company et al. v. Boy Scouts of America and Delaware BSA, LLC*, No. 22-cv-01252-RGA. That action was consolidated with the above-captioned action on October 17, 2022 and the Court directed that "[a]ll further filings with this Court will be docketed under the Master Case Number." *See* Order Granting Motion on Stipulation Regarding Appeals From Order Confirming Plan of Reorganization of Boy Scouts of America and Delaware BSA, LLC (D.I. 22).

Delaware (Hon. Richard G. Andrews), entered March 28, 2023 (D.I. 150, 151), among other things affirming the *Supplemental Findings of Fact and Conclusions of Law and Order Confirming the Third Modified Fifth Amended Chapter 11 Plan of Reorganization (with Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC* (Bankruptcy D.I. 10316) and accompanying Opinion (Bankruptcy D.I. 10136) of the United States Bankruptcy Court for the District of Delaware (Hon. Laurie S. Silverstein), and all other orders, decisions, and opinions subsumed therein.

The parties to the order appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

| National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, and The Insurance Company of the State of Pennsylvania (the "AIG Companies") (Appellants) | **FINEMAN KREKSTEIN & HARRIS PC**<br>Deirdre M. Richards<br>1300 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 538-8331<br>Email: drichards@finemanlawfirm.com<br><br>-and-<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br>Michael A. Rosenthal (*pro hac vice*)<br>Mitchell A. Karlan (*pro hac vice*)<br>James Hallowell (*pro hac vice*)<br>Keith R. Martorana (*pro hac vice*)<br>Seth M. Rokosky (*pro hac vice*)<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 351-4000<br>Email: mrosenthal@gibsondunn.com<br>mkarlan@gibsondunn.com<br>jhallowell@gibsondunn.com<br>kmartorana@gibsondunn.com<br>srokosky@gibsondunn.com<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br>Theodore J. Boutrous Jr. (*pro hac vice*)<br>Richard J. Doren (*pro hac vice*)<br>Blaine H. Evanson (*pro hac vice*) |

2

| | |
|---|---|
| | 333 South Grand Avenue<br>Los Angeles, California 90071<br>Telephone: (213) 229-7038<br>Email: rdoren@gibsondunn.com<br>bevanson@gibsondunn.com<br>tboutrous@gibsondunn.com<br><br>**FORAN GLENNON PALANDECH PONZI & RUDLOFF P.C.**<br>Susan N.K. Gummow<br>222 N. LaSalle St., Suite 1400<br>Chicago, Illinois 60601<br>Telephone: (312) 863-5000<br>Email: sgummow@fgppr.com |
| Allianz Global Risks US Insurance Company (Appellant) | **TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>David M. Fournier (DE Bar No. 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Hercules Plaza<br>1313 Market Street<br>Suite 5100<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: 404.885.3000<br>david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**PARKER, HUDSON, RAINER & DOBBS LLP**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA  30308<br>Telephone: 404.420.4313<br>Facsimile: 404.522.8409<br>hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>-and-<br><br>**McDERMOTT WILL & EMERY LLP**<br>Margaret H. Warner (*pro hac vice*)<br>Ryan S. Smethurst (*pro hac vice*)<br>Alex M. Spisak (*pro hac vice*)<br>The McDermott Building<br>500 North Capitol Street, NW |

| | |
|---|---|
| | Washington, DC 20001-1531<br>Telephone: 202.756.8228<br>Facsimile: 202.756.8087<br>mwarner@mwe.com<br>rsmethurst@mwe.com<br>aspisak@mwe.com |
| National Surety Corporation and Interstate Fire & Casualty Company (Appellants) | **TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>David M. Fournier (DE Bar No. 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Hercules Plaza, Suite 5100<br>1313 Market Street<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: 302.777.6500<br>Facsimile: 302.421.8390<br>david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**PARKER, HUDSON, RAINER & DOBBS LLP**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA  30308<br>Telephone: 404.420.4313<br>Facsimile: 404.522.8409<br>hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>-and-<br><br>**BRADLEY RILEY JACOBS PC**<br>Todd C. Jacobs (*pro hac vice*)<br>John E. Bucheit (*pro hac vice*)<br>Paul J. Esker (*pro hac vice*)<br>500 West Madison Street<br>Suite 1000<br>Chicago, IL 60661<br>Telephone: 312.281.0295<br>tjacobs@bradleyriley.com<br>jbucheit@bradleyriley.com<br>pesker@bradleyriley.com |
| Arch Insurance Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (No. 2898) |

4

| | |
|---|---|
| | 1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400<br>kmiller@skjlaw.com<br><br>**HANGLEY ARONCHICK SEGAL**<br>**PUDLIN & SCHILLER**<br>Ronald P. Schiller (*pro hac vice*)<br>Matthew A. Hamermesh (*pro hac vice*)<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>T: (215) 568-6200<br>F: (215) 568-0300<br>E: rschiller@hangley.com<br>mhamermesh@hangley.com |
| Argonaut Insurance Company and Colony Insurance Company (Appellants) | **POST & SCHELL, P.C.**<br>Paul Logan (No. 3339)<br>300 Delaware Avenue, Suite 1380<br>Wilmington, DE 19801<br>Telephone: (302) 251-8856<br>Email: plogan@postschell.com<br><br>**POST & SCHELL, P.C.**<br>John C. Sullivan (*pro hac vice*)<br>Kathleen K. Kerns (*pro hac vice*)<br>Four Penn Center – 13th Floor<br>1600 John F. Kennedy Boulevard<br>Philadelphia, PA 19103<br>Telephone: (215) 587-1000<br>jsullivan@postschell.com<br>kkerns@postschell.com<br><br>-and-<br><br>**IFRAH PLLC**<br>George R. Calhoun (*pro hac vice*)<br>1717 Pennsylvania Avenue, N.W. Suite 650<br>Washington, DC 20006<br>Telephone: (202) 840-8758<br>george@ifrahlaw.com |
| Arrowood Indemnity Company (Appellant) | **JOYCE, LLC**<br>Michael J. Joyce (No. 4563)<br>1225 King Street, Suite 800<br>Wilmington, DE 19801<br>Telephone: (302) 388-1944 |

A00225

| | Email: mjoyce@mjlawoffices.com<br><br>-and-<br><br>**COUGHLIN MIDLIGE & GARLAND, LLP**<br>Kevin Coughlin (*pro hac vice*)<br>Lorraine Armenti (*pro hac vice*)<br>Michael Hrinewski (*pro hac vice*)<br>350 Mount Kemble Avenue<br>PO Box 1917<br>Morristown, NJ 07962<br>Telephone: (973) 267-0058<br>Facsimile: 973-267-6442<br>kcoughlin@cmg.law<br>larmenti@cmg.law<br>mhrinewski@cmg.law<br><br>-and-<br><br>**CARRUTHERS & ROTH, P.A.**<br>Britton C. Lewis<br>John M. Flynn<br>235 N. Edgeworth Street<br>P.O. Box 540<br>Greensboro, NC 27401<br>Telephone: (336) 478-1146<br>Facsimile: (336) 478-1145<br>jmf@crlaw.com<br>bcl@crlaw.com |
| Continental Insurance Company and Columbia Casualty Company (Appellants) | **GOLDSTEIN & MCCLINTOCK LLLP**<br>Maria Aprile Sawczuk (DE #3320)<br>501 Silverside Road<br>Wilmington, DE 19809<br>302-444-6710<br>marias@goldmclaw.com<br><br>-and-<br><br>**LOEB & LOEB LLP**<br>Laura McNally (*pro hac vice*)<br>Emily Stone (*pro hac vice*)<br>321 N. Clark Street, Suite 2300<br>Chicago, IL 60654<br>312-464-3155<br>lmcnally@loeb.com<br>estone@loeb.com |

| | |
|---|---|
| Gemini Insurance Company (Appellant) | **WERB & SULLIVAN**<br>LEGAL ARTS BUILDING<br>Brian A. Sullivan (No. 2098)<br>1225 N. King Street<br>Suite 600<br>Wilmington, Delaware 19801<br>Telephone: (302) 652-1100<br>Cell: (302) 757-9932<br>Facsimile: (302) 652-1111<br>Email: bsullivan@werbsullivan.com<br><br>**GIEGER LABORDE & LAPEROUOSE, LLC**<br>John E.W. Baay II (*pro hac vice*)<br>701 Poydras Street<br>Suite 4800<br>New Orleans, LA 70139<br>Tel.: 504-561-0400<br>Fax: 504-561-1011<br>Email: jbaay@glllaw.com<br><br>-and-<br><br>**KIERNAN TREBACH LLP**<br>William H. White Jr (*pro hac vice*)<br>1233 20th Street, NW<br>8th Floor<br>Washington, DC 20036<br>Tel.: 202-712-7000<br>Fax: 202-712-7100<br>Email: wwhite@kiernantrebach.com |
| General Star Indemnity Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (DE Bar No. 2898)<br>1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400<br>Email: kmiller@skjlaw.com<br><br>-and-<br><br>**WILEY REIN LLP**<br>Mary E. Borja (*pro hac vice*)<br>Gary P. Seligman (*pro hac vice*)<br>Ashley L. Criss (*pro hac vice*)<br>2050 M Street NW<br>Washington, DC 20036 |

| | |
|---|---|
| | Phone: (202) 719-7000<br>Email: mborja@wiley.law<br>gseligman@wiley.law<br>acriss@wiley.law |
| Great American Assurance Company, f/k/a Agricultural Insurance Company; Great American E&S Insurance Company, f/k/a Agricultural Excess and Surplus Insurance Company; and Great American E&S Insurance Company (Appellants) | **BODELL BOVÉ, LLC**<br>Bruce W. McCullough (No. 3112)<br>1225 N. King Street, Suite 1000<br>Wilmington, Delaware 19801-3250<br>Telephone: (302) 655-6749<br>bmccullough@bodellbove.com<br><br>-and-<br><br>**CLYDE & CO US LLP**<br>Bruce D. Celebrezze (*pro hac vice*)<br>150 California Street \| 15th Floor<br>San Francisco, California 94111<br>Telephone: (415) 365-9800<br>Facsimile: (415) 365-9801<br>bruce.celebrezze@clydeco.us<br><br>**CLYDE & CO US LLP**<br>Konrad R. Krebs (*pro hac vice*)<br>340 Mt. Kemble Avenue \| Suite 300<br>Morristown, NJ 07960<br>Telephone: (973) 210-6700<br>Facsimile: (973) 210-6701<br>konrad.krebs@clydeco.us<br><br>-and-<br><br>**DAVID CHRISTIAN ATTORNEYS LLC**<br>David Christian (*pro hac vice*)<br>105 W. Madison St., Suite 1400<br>Chicago, Illinois 60602<br>Telephone: (312) 282-5282<br>dchristian@dca.law |
| Indian Harbor Insurance Company, on behalf of itself and as successor in interest to Catlin Specialty Insurance Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (No. 2898)<br>1000 West Street, Suite 1501<br>P.O. Box 410<br>Wilmington, DE  19899 [Courier 19801]<br>Telephone: (302) 652-8400<br>Facsimile: (302) 652-8405<br>kmiller@skjlaw.com |

| | |
|---|---|
| | and<br><br>**MOUND COTTON WOLLAN & GREENGRASS LLP**<br>Lloyd A. Gura (*pro hac vice*)<br>Pamela J. Minetto (*pro hac vice*)<br>One New York Plaza 44th Floor<br>New York, NY 10004<br>Tel: (212) 804-4282<br>lgura@moundcotton.com<br>pminetto@moundcotton.com |
| Liberty Mutual Insurance Company, The Ohio Casualty Insurance Company, Liberty Insurance Underwriters, Inc. and Liberty Surplus Insurance Corporation (Appellants) | **SEITZ, VAN OGTROP & GREEN, P.A.**<br>R. Karl Hill (DE BAR No. 2747)<br>222 Delaware Avenue<br>Suite 1500<br>Wilmington, DE 19801<br>Telephone: (302) 888-0600<br>khill@svglaw.com<br><br>-and-<br><br>**CHOATE, HALL & STEWART LLP**<br>Douglas R. Gooding (*pro hac vice*)<br>Jonathan D. Marshall (*pro hac vice*)<br>Two International Place<br>Boston, MA 02110<br>Telephone: (617) 248-5000<br>dgooding@choate.com<br>jmarshall@choate.com<br><br>-and-<br><br>**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC**<br>Kim V. Marrkand (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 542-6000<br>kvmarrkand@mintz.com |
| Munich Reinsurance America, Inc., formerly known as American Re-Insurance Company (Appellant) | **DILWORTH PAXSON LLP**<br>Thaddeus J. Weaver (DE Bar. No. 2790)<br>704 N. King Street, Suite 500<br>P.O. Box 1031<br>Wilmington, DE 19899-1031<br>(302) 571-8867 (telephone)<br>(302) 351-8735 (facsimile) |

9

| | |
|---|---|
| | tweaver@dilworthlaw.com<br><br>-and-<br><br>**DILWORTH PAXSON LLP**<br>William E. McGrath, Jr. (*pro hac vice*)<br>2 Research Way, Suite 103<br>Princeton, NJ 08540<br>(609) 924-6000 (telephone)<br>(215) 893-8537 (facsimile)<br>wmcgrath@dilworthlaw.com |
| Traders and Pacific Insurance Company, Endurance American Specialty Insurance Company, and Endurance American Insurance Company (Appellants) | **COZEN O'CONNOR**<br>Marla S. Benedek (No. 6638)<br>1201 N. Market Street, Suite 1001<br>Wilmington, DE 19801<br>Telephone: (302) 295-2024<br>Facsimile: (302) 250-4498<br>mbenedek@cozen.com |
| Old Republic Insurance Company (Appellant) | **MORRIS JAMES LLP**<br>Stephen M. Miller (No. 2610)<br>Carl N. Kunz, III (No. 3201)<br>500 Delaware Avenue, Suite 1500<br>Wilmington, Delaware 19801<br>Telephone: (302) 888-6800<br>Facsimile: (302) 571-1750<br>smiller@morrisjames.com<br>ckunz@morrisjames.com<br><br>-and-<br><br>**FOX SWIBEL LEVIN & CARROLL LLP**<br>Margaret M. Anderson (*pro hac vice*)<br>Ryan T. Schultz (*pro hac vice*)<br>Adam A. Hachikian (*pro hac vice*)<br>Kenneth M. Thomas (*pro hac vice*)<br>200 W. Madison Street, Suite 3000<br>Chicago, Illinois 60606<br>Telephone: (312) 224-1200<br>Facsimile: (312) 224-1201<br>panderson@foxswibel.com<br>rschultz@foxswibel.com<br>ahachikian@foxswibel.com<br>kthomas@foxswibel.com |

10

| | |
|---|---|
| Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company), St. Paul Surplus Lines Insurance Company and Gulf Insurance Company (Appellants) | **REGER RIZZO & DARNALL LLP**<br>Louis J. Rizzo, Jr. (DE Bar No. 3374)<br>1521 Concord Pike Suite 305<br>Brandywine Plaza West<br>Wilmington DE 19803<br>Telephone: (302) 477-7100<br>Facsimile: (302) 652-3620<br>lrizzo@regerlaw.com |
| Lujan Claimants (Appellants) | **LOIZIDES, P.A.**<br>Christopher D. Loizides (No. 3968)<br>1225 North King Street, Suite 800<br>Wilmington, DE 19801<br>Telephone: (302) 654-0248<br>Loizides@loizides.com<br><br>-and-<br><br>**LUJAN & WOLFF LLP**<br>Delia Lujan Wolff (*pro hac vice*)<br>Suite 300, DNA Bldg.<br>238 Archbishop Flores St.<br>Hagatna, Guam 96910<br>Telephone: (671) 477-8064/5<br>dslwolff@lawguam.com |
| Dumas & Vaughn Claimants (Appellants) | **GELLERT SCALI BUSENKELL & BROWN LLC**<br>Charles J. Brown, III (No. 3368)<br>1201 N. Orange St., 3rd Floor<br>Wilmington, DE 19801<br>Telephone: (302) 425-5813<br>cbrown@gsbblaw.com<br><br>-and-<br><br>**DUMAS & VAUGHN, LLC**<br>Gilion C. Dumas (*pro hac vice*)<br>3835 NE Hancock Street, Suite GLB<br>Portland, OR 97212<br>Telephone: (503) 616-5007<br>gilion@dumasandvaughn.com |
| Boy Scouts of America, Delaware BSA, LLC (Debtors/Appellees and Debtors in Possession) | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347 |

11

| | |
|---|---|
| | Telephone: (302) 658-9200 |
| | dabbott@morrisnichols.com |
| | aremming@morrisnichols.com |
| | ptopper@morrisnichols.com |
| | |
| | - and - |
| | |
| | **WHITE & CASE LLP** |
| | Jessica C. Lauria (*pro hac vice*) |
| | Glenn M. Kurtz (*pro hac vice*) |
| | 1221 Avenue of the Americas |
| | New York, New York 10020 |
| | Telephone: (212) 819-8200 |
| | Email: jessica.lauria@whitecase.com |
| | gkurtz@whitecase.com |
| | |
| | - and - |
| | |
| | **WHITE & CASE LLP** |
| | Michael C. Andolina |
| | Matthew E. Linder |
| | Laura E. Baccash |
| | Blair M. Warner |
| | 111 South Wacker Drive |
| | Chicago, Illinois 60606 |
| | Telephone: (312) 881-5400 |
| | mandolina@whitecase.com |
| | mlinder@whitecase.com |
| | laura.baccash@whitecase.com |
| | blair.warner@whitecase.com |
| | |
| | - and - |
| | |
| | **WHITE & CASE LLP** |
| | Ronald K. Gorsich |
| | Doah Kim |
| | 555 South Flower Street, Suite 2700 |
| | Los Angeles, CA 90071 |
| | Telephone: (213) 620-7700 |
| | rgorsich@whitecase.com |
| | doah.kim@whitecase.com |
| Tort Claimants' Committee (Appellee) | **PACHULSKI STANG ZIEHL & JONES LLP** |
| | Richard M. Pachulski (*pro hac vice*) |
| | Alan J. Kornfeld (*pro hac vice*) |
| | Debra I. Grassgreen (*pro hac vice*) |
| | Iain A.W. Nasatir (*pro hac vice*) |
| | James E. O'Neill (No. 4042) |

| | |
|---|---|
| | 919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899-8705 (Courier 19801)<br>Telephone: (302) 652-4100<br>Fax: (302) 652-4400<br>Email: rpachulski@pszjlaw.com<br>akornfeld@pszjlaw.com<br>dgrassgreen@pszjlaw.com<br>inasatir@pszjlaw.com<br>joneill@pszjlaw.com |
| Coalition of Abused Scouts for Justice (Appellee) | **MONZACK MERSKY AND BROWDER, P.A.**<br>Rachel B. Mersky (No. 2049)<br>1201 North Orange Street, Suite 400<br>Wilmington, Delaware 19801<br>Telephone: (302) 656-8162<br>Fax: (302) 656-2769<br>Email: rmersky@monlaw.com<br><br>-and-<br><br>**BROWN RUDNICK LLP**<br>David J. Molton, Esq. (*pro hac vice*)<br>Eric R. Goodman, Esq. (*pro hac vice*)<br>Seven Times Square<br>New York, NY 10036<br>Telephone: (212) 209-4800<br>Fax: (212) 209-4801<br>Email: dmolton@brownrudnick.com<br>egoodman@brownrudnick.com<br><br>-and-<br><br>**BROWN RUDNICK LLP**<br>Sunni P. Beville, Esq. (*pro hac vice*)<br>Tristan G. Axelrod, Esq. (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 856-8200<br>Fax: (617) 856-8201<br>Email: sbeville@brownrudnick.com<br>taxelrod@brownrudnick.com |
| Future Claimants' Representative (Appellee) | **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br><br>Robert S. Brady (No. 2847)<br>Edwin J. Harron (No. 3396)<br>Kenneth J. Enos (No. 4544) |

13

A00233

| | Ashley E. Jacobs (No. 5635)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Fax: (302) 571-1253<br>Email: rbrady@ycst.com<br>eharron@ycst.com<br>kenos@ycst.com<br>ajacobs@ycst.com<br><br>-and-<br><br>**GILBERT LLP**<br>Kami E. Quinn (*pro hac vice*)<br>Rachel H. Jennings (*pro hac vice*)<br>Kyle Y. Dechant (*pro hac vice*)<br>December L. Huddleston (*pro hac vice*)<br>700 Pennsylvania Ave, SE<br>Suite 400<br>Washington, DC 20003<br>Telephone: (202) 772-2200<br>Fax: (202) 772-3333<br>Email: quinnk@gilbertlegal.com<br>jenningsr@gilbertlegal.com<br>dechantk@gilbertlegal.com<br>huddlestond@gilbertlegal.com |
| The Zalkin Law Firm,<br>P.C. and Pfau Cochran<br>Vertetis Amala PLLC<br>(Appellees) | **KTBS LAW LLP**<br>Thomas E. Patterson (*pro hac vice*)<br>Daniel J. Bussel (*pro hac vice*)<br>Robert J. Pfister (*pro hac vice*)<br>Sasha M. Gurvitz (*pro hac vice*)<br>1801 Century Park East, Twenty-Sixth Floor<br>Los Angeles, California 90067<br>Telephone: (310) 407-4000<br>Fax: (310) 407-9090<br>Email: tpatterson@ktbslaw.com<br>dbussel@ktbslaw.com<br>rpfister@ktbslaw.com<br>sgurvitz@ktbslaw.com<br><br>-and-<br><br>**BIELLI & KLAUDER, LLC**<br>David M. Klauder, Esquire (No. 5769)<br>1204 N. King Street |

14

A00234

| | |
|---|---|
| | Wilmington, DE 19801<br>Telephone: (302) 803-4600<br>Fax: (302) 397-2557<br>Email: dklauder@bk-legal.com |
| Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, and Navigators Specialty Insurance Company (Appellees) | **BAYARD, P.A.**<br>Erin R. Fay (No. 5268)<br>Gregory J. Flasser (No. 6154)<br>600 North King Street, Suite 400<br>Wilmington, DE 19801<br>Telephone: (302) 655-5000<br>Fax: (302) 658-6395<br>Email: efay@bayardlaw.com<br>gflasser@bayardlaw.com<br><br>-and-<br><br>**RUGGERI PARKS WEINBERG LLP**<br>James P. Ruggeri (*pro hac vice*)<br>Joshua D. Weinberg (*pro hac vice*)<br>1875 K Street, N.W., Suite 600<br>Washington, D.C. 20006-1251<br>Telephone: (202) 469-7750<br>Fax: (202) 469-7751<br><br>-and-<br><br>**WILMER CUTLER PICKERING HALE AND DORR LLP**<br>Philip D. Anker (*pro hac vice*)<br>7 World Trade Center<br>250 Greenwich Street<br>New York, N.Y. 10007<br>Telephone: (212) 230-8890<br>Fax: (212) 230-8888<br><br>Joel Millar (*pro hac vice*)<br>1875 Pennsylvania Avenue N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 663-6000<br>Fax: (202) 663-6363 |
| Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>800 N. West Street<br>Third Floor Wilmington, Delaware 19801<br>Telephone: 302 999 1540<br>Fax: 302 762 1688 |

| | |
|---|---|
| Indemnity Insurance Company of North America (Appellees) | -and-<br><br>**O'MELVENY & MYERS LLP**<br>Tancred Schiavoni (*pro hac vice*)<br>Times Square Tower<br>7 Times Square<br>New York, New York 10036-6537<br>Telephone: (212) 326-2000<br>Fax: (212) 326-2061<br><br>**O'MELVENY & MYERS LLP**<br>Stephen Warren (*pro hac vice*)<br>400 South Hope Street<br>Los Angeles, California 90071<br>Telephone: (213) 430-6000<br>Fax: (213) 430-6407<br><br>**O'MELVENY & MYERS LLP**<br>Jonathan D. Hacker (*pro hac vice*)<br>1625 Eye Street, N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 383-5300 |
| Federal Insurance Company and Westchester Fire Insurance Company (Appellees) | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>8000 N. West Street, Third Floor<br>Wilmington, Delaware 19801<br>Telephone: (302) 999-1540<br><br>-and-<br><br>**SIMPSON THATCHER & BARTLETT LLP**<br>David Elbaum (*pro hac vice*)<br>425 Lexington Avenue<br>New York, New York 10017<br>Telephone: (212) 455-2000 |
| American Zurich Insurance Company, American Guarantee Insurance Company, and Steadfast Insurance Company (Appellees) | **TYBOUT, REDFEARN & PELL**<br>Robert D. Cecil, Jr. (No. 5317)<br>501 Carr Road, Suite 300<br>Wilmington, Delaware 19899<br>Telephone: (302) 658-6901<br>Email: rcecil@trplaw.com<br><br>-and-<br><br>**CROWELL & MORING LLP** |

16

| | |
|---|---|
| | Mark D. Plevin (*pro hac vice*)<br>Kevin D. Cacabelos (*pro hac vice*)<br>Three Embarcadero Center, 26th Floor<br>San Francisco, California 94111<br>Telephone: (415) 986-2800<br>Email: mplevin@crowell.com<br>kcacabelos@crowell.com<br><br>Tacie H. Yoon (*pro hac vice*)<br>Rachel A. Jankowski (*pro hac vice*)<br>1001 Pennsylvania Ave., N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 624-2500<br>Email: tyoon@crowell.com<br>rjankowski@crowell.com |
| Clarendon National Insurance Company, as successor in interest by merger to Clarendon America Insurance Company; River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited, on its own behalf and in turn as successor to St. Katherine Insurance Company Limited); and Zurich American Insurance Company, as successor to Maryland Casualty Company, Zurich Insurance Company, and Maryland General Insurance Company (Appellees) | **BALLARD SPAHR LLP**<br>Matthew G. Summers (No. 5533)<br>Chantelle D. McClamb (No. 5978)<br>919 N. Market Street, 11th Floor<br>Wilmington, Delaware 19801-3034<br>Telephone: (302) 252-4428<br>Fax: (302) 252-4466<br>Email: summersm@ballardspahr.com<br>mcclamb@ballardspahr.com<br><br>-and-<br><br>**STEPTOE & JOHNSON LLP**<br>Harry Lee (*pro hac vice*)<br>John O'Connor (*pro hac vice*)<br>1330 Connecticut Avenue NW<br>Washington, DC 20036<br>Telephone: (202) 429-8078<br>Fax: (202) 429-3902<br>Email: hlee@steptoe.com<br>joconnor@steptoe.com |
| Ad Hoc Committee of Local Councils of the Boy Scouts of America (Appellee) | **DLA PIPER, LLP (US)**<br>R. Craig Martin (No. 5032)<br>1201 North Market Street, Suite 2100<br>Wilmington, Delaware 19801-1147<br>Telephone: (302) 468-5655 |

Email: craig.martin@dlapiper.com

-and-

**WACHTELL, LIPTON, ROSEN & KATZ**
Richard G. Mason (*pro hac vice*)
Douglas K. Mayer (*pro hac vice*)
Joseph C. Celentino (*pro hac vice*)
Mitchell S. Levy (*pro hac vice*)
51 West 52nd Street
New York, New York 10019
Telephone: (212) 403-1000
Email: RGMason@wlrk.com
DKMayer@wlrk.com
JCCelentino@wlrk.com
MSLevy@wlrk.com

Dated: April 10, 2023
Wilmington, Delaware

*/s/ R. Karl Hill*
R. Karl Hill (Del. Bar No. 2747)
**SEITZ, VAN OGTROP & GREEN, P.A.**
222 Delaware Avenue
Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 888-0600
Email: khill@svglaw.com

-and-

**CHOATE, HALL & STEWART LLP**
Douglas R. Gooding (*pro hac vice*)
Jonathan D. Marshall (*pro hac vice*)
Two International Place
Boston, MA 02110
Telephone: (617) 248-5000
dgooding@choate.com
jmarshall@choate.com

-and-

**MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO PC**
Kim V. Marrkand (*pro hac vice*)
One Financial Center
Boston, MA 02111

18

A00238

Telephone: (617) 542-6000
kvmarrkand@mintz.com

*Counsel to Liberty Mutual Insurance Company,*
*The Ohio Casualty Insurance Company,*
*Liberty Insurance Underwriters, Inc., and*
*Liberty Surplus Insurance Corporation*

19

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 11 |
| Boy Scouts of America and Delaware BSA, LLC, | Case No. 20-10343 (LLS) |
| Debtors. | (Jointly Administered) |
| National Union Fire Insurance Co. of Pittsburgh, PA, *et al.*, Appellants. | Case No. 22-cv-01237-RGA |
| v. | (Jointly Consolidated)[1] |
| Boy Scouts of America and Delaware BSA, LLC, | |
| Appellees. | |

## NOTICE OF APPEAL TO UNITED STATES
## COURT OF APPEALS FOR THE THIRD CIRCUIT

The Dumas & Vaughn Claimants ("D & V Claimants"), appellants, appeal to the United States Court of Appeals for the Third Circuit from the Order of the district court for the district of Delaware, entered in this case on March 28, 2023, affirming the Bankruptcy Court's confirmation of Debtors' plan of reorganization (D.I. 151); the related Opinion of the district court (D.I. 150); the Bankruptcy Court's Order, dated September 8, 2022 (D.I. 1-1) ("Confirmation Order"); and the Bankruptcy Court's related Opinion, dated July 29, 2022 (Bankr. D.I. 10136), *In re Boy Scouts of Am.*, 642 B.R. 504 (Bankr. D. Del. 2022) ("Confirmation Opinion").

The parties to the order appealed from and the names and addresses of their respective attorneys are as follows:

---

[1]     Case numbers 22-cv-01237, 22-cv-01238, 22-cv-01239, 22-cv-01240, 22-cv-01241, 22-cv-01242, 22-cv-01243, 22-cv-01244, 22-cv-01245, 22-cv-01246, 22-cv-01247, 22-cv-01249, 22-cv-01250, 22-cv-01251, 22-cv-01252, 22-cv-01258, and 22-cv-01263 have been jointly consolidated under 22-cv-01237.  The D & V Claimants' appeal is docketed at 22-cv-01249.

| Dumas & Vaughn Claimants **(Appellants)** | **GELLERT SCALI BUSENKELL & BROWN, LLC** <br> Charles J. Brown, III (DE 3368) <br> 1201 N. Orange St., 3rd Floor <br> Wilmington, DE 19801 <br> Phone: (302) 425-5813 <br> Email: cbrown@gsbblaw.com <br><br> -and- <br><br> **DUMAS & VAUGHN, LLC** <br> Gilion C. Dumas <br> 3835 NE Hancock St., Ste. GL-B <br> Portland, OR 97212 <br> Telephone: (503) 616-5007 <br> Email: gilion@dumasandvaughn.com |
|---|---|
| Lujan Claimants **(Appellants)** | **LOIZIDES, P.A.** <br> Christopher D. Loizides (DE No. 3968) <br> 1225 North King Street, Suite 800 <br> Wilmington, DE 19801 <br> Telephone: (302) 654-0248 <br> Email: Loizides@loizides.com <br><br> -and- <br><br> **LUJAN & WOLFF LLP** <br> Delia Lujan Wolff (*pro hac vice*) <br> Suite 300, DNA Bldg. <br> 238 Archbishop Flores St. <br> Hagatna, Guam 96910 <br> Telephone: (671) 477-8064/5 <br> Email: dslwolff@lawguam.com |
| Allianz Global Risks US Insurance Company **(Appellants)** | **TROUTMAN PEPPER HAMILTON SANDERS LLP** <br> David M. Fournier (DE No. 2812) <br> Marcy J. McLaughlin Smith (DE No. 6184) <br> Hercules Plaza <br> 1313 Market Street <br> Suite 5100 |

2

| | |
|---|---|
| | P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: (404) 885-3000<br>Email: david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**PARKER, HUDSON, RAINER & DOBBS**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA  30308<br>Telephone: (404) 420-4313<br>Email: hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>-and-<br><br>**McDERMOTT WILL & EMERY LLP**<br>Margaret H. Warner (*pro hac vice*)<br>Ryan S. Smethurst (*pro hac vice*)<br>Alex M. Spisak (*pro hac vice*)<br>The McDermott Building<br>500 North Capitol Street, NW<br>Washington, DC 20001-1531<br>Telephone: (202) 756-8228<br>Email: mwarner@mwe.com<br>rsmethurst@mwe.com<br>aspisak@mwe.com |
| Arch Insurance Company **(Appellants)** | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (DE No. 2898)<br>1000 North West Street<br>Suite 1501<br>P.O. Box 410<br>Wilmington, DE  19899<br>Telephone: (302) 652-8400<br>Email: kmiller@skjlaw.com |

3

| | |
|---|---|
| | -and-<br><br>**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**<br>Ronald P. Schiller (*pro hac vice*)<br>Matthew A. Hamermesh (*pro hac vice*)<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>Telephone: (215) 568 6200<br>Email: rschiller@hangley.com<br>mhamermesh@hangley.com |
| Argonaut Insurance Company and Colony Insurance Company **(Appellants)** | **POST & SCHELL, P.C.**<br>Paul Logan (DE No. 3339)<br>300 Delaware Avenue<br>Suite 1380<br>Wilmington, DE  19801<br>Telephone: (302) 251-8856<br>Email: plogan@postschell.com<br><br>John C. Sullivan (*pro hac vice*)<br>Kathleen K. Kerns (*pro hac vice*)<br>Four Penn Center – 13th Floor<br>1600 John F. Kennedy Boulevard<br>Philadelphia, PA  19103<br>Email: jsullivan@postschell.com<br>kkerns@postschell.com<br><br>-and-<br><br>**IFRAH PLLC**<br>George R. Calhoun (*pro hac vice*)<br>1717 Pennsylvania Ave., N.W., Suite 650<br>Washington, DC  20006<br>Telephone: (202) 840-8758<br>Email: george@ifrahlaw.com |
| Arrowood Indemnity Company | **JOYCE, LLC**<br>Michael J. Joyce (DE No. 4563) |

4

| | |
|---|---|
| **(Appellants)** | 1225 King Street, Suite 800<br>Wilmington, DE 19801<br>Telephone: (302) 388-1944<br>Email: mjoyce@mjlawoffices.com<br><br>-and-<br><br>**COUGHLIN MIDLIGE & GARLAND, LLP**<br>Kevin Coughlin (*pro hac vice*)<br>Lorraine Armenti (*pro hac vice*)<br>Michael Hrinewski (*pro hac vice*)<br>350 Mount Kemble Ave., PO Box 1917<br>Morristown, NJ 07962<br>Telephone: (973) 267-0058<br>Email: larmenti@cmg.law<br>mhrinewski@cmg.law<br><br>-and-<br><br>**CARRUTHERS & ROTH, P.A.**<br>Britton C. Lewis<br>John M. Flynn<br>235 N. Edgeworth St., P.O. Box 540<br>Greensboro, NC  27401<br>Telephone: (336) 478-1146<br>Email: bcl@crlaw.com<br>bcl@crlaw.com |
| The Continental Insurance Company and Columbia Casualty Company **(Appellants)** | **GOLDSTEIN & MCCLINTOCK LLLP**<br>Maria Aprile Sawczuk (DE No. 3320)<br>501 Silverside Road<br>Wilmington, DE 19809<br>Telephone: (302) 444-6710<br>Email: marias@goldmclaw.com<br><br>-and-<br><br>**LOEB & LOEB LLP**<br>Laura McNally (*pro hac vice*)<br>Emily Stone (*pro hac vice*) |

5

| | |
|---|---|
| | 321 N. Clark Street, Suite 2300<br>Chicago, IL 60654<br>Telephone: (312) 464-3155<br>Email: lmcnally@loeb.com<br>estone@loeb.com |
| Gemini Insurance Company **(Appellants)** | **WERB & SULLIVAN**<br>Brian A. Sullivan (DE No. 2098)<br>LEGAL ARTS BUILDING<br>1225 N. King Street<br>Suite 600<br>Wilmington, Delaware  19801<br>Telephone: (302) 652-1100<br>Email: bsullivan@werbsullivan.com<br><br>-and-<br><br>**GIEGER LABORDE & LAPEROUOSE, LLC**<br>John E.W. Baay II (*pro hac vice*)<br>701 Poydras Street<br>Suite 4800<br>New Orleans, LA 70139<br>Telephone: (504) 561-0400<br>Email: jbaay@glllaw.com<br><br>-and-<br><br>**KIERNAN TREBACH LLP**<br>William H. White Jr (*pro hac vice*)<br>1233 20th Street, NW<br>8th Floor<br>Washington, DC 20036<br>Telephone: (202) 712-7000<br>Email: wwhite@kiernantrebach.com |
| General Star Indemnity Company **(Appellants)** | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (DE No. 2898)<br>1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899 |

6

A00245

| | |
|---|---|
| | Telephone: (302) 652-8400<br>Email: kmiller@skjlaw.com<br><br>-and-<br><br>**WILEY REIN LLP**<br>Mary E. Borja (*pro hac vice*)<br>Gary P. Seligman (*pro hac vice*)<br>Ashley L. Criss (*pro hac vice*)<br>2050 M Street NW<br>Washington, DC 20036<br>Telephone: (202) 719-7000<br>Email: mborja@wiley.law<br>gseligman@wiley.law<br>acriss@wiley.law |
| Great American Assurance Company, f/k/a Agricultural Insurance Company; Great American E&S Insurance Company, f/k/a Agricultural Excess and Surplus Insurance Company; and Great American E&S Insurance Company **(Appellants)** | **BODELL BOVÉ, LLC**<br>Bruce W. McCullough (DE No. 3112)<br>1225 N. King Street, Suite 1000<br>P.O. Box 397<br>Wilmington, DE 19899-0397<br>Telephone: (302) 655-6749,<br>Email: bmccullough@bodellbove.com<br><br>-and-<br><br>**CLYDE & CO US LLP**<br>Bruce D. Celebrezze (*pro hac vice*)<br>150 California Street, 15th Floor<br>San Francisco, California 94111<br>Telephone: (415) 365-9800<br>Email: bruce.celebrezze@clydeco.us<br><br>**CLYDE & CO US LLP**<br>Konrad R. Krebs (*pro hac vice*)<br>340 Mt. Kemble Avenue, Suite 300<br>Morristown, NJ 07960<br>Telephone: (973) 210-6700<br>Email: konrad.krebs@clydeco.us |

7

| | |
|---|---|
| | -and-<br><br>**DAVID CHRISTIAN ATTORNEYS LLC**<br>David Christian (*pro hac vice*)<br>105 W. Madison St., Suite 1400<br>Chicago, IL 60602<br>Telephone: (312) 282-5282<br>Email: dchristian@dca.law |
| Indian Harbor Insurance Company, on behalf of itself and as successor in interest to Catlin Specialty Insurance Company<br>**(Appellants)** | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (DE No. 2898)<br>1000 West Street, Suite 1501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400<br>Email: kmiller@skjlaw.com<br><br>-and-<br><br>**MOUND COTTON WOLLAN & GREENGRASS LLP**<br>Lloyd A. Gura (*pro hac vice*)<br>Pamela J. Minetto (*pro hac vice*)<br>One New York Plaza 44th Floor<br>New York, NY 10004<br>Telephone: (212) 804-4282<br>Email: lgura@moundcotton.com<br>pminetto@moundcotton.com |
| Liberty Mutual Insurance Company, The Ohio Casualty Insurance Company, Liberty Insurance Underwriters Inc., Liberty Surplus Insurance Corporation,<br>**(Appellants)** | **SEITZ, VAN OGTROP & GREEN, P.A**<br>R. Karl Hill (DE No. 2747)<br>222 Delaware Avenue<br>Suite 1500<br>Wilmington, Delaware 19801<br>Telephone: (302) 888-0600<br>Email: khill@svglaw.com<br><br>-and-<br><br>**CHOATE, HALL & STEWART, LLP**<br>Douglas R. Gooding (*pro hac vice*) |

8

| | |
|---|---|
| | Jonathan D. Marshall (*pro hac vice*)<br>Two International Place<br>Boston, MA 02110<br>Telephone: (617) 248-5000<br>Email: dgooding@choate.com<br>jmarshall@choate.com<br><br>-and-<br><br>**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC**<br>Kim V. Marrkand (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 542-6000<br>Email: kmarrkand@mintz.com |
| Munich Reinsurance America, Inc., formerly known as American Re-Insurance Company **(Appellants)** | **DILWORTH PAXSON LLP**<br>Thaddeus J. Weaver (DE No. 2790)<br>704 King Street, Suite 500<br>P.O. Box 1031<br>Wilmington, DE  19899-1031<br>Telephone: (302) 571-8867<br>Email: tweaver@dilworthlaw.com<br><br>**DILWORTH PAXSON LLP**<br>William E. McGrath, Jr. (*pro hac vice*)<br>2 Research Way, Suite 103<br>Princeton, NJ  08540<br>Telephone: (609) 924-6000<br>Email: wmcgrath@dilworthlaw.com |
| National Surety Corporation and Interstate Fire & Casualty Company **(Appellants)** | **TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>David M. Fournier (DE No. 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Hercules Plaza, Suite 5100<br>1313 Market Street<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: (302) 777-6500 |

9

| | |
|---|---|
| | Email: david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**Parker, Hudson, Rainer & Dobbs**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA  30308<br>Telephone: (404) 420-4313<br>Email: hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>*-and-*<br><br>**BRADLEY RILEY JACOBS PC**<br>Todd C. Jacobs (*pro hac vice*)<br>John E. Bucheit (*pro hac vice*)<br>Paul J. Esker (*pro hac vice*)<br>500 West Madison Street<br>Suite 1000<br>Chicago, IL 60661<br>Telephone: (312) 281-0295<br>Email: TJacobs@bradleyriley.com<br>jbucheit@bradleyriley.com<br>pesker@bradleyriley.com |
| National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, and The Insurance Company of the State of Pennsylvania (the "AIG Companies") | **FINEMAN KREKSTEIN & HARRIS PC**<br>Deirdre M. Richards<br>1300 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 538-8331<br>Email: drichards@finemanlawfirm.com<br><br>-and-<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br>Michael A. Rosenthal (*pro hac vice*) |

10

| **(Appellants)** | Mitchell A. Karlan (*pro hac vice*)<br>James Hallowell (*pro hac vice*)<br>Keith R. Martorana (*pro hac vice*)<br>Seth M. Rokosky (*pro hac vice*)<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 351-4000<br>Email: mrosenthal@gibsondunn.com<br>mkarlan@gibsondunn.com<br>jhallowell@gibsondunn.com<br>kmartorana@gibsondunn.com<br>srokosky@gibsondunn.com<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br>Theodore J. Boutrous Jr. (*pro hac vice*)<br>Richard J. Doren (*pro hac vice*)<br>Blaine H. Evanson (*pro hac vice*)<br>333 South Grand Avenue<br>Los Angeles, California 90071<br>Telephone: (213) 229-7038<br>Email: rdoren@gibsondunn.com<br>bevanson@gibsondunn.com<br>tboutrous@gibsondunn.com<br><br>-and-<br><br>**FORAN GLENNON PALANDECH PONZI & RUDLOFF P.C.**<br>Susan N.K. Gummow<br>222 N. LaSalle St., Suite 1400<br>Chicago, Illinois 60601<br>Telephone: (312) 863-5000<br>Email: sgummow@fgppr.com |
| Old Republic<br>Insurance Company<br>**(Appellants)** | **MORRIS JAMES LLP**<br>Stephen M. Miller (DE No. 2610)<br>Carl N. Kunz, III (DE No. 3201)<br>500 Delaware Avenue, Suite 1500<br>Wilmington, Delaware 19801<br>Telephone: (302) 888-6800 |

11

A00250

|  | Email: smiller@morrisjames.com<br>ckunz@morrisjames.com<br><br>-and-<br><br>**FOX SWIBEL LEVIN & CARROLL LLP**<br>Margaret M. Anderson (*pro hac vice*)<br>Ryan T. Schultz (*pro hac vice*)<br>Adam A. Hachikian (*pro hac vice*)<br>Kenneth M. Thomas (*pro hac vice*)<br>200 W. Madison Street, Suite 3000<br>Chicago, Illinois 60606<br>Telephone: (312) 224-1200<br>Email: panderson@foxswibel.com<br>rschultz@foxswibel.com<br>ahachikian@foxswibel.com<br>kthomas@foxswibel.com |
|---|---|
| Traders and Pacific Insurance Company, Endurance American Specialty Insurance Company, and Endurance American Insurance Company **(Appellants)** | **COZEN O'CONNOR**<br>Marla S. Benedek (DE No. 6638)<br>1201 N. Market Street, Suite 1001<br>Wilmington, DE 19801<br>Telephone:  (302) 295-2024<br>Email: mbenedek@cozen.com |
| Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company), St. Paul Surplus Lines Insurance Company and Gulf Insurance Company **(Appellants)** | **REGER RIZZO & DARNALL LLP**<br>Louis J. Rizzo, Jr. (DE No. 3374)<br>1521 Concord Pike, Suite 305<br>Brandywine Plaza West<br>Wilmington, Delaware 19803<br>Telephone: (302) 477-7100<br>Email: lrizzo@regerlaw.com |
|  |  |

A00251

| Boy Scouts of America, and Delaware BSA, LLC (**Debtors/Appellees**) | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br>Derek C. Abbott (DE No. 3376)<br>Andrew R. Remming (DE No. 5120)<br>Paige N. Topper (DE No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>Email: dabbot@morrisnichols.com<br>aremming@morrisnichols.com<br>ptopper@morrisnichols.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Jessica C. Lauria (*pro hac vice*)<br>Glenn M. Kurtz (*pro hac vice*)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Email: jessica.lauria@whitecase.com<br>gkurtz@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Michael C. Andolina<br>Matthew E. Linder<br>Laura E. Baccash<br>Blair M. Warner<br>111 South Wacker Drive<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>Email: mandolina@whitecase.com<br>mlinder@whitecase.com<br>laura.baccash@whitecase.com<br>blair.warner@whitecase.com<br><br>– and – |

13

| | |
|---|---|
| | WHITE & CASE LLP<br>Ronald K. Gorsich<br>Doah Kim<br>555 South Flower Street, Suite 2700<br>Los Angeles, CA 90071<br>Telephone: (213) 620-7700<br>rgorsich@whitecase.com<br>doah.kim@whitecase.com |
| Tort Claimants'<br>Committee<br>**(Appellees)** | **PACHULSKI STANG ZIEHL & JONES LLP**<br>Richard M. Pachulski (*pro hac vice*)<br>Alan J. Kornfeld (*pro hac vice*)<br>Debra I. Grassgreen (*pro hac vice*)<br>Iain A.W. Nasatir (*pro hac vice*)<br>James E. O'Neill (DE No. 4042)<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899-8705 (Courier 19801)<br>Telephone: (302) 652-4100<br>Email: rpachulski@pszjlaw.com<br>akornfeld@pszjlaw.com<br>dgrassgreen@pszjlaw.com<br>inasatir@pszjlaw.com<br>joneill@pszjlaw.com |
| Coalition of Abused<br>Scouts for Justice<br>**(Appellees)** | **MONZACK MERSKY AND BROWDER, P.A**<br>Rachel B. Mersky (DE No. 2049)<br>1201 North Orange Street, Suite 400<br>Wilmington, Delaware 19801<br>Telephone: (302) 656-8162<br>Email: rmersky@monlaw.com<br><br>–and–<br><br>**BROWN RUDNICK LLP**<br>David J. Molton (*pro hac vice*)<br>Eric R. Goodman  (*pro hac vice*)<br>Seven Times Square<br>New York, NY 10036<br>Telephone: (212) 209-4800 |

14

| | |
|---|---|
| | Email: dmolton@brownrudnick.com<br>egoodman@brownrudnick.com<br><br>–and–<br><br>**BROWN RUDNICK LLP**<br>Sunni P. Beville (*pro hac vice*)<br>Tristan G. Axelrod (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 856-8200<br>Email: sbeville@brownrudnick.com<br>taxelrod@brownrudnick.com |
| Future Claimants'<br>Representative<br>**(Appellees)** | **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br>Robert S. Brady (DE No. 2847)<br>Edwin J. Harron (DE No. 3396)<br>Kenneth J. Enos (DE No. 4544)<br>Ashley E. Jacobs (DE No. 5635)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Email: rbrady@ycst.com<br>eharron@ycst.com<br>kenos@ycst.com<br>ajacobs@ycst.com<br><br>-and-<br><br>**GILBERT LLP**<br>Kami E. Quinn (*pro hac vice*)<br>Rachel H. Jennings (*pro hac vice*)<br>Kyle Y. Dechant (*pro hac vice*)<br>December L. Huddleston (*pro hac vice*)<br>700 Pennsylvania Ave., SE, Suite 400<br>Washington, DC 20003<br>Telephone:  (202) 772-2200<br>Email:  quinnk@gilbertlegal.com<br>jenningsr@gilbertlegal.com |

15

| | |
|---|---|
| | denchantk@gilbertlegal.com<br>huddlestond@gilbertlegal.com |
| The Zalkin Law Firm, P.C. and Pfau Cochran Vertetis Amala PLLC **(Appellees)** | **KTBS LAW LLP**<br>Thomas E. Patterson (*pro hac vice*)<br>Daniel J. Bussel (*pro hac vice*)<br>Robert J. Pfister (*pro hac vice*)<br>Sasha M. Gurvitz (*pro hac vice*)<br>1801 Century Park East, Twenty-Sixth Floor<br>Los Angeles, California 90067<br>Telephone (310) 407-4000<br>Email: tpatterson@ktbslaw.com<br>dbussel@ktbslaw.com<br>rpfister@ktbslaw.com<br>sgurvitz@ktbslaw.com<br><br>-and-<br><br>**BIELLI & KLAUDER, LLC**<br>David M. Klauder  (DE No. 5769)<br>1204 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 803-4600<br>Email: dklauder@bk-legal.com |
| Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, and Navigators Specialty Insurance Company **(Appellees)** | **BAYARD, P.A.**<br>Erin R. Fay (DE No. 5268)<br>Gregory J. Flasser (DE No. 6154)<br>600 North King Street, Suite 400<br>Wilmington, DE 19801<br>Telephone: (302) 655-5000<br>Email: efay@bayardlaw.com<br>gflasser@bayardlaw.com<br><br>-and-<br><br>**RUGGERI PARKS WEINBERG LLP**<br>James P. Ruggeri (*pro hac vice*)<br>Joshua D. Weinberg (*pro hac vice*)<br>1875 K Street, N.W., Suite 600 |

16

| | |
|---|---|
| | Washington, D.C. 20006-1251<br>Telephone: (202) 469-7750<br>Email: jruggeri@ruggerilaw.com<br>jweinberg@ruggerilaw.com<br><br>-and-<br><br>**WILMER CUTLER PICKERING HALE AND DORR LLP**<br>Philip D. Anker (*pro hac vice*)<br>7 World Trade Center<br>250 Greenwich Street<br>New York, N.Y. 10007<br>Telephone: (212) 230-8890<br>Email: philip.anker@wilmerhale.com<br><br>Joel Millar (*pro hac vice*)<br>1875 Pennsylvania Avenue N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 663-6000<br>Email: joel.millar@wilmerhale.com |
| Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America **(Appellees)** | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (DE No. 4606)<br>800 N. West Street<br>Third Floor Wilmington, Delaware 19801<br>Telephone: (302) 999-1540<br>Email: stamoulis@swdelaw.com<br><br>-and-<br><br>**O'MELVENY & MYERS LLP**<br>Tancred Schiavoni (*pro hac vice*)<br>Times Square Tower<br>7 Times Square<br>New York, New York 10036-6537<br>Telephone: (212) 326-2000<br>Email: tschiavoni@omm.com |

| | |
|---|---|
| | **O'MELVENY & MYERS LLP**<br>Steve Warren<br>400 South Hope Street<br>Los Angeles, California 90071<br>Telephone: (213) 430-6000<br>Email: swarren@omm.com<br><br>**O'MELVENY & MYERS LLP**<br>Jonathan D. Hacker (*pro hac vice*)<br>1625 Eye Street, N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 383-5300<br>Email: jhacker@omm.com |
| American Zurich<br>Insurance Company,<br>American Guarantee<br>Insurance Company,<br>and Steadfast<br>Insurance Company<br>**(Appellees)** | **TYBOUT, REDFEARN & PELL**<br>Robert D. Cecil, Jr. (DE No. 5317)<br>501 Carr Road, Suite 300<br>Wilmington, Delaware 19899<br>Telephone: (302) 658-6901<br>Email: rcecil@trplaw.com<br><br>-and-<br><br>**CROWELL & MORING LLP**<br>Mark D. Plevin (*pro hac vice*)<br>Kevin D. Cacabelos (*pro hac vice*)<br>Three Embarcadero Center, 26th Floor<br>San Francisco, California 94111<br>Telephone: (415) 986-2800<br>Email: mplevin@crowell.com<br>kcacabelos@crowell.com<br><br>Tacie H. Yoon (*pro hac vice*)<br>Rachel A. Jankowski (*pro hac vice*)<br>1001 Pennsylvania Ave., N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 624-2500<br>Email: tyoon@crowell.com<br>rjankowski@crowell.com |

| | |
|---|---|
| Clarendon National Insurance Company, as successor in interest by merger to Clarendon America Insurance Company; River Thames Insurance Company Limited, as successor in interest to Union America Insurance Company; and Zurich American Insurance Company, as successor to Maryland Casualty Company, Zurich Insurance Company, and American General Fire & Casualty Company **(Appellees)** | **BALLARD SPAHR LLP**<br>Matthew G. Summers (DE No. 5533)<br>Chantelle D. McClamb (DE No. 5978)<br>919 N. Market Street, 11th Floor<br>Wilmington, Delaware 19801-3034<br>Telephone: (302) 252-4428<br>Email: summersm@ballardspahr.com<br>mcclambc@ballardspahr.com<br><br>-and-<br><br>**STEPTOE & JOHNSON LLP**<br>Harry Lee (*pro hac vice*)<br>John O'Connor (*pro hac vice*)<br>1330 Connecticut Avenue NW<br>Washington, DC 20036<br>Telephone: (202) 429-8078<br>Email: hlee@steptoe.com<br>joconnor@steptoe.com |
| Ad Hoc Committee of Local Councils of the Boy Scouts of America **(Appellees)** | **DLA PIPER LLC (US)**<br>R. Craig Martin (DE No. 5032)<br>1201 North Market Street, Suite 2100<br>Wilmington, Delaware 19801-1147<br>Telephone: (302) 468-5655<br>Email: craig.martin@dlapiper.com<br><br>-and-<br><br>**WACHTELL, LIPTON, ROSEN & KATZ**<br>Richard G. Mason (*pro hac vice*)<br>Douglas K. Mayer (*pro hac vice*)<br>Joseph C. Celentino (*pro hac vice*)<br>Mitchell S. Levy (*pro hac vice*)<br>51 West 52nd Street<br>New York, New York 10019 |

19

|  | Telephone: (212) 403-1000<br>Email: RGMason@wlrk.com<br>DKMayer@wlrk.com<br>JCCelentino@wlrk.com<br>MSLevy@wlrk.com |
|---|---|
| Federal Insurance Company and Westchester Fire Insurance Company **(Appellees)** | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (DE No. 4606)<br>800 N. West Street<br>Third Floor Wilmington, Delaware 19801<br>Telephone: (302) 999-1540<br>Email:  stamoulis@swdelaw.com<br><br>**-and-**<br><br>**SIMPSON THACHER & BARTLETT LLP**<br>David Elbaum (*pro hac vice*)<br>425 Lexington Avenue<br>New York, New York 10017<br>Telephone: (212) 455-2846<br>Email:  david.elbaum@stblaw.com |

Dated:  April 10, 2023        GELLERT SCALI BUSENKELL & BROWN LLC

/s/ *Charles J. Brown, III*
Charles J. Brown, III (DE No. 3368)
1201 N. Orange St., 3rd Floor
Wilmington, DE 19801
Phone: (302) 425-5813
Email: cbrown@gsbblaw.com

DUMAS & VAUGHN, LLC

/s/ *Gilion C. Dumas*
Dumas & Vaughn, LLC, *pro hac vice*
3835 NE Hancock Street, Suite GLB
Portland, OR 97212
Telephone: (503) 616-5007
Email: gilion@dumasandvaughn.com

*Counsel to D & V Claimants*

20

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 11 |
| Boy Scouts of America and Delaware BSA, LLC, | Case No. 20-10343 (LLS) |
| | (Jointly Administered) |
| Debtors. | |
| National Union Fire Insurance Co. of Pittsburgh, PA, *et al.*, | Case No. 22-cv-01237-RGA |
| Appellants. | |
| v. | (Jointly Consolidated) |
| Boy Scouts of America and Delaware BSA, LLC, | |
| Appellees. | |

## CERTIFICATE OF SERVICE

I, Charles J. Brown, III, hereby certify that on April 10, 2023, I caused a copy of the foregoing *Notice of Appeal to United States Court of Appeals for the Third Circuit* to be electronically filed and served on all registered users of the Court's Case Management/ Electronic Case File ("CM/ECF") in this case via CM/ECF.

Dated: April 10, 2023

BY: /s/ *Charles J. Brown, III*
Charles J. Brown, III (No. 3368)
1201 N. Orange St., 3rd Floor
Wilmington, DE 19801
Phone: (302) 425-5813
Email: cbrown@gsbblaw.com

*Counsel to D & V Claimants*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Bankruptcy Case No. 20-10343-LSS |
| | (Jointly Administered) |
| Debtors. | |
| | |
| NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA, *et al.*, | Case No. 22-cv-01237-RGA |
| Appellants, | |
| v. | |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | |
| Appellees. | |

## NOTICE OF APPEAL TO THE UNITED STATES
## COURT OF APPEALS FOR THE THIRD CIRCUIT

NOTICE IS HEREBY GIVEN that Appellants, Continental Insurance Company and Columbia Casualty Company, appeal to the United States Court of Appeals for the Third Circuit from the final Order and accompanying Opinion of the United States District Court for the District of Delaware (Hon. Richard G. Andrews), entered March 28, 2023 (D.I. 150, 151), among other things affirming the *Supplemental Findings of Fact and Conclusions of Law and Order Confirming the Third Modified Fifth Amended Chapter 11 Plan of Reorganization (with Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC* (Bankruptcy D.I. 10316) and accompanying Opinion (Bankruptcy D.I. 10136) of the United States Bankruptcy Court for the

District of Delaware (Hon. Laurie S. Silverstein), and all other orders, decisions, and opinions subsumed therein.

The parties to the order appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

| | |
|---|---|
| National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, and The Insurance Company of the State of Pennsylvania (the "AIG Companies") (Appellants) | **FINEMAN KREKSTEIN & HARRIS PC**<br>Deirdre M. Richards<br>1300 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 538-8331<br>Email: drichards@finemanlawfirm.com<br><br>-and-<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br>Michael A. Rosenthal (*pro hac vice*)<br>Mitchell A. Karlan (*pro hac vice*)<br>James Hallowell (*pro hac vice*)<br>Keith R. Martorana (*pro hac vice*)<br>Seth M. Rokosky (*pro hac vice*)<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 351-4000<br>Email: mrosenthal@gibsondunn.com<br>mkarlan@gibsondunn.com<br>jhallowell@gibsondunn.com<br>kmartorana@gibsondunn.com<br>srokosky@gibsondunn.com<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br>Theodore J. Boutrous Jr. (*pro hac vice*)<br>Richard J. Doren (*pro hac vice*)<br>Blaine H. Evanson (*pro hac vice*)<br>333 South Grand Avenue<br>Los Angeles, California 90071<br>Telephone: (213) 229-7038<br>Email: rdoren@gibsondunn.com<br>bevanson@gibsondunn.com<br>tboutrous@gibsondunn.com<br><br>**FORAN GLENNON PALANDECH PONZI & RUDLOFF P.C.**<br>Susan N.K. Gummow<br>222 N. LaSalle St., Suite 1400 |

| | |
|---|---|
| | Chicago, Illinois 60601<br>Telephone: (312) 863-5000<br>Email: sgummow@fgppr.com |
| Allianz Global Risks US Insurance Company (Appellant) | **TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>David M. Fournier (DE Bar No. 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Hercules Plaza<br>1313 Market Street<br>Suite 5100<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: 404.885.3000<br>david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**PARKER, HUDSON, RAINER & DOBBS LLP**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA  30308<br>Telephone: 404.420.4313<br>Facsimile: 404.522.8409<br>hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>-and-<br><br>**McDERMOTT WILL & EMERY LLP**<br>Margaret H. Warner (*pro hac vice*)<br>Ryan S. Smethurst (*pro hac vice*)<br>Alex M. Spisak (*pro hac vice*)<br>The McDermott Building<br>500 North Capitol Street, NW<br>Washington, DC 20001-1531<br>Telephone: 202.756.8228<br>Facsimile: 202.756.8087<br>mwarner@mwe.com<br>rsmethurst@mwe.com<br>aspisak@mwe.com |
| National Surety Corporation and Interstate Fire & Casualty Company | **TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>David M. Fournier (DE Bar No. 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Hercules Plaza, Suite 5100 |

3

| | |
|---|---|
| (Appellants) | 1313 Market Street<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: 302.777.6500<br>Facsimile: 302.421.8390<br>david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**PARKER, HUDSON, RAINER & DOBBS LLP**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA  30308<br>Telephone: 404.420.4313<br>Facsimile: 404.522.8409<br>hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>-and-<br><br>**BRADLEY RILEY JACOBS PC**<br>Todd C. Jacobs (*pro hac vice*)<br>John E. Bucheit (*pro hac vice*)<br>Paul J. Esker (*pro hac vice*)<br>500 West Madison Street<br>Suite 1000<br>Chicago, IL 60661<br>Telephone: 312.281.0295<br>tjacobs@bradleyriley.com<br>jbucheit@bradleyriley.com<br>pesker@bradleyriley.com |
| Arch Insurance Company<br>(Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (No. 2898)<br>1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400<br>kmiller@skjlaw.com<br><br>**HANGLEY ARONCHICK SEGAL**<br>**PUDLIN & SCHILLER**<br>Ronald P. Schiller (*pro hac vice*)<br>Matthew A. Hamermesh (*pro hac vice*) |

4

| | One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>T: (215) 568-6200<br>F: (215) 568-0300<br>E: rschiller@hangley.com<br>mhamermesh@hangley.com |
|---|---|
| Argonaut Insurance Company and Colony Insurance Company (Appellants) | **POST & SCHELL, P.C.**<br>Paul Logan (No. 3339)<br>300 Delaware Avenue, Suite 1380<br>Wilmington, DE  19801<br>Telephone:  (302) 251-8856<br>Email:  plogan@postschell.com<br><br>**POST & SCHELL, P.C.**<br>John C. Sullivan (*pro hac vice*)<br>Kathleen K. Kerns (*pro hac vice*)<br>Four Penn Center – 13th Floor<br>1600 John F. Kennedy Boulevard<br>Philadelphia, PA  19103<br>Telephone:  (215) 587-1000<br>jsullivan@postschell.com<br>kkerns@postschell.com<br><br>-and-<br><br>**IFRAH PLLC**<br>George R. Calhoun (*pro hac vice*)<br>1717 Pennsylvania Avenue, N.W. Suite 650<br>Washington, DC  20006<br>Telephone:  (202) 840-8758<br>george@ifrahlaw.com |
| Arrowood Indemnity Company (Appellant) | **JOYCE, LLC**<br>Michael J. Joyce (No. 4563)<br>1225 King Street, Suite 800<br>Wilmington, DE 19801<br>Telephone:  (302) 388-1944<br>Email:  mjoyce@mjlawoffices.com<br><br>-and-<br><br>**COUGHLIN MIDLIGE & GARLAND, LLP**<br>Kevin Coughlin (*pro hac vice*)<br>Lorraine Armenti (*pro hac vice*)<br>Michael Hrinewski (*pro hac vice*)<br>350 Mount Kemble Avenue<br>PO Box 1917 |

5

| | |
|---|---|
| | Morristown, NJ 07962<br>Telephone:  (973) 267-0058<br>Facsimile:  973-267-6442<br>kcoughlin@cmg.law<br>larmenti@cmg.law<br>mhrinewski@cmg.law<br><br>-and-<br><br>**CARRUTHERS & ROTH, P.A.**<br>Britton C. Lewis<br>John M. Flynn<br>235 N. Edgeworth Street<br>P.O. Box 540<br>Greensboro, NC  27401<br>Telephone:  (336) 478-1146<br>Facsimile:  (336) 478-1145<br>jmf@crlaw.com<br>bcl@crlaw.com |
| Continental Insurance Company and Columbia Casualty Company (Appellants) | **GOLDSTEIN & MCCLINTOCK LLLP**<br>Maria Aprile Sawczuk (DE #3320)<br>501 Silverside Road<br>Wilmington, DE 19809<br>302-444-6710<br>marias@goldmclaw.com<br><br>-and-<br><br>**LOEB & LOEB LLP**<br>Laura McNally (*pro hac vice*)<br>Emily Stone (*pro hac vice*)<br>321 N. Clark Street, Suite 2300<br>Chicago, IL 60654<br>312-464-3155<br>lmcnally@loeb.com<br>estone@loeb.com |
| Gemini Insurance Company (Appellant) | **WERB & SULLIVAN**<br>**LEGAL ARTS BUILDING**<br>Brian A. Sullivan (No. 2098)<br>1225 N. King Street<br>Suite 600<br>Wilmington, Delaware 19801<br>Telephone: (302) 652-1100<br>Cell: (302) 757-9932<br>Facsimile: (302) 652-1111<br>Email: bsullivan@werbsullivan.com |

6

A00266

| | **GIEGER LABORDE & LAPEROUOSE, LLC**<br>John E.W. Baay II (*pro hac vice*)<br>701 Poydras Street<br>Suite 4800<br>New Orleans, LA 70139<br>Tel.: 504-561-0400<br>Fax: 504-561-1011<br>Email: jbaay@glllaw.com<br><br>-and-<br><br>**KIERNAN TREBACH LLP**<br>William H. White Jr (*pro hac vice*)<br>1233 20th Street, NW<br>8th Floor<br>Washington, DC 20036<br>Tel.: 202-712-7000<br>Fax: 202-712-7100<br>Email: wwhite@kiernantrebach.com |
|---|---|
| General Star Indemnity Company<br>(Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (DE Bar No. 2898)<br>1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400<br>Email: kmiller@skjlaw.com<br><br>-and-<br><br>**WILEY REIN LLP**<br>Mary E. Borja (*pro hac vice*)<br>Gary P. Seligman (*pro hac vice*)<br>Ashley L. Criss (*pro hac vice*)<br>2050 M Street NW<br>Washington, DC 20036<br>Phone: (202) 719-7000<br>Email: mborja@wiley.law<br>gseligman@wiley.law<br>acriss@wiley.law |
| Great American Assurance Company, f/k/a Agricultural Insurance Company; Great American E&S Insurance | **BODELL BOVÉ, LLC**<br>Bruce W. McCullough (No. 3112)<br>1225 N. King Street, Suite 1000<br>Wilmington, Delaware 19801-3250<br>Telephone: (302) 655-6749<br>bmccullough@bodellbove.com |

7

| | |
|---|---|
| Company, f/k/a Agricultural Excess and Surplus Insurance Company; and Great American E&S Insurance Company (Appellants) | -and-<br><br>**CLYDE & CO US LLP**<br>Bruce D. Celebrezze (*pro hac vice*)<br>150 California Street \| 15th Floor<br>San Francisco, California 94111<br>Telephone: (415) 365-9800<br>Facsimile: (415) 365-9801<br>bruce.celebrezze@clydeco.us<br><br>**CLYDE & CO US LLP**<br>Konrad R. Krebs (*pro hac vice*)<br>340 Mt. Kemble Avenue \| Suite 300<br>Morristown, NJ 07960<br>Telephone: (973) 210-6700<br>Facsimile: (973) 210-6701<br>konrad.krebs@clydeco.us<br><br>-and-<br><br>**DAVID CHRISTIAN ATTORNEYS LLC**<br>David Christian (*pro hac vice*)<br>105 W. Madison St., Suite 1400<br>Chicago, Illinois 60602<br>Telephone: (312) 282-5282<br>dchristian@dca.law |
| Indian Harbor Insurance Company, on behalf of itself and as successor in interest to Catlin Specialty Insurance Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (No. 2898)<br>1000 West Street, Suite 1501<br>P.O. Box 410<br>Wilmington, DE  19899 [Courier 19801]<br>Telephone: (302) 652-8400<br>Facsimile: (302) 652-8405<br>kmiller@skjlaw.com<br><br>and<br><br>**MOUND COTTON WOLLAN & GREENGRASS LLP**<br>Lloyd A. Gura (*pro hac vice*)<br>Pamela J. Minetto (*pro hac vice*)<br>One New York Plaza 44th Floor<br>New York, NY 10004<br>Tel: (212) 804-4282<br>lgura@moundcotton.com |

8

| | |
|---|---|
| | pminetto@moundcotton.com |
| Liberty Mutual Insurance Company, The Ohio Casualty Insurance Company, Liberty Insurance Underwriters, Inc. and Liberty Surplus Insurance Corporation (Appellants) | **SEITZ, VAN OGTROP & GREEN, P.A.**<br>R. Karl Hill (DE Bar No. 2747)<br>222 Delaware Avenue<br>Suite 1500<br>Wilmington, DE 19801<br>Telephone: (302) 888-0600<br>khill@svglaw.com<br><br>-and-<br><br>**CHOATE, HALL & STEWART LLP**<br>Douglas R. Gooding (*pro hac vice*)<br>Jonathan D. Marshall (*pro hac vice*)<br>Two International Place<br>Boston, MA 02110<br>Telephone: (617) 248-5000<br>dgooding@choate.com<br>jmarshall@choate.com<br><br>-and-<br><br>**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC**<br>Kim V. Marrkand (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 542-6000<br>kvmarrkand@mintz.com |
| Munich Reinsurance America, Inc., formerly known as American Re-Insurance Company (Appellant) | **DILWORTH PAXSON LLP**<br>Thaddeus J. Weaver (DE Bar. No. 2790)<br>704 N. King Street, Suite 500<br>P.O. Box 1031<br>Wilmington, DE 19899-1031<br>(302) 571-8867 (telephone)<br>(302) 351-8735 (facsimile)<br>tweaver@dilworthlaw.com<br><br>-and-<br><br>**DILWORTH PAXSON LLP**<br>William E. McGrath, Jr. (*pro hac vice*)<br>2 Research Way, Suite 103<br>Princeton, NJ 08540<br>(609) 924-6000 (telephone)<br>(215) 893-8537 (facsimile) |

9

| | wmcgrath@dilworthlaw.com |
|---|---|
| Traders and Pacific Insurance Company, Endurance American Specialty Insurance Company, and Endurance American Insurance Company (Appellants) | **COZEN O'CONNOR**<br>Marla S. Benedek (No. 6638)<br>1201 N. Market Street, Suite 1001<br>Wilmington, DE 19801<br>Telephone: (302) 295-2024<br>Facsimile: (302) 250-4498<br>mbenedek@cozen.com |
| Old Republic Insurance Company (Appellant) | **MORRIS JAMES LLP**<br>Stephen M. Miller (No. 2610)<br>Carl N. Kunz, III (No. 3201)<br>500 Delaware Avenue, Suite 1500<br>Wilmington, Delaware 19801<br>Telephone: (302) 888-6800<br>Facsimile: (302) 571-1750<br>smiller@morrisjames.com<br>ckunz@morrisjames.com<br><br>-and-<br><br>**FOX SWIBEL LEVIN & CARROLL LLP**<br>Margaret M. Anderson (*pro hac vice*)<br>Ryan T. Schultz (*pro hac vice*)<br>Adam A. Hachikian (*pro hac vice*)<br>Kenneth M. Thomas (*pro hac vice*)<br>200 W. Madison Street, Suite 3000<br>Chicago, Illinois 60606<br>Telephone: (312) 224-1200<br>Facsimile: (312) 224-1201<br>panderson@foxswibel.com<br>rschultz@foxswibel.com<br>ahachikian@foxswibel.com<br>kthomas@foxswibel.com |
| Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company), St. Paul Surplus Lines Insurance Company and Gulf Insurance Company (Appellants) | **REGER RIZZO & DARNALL LLP**<br>Louis J. Rizzo, Jr. (DE Bar No. 3374)<br>1521 Concord Pike Suite 305<br>Brandywine Plaza West<br>Wilmington DE 19803<br>Telephone: (302) 477-7100<br>Facsimile: (302) 652-3620<br>lrizzo@regerlaw.com |
| Lujan Claimants | **LOIZIDES, P.A.**<br>Christopher D. Loizides (No. 3968)<br>1225 North King Street, Suite 800 |

10

A00270

| | |
|---|---|
| (Appellants) | Telephone: (302) 654-0248<br>Loizides@loizides.com<br><br>-and-<br><br>**LUJAN & WOLFF LLP**<br>Delia Lujan Wolff<br>Suite 300, DNA Bldg.<br>238 Archbishop Flores St.<br>Hagatna, Guam 96910<br>Telephone: (671) 477-8064/5<br>dslwolff@lawguam.com |
| Dumas & Vaughn<br>Claimants<br>(Appellants) | **GELLERT SCALI BUSENKELL & BROWN LLC**<br>Charles J. Brown, III (No. 3368)<br>1201 N. Orange St., 3rd Floor<br>Wilmington, DE 19801<br>Telephone: (302) 425-5813<br>cbrown@gsbblaw.com<br><br>-and-<br><br>**DUMAS & VAUGHN, LLC**<br>Gilion C. Dumas<br>3835 NE Hancock Street, Suite GLB<br>Portland, OR 97212<br>Telephone: (503) 616-5007<br>gilion@dumasandvaughn.com |
| Boy Scouts of America,<br>Delaware BSA, LLC<br>(Debtors/Appellees and<br>Debtors in Possession) | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>dabbott@morrisnichols.com<br>aremming@morrisnichols.com<br>ptopper@morrisnichols.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Jessica C. Lauria (*pro hac vice*)<br>Glenn M. Kurtz (*pro hac vice*)<br>1221 Avenue of the Americas<br>New York, New York 10020 |

11

| | |
|---|---|
| | Telephone: (212) 819-8200 |
| | Email: jessica.lauria@whitecase.com |
| | gkurtz@whitecase.com |
| | |
| | – and – |
| | |
| | **WHITE & CASE LLP** |
| | Michael C. Andolina |
| | Matthew E. Linder |
| | Laura E. Baccash |
| | Blair M. Warner |
| | 111 South Wacker Drive |
| | Chicago, Illinois 60606 |
| | Telephone: (312) 881-5400 |
| | mandolina@whitecase.com |
| | mlinder@whitecase.com |
| | laura.baccash@whitecase.com |
| | blair.warner@whitecase.com |
| | |
| | – and – |
| | |
| | **WHITE & CASE LLP** |
| | Ronald K. Gorsich |
| | Doah Kim |
| | 555 South Flower Street, Suite 2700 |
| | Los Angeles, CA 90071 |
| | Telephone: (213) 620-7700 |
| | rgorsich@whitecase.com |
| | doah.kim@whitecase.com |
| Tort Claimants' Committee (Appellee) | **PACHULSKI STANG ZIEHL & JONES LLP** |
| | Richard M. Pachulski (*pro hac vice*) |
| | Alan J. Kornfeld (*pro hac vice*) |
| | Debra I. Grassgreen (*pro hac vice*) |
| | Iain A.W. Nasatir (*pro hac vice*) |
| | James E. O'Neill (No. 4042) |
| | 919 North Market Street, 17th Floor |
| | P.O. Box 8705 |
| | Wilmington, DE 19899-8705 (Courier 19801) |
| | Telephone: (302) 652-4100 |
| | Fax: (302) 652-4400 |
| | Email: rpachulski@pszjlaw.com |
| | akornfeld@pszjlaw.com |
| | dgrassgreen@pszjlaw.com |
| | inasatir@pszjlaw.com |
| | joneill@pszjlaw.com |
| Coalition of Abused Scouts for Justice | **MONZACK MERSKY AND BROWDER, P.A.** |
| | Rachel B. Mersky (No. 2049) |

| | |
|---|---|
| (Appellee) | 1201 North Orange Street, Suite 400<br>Wilmington, Delaware 19801<br>Telephone: (302) 656-8162<br>Fax: (302) 656-2769<br>Email: rmersky@monlaw.com<br><br>–and–<br><br>**BROWN RUDNICK LLP**<br>David J. Molton, Esq. (*pro hac vice*)<br>Eric R. Goodman, Esq. (*pro hac vice*)<br>Seven Times Square<br>New York, NY 10036<br>Telephone: (212) 209-4800<br>Fax: (212) 209-4801<br>Email: dmolton@brownrudnick.com<br>egoodman@brownrudnick.com<br><br>–and–<br><br>**BROWN RUDNICK LLP**<br>Sunni P. Beville, Esq. (*pro hac vice*)<br>Tristan G. Axelrod, Esq. (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 856-8200<br>Fax: (617) 856-8201<br>Email: sbeville@brownrudnick.com<br>taxelrod@brownrudnick.com |
| Future Claimants'<br>Representative<br>(Appellee) | **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br><br>Robert S. Brady (No. 2847)<br>Edwin J. Harron (No. 3396)<br>Kenneth J. Enos (No. 4544)<br>Ashley E. Jacobs (No. 5635)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Fax: (302) 571-1253<br>Email: rbrady@ycst.com<br>eharron@ycst.com<br>kenos@ycst.com<br>ajacobs@ycst.com<br><br>-and- |

13

A00273

| | |
|---|---|
| | **GILBERT LLP**<br>Kami E. Quinn (*pro hac vice*)<br>Rachel H. Jennings (*pro hac vice*)<br>Kyle Y. Dechant (*pro hac vice*)<br>December L. Huddleston (*pro hac vice*)<br>700 Pennsylvania Ave, SE<br>Suite 400<br>Washington, DC 20003<br>Telephone: (202) 772-2200<br>Fax: (202) 772-3333<br>Email: quinnk@gilbertlegal.com<br>jenningsr@gilbertlegal.com<br>dechantk@gilbertlegal.com<br>huddlestond@gilbertlegal.com |
| The Zalkin Law Firm, P.C. and Pfau Cochran Vertetis Amala PLLC (Appellees) | **KTBS LAW LLP**<br>Thomas E. Patterson (*pro hac vice*)<br>Daniel J. Bussel (*pro hac vice*)<br>Robert J. Pfister (*pro hac vice*)<br>Sasha M. Gurvitz (*pro hac vice*)<br>1801 Century Park East, Twenty-Sixth Floor<br>Los Angeles, California 90067<br>Telephone: (310) 407-4000<br>Fax: (310) 407-9090<br>Email: tpatterson@ktbslaw.com<br>dbussel@ktbslaw.com<br>rpfister@ktbslaw.com<br>sgurvitz@ktbslaw.com<br><br>-and-<br><br>**BIELLI & KLAUDER, LLC**<br>David M. Klauder, Esquire (No. 5769)<br>1204 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 803-4600<br>Fax: (302) 397-2557<br>Email: dklauder@bk-legal.com |
| Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, and Navigators Specialty Insurance Company (Appellees) | **BAYARD, P.A.**<br>Erin R. Fay (No. 5268)<br>Gregory J. Flasser (No. 6154)<br>600 North King Street, Suite 400<br>Wilmington, DE 19801<br>Telephone: (302) 655-5000<br>Fax: (302) 658-6395<br>Email: efay@bayardlaw.com |

14

| | |
|---|---|
| | gflasser@bayardlaw.com<br><br>-and-<br><br>**RUGGERI PARKS WEINBERG LLP**<br>James P. Ruggeri (*pro hac vice*)<br>Joshua D. Weinberg (*pro hac vice*)<br>1875 K Street, N.W., Suite 600<br>Washington, D.C. 20006-1251<br>Telephone: (202) 469-7750<br>Fax: (202) 469-7751<br><br>-and-<br><br>**WILMER CUTLER PICKERING HALE AND DORR LLP**<br>Philip D. Anker (*pro hac vice*)<br>7 World Trade Center<br>250 Greenwich Street<br>New York, N.Y. 10007<br>Telephone: (212) 230-8890<br>Fax: (212) 230-8888<br><br>Joel Millar (*pro hac vice*)<br>1875 Pennsylvania Avenue N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 663-6000<br>Fax: (202) 663-6363 |
| Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America<br>(Appellees) | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>800 N. West Street<br>Third Floor Wilmington, Delaware 19801<br>Telephone: 302 999 1540<br>Fax: 302 762 1688<br><br>-and-<br><br>**O'MELVENY & MYERS LLP**<br>Tancred Schiavoni (*pro hac vice*)<br>Times Square Tower<br>7 Times Square<br>New York, New York 10036-6537<br>Telephone: (212) 326-2000<br>Fax: (212) 326-2061<br><br>**O'MELVENY & MYERS LLP** |

15

A00275

| | |
|---|---|
| | Stephen Warren (*pro hac vice*)<br>400 South Hope Street<br>Los Angeles, California 90071<br>Telephone: (213) 430-6000<br>Fax: (213) 430-6407<br><br>**O'MELVENY & MYERS LLP**<br>Jonathan D. Hacker (*pro hac vice*)<br>1625 Eye Street, N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 383-5300 |
| Federal Insurance Company and Westchester Fire Insurance Company (Appellees) | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>8000 N. West Street, Third Floor<br>Wilmington, Delaware 19801<br>Telephone: (302) 999-1540<br><br>-and-<br><br>**SIMPSON THATCHER & BARTLETT LLP**<br>David Elbaum (*pro hac vice*)<br>425 Lexington Avenue<br>New York, New York 10017<br>Telephone: (212) 455-2000 |
| American Zurich Insurance Company, American Guarantee Insurance Company, and Steadfast Insurance Company (Appellees) | **TYBOUT, REDFEARN & PELL**<br>Robert D. Cecil, Jr. (No. 5317)<br>501 Carr Road, Suite 300<br>Wilmington, Delaware 19899<br>Telephone: (302) 658-6901<br>Email: rcecil@trplaw.com<br><br>-and-<br><br>**CROWELL & MORING LLP**<br>Mark D. Plevin (*pro hac vice*)<br>Kevin D. Cacabelos (*pro hac vice*)<br>Three Embarcadero Center, 26th Floor<br>San Francisco, California 94111<br>Telephone: (415) 986-2800<br>Email: mplevin@crowell.com<br>kcacabelos@crowell.com<br><br>Tacie H. Yoon (*pro hac vice*)<br>Rachel A. Jankowski (*pro hac vice*)<br>1001 Pennsylvania Ave., N.W.<br>Washington, D.C. 20004 |

16

A00276

| | Telephone: (202) 624-2500<br>Email: tyoon@crowell.com<br>rjankowski@crowell.com |
|---|---|
| Clarendon National Insurance Company, as successor in interest by merger to Clarendon America Insurance Company; River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited, on its own behalf and in turn as successor to St. Katherine Insurance Company Limited); and Zurich American Insurance Company, as successor to Maryland Casualty Company, Zurich Insurance Company, and Maryland General Insurance Company (Appellees) | **BALLARD SPAHR LLP**<br>Matthew G. Summers (No. 5533)<br>Chantelle D. McClamb (No. 5978)<br>919 N. Market Street, 11th Floor<br>Wilmington, Delaware 19801-3034<br>Telephone: (302) 252-4428<br>Fax: (302) 252-4466<br>Email: summersm@ballardspahr.com<br>mcclamb@ballardspahr.com<br><br>-and-<br><br>**STEPTOE & JOHNSON LLP**<br>Harry Lee (*pro hac vice*)<br>John O'Connor (*pro hac vice*)<br>1330 Connecticut Avenue NW<br>Washington, DC 20036<br>Telephone: (202) 429-8078<br>Fax: (202) 429-3902<br>Email: hlee@steptoe.com<br>joconnor@steptoe.com |
| Ad Hoc Committee of Local Councils of the Boy Scouts of America (Appellee) | **DLA PIPER, LLP (US)**<br>R. Craig Martin (No. 5032)<br>1201 North Market Street, Suite 2100<br>Wilmington, Delaware 19801-1147<br>Telephone: (302) 468-5655<br>Email: craig.martin@dlapiper.com<br><br>-and-<br><br>**WACHTELL, LIPTON, ROSEN & KATZ**<br>Richard G. Mason (*pro hac vice*)<br>Douglas K. Mayer (*pro hac vice*)<br>Joseph C. Celentino (*pro hac vice*)<br>Mitchell S. Levy (*pro hac vice*)<br>51 West 52nd Street<br>New York, New York 10019<br>Telephone: (212) 403-1000 |

17

A00277

| | Email: RGMason@wlrk.com<br>DKMayer@wlrk.com<br>JCCelentino@wlrk.com<br>MSLevy@wlrk.com |
|---|---|

Dated: April 10, 2023
Wilmington, Delaware

By:  /s/ Maria Aprile Sawczuk
Maria Aprile Sawczuk (DE #3320)
**GOLDSTEIN & MCCLINTOCK LLLP**
501 Silverside Road, Suite 65
Wilmington, DE 19809
302-444-6710
marias@goldmclaw.com

-and-

**LOEB & LOEB LLP**
Laura McNally (*pro hac vice*)
321 N. Clark Street, Suite 2300
Chicago, IL 60654
312-464-3155
lmcnally@loeb.com

-and-

**DAVID CHRISTIAN ATTORNEYS LLC**
David Christian (*pro hac vice*)
105 W. Madison St., Suite 1400
Chicago, Illinois 60602
Telephone: (312) 282-5282
dchristian@dca.law

*Attorneys for Continental Insurance Company
and Columbia Casualty Company*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| | |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Bankruptcy Case No. 20-10343-LSS |
| | |
| Debtors. | (Jointly Administered) |
| | |
| NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA, *et al.*, | Case No. 22-cv-01237-RGA |
| | |
| Appellants, | |
| | |
| v. | |
| | |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | |
| | |
| Appellees. | |

**NOTICE OF APPEAL TO THE UNITED STATES**
**COURT OF APPEALS FOR THE THIRD CIRCUIT**

NOTICE IS HEREBY GIVEN that Appellants National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, and The Insurance Company of the State of Pennsylvania, appeal to the United States Court of Appeals for the Third Circuit from the final Order and accompanying Opinion of the United States District Court for the District of Delaware (Hon. Richard G. Andrews), entered March 28, 2023 (D.I. 150, 151), among other things affirming the *Supplemental Findings of Fact and Conclusions of Law and Order Confirming the Third Modified Fifth Amended Chapter 11 Plan of Reorganization (with Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC* (Bankruptcy D.I. 10316) and accompanying Opinion (Bankruptcy D.I. 10136) of the United States Bankruptcy

Court for the District of Delaware (Hon. Laurie S. Silverstein), and all other orders, decisions, and opinions subsumed therein.

The parties to the order appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

| | |
|---|---|
| National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, and The Insurance Company of the State of Pennsylvania (the "AIG Companies") (Appellants) | **FINEMAN KREKSTEIN & HARRIS PC**<br>Deirdre M. Richards<br>1300 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 538-8331<br>Email: drichards@finemanlawfirm.com<br><br>-and-<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br>Michael A. Rosenthal (*pro hac vice*)<br>Mitchell A. Karlan (*pro hac vice*)<br>James Hallowell (*pro hac vice*)<br>Keith R. Martorana (*pro hac vice*)<br>Seth M. Rokosky (*pro hac vice*)<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 351-4000<br>Email: mrosenthal@gibsondunn.com<br>mkarlan@gibsondunn.com<br>jhallowell@gibsondunn.com<br>kmartorana@gibsondunn.com<br>srokosky@gibsondunn.com<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br>Theodore J. Boutrous Jr. (*pro hac vice*)<br>Richard J. Doren (*pro hac vice*)<br>Blaine H. Evanson (*pro hac vice*)<br>333 South Grand Avenue<br>Los Angeles, California 90071<br>Telephone: (213) 229-7038<br>Email: rdoren@gibsondunn.com<br>bevanson@gibsondunn.com<br>tboutrous@gibsondunn.com<br><br>**FORAN GLENNON PALANDECH PONZI & RUDLOFF P.C.**<br>Susan N.K. Gummow<br>222 N. LaSalle St., Suite 1400 |

2

| | |
|---|---|
| | Chicago, Illinois 60601<br>Telephone: (312) 863-5000<br>Email: sgummow@fgppr.com |
| Allianz Global Risks US Insurance Company (Appellant) | **TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>David M. Fournier (DE Bar No. 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Hercules Plaza<br>1313 Market Street<br>Suite 5100<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: 404.885.3000<br>david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**PARKER, HUDSON, RAINER & DOBBS LLP**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA  30308<br>Telephone: 404.420.4313<br>Facsimile: 404.522.8409<br>hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>-and-<br><br>**McDERMOTT WILL & EMERY LLP**<br>Margaret H. Warner (*pro hac vice*)<br>Ryan S. Smethurst (*pro hac vice*)<br>Alex M. Spisak (*pro hac vice*)<br>The McDermott Building<br>500 North Capitol Street, NW<br>Washington, DC 20001-1531<br>Telephone: 202.756.8228<br>Facsimile: 202.756.8087<br>mwarner@mwe.com<br>rsmethurst@mwe.com<br>aspisak@mwe.com |
| National Surety Corporation and Interstate Fire & Casualty Company | **TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>David M. Fournier (DE Bar No. 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Hercules Plaza, Suite 5100 |

3

A00281

| | |
|---|---|
| (Appellants) | 1313 Market Street<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: 302.777.6500<br>Facsimile: 302.421.8390<br>david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**PARKER, HUDSON, RAINER & DOBBS LLP**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA  30308<br>Telephone: 404.420.4313<br>Facsimile: 404.522.8409<br>hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>-and-<br><br>**BRADLEY RILEY JACOBS PC**<br>Todd C. Jacobs (*pro hac vice*)<br>John E. Bucheit (*pro hac vice*)<br>Paul J. Esker (*pro hac vice*)<br>500 West Madison Street<br>Suite 1000<br>Chicago, IL 60661<br>Telephone: 312.281.0295<br>tjacobs@bradleyriley.com<br>jbucheit@bradleyriley.com<br>pesker@bradleyriley.com |
| Arch Insurance Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (No. 2898)<br>1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400<br>kmiller@skjlaw.com<br><br>**HANGLEY ARONCHICK SEGAL<br>PUDLIN & SCHILLER**<br>Ronald P. Schiller (*pro hac vice*)<br>Matthew A. Hamermesh (*pro hac vice*) |

| | |
|---|---|
| | One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>T: (215) 568-6200<br>F: (215) 568-0300<br>E: rschiller@hangley.com<br>mhamermesh@hangley.com |
| Argonaut Insurance Company and Colony Insurance Company (Appellants) | **POST & SCHELL, P.C.**<br>Paul Logan (No. 3339)<br>300 Delaware Avenue, Suite 1380<br>Wilmington, DE 19801<br>Telephone: (302) 251-8856<br>Email: plogan@postschell.com<br><br>**POST & SCHELL, P.C.**<br>John C. Sullivan (*pro hac vice*)<br>Kathleen K. Kerns (*pro hac vice*)<br>Four Penn Center – 13th Floor<br>1600 John F. Kennedy Boulevard<br>Philadelphia, PA 19103<br>Telephone: (215) 587-1000<br>jsullivan@postschell.com<br>kkerns@postschell.com<br><br>-and-<br><br>**IFRAH PLLC**<br>George R. Calhoun (*pro hac vice*)<br>1717 Pennsylvania Avenue, N.W. Suite 650<br>Washington, DC 20006<br>Telephone: (202) 840-8758<br>george@ifrahlaw.com |
| Arrowood Indemnity Company (Appellant) | **JOYCE, LLC**<br>Michael J. Joyce (No. 4563)<br>1225 King Street, Suite 800<br>Wilmington, DE 19801<br>Telephone: (302) 388-1944<br>Email: mjoyce@mjlawoffices.com<br><br>-and-<br><br>**COUGHLIN MIDLIGE & GARLAND, LLP**<br>Kevin Coughlin (*pro hac vice*)<br>Lorraine Armenti (*pro hac vice*)<br>Michael Hrinewski (*pro hac vice*)<br>350 Mount Kemble Avenue<br>PO Box 1917 |

5

A00283

| | |
|---|---|
| | Morristown, NJ 07962<br>Telephone:  (973) 267-0058<br>Facsimile:  973-267-6442<br>kcoughlin@cmg.law<br>larmenti@cmg.law<br>mhrinewski@cmg.law<br><br>-and-<br><br>**CARRUTHERS & ROTH, P.A.**<br>Britton C. Lewis<br>John M. Flynn<br>235 N. Edgeworth Street<br>P.O. Box 540<br>Greensboro, NC  27401<br>Telephone:  (336) 478-1146<br>Facsimile:  (336) 478-1145<br>jmf@crlaw.com<br>bcl@crlaw.com |
| Continental Insurance<br>Company and Columbia<br>Casualty Company<br>(Appellants) | **GOLDSTEIN & MCCLINTOCK LLLP**<br>Maria Aprile Sawczuk (DE #3320)<br>501 Silverside Road<br>Wilmington, DE 19809<br>302-444-6710<br>marias@goldmclaw.com<br><br>-and-<br><br>**LOEB & LOEB LLP**<br>Laura McNally (*pro hac vice*)<br>Emily Stone (*pro hac vice*)<br>321 N. Clark Street, Suite 2300<br>Chicago, IL 60654<br>312-464-3155<br>lmcnally@loeb.com<br>estone@loeb.com |
| Gemini Insurance<br>Company<br>(Appellant) | **WERB & SULLIVAN**<br>LEGAL ARTS BUILDING<br>Brian A. Sullivan (No. 2098)<br>1225 N. King Street<br>Suite 600<br>Wilmington, Delaware 19801<br>Telephone: (302) 652-1100<br>Cell: (302) 757-9932<br>Facsimile: (302) 652-1111<br>Email: bsullivan@werbsullivan.com |

| | |
|---|---|
| | **GIEGER LABORDE & LAPEROUOSE, LLC**<br>John E.W. Baay II (*pro hac vice*)<br>701 Poydras Street<br>Suite 4800<br>New Orleans, LA 70139<br>Tel.: 504-561-0400<br>Fax: 504-561-1011<br>Email: jbaay@glllaw.com<br><br>-and-<br><br>**KIERNAN TREBACH LLP**<br>William H. White Jr (*pro hac vice*)<br>1233 20th Street, NW<br>8th Floor<br>Washington, DC 20036<br>Tel.: 202-712-7000<br>Fax: 202-712-7100<br>Email: wwhite@kiernantrebach.com |
| General Star Indemnity Company<br>(Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (DE Bar No. 2898)<br>1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400<br>Email: kmiller@skjlaw.com<br><br>-and-<br><br>**WILEY REIN LLP**<br>Mary E. Borja (*pro hac vice*)<br>Gary P. Seligman (*pro hac vice*)<br>Ashley L. Criss (*pro hac vice*)<br>2050 M Street NW<br>Washington, DC 20036<br>Phone: (202) 719-7000<br>Email: mborja@wiley.law<br>gseligman@wiley.law<br>acriss@wiley.law |
| Great American Assurance Company, f/k/a Agricultural Insurance Company; Great American E&S Insurance | **BODELL BOVÉ, LLC**<br>Bruce W. McCullough (No. 3112)<br>1225 N. King Street, Suite 1000<br>Wilmington, Delaware 19801-3250<br>Telephone: (302) 655-6749<br>bmccullough@bodellbove.com |

7

| | |
|---|---|
| Company, f/k/a Agricultural Excess and Surplus Insurance Company; and Great American E&S Insurance Company (Appellants) | -and-<br><br>**CLYDE & CO US LLP**<br>Bruce D. Celebrezze (*pro hac vice*)<br>150 California Street \| 15th Floor<br>San Francisco, California 94111<br>Telephone: (415) 365-9800<br>Facsimile: (415) 365-9801<br>bruce.celebrezze@clydeco.us<br><br>**CLYDE & CO US LLP**<br>Konrad R. Krebs (*pro hac vice*)<br>340 Mt. Kemble Avenue \| Suite 300<br>Morristown, NJ 07960<br>Telephone: (973) 210-6700<br>Facsimile: (973) 210-6701<br>konrad.krebs@clydeco.us<br><br>-and-<br><br>**DAVID CHRISTIAN ATTORNEYS LLC**<br>David Christian (*pro hac vice*)<br>105 W. Madison St., Suite 1400<br>Chicago, Illinois 60602<br>Telephone: (312) 282-5282<br>dchristian@dca.law |
| Indian Harbor Insurance Company, on behalf of itself and as successor in interest to Catlin Specialty Insurance Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (No. 2898)<br>1000 West Street, Suite 1501<br>P.O. Box 410<br>Wilmington, DE  19899 [Courier 19801]<br>Telephone: (302) 652-8400<br>Facsimile: (302) 652-8405<br>kmiller@skjlaw.com<br><br>and<br><br>**MOUND COTTON WOLLAN & GREENGRASS LLP**<br>Lloyd A. Gura (*pro hac vice*)<br>Pamela J. Minetto (*pro hac vice*)<br>One New York Plaza 44th Floor<br>New York, NY 10004<br>Tel: (212) 804-4282<br>lgura@moundcotton.com |

8

| | |
|---|---|
| | pminetto@moundcotton.com |
| Liberty Mutual Insurance Company, The Ohio Casualty Insurance Company, Liberty Insurance Underwriters, Inc. and Liberty Surplus Insurance Corporation (Appellants) | **SEITZ, VAN OGTROP & GREEN, P.A.**<br>R. Karl Hill (DE Bar No. 2747)<br>222 Delaware Avenue<br>Suite 1500<br>Wilmington, DE 19801<br>Telephone: (302) 888-0600<br>khill@svglaw.com<br><br>-and-<br><br>**CHOATE, HALL & STEWART LLP**<br>Douglas R. Gooding (*pro hac vice*)<br>Jonathan D. Marshall (*pro hac vice*)<br>Two International Place<br>Boston, MA 02110<br>Telephone: (617) 248-5000<br>dgooding@choate.com<br>jmarshall@choate.com<br><br>-and-<br><br>**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC**<br>Kim V. Marrkand (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 542-6000<br>kvmarrkand@mintz.com |
| Munich Reinsurance America, Inc., formerly known as American Re-Insurance Company (Appellant) | **DILWORTH PAXSON LLP**<br>Thaddeus J. Weaver (DE Bar. No. 2790)<br>704 N. King Street, Suite 500<br>P.O. Box 1031<br>Wilmington, DE  19899-1031<br>(302) 571-8867 (telephone)<br>(302) 351-8735 (facsimile)<br>tweaver@dilworthlaw.com<br><br>-and-<br><br>**DILWORTH PAXSON LLP**<br>William E. McGrath, Jr. (*pro hac vice*)<br>2 Research Way, Suite 103<br>Princeton, NJ  08540<br>(609) 924-6000 (telephone)<br>(215) 893-8537 (facsimile) |

9

A00287

| | |
|---|---|
| | wmcgrath@dilworthlaw.com |
| Traders and Pacific Insurance Company, Endurance American Specialty Insurance Company, and Endurance American Insurance Company (Appellants) | **COZEN O'CONNOR**<br>Marla S. Benedek (No. 6638)<br>1201 N. Market Street, Suite 1001<br>Wilmington, DE 19801<br>Telephone:  (302) 295-2024<br>Facsimile:  (302) 250-4498<br>mbenedek@cozen.com |
| Old Republic Insurance Company (Appellant) | **MORRIS JAMES LLP**<br>Stephen M. Miller (No. 2610)<br>Carl N. Kunz, III (No. 3201)<br>500 Delaware Avenue, Suite 1500<br>Wilmington, Delaware 19801<br>Telephone: (302) 888-6800<br>Facsimile:  (302) 571-1750<br>smiller@morrisjames.com<br>ckunz@morrisjames.com<br><br>-and-<br><br>**FOX SWIBEL LEVIN & CARROLL LLP**<br>Margaret M. Anderson (*pro hac vice*)<br>Ryan T. Schultz (*pro hac vice*)<br>Adam A. Hachikian (*pro hac vice*)<br>Kenneth M. Thomas (*pro hac vice*)<br>200 W. Madison Street, Suite 3000<br>Chicago, Illinois 60606<br>Telephone: (312) 224-1200<br>Facsimile:  (312) 224-1201<br>panderson@foxswibel.com<br>rschultz@foxswibel.com<br>ahachikian@foxswibel.com<br>kthomas@foxswibel.com |
| Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company), St. Paul Surplus Lines Insurance Company and Gulf Insurance Company (Appellants) | **REGER RIZZO & DARNALL LLP**<br>Louis J. Rizzo, Jr. (DE Bar No. 3374)<br>1521 Concord Pike Suite 305<br>Brandywine Plaza West<br>Wilmington DE  19803<br>Telephone: (302) 477-7100<br>Facsimile: (302) 652-3620<br>lrizzo@regerlaw.com |
| Lujan Claimants | **LOIZIDES, P.A.**<br>Christopher D. Loizides (No. 3968)<br>1225 North King Street, Suite 800 |

| | |
|---|---|
| (Appellants) | Wilmington, DE 19801<br>Telephone: (302) 654-0248<br>Loizides@loizides.com<br><br>-and-<br><br>**LUJAN & WOLFF LLP**<br>Delia Lujan Wolff (*pro hac vice*)<br>Suite 300, DNA Bldg.<br>238 Archbishop Flores St.<br>Hagatna, Guam 96910<br>Telephone: (671) 477-8064/5<br>dslwolff@lawguam.com |
| Dumas & Vaughn<br>Claimants<br>(Appellants) | **GELLERT SCALI BUSENKELL & BROWN LLC**<br>Charles J. Brown, III (No. 3368)<br>1201 N. Orange St., 3rd Floor<br>Wilmington, DE 19801<br>Telephone: (302) 425-5813<br>cbrown@gsbblaw.com<br><br>-and-<br><br>**DUMAS & VAUGHN, LLC**<br>Gilion C. Dumas (*pro hac vice*)<br>3835 NE Hancock Street, Suite GLB<br>Portland, OR 97212<br>Telephone: (503) 616-5007<br>gilion@dumasandvaughn.com |
| Boy Scouts of America,<br>Delaware BSA, LLC<br>(Debtors/Appellees and<br>Debtors in Possession) | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>dabbott@morrisnichols.com<br>aremming@morrisnichols.com<br>ptopper@morrisnichols.com<br><br>-and-<br><br>**WHITE & CASE LLP**<br>Jessica C. Lauria (*pro hac vice*)<br>Glenn M. Kurtz (*pro hac vice*)<br>1221 Avenue of the Americas |

| | |
|---|---|
| | New York, New York 10020<br>Telephone: (212) 819-8200<br>Email: jessica.lauria@whitecase.com<br>gkurtz@whitecase.com<br><br>-and-<br><br>**WHITE & CASE LLP**<br>Michael C. Andolina<br>Matthew E. Linder<br>Laura E. Baccash<br>Blair M. Warner<br>111 South Wacker Drive<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>mandolina@whitecase.com<br>mlinder@whitecase.com<br>laura.baccash@whitecase.com<br>blair.warner@whitecase.com<br><br>-and-<br><br>**WHITE & CASE LLP**<br>Ronald K. Gorsich<br>Doah Kim<br>555 South Flower Street, Suite 2700<br>Los Angeles, CA 90071<br>Telephone: (213) 620-7700<br>rgorsich@whitecase.com<br>doah.kim@whitecase.com |
| Tort Claimants'<br>Committee<br>(Appellee) | **PACHULSKI STANG ZIEHL & JONES LLP**<br>Richard M. Pachulski (*pro hac vice*)<br>Alan J. Kornfeld (*pro hac vice*)<br>Debra I. Grassgreen (*pro hac vice*)<br>Iain A.W. Nasatir (*pro hac vice*)<br>James E. O'Neill (No. 4042)<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899-8705 (Courier 19801)<br>Telephone: (302) 652-4100<br>Fax: (302) 652-4400<br>Email: rpachulski@pszjlaw.com<br>akornfeld@pszjlaw.com<br>dgrassgreen@pszjlaw.com<br>inasatir@pszjlaw.com<br>joneill@pszjlaw.com |
| Coalition of Abused | **MONZACK MERSKY AND BROWDER, P.A.** |

12

| | |
|---|---|
| Scouts for Justice (Appellee) | Rachel B. Mersky (No. 2049)<br>1201 North Orange Street, Suite 400<br>Wilmington, Delaware 19801<br>Telephone: (302) 656-8162<br>Fax: (302) 656-2769<br>Email: rmersky@monlaw.com<br><br>-and-<br><br>**BROWN RUDNICK LLP**<br>David J. Molton, Esq. (*pro hac vice*)<br>Eric R. Goodman, Esq. (*pro hac vice*)<br>Seven Times Square<br>New York, NY 10036<br>Telephone: (212) 209-4800<br>Fax: (212) 209-4801<br>Email: dmolton@brownrudnick.com<br>egoodman@brownrudnick.com<br><br>-and-<br><br>**BROWN RUDNICK LLP**<br>Sunni P. Beville, Esq. (*pro hac vice*)<br>Tristan G. Axelrod, Esq. (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 856-8200<br>Fax: (617) 856-8201<br>Email: sbeville@brownrudnick.com<br>taxelrod@brownrudnick.com |
| Future Claimants' Representative (Appellee) | **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br><br>Robert S. Brady (No. 2847)<br>Edwin J. Harron (No. 3396)<br>Kenneth J. Enos (No. 4544)<br>Ashley E. Jacobs (No. 5635)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Fax: (302) 571-1253<br>Email: rbrady@ycst.com<br>eharron@ycst.com<br>kenos@ycst.com<br>ajacobs@ycst.com |

| | |
|---|---|
| | -and-<br><br>**GILBERT LLP**<br>Kami E. Quinn (*pro hac vice*)<br>Rachel H. Jennings (*pro hac vice*)<br>Kyle Y. Dechant (*pro hac vice*)<br>December L. Huddleston (*pro hac vice*)<br>700 Pennsylvania Ave, SE<br>Suite 400<br>Washington, DC 20003<br>Telephone: (202) 772-2200<br>Fax: (202) 772-3333<br>Email: quinnk@gilbertlegal.com<br>jenningsr@gilbertlegal.com<br>dechantk@gilbertlegal.com<br>huddlestond@gilbertlegal.com |
| The Zalkin Law Firm, P.C. and Pfau Cochran Vertetis Amala PLLC (Appellees) | **KTBS LAW LLP**<br>Thomas E. Patterson (*pro hac vice*)<br>Daniel J. Bussel (*pro hac vice*)<br>Robert J. Pfister (*pro hac vice*)<br>Sasha M. Gurvitz (*pro hac vice*)<br>1801 Century Park East, Twenty-Sixth Floor<br>Los Angeles, California 90067<br>Telephone: (310) 407-4000<br>Fax: (310) 407-9090<br>Email: tpatterson@ktbslaw.com<br>dbussel@ktbslaw.com<br>rpfister@ktbslaw.com<br>sgurvitz@ktbslaw.com<br><br>-and-<br><br>**BIELLI & KLAUDER, LLC**<br>David M. Klauder, Esquire (No. 5769)<br>1204 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 803-4600<br>Fax: (302) 397-2557<br>Email: dklauder@bk-legal.com |
| Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, and Navigators Specialty Insurance Company | **BAYARD, P.A.**<br>Erin R. Fay (No. 5268)<br>Gregory J. Flasser (No. 6154)<br>600 North King Street, Suite 400<br>Wilmington, DE 19801<br>Telephone: (302) 655-5000<br>Fax: (302) 658-6395 |

14

A00292

| | |
|---|---|
| (Appellees) | Email: efay@bayardlaw.com<br>gflasser@bayardlaw.com<br><br>-and-<br><br>**RUGGERI PARKS WEINBERG LLP**<br>James P. Ruggeri (*pro hac vice*)<br>Joshua D. Weinberg (*pro hac vice*)<br>1875 K Street, N.W., Suite 600<br>Washington, D.C. 20006-1251<br>Telephone: (202) 469-7750<br>Fax: (202) 469-7751<br>jruggeri@ruggerilaw.com<br>jweinberg@ruggerilaw.com<br><br>-and-<br><br>**WILMER CUTLER PICKERING HALE**<br>**AND DORR LLP**<br>Philip D. Anker (*pro hac vice*)<br>7 World Trade Center<br>250 Greenwich Street<br>New York, N.Y. 10007<br>Telephone: (212) 230-8890<br>Fax: (212) 230-8888<br>philip.anker@wilmerhale.com<br><br>Joel Millar (*pro hac vice*)<br>1875 Pennsylvania Avenue N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 663-6000<br>Fax: (202) 663-6363<br>joel.millar@wilmerhale.com |
| Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America<br>(Appellees) | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>800 N. West Street<br>Third Floor Wilmington, Delaware 19801<br>Telephone: 302 999 1540<br>Fax: 302 762 1688<br>stamoulis@swdelaw.com<br><br>-and-<br><br>**O'MELVENY & MYERS LLP**<br>Tancred Schiavoni (*pro hac vice*)<br>Times Square Tower |

15

|  | 7 Times Square<br>New York, New York 10036-6537<br>Telephone: (212) 326-2000<br>Fax: (212) 326-2061<br>tschiavoni@omm.com<br><br>**O'MELVENY & MYERS LLP**<br>Stephen Warren (*pro hac vice*)<br>400 South Hope Street<br>Los Angeles, California 90071<br>Telephone: (213) 430-6000<br>Fax: (213) 430-6407<br>swarren@omm.com<br><br>**O'MELVENY & MYERS LLP**<br>Jonathan D. Hacker (*pro hac vice*)<br>1625 Eye Street, N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 383-5300<br>jhacker@omm.com |
| Federal Insurance<br>Company and<br>Westchester Fire<br>Insurance Company<br>(Appellees) | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>8000 N. West Street, Third Floor<br>Wilmington, Delaware 19801<br>Telephone: (302) 999-1540<br>stamoulis@swdelaw.com<br><br>-and-<br><br>**SIMPSON THATCHER & BARTLETT LLP**<br>David Elbaum (*pro hac vice*)<br>425 Lexington Avenue<br>New York, New York 10017<br>Telephone: (212) 455-2000<br>david.elbaum@stblaw.com |
| American Zurich<br>Insurance Company,<br>American Guarantee<br>Insurance Company, and<br>Steadfast Insurance<br>Company<br>(Appellees) | **TYBOUT, REDFEARN & PELL**<br>Robert D. Cecil, Jr. (No. 5317)<br>501 Carr Road, Suite 300<br>Wilmington, Delaware 19899<br>Telephone: (302) 658-6901<br>Email: rcecil@trplaw.com<br><br>-and-<br><br>**CROWELL & MORING LLP**<br>Mark D. Plevin (*pro hac vice*) |

16

| | |
|---|---|
| | Kevin D. Cacabelos (*pro hac vice*)<br>Three Embarcadero Center, 26th Floor<br>San Francisco, California 94111<br>Telephone: (415) 986-2800<br>Email: mplevin@crowell.com<br>kcacabelos@crowell.com<br><br>Tacie H. Yoon (*pro hac vice*)<br>Rachel A. Jankowski (*pro hac vice*)<br>1001 Pennsylvania Ave., N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 624-2500<br>Email: tyoon@crowell.com<br>rjankowski@crowell.com |
| Clarendon National Insurance Company, as successor in interest by merger to Clarendon America Insurance Company; River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited, on its own behalf and in turn as successor to St. Katherine Insurance Company Limited); and Zurich American Insurance Company, as successor to Maryland Casualty Company, Zurich Insurance Company, and Maryland General Insurance Company (Appellees) | **BALLARD SPAHR LLP**<br>Matthew G. Summers (No. 5533)<br>Chantelle D. McClamb (No. 5978)<br>919 N. Market Street, 11th Floor<br>Wilmington, Delaware 19801-3034<br>Telephone: (302) 252-4428<br>Fax: (302) 252-4466<br>Email: summersm@ballardspahr.com<br>mcclamb@ballardspahr.com<br><br>-and-<br><br>**STEPTOE & JOHNSON LLP**<br>Harry Lee (*pro hac vice*)<br>John O'Connor (*pro hac vice*)<br>1330 Connecticut Avenue NW<br>Washington, DC 20036<br>Telephone: (202) 429-8078<br>Fax: (202) 429-3902<br>Email: hlee@steptoe.com<br>joconnor@steptoe.com |
| Ad Hoc Committee of Local Councils of the Boy Scouts of America (Appellee) | **DLA PIPER, LLP (US)**<br>R. Craig Martin (No. 5032)<br>1201 North Market Street, Suite 2100<br>Wilmington, Delaware 19801-1147<br>Telephone: (302) 468-5655<br>Email: craig.martin@dlapiper.com |

17

A00295

<table>
<tr>
<td></td>
<td>

-and-

**WACHTELL, LIPTON, ROSEN & KATZ**
Richard G. Mason (*pro hac vice*)
Douglas K. Mayer (*pro hac vice*)
Joseph C. Celentino (*pro hac vice*)
Mitchell S. Levy (*pro hac vice*)
51 West 52nd Street
New York, New York 10019
Telephone: (212) 403-1000
Email: RGMason@wlrk.com
DKMayer@wlrk.com
JCCelentino@wlrk.com
MSLevy@wlrk.com

</td>
</tr>
</table>

Dated: April 10, 2023      By:   */s/ Deirdre M. Richards*
Wilmington, Delaware

Deirdre M. Richards (DE Bar No. 4191)
FINEMAN KREKSTEIN & HARRIS PC
1300 N. King Street
Wilmington, DE 19801
Telephone: (302) 538-8331
Facsimile: (302) 394-9228
Email: drichards@finemanlawfirm.com

Michael A. Rosenthal (*pro hac vice*)
Mitchell A. Karlan (*pro hac vice*)
James Hallowell (*pro hac vice*)
Keith R. Martorana (*pro hac vice*)
Seth M. Rokosky (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
Email: mrosenthal@gibsondunn.com
mkarlan@gibsondunn.com
jhallowell@gibsondunn.com
kmartorana@gibsondunn.com
srokosky@gibsondunn.com

Theodore J. Boutrous Jr. (*pro hac vice*)
Richard J. Doren (*pro hac vice*)
Blaine H. Evanson (*pro hac vice*)

18

A00296

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 229-7038
Facsimile: (213) 229-6038
Email: tboutrous@gibsondunn.com
     rdoren@gibsondunn.com
     bevanson@gibsondunn.com

Susan N.K. Gummow (*pro hac vice*)
FORAN GLENNON PALANDECH PONZI &
RUDLOFF P.C.
222 N. LaSalle St., Suite 1400
Chicago, Illinois 60601
Telephone: (312) 863-5000
Facsimile: (312) 863-5009
Email: sgummow@fgppr.com

*Attorneys for National Union Fire Insurance
Company of Pittsburgh, Pa., Lexington Insurance
Company, Landmark Insurance Company, and
the Insurance Company of the State of
Pennsylvania*

19

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>           Debtors. | Chapter 11<br><br>Bankruptcy Case<br>No. 20-10343-LSS<br><br>(Jointly Administered) |
| NATIONAL UNION FIRE INSURANCE CO.<br>OF PITTSBURGH, PA, *et al.*,<br><br>           Appellants,<br><br>      v.<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>           Appellee. | Case No. 22-cv-01237-RGA |

**NOTICE OF APPEAL TO THE UNITED STATES**
**COURT OF APPEALS FOR THE THIRD CIRCUIT**

NOTICE IS HEREBY GIVEN that Appellant Indian Harbor Insurance Company, on

behalf of itself and as successor in interest to Catlin Specialty Insurance Company, appeal to the

United States Court of Appeals for the Third Circuit from the final Order and accompanying

Opinion of the United States District Court for the District of Delaware (Hon. Richard G.

Andrews), entered March 28, 2023 (D.I. 150, 151), affirming the *Supplemental Findings of Fact*

*and Conclusions of Law and Order Confirming the Third Modified Fifth Amended Chapter 11*

*Plan of Reorganization (with Technical Modifications) for Boy Scouts of America and Delaware*

*BSA, LLC* (Bankruptcy D.I. 10316) and accompanying Opinion (Bankruptcy D.I. 10136) of the

United States Bankruptcy Court for the District of Delaware (Hon. Laurie S. Silverstein), and all other orders, decisions, and opinions subsumed therein.

The parties to the order appealed from and the names, addresses and telephone numbers of their respective attorneys are as follows:

The parties to the order appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

| National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, and The Insurance Company of the State of Pennsylvania (the "AIG Companies") (Appellants) | **FINEMAN KREKSTEIN & HARRIS PC**<br>Deirdre M. Richards<br>1300 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 538-8331<br>Email: drichards@finemanlawfirm.com<br><br>-and-<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br>Michael A. Rosenthal (*pro hac vice*)<br>Mitchell A. Karlan (*pro hac vice*)<br>James Hallowell (*pro hac vice*)<br>Keith R. Martorana (*pro hac vice*)<br>Seth M. Rokosky (*pro hac vice*)<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 351-4000<br>Email: mrosenthal@gibsondunn.com<br>mkarlan@gibsondunn.com<br>jhallowell@gibsondunn.com<br>kmartorana@gibsondunn.com<br>srokosky@gibsondunn.com<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br>Theodore J. Boutrous Jr. (*pro hac vice*)<br>Richard J. Doren (*pro hac vice*)<br>Blaine H. Evanson (*pro hac vice*)<br>333 South Grand Avenue<br>Los Angeles, California 90071<br>Telephone: (213) 229-7038<br>Email: rdoren@gibsondunn.com<br>bevanson@gibsondunn.com<br>tboutrous@gibsondunn.com |

| | |
|---|---|
| | **FORAN GLENNON PALANDECH PONZI & RUDLOFF P.C.**<br>Susan N.K. Gummow<br>222 N. LaSalle St., Suite 1400<br>Chicago, Illinois 60601<br>Telephone: (312) 863-5000<br>Email: sgummow@fgppr.com |
| Allianz Global Risks US<br>Insurance Company<br>(Appellant) | **TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>David M. Fournier (DE Bar No. 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Hercules Plaza<br>1313 Market Street<br>Suite 5100<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: 404.885.3000<br>david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**PARKER, HUDSON, RAINER & DOBBS LLP**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA  30308<br>Telephone: 404.420.4313<br>Facsimile: 404.522.8409<br>hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>-and-<br><br>**McDERMOTT WILL & EMERY LLP**<br>Margaret H. Warner (*pro hac vice*)<br>Ryan S. Smethurst (*pro hac vice*)<br>Alex M. Spisak (*pro hac vice*)<br>The McDermott Building<br>500 North Capitol Street, NW<br>Washington, DC 20001-1531<br>Telephone: 202.756.8228<br>Facsimile: 202.756.8087<br>mwarner@mwe.com<br>rsmethurst@mwe.com<br>aspisak@mwe.com |

| National Surety Corporation and Interstate Fire & Casualty Company (Appellants) | **TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>David M. Fournier (DE Bar No. 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Hercules Plaza, Suite 5100<br>1313 Market Street<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: 302.777.6500<br>Facsimile: 302.421.8390<br>david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**PARKER, HUDSON, RAINER & DOBBS LLP**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA  30308<br>Telephone: 404.420.4313<br>Facsimile: 404.522.8409<br>hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>-and-<br><br>**BRADLEY RILEY JACOBS PC**<br>Todd C. Jacobs (*pro hac vice*)<br>John E. Bucheit (*pro hac vice*)<br>Paul J. Esker (*pro hac vice*)<br>500 West Madison Street<br>Suite 1000<br>Chicago, IL 60661<br>Telephone: 312.281.0295<br>tjacobs@bradleyriley.com<br>jbucheit@bradleyriley.com<br>pesker@bradleyriley.com |
| Arch Insurance Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (No. 2898)<br>1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400<br>kmiller@skjlaw.com |

| | |
|---|---|
| | **HANGLEY ARONCHICK SEGAL**<br>**PUDLIN & SCHILLER**<br>Ronald P. Schiller (*pro hac vice*)<br>Matthew A. Hamermesh (*pro hac vice*)<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>T: (215) 568-6200<br>F: (215) 568-0300<br>E: rschiller@hangley.com<br>mhamermesh@hangley.com |
| Argonaut Insurance Company and Colony Insurance Company (Appellants) | **POST & SCHELL, P.C.**<br>Paul Logan (No. 3339)<br>300 Delaware Avenue, Suite 1380<br>Wilmington, DE  19801<br>Telephone:  (302) 251-8856<br>Email:  plogan@postschell.com<br><br>**POST & SCHELL, P.C.**<br>John C. Sullivan (*pro hac vice*)<br>Kathleen K. Kerns (*pro hac vice*)<br>Four Penn Center – 13th Floor<br>1600 John F. Kennedy Boulevard<br>Philadelphia, PA  19103<br>Telephone:  (215) 587-1000<br>jsullivan@postschell.com<br>kkerns@postschell.com<br><br>-and-<br><br>**IFRAH PLLC**<br>George R. Calhoun (*pro hac vice*)<br>1717 Pennsylvania Avenue, N.W. Suite 650<br>Washington, DC  20006<br>Telephone:  (202) 840-8758<br>george@ifrahlaw.com |
| Arrowood Indemnity Company (Appellant) | **JOYCE, LLC**<br>Michael J. Joyce (No. 4563)<br>1225 King Street, Suite 800<br>Wilmington, DE 19801<br>Telephone:  (302) 388-1944<br>Email:  mjoyce@mjlawoffices.com<br><br>-and-<br><br>**COUGHLIN MIDLIGE & GARLAND, LLP**<br>Kevin Coughlin (*pro hac vice*) |

| | |
|---|---|
| | Lorraine Armenti (*pro hac vice*)<br>Michael Hrinewski (*pro hac vice*)<br>350 Mount Kemble Avenue<br>PO Box 1917<br>Morristown, NJ 07962<br>Telephone:  (973) 267-0058<br>Facsimile:  973-267-6442<br>kcoughlin@cmg.law<br>larmenti@cmg.law<br>mhrinewski@cmg.law<br><br>-and-<br><br>**CARRUTHERS & ROTH, P.A.**<br>Britton C. Lewis<br>John M. Flynn<br>235 N. Edgeworth Street<br>P.O. Box 540<br>Greensboro, NC  27401<br>Telephone:  (336) 478-1146<br>Facsimile:  (336) 478-1145<br>jmf@crlaw.com<br>bcl@crlaw.com |
| Continental Insurance Company and Columbia Casualty Company (Appellants) | **GOLDSTEIN & MCCLINTOCK LLLP**<br>Maria Aprile Sawczuk (DE #3320)<br>501 Silverside Road<br>Wilmington, DE 19809<br>302-444-6710<br>marias@goldmclaw.com<br><br>-and-<br><br>**LOEB & LOEB LLP**<br>Laura McNally (*pro hac vice*)<br>Emily Stone (*pro hac vice*)<br>321 N. Clark Street, Suite 2300<br>Chicago, IL 60654<br>312-464-3155<br>lmcnally@loeb.com<br>estone@loeb.com |
| Gemini Insurance Company (Appellant) | **WERB & SULLIVAN**<br>**LEGAL ARTS BUILDING**<br>Brian A. Sullivan (No. 2098)<br>1225 N. King Street<br>Suite 600<br>Wilmington, Delaware 19801 |

| | |
|---|---|
| | Telephone: (302) 652-1100<br>Cell: (302) 757-9932<br>Facsimile: (302) 652-1111<br>Email: bsullivan@werbsullivan.com<br><br>**GIEGER LABORDE & LAPEROUOSE, LLC**<br>John E.W. Baay II (*pro hac vice*)<br>701 Poydras Street<br>Suite 4800<br>New Orleans, LA 70139<br>Tel.: 504-561-0400<br>Fax: 504-561-1011<br>Email: jbaay@glllaw.com<br><br>-and-<br><br>**KIERNAN TREBACH LLP**<br>William H. White Jr (*pro hac vice*)<br>1233 20th Street, NW<br>8th Floor<br>Washington, DC 20036<br>Tel.: 202-712-7000<br>Fax: 202-712-7100<br>Email: wwhite@kiernantrebach.com |
| General Star Indemnity<br>Company<br>(Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (DE Bar No. 2898)<br>1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400<br>Email: kmiller@skjlaw.com<br><br>-and-<br><br>**WILEY REIN LLP**<br>Mary E. Borja (*pro hac vice*)<br>Gary P. Seligman (*pro hac vice*)<br>Ashley L. Criss (*pro hac vice*)<br>2050 M Street NW<br>Washington, DC 20036<br>Phone: (202) 719-7000<br>Email: mborja@wiley.law<br>gseligman@wiley.law<br>acriss@wiley.law |
| Great American<br>Assurance | **BODELL BOVÉ, LLC**<br>Bruce W. McCullough (No. 3112) |

| | |
|---|---|
| Company, f/k/a Agricultural Insurance Company; Great American E&S Insurance Company, f/k/a Agricultural Excess and Surplus Insurance Company; and Great American E&S Insurance Company (Appellants) | 1225 N. King Street, Suite 1000 Wilmington, Delaware 19801-3250 Telephone: (302) 655-6749 bmccullough@bodellbove.com<br><br>-and-<br><br>**CLYDE & CO US LLP** Bruce D. Celebrezze (*pro hac vice*) 150 California Street \| 15th Floor San Francisco, California 94111 Telephone: (415) 365-9800 Facsimile: (415) 365-9801 bruce.celebrezze@clydeco.us<br><br>**CLYDE & CO US LLP** Konrad R. Krebs (*pro hac vice*) 340 Mt. Kemble Avenue \| Suite 300 Morristown, NJ 07960 Telephone: (973) 210-6700 Facsimile: (973) 210-6701 konrad.krebs@clydeco.us<br><br>-and-<br><br>**DAVID CHRISTIAN ATTORNEYS LLC** David Christian (*pro hac vice*) 105 W. Madison St., Suite 1400 Chicago, Illinois 60602 Telephone: (312) 282-5282 dchristian@dca.law |
| Indian Harbor Insurance Company, on behalf of itself and as successor in interest to Catlin Specialty Insurance Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP** Kathleen M. Miller (No. 2898) 1000 West Street, Suite 1501 P.O. Box 410 Wilmington, DE  19899 [Courier 19801] Telephone: (302) 652-8400 Facsimile: (302) 652-8405 kmiller@skjlaw.com<br><br>and<br><br>**MOUND COTTON WOLLAN & GREENGRASS LLP** Lloyd A. Gura (*pro hac vice*) Pamela J. Minetto (*pro hac vice*) |

| | |
|---|---|
| | One New York Plaza 44th Floor<br>New York, NY 10004<br>Tel: (212) 804-4282<br>lgura@moundcotton.com<br>pminetto@moundcotton.com |
| Liberty Mutual Insurance Company, The Ohio Casualty Insurance Company, Liberty Insurance Underwriters, Inc. and Liberty Surplus Insurance Corporation (Appellants) | **SEITZ, VAN OGTROP & GREEN, P.A.**<br>R. Karl Hill (DE Bar No. 2747)<br>222 Delaware Avenue<br>Suite 1500<br>Wilmington, DE 19801<br>Telephone: (302) 888-0600<br>khill@svglaw.com<br><br>-and-<br><br>**CHOATE, HALL & STEWART LLP**<br>Douglas R. Gooding (*pro hac vice*)<br>Jonathan D. Marshall (*pro hac vice*)<br>Two International Place<br>Boston, MA 02110<br>Telephone: (617) 248-5000<br>dgooding@choate.com<br>jmarshall@choate.com<br><br>-and-<br><br>**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC**<br>Kim V. Marrkand (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 542-6000<br>kvmarrkand@mintz.com |
| Munich Reinsurance America, Inc., formerly known as American Re-Insurance Company (Appellant) | **DILWORTH PAXSON LLP**<br>Thaddeus J. Weaver (DE Bar. No. 2790)<br>704 N. King Street, Suite 500<br>P.O. Box 1031<br>Wilmington, DE  19899-1031<br>(302) 571-8867 (telephone)<br>(302) 351-8735 (facsimile)<br>tweaver@dilworthlaw.com<br><br>-and-<br><br>**DILWORTH PAXSON LLP**<br>William E. McGrath, Jr. (*pro hac vice*) |

| | |
|---|---|
| | 2 Research Way, Suite 103<br>Princeton, NJ  08540<br>(609) 924-6000 (telephone)<br>(215) 893-8537 (facsimile)<br>wmcgrath@dilworthlaw.com |
| Traders and Pacific Insurance Company, Endurance American Specialty Insurance Company, and Endurance American Insurance Company (Appellants) | **COZEN O'CONNOR**<br>Marla S. Benedek (No. 6638)<br>1201 N. Market Street, Suite 1001<br>Wilmington, DE 19801<br>Telephone:  (302) 295-2024<br>Facsimile:  (302) 250-4498<br>mbenedek@cozen.com |
| Old Republic Insurance Company (Appellant) | **MORRIS JAMES LLP**<br>Stephen M. Miller (No. 2610)<br>Carl N. Kunz, III (No. 3201)<br>500 Delaware Avenue, Suite 1500<br>Wilmington, Delaware 19801<br>Telephone: (302) 888-6800<br>Facsimile:  (302) 571-1750<br>smiller@morrisjames.com<br>ckunz@morrisjames.com<br><br>-and-<br><br>**FOX SWIBEL LEVIN & CARROLL LLP**<br>Margaret M. Anderson (*pro hac vice*)<br>Ryan T. Schultz (*pro hac vice*)<br>Adam A. Hachikian (*pro hac vice*)<br>Kenneth M. Thomas (*pro hac vice*)<br>200 W. Madison Street, Suite 3000<br>Chicago, Illinois 60606<br>Telephone: (312) 224-1200<br>Facsimile:  (312) 224-1201<br>panderson@foxswibel.com<br>rschultz@foxswibel.com<br>ahachikian@foxswibel.com<br>kthomas@foxswibel.com |
| Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company), St. Paul Surplus Lines Insurance Company and | **REGER RIZZO & DARNALL LLP**<br>Louis J. Rizzo, Jr. (DE Bar No. 3374)<br>1521 Concord Pike Suite 305<br>Brandywine Plaza West<br>Wilmington DE  19803<br>Telephone: (302) 477-7100<br>Facsimile: (302) 652-3620 |

| | |
|---|---|
| Gulf Insurance Company<br><br>(Appellants) | lrizzo@regerlaw.com |
| Boy Scouts of America,<br><br>Delaware BSA, LLC<br>(Debtors/Appellees and<br>Debtors in Possession) | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>dabbott@morrisnichols.com<br>aremming@morrisnichols.com<br>ptopper@morrisnichols.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Jessica C. Lauria (*pro hac vice*)<br>Glenn M. Kurtz (*pro hac vice*)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Email: jessica.lauria@whitecase.com<br>gkurtz@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Michael C. Andolina<br>Matthew E. Linder<br>Laura E. Baccash<br>Blair M. Warner<br>111 South Wacker Drive<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>mandolina@whitecase.com<br>mlinder@whitecase.com<br>laura.baccash@whitecase.com<br>blair.warner@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Ronald K. Gorsich<br>Doah Kim |

| | |
|---|---|
| | 555 South Flower Street, Suite 2700<br>Los Angeles, CA 90071<br>Telephone: (213) 620-7700<br>rgorsich@whitecase.com<br>doah.kim@whitecase.com |
| Tort Claimants' Committee (Appellees) | **PACHULSKI STANG ZIEHL & JONES LLP**<br>Richard M. Pachulski (*pro hac vice*)<br>Alan J. Kornfeld (*pro hac vice*)<br>Debra I. Grassgreen (*pro hac vice*)<br>Iain A.W. Nasatir (*pro hac vice*)<br>James E. O'Neill (No. 4042)<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899-8705 (Courier 19801)<br>Telephone: (302) 652-4100<br>Fax: (302) 652-4400<br>Email: rpachulski@pszjlaw.com<br>akornfeld@pszjlaw.com<br>dgrassgreen@pszjlaw.com<br>inasatir@pszjlaw.com<br>joneill@pszjlaw.com |
| Coalition of Abused Scouts for Justice (Appellees) | **MONZACK MERSKY AND BROWDER, P.A.**<br>Rachel B. Mersky (No. 2049)<br>1201 North Orange Street, Suite 400<br>Wilmington, Delaware 19801<br>Telephone: (302) 656-8162<br>Fax: (302) 656-2769<br>Email: rmersky@monlaw.com<br><br>–and–<br><br>**BROWN RUDNICK LLP**<br>David J. Molton, Esq. (*pro hac vice*)<br>Eric R. Goodman, Esq. (*pro hac vice*)<br>Seven Times Square<br>New York, NY 10036<br>Telephone: (212) 209-4800<br>Fax: (212) 209-4801<br>Email: dmolton@brownrudnick.com<br>egoodman@brownrudnick.com<br><br>–and–<br><br>**BROWN RUDNICK LLP**<br>Sunni P. Beville, Esq. (*pro hac vice*)<br>Tristan G. Axelrod, Esq. (*pro hac vice*) |

| | |
|---|---|
| | One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 856-8200<br>Fax: (617) 856-8201<br>Email: sbeville@brownrudnick.com<br>taxelrod@brownrudnick.com |
| Future Claimants'<br>Representative<br>(Appellees) | **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br><br>Robert S. Brady (No. 2847)<br>Edwin J. Harron (No. 3396)<br>Kenneth J. Enos (No. 4544)<br>Ashley E. Jacobs (No. 5635)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Fax: (302) 571-1253<br>Email: rbrady@ycst.com<br>eharron@ycst.com<br>kenos@ycst.com<br>ajacobs@ycst.com<br><br>-and-<br><br>**GILBERT LLP**<br>Kami E. Quinn (*pro hac vice*)<br>Rachel H. Jennings (*pro hac vice*)<br>Kyle Y. Dechant (*pro hac vice*)<br>December L. Huddleston (*pro hac vice*)<br>700 Pennsylvania Ave, SE<br>Suite 400<br>Washington, DC 20003<br>Telephone: (202) 772-2200<br>Fax: (202) 772-3333<br>Email: quinnk@gilbertlegal.com<br>jenningsr@gilbertlegal.com<br>dechantk@gilbertlegal.com<br>huddlestond@gilbertlegal.com |
| The Zalkin Law Firm,<br>P.C. and Pfau Cochran<br>Vertetis Amala PLLC<br>(Appellees) | **KTBS LAW LLP**<br>Thomas E. Patterson (*pro hac vice*)<br>Daniel J. Bussel (*pro hac vice*)<br>Robert J. Pfister (*pro hac vice*)<br>Sasha M. Gurvitz (*pro hac vice*)<br>1801 Century Park East, Twenty-Sixth Floor<br>Los Angeles, California 90067<br>Telephone: (310) 407-4000 |

<table>
<tr>
<td></td>
<td>Fax: (310) 407-9090<br>Email: tpatterson@ktbslaw.com<br>dbussel@ktbslaw.com<br>rpfister@ktbslaw.com<br>sgurvitz@ktbslaw.com<br><br>-and-<br><br>**BIELLI & KLAUDER, LLC**<br>David M. Klauder, Esquire (No. 5769)<br>1204 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 803-4600<br>Fax: (302) 397-2557<br>Email: dklauder@bk-legal.com</td>
</tr>
<tr>
<td>Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, and Navigators Specialty Insurance Company (Appellees)</td>
<td>**BAYARD, P.A.**<br>Erin R. Fay (No. 5268)<br>Gregory J. Flasser (No. 6154)<br>600 North King Street, Suite 400<br>Wilmington, DE 19801<br>Telephone: (302) 655-5000<br>Fax: (302) 658-6395<br>Email: efay@bayardlaw.com<br>gflasser@bayardlaw.com<br><br>-and-<br><br>**RUGGERI PARKS WEINBERG LLP**<br>James P. Ruggeri (*pro hac vice*)<br>Joshua D. Weinberg (*pro hac vice*)<br>1875 K Street, N.W., Suite 600<br>Washington, D.C. 20006-1251<br>Telephone: (202) 469-7750<br>Fax: (202) 469-7751<br><br>-and-<br><br>**WILMER CUTLER PICKERING HALE AND DORR LLP**<br>Philip D. Anker (*pro hac vice*)<br>7 World Trade Center<br>250 Greenwich Street<br>New York, N.Y. 10007<br>Telephone: (212) 230-8890<br>Fax: (212) 230-8888</td>
</tr>
</table>

| | Joel Millar (*pro hac vice*)<br>1875 Pennsylvania Avenue N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 663-6000<br>Fax: (202) 663-6363 |
|---|---|
| Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America<br>(Appellees) | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>800 N. West Street<br>Third Floor Wilmington, Delaware 19801<br>Telephone: 302 999 1540<br>Fax: 302 762 1688<br><br>-and-<br><br>**O'MELVENY & MYERS LLP**<br>Tancred Schiavoni (*pro hac vice*)<br>Times Square Tower<br>7 Times Square<br>New York, New York 10036-6537<br>Telephone: (212) 326-2000<br>Fax: (212) 326-2061<br><br>**O'MELVENY & MYERS LLP**<br>Stephen Warren (*pro hac vice*)<br>400 South Hope Street<br>Los Angeles, California 90071<br>Telephone: (213) 430-6000<br>Fax: (213) 430-6407<br><br>**O'MELVENY & MYERS LLP**<br>Jonathan D. Hacker (*pro hac vice*)<br>1625 Eye Street, N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 383-5300 |
| Federal Insurance Company and Westchester Fire Insurance Company<br>(Appellees) | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>8000 N. West Street, Third Floor<br>Wilmington, Delaware 19801<br>Telephone: (302) 999-1540<br><br>-and-<br><br>**SIMPSON THATCHER & BARTLETT LLP**<br>David Elbaum (*pro hac vice*)<br>425 Lexington Avenue<br>New York, New York 10017 |

| | Telephone: (212) 455-2000 |
|---|---|
| American Zurich Insurance Company, American Guarantee Insurance Company, and Steadfast Insurance Company (Appellees) | **TYBOUT, REDFEARN & PELL**<br>Robert D. Cecil, Jr. (No. 5317)<br>501 Carr Road, Suite 300<br>Wilmington, Delaware 19899<br>Telephone: (302) 658-6901<br>Email: rcecil@trplaw.com<br><br>-and-<br><br>**CROWELL & MORING LLP**<br>Mark D. Plevin (*pro hac vice*)<br>Kevin D. Cacabelos (*pro hac vice*)<br>Three Embarcadero Center, 26th Floor<br>San Francisco, California 94111<br>Telephone: (415) 986-2800<br>Email: mplevin@crowell.com<br>kcacabelos@crowell.com<br><br>Tacie H. Yoon (*pro hac vice*)<br>Rachel A. Jankowski (*pro hac vice*)<br>1001 Pennsylvania Ave., N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 624-2500<br>Email: tyoon@crowell.com<br>rjankowski@crowell.com |
| Clarendon National Insurance Company, as successor in interest by merger to Clarendon America Insurance Company; River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited, on its own behalf and in turn as successor to St. Katherine Insurance Company Limited); and Zurich American Insurance Company, as successor to Maryland Casualty Company, | **BALLARD SPAHR LLP**<br>Matthew G. Summers (No. 5533)<br>Chantelle D. McClamb (No. 5978)<br>919 N. Market Street, 11th Floor<br>Wilmington, Delaware 19801-3034<br>Telephone: (302) 252-4428<br>Fax: (302) 252-4466<br>Email: summersm@ballardspahr.com<br>mcclamb@ballardspahr.com<br><br>-and-<br><br>**STEPTOE & JOHNSON LLP**<br>Harry Lee (*pro hac vice*)<br>John O'Connor (*pro hac vice*)<br>1330 Connecticut Avenue NW<br>Washington, DC 20036<br>Telephone: (202) 429-8078<br>Fax: (202) 429-3902 |

| | |
|---|---|
| Zurich Insurance Company, and Maryland General Insurance Company (Appellees) | Email: hlee@steptoe.com<br>joconnor@steptoe.com |
| Ad Hoc Committee of Local Councils of the Boy Scouts of America (Appellees) | **DLA PIPER, LLP (US)**<br>R. Craig Martin (No. 5032)<br>1201 North Market Street, Suite 2100<br>Wilmington, Delaware 19801-1147<br>Telephone: (302) 468-5655<br>Email: craig.martin@dlapiper.com<br><br>-and-<br><br>**WACHTELL, LIPTON, ROSEN & KATZ**<br>Richard G. Mason (*pro hac vice*)<br>Douglas K. Mayer (*pro hac vice*)<br>Joseph C. Celentino (*pro hac vice*)<br>Mitchell S. Levy (*pro hac vice*)<br>51 West 52nd Street<br>New York, New York 10019<br>Telephone: (212) 403-1000<br>Email: RGMason@wlrk.com<br>DKMayer@wlrk.com<br>JCCelentino@wlrk.com<br>MSLevy@wlrk.com |

Dated: April 10, 0223

SMITH, KATZENSTEIN & JENKINS LLP

*/s/ Kathleen M. Miller*
Kathleen M. Miller (No. 2898)
1000 West Street, Suite 501
P.O. Box 410
Wilmington, DE 19899
Telephone: (302) 652-8400
kmiller@skjlaw.com

-and-

MOUND COTTON WOLLAN &
GREENGRASS LLP
Lloyd A. Gura (admitted *pro hac vice*)
Pamela J. Minetto (admitted *pro hac vice*)
One New York Plaza 44th Floor
New York, NY 10004
Tel: (212) 804-4282
Email: lgura@moundcotton.com
pminetto@moundcotton.com

*Attorneys for Indian Harbor Insurance Company, on behalf of itself and as successor in interest to Catlin Specialty Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I, Kathleen M. Miller, do hereby certify that, on this 10th day April 2023, a true and correct copy of the foregoing *NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT* was served via ECF on all parties who have signed up for electronic filing in this case.

_/s/ Kathleen M. Miller_____
Kathleen M. Miller (DE No. 2898)

**EXHIBIT A**

George A. Davis
Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
George.davis@lw.com

Phillip C. Dublin
Jason Rubin
Akin Gump Strauss Hauer & Feld LLP
1 Bryant Park
New York, New York 10036
pdublin@akingump.com
jrubin@akingump.com

Ted A. Dillman
Helena G. Tseregounis
Latham & Watkins LLP
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Ted.dillman@lw.com
Helena.tseregounis@lw.com

Marty L. Brimmage, Jr.
Lacy M. Lawrence
Akin Gump Strauss Hauer & Feld LLP
2300 N. Field Street, Suite 1800
Dallas, Texas 75201
mbrimmage@akingump.com
llawrence@akingump.com

Michael R. Nestor
Kara Hammond Coyle
Betsy L. Feldman
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
mnestor@ycst.com
kcoyle@ycst.com
bfeldman@ycst.com

Bill Bowden
Michael DeBaeke
Ashby & Geddes
500 Delaware Avenue
P.O. Box 1150
Wilmington, Delaware 19899
wbowden@ashbygeddes.com
mdebaeke@ashbygeddes.com

Timothy J. Fox, Jr.
Office of the United States Trustee for the
District of Delaware
844 N. King Street
Wilmington, Delaware 19801
Timothy.fox@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Boy Scouts of America and Delaware BSA, LLC,[1] | Bankruptcy Case No. 20-10343 (LSS) |
| | (Jointly Administered) |
| National Union Fire Insurance Co. Of Pittsburgh, PA, et al., | |
| Appellants, | |
| v. | C.A. No. 22-cv-01237-RGA |
| Boy Scouts of America and Delaware BSA, LLC, | |
| Appellees. | |

**NOTICE OF APPEAL TO THE UNITED STATES**
**COURT OF APPEALS FOR THE THIRD CIRCUIT**

NOTICE IS HEREBY GIVEN that Appellant Old Republic Insurance Company appeals to the United States Court of Appeals for the Third Circuit from the final Order and accompanying Opinion of the United States District Court for the District of Delaware (Hon. Richard G. Andrews), entered March 28, 2023 (D.I. 150, 151), among other things, affirming the *Supplemental Findings of Fact and Conclusions of Law and Order Confirming the Third Modified Fifth Amended Chapter 11 Plan of Reorganization (with Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC* (Bankruptcy D.I. 10316) and accompanying Opinion (Bankruptcy D.I. 10136) of the United States Bankruptcy Court for the District of Delaware (Hon. Laurie S. Silverstein), and all other orders, decisions, and opinions subsumed therein.

---

[1] The Debtors in the chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

1

The parties to the order appealed from and the names, addresses, and telephone numbers

of their respective attorneys are as follows:

| Old Republic Insurance Company (Appellant) | **MORRIS JAMES LLP**<br>Stephen M. Miller (No. 2610)<br>Carl N. Kunz, III (No. 3201)<br>500 Delaware Avenue, Suite 1500<br>Wilmington, Delaware 19801<br>Telephone: (302) 888-6800<br>Facsimile: (302) 571-1750<br>smiller@morrisjames.com<br>ckunz@morrisjames.com<br><br>-and-<br><br>**FOX SWIBEL LEVIN & CARROLL LLP**<br>Margaret M. Anderson (*pro hac vice*)<br>Ryan T. Schultz (*pro hac vice*)<br>Adam A. Hachikian (*pro hac vice*)<br>Kenneth M. Thomas (*pro hac vice*)<br>200 W. Madison Street, Suite 3000<br>Chicago, Illinois 60606<br>Telephone: (312) 224-1200<br>Facsimile: (312) 224-1201<br>panderson@foxswibel.com<br>rschultz@foxswibel.com<br>ahachikian@foxswibel.com<br>kthomas@foxswibel.com |
| National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, and The Insurance Company of the State of Pennsylvania (the "AIG Companies") (Appellants) | **FINEMAN KREKSTEIN & HARRIS PC**<br>Deirdre M. Richards<br>1300 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 538-8331<br>Email: drichards@finemanlawfirm.com<br><br>-and-<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br>Michael A. Rosenthal (*pro hac vice*)<br>Mitchell A. Karlan (*pro hac vice*)<br>James Hallowell (*pro hac vice*)<br>Keith R. Martorana (*pro hac vice*)<br>Seth M. Rokosky (*pro hac vice*)<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 351-4000 |

16066987/1

| | |
|---|---|
| | Email: mrosenthal@gibsondunn.com<br>mkarlan@gibsondunn.com<br>jhallowell@gibsondunn.com<br>kmartorana@gibsondunn.com<br>srokosky@gibsondunn.com<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br>Theodore J. Boutrous Jr. (*pro hac vice*)<br>Richard J. Doren (*pro hac vice*)<br>Blaine H. Evanson (*pro hac vice*)<br>333 South Grand Avenue<br>Los Angeles, California 90071<br>Telephone: (213) 229-7038<br>Email: rdoren@gibsondunn.com<br>bevanson@gibsondunn.com<br>tboutrous@gibsondunn.com<br><br>**FORAN GLENNON PALANDECH PONZI & RUDLOFF P.C.**<br>Susan N.K. Gummow<br>222 N. LaSalle St., Suite 1400<br>Chicago, Illinois 60601<br>Telephone: (312) 863-5000<br>Email: sgummow@fgppr.com |
| Allianz Global Risks US<br>Insurance Company<br>(Appellant) | **TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>David M. Fournier (DE Bar No. 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Hercules Plaza<br>1313 Market Street<br>Suite 5100<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: 404.885.3000<br>david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**PARKER, HUDSON, RAINER & DOBBS LLP**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA  30308<br>Telephone: 404.420.4313<br>Facsimile: 404.522.8409<br>hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>-and-<br><br>**McDERMOTT WILL & EMERY LLP**<br>Margaret H. Warner (*pro hac vice*)<br>Ryan S. Smethurst (*pro hac vice*) |

16066987/1

A00321

| | Alex M. Spisak (*pro hac vice*)<br>The McDermott Building<br>500 North Capitol Street, NW<br>Washington, DC 20001-1531<br>Telephone: 202.756.8228<br>Facsimile: 202.756.8087<br>mwarner@mwe.com<br>rsmethurst@mwe.com<br>aspisak@mwe.com |
|---|---|
| National Surety Corporation and Interstate Fire & Casualty Company (Appellants) | **TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>David M. Fournier (DE Bar No. 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Hercules Plaza, Suite 5100<br>1313 Market Street<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: 302.777.6500<br>Facsimile: 302.421.8390<br>david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**PARKER, HUDSON, RAINER & DOBBS LLP**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA  30308<br>Telephone: 404.420.4313<br>Facsimile: 404.522.8409<br>hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>-and-<br><br>**BRADLEY RILEY JACOBS PC**<br>Todd C. Jacobs (*pro hac vice*)<br>John E. Bucheit (*pro hac vice*)<br>Paul J. Esker (*pro hac vice*)<br>500 West Madison Street<br>Suite 1000<br>Chicago, IL 60661<br>Telephone: 312.281.0295<br>tjacobs@bradleyriley.com<br>jbucheit@bradleyriley.com<br>pesker@bradleyriley.com |
| Arch Insurance Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (No. 2898)<br>1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400 |

| | |
|---|---|
| | kmiller@skjlaw.com<br><br>**HANGLEY ARONCHICK SEGAL**<br>**PUDLIN & SCHILLER**<br>Ronald P. Schiller (*pro hac vice*)<br>Matthew A. Hamermesh (*pro hac vice*)<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>T: (215) 568-6200<br>F: (215) 568-0300<br>E: rschiller@hangley.com<br>mhamermesh@hangley.com |
| Argonaut Insurance<br>Company and Colony<br>Insurance Company<br>(Appellants) | **POST & SCHELL, P.C.**<br>Paul Logan (No. 3339)<br>300 Delaware Avenue, Suite 1380<br>Wilmington, DE 19801<br>Telephone: (302) 251-8856<br>Email: plogan@postschell.com<br><br>**POST & SCHELL, P.C.**<br>John C. Sullivan (*pro hac vice*)<br>Kathleen K. Kerns (*pro hac vice*)<br>Four Penn Center – 13th Floor<br>1600 John F. Kennedy Boulevard<br>Philadelphia, PA 19103<br>Telephone: (215) 587-1000<br>jsullivan@postschell.com<br>kkerns@postschell.com<br><br>-and-<br><br>**IFRAH PLLC**<br>George R. Calhoun (*pro hac vice*)<br>1717 Pennsylvania Avenue, N.W. Suite 650<br>Washington, DC 20006<br>Telephone: (202) 840-8758<br>george@ifrahlaw.com |
| Arrowood Indemnity<br>Company<br>(Appellant) | **JOYCE, LLC**<br>Michael J. Joyce (No. 4563)<br>1225 King Street, Suite 800<br>Wilmington, DE 19801<br>Telephone: (302) 388-1944<br>Email: mjoyce@mjlawoffices.com<br><br>-and-<br><br>**COUGHLIN MIDLIGE & GARLAND, LLP**<br>Kevin Coughlin (*pro hac vice*)<br>Lorraine Armenti (*pro hac vice*)<br>Michael Hrinewski (*pro hac vice*)<br>350 Mount Kemble Avenue<br>PO Box 1917<br>Morristown, NJ 07962 |

5

A00323

| | |
|---|---|
| | Telephone:  (973) 267-0058<br>Facsimile:  973-267-6442<br>kcoughlin@cmg.law<br>larmenti@cmg.law<br>mhrinewski@cmg.law<br><br>-and-<br><br>**CARRUTHERS & ROTH, P.A.**<br>Britton C. Lewis<br>John M. Flynn<br>235 N. Edgeworth Street<br>P.O. Box 540<br>Greensboro, NC  27401<br>Telephone:  (336) 478-1146<br>Facsimile:  (336) 478-1145<br>jmf@crlaw.com<br>bcl@crlaw.com |
| Continental Insurance Company and Columbia Casualty Company (Appellants) | **GOLDSTEIN & MCCLINTOCK LLLP**<br>Maria Aprile Sawczuk (DE #3320)<br>501 Silverside Road<br>Wilmington, DE 19809<br>302-444-6710<br>marias@goldmclaw.com<br><br>-and-<br><br>**LOEB & LOEB LLP**<br>Laura McNally (*pro hac vice*)<br>Emily Stone (*pro hac vice*)<br>321 N. Clark Street, Suite 2300<br>Chicago, IL 60654<br>312-464-3155<br>lmcnally@loeb.com<br>estone@loeb.com |
| Gemini Insurance Company (Appellant) | **WERB & SULLIVAN**<br>**LEGAL ARTS BUILDING**<br>Brian A. Sullivan (No. 2098)<br>1225 N. King Street<br>Suite 600<br>Wilmington, Delaware 19801<br>Telephone: (302) 652-1100<br>Cell: (302) 757-9932<br>Facsimile: (302) 652-1111<br>Email: bsullivan@werbsullivan.com<br><br>**GIEGER LABORDE & LAPEROUOSE, LLC**<br>John E.W. Baay II (*pro hac vice*)<br>701 Poydras Street<br>Suite 4800<br>New Orleans, LA 70139<br>Tel.: 504-561-0400<br>Fax: 504-561-1011 |

6

| | |
|---|---|
| | Email: jbaay@glllaw.com<br><br>-and-<br><br>**KIERNAN TREBACH LLP**<br>William H. White Jr (*pro hac vice*)<br>1233 20th Street, NW<br>8th Floor<br>Washington, DC 20036<br>Tel.: 202-712-7000<br>Fax: 202-712-7100<br>Email: wwhite@kiernantrebach.com |
| General Star Indemnity Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (DE Bar No. 2898)<br>1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400<br>Email: kmiller@skjlaw.com<br><br>-and-<br><br>**WILEY REIN LLP**<br>Mary E. Borja (*pro hac vice*)<br>Gary P. Seligman (*pro hac vice*)<br>Ashley L. Criss (*pro hac vice*)<br>2050 M Street NW<br>Washington, DC 20036<br>Phone: (202) 719-7000<br>Email: mborja@wiley.law<br>gseligman@wiley.law<br>acriss@wiley.law |
| Great American Assurance Company, f/k/a Agricultural Insurance Company; Great American E&S Insurance Company, f/k/a Agricultural Excess and Surplus Insurance Company; and Great American E&S Insurance Company (Appellants) | **BODELL BOVE, LLC**<br>Bruce W. McCullough (No. 3112)<br>1225 N. King Street, Suite 1000<br>Wilmington, Delaware 19801-3250<br>Telephone: (302) 655-6749<br>bmccullough@bodellbove.com<br><br>-and-<br><br>**CLYDE & CO US LLP**<br>Bruce D. Celebrezze (*pro hac vice*)<br>150 California Street | 15th Floor<br>San Francisco, California 94111<br>Telephone: (415) 365-9800<br>Facsimile: (415) 365-9801<br>bruce.celebrezze@clydeco.us<br><br>**CLYDE & CO US LLP**<br>Konrad R. Krebs (*pro hac vice*)<br>340 Mt. Kemble Avenue | Suite 300<br>Morristown, NJ 07960 |

| | |
|---|---|
| | Telephone: (973) 210-6700<br>Facsimile: (973) 210-6701<br>konrad.krebs@clydeco.us<br><br>-and-<br><br>**DAVID CHRISTIAN ATTORNEYS LLC**<br>David Christian (*pro hac vice*)<br>105 W. Madison St., Suite 1400<br>Chicago, Illinois 60602<br>Telephone: (312) 282-5282<br>dchristian@dca.law |
| Indian Harbor Insurance Company, on behalf of itself and as successor in interest to Catlin Specialty Insurance Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (No. 2898)<br>1000 West Street, Suite 1501<br>P.O. Box 410<br>Wilmington, DE  19899 [Courier 19801]<br>Telephone: (302) 652-8400<br>Facsimile: (302) 652-8405<br>kmiller@skjlaw.com<br><br>and<br><br>**MOUND COTTON WOLLAN & GREENGRASS LLP**<br>Lloyd A. Gura (*pro hac vice*)<br>Pamela J. Minetto (*pro hac vice*)<br>One New York Plaza 44th Floor<br>New York, NY 10004<br>Tel: (212) 804-4282<br>lgura@moundcotton.com<br>pminetto@moundcotton.com |
| Liberty Mutual Insurance Company, The Ohio Casualty Insurance Company, Liberty Insurance Underwriters, Inc. and Liberty Surplus Insurance Corporation (Appellants) | **SEITZ, VAN OGTROP & GREEN, P.A.**<br>R. Karl Hill (DE Bar No. 2747)<br>222 Delaware Avenue<br>Suite 1500<br>Wilmington, DE 19801<br>Telephone: (302) 888-0600<br>khill@svglaw.com<br><br>-and-<br><br>**CHOATE, HALL & STEWART LLP**<br>Douglas R. Gooding (*pro hac vice*)<br>Jonathan D. Marshall (*pro hac vice*)<br>Two International Place<br>Boston, MA 02110<br>Telephone: (617) 248-5000<br>dgooding@choate.com<br>jmarshall@choate.com<br><br>-and- |

8

A00326

| | |
|---|---|
| | **MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC**<br>Kim V. Marrkand (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 542-6000<br>kvmarrkand@mintz.com |
| Munich Reinsurance America, Inc., formerly known as American Re-Insurance Company (Appellant) | **DILWORTH PAXSON LLP**<br>Thaddeus J. Weaver (DE Bar. No. 2790)<br>704 N. King Street, Suite 500<br>P.O. Box 1031<br>Wilmington, DE 19899-1031<br>(302) 571-8867 (telephone)<br>(302) 351-8735 (facsimile)<br>tweaver@dilworthlaw.com<br><br>-and-<br><br>**DILWORTH PAXSON LLP**<br>William E. McGrath, Jr. (*pro hac vice*)<br>2 Research Way, Suite 103<br>Princeton, NJ 08540<br>(609) 924-6000 (telephone)<br>(215) 893-8537 (facsimile)<br>wmcgrath@dilworthlaw.com |
| Traders and Pacific Insurance Company, Endurance American Specialty Insurance Company, and Endurance American Insurance Company (Appellants) | **COZEN O'CONNOR**<br>Marla S. Benedek (No. 6638)<br>1201 N. Market Street, Suite 1001<br>Wilmington, DE 19801<br>Telephone: (302) 295-2024<br>Facsimile: (302) 250-4498<br>mbenedek@cozen.com |
| Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company), St. Paul Surplus Lines Insurance Company and Gulf Insurance Company<br><br>(Appellants) | **REGER RIZZO & DARNALL LLP**<br>Louis J. Rizzo, Jr. (DE Bar No. 3374)<br>1521 Concord Pike Suite 305<br>Brandywine Plaza West<br>Wilmington DE 19803<br>Telephone: (302) 477-7100<br>Facsimile: (302) 652-3620<br>lrizzo@regerlaw.com |
| Lujan Claimants (Appellants | **LOIZIDES, P.A.**<br>Christopher D. Loizides (No. 3968)<br>1225 North King Street, Suite 800<br>Wilmington, DE 19801<br>Telephone: (302) 654-0248<br>Loizides@loizides.com<br><br>-and- |

9

| | **LUJAN & WOLFF LLP**<br>Delia Lujan Wolff<br>Suite 300 DNA Bldg.<br>238 Archbishop Flores St.<br>Hagatna, Guam 96910<br>Telephone: (671) 477-8064/5<br>dslwolff@lawguam.com |
|---|---|
| Dumas & Vaughn Claimants<br><br>(Appellants) | **GELLERT SCALI BUSENKELL & BROWN LLC**<br>Charles J. Brown, III (No. 3368)<br>1201 N. Orange St. 3rd Floor<br>Wilmington, DE  19801<br>Telephone: (302) 425-5813<br>cbrown@gsbblaw.com<br><br>-and-<br><br>**DUMAS & VAUGHN, LLC**<br>Gilion C. Dumas<br>3835 NE Hancock Street, Suite GLB<br>Portland, OR 97212<br>Telephone: (503) 616-5007<br>gilion@dumasandvaughn.com |
| Boy Scouts of America,<br><br>Delaware BSA, LLC<br>(Debtors/Appellees and<br>Debtors in Possession) | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>dabbott@morrisnichols.com<br>aremming@morrisnichols.com<br>ptopper@morrisnichols.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Jessica C. Lauria (*pro hac vice*)<br>Glenn M. Kurtz (*pro hac vice*)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Email: jessica.lauria@whitecase.com<br>gkurtz@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Michael C. Andolina<br>Matthew E. Linder |

| | |
|---|---|
| | Laura E. Baccash<br>Blair M. Warner<br>111 South Wacker Drive<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>mandolina@whitecase.com<br>mlinder@whitecase.com<br>laura.baccash@whitecase.com<br>blair.warner@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Ronald K. Gorsich<br>Doah Kim<br>555 South Flower Street, Suite 2700<br>Los Angeles, CA 90071<br>Telephone: (213) 620-7700<br>rgorsich@whitecase.com<br>doah.kim@whitecase.com |
| Tort Claimants'<br>Committee<br>(Appellee) | **PACHULSKI STANG ZIEHL & JONES LLP**<br>Richard M. Pachulski (*pro hac vice*)<br>Alan J. Kornfeld (*pro hac vice*)<br>Debra I. Grassgreen (*pro hac vice*)<br>Iain A.W. Nasatir (*pro hac vice*)<br>James E. O'Neill (No. 4042)<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899-8705 (Courier 19801)<br>Telephone: (302) 652-4100<br>Fax: (302) 652-4400<br>Email: rpachulski@pszjlaw.com<br>akornfeld@pszjlaw.com<br>dgrassgreen@pszjlaw.com<br>inasatir@pszjlaw.com<br>joneill@pszjlaw.com |
| Coalition of Abused<br>Scouts for Justice<br>(Appellee) | **MONZACK MERSKY AND BROWDER, P.A.**<br>Rachel B. Mersky (No. 2049)<br>1201 North Orange Street, Suite 400<br>Wilmington, Delaware 19801<br>Telephone: (302) 656-8162<br>Fax: (302) 656-2769<br>Email: rmersky@monlaw.com<br><br>–and–<br><br>**BROWN RUDNICK LLP**<br>David J. Molton, Esq. (*pro hac vice*)<br>Eric R. Goodman, Esq. (*pro hac vice*)<br>Seven Times Square<br>New York, NY 10036<br>Telephone: (212) 209-4800<br>Fax: (212) 209-4801 |

11

| | |
|---|---|
| | Email: dmolton@brownrudnick.com<br>egoodman@brownrudnick.com<br><br>–and–<br><br>**BROWN RUDNICK LLP**<br>Sunni P. Beville, Esq. (*pro hac vice*)<br>Tristan G. Axelrod, Esq. (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 856-8200<br>Fax: (617) 856-8201<br>Email: sbeville@brownrudnick.com<br>taxelrod@brownrudnick.com |
| Future Claimants'<br>Representative<br>(Appellee) | **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br><br>Robert S. Brady (No. 2847)<br>Edwin J. Harron (No. 3396)<br>Kenneth J. Enos (No. 4544)<br>Ashley E. Jacobs (No. 5635)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Fax: (302) 571-1253<br>Email: rbrady@ycst.com<br>eharron@ycst.com<br>kenos@ycst.com<br>ajacobs@ycst.com<br><br>-and-<br><br>**GILBERT LLP**<br>Kami E. Quinn (*pro hac vice*)<br>Rachel H. Jennings (*pro hac vice*)<br>Kyle Y. Dechant (*pro hac vice*)<br>December L. Huddleston (*pro hac vice*)<br>700 Pennsylvania Ave, SE<br>Suite 400<br>Washington, DC 20003<br>Telephone: (202) 772-2200<br>Fax: (202) 772-3333<br>Email: quinnk@gilbertlegal.com<br>jenningsr@gilbertlegal.com<br>dechantk@gilbertlegal.com<br>huddlestond@gilbertlegal.com |
| The Zalkin Law Firm,<br>P.C. and Pfau Cochran<br>Vertetis Amala PLLC<br>(Appellees) | **KTBS LAW LLP**<br>Thomas E. Patterson (*pro hac vice*)<br>Daniel J. Bussel (*pro hac vice*)<br>Robert J. Pfister (*pro hac vice*)<br>Sasha M. Gurvitz (*pro hac vice*)<br>1801 Century Park East, Twenty-Sixth Floor<br>Los Angeles, California 90067 |

12

| | |
|---|---|
| | Telephone: (310) 407-4000<br>Fax: (310) 407-9090<br>Email: tpatterson@ktbslaw.com<br>dbussel@ktbslaw.com<br>rpfister@ktbslaw.com<br>sgurvitz@ktbslaw.com<br><br>-and-<br><br>**BIELLI & KLAUDER, LLC**<br>David M. Klauder, Esquire (No. 5769)<br>1204 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 803-4600<br>Fax: (302) 397-2557<br>Email: dklauder@bk-legal.com |
| Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, and Navigators Specialty Insurance Company (Appellees) | **BAYARD, P.A.**<br>Erin R. Fay (No. 5268)<br>Gregory J. Flasser (No. 6154)<br>600 North King Street, Suite 400<br>Wilmington, DE 19801<br>Telephone: (302) 655-5000<br>Fax: (302) 658-6395<br>Email: efay@bayardlaw.com<br>gflasser@bayardlaw.com<br><br>-and-<br><br>**RUGGERI PARKS WEINBERG LLP**<br>James P. Ruggeri (*pro hac vice*)<br>Joshua D. Weinberg (*pro hac vice*)<br>1875 K Street, N.W., Suite 600<br>Washington, D.C. 20006-1251<br>Telephone: (202) 469-7750<br>Fax: (202) 469-7751<br>Email: jruggeri@ruggerilaw.com<br>jweinberg@ruggerilaw.com<br><br>-and-<br><br>**WILMER CUTLER PICKERING HALE AND DORR LLP**<br>Philip D. Anker (*pro hac vice*)<br>7 World Trade Center<br>250 Greenwich Street<br>New York, N.Y. 10007<br>Telephone: (212) 230-8890<br>Fax: (212) 230-8888<br>Email: philip.anker@wilmerhale.com<br><br>Joel Millar (*pro hac vice*)<br>1875 Pennsylvania Avenue N.W.<br>Washington, D.C. 20006 |

13

| | |
|---|---|
| | Telephone: (202) 663-6000<br>Fax: (202) 663-6363<br>Email: joel.millar@wilmerhale.com |
| Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America (Appellees) | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>800 N. West Street, Third Floor<br>Wilmington, Delaware 19801<br>Telephone: 302 999 1540<br>Fax: 302 762 1688<br>Email: stamoulis@swdelaw.com<br><br>-and-<br><br>**O'MELVENY & MYERS LLP**<br>Tancred Schiavoni (*pro hac vice*)<br>Times Square Tower<br>7 Times Square<br>New York, New York 10036-6537<br>Telephone: (212) 326-2000<br>Fax: (212) 326-2061<br>Email: tschiavoni@omm.com<br><br>**O'MELVENY & MYERS LLP**<br>Stephen Warren (*pro hac vice*)<br>400 South Hope Street<br>Los Angeles, California 90071<br>Telephone: (213) 430-6000<br>Fax: (213) 430-6407<br>Email: swarren@omm.com<br><br>**O'MELVENY & MYERS LLP**<br>Jonathan D. Hacker (*pro hac vice*)<br>1625 Eye Street, N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 383-5300<br>Email: jhacker@omm.com |
| Federal Insurance Company and Westchester Fire Insurance Company (Appellees) | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>800 N. West Street, Third Floor<br>Wilmington, Delaware 19801<br>Telephone: (302) 999-1540<br>Email: stamoulis@swdelaw.com<br><br>-and-<br><br>**SIMPSON THATCHER & BARTLETT LLP**<br>David Elbaum (*pro hac vice*)<br>425 Lexington Avenue<br>New York, New York 10017<br>Telephone: (212) 455-2000<br>Email: david.elbaum@stblaw.com |
| American Zurich Insurance Company, | **TYBOUT, REDFEARN & PELL**<br>Robert D. Cecil, Jr. (No. 5317) |

14

| | |
|---|---|
| American Guarantee Insurance Company, and Steadfast Insurance Company (Appellees) | 501 Carr Road, Suite 300<br>Wilmington, Delaware 19899<br>Telephone: (302) 658-6901<br>Email: rcecil@trplaw.com<br><br>-and-<br><br>**CROWELL & MORING LLP**<br>Mark D. Plevin (*pro hac vice*)<br>Kevin D. Cacabelos (*pro hac vice*)<br>Three Embarcadero Center, 26th Floor<br>San Francisco, California 94111<br>Telephone: (415) 986-2800<br>Email: mplevin@crowell.com<br>kcacabelos@crowell.com<br><br>Tacie H. Yoon (*pro hac vice*)<br>Rachel A. Jankowski (*pro hac vice*)<br>1001 Pennsylvania Ave., N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 624-2500<br>Email: tyoon@crowell.com<br>rjankowski@crowell.com |
| Clarendon National Insurance Company, as successor in interest by merger to Clarendon America Insurance Company; River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited, on its own behalf and in turn as successor to St. Katherine Insurance Company Limited); and Zurich American Insurance Company, as successor to Maryland Casualty Company, Zurich Insurance Company, and Maryland General Insurance Company (Appellees) | **BALLARD SPAHR LLP**<br>Matthew G. Summers (No. 5533)<br>Chantelle D. McClamb (No. 5978)<br>919 N. Market Street, 11th Floor<br>Wilmington, Delaware 19801-3034<br>Telephone: (302) 252-4428<br>Fax: (302) 252-4466<br>Email: summersm@ballardspahr.com<br>mcclamb@ballardspahr.com<br><br>-and-<br><br>**STEPTOE & JOHNSON LLP**<br>Harry Lee (*pro hac vice*)<br>John O'Connor (*pro hac vice*)<br>1330 Connecticut Avenue NW<br>Washington, DC 20036<br>Telephone: (202) 429-8078<br>Fax: (202) 429-3902<br>Email: hlee@steptoe.com<br>joconnor@steptoe.com |
| Ad Hoc Committee of Local Councils of the Boy Scouts of America | **DLA PIPER, LLP (US)**<br>R. Craig Martin (No. 5032)<br>1201 North Market Street, Suite 2100<br>Wilmington, Delaware 19801-1147 |

16066987/1

| | |
|---|---|
| (Appellee) | Telephone: (302) 468-5655<br>Email: craig.martin@dlapiper.com<br><br>-and-<br><br>**WACHTELL, LIPTON, ROSEN & KATZ**<br>Richard G. Mason (*pro hac vice*)<br>Douglas K. Mayer (*pro hac vice*)<br>Joseph C. Celentino (*pro hac vice*)<br>Mitchell S. Levy (*pro hac vice*)<br>51 West 52nd Street<br>New York, New York 10019<br>Telephone: (212) 403-1000<br>Email: RGMason@wlrk.com<br>DKMayer@wlrk.com<br>JCCelentino@wlrk.com<br>MSLevy@wlrk.com |

Dated: April 10, 2023        By:   /s/ Carl N. Kunz, III
Wilmington, Delaware
                        Stephen M. Miller (No. 2610)
                        Carl N. Kunz, III (No. 3201)
                        MORRIS JAMES LLP
                        500 Delaware Avenue, Suite 1500
                        Wilmington, Delaware 19801
                        Telephone: (302) 888-6800
                        Facsimile: (302) 571-1750
                        Email: smiller@morrisjames.com
                                 ckunz@morrisjames.com

                        Margaret M. Anderson, Esq. (admitted *pro hac vice*)
                        Ryan T. Schultz (admitted *pro hac vice*)
                        Adam A. Hachikian (admitted *pro hac vice*)
                        Kenneth M. Thomas (admitted *pro hac vice*)
                        FOX SWIBEL LEVIN & CARROLL LLP
                        200 W. Madison Street, Suite 3000
                        Chicago, Illinois 60606
                        Telephone: (312) 224-1200
                        Facsimile: (312) 224-1201
                        Email:  panderson@foxswibel.com
                                  rschultz@foxswibel.com
                                  ahachikian@foxswibel.com
                                  kthomas@foxswibel.com

                        *Counsel for Old Republic Insurance Company*

16

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>         Debtors. | Chapter 11<br><br>Bankruptcy Case<br>No. 20-10343-LSS<br><br>(Jointly Administered) |
| NATIONAL UNION FIRE INSURANCE CO.<br>OF PITTSBURGH, PA, *et al.*,<br><br>         Appellants,<br><br>       v.<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>         Appellee. | Case No. 22-cv-01237-RGA |

## NOTICE OF APPEAL TO THE UNITED STATES
## COURT OF APPEALS FOR THE THIRD CIRCUIT

NOTICE IS HEREBY GIVEN that Appellants Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company), St. Paul Surplus Lines Insurance Company and Gulf Insurance Company ("Travelers"), appeal to the United States Court of Appeals for the Third Circuit from the final Order and accompanying Opinion of the United States District Court for the District of Delaware (Hon. Richard G. Andrews), entered March 28, 2023 (D.I. 150, 151 Attached hereto as Exhibits A and B respectively), among other things affirming the *Supplemental Findings of Fact and Conclusions of Law and Order Confirming the Third Modified Fifth Amended Chapter 11 Plan of Reorganization (with Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC* (Bankruptcy D.I. 10316) and accompanying Opinion (Bankruptcy D.I.

10136) of the United States Bankruptcy Court for the District of Delaware (Hon. Laurie S. Silverstein), and all other orders, decisions, and opinions subsumed therein.

The parties to the order appealed from and the names, addresses and telephone numbers of their respective attorneys are as follows:

| | |
|---|---|
| Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company), St. Paul Surplus Lines Insurance Company and Gulf Insurance Company ("Travelers") (Appellants) | **REGER RIZZO & DARNALL LLP**<br>Louis J. Rizzo, Jr. (DE Bar No. 3374)<br>1521 Concord Pike<br>Brandywine Plaza West Suite 305<br>Wilmington, DE 19803<br>Telephone: (302) 477-7100<br>Email: lrizzo@regerlaw.com |
| Allianz Global Risks US Insurance Company (Appellant) | **TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>David M. Fournier (DE Bar No. 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Hercules Plaza<br>1313 Market Street<br>Suite 5100<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: 404.885.3000<br>david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**PARKER, HUDSON, RAINER & DOBBS LLP**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA  30308<br>Telephone: 404.420.4313<br>Facsimile: 404.522.8409<br>hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>-and- |

| | |
|---|---|
| | **McDERMOTT WILL & EMERY LLP**<br>Margaret H. Warner (*pro hac vice*)<br>Ryan S. Smethurst (*pro hac vice*)<br>Alex M. Spisak (*pro hac vice*)<br>The McDermott Building<br>500 North Capitol Street, NW<br>Washington, DC 20001-1531<br>Telephone: 202.756.8228<br>Facsimile: 202.756.8087<br>mwarner@mwe.com<br>rsmethurst@mwe.com<br>aspisak@mwe.com |
| National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, and The Insurance Company of the State of Pennsylvania (the "AIG Companies") (Appellants) | **FINEMAN KREKSTEIN & HARRIS PC**<br>Deirdre M. Richards<br>1300 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 538-8331<br>Email: drichards@finemanlawfirm.com<br><br>-and-<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br>Michael A. Rosenthal (*pro hac vice*)<br>Mitchell A. Karlan (*pro hac vice*)<br>James Hallowell (*pro hac vice*)<br>Keith R. Martorana (*pro hac vice*)<br>Seth M. Rokosky (*pro hac vice*)<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 351-4000<br>Email: mrosenthal@gibsondunn.com<br>mkarlan@gibsondunn.com<br>jhallowell@gibsondunn.com<br>kmartorana@gibsondunn.com<br>srokosky@gibsondunn.com<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br>Theodore J. Boutrous Jr. (*pro hac vice*)<br>Richard J. Doren (*pro hac vice*)<br>Blaine H. Evanson (*pro hac vice*)<br>333 South Grand Avenue<br>Los Angeles, California 90071<br>Telephone: (213) 229-7038<br>Email: rdoren@gibsondunn.com<br>bevanson@gibsondunn.com<br>tboutrous@gibsondunn.com |

| | |
|---|---|
| | **FORAN GLENNON PALANDECH PONZI & RUDLOFF P.C.**<br>Susan N.K. Gummow<br>222 N. LaSalle St., Suite 1400<br>Chicago, Illinois 60601<br>Telephone: (312) 863-5000<br>Email: sgummow@fgppr.com |
| National Surety Corporation and Interstate Fire & Casualty Company (Appellants) | **TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>David M. Fournier (DE Bar No. 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Hercules Plaza, Suite 5100<br>1313 Market Street<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: 302.777.6500<br>Facsimile: 302.421.8390<br>david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**PARKER, HUDSON, RAINER & DOBBS LLP**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA 30308<br>Telephone: 404.420.4313<br>Facsimile: 404.522.8409<br>hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>-and-<br><br>**BRADLEY RILEY JACOBS PC**<br>Todd C. Jacobs (*pro hac vice*)<br>John E. Bucheit (*pro hac vice*)<br>Paul J. Esker (*pro hac vice*)<br>500 West Madison Street<br>Suite 1000<br>Chicago, IL 60661<br>Telephone: 312.281.0295<br>tjacobs@bradleyriley.com<br>jbucheit@bradleyriley.com<br>pesker@bradleyriley.com |

| | |
|---|---|
| Arch Insurance Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (No. 2898)<br>1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400<br>kmiller@skjlaw.com<br><br>**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**<br>Ronald P. Schiller (*pro hac vice*)<br>Matthew A. Hamermesh (*pro hac vice*)<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>T: (215) 568-6200<br>F: (215) 568-0300<br>E: rschiller@hangley.com<br>mhamermesh@hangley.com |
| Argonaut Insurance Company and Colony Insurance Company (Appellants) | **POST & SCHELL, P.C.**<br>Paul Logan (No. 3339)<br>300 Delaware Avenue, Suite 1380<br>Wilmington, DE  19801<br>Telephone:  (302) 251-8856<br>Email:  plogan@postschell.com<br><br>**POST & SCHELL, P.C.**<br>John C. Sullivan (*pro hac vice*)<br>Kathleen K. Kerns (*pro hac vice*)<br>Four Penn Center – 13th Floor<br>1600 John F. Kennedy Boulevard<br>Philadelphia, PA  19103<br>Telephone:  (215) 587-1000<br>jsullivan@postschell.com<br>kkerns@postschell.com<br><br>-and-<br><br>**IFRAH PLLC**<br>George R. Calhoun (*pro hac vice*)<br>1717 Pennsylvania Avenue, N.W. Suite 650<br>Washington, DC  20006<br>Telephone:  (202) 840-8758<br>george@ifrahlaw.com |

| Arrowood Indemnity Company (Appellant) | **JOYCE, LLC**<br>Michael J. Joyce (No. 4563)<br>1225 King Street, Suite 800<br>Wilmington, DE 19801<br>Telephone: (302) 388-1944<br>Email: mjoyce@mjlawoffices.com<br><br>-and-<br><br>**COUGHLIN MIDLIGE & GARLAND, LLP**<br>Kevin Coughlin (*pro hac vice*)<br>Lorraine Armenti (*pro hac vice*)<br>Michael Hrinewski (*pro hac vice*)<br>350 Mount Kemble Avenue<br>PO Box 1917<br>Morristown, NJ 07962<br>Telephone: (973) 267-0058<br>Facsimile: 973-267-6442<br>kcoughlin@cmg.law<br>larmenti@cmg.law<br>mhrinewski@cmg.law<br><br>-and-<br><br>**CARRUTHERS & ROTH, P.A.**<br>Britton C. Lewis<br>John M. Flynn<br>235 N. Edgeworth Street<br>P.O. Box 540<br>Greensboro, NC 27401<br>Telephone: (336) 478-1146<br>Facsimile: (336) 478-1145<br>jmf@crlaw.com<br>bcl@crlaw.com |
|---|---|
| Continental Insurance Company and Columbia Casualty Company (Appellants) | **GOLDSTEIN & MCCLINTOCK LLLP**<br>Maria Aprile Sawczuk (DE #3320)<br>501 Silverside Road<br>Wilmington, DE 19809<br>302-444-6710<br>marias@goldmclaw.com<br><br>-and- |

| | |
|---|---|
| | **LOEB & LOEB LLP**<br>Laura McNally (*pro hac vice*)<br>Emily Stone (*pro hac vice*)<br>321 N. Clark Street, Suite 2300<br>Chicago, IL 60654<br>312-464-3155<br>lmcnally@loeb.com<br>estone@loeb.com |
| Gemini Insurance Company (Appellant) | **WERB & SULLIVAN**<br>**LEGAL ARTS BUILDING**<br>Brian A. Sullivan (No. 2098)<br>1225 N. King Street<br>Suite 600<br>Wilmington, Delaware 19801<br>Telephone: (302) 652-1100<br>Cell: (302) 757-9932<br>Facsimile: (302) 652-1111<br>Email: bsullivan@werbsullivan.com<br><br>**GIEGER LABORDE & LAPEROUOSE, LLC**<br>John E.W. Baay II (*pro hac vice*)<br>701 Poydras Street<br>Suite 4800<br>New Orleans, LA 70139<br>Tel.: 504-561-0400<br>Fax: 504-561-1011<br>Email: jbaay@glllaw.com<br><br>-and-<br><br>**KIERNAN TREBACH LLP**<br>William H. White Jr (*pro hac vice*)<br>1233 20th Street, NW<br>8th Floor<br>Washington, DC 20036<br>Tel.: 202-712-7000<br>Fax: 202-712-7100<br>Email: wwhite@kiernantrebach.com |
| General Star Indemnity Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (DE Bar No. 2898)<br>1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400 |

| | |
|---|---|
| | Email: kmiller@skjlaw.com<br><br>-and-<br><br>**WILEY REIN LLP**<br>Mary E. Borja (*pro hac vice*)<br>Gary P. Seligman (*pro hac vice*)<br>Ashley L. Criss (*pro hac vice*)<br>2050 M Street NW<br>Washington, DC 20036<br>Phone: (202) 719-7000<br>Email: mborja@wiley.law<br>gseligman@wiley.law<br>acriss@wiley.law |
| Great American Assurance Company, f/k/a Agricultural Insurance Company; Great American E&S Insurance Company, f/k/a Agricultural Excess and Surplus Insurance Company; and Great American E&S Insurance Company (Appellants) | **BODELL BOVÉ, LLC**<br>Bruce W. McCullough (No. 3112)<br>1225 N. King Street, Suite 1000<br>Wilmington, Delaware 19801-3250<br>Telephone: (302) 655-6749<br>bmccullough@bodellbove.com<br><br>-and-<br><br>**CLYDE & CO US LLP**<br>Bruce D. Celebrezze (*pro hac vice*)<br>150 California Street \| 15th Floor<br>San Francisco, California 94111<br>Telephone: (415) 365-9800<br>Facsimile: (415) 365-9801<br>bruce.celebrezze@clydeco.us<br><br>**CLYDE & CO US LLP**<br>Konrad R. Krebs (*pro hac vice*)<br>340 Mt. Kemble Avenue \| Suite 300<br>Morristown, NJ 07960<br>Telephone: (973) 210-6700<br>Facsimile: (973) 210-6701<br>konrad.krebs@clydeco.us<br><br>-and-<br><br>**DAVID CHRISTIAN ATTORNEYS LLC**<br>David Christian (*pro hac vice*)<br>105 W. Madison St., Suite 1400<br>Chicago, Illinois 60602 |

| | |
|---|---|
| | Telephone: (312) 282-5282<br>dchristian@dca.law |
| Indian Harbor Insurance Company, on behalf of itself and as successor in interest to Catlin Specialty Insurance Company<br>(Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (No. 2898)<br>1000 West Street, Suite 1501<br>P.O. Box 410<br>Wilmington, DE  19899 [Courier 19801]<br>Telephone: (302) 652-8400<br>Facsimile: (302) 652-8405<br>kmiller@skjlaw.com<br><br>and<br><br>**MOUND COTTON WOLLAN & GREENGRASS LLP**<br>Lloyd A. Gura (*pro hac vice*)<br>Pamela J. Minetto (*pro hac vice*)<br>One New York Plaza 44th Floor<br>New York, NY 10004<br>Tel: (212) 804-4282<br>lgura@moundcotton.com<br>pminetto@moundcotton.com |
| Liberty Mutual Insurance Company, The Ohio Casualty Insurance Company, Liberty Insurance Underwriters, Inc. and Liberty Surplus Insurance Corporation<br>(Appellants) | **SEITZ, VAN OGTROP & GREEN, P.A.**<br>R. Karl Hill (DE Bar No. 2747)<br>222 Delaware Avenue<br>Suite 1500<br>Wilmington, DE 19801<br>Telephone: (302) 888-0600<br>khill@svglaw.com<br><br>-and-<br><br>**CHOATE, HALL & STEWART LLP**<br>Douglas R. Gooding (*pro hac vice*)<br>Jonathan D. Marshall (*pro hac vice*)<br>Two International Place<br>Boston, MA 02110<br>Telephone: (617) 248-5000<br>dgooding@choate.com<br>jmarshall@choate.com<br><br>-and- |

| | |
|---|---|
| | **MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC**<br>Kim V. Marrkand (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 542-6000<br>kvmarrkand@mintz.com |
| Munich Reinsurance America, Inc., formerly known as American Re-Insurance Company (Appellant) | **DILWORTH PAXSON LLP**<br>Thaddeus J. Weaver (DE Bar. No. 2790)<br>704 N. King Street, Suite 500<br>P.O. Box 1031<br>Wilmington, DE  19899-1031<br>(302) 571-8867 (telephone)<br>(302) 351-8735 (facsimile)<br>tweaver@dilworthlaw.com<br><br>-and-<br><br>**DILWORTH PAXSON LLP**<br>William E. McGrath, Jr. (*pro hac vice*)<br>2 Research Way, Suite 103<br>Princeton, NJ  08540<br>(609) 924-6000 (telephone)<br>(215) 893-8537 (facsimile)<br>wmcgrath@dilworthlaw.com |
| Traders and Pacific Insurance Company, Endurance American Specialty Insurance Company, and Endurance American Insurance Company (Appellants) | **COZEN O'CONNOR**<br>Marla S. Benedek (No. 6638)<br>1201 N. Market Street, Suite 1001<br>Wilmington, DE 19801<br>Telephone:  (302) 295-2024<br>Facsimile:  (302) 250-4498<br>mbenedek@cozen.com |
| Old Republic Insurance Company (Appellant) | **MORRIS JAMES LLP**<br>Stephen M. Miller (No. 2610)<br>Carl N. Kunz, III (No. 3201)<br>500 Delaware Avenue, Suite 1500<br>Wilmington, Delaware 19801<br>Telephone: (302) 888-6800<br>Facsimile:  (302) 571-1750<br>smiller@morrisjames.com<br>ckunz@morrisjames.com<br><br>-and- |

|  | **FOX SWIBEL LEVIN & CARROLL LLP**<br>Margaret M. Anderson (*pro hac vice*)<br>Ryan T. Schultz (*pro hac vice*)<br>Adam A. Hachikian (*pro hac vice*)<br>Kenneth M. Thomas (*pro hac vice*)<br>200 W. Madison Street, Suite 3000<br>Chicago, Illinois 60606<br>Telephone: (312) 224-1200<br>Facsimile:  (312) 224-1201<br>panderson@foxswibel.com<br>rschultz@foxswibel.com<br>ahachikian@foxswibel.com<br>kthomas@foxswibel.com |
|---|---|
|  |  |
| Boy Scouts of America,<br><br>Delaware BSA, LLC<br>(Debtors/Appellees and<br>Debtors in Possession) | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>dabbott@morrisnichols.com<br>aremming@morrisnichols.com<br>ptopper@morrisnichols.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Jessica C. Lauria (*pro hac vice*)<br>Glenn M. Kurtz (*pro hac vice*)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Email: jessica.lauria@whitecase.com<br>gkurtz@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Michael C. Andolina<br>Matthew E. Linder<br>Laura E. Baccash |

| | |
|---|---|
| | Blair M. Warner<br>111 South Wacker Drive<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>mandolina@whitecase.com<br>mlinder@whitecase.com<br>laura.baccash@whitecase.com<br>blair.warner@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Ronald K. Gorsich<br>Doah Kim<br>555 South Flower Street, Suite 2700<br>Los Angeles, CA 90071<br>Telephone: (213) 620-7700<br>rgorsich@whitecase.com<br>doah.kim@whitecase.com |
| Tort Claimants'<br>Committee<br>(Appellees) | **PACHULSKI STANG ZIEHL & JONES LLP**<br>Richard M. Pachulski (*pro hac vice*)<br>Alan J. Kornfeld (*pro hac vice*)<br>Debra I. Grassgreen (*pro hac vice*)<br>Iain A.W. Nasatir (*pro hac vice*)<br>James E. O'Neill (No. 4042)<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899-8705 (Courier 19801)<br>Telephone: (302) 652-4100<br>Fax: (302) 652-4400<br>Email: rpachulski@pszjlaw.com<br>akornfeld@pszjlaw.com<br>dgrassgreen@pszjlaw.com<br>inasatir@pszjlaw.com<br>joneill@pszjlaw.com |
| Coalition of Abused<br>Scouts for Justice<br>(Appellees) | **MONZACK MERSKY AND BROWDER, P.A**<br>Rachel B. Mersky (No. 2049)<br>1201 North Orange Street, Suite 400<br>Wilmington, Delaware 19801<br>Telephone: (302) 656-8162<br>Fax: (302) 656-2769<br>Email: rmersky@monlaw.com<br><br>–and–<br><br>**BROWN RUDNICK LLP**<br>David J. Molton, Esq. (*pro hac vice*) |

| | |
|---|---|
| | Eric R. Goodman, Esq. (*pro hac vice*)<br>Seven Times Square<br>New York, NY 10036<br>Telephone: (212) 209-4800<br>Fax: (212) 209-4801<br>Email: dmolton@brownrudnick.com<br>egoodman@brownrudnick.com<br><br>–and–<br><br>**BROWN RUDNICK LLP**<br>Sunni P. Beville, Esq. (*pro hac vice*)<br>Tristan G. Axelrod, Esq. (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 856-8200<br>Fax: (617) 856-8201<br>Email: sbeville@brownrudnick.com<br>taxelrod@brownrudnick.com |
| Future Claimants'<br>Representative<br>(Appellees) | **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br><br>Robert S. Brady (No. 2847)<br>Edwin J. Harron (No. 3396)<br>Kenneth J. Enos (No. 4544)<br>Ashley E. Jacobs (No. 5635)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Fax: (302) 571-1253<br>Email: rbrady@ycst.com<br>eharron@ycst.com<br>kenos@ycst.com<br>ajacobs@ycst.com<br><br>-and-<br><br>**GILBERT LLP**<br>Kami E. Quinn (*pro hac vice*)<br>Rachel H. Jennings (*pro hac vice*)<br>Kyle Y. Dechant (*pro hac vice*)<br>December L. Huddleston (*pro hac vice*)<br>700 Pennsylvania Ave, SE<br>Suite 400<br>Washington, DC 20003 |

| | Telephone: (202) 772-2200<br>Fax: (202) 772-3333<br>Email: quinnk@gilbertlegal.com<br>jenningsr@gilbertlegal.com<br>dechantk@gilbertlegal.com<br>huddlestond@gilbertlegal.com |
|---|---|
| The Zalkin Law Firm, P.C. and Pfau Cochran Vertetis Amala PLLC (Appellees) | **KTBS LAW LLP**<br>Thomas E. Patterson (*pro hac vice*)<br>Daniel J. Bussel (*pro hac vice*)<br>Robert J. Pfister (*pro hac vice*)<br>Sasha M. Gurvitz (*pro hac vice*)<br>1801 Century Park East, Twenty-Sixth Floor<br>Los Angeles, California 90067<br>Telephone: (310) 407-4000<br>Fax: (310) 407-9090<br>Email: tpatterson@ktbslaw.com<br>dbussel@ktbslaw.com<br>rpfister@ktbslaw.com<br>sgurvitz@ktbslaw.com<br><br>-and-<br><br>**BIELLI & KLAUDER, LLC**<br>David M. Klauder, Esquire (No. 5769)<br>1204 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 803-4600<br>Fax: (302) 397-2557<br>Email: dklauder@bk-legal.com |
| Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, and Navigators Specialty Insurance Company (Appellees) | **BAYARD, P.A.**<br>Erin R. Fay (No. 5268)<br>Gregory J. Flasser (No. 6154)<br>600 North King Street, Suite 400<br>Wilmington, DE 19801<br>Telephone: (302) 655-5000<br>Fax: (302) 658-6395<br>Email: efay@bayardlaw.com<br>gflasser@bayardlaw.com<br><br>-and-<br><br>**RUGGERI PARKS WEINBERG LLP**<br>James P. Ruggeri (*pro hac vice*)<br>Joshua D. Weinberg (*pro hac vice*) |

<table>
<tr><td></td><td>1875 K Street, N.W., Suite 600<br>Washington, D.C. 20006-1251<br>Telephone: (202) 469-7750<br>Fax: (202) 469-7751<br><br>-and-<br><br>**WILMER CUTLER PICKERING HALE AND DORR LLP**<br>Philip D. Anker (*pro hac vice*)<br>7 World Trade Center<br>250 Greenwich Street<br>New York, N.Y. 10007<br>Telephone: (212) 230-8890<br>Fax: (212) 230-8888<br><br>Joel Millar (*pro hac vice*)<br>1875 Pennsylvania Avenue N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 663-6000<br>Fax: (202) 663-6363</td></tr>
<tr><td>Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America<br>(Appellees)</td><td>**STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>800 N. West Street<br>Third Floor Wilmington, Delaware 19801<br>Telephone: 302 999 1540<br>Fax: 302 762 1688<br><br>-and-<br><br>**O'MELVENY & MYERS LLP**<br>Tancred Schiavoni (*pro hac vice*)<br>Times Square Tower<br>7 Times Square<br>New York, New York 10036-6537<br>Telephone: (212) 326-2000<br>Fax: (212) 326-2061<br><br>**O'MELVENY & MYERS LLP**<br>Stephen Warren (*pro hac vice*)<br>400 South Hope Street<br>Los Angeles, California 90071<br>Telephone: (213) 430-6000<br>Fax: (213) 430-6407</td></tr>
</table>

| | |
|---|---|
| | **O'MELVENY & MYERS LLP**<br>Jonathan D. Hacker (*pro hac vice*)<br>1625 Eye Street, N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 383-5300 |
| Federal Insurance Company and Westchester Fire Insurance Company (Appellees) | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>8000 N. West Street, Third Floor<br>Wilmington, Delaware 19801<br>Telephone: (302) 999-1540<br><br>-and-<br><br>**SIMPSON THATCHER & BARTLETT LLP**<br>David Elbaum (*pro hac vice*)<br>425 Lexington Avenue<br>New York, New York 10017<br>Telephone: (212) 455-2000 |
| American Zurich Insurance Company, American Guarantee Insurance Company, and Steadfast Insurance Company (Appellees) | **TYBOUT, REDFEARN & PELL**<br>Robert D. Cecil, Jr. (No. 5317)<br>501 Carr Road, Suite 300<br>Wilmington, Delaware 19899<br>Telephone: (302) 658-6901<br>Email: rcecil@trplaw.com<br><br>-and-<br><br>**CROWELL & MORING LLP**<br>Mark D. Plevin (*pro hac vice*)<br>Kevin D. Cacabelos (*pro hac vice*)<br>Three Embarcadero Center, 26th Floor<br>San Francisco, California 94111<br>Telephone: (415) 986-2800<br>Email: mplevin@crowell.com<br>kcacabelos@crowell.com<br><br>Tacie H. Yoon (*pro hac vice*)<br>Rachel A. Jankowski (*pro hac vice*)<br>1001 Pennsylvania Ave., N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 624-2500<br>Email: tyoon@crowell.com<br>rjankowski@crowell.com |

| | |
|---|---|
| Clarendon National Insurance Company, as successor in interest by merger to Clarendon America Insurance Company; River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited, on its own behalf and in turn as successor to St. Katherine Insurance Company Limited); and Zurich American Insurance Company, as successor to Maryland Casualty Company, Zurich Insurance Company, and Maryland General Insurance Company (Appellees) | **BALLARD SPAHR LLP**<br>Matthew G. Summers (No. 5533)<br>Chantelle D. McClamb (No. 5978)<br>919 N. Market Street, 11th Floor<br>Wilmington, Delaware 19801-3034<br>Telephone: (302) 252-4428<br>Fax: (302) 252-4466<br>Email: summersm@ballardspahr.com<br>mcclamb@ballardspahr.com<br><br>-and-<br><br>**STEPTOE & JOHNSON LLP**<br>Harry Lee (*pro hac vice*)<br>John O'Connor (*pro hac vice*)<br>1330 Connecticut Avenue NW<br>Washington, DC 20036<br>Telephone: (202) 429-8078<br>Fax: (202) 429-3902<br>Email: hlee@steptoe.com<br>joconnor@steptoe.com |
| Ad Hoc Committee of Local Councils of the Boy Scouts of America (Appellees) | **DLA PIPER, LLP (US)**<br>R. Craig Martin (No. 5032)<br>1201 North Market Street, Suite 2100<br>Wilmington, Delaware 19801-1147<br>Telephone: (302) 468-5655<br>Email: craig.martin@dlapiper.com<br><br>-and-<br><br>**WACHTELL, LIPTON, ROSEN & KATZ**<br>Richard G. Mason (*pro hac vice*)<br>Douglas K. Mayer (*pro hac vice*)<br>Joseph C. Celentino (*pro hac vice*)<br>Mitchell S. Levy (*pro hac vice*)<br>51 West 52nd Street<br>New York, New York 10019<br>Telephone: (212) 403-1000<br>Email: RGMason@wlrk.com<br>DKMayer@wlrk.com<br>JCCelentino@wlrk.com<br>MSLevy@wlrk.com |

| Official Committee of Unsecured Creditors (Appellees) | **REED SMITH LLP**<br>Kurt F. Gwynne (No. 3951)<br>Mark W. Eckard (No. 4542)<br>1201 Market Street, Suite 1500<br>Wilmington, DE 19801<br>Telephone: (302) 778-7500<br>Fax: (302) 778-7575<br>Email: kgwynne@reedsmith.com<br>meckard@reedsmith.com<br><br>-and-<br><br>**KRAMER LEVIN NAFTALIS**<br>**& FRANKEL LLP**<br>Thomas Moers Mayer<br>Rachael Ringer<br>Natan M. Hamerman<br>Jennifer R. Sharret<br>Megan M. Wasson<br>1177 Avenue of the Americas<br>New York, NY 10036<br>Telephone: (212) 715-9100<br>Fax: (212) 715-8000<br>E-mail: tmayer@kramerlevin.com<br>rringer@kramerlevin.com<br>nhamerman@kramerlevin.com<br>jsharret@kramerlevin.com<br> mwasson@kramerlevin.com |
|---|---|

Dated: April 10, 2023        By:       */s/ Louis J. Rizzo, Jr.*
Wilmington, Delaware

Louis J. Rizzo, Jr., Esquire (DE Bar I.D. #3374)
REGER RIZZO & DARNALL LLP
1521 Concord Pike
Brandywine Plaza West Suite 305
Wilmington DE  19803
(302)477-7100
lrizzo@regerlaw.com

*Attorney for Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company), St. Paul Surplus Lines Insurance Company and Gulf Insurance Company ("Travelers")*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>Debtors. | Chapter 11<br><br>Bankruptcy Case No. 20-10343-LSS<br><br>(Jointly Administered) |
| NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA, *et al.*,<br><br>Appellants,<br><br>v.<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>Appellee. | Case No. 22-cv-01237-RGA (Lead Case)<br><br>Civ. Nos. 22-1238-RGA, 22-1239-RGA-22-1240-RGA, 22-1241-RGA, 22-1242-RGA, 22-1243-RGA, 22-1244-RGA, 22-1245-RGA, 22-1246-RGA, 22-1247-RGA, 22-1249-RGA, 22-1250-RGA, 22-1251-RGA, 22-1252-RGA, 22-1258-RGA, & 22-1263-RGA (Consolidated) [1] |

**NOTICE OF APPEAL TO THE UNITED STATES**
**COURT OF APPEALS FOR THE THIRD CIRCUIT**

NOTICE IS HEREBY GIVEN that Appellants Great American Assurance Company f/k/a Agricultural Insurance Company, Great American E&S Insurance Company f/k/a Agricultural Excess and Surplus Insurance Company, and Great American E&S Insurance Company, appeal to

---

[1] Appellants' bankruptcy appeal originally had the following caption and case number: *Great American Assurance Co., et al. v. Boy Scouts of America and Delaware BSA, LLC*, No. 22-cv-01244-RGA. That action and others were consolidated with lead case *National Union Fire Insurance Co. of Pittsburgh, PA, et al. v. Boy Scouts of America and Delaware BSA, LLC*, Case No. 22-cv-01237-RGA. The Court directed that "[a]ll further filings with this Court will be docketed under the Master Case Number." *See* Order Granting Motion on Stipulation Regarding Appeals From Order Confirming Plan of Reorganization of Boy Scouts of America and Delaware BSA, LLC. (D.I. 22).

the United States Court of Appeals for the Third Circuit from the final Order and accompanying

Opinion of the United States District Court for the District of Delaware (Hon. Richard G.

Andrews), entered March 28, 2023 (D.I. 150, 151), affirming the *Supplemental Findings of Fact*

*and Conclusions of Law and Order Confirming the Third Modified Fifth Amended Chapter 11*

*Plan of Reorganization (with Technical Modifications) for Boy Scouts of America and Delaware*

*BSA, LLC* (Bankruptcy D.I. 10316) and accompanying Opinion (Bankruptcy D.I. 10136) of the

United States Bankruptcy Court for the District of Delaware (Hon. Laurie S. Silverstein), and all

other orders, decisions, and opinions subsumed therein.

The parties to the order appealed from and the names, addresses, and telephone numbers

of their respective attorneys are as follows:

| | |
|---|---|
| Great American Assurance Company, f/k/a Agricultural Insurance Company; Great American E&S Insurance Company, f/k/a Agricultural Excess and Surplus Insurance Company; and Great American E&S Insurance Company (Appellants) | **BODELL BOVÉ, LLC**<br>Bruce W. McCullough (No. 3112)<br>1225 N. King Street, Suite 1000<br>Wilmington, Delaware 19801-3250<br>Telephone: (302) 655-6749<br>bmccullough@bodellbove.com<br><br>-and-<br><br>**CLYDE & CO US LLP**<br>Bruce D. Celebrezze (*pro hac vice*)<br>150 California Street \| 15th Floor<br>San Francisco, California 94111<br>Telephone: (415) 365-9800<br>Facsimile: (415) 365-9801<br>bruce.celebrezze@clydeco.us<br><br>**CLYDE & CO US LLP**<br>Konrad R. Krebs (*pro hac vice*)<br>340 Mt. Kemble Avenue \| Suite 300<br>Morristown, NJ 07960<br>Telephone: (973) 210-6700<br>Facsimile: (973) 210-6701<br>konrad.krebs@clydeco.us<br><br>-and- |

2

<table>
<tr><td></td><td><strong>DAVID CHRISTIAN ATTORNEYS LLC</strong><br>David Christian (<em>pro hac vice</em>)<br>105 W. Madison St., Suite 1400<br>Chicago, Illinois 60602<br>Telephone: (312) 282-5282<br>dchristian@dca.law</td></tr>
<tr><td>National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, and The Insurance Company of the State of Pennsylvania (the "AIG Companies") (Appellants)</td><td><strong>FINEMAN KREKSTEIN & HARRIS PC</strong><br>Deirdre M. Richards<br>1300 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 538-8331<br>Email: drichards@finemanlawfirm.com<br><br>-and-<br><br><strong>GIBSON, DUNN & CRUTCHER LLP</strong><br>Michael A. Rosenthal (<em>pro hac vice</em>)<br>Mitchell A. Karlan (<em>pro hac vice</em>)<br>James Hallowell (<em>pro hac vice</em>)<br>Keith R. Martorana (<em>pro hac vice</em>)<br>Seth M. Rokosky (<em>pro hac vice</em>)<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 351-4000<br>Email: mrosenthal@gibsondunn.com<br>mkarlan@gibsondunn.com<br>jhallowell@gibsondunn.com<br>kmartorana@gibsondunn.com<br>srokosky@gibsondunn.com<br><br><strong>GIBSON, DUNN & CRUTCHER LLP</strong><br>Theodore J. Boutrous Jr. (<em>pro hac vice</em>)<br>Richard J. Doren (<em>pro hac vice</em>)<br>Blaine H. Evanson (<em>pro hac vice</em>)<br>333 South Grand Avenue<br>Los Angeles, California 90071<br>Telephone: (213) 229-7038<br>Email: rdoren@gibsondunn.com<br>bevanson@gibsondunn.com<br>tboutrous@gibsondunn.com<br><br><strong>FORAN GLENNON PALANDECH PONZI & RUDLOFF P.C.</strong><br>Susan N.K. Gummow<br>222 N. LaSalle St., Suite 1400<br>Chicago, Illinois 60601</td></tr>
</table>

3

| | |
|---|---|
| | Telephone: (312) 863-5000<br>Email: sgummow@fgppr.com |
| Allianz Global Risks US<br>Insurance Company<br>(Appellant) | **TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>David M. Fournier (DE Bar No. 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Hercules Plaza<br>1313 Market Street<br>Suite 5100<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: 404.885.3000<br>david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**PARKER, HUDSON, RAINER & DOBBS LLP**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA  30308<br>Telephone: 404.420.4313<br>Facsimile: 404.522.8409<br>hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>-and-<br><br>**McDERMOTT WILL & EMERY LLP**<br>Margaret H. Warner (*pro hac vice*)<br>Ryan S. Smethurst (*pro hac vice*)<br>Alex M. Spisak (*pro hac vice*)<br>The McDermott Building<br>500 North Capitol Street, NW<br>Washington, DC 20001-1531<br>Telephone: 202.756.8228<br>Facsimile: 202.756.8087<br>mwarner@mwe.com<br>rsmethurst@mwe.com<br>aspisak@mwe.com |
| National Surety<br>Corporation and<br>Interstate Fire &<br>Casualty Company<br>(Appellants) | **TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>David M. Fournier (DE Bar No. 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Hercules Plaza, Suite 5100<br>1313 Market Street |

4

A00356

<table>
<tr><td></td><td>

P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: 302.777.6500
Facsimile: 302.421.8390
david.fournier@troutman.com
marcy.smith@troutman.com

-and-

**PARKER, HUDSON, RAINER & DOBBS LLP**
Harris B. Winsberg (*pro hac vice*)
Matthew G. Roberts (*pro hac vice*)
303 Peachtree Street NE
Suite 3600
Atlanta, GA 30308
Telephone: 404.420.4313
Facsimile: 404.522.8409
hwinsberg@phrd.com
mroberts@phrd.com

-and-

**BRADLEY RILEY JACOBS PC**
Todd C. Jacobs (*pro hac vice*)
John E. Bucheit (*pro hac vice*)
Paul J. Esker (*pro hac vice*)
500 West Madison Street
Suite 1000
Chicago, IL 60661
Telephone: 312.281.0295
tjacobs@bradleyriley.com
jbucheit@bradleyriley.com
pesker@bradleyriley.com

</td></tr>
<tr><td>

Arch Insurance Company
(Appellant)

</td><td>

**SMITH, KATZENSTEIN & JENKINS LLP**
Kathleen M. Miller (No. 2898)
1000 West Street, Suite 501
P.O. Box 410
Wilmington, DE 19899
Telephone: (302) 652-8400
kmiller@skjlaw.com

**HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER**
Ronald P. Schiller (*pro hac vice*)
Matthew A. Hamermesh (*pro hac vice*)
One Logan Square, 27th Floor

</td></tr>
</table>

5

A00357

| | |
|---|---|
| | Philadelphia, PA 19103<br>T: (215) 568-6200<br>F: (215) 568-0300<br>E: rschiller@hangley.com<br>mhamermesh@hangley.com |
| Argonaut Insurance Company and Colony Insurance Company (Appellants) | **POST & SCHELL, P.C.**<br>Paul Logan (No. 3339)<br>300 Delaware Avenue, Suite 1380<br>Wilmington, DE 19801<br>Telephone: (302) 251-8856<br>Email: plogan@postschell.com<br><br>**POST & SCHELL, P.C.**<br>John C. Sullivan (*pro hac vice*)<br>Kathleen K. Kerns (*pro hac vice*)<br>Four Penn Center – 13th Floor<br>1600 John F. Kennedy Boulevard<br>Philadelphia, PA 19103<br>Telephone: (215) 587-1000<br>jsullivan@postschell.com<br>kkerns@postschell.com<br><br>-and-<br><br>**IFRAH PLLC**<br>George R. Calhoun (*pro hac vice*)<br>1717 Pennsylvania Avenue, N.W. Suite 650<br>Washington, DC 20006<br>Telephone: (202) 840-8758<br>george@ifrahlaw.com |
| Arrowood Indemnity Company (Appellant) | **JOYCE, LLC**<br>Michael J. Joyce (No. 4563)<br>1225 King Street, Suite 800<br>Wilmington, DE 19801<br>Telephone: (302) 388-1944<br>Email: mjoyce@mjlawoffices.com<br><br>-and-<br><br>**COUGHLIN MIDLIGE & GARLAND, LLP**<br>Kevin Coughlin (*pro hac vice*)<br>Lorraine Armenti (*pro hac vice*)<br>Michael Hrinewski (*pro hac vice*)<br>350 Mount Kemble Avenue<br>PO Box 1917<br>Morristown, NJ 07962 |

| | |
|---|---|
| | Telephone:  (973) 267-0058<br>Facsimile:  973-267-6442<br>kcoughlin@cmg.law<br>larmenti@cmg.law<br>mhrinewski@cmg.law<br><br>-and-<br><br>**CARRUTHERS & ROTH, P.A.**<br>Britton C. Lewis<br>John M. Flynn<br>235 N. Edgeworth Street<br>P.O. Box 540<br>Greensboro, NC  27401<br>Telephone:  (336) 478-1146<br>Facsimile:  (336) 478-1145<br>jmf@crlaw.com<br>bcl@crlaw.com |
| Continental Insurance<br>Company and Columbia<br>Casualty Company<br>(Appellants) | **GOLDSTEIN & MCCLINTOCK LLLP**<br>Maria Aprile Sawczuk (DE #3320)<br>501 Silverside Road<br>Wilmington, DE 19809<br>302-444-6710<br>marias@goldmclaw.com<br><br>-and-<br><br>**LOEB & LOEB LLP**<br>Laura McNally (*pro hac vice*)<br>Emily Stone (*pro hac vice*)<br>321 N. Clark Street, Suite 2300<br>Chicago, IL 60654<br>312-464-3155<br>lmcnally@loeb.com<br>estone@loeb.com |
| Gemini Insurance<br>Company<br>(Appellant) | **WERB & SULLIVAN<br>LEGAL ARTS BUILDING**<br>Brian A. Sullivan (No. 2098)<br>1225 N. King Street<br>Suite 600<br>Wilmington, Delaware 19801<br>Telephone: (302) 652-1100<br>Cell: (302) 757-9932<br>Facsimile: (302) 652-1111<br>Email: bsullivan@werbsullivan.com |

7

| | **GIEGER LABORDE & LAPEROUOSE, LLC**<br>John E.W. Baay II (*pro hac vice*)<br>701 Poydras Street<br>Suite 4800<br>New Orleans, LA 70139<br>Tel.: 504-561-0400<br>Fax: 504-561-1011<br>Email: jbaay@glllaw.com<br><br>-and-<br><br>**KIERNAN TREBACH LLP**<br>William H. White Jr (*pro hac vice*)<br>1233 20th Street, NW<br>8th Floor<br>Washington, DC 20036<br>Tel.: 202-712-7000<br>Fax: 202-712-7100<br>Email: wwhite@kiernantrebach.com |
|---|---|
| General Star Indemnity Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (DE Bar No. 2898)<br>1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400<br>Email: kmiller@skjlaw.com<br><br>-and-<br><br>**WILEY REIN LLP**<br>Mary E. Borja (*pro hac vice*)<br>Gary P. Seligman (*pro hac vice*)<br>Ashley L. Criss (*pro hac vice*)<br>2050 M Street NW<br>Washington, DC 20036<br>Phone: (202) 719-7000<br>Email: mborja@wiley.law<br>gseligman@wiley.law<br>acriss@wiley.law |
| Indian Harbor Insurance Company, on behalf of itself and as successor in interest to Catlin Specialty Insurance Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (No. 2898)<br>1000 West Street, Suite 1501<br>P.O. Box 410<br>Wilmington, DE  19899 [Courier 19801]<br>Telephone: (302) 652-8400 |

8

| | |
|---|---|
| | Facsimile: (302) 652-8405<br>kmiller@skjlaw.com<br><br>and<br><br>**MOUND COTTON WOLLAN & GREENGRASS LLP**<br>Lloyd A. Gura (*pro hac vice*)<br>Pamela J. Minetto (*pro hac vice*)<br>One New York Plaza 44th Floor<br>New York, NY 10004<br>Tel: (212) 804-4282<br>lgura@moundcotton.com<br>pminetto@moundcotton.com |
| Liberty Mutual Insurance Company, The Ohio Casualty Insurance Company, Liberty Insurance Underwriters, Inc. and Liberty Surplus Insurance Corporation (Appellants) | **SEITZ, VAN OGTROP & GREEN, P.A.**<br>R. Karl Hill (DE Bar No. 2747)<br>222 Delaware Avenue<br>Suite 1500<br>Wilmington, DE 19801<br>Telephone: (302) 888-0600<br>khill@svglaw.com<br><br>-and-<br><br>**CHOATE, HALL & STEWART LLP**<br>Douglas R. Gooding (*pro hac vice*)<br>Jonathan D. Marshall (*pro hac vice*)<br>Two International Place<br>Boston, MA 02110<br>Telephone: (617) 248-5000<br>dgooding@choate.com<br>jmarshall@choate.com<br><br>-and-<br><br>**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC**<br>Kim V. Marrkand (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 542-6000<br>kvmarrkand@mintz.com |
| Munich Reinsurance America, Inc., formerly known as American Re-Insurance Company (Appellant) | **DILWORTH PAXSON LLP**<br>Thaddeus J. Weaver (DE Bar. No. 2790)<br>704 N. King Street, Suite 500<br>P.O. Box 1031<br>Wilmington, DE  19899-1031 |

9

<table>
<tr>
<td></td>
<td>(302) 571-8867 (telephone)<br>(302) 351-8735 (facsimile)<br>tweaver@dilworthlaw.com<br><br>-and-<br><br>**DILWORTH PAXSON LLP**<br>William E. McGrath, Jr. (*pro hac vice*)<br>2 Research Way, Suite 103<br>Princeton, NJ  08540<br>(609) 924-6000 (telephone)<br>(215) 893-8537 (facsimile)<br>wmcgrath@dilworthlaw.com</td>
</tr>
<tr>
<td>Traders and Pacific Insurance Company, Endurance American Specialty Insurance Company, and Endurance American Insurance Company (Appellants)</td>
<td>**COZEN O'CONNOR**<br>Marla S. Benedek (No. 6638)<br>1201 N. Market Street, Suite 1001<br>Wilmington, DE 19801<br>Telephone:  (302) 295-2024<br>Facsimile:  (302) 250-4498<br>mbenedek@cozen.com</td>
</tr>
<tr>
<td>Old Republic Insurance Company (Appellant)</td>
<td>**MORRIS JAMES LLP**<br>Stephen M. Miller (No. 2610)<br>Carl N. Kunz, III (No. 3201)<br>500 Delaware Avenue, Suite 1500<br>Wilmington, Delaware 19801<br>Telephone: (302) 888-6800<br>Facsimile:  (302) 571-1750<br>smiller@morrisjames.com<br>ckunz@morrisjames.com<br><br>-and-<br><br>**FOX SWIBEL LEVIN & CARROLL LLP**<br>Margaret M. Anderson (*pro hac vice*)<br>Ryan T. Schultz (*pro hac vice*)<br>Adam A. Hachikian (*pro hac vice*)<br>Kenneth M. Thomas (*pro hac vice*)<br>200 W. Madison Street, Suite 3000<br>Chicago, Illinois 60606<br>Telephone: (312) 224-1200<br>Facsimile:  (312) 224-1201<br>panderson@foxswibel.com<br>rschultz@foxswibel.com<br>ahachikian@foxswibel.com</td>
</tr>
</table>

10

| | |
|---|---|
| | kthomas@foxswibel.com |
| Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company), St. Paul Surplus Lines Insurance Company and Gulf Insurance Company<br><br>(Appellants) | **REGER RIZZO & DARNALL LLP**<br>Louis J. Rizzo, Jr. (DE Bar No. 3374)<br>1521 Concord Pike Suite 305<br>Brandywine Plaza West<br>Wilmington DE 19803<br>Telephone: (302) 477-7100<br>Facsimile: (302) 652-3620<br>lrizzo@regerlaw.com |
| Lujan Claimants<br><br>(Appellants) | **LOIZIDES, P.A.**<br>Christopher D. Loizides (No. 3968)<br>1225 North King Street, Suite 800<br>Telephone: (302) 654-0248<br>Loizides@loizides.com<br><br>-and-<br><br>**LUJAN & WOLFF LLP**<br>Delia Lujan Wolff<br>Suite 300, DNA Bldg.<br>238 Archbishop Flores St.<br>Hagatna, Guam 96910<br>Telephone: (671) 477-8064/5<br>dslwolff@lawguam.com |
| Dumas & Vaughn Claimants<br><br>(Appellants) | **GELLERT SCALI BUSENKELL & BROWN LLC**<br>Charles J. Brown, III (No. 3368)<br>1201 N. Orange St., 3rd Floor<br>Wilmington, DE 19801<br>Telephone: (302) 425-5813<br>cbrown@gsbblaw.com<br><br>-and-<br><br>**DUMAS & VAUGHN, LLC**<br>Gilion C. Dumas<br>3835 NE Hancock Street, Suite GLB<br>Portland, OR 97212<br>Telephone: (503) 616-5007<br>gilion@dumasandvaughn.com |
| Boy Scouts of America, Delaware BSA, LLC (Debtors/Appellees and Debtors in Possession) | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347 |

11

A00363

| | |
|---|---|
| | Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>dabbott@morrisnichols.com<br>aremming@morrisnichols.com<br>ptopper@morrisnichols.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Jessica C. Lauria (*pro hac vice*)<br>Glenn M. Kurtz (*pro hac vice*)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Email: jessica.lauria@whitecase.com<br>gkurtz@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Michael C. Andolina<br>Matthew E. Linder<br>Laura E. Baccash<br>Blair M. Warner<br>111 South Wacker Drive<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>mandolina@whitecase.com<br>mlinder@whitecase.com<br>laura.baccash@whitecase.com<br>blair.warner@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Ronald K. Gorsich<br>Doah Kim<br>555 South Flower Street, Suite 2700<br>Los Angeles, CA 90071<br>Telephone: (213) 620-7700<br>rgorsich@whitecase.com<br>doah.kim@whitecase.com |
| Tort Claimants'<br>Committee<br>(Appellees) | **PACHULSKI STANG ZIEHL & JONES LLP**<br>Richard M. Pachulski (*pro hac vice*)<br>Alan J. Kornfeld (*pro hac vice*)<br>Debra I. Grassgreen (*pro hac vice*)<br>Iain A.W. Nasatir (*pro hac vice*) |

| | |
|---|---|
| | James E. O'Neill (No. 4042)<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899-8705 (Courier 19801)<br>Telephone: (302) 652-4100<br>Fax: (302) 652-4400<br>Email: rpachulski@pszjlaw.com<br>akornfeld@pszjlaw.com<br>dgrassgreen@pszjlaw.com<br>inasatir@pszjlaw.com<br>joneill@pszjlaw.com |
| Coalition of Abused Scouts for Justice (Appellees) | **MONZACK MERSKY AND BROWDER, P.A.**<br>Rachel B. Mersky (No. 2049)<br>1201 North Orange Street, Suite 400<br>Wilmington, Delaware 19801<br>Telephone: (302) 656-8162<br>Fax: (302) 656-2769<br>Email: rmersky@monlaw.com<br><br>–and–<br><br>**BROWN RUDNICK LLP**<br>David J. Molton, Esq. (*pro hac vice*)<br>Eric R. Goodman, Esq. (*pro hac vice*)<br>Seven Times Square<br>New York, NY 10036<br>Telephone: (212) 209-4800<br>Fax: (212) 209-4801<br>Email: dmolton@brownrudnick.com<br>egoodman@brownrudnick.com<br><br>–and–<br><br>**BROWN RUDNICK LLP**<br>Sunni P. Beville, Esq. (*pro hac vice*)<br>Tristan G. Axelrod, Esq. (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 856-8200<br>Fax: (617) 856-8201<br>Email: sbeville@brownrudnick.com<br>taxelrod@brownrudnick.com |
| Future Claimants' Representative (Appellees) | **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br><br>Robert S. Brady (No. 2847)<br>Edwin J. Harron (No. 3396) |

| | |
|---|---|
| | Kenneth J. Enos (No. 4544)<br>Ashley E. Jacobs (No. 5635)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Fax: (302) 571-1253<br>Email: rbrady@ycst.com<br>eharron@ycst.com<br>kenos@ycst.com<br>ajacobs@ycst.com<br><br>-and-<br><br>**GILBERT LLP**<br>Kami E. Quinn (*pro hac vice*)<br>Rachel H. Jennings (*pro hac vice*)<br>Kyle Y. Dechant (*pro hac vice*)<br>December L. Huddleston (*pro hac vice*)<br>700 Pennsylvania Ave, SE<br>Suite 400<br>Washington, DC 20003<br>Telephone: (202) 772-2200<br>Fax: (202) 772-3333<br>Email: quinnk@gilbertlegal.com<br>jenningsr@gilbertlegal.com<br>dechantk@gilbertlegal.com<br>huddlestond@gilbertlegal.com |
| The Zalkin Law Firm,<br>P.C. and Pfau Cochran<br>Vertetis Amala PLLC<br>(Appellees) | **KTBS LAW LLP**<br>Thomas E. Patterson (*pro hac vice*)<br>Daniel J. Bussel (*pro hac vice*)<br>Robert J. Pfister (*pro hac vice*)<br>Sasha M. Gurvitz (*pro hac vice*)<br>1801 Century Park East, Twenty-Sixth Floor<br>Los Angeles, California 90067<br>Telephone: (310) 407-4000<br>Fax: (310) 407-9090<br>Email: tpatterson@ktbslaw.com<br>dbussel@ktbslaw.com<br>rpfister@ktbslaw.com<br>sgurvitz@ktbslaw.com<br><br>-and-<br><br>**BIELLI & KLAUDER, LLC**<br>David M. Klauder, Esquire (No. 5769) |

| | |
|---|---|
| | 1204 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 803-4600<br>Fax: (302) 397-2557<br>Email: dklauder@bk-legal.com |
| Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, and Navigators Specialty Insurance Company (Appellees) | **BAYARD, P.A.**<br>Erin R. Fay (No. 5268)<br>Gregory J. Flasser (No. 6154)<br>600 North King Street, Suite 400<br>Wilmington, DE 19801<br>Telephone: (302) 655-5000<br>Fax: (302) 658-6395<br>Email: efay@bayardlaw.com<br>gflasser@bayardlaw.com<br><br>-and-<br><br>**RUGGERI PARKS WEINBERG LLP**<br>James P. Ruggeri (*pro hac vice*)<br>Joshua D. Weinberg (*pro hac vice*)<br>1875 K Street, N.W., Suite 600<br>Washington, D.C. 20006-1251<br>Telephone: (202) 469-7750<br>Fax: (202) 469-7751<br><br>-and-<br><br>**WILMER CUTLER PICKERING HALE AND DORR LLP**<br>Philip D. Anker (*pro hac vice*)<br>7 World Trade Center<br>250 Greenwich Street<br>New York, N.Y. 10007<br>Telephone: (212) 230-8890<br>Fax: (212) 230-8888<br><br>Joel Millar (*pro hac vice*)<br>1875 Pennsylvania Avenue N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 663-6000<br>Fax: (202) 663-6363 |
| Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>800 N. West Street<br>Third Floor Wilmington, Delaware 19801<br>Telephone: 302 999 1540 |

15

A00367

| | |
|---|---|
| North America and Indemnity Insurance Company of North America (Appellees) | Fax: 302 762 1688<br><br>-and-<br><br>**O'MELVENY & MYERS LLP**<br>Tancred Schiavoni (*pro hac vice*)<br>Times Square Tower<br>7 Times Square<br>New York, New York 10036-6537<br>Telephone: (212) 326-2000<br>Fax: (212) 326-2061<br><br>**O'MELVENY & MYERS LLP**<br>Stephen Warren (*pro hac vice*)<br>400 South Hope Street<br>Los Angeles, California 90071<br>Telephone: (213) 430-6000<br>Fax: (213) 430-6407<br><br>**O'MELVENY & MYERS LLP**<br>Jonathan D. Hacker (*pro hac vice*)<br>1625 Eye Street, N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 383-5300 |
| Federal Insurance Company and Westchester Fire Insurance Company (Appellees) | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>8000 N. West Street, Third Floor<br>Wilmington, Delaware 19801<br>Telephone: (302) 999-1540<br><br>-and-<br><br>**SIMPSON THATCHER & BARTLETT LLP**<br>David Elbaum (*pro hac vice*)<br>425 Lexington Avenue<br>New York, New York 10017<br>Telephone: (212) 455-2000 |
| American Zurich Insurance Company, American Guarantee Insurance Company, and Steadfast Insurance Company (Appellees) | **TYBOUT, REDFEARN & PELL**<br>Robert D. Cecil, Jr. (No. 5317)<br>501 Carr Road, Suite 300<br>Wilmington, Delaware 19899<br>Telephone: (302) 658-6901<br>Email: rcecil@trplaw.com<br><br>-and- |

| | **CROWELL & MORING LLP**<br>Mark D. Plevin (*pro hac vice*)<br>Kevin D. Cacabelos (*pro hac vice*)<br>Three Embarcadero Center, 26th Floor<br>San Francisco, California 94111<br>Telephone: (415) 986-2800<br>Email: mplevin@crowell.com<br>kcacabelos@crowell.com<br><br>Tacie H. Yoon (*pro hac vice*)<br>Rachel A. Jankowski (*pro hac vice*)<br>1001 Pennsylvania Ave., N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 624-2500<br>Email: tyoon@crowell.com<br>rjankowski@crowell.com |
|---|---|
| Clarendon National Insurance Company, as successor in interest by merger to Clarendon America Insurance Company; River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited, on its own behalf and in turn as successor to St. Katherine Insurance Company Limited); and Zurich American Insurance Company, as successor to Maryland Casualty Company, Zurich Insurance Company, and Maryland General Insurance Company (Appellees) | **BALLARD SPAHR LLP**<br>Matthew G. Summers (No. 5533)<br>Chantelle D. McClamb (No. 5978)<br>919 N. Market Street, 11th Floor<br>Wilmington, Delaware 19801-3034<br>Telephone: (302) 252-4428<br>Fax: (302) 252-4466<br>Email: summersm@ballardspahr.com<br>mcclamb@ballardspahr.com<br><br>-and-<br><br>**STEPTOE & JOHNSON LLP**<br>Harry Lee (*pro hac vice*)<br>John O'Connor (*pro hac vice*)<br>1330 Connecticut Avenue NW<br>Washington, DC 20036<br>Telephone: (202) 429-8078<br>Fax: (202) 429-3902<br>Email: hlee@steptoe.com<br>joconnor@steptoe.com |
| Ad Hoc Committee of Local Councils of the Boy Scouts of America (Appellees) | **DLA PIPER, LLP (US)**<br>R. Craig Martin (No. 5032)<br>1201 North Market Street, Suite 2100<br>Wilmington, Delaware 19801-1147 |

17

A00369

Telephone: (302) 468-5655
Email: craig.martin@dlapiper.com

-and-

**WACHTELL, LIPTON, ROSEN & KATZ**
Richard G. Mason (*pro hac vice*)
Douglas K. Mayer (*pro hac vice*)
Joseph C. Celentino (*pro hac vice*)
Mitchell S. Levy (*pro hac vice*)
51 West 52nd Street
New York, New York 10019
Telephone: (212) 403-1000
Email: RGMason@wlrk.com
DKMayer@wlrk.com
JCCelentino@wlrk.com
MSLevy@wlrk.com

Date: April 10, 2023
Wilmington, Delaware

/s/ Bruce W. McCullough
Bruce W. McCullough (No. 3112)
BODELL BOVE, LLC
1225 N. King Street, Suite 1000
P.O. Box 397
Wilmington, DE 19899-0397
Telephone: (302) 655-6749
Facsimile:  (302) 655-6827
Email: bmccullough@bodellbove.com

Bruce D. Celebrezze (*pro hac vice*)
CLYDE & CO US LLP
150 California Street | 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800
Facsimile: (415) 365-9801
bruce.celebrezze@clydeco.us

Konrad R. Krebs (*pro hac vice*)
CLYDE & CO US LLP
340 Mt. Kemble Avenue | Suite 300
Morristown, NJ 07960
Telephone: (973) 210-6700
Facsimile: (973) 210-6701
konrad.krebs@clydeco.us

David Christian (*pro hac vice*)

18

A00370

DAVID CHRISTIAN ATTORNEYS LLC
105 W. Madison St., Suite 1400
Chicago, Illinois 60602
Telephone: (312) 282-5282
dchristian@dca.law

*Counsel for Great American Assurance Company f/k/a Agricultural Insurance Company, Great American E&S Insurance Company f/k/a Agricultural Excess and Surplus Insurance Company, and Great American E&S Insurance Company*

19

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Bankruptcy Case No. 20-10343-LSS |
| Debtors. | (Jointly Administered) |
| NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA, *et al.*, | Case No. 22-cv-01237-RGA |
| Appellants, | |
| v. | |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | |
| Appellees. | |

## NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

NOTICE IS HEREBY GIVEN that Appellants Allianz Global Risks US Insurance Company, National Surety Corporation, and Interstate Fire & Casualty Company appeal to the United States Court of Appeals for the Third Circuit from the final Order and accompanying Opinion of the United States District Court for the District of Delaware (Hon. Richard G. Andrews), entered  March 28, 2023 (D.I. 150, 151), among other things affirming the *Supplemental Findings of Fact and Conclusions of Law and Order Confirming the Third Modified Fifth Amended Chapter 11 Plan of Reorganization (with Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC* (Bankruptcy D.I. 10316) and accompanying Opinion

(Bankruptcy D.I. 10136) of the United States Bankruptcy Court for the District of Delaware (Hon.

Laurie S. Silverstein), and all other orders, decisions, and opinions subsumed therein.

The parties to the order appealed from and the names, addresses, and telephone numbers

of their respective attorneys are as follows:

| Allianz Global Risks US Insurance Company (Appellant) | **TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>David M. Fournier (DE Bar No. 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Hercules Plaza<br>1313 Market Street<br>Suite 5100<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: 404.885.3000<br>david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**PARKER, HUDSON, RAINER & DOBBS LLP**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA  30308<br>Telephone: 404.420.4313<br>Facsimile: 404.522.8409<br>hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>-and-<br><br>**McDERMOTT WILL & EMERY LLP**<br>Margaret H. Warner (*pro hac vice*)<br>Ryan S. Smethurst (*pro hac vice*)<br>Alex M. Spisak (*pro hac vice*)<br>The McDermott Building<br>500 North Capitol Street, NW<br>Washington, DC 20001-1531<br>Telephone: 202.756.8228<br>Facsimile: 202.756.8087<br>mwarner@mwe.com<br>rsmethurst@mwe.com |

A00373

| | |
|---|---|
| | aspisak@mwe.com |
| National Surety Corporation and Interstate Fire & Casualty Company (Appellants) | **TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>David M. Fournier (DE Bar No. 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Hercules Plaza, Suite 5100<br>1313 Market Street<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: 302.777.6500<br>Facsimile: 302.421.8390<br>david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**PARKER, HUDSON, RAINER & DOBBS LLP**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA  30308<br>Telephone: 404.420.4313<br>Facsimile: 404.522.8409<br>hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>-and-<br><br>**BRADLEY RILEY JACOBS PC**<br>Todd C. Jacobs (*pro hac vice*)<br>John E. Bucheit (*pro hac vice*)<br>Paul J. Esker (*pro hac vice*)<br>500 West Madison Street<br>Suite 1000<br>Chicago, IL 60661<br>Telephone: 312.281.0295<br>tjacobs@bradleyriley.com<br>jbucheit@bradleyriley.com<br>pesker@bradleyriley.com |
| Arch Insurance Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (No. 2898)<br>1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400<br>kmiller@skjlaw.com |

3

A00374

|  | **HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**<br>Ronald P. Schiller (*pro hac vice*)<br>Matthew A. Hamermesh (*pro hac vice*)<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>T: (215) 568-6200<br>F: (215) 568-0300<br>E: rschiller@hangley.com<br>mhamermesh@hangley.com |
|---|---|
| Argonaut Insurance Company and Colony Insurance Company (Appellants) | **POST & SCHELL, P.C.**<br>Paul Logan (No. 3339)<br>300 Delaware Avenue, Suite 1380<br>Wilmington, DE 19801<br>Telephone: (302) 251-8856<br>Email: plogan@postschell.com<br><br>**POST & SCHELL, P.C.**<br>John C. Sullivan (*pro hac vice*)<br>Kathleen K. Kerns (*pro hac vice*)<br>Four Penn Center – 13th Floor<br>1600 John F. Kennedy Boulevard<br>Philadelphia, PA 19103<br>Telephone: (215) 587-1000<br>jsullivan@postschell.com<br>kkerns@postschell.com<br><br>-and-<br><br>**IFRAH PLLC**<br>George R. Calhoun (*pro hac vice*)<br>1717 Pennsylvania Avenue, N.W. Suite 650<br>Washington, DC 20006<br>Telephone: (202) 840-8758<br>george@ifrahlaw.com |
| Arrowood Indemnity Company (Appellant) | **JOYCE, LLC**<br>Michael J. Joyce (No. 4563)<br>1225 King Street, Suite 800<br>Wilmington, DE 19801<br>Telephone: (302) 388-1944<br>Email: mjoyce@mjlawoffices.com<br><br>-and-<br><br>**COUGHLIN MIDLIGE & GARLAND, LLP** |

4

| | |
|---|---|
| | Kevin Coughlin (*pro hac vice*) |
| | Lorraine Armenti (*pro hac vice*) |
| | Michael Hrinewski (*pro hac vice*) |
| | 350 Mount Kemble Avenue |
| | PO Box 1917 |
| | Morristown, NJ 07962 |
| | Telephone:  (973) 267-0058 |
| | Facsimile:  973-267-6442 |
| | kcoughlin@cmg.law |
| | larmenti@cmg.law |
| | mhrinewski@cmg.law |
| | |
| | -and- |
| | |
| | **CARRUTHERS & ROTH, P.A.** |
| | Britton C. Lewis |
| | John M. Flynn |
| | 235 N. Edgeworth Street |
| | P.O. Box 540 |
| | Greensboro, NC  27401 |
| | Telephone:  (336) 478-1146 |
| | Facsimile:  (336) 478-1145 |
| | jmf@crlaw.com |
| | bcl@crlaw.com |
| Continental Insurance Company and Columbia Casualty Company (Appellants) | **GOLDSTEIN & MCCLINTOCK LLLP** |
| | Maria Aprile Sawczuk (DE #3320) |
| | 501 Silverside Road |
| | Wilmington, DE 19809 |
| | 302-444-6710 |
| | marias@goldmclaw.com |
| | |
| | -and- |
| | |
| | **LOEB & LOEB LLP** |
| | Laura McNally (*pro hac vice*) |
| | Emily Stone (*pro hac vice*) |
| | 321 N. Clark Street, Suite 2300 |
| | Chicago, IL 60654 |
| | 312-464-3155 |
| | lmcnally@loeb.com |
| | estone@loeb.com |
| Gemini Insurance Company (Appellant) | **WERB & SULLIVAN** |
| | **LEGAL ARTS BUILDING** |
| | Brian A. Sullivan (No. 2098) |
| | 1225 N. King Street |
| | Suite 600 |

5

| | |
|---|---|
| | Wilmington, Delaware 19801<br>Telephone: (302) 652-1100<br>Cell: (302) 757-9932<br>Facsimile: (302) 652-1111<br>Email: bsullivan@werbsullivan.com<br><br>**GIEGER LABORDE & LAPEROUOSE, LLC**<br>John E.W. Baay II (*pro hac vice*)<br>701 Poydras Street<br>Suite 4800<br>New Orleans, LA 70139<br>Tel.: 504-561-0400<br>Fax: 504-561-1011<br>Email: jbaay@glllaw.com<br><br>-and-<br><br>**KIERNAN TREBACH LLP**<br>William H. White Jr (*pro hac vice*)<br>1233 20th Street, NW<br>8th Floor<br>Washington, DC 20036<br>Tel.: 202-712-7000<br>Fax: 202-712-7100<br>Email: wwhite@kiernantrebach.com |
| General Star Indemnity Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (DE Bar No. 2898)<br>1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400<br>Email: kmiller@skjlaw.com<br><br>-and-<br><br>**WILEY REIN LLP**<br>Mary E. Borja (*pro hac vice*)<br>Gary P. Seligman (*pro hac vice*)<br>Ashley L. Criss (*pro hac vice*)<br>2050 M Street NW<br>Washington, DC 20036<br>Phone: (202) 719-7000<br>Email: mborja@wiley.law<br>gseligman@wiley.law<br>acriss@wiley.law |

6

A00377

| | |
|---|---|
| Great American Assurance Company, f/k/a Agricultural Insurance Company; Great American E&S Insurance Company, f/k/a Agricultural Excess and Surplus Insurance Company; and Great American E&S Insurance Company (Appellants) | **BODELL BOVÉ, LLC**<br>Bruce W. McCullough (No. 3112)<br>1225 N. King Street, Suite 1000<br>Wilmington, Delaware 19801-3250<br>Telephone: (302) 655-6749<br>bmccullough@bodellbove.com<br><br>-and-<br><br>**CLYDE & CO US LLP**<br>Bruce D. Celebrezze (*pro hac vice*)<br>150 California Street \| 15th Floor<br>San Francisco, California 94111<br>Telephone: (415) 365-9800<br>Facsimile: (415) 365-9801<br>bruce.celebrezze@clydeco.us<br><br>**CLYDE & CO US LLP**<br>Konrad R. Krebs (*pro hac vice*)<br>340 Mt. Kemble Avenue \| Suite 300<br>Morristown, NJ 07960<br>Telephone: (973) 210-6700<br>Facsimile: (973) 210-6701<br>konrad.krebs@clydeco.us<br><br>-and-<br><br>**DAVID CHRISTIAN ATTORNEYS LLC**<br>David Christian (*pro hac vice*)<br>105 W. Madison St., Suite 1400<br>Chicago, Illinois 60602<br>Telephone: (312) 282-5282<br>dchristian@dca.law |
| Indian Harbor Insurance Company, on behalf of itself and as successor in interest to Catlin Specialty Insurance Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (No. 2898)<br>1000 West Street, Suite 1501<br>P.O. Box 410<br>Wilmington, DE  19899 [Courier 19801]<br>Telephone: (302) 652-8400<br>Facsimile: (302) 652-8405<br>kmiller@skjlaw.com<br><br>and<br><br>**MOUND COTTON WOLLAN & GREENGRASS LLP** |

7

| | Lloyd A. Gura (*pro hac vice*)<br>Pamela J. Minetto (*pro hac vice*)<br>One New York Plaza 44th Floor<br>New York, NY 10004<br>Tel: (212) 804-4282<br>lgura@moundcotton.com<br>pminetto@moundcotton.com |
|---|---|
| Liberty Mutual Insurance Company, The Ohio Casualty Insurance Company, Liberty Insurance Underwriters, Inc. and Liberty Surplus Insurance Corporation (Appellants) | **SEITZ, VAN OGTROP & GREEN, P.A.**<br>R. Karl Hill (DE Bar No. 2747)<br>222 Delaware Avenue<br>Suite 1500<br>Wilmington, DE 19801<br>Telephone: (302) 888-0600<br>khill@svglaw.com<br><br>-and-<br><br>**CHOATE, HALL & STEWART LLP**<br>Douglas R. Gooding (*pro hac vice*)<br>Jonathan D. Marshall (*pro hac vice*)<br>Two International Place<br>Boston, MA 02110<br>Telephone: (617) 248-5000<br>dgooding@choate.com<br>jmarshall@choate.com<br><br>-and-<br><br>**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC**<br>Kim V. Marrkand (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 542-6000<br>kvmarrkand@mintz.com |
| Munich Reinsurance America, Inc., formerly known as American Re-Insurance Company (Appellant) | **DILWORTH PAXSON LLP**<br>Thaddeus J. Weaver (DE Bar. No. 2790)<br>704 N. King Street, Suite 500<br>P.O. Box 1031<br>Wilmington, DE  19899-1031<br>(302) 571-8867 (telephone)<br>(302) 351-8735 (facsimile)<br>tweaver@dilworthlaw.com<br><br>-and- |

| | |
|---|---|
| | **DILWORTH PAXSON LLP**<br>William E. McGrath, Jr. (*pro hac vice*)<br>2 Research Way, Suite 103<br>Princeton, NJ 08540<br>(609) 924-6000 (telephone)<br>(215) 893-8537 (facsimile)<br>wmcgrath@dilworthlaw.com |
| National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, and The Insurance Company of the State of Pennsylvania (Appellants) | **FINEMAN KREKSTEIN & HARRIS PC**<br>Deirdre M. Richards<br>1300 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 538-8331<br>Email: drichards@finemanlawfirm.com<br><br>-and-<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br>Michael A. Rosenthal (pro hac vice)<br>Mitchell A. Karlan (pro hac vice)<br>James Hallowell (pro hac vice)<br>Keith R. Martorana (pro hac vice)<br>Seth M. Rokosky (pro hac vice)<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 351-4000<br>Email: mrosenthal@gibsondunn.com<br>mkarlan@gibsondunn.com<br>jhallowell@gibsondunn.com<br>kmartorana@gibsondunn.com<br>srokosky@gibsondunn.com<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br>Theodore J. Boutrous Jr. (pro hac vice)<br>Richard J. Doren (pro hac vice)<br>Blaine H. Evanson (pro hac vice)<br>333 South Grand Avenue<br>Los Angeles, California 90071<br>Telephone: (213) 229-7038<br>Email: rdoren@gibsondunn.com<br>bevanson@gibsondunn.com<br>tboutrous@gibsondunn.com<br><br>**FORAN GLENNON PALANDECH PONZI & RUDLOFF P.C.**<br>Susan N.K. Gummow<br>222 N. LaSalle St., Suite 1400<br>Chicago, Illinois 60601 |

9

A00380

| | Telephone: (312) 863-5000 |
| | Email: sgummow@fgppr.com |
| Traders and Pacific Insurance Company, Endurance American Specialty Insurance Company, and Endurance American Insurance Company (Appellants) | **COZEN O'CONNOR**<br>Marla S. Benedek (No. 6638)<br>1201 N. Market Street, Suite 1001<br>Wilmington, DE 19801<br>Telephone:  (302) 295-2024<br>Facsimile:  (302) 250-4498<br>mbenedek@cozen.com |
| Old Republic Insurance Company (Appellant) | **MORRIS JAMES LLP**<br>Stephen M. Miller (No. 2610)<br>Carl N. Kunz, III (No. 3201)<br>500 Delaware Avenue, Suite 1500<br>Wilmington, Delaware 19801<br>Telephone: (302) 888-6800<br>Facsimile:  (302) 571-1750<br>smiller@morrisjames.com<br>ckunz@morrisjames.com<br><br>-and-<br><br>**FOX SWIBEL LEVIN & CARROLL LLP**<br>Margaret M. Anderson (*pro hac vice*)<br>Ryan T. Schultz (*pro hac vice*)<br>Adam A. Hachikian (*pro hac vice*)<br>Kenneth M. Thomas (*pro hac vice*)<br>200 W. Madison Street, Suite 3000<br>Chicago, Illinois 60606<br>Telephone: (312) 224-1200<br>Facsimile:  (312) 224-1201<br>panderson@foxswibel.com<br>rschultz@foxswibel.com<br>ahachikian@foxswibel.com<br>kthomas@foxswibel.com |
| Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company), St. Paul Surplus Lines Insurance Company and Gulf Insurance Company (Appellants) | **REGER RIZZO & DARNALL LLP**<br>Louis J. Rizzo, Jr. (DE Bar No. 3374)<br>1521 Concord Pike Suite 305<br>Brandywine Plaza West<br>Wilmington DE  19803<br>Telephone: (302) 477-7100<br>Facsimile: (302) 652-3620<br>lrizzo@regerlaw.com |
| Lujan Claimants (Appellants) | **LOIZIDES, P.A.**<br>Christopher D. Loizides (No. 3968) |

10

A00381

| | 1225 North King Street, Suite 800<br>Telephone: (302) 654-0248<br>Loizides@loizides.com<br><br>-and-<br><br>**LUJAN & WOLFF LLP**<br>Delia Lujan Wolff<br>Suite 300, DNA Bldg.<br>238 Archbishop Flores St.<br>Hagatna, Guam 96910<br>Telephone: (671) 477-8064/5<br>dslwolff@lawguam.com |
|---|---|
| Dumas & Vaughn<br>Claimants<br>(Appellants) | **GELLERT SCALI BUSENKELL & BROWN LLC**<br>Charles J. Brown, III (No. 3368)<br>1201 N. Orange St., 3rd Floor<br>Wilmington, DE 19801<br>Telephone: (302) 425-5813<br>cbrown@gsbblaw.com<br><br>-and-<br><br>**DUMAS & VAUGHN, LLC**<br>Gilion C. Dumas<br>3835 NE Hancock Street, Suite GLB<br>Portland, OR 97212<br>Telephone: (503) 616-5007<br>gilion@dumasandvaughn.com |
| Boy Scouts of America,<br>Delaware BSA, LLC<br>(Debtors/Appellees and<br>Debtors in Possession) | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>dabbott@morrisnichols.com<br>aremming@morrisnichols.com<br>ptopper@morrisnichols.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Jessica C. Lauria (*pro hac vice*)<br>Glenn M. Kurtz (*pro hac vice*)<br>1221 Avenue of the Americas |

| | New York, New York 10020<br>Telephone: (212) 819-8200<br>Email: jessica.lauria@whitecase.com<br>gkurtz@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Michael C. Andolina<br>Matthew E. Linder<br>Laura E. Baccash<br>Blair M. Warner<br>111 South Wacker Drive<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>mandolina@whitecase.com<br>mlinder@whitecase.com<br>laura.baccash@whitecase.com<br>blair.warner@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Ronald K. Gorsich<br>Doah Kim<br>555 South Flower Street, Suite 2700<br>Los Angeles, CA 90071<br>Telephone: (213) 620-7700<br>rgorsich@whitecase.com<br>doah.kim@whitecase.com |
|---|---|
| Tort Claimants'<br>Committee<br>(Appellee) | **PACHULSKI STANG ZIEHL & JONES LLP**<br>Richard M. Pachulski (*pro hac vice*)<br>Alan J. Kornfeld (*pro hac vice*)<br>Debra I. Grassgreen (*pro hac vice*)<br>Iain A.W. Nasatir (*pro hac vice*)<br>James E. O'Neill (No. 4042)<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899-8705 (Courier 19801)<br>Telephone: (302) 652-4100<br>Fax: (302) 652-4400<br>Email: rpachulski@pszjlaw.com<br>akornfeld@pszjlaw.com<br>dgrassgreen@pszjlaw.com<br>inasatir@pszjlaw.com<br>joneill@pszjlaw.com |
| Coalition of Abused | **MONZACK MERSKY AND BROWDER, P.A.** |

| | |
|---|---|
| Scouts for Justice (Appellee) | Rachel B. Mersky (No. 2049)<br>1201 North Orange Street, Suite 400<br>Wilmington, Delaware 19801<br>Telephone: (302) 656-8162<br>Fax: (302) 656-2769<br>Email: rmersky@monlaw.com<br><br>–and–<br><br>**BROWN RUDNICK LLP**<br>David J. Molton, Esq. (*pro hac vice*)<br>Eric R. Goodman, Esq. (*pro hac vice*)<br>Seven Times Square<br>New York, NY 10036<br>Telephone: (212) 209-4800<br>Fax: (212) 209-4801<br>Email: dmolton@brownrudnick.com<br>egoodman@brownrudnick.com<br><br>–and–<br><br>**BROWN RUDNICK LLP**<br>Sunni P. Beville, Esq. (*pro hac vice*)<br>Tristan G. Axelrod, Esq. (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 856-8200<br>Fax: (617) 856-8201<br>Email: sbeville@brownrudnick.com<br>taxelrod@brownrudnick.com |
| Future Claimants' Representative (Appellee) | **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br><br>Robert S. Brady (No. 2847)<br>Edwin J. Harron (No. 3396)<br>Kenneth J. Enos (No. 4544)<br>Ashley E. Jacobs (No. 5635)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Fax: (302) 571-1253<br>Email: rbrady@ycst.com<br>eharron@ycst.com<br>kenos@ycst.com<br>ajacobs@ycst.com |

| | |
|---|---|
| | -and-<br><br>**GILBERT LLP**<br>Kami E. Quinn (*pro hac vice*)<br>Rachel H. Jennings (*pro hac vice*)<br>Kyle Y. Dechant (*pro hac vice*)<br>December L. Huddleston (*pro hac vice*)<br>700 Pennsylvania Ave, SE<br>Suite 400<br>Washington, DC 20003<br>Telephone: (202) 772-2200<br>Fax: (202) 772-3333<br>Email: quinnk@gilbertlegal.com<br>jenningsr@gilbertlegal.com<br>dechantk@gilbertlegal.com<br>huddlestond@gilbertlegal.com |
| The Zalkin Law Firm, P.C. and Pfau Cochran Vertetis Amala PLLC (Appellees) | **KTBS LAW LLP**<br>Thomas E. Patterson (*pro hac vice*)<br>Daniel J. Bussel (*pro hac vice*)<br>Robert J. Pfister (*pro hac vice*)<br>Sasha M. Gurvitz (*pro hac vice*)<br>1801 Century Park East, Twenty-Sixth Floor<br>Los Angeles, California 90067<br>Telephone: (310) 407-4000<br>Fax: (310) 407-9090<br>Email: tpatterson@ktbslaw.com<br>dbussel@ktbslaw.com<br>rpfister@ktbslaw.com<br>sgurvitz@ktbslaw.com<br><br>-and-<br><br>**BIELLI & KLAUDER, LLC**<br>David M. Klauder, Esquire (No. 5769)<br>1204 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 803-4600<br>Fax: (302) 397-2557<br>Email: dklauder@bk-legal.com |
| Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, and Navigators Specialty Insurance Company | **BAYARD, P.A.**<br>Erin R. Fay (No. 5268)<br>Gregory J. Flasser (No. 6154)<br>600 North King Street, Suite 400<br>Wilmington, DE 19801<br>Telephone: (302) 655-5000<br>Fax: (302) 658-6395 |

14

A00385

| | |
|---|---|
| (Appellees) | Email: efay@bayardlaw.com<br>gflasser@bayardlaw.com<br><br>-and-<br><br>**RUGGERI PARKS WEINBERG LLP**<br>James P. Ruggeri (*pro hac vice*)<br>Joshua D. Weinberg (*pro hac vice*)<br>1875 K Street, N.W., Suite 600<br>Washington, D.C. 20006-1251<br>Telephone: (202) 469-7750<br>Fax: (202) 469-7751<br><br>-and-<br><br>**WILMER CUTLER PICKERING HALE**<br>**AND DORR LLP**<br>Philip D. Anker (*pro hac vice*)<br>7 World Trade Center<br>250 Greenwich Street<br>New York, N.Y. 10007<br>Telephone: (212) 230-8890<br>Fax: (212) 230-8888<br><br>Joel Millar (*pro hac vice*)<br>1875 Pennsylvania Avenue N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 663-6000<br>Fax: (202) 663-6363 |
| Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America<br>(Appellees) | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>800 N. West Street<br>Third Floor Wilmington, Delaware 19801<br>Telephone: 302 999 1540<br>Fax: 302 762 1688<br><br>-and-<br><br>**O'MELVENY & MYERS LLP**<br>Tancred Schiavoni (*pro hac vice*)<br>Times Square Tower<br>7 Times Square<br>New York, New York 10036-6537<br>Telephone: (212) 326-2000<br>Fax: (212) 326-2061 |

A00386

| | |
|---|---|
| | **O'MELVENY & MYERS LLP**<br>Stephen Warren (*pro hac vice*)<br>400 South Hope Street<br>Los Angeles, California 90071<br>Telephone: (213) 430-6000<br>Fax: (213) 430-6407<br><br>**O'MELVENY & MYERS LLP**<br>Jonathan D. Hacker (*pro hac vice*)<br>1625 Eye Street, N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 383-5300 |
| Federal Insurance Company and Westchester Fire Insurance Company (Appellees) | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>8000 N. West Street, Third Floor<br>Wilmington, Delaware 19801<br>Telephone: (302) 999-1540<br><br>-and-<br><br>**SIMPSON THATCHER & BARTLETT LLP**<br>David Elbaum (*pro hac vice*)<br>425 Lexington Avenue<br>New York, New York 10017<br>Telephone: (212) 455-2000 |
| American Zurich Insurance Company, American Guarantee Insurance Company, and Steadfast Insurance Company (Appellees) | **TYBOUT, REDFEARN & PELL**<br>Robert D. Cecil, Jr. (No. 5317)<br>501 Carr Road, Suite 300<br>Wilmington, Delaware 19899<br>Telephone: (302) 658-6901<br>Email: rcecil@trplaw.com<br><br>-and-<br><br>**CROWELL & MORING LLP**<br>Mark D. Plevin (*pro hac vice*)<br>Kevin D. Cacabelos (*pro hac vice*)<br>Three Embarcadero Center, 26th Floor<br>San Francisco, California 94111<br>Telephone: (415) 986-2800<br>Email: mplevin@crowell.com<br>kcacabelos@crowell.com<br><br>Tacie H. Yoon (*pro hac vice*)<br>Rachel A. Jankowski (*pro hac vice*)<br>1001 Pennsylvania Ave., N.W. |

A00387

| | Washington, D.C. 20004<br>Telephone: (202) 624-2500<br>Email: tyoon@crowell.com<br>rjankowski@crowell.com |
|---|---|
| Clarendon National Insurance Company, as successor in interest by merger to Clarendon America Insurance Company; River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited, on its own behalf and in turn as successor to St. Katherine Insurance Company Limited); and Zurich American Insurance Company, as successor to Maryland Casualty Company, Zurich Insurance Company, and Maryland General Insurance Company (Appellees) | **BALLARD SPAHR LLP**<br>Matthew G. Summers (No. 5533)<br>Chantelle D. McClamb (No. 5978)<br>919 N. Market Street, 11th Floor<br>Wilmington, Delaware 19801-3034<br>Telephone: (302) 252-4428<br>Fax: (302) 252-4466<br>Email: summersm@ballardspahr.com<br>mcclamb@ballardspahr.com<br><br>-and-<br><br>**STEPTOE & JOHNSON LLP**<br>Harry Lee (*pro hac vice*)<br>John O'Connor (*pro hac vice*)<br>1330 Connecticut Avenue NW<br>Washington, DC 20036<br>Telephone: (202) 429-8078<br>Fax: (202) 429-3902<br>Email: hlee@steptoe.com<br>joconnor@steptoe.com |
| Ad Hoc Committee of Local Councils of the Boy Scouts of America (Appellee) | **DLA PIPER, LLP (US)**<br>R. Craig Martin (No. 5032)<br>1201 North Market Street, Suite 2100<br>Wilmington, Delaware 19801-1147<br>Telephone: (302) 468-5655<br>Email: craig.martin@dlapiper.com<br><br>-and-<br><br>**WACHTELL, LIPTON, ROSEN & KATZ**<br>Richard G. Mason (*pro hac vice*)<br>Douglas K. Mayer (*pro hac vice*)<br>Joseph C. Celentino (*pro hac vice*)<br>Mitchell S. Levy (*pro hac vice*)<br>51 West 52nd Street<br>New York, New York 10019 |

17

A00388

| | Telephone: (212) 403-1000<br>Email: RGMason@wlrk.com<br>DKMayer@wlrk.com<br>JCCelentino@wlrk.com<br>MSLevy@wlrk.com |
|---|---|

Dated: April 10, 2023
Wilmington, Delaware

TROUTMAN PEPPER HAMILTON SANDERS LLP

By:  */s/ Marcy J. McLaughlin Smith*
    David M. Fournier (DE No. 2812)
    Marcy J. McLaughlin Smith (DE No. 6184)
    Hercules Plaza, Suite 5100
    1313 Market Street
    P.O. Box 1709
    Wilmington, DE 19899-1709
    Telephone:   302.777.6500
    Facsimile:   302.421.8390

*-and-*

PARKER, HUDSON, RAINER & DOBBS LLP

    Harris B. Winsberg
    (admitted pro hac vice)
    Matthew G. Roberts
    (admitted pro hac vice)
    303 Peachtree Street NE, Suite 3600
    Atlanta, GA 30308
    Telephone:   404.420.4313
    Facsimile:   404.522.8409

*-and-*

MCDERMOTT WILL & EMERY LLP

    Margaret H. Warner
    (admitted pro hac vice)
    Ryan S. Smethurst
    (admitted pro hac vice)

TROUTMAN PEPPER HAMILTON SANDERS LLP

By:  */s/ Marcy J. McLaughlin Smith*
    David M. Fournier (DE No. 2812)
    Marcy J. McLaughlin Smith (DE No. 6184)
    Hercules Plaza, Suite 5100
    1313 Market Street
    P.O. Box 1709
    Wilmington, DE 19899-1709
    Telephone:   302.777.6500
    Facsimile:   302.421.8390

*-and-*

PARKER, HUDSON, RAINER & DOBBS LLP

    Harris B. Winsberg
    (admitted pro hac vice)
    Matthew G. Roberts
    (admitted pro hac vice)
    303 Peachtree Street NE, Suite 3600
    Atlanta, GA 30308
    Telephone:   404.420.4313
    Facsimile:   404.522.8409

*-and-*

BRADLEY RILEY JACOBS PC

    Todd C. Jacobs
    (admitted pro hac vice)
    John E. Bucheit
    (admitted pro hac vice)

18

Alex M. Spisak
(admitted pro hac vice)
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531
Telephone:    202.756.8228
Facsimile:    202.756.8087

Paul J. Esker
(admitted pro hac vice)
500 West Madison Street
Suite 1000
Chicago, IL 60661
Telephone:    312.281.0295

*Attorneys for Appellant Allianz Global
Risks US Insurance Company*

*Attorneys for Appellants National Surety
Corporation and Interstate Fire & Casualty
Company*

19

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>Debtors. | Chapter 11<br><br>Bankruptcy Case No. 20-10343-LSS<br><br>(Jointly Administered) |
| NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA, *et al.*,<br><br>Appellants,<br><br>v.<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>Appellees. | Case No. 22-cv-01237-RGA[1] |

**NOTICE OF APPEAL TO THE UNITED STATES
COURT OF APPEALS FOR THE THIRD CIRCUIT**

NOTICE IS HEREBY GIVEN that Appellants Argonaut Insurance Company and Colony Insurance Company appeal to the United States Court of Appeals for the Third Circuit from the final Order and accompanying Opinion of the United States District Court for the District of Delaware (Hon. Richard G. Andrews), entered March 28, 2023 (D.I. 150, 151), among other things affirming the *Supplemental Findings of Fact and Conclusions of Law and Order Confirming the*

---

[1] Appellants' bankruptcy appeal originally had the following caption: *Argonaut Insurance Company and Colony Insurance Company v. Boy Scouts of America and Delaware* BSA, No. 22-cv-01250-RGA. That action was consolidated with the above-captioned action on October 17, 022 and the Court directed that "[a]ll further filings with this Court will be docketed under the Master Case Number." *See* Order Granting Motion on Stipulation Regarding Appeals From Order Confirming Plan of Reorganization of Boy Scouts of America and Delaware BSA, LLC (D.I. 22).

*Third Modified Fifth Amended Chapter 11 Plan of Reorganization (with Technical Modifications)*
*for Boy Scouts of America and Delaware BSA, LLC* (Bankruptcy D.I. 10316) and accompanying Opinion (Bankruptcy D.I. 10136) of the United States Bankruptcy Court for the District of Delaware (Hon. Laurie S. Silverstein), and all other orders, decisions, and opinions subsumed therein.

The parties to the order appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

| | |
|---|---|
| National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, and The Insurance Company of the State of Pennsylvania (the "AIG Companies") (Appellants) | **FINEMAN KREKSTEIN & HARRIS PC**<br>Deirdre M. Richards<br>1300 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 538-8331<br>Email: drichards@finemanlawfirm.com<br><br>-and-<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br>Michael A. Rosenthal (*pro hac vice*)<br>Mitchell A. Karlan (*pro hac vice*)<br>James Hallowell (*pro hac vice*)<br>Keith R. Martorana (*pro hac vice*)<br>Seth M. Rokosky (*pro hac vice*)<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 351-4000<br>Email: mrosenthal@gibsondunn.com<br>mkarlan@gibsondunn.com<br>jhallowell@gibsondunn.com<br>kmartorana@gibsondunn.com<br>srokosky@gibsondunn.com<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br>Theodore J. Boutrous Jr. (*pro hac vice*)<br>Richard J. Doren (*pro hac vice*)<br>Blaine H. Evanson (*pro hac vice*)<br>333 South Grand Avenue<br>Los Angeles, California 90071<br>Telephone: (213) 229-7038<br>Email: rdoren@gibsondunn.com |

| | |
|---|---|
| | bevanson@gibsondunn.com<br>tboutrous@gibsondunn.com<br><br>**FORAN GLENNON PALANDECH PONZI & RUDLOFF P.C.**<br>Susan N.K. Gummow<br>222 N. LaSalle St., Suite 1400<br>Chicago, Illinois 60601<br>Telephone: (312) 863-5000<br>Email: sgummow@fgppr.com |
| Allianz Global Risks US<br>Insurance Company<br>(Appellant) | **TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>David M. Fournier (DE Bar No. 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Hercules Plaza<br>1313 Market Street<br>Suite 5100<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: 404.885.3000<br>david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**PARKER, HUDSON, RAINER & DOBBS LLP**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA  30308<br>Telephone: 404.420.4313<br>Facsimile: 404.522.8409<br>hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>-and-<br><br>**McDERMOTT WILL & EMERY LLP**<br>Margaret H. Warner (*pro hac vice*)<br>Ryan S. Smethurst (*pro hac vice*)<br>Alex M. Spisak (*pro hac vice*)<br>The McDermott Building<br>500 North Capitol Street, NW<br>Washington, DC 20001-1531<br>Telephone: 202.756.8228<br>Facsimile: 202.756.8087<br>mwarner@mwe.com |

| | |
|---|---|
| | rsmethurst@mwe.com<br>aspisak@mwe.com |
| National Surety Corporation and Interstate Fire & Casualty Company (Appellants) | **TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>David M. Fournier (DE Bar No. 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Hercules Plaza, Suite 5100<br>1313 Market Street<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: 302.777.6500<br>Facsimile: 302.421.8390<br>david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**PARKER, HUDSON, RAINER & DOBBS LLP**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA  30308<br>Telephone: 404.420.4313<br>Facsimile: 404.522.8409<br>hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>-and-<br><br>**BRADLEY RILEY JACOBS PC**<br>Todd C. Jacobs (*pro hac vice*)<br>John E. Bucheit (*pro hac vice*)<br>Paul J. Esker (*pro hac vice*)<br>500 West Madison Street<br>Suite 1000<br>Chicago, IL 60661<br>Telephone: 312.281.0295<br>tjacobs@bradleyriley.com<br>jbucheit@bradleyriley.com<br>pesker@bradleyriley.com |
| Arch Insurance Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (No. 2898)<br>1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400 |

| | |
|---|---|
| | kmiller@skjlaw.com<br><br>**HANGLEY ARONCHICK SEGAL**<br>**PUDLIN & SCHILLER**<br>Ronald P. Schiller (*pro hac vice*)<br>Matthew A. Hamermesh (*pro hac vice*)<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>T: (215) 568-6200<br>F: (215) 568-0300<br>E: rschiller@hangley.com<br>mhamermesh@hangley.com |
| Argonaut Insurance<br>Company and Colony<br>Insurance Company<br>(Appellants) | **POST & SCHELL, P.C.**<br>Paul Logan (No. 3339)<br>300 Delaware Avenue, Suite 1380<br>Wilmington, DE  19801<br>Telephone:  (302) 251-8856<br>Email:  plogan@postschell.com<br><br>**POST & SCHELL, P.C.**<br>John C. Sullivan (*pro hac vice*)<br>Kathleen K. Kerns (*pro hac vice*)<br>Four Penn Center – 13th Floor<br>1600 John F. Kennedy Boulevard<br>Philadelphia, PA  19103<br>Telephone:  (215) 587-1000<br>jsullivan@postschell.com<br>kkerns@postschell.com<br><br>-and-<br><br>**IFRAH PLLC**<br>George R. Calhoun (*pro hac vice*)<br>1717 Pennsylvania Avenue, N.W. Suite 650<br>Washington, DC  20006<br>Telephone:  (202) 840-8758<br>george@ifrahlaw.com |
| Arrowood Indemnity<br>Company<br>(Appellant) | **JOYCE, LLC**<br>Michael J. Joyce (No. 4563)<br>1225 King Street, Suite 800<br>Wilmington, DE 19801<br>Telephone:  (302) 388-1944<br>Email:  mjoyce@mjlawoffices.com<br><br>-and- |

| | |
|---|---|
| | **COUGHLIN MIDLIGE & GARLAND, LLP**<br>Kevin Coughlin (*pro hac vice*)<br>Lorraine Armenti (*pro hac vice*)<br>Michael Hrinewski (*pro hac vice*)<br>350 Mount Kemble Avenue<br>PO Box 1917<br>Morristown, NJ 07962<br>Telephone: (973) 267-0058<br>Facsimile: 973-267-6442<br>kcoughlin@cmg.law<br>larmenti@cmg.law<br>mhrinewski@cmg.law<br><br>-and-<br><br>**CARRUTHERS & ROTH, P.A.**<br>Britton C. Lewis<br>John M. Flynn<br>235 N. Edgeworth Street<br>P.O. Box 540<br>Greensboro, NC 27401<br>Telephone: (336) 478-1146<br>Facsimile: (336) 478-1145<br>jmf@crlaw.com<br>bcl@crlaw.com |
| Continental Insurance Company and Columbia Casualty Company (Appellants) | **GOLDSTEIN & MCCLINTOCK LLLP**<br>Maria Aprile Sawczuk (DE #3320)<br>501 Silverside Road<br>Wilmington, DE 19809<br>302-444-6710<br>marias@goldmclaw.com<br><br>-and-<br><br>**LOEB & LOEB LLP**<br>Laura McNally (*pro hac vice*)<br>Emily Stone (*pro hac vice*)<br>321 N. Clark Street, Suite 2300<br>Chicago, IL 60654<br>312-464-3155<br>lmcnally@loeb.com<br>estone@loeb.com |
| Gemini Insurance Company (Appellant) | **WERB & SULLIVAN**<br>**LEGAL ARTS BUILDING**<br>Brian A. Sullivan (No. 2098)<br>1225 N. King Street |

| | |
|---|---|
| | Suite 600<br>Wilmington, Delaware 19801<br>Telephone: (302) 652-1100<br>Cell: (302) 757-9932<br>Facsimile: (302) 652-1111<br>Email: bsullivan@werbsullivan.com<br><br>**GIEGER LABORDE & LAPEROUOSE, LLC**<br>John E.W. Baay II (*pro hac vice*)<br>701 Poydras Street<br>Suite 4800<br>New Orleans, LA 70139<br>Tel.: 504-561-0400<br>Fax: 504-561-1011<br>Email: jbaay@glllaw.com<br><br>-and-<br><br>**KIERNAN TREBACH LLP**<br>William H. White Jr (*pro hac vice*)<br>1233 20th Street, NW<br>8th Floor<br>Washington, DC 20036<br>Tel.: 202-712-7000<br>Fax: 202-712-7100<br>Email: wwhite@kiernantrebach.com |
| General Star Indemnity Company<br>(Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (DE Bar No. 2898)<br>1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400<br>Email: kmiller@skjlaw.com<br><br>-and-<br><br>**WILEY REIN LLP**<br>Mary E. Borja (*pro hac vice*)<br>Gary P. Seligman (*pro hac vice*)<br>Ashley L. Criss (*pro hac vice*)<br>2050 M Street NW<br>Washington, DC 20036<br>Phone: (202) 719-7000<br>Email: mborja@wiley.law<br>gseligman@wiley.law<br>acriss@wiley.law |

| Great American Assurance Company, f/k/a Agricultural Insurance Company; Great American E&S Insurance Company, f/k/a Agricultural Excess and Surplus Insurance Company; and Great American E&S Insurance Company (Appellants) | **BODELL BOVÉ, LLC**<br>Bruce W. McCullough (No. 3112)<br>1225 N. King Street, Suite 1000<br>Wilmington, Delaware 19801-3250<br>Telephone: (302) 655-6749<br>bmccullough@bodellbove.com<br><br>-and-<br><br>**CLYDE & CO US LLP**<br>Bruce D. Celebrezze (*pro hac vice*)<br>150 California Street \| 15th Floor<br>San Francisco, California 94111<br>Telephone: (415) 365-9800<br>Facsimile: (415) 365-9801<br>bruce.celebrezze@clydeco.us<br><br>**CLYDE & CO US LLP**<br>Konrad R. Krebs (*pro hac vice*)<br>340 Mt. Kemble Avenue \| Suite 300<br>Morristown, NJ 07960<br>Telephone: (973) 210-6700<br>Facsimile: (973) 210-6701<br>konrad.krebs@clydeco.us<br><br>-and-<br><br>**DAVID CHRISTIAN ATTORNEYS LLC**<br>David Christian (*pro hac vice*)<br>105 W. Madison St., Suite 1400<br>Chicago, Illinois 60602<br>Telephone: (312) 282-5282<br>dchristian@dca.law |
| Indian Harbor Insurance Company, on behalf of itself and as successor in interest to Catlin Specialty Insurance Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (No. 2898)<br>1000 West Street, Suite 1501<br>P.O. Box 410<br>Wilmington, DE  19899 [Courier 19801]<br>Telephone: (302) 652-8400<br>Facsimile: (302) 652-8405<br>kmiller@skjlaw.com<br><br>and<br><br>**MOUND COTTON WOLLAN & GREENGRASS LLP** |

| | |
|---|---|
| | Lloyd A. Gura (*pro hac vice*)<br>Pamela J. Minetto (*pro hac vice*)<br>One New York Plaza 44th Floor<br>New York, NY 10004<br>Tel: (212) 804-4282<br>lgura@moundcotton.com<br>pminetto@moundcotton.com |
| Liberty Mutual Insurance Company, The Ohio Casualty Insurance Company, Liberty Insurance Underwriters, Inc. and Liberty Surplus Insurance Corporation (Appellants) | **SEITZ, VAN OGTROP & GREEN, P.A.**<br>R. Karl Hill (DE Bar No. 2747)<br>222 Delaware Avenue<br>Suite 1500<br>Wilmington, DE 19801<br>Telephone: (302) 888-0600<br>khill@svglaw.com<br><br>-and-<br><br>**CHOATE, HALL & STEWART LLP**<br>Douglas R. Gooding (*pro hac vice*)<br>Jonathan D. Marshall (*pro hac vice*)<br>Two International Place<br>Boston, MA 02110<br>Telephone: (617) 248-5000<br>dgooding@choate.com<br>jmarshall@choate.com<br><br>-and-<br><br>**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC**<br>Kim V. Marrkand (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 542-6000<br>kvmarrkand@mintz.com |
| Munich Reinsurance America, Inc., formerly known as American Re-Insurance Company (Appellant) | **DILWORTH PAXSON LLP**<br>Thaddeus J. Weaver (DE Bar. No. 2790)<br>704 N. King Street, Suite 500<br>P.O. Box 1031<br>Wilmington, DE 19899-1031<br>(302) 571-8867 (telephone)<br>(302) 351-8735 (facsimile)<br>tweaver@dilworthlaw.com<br><br>-and- |

| | |
|---|---|
| | **DILWORTH PAXSON LLP**<br>William E. McGrath, Jr. (*pro hac vice*)<br>2 Research Way, Suite 103<br>Princeton, NJ  08540<br>(609) 924-6000 (telephone)<br>(215) 893-8537 (facsimile)<br>wmcgrath@dilworthlaw.com |
| Traders and Pacific<br>Insurance Company,<br>Endurance American<br>Specialty Insurance<br>Company, and<br>Endurance American<br>Insurance Company<br>(Appellants) | **COZEN O'CONNOR**<br>Marla S. Benedek (No. 6638)<br>1201 N. Market Street, Suite 1001<br>Wilmington, DE 19801<br>Telephone:  (302) 295-2024<br>Facsimile:  (302) 250-4498<br>mbenedek@cozen.com |
| Old Republic Insurance<br>Company<br>(Appellant) | **MORRIS JAMES LLP**<br>Stephen M. Miller (No. 2610)<br>Carl N. Kunz, III (No. 3201)<br>500 Delaware Avenue, Suite 1500<br>Wilmington, Delaware 19801<br>Telephone: (302) 888-6800<br>Facsimile:  (302) 571-1750<br>smiller@morrisjames.com<br>ckunz@morrisjames.com<br><br>-and-<br><br>**FOX SWIBEL LEVIN & CARROLL LLP**<br>Margaret M. Anderson (*pro hac vice*)<br>Ryan T. Schultz (*pro hac vice*)<br>Adam A. Hachikian (*pro hac vice*)<br>Kenneth M. Thomas (*pro hac vice*)<br>200 W. Madison Street, Suite 3000<br>Chicago, Illinois 60606<br>Telephone: (312) 224-1200<br>Facsimile:  (312) 224-1201<br>panderson@foxswibel.com<br>rschultz@foxswibel.com<br>ahachikian@foxswibel.com<br>kthomas@foxswibel.com |
| Travelers Casualty and<br>Surety Company, Inc.<br>(f/k/a Aetna Casualty &<br>Surety Company), St.<br>Paul Surplus Lines | **REGER RIZZO & DARNALL LLP**<br>Louis J. Rizzo, Jr. (DE Bar No. 3374)<br>1521 Concord Pike Suite 305<br>Brandywine Plaza West<br>Wilmington DE  19803 |

| | |
|---|---|
| Insurance Company and Gulf Insurance Company (Appellants) | Telephone: (302) 477-7100<br>Facsimile: (302) 652-3620<br>lrizzo@regerlaw.com |
| Lujan Claimants (Appellants) | **LOIZIDES, P.A.**<br>Christopher D. Loizides (No. 3968)<br>1225 North King Street, Suite 800<br>Telephone: (302) 654-0248<br>Loizides@loizides.com<br><br>-and-<br><br>**LUJAN & WOLFF LLP**<br>Delia Lujan Wolff<br>Suite 300, DNA Bldg.<br>238 Archbishop Flores St.<br>Hagatna, Guam 96910<br>Telephone: (671) 477-8064/5<br>dslwolff@lawguam.com |
| Dumas & Vaughn Claimants<br><br>(Appellants) | **GELLERT SCALI BUSENKELL & BROWN LLC**<br>Charles J. Brown, III (No. 3368)<br>1201 N. Orange St., 3rd Floor<br>Wilmington, DE 19801<br>Telephone: (302) 425-5813<br>cbrown@gsbblaw.com<br><br>-and-<br><br>**DUMAS & VAUGHN, LLC**<br>Gilion C. Dumas<br>3835 NE Hancock Street, Suite GLB<br>Portland, OR 97212<br>Telephone: (503) 616-5007<br>gilion@dumasandvaughn.com |
| Boy Scouts of America,<br><br>Delaware BSA, LLC (Debtors/Appellees and Debtors in Possession) | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>dabbott@morrisnichols.com<br>aremming@morrisnichols.com<br>ptopper@morrisnichols.com |

| | |
|---|---|
| | – and –<br><br>**WHITE & CASE LLP**<br>Jessica C. Lauria (*pro hac vice*)<br>Glenn M. Kurtz (*pro hac vice*)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Email: jessica.lauria@whitecase.com<br>gkurtz@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Michael C. Andolina<br>Matthew E. Linder<br>Laura E. Baccash<br>Blair M. Warner<br>111 South Wacker Drive<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>mandolina@whitecase.com<br>mlinder@whitecase.com<br>laura.baccash@whitecase.com<br>blair.warner@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Ronald K. Gorsich<br>Doah Kim<br>555 South Flower Street, Suite 2700<br>Los Angeles, CA 90071<br>Telephone: (213) 620-7700<br>rgorsich@whitecase.com<br>doah.kim@whitecase.com |
| Tort Claimants'<br>Committee<br>(Appellees) | **PACHULSKI STANG ZIEHL & JONES LLP**<br>Richard M. Pachulski (*pro hac vice*)<br>Alan J. Kornfeld (*pro hac vice*)<br>Debra I. Grassgreen (*pro hac vice*)<br>Iain A.W. Nasatir (*pro hac vice*)<br>James E. O'Neill (No. 4042)<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899-8705 (Courier 19801)<br>Telephone: (302) 652-4100<br>Fax: (302) 652-4400 |

| | Email: rpachulski@pszjlaw.com<br>akornfeld@pszjlaw.com<br>dgrassgreen@pszjlaw.com<br>inasatir@pszjlaw.com<br>joneill@pszjlaw.com |
|---|---|
| Coalition of Abused Scouts for Justice (Appellees) | **MONZACK MERSKY AND BROWDER, P.A.**<br>Rachel B. Mersky (No. 2049)<br>1201 North Orange Street, Suite 400<br>Wilmington, Delaware 19801<br>Telephone: (302) 656-8162<br>Fax: (302) 656-2769<br>Email: rmersky@monlaw.com<br><br>–and–<br><br>**BROWN RUDNICK LLP**<br>David J. Molton, Esq. (*pro hac vice*)<br>Eric R. Goodman, Esq. (*pro hac vice*)<br>Seven Times Square<br>New York, NY 10036<br>Telephone: (212) 209-4800<br>Fax: (212) 209-4801<br>Email: dmolton@brownrudnick.com<br>egoodman@brownrudnick.com<br><br>–and–<br><br>**BROWN RUDNICK LLP**<br>Sunni P. Beville, Esq. (*pro hac vice*)<br>Tristan G. Axelrod, Esq. (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 856-8200<br>Fax: (617) 856-8201<br>Email: sbeville@brownrudnick.com<br>taxelrod@brownrudnick.com |
| Future Claimants' Representative (Appellees) | **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br><br>Robert S. Brady (No. 2847)<br>Edwin J. Harron (No. 3396)<br>Kenneth J. Enos (No. 4544)<br>Ashley E. Jacobs (No. 5635)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600 |

| | |
|---|---|
| | Fax: (302) 571-1253<br>Email: rbrady@ycst.com<br>eharron@ycst.com<br>kenos@ycst.com<br>ajacobs@ycst.com<br><br>-and-<br><br>**GILBERT LLP**<br>Kami E. Quinn (*pro hac vice*)<br>Rachel H. Jennings (*pro hac vice*)<br>Kyle Y. Dechant (*pro hac vice*)<br>December L. Huddleston (*pro hac vice*)<br>700 Pennsylvania Ave, SE<br>Suite 400<br>Washington, DC 20003<br>Telephone: (202) 772-2200<br>Fax: (202) 772-3333<br>Email: quinnk@gilbertlegal.com<br>jenningsr@gilbertlegal.com<br>dechantk@gilbertlegal.com<br>huddlestond@gilbertlegal.com |
| The Zalkin Law Firm, P.C. and Pfau Cochran Vertetis Amala PLLC (Appellees) | **KTBS LAW LLP**<br>Thomas E. Patterson (*pro hac vice*)<br>Daniel J. Bussel (*pro hac vice*)<br>Robert J. Pfister (*pro hac vice*)<br>Sasha M. Gurvitz (*pro hac vice*)<br>1801 Century Park East, Twenty-Sixth Floor<br>Los Angeles, California 90067<br>Telephone: (310) 407-4000<br>Fax: (310) 407-9090<br>Email: tpatterson@ktbslaw.com<br>dbussel@ktbslaw.com<br>rpfister@ktbslaw.com<br>sgurvitz@ktbslaw.com<br><br>-and-<br><br>**BIELLI & KLAUDER, LLC**<br>David M. Klauder, Esquire (No. 5769)<br>1204 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 803-4600<br>Fax: (302) 397-2557<br>Email: dklauder@bk-legal.com |
| Hartford Accident and | **BAYARD, P.A.** |

| Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, and Navigators Specialty Insurance Company (Appellees) | Erin R. Fay (No. 5268)<br>Gregory J. Flasser (No. 6154)<br>600 North King Street, Suite 400<br>Wilmington, DE 19801<br>Telephone: (302) 655-5000<br>Fax: (302) 658-6395<br>Email: efay@bayardlaw.com<br>gflasser@bayardlaw.com<br><br>-and-<br><br>**RUGGERI PARKS WEINBERG LLP**<br>James P. Ruggeri (*pro hac vice*)<br>Joshua D. Weinberg (*pro hac vice*)<br>1875 K Street, N.W., Suite 600<br>Washington, D.C. 20006-1251<br>Telephone: (202) 469-7750<br>Fax: (202) 469-7751<br><br>-and-<br><br>**WILMER CUTLER PICKERING HALE AND DORR LLP**<br>Philip D. Anker (*pro hac vice*)<br>7 World Trade Center<br>250 Greenwich Street<br>New York, N.Y. 10007<br>Telephone: (212) 230-8890<br>Fax: (212) 230-8888<br><br>Joel Millar (*pro hac vice*)<br>1875 Pennsylvania Avenue N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 663-6000<br>Fax: (202) 663-6363 |
| Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America (Appellees) | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>800 N. West Street<br>Third Floor Wilmington, Delaware 19801<br>Telephone: 302 999 1540<br>Fax: 302 762 1688<br><br>-and-<br><br>**O'MELVENY & MYERS LLP**<br>Tancred Schiavoni (*pro hac vice*) |

| | |
|---|---|
| | Times Square Tower<br>7 Times Square<br>New York, New York 10036-6537<br>Telephone: (212) 326-2000<br>Fax: (212) 326-2061<br><br>**O'MELVENY & MYERS LLP**<br>Stephen Warren (*pro hac vice*)<br>400 South Hope Street<br>Los Angeles, California 90071<br>Telephone: (213) 430-6000<br>Fax: (213) 430-6407<br><br>**O'MELVENY & MYERS LLP**<br>Jonathan D. Hacker (*pro hac vice*)<br>1625 Eye Street, N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 383-5300 |
| Federal Insurance Company and Westchester Fire Insurance Company (Appellees) | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>8000 N. West Street, Third Floor<br>Wilmington, Delaware 19801<br>Telephone: (302) 999-1540<br><br>-and-<br><br>**SIMPSON THATCHER & BARTLETT LLP**<br>David Elbaum (*pro hac vice*)<br>425 Lexington Avenue<br>New York, New York 10017<br>Telephone: (212) 455-2000 |
| American Zurich Insurance Company, American Guarantee Insurance Company, and Steadfast Insurance Company (Appellees) | **TYBOUT, REDFEARN & PELL**<br>Robert D. Cecil, Jr. (No. 5317)<br>501 Carr Road, Suite 300<br>Wilmington, Delaware 19899<br>Telephone: (302) 658-6901<br>Email: rcecil@trplaw.com<br><br>-and-<br><br>**CROWELL & MORING LLP**<br>Mark D. Plevin (*pro hac vice*)<br>Kevin D. Cacabelos (*pro hac vice*)<br>Three Embarcadero Center, 26th Floor<br>San Francisco, California 94111<br>Telephone: (415) 986-2800 |

| | Email: mplevin@crowell.com<br>kcacabelos@crowell.com<br><br>Tacie H. Yoon (*pro hac vice*)<br>Rachel A. Jankowski (*pro hac vice*)<br>1001 Pennsylvania Ave., N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 624-2500<br>Email: tyoon@crowell.com<br>rjankowski@crowell.com |
|---|---|
| Clarendon National Insurance Company, as successor in interest by merger to Clarendon America Insurance Company; River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited, on its own behalf and in turn as successor to St. Katherine Insurance Company Limited); and Zurich American Insurance Company, as successor to Maryland Casualty Company, Zurich Insurance Company, and Maryland General Insurance Company (Appellees) | **BALLARD SPAHR LLP**<br>Matthew G. Summers (No. 5533)<br>Chantelle D. McClamb (No. 5978)<br>919 N. Market Street, 11th Floor<br>Wilmington, Delaware 19801-3034<br>Telephone: (302) 252-4428<br>Fax: (302) 252-4466<br>Email: summersm@ballardspahr.com<br>mcclamb@ballardspahr.com<br><br>-and-<br><br>**STEPTOE & JOHNSON LLP**<br>Harry Lee (*pro hac vice*)<br>John O'Connor (*pro hac vice*)<br>1330 Connecticut Avenue NW<br>Washington, DC 20036<br>Telephone: (202) 429-8078<br>Fax: (202) 429-3902<br>Email: hlee@steptoe.com<br>joconnor@steptoe.com |
| Ad Hoc Committee of Local Councils of the Boy Scouts of America (Appellees) | **DLA PIPER, LLP (US)**<br>R. Craig Martin (No. 5032)<br>1201 North Market Street, Suite 2100<br>Wilmington, Delaware 19801-1147<br>Telephone: (302) 468-5655<br>Email: craig.martin@dlapiper.com<br><br>-and-<br><br>**WACHTELL, LIPTON, ROSEN & KATZ** |

|  | Richard G. Mason (*pro hac vice*)<br>Douglas K. Mayer (*pro hac vice*)<br>Joseph C. Celentino (*pro hac vice*)<br>Mitchell S. Levy (*pro hac vice*)<br>51 West 52nd Street<br>New York, New York 10019<br>Telephone: (212) 403-1000<br>Email: RGMason@wlrk.com<br>DKMayer@wlrk.com<br>JCCelentino@wlrk.com<br>MSLevy@wlrk.com |
|---|---|

Dated: 04/10/2023            By:    <u>s/Paul Logan</u>
Wilmington, Delaware

POST & SCHELL, P.C.
Paul Logan (No. 3339)
300 Delaware Avenue, Suite 1380
Wilmington, DE 19801
Telephone: (302) 251-8856
Email: plogan@postschell.com

POST & SCHELL, P.C.
John C. Sullivan (*pro hac vice*)
Kathleen K. Kerns (*pro hac vice*)
Four Penn Center – 13th Floor
1600 John F. Kennedy Boulevard
Philadelphia, PA 19103
Telephone: (215) 587-1000
jsullivan@postschell.com
kkerns@postschell.com

-and-

IFRAH PLLC
George R. Calhoun (*pro hac vice*)
1717 Pennsylvania Avenue, N.W. Suite 650
Washington, DC 20006
Telephone: (202) 840-8758
george@ifrahlaw.com

*Attorneys for Argonaut Insurance Company and
Colony Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

Paul Logan, attorney for Argonaut Insurance Company and Colony Insurance Company, certifies that on this 10th day of April 2023, he caused the attached Notice of Appeal to be electronically filed with the Court.  Service of same will be made upon all parties via the Court's ECF system.

<div align="right">
s/Paul Logan                      

Paul Logan
</div>

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>        Debtors. | Chapter 11<br><br>Bankruptcy Case<br>No. 20-10343-LSS<br><br>(Jointly Administered) |
| NATIONAL UNION FIRE INSURANCE CO.<br>OF PITTSBURGH, PA, *et al.*,<br><br>        Appellants,<br><br>    v.<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>        Appellees. | Case No. 22-cv-01237-RGA[1] |

## NOTICE OF APPEAL TO THE UNITED STATES
## COURT OF APPEALS FOR THE THIRD CIRCUIT

NOTICE IS HEREBY GIVEN that Appellant Gemini Insurance Company appeals to the United States Court of Appeals for the Third Circuit from the final Order and accompanying Opinion of the United States District Court for the District of Delaware (Hon. Richard G. Andrews), entered   March 28, 2023 (D.I. 150, 151), among other things affirming the *Supplemental Findings of Fact and Conclusions of Law and Order Confirming the Third Modified*

---

[1] Appellant's bankruptcy appeal originally had the following caption and case number: *Gemini Insurance Company v. Boy Scouts of America and Delaware BSA, LLC*, No. 22-cv-01246-RGA. That action was consolidated with the above-captioned action on October 17, 2022 and the Court directed that "[a]ll further filings with this Court will be docketed under the Master Case Number." *See* Order Granting Motion on Stipulation Regarding Appeals From Order Confirming Plan of Reorganization of Boy Scouts of America and Delaware BSA, LLC (D.I. 22).

*Fifth Amended Chapter 11 Plan of Reorganization (with Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC* (Bankruptcy D.I. 10316) and accompanying Opinion (Bankruptcy D.I. 10136) of the United States Bankruptcy Court for the District of Delaware (Hon. Laurie S. Silverstein), and all other orders, decisions, and opinions subsumed therein.

The parties to the order appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

| | |
|---|---|
| National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, and The Insurance Company of the State of Pennsylvania (the "AIG Companies") (Appellants) | **FINEMAN KREKSTEIN & HARRIS PC**<br>Deirdre M. Richards<br>1300 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 538-8331<br>Email: drichards@finemanlawfirm.com<br><br>-and-<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br>Michael A. Rosenthal (*pro hac vice*)<br>Mitchell A. Karlan (*pro hac vice*)<br>James Hallowell (*pro hac vice*)<br>Keith R. Martorana (*pro hac vice*)<br>Seth M. Rokosky (*pro hac vice*)<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 351-4000<br>Email: mrosenthal@gibsondunn.com<br>mkarlan@gibsondunn.com<br>jhallowell@gibsondunn.com<br>kmartorana@gibsondunn.com<br>srokosky@gibsondunn.com<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br>Theodore J. Boutrous Jr. (*pro hac vice*)<br>Richard J. Doren (*pro hac vice*)<br>Blaine H. Evanson (*pro hac vice*)<br>333 South Grand Avenue<br>Los Angeles, California 90071<br>Telephone: (213) 229-7038<br>Email: rdoren@gibsondunn.com<br>bevanson@gibsondunn.com<br>tboutrous@gibsondunn.com |

2

| | |
|---|---|
| | **FORAN GLENNON PALANDECH PONZI & RUDLOFF P.C.**<br>Susan N.K. Gummow<br>222 N. LaSalle St., Suite 1400<br>Chicago, Illinois 60601<br>Telephone: (312) 863-5000<br>Email: sgummow@fgppr.com |
| Allianz Global Risks US Insurance Company (Appellant) | **TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>David M. Fournier (DE Bar No. 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Hercules Plaza<br>1313 Market Street<br>Suite 5100<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: 404.885.3000<br>david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**PARKER, HUDSON, RAINER & DOBBS LLP**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA  30308<br>Telephone: 404.420.4313<br>Facsimile: 404.522.8409<br>hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>-and-<br><br>**McDERMOTT WILL & EMERY LLP**<br>Margaret H. Warner (*pro hac vice*)<br>Ryan S. Smethurst (*pro hac vice*)<br>Alex M. Spisak (*pro hac vice*)<br>The McDermott Building<br>500 North Capitol Street, NW<br>Washington, DC 20001-1531<br>Telephone: 202.756.8228<br>Facsimile: 202.756.8087<br>mwarner@mwe.com<br>rsmethurst@mwe.com<br>aspisak@mwe.com |

3

| | |
|---|---|
| National Surety Corporation and Interstate Fire & Casualty Company (Appellants) | **TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>David M. Fournier (DE Bar No. 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Hercules Plaza, Suite 5100<br>1313 Market Street<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: 302.777.6500<br>Facsimile: 302.421.8390<br>david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**PARKER, HUDSON, RAINER & DOBBS LLP**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA 30308<br>Telephone: 404.420.4313<br>Facsimile: 404.522.8409<br>hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>-and-<br><br>**BRADLEY RILEY JACOBS PC**<br>Todd C. Jacobs (*pro hac vice*)<br>John E. Bucheit (*pro hac vice*)<br>Paul J. Esker (*pro hac vice*)<br>500 West Madison Street<br>Suite 1000<br>Chicago, IL 60661<br>Telephone: 312.281.0295<br>tjacobs@bradleyriley.com<br>jbucheit@bradleyriley.com<br>pesker@bradleyriley.com |
| Arch Insurance Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (No. 2898)<br>1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400<br>kmiller@skjlaw.com |

4

| | |
|---|---|
| | **HANGLEY ARONCHICK SEGAL**<br>**PUDLIN & SCHILLER**<br>Ronald P. Schiller (*pro hac vice*)<br>Matthew A. Hamermesh (*pro hac vice*)<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>T: (215) 568-6200<br>F: (215) 568-0300<br>E: rschiller@hangley.com<br>mhamermesh@hangley.com |
| Argonaut Insurance Company and Colony Insurance Company (Appellants) | **POST & SCHELL, P.C.**<br>Paul Logan (No. 3339)<br>300 Delaware Avenue, Suite 1380<br>Wilmington, DE 19801<br>Telephone: (302) 251-8856<br>Email: plogan@postschell.com<br><br>**POST & SCHELL, P.C.**<br>John C. Sullivan (*pro hac vice*)<br>Kathleen K. Kerns (*pro hac vice*)<br>Four Penn Center – 13th Floor<br>1600 John F. Kennedy Boulevard<br>Philadelphia, PA 19103<br>Telephone: (215) 587-1000<br>jsullivan@postschell.com<br>kkerns@postschell.com<br><br>-and-<br><br>**IFRAH PLLC**<br>George R. Calhoun (*pro hac vice*)<br>1717 Pennsylvania Avenue, N.W. Suite 650<br>Washington, DC 20006<br>Telephone: (202) 840-8758<br>george@ifrahlaw.com |
| Arrowood Indemnity Company (Appellant) | **JOYCE, LLC**<br>Michael J. Joyce (No. 4563)<br>1225 King Street, Suite 800<br>Wilmington, DE 19801<br>Telephone: (302) 388-1944<br>Email: mjoyce@mjlawoffices.com<br><br>-and-<br><br>**COUGHLIN MIDLIGE & GARLAND, LLP**<br>Kevin Coughlin (*pro hac vice*) |

5

| | |
|---|---|
| | Lorraine Armenti (*pro hac vice*)<br>Michael Hrinewski (*pro hac vice*)<br>350 Mount Kemble Avenue<br>PO Box 1917<br>Morristown, NJ 07962<br>Telephone:  (973) 267-0058<br>Facsimile:  973-267-6442<br>kcoughlin@cmg.law<br>larmenti@cmg.law<br>mhrinewski@cmg.law<br><br>-and-<br><br>**CARRUTHERS & ROTH, P.A.**<br>Britton C. Lewis<br>John M. Flynn<br>235 N. Edgeworth Street<br>P.O. Box 540<br>Greensboro, NC  27401<br>Telephone:  (336) 478-1146<br>Facsimile:  (336) 478-1145<br>jmf@crlaw.com<br>bcl@crlaw.com |
| Continental Insurance Company and Columbia Casualty Company (Appellants) | **GOLDSTEIN & MCCLINTOCK LLLP**<br>Maria Aprile Sawczuk (DE #3320)<br>501 Silverside Road<br>Wilmington, DE 19809<br>302-444-6710<br>marias@goldmclaw.com<br><br>-and-<br><br>**LOEB & LOEB LLP**<br>Laura McNally (*pro hac vice*)<br>Emily Stone (*pro hac vice*)<br>321 N. Clark Street, Suite 2300<br>Chicago, IL 60654<br>312-464-3155<br>lmcnally@loeb.com<br>estone@loeb.com |
| Gemini Insurance Company (Appellant) | **WERB & SULLIVAN**<br>LEGAL ARTS BUILDING<br>Brian A. Sullivan (No. 2098)<br>1225 N. King Street<br>Suite 600<br>Wilmington, Delaware 19801 |

| | Telephone: (302) 652-1100<br>Cell: (302) 757-9932<br>Facsimile: (302) 652-1111<br>Email: bsullivan@werbsullivan.com<br><br>**GIEGER LABORDE & LAPEROUOSE, LLC**<br>John E.W. Baay II (*pro hac vice*)<br>701 Poydras Street<br>Suite 4800<br>New Orleans, LA 70139<br>Tel.: 504-561-0400<br>Fax: 504-561-1011<br>Email: jbaay@glllaw.com<br><br>-and-<br><br>**KIERNAN TREBACH LLP**<br>William H. White Jr (*pro hac vice*)<br>1233 20th Street, NW<br>8th Floor<br>Washington, DC 20036<br>Tel.: 202-712-7000<br>Fax: 202-712-7100<br>Email: wwhite@kiernantrebach.com |
|---|---|
| General Star Indemnity<br>Company<br>(Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (DE Bar No. 2898)<br>1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400<br>Email: kmiller@skjlaw.com<br><br>-and-<br><br>**WILEY REIN LLP**<br>Mary E. Borja (*pro hac vice*)<br>Gary P. Seligman (*pro hac vice*)<br>Ashley L. Criss (*pro hac vice*)<br>2050 M Street NW<br>Washington, DC 20036<br>Phone: (202) 719-7000<br>Email: mborja@wiley.law<br>gseligman@wiley.law<br>acriss@wiley.law |
| Great American<br>Assurance | **BODELL BOVÉ, LLC**<br>Bruce W. McCullough (No. 3112) |

7

| | |
|---|---|
| Company, f/k/a Agricultural Insurance Company; Great American E&S Insurance Company, f/k/a Agricultural Excess and Surplus Insurance Company; and Great American E&S Insurance Company (Appellants) | 1225 N. King Street, Suite 1000<br>Wilmington, Delaware 19801-3250<br>Telephone: (302) 655-6749<br>bmccullough@bodellbove.com<br><br>-and-<br><br>**CLYDE & CO US LLP**<br>Bruce D. Celebrezze (*pro hac vice*)<br>150 California Street \| 15th Floor<br>San Francisco, California 94111<br>Telephone: (415) 365-9800<br>Facsimile: (415) 365-9801<br>bruce.celebrezze@clydeco.us<br><br>**CLYDE & CO US LLP**<br>Konrad R. Krebs (*pro hac vice*)<br>340 Mt. Kemble Avenue \| Suite 300<br>Morristown, NJ 07960<br>Telephone: (973) 210-6700<br>Facsimile: (973) 210-6701<br>konrad.krebs@clydeco.us<br><br>-and-<br><br>**DAVID CHRISTIAN ATTORNEYS LLC**<br>David Christian (*pro hac vice*)<br>105 W. Madison St., Suite 1400<br>Chicago, Illinois 60602<br>Telephone: (312) 282-5282<br>dchristian@dca.law |
| Indian Harbor Insurance Company, on behalf of itself and as successor in interest to Catlin Specialty Insurance Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (No. 2898)<br>1000 West Street, Suite 1501<br>P.O. Box 410<br>Wilmington, DE 19899 [Courier 19801]<br>Telephone: (302) 652-8400<br>Facsimile: (302) 652-8405<br>kmiller@skjlaw.com<br><br>and<br><br>**MOUND COTTON WOLLAN & GREENGRASS LLP**<br>Lloyd A. Gura (*pro hac vice*)<br>Pamela J. Minetto (*pro hac vice*) |

| | One New York Plaza 44th Floor<br>New York, NY 10004<br>Tel: (212) 804-4282<br>lgura@moundcotton.com<br>pminetto@moundcotton.com |
|---|---|
| Liberty Mutual Insurance Company, The Ohio Casualty Insurance Company, Liberty Insurance Underwriters, Inc. and Liberty Surplus Insurance Corporation (Appellants) | **SEITZ, VAN OGTROP & GREEN, P.A.**<br>R. Karl Hill (DE Bar No. 2747)<br>222 Delaware Avenue<br>Suite 1500<br>Wilmington, DE 19801<br>Telephone: (302) 888-0600<br>khill@svglaw.com<br><br>-and-<br><br>**CHOATE, HALL & STEWART LLP**<br>Douglas R. Gooding (*pro hac vice*)<br>Jonathan D. Marshall (*pro hac vice*)<br>Two International Place<br>Boston, MA 02110<br>Telephone: (617) 248-5000<br>dgooding@choate.com<br>jmarshall@choate.com<br><br>-and-<br><br>**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC**<br>Kim V. Marrkand (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 542-6000<br>kvmarrkand@mintz.com |
| Munich Reinsurance America, Inc., formerly known as American Re-Insurance Company (Appellant) | **DILWORTH PAXSON LLP**<br>Thaddeus J. Weaver (DE Bar. No. 2790)<br>704 N. King Street, Suite 500<br>P.O. Box 1031<br>Wilmington, DE  19899-1031<br>(302) 571-8867 (telephone)<br>(302) 351-8735 (facsimile)<br>tweaver@dilworthlaw.com<br><br>-and-<br><br>**DILWORTH PAXSON LLP**<br>William E. McGrath, Jr. (*pro hac vice*) |

9

| | |
|---|---|
| | 2 Research Way, Suite 103<br>Princeton, NJ  08540<br>(609) 924-6000 (telephone)<br>(215) 893-8537 (facsimile)<br>wmcgrath@dilworthlaw.com |
| Traders and Pacific Insurance Company, Endurance American Specialty Insurance Company, and Endurance American Insurance Company (Appellants) | **COZEN O'CONNOR**<br>Marla S. Benedek (No. 6638)<br>1201 N. Market Street, Suite 1001<br>Wilmington, DE 19801<br>Telephone:  (302) 295-2024<br>Facsimile:  (302) 250-4498<br>mbenedek@cozen.com |
| Old Republic Insurance Company (Appellant) | **MORRIS JAMES LLP**<br>Stephen M. Miller (No. 2610)<br>Carl N. Kunz, III (No. 3201)<br>500 Delaware Avenue, Suite 1500<br>Wilmington, Delaware 19801<br>Telephone: (302) 888-6800<br>Facsimile:  (302) 571-1750<br>smiller@morrisjames.com<br>ckunz@morrisjames.com<br><br>-and-<br><br>**FOX SWIBEL LEVIN & CARROLL LLP**<br>Margaret M. Anderson (*pro hac vice*)<br>Ryan T. Schultz (*pro hac vice*)<br>Adam A. Hachikian (*pro hac vice*)<br>Kenneth M. Thomas (*pro hac vice*)<br>200 W. Madison Street, Suite 3000<br>Chicago, Illinois 60606<br>Telephone: (312) 224-1200<br>Facsimile:  (312) 224-1201<br>panderson@foxswibel.com<br>rschultz@foxswibel.com<br>ahachikian@foxswibel.com<br>kthomas@foxswibel.com |
| Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company), St. Paul Surplus Lines Insurance Company and Gulf Insurance Company | **REGER RIZZO & DARNALL LLP**<br>Louis J. Rizzo, Jr. (DE Bar No. 3374)<br>1521 Concord Pike Suite 305<br>Brandywine Plaza West<br>Wilmington DE  19803<br>Telephone: (302) 477-7100<br>Facsimile: (302) 652-3620 |

| | |
|---|---|
| (Appellants) | lrizzo@regerlaw.com |
| Lujan Claimants<br><br>(Appellants) | **LOIZIDES, P.A.**<br>Christopher D. Loizides (No. 3968)<br>1225 North King Street, Suite 800<br>Wilmington, DE 19801<br>Telephone: (302) 654-0248<br>Loizides@loizides.com<br><br>-and-<br><br>**LUJAN & WOLFF LLP**<br>Delia Lujan Wolff (*pro hac vice*)<br>Suite 300, DNA Bldg.<br>238 Archbishop Flores St.<br>Hagatna, Guam 96910<br>Telephone: (671) 477-8064/5<br>dslwolff@lawguam.com |
| Dumas & Vaughn Claimants<br>(Appellants) | **GELLERT SCALI BUSENKELL & BROWN LLC**<br>Charles J. Brown, III (No. 3368)<br>1201 N. Orange St., 3rd Floor<br>Wilmington, DE 19801<br>Telephone: (302) 425-5813<br>cbrown@gsbblaw.com<br><br>-and-<br><br>**DUMAS & VAUGHN, LLC**<br>Gilion C. Dumas (*pro hac vice*)<br>3835 NE Hancock Street, Suite GLB<br>Portland, OR 97212<br>Telephone: (503) 616-5007<br>gilion@dumasandvaughn.com |
| Boy Scouts of America,<br>Delaware BSA, LLC<br>(Debtors/Appellees and<br>Debtors in Possession) | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>dabbott@morrisnichols.com<br>aremming@morrisnichols.com<br>ptopper@morrisnichols.com<br><br>-and- |

11

| | |
|---|---|
| | **WHITE & CASE LLP**<br>Jessica C. Lauria (*pro hac vice*)<br>Glenn M. Kurtz (*pro hac vice*)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Email: jessica.lauria@whitecase.com<br>gkurtz@whitecase.com<br><br>-and-<br><br>**WHITE & CASE LLP**<br>Michael C. Andolina<br>Matthew E. Linder<br>Laura E. Baccash<br>Blair M. Warner<br>111 South Wacker Drive<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>mandolina@whitecase.com<br>mlinder@whitecase.com<br>laura.baccash@whitecase.com<br>blair.warner@whitecase.com<br><br>-and-<br><br>**WHITE & CASE LLP**<br>Ronald K. Gorsich<br>Doah Kim<br>555 South Flower Street, Suite 2700<br>Los Angeles, CA 90071<br>Telephone: (213) 620-7700<br>rgorsich@whitecase.com<br>doah.kim@whitecase.com |
| Tort Claimants'<br>Committee<br>(Appellee) | **PACHULSKI STANG ZIEHL & JONES LLP**<br>Richard M. Pachulski (*pro hac vice*)<br>Alan J. Kornfeld (*pro hac vice*)<br>Debra I. Grassgreen (*pro hac vice*)<br>Iain A.W. Nasatir (*pro hac vice*)<br>James E. O'Neill (No. 4042)<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899-8705 (Courier 19801)<br>Telephone: (302) 652-4100<br>Fax: (302) 652-4400<br>Email: rpachulski@pszjlaw.com<br>akornfeld@pszjlaw.com |

| | |
|---|---|
| | dgrassgreen@pszjlaw.com<br>inasatir@pszjlaw.com<br>joneill@pszjlaw.com |
| Coalition of Abused Scouts for Justice (Appellee) | **MONZACK MERSKY AND BROWDER, P.A.**<br>Rachel B. Mersky (No. 2049)<br>1201 North Orange Street, Suite 400<br>Wilmington, Delaware 19801<br>Telephone: (302) 656-8162<br>Fax: (302) 656-2769<br>Email: rmersky@monlaw.com<br><br>-and-<br><br>**BROWN RUDNICK LLP**<br>David J. Molton, Esq. (*pro hac vice*)<br>Eric R. Goodman, Esq. (*pro hac vice*)<br>Seven Times Square<br>New York, NY 10036<br>Telephone: (212) 209-4800<br>Fax: (212) 209-4801<br>Email: dmolton@brownrudnick.com<br>egoodman@brownrudnick.com<br><br>-and-<br><br>**BROWN RUDNICK LLP**<br>Sunni P. Beville, Esq. (*pro hac vice*)<br>Tristan G. Axelrod, Esq. (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 856-8200<br>Fax: (617) 856-8201<br>Email: sbeville@brownrudnick.com<br>taxelrod@brownrudnick.com |
| Future Claimants' Representative (Appellee) | **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br><br>Robert S. Brady (No. 2847)<br>Edwin J. Harron (No. 3396)<br>Kenneth J. Enos (No. 4544)<br>Ashley E. Jacobs (No. 5635)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Fax: (302) 571-1253<br>Email: rbrady@ycst.com |

13

| | eharron@ycst.com<br>kenos@ycst.com<br>ajacobs@ycst.com<br><br>-and-<br><br>**GILBERT LLP**<br>Kami E. Quinn (*pro hac vice*)<br>Rachel H. Jennings (*pro hac vice*)<br>Kyle Y. Dechant (*pro hac vice*)<br>December L. Huddleston (*pro hac vice*)<br>700 Pennsylvania Ave, SE<br>Suite 400<br>Washington, DC 20003<br>Telephone: (202) 772-2200<br>Fax: (202) 772-3333<br>Email: quinnk@gilbertlegal.com<br>jenningsr@gilbertlegal.com<br>dechantk@gilbertlegal.com<br>huddlestond@gilbertlegal.com |
|---|---|
| The Zalkin Law Firm, P.C. and Pfau Cochran Vertetis Amala PLLC (Appellees) | **KTBS LAW LLP**<br>Thomas E. Patterson (*pro hac vice*)<br>Daniel J. Bussel (*pro hac vice*)<br>Robert J. Pfister (*pro hac vice*)<br>Sasha M. Gurvitz (*pro hac vice*)<br>1801 Century Park East, Twenty-Sixth Floor<br>Los Angeles, California 90067<br>Telephone: (310) 407-4000<br>Fax: (310) 407-9090<br>Email: tpatterson@ktbslaw.com<br>dbussel@ktbslaw.com<br>rpfister@ktbslaw.com<br>sgurvitz@ktbslaw.com<br><br>-and-<br><br>**BIELLI & KLAUDER, LLC**<br>David M. Klauder, Esquire (No. 5769)<br>1204 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 803-4600<br>Fax: (302) 397-2557<br>Email: dklauder@bk-legal.com |
| Hartford Accident and Indemnity Company, First State Insurance | **BAYARD, P.A.**<br>Erin R. Fay (No. 5268)<br>Gregory J. Flasser (No. 6154) |

14

A00423

| | |
|---|---|
| Company, Twin City Fire Insurance Company, and Navigators Specialty Insurance Company (Appellees) | 600 North King Street, Suite 400<br>Wilmington, DE 19801<br>Telephone: (302) 655-5000<br>Fax: (302) 658-6395<br>Email: efay@bayardlaw.com<br>gflasser@bayardlaw.com<br><br>-and-<br><br>**RUGGERI PARKS WEINBERG LLP**<br>James P. Ruggeri (*pro hac vice*)<br>Joshua D. Weinberg (*pro hac vice*)<br>1875 K Street, N.W., Suite 600<br>Washington, D.C. 20006-1251<br>Telephone: (202) 469-7750<br>Fax: (202) 469-7751<br>jruggeri@ruggerilaw.com<br>jweinberg@ruggerilaw.com<br><br>-and-<br><br>**WILMER CUTLER PICKERING HALE AND DORR LLP**<br>Philip D. Anker (*pro hac vice*)<br>7 World Trade Center<br>250 Greenwich Street<br>New York, N.Y. 10007<br>Telephone: (212) 230-8890<br>Fax: (212) 230-8888<br>philip.anker@wilmerhale.com<br><br>Joel Millar (*pro hac vice*)<br>1875 Pennsylvania Avenue N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 663-6000<br>Fax: (202) 663-6363<br>joel.millar@wilmerhale.com |
| Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>800 N. West Street<br>Third Floor Wilmington, Delaware 19801<br>Telephone: 302 999 1540<br>Fax: 302 762 1688<br>stamoulis@swdelaw.com<br><br>-and- |

| | |
|---|---|
| (Appellees) | **O'MELVENY & MYERS LLP**<br>Tancred Schiavoni (*pro hac vice*)<br>Times Square Tower<br>7 Times Square<br>New York, New York 10036-6537<br>Telephone: (212) 326-2000<br>Fax: (212) 326-2061<br>tschiavoni@omm.com<br><br>**O'MELVENY & MYERS LLP**<br>Stephen Warren (*pro hac vice*)<br>400 South Hope Street<br>Los Angeles, California 90071<br>Telephone: (213) 430-6000<br>Fax: (213) 430-6407<br>swarren@omm.com<br><br>**O'MELVENY & MYERS LLP**<br>Jonathan D. Hacker (*pro hac vice*)<br>1625 Eye Street, N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 383-5300<br>jhacker@omm.com |
| Federal Insurance Company and Westchester Fire Insurance Company (Appellees) | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>8000 N. West Street, Third Floor<br>Wilmington, Delaware 19801<br>Telephone: (302) 999-1540<br>stamoulis@swdelaw.com<br><br>-and-<br><br>**SIMPSON THATCHER & BARTLETT LLP**<br>David Elbaum (*pro hac vice*)<br>425 Lexington Avenue<br>New York, New York 10017<br>Telephone: (212) 455-2000<br>david.elbaum@stblaw.com |
| American Zurich Insurance Company, American Guarantee Insurance Company, and Steadfast Insurance Company | **TYBOUT, REDFEARN & PELL**<br>Robert D. Cecil, Jr. (No. 5317)<br>501 Carr Road, Suite 300<br>Wilmington, Delaware 19899<br>Telephone: (302) 658-6901<br>Email: rcecil@trplaw.com |

| | |
|---|---|
| (Appellees) | -and-<br><br>**CROWELL & MORING LLP**<br>Mark D. Plevin (*pro hac vice*)<br>Kevin D. Cacabelos (*pro hac vice*)<br>Three Embarcadero Center, 26th Floor<br>San Francisco, California 94111<br>Telephone: (415) 986-2800<br>Email: mplevin@crowell.com<br>kcacabelos@crowell.com<br><br>Tacie H. Yoon (*pro hac vice*)<br>Rachel A. Jankowski (*pro hac vice*)<br>1001 Pennsylvania Ave., N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 624-2500<br>Email: tyoon@crowell.com<br>rjankowski@crowell.com |
| Clarendon National Insurance Company, as successor in interest by merger to Clarendon America Insurance Company; River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited, on its own behalf and in turn as successor to St. Katherine Insurance Company Limited); and Zurich American Insurance Company, as successor to Maryland Casualty Company, Zurich Insurance Company, and Maryland General Insurance Company (Appellees) | **BALLARD SPAHR LLP**<br>Matthew G. Summers (No. 5533)<br>Chantelle D. McClamb (No. 5978)<br>919 N. Market Street, 11th Floor<br>Wilmington, Delaware 19801-3034<br>Telephone: (302) 252-4428<br>Fax: (302) 252-4466<br>Email: summersm@ballardspahr.com<br>mcclamb@ballardspahr.com<br><br>-and-<br><br>**STEPTOE & JOHNSON LLP**<br>Harry Lee (*pro hac vice*)<br>John O'Connor (*pro hac vice*)<br>1330 Connecticut Avenue NW<br>Washington, DC 20036<br>Telephone: (202) 429-8078<br>Fax: (202) 429-3902<br>Email: hlee@steptoe.com<br>joconnor@steptoe.com |
| Ad Hoc Committee of Local Councils of the | **DLA PIPER, LLP (US)**<br>R. Craig Martin (No. 5032) |

| | |
|---|---|
| Boy Scouts of America (Appellee) | 1201 North Market Street, Suite 2100<br>Wilmington, Delaware 19801-1147<br>Telephone: (302) 468-5655<br>Email: craig.martin@dlapiper.com<br><br>-and-<br><br>**WACHTELL, LIPTON, ROSEN & KATZ**<br>Richard G. Mason (*pro hac vice*)<br>Douglas K. Mayer (*pro hac vice*)<br>Joseph C. Celentino (*pro hac vice*)<br>Mitchell S. Levy (*pro hac vice*)<br>51 West 52nd Street<br>New York, New York 10019<br>Telephone: (212) 403-1000<br>Email: RGMason@wlrk.com<br>DKMayer@wlrk.com<br>JCCelentino@wlrk.com<br>MSLevy@wlrk.com |

Dated: April 10, 2023
Wilmington, Delaware

By:    */s/ Brian A. Sullivan*
**WERB & SULLIVAN**
Brian A. Sullivan
LEGAL ARTS BUILDING
1225 N. King Street
Suite 600
Wilmington, Delaware  19801
Telephone: (302)  652-1100
Facsimile: (302)  652-1111
Email: bsullivan@werbsullivan.com

-and-

**GIEGER LABORDE & LAPEROUOSE, LLC**
John E.W. Baay II (*Pro Hac Vice*)
701 Poydras Street
Suite 4800
New Orleans, LA 70139
Tel.: 504-561-0400
Fax: 504-561-1011
Email: jbaay@glllaw.com

-and-

**KIERNAN TREBACH LLP**

18

William H. White Jr (*Pro Hac Vice*)
1233 20th Street, NW
8th Floor
Washington, DC 20036
Tel.: 202-712-7000
Fax: 202-712-7100
Email: wwhite@kiernantrebach.com

*Attorneys for Gemini Insurance Company*

19

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Bankruptcy Case No. 20-10343-LSS |
| Debtors. | (Jointly Administered) |
| NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA, *et al.*, | Case No. 22-cv-01237-RGA[1] |
| Appellants, | |
| v. | |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | |
| Appellees. | |

**CERTIFICATE OF SERVICE**

I, Brian A. Sullivan, hereby certify that on April 10, 2023, I caused a copy of the forgoing *NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT*, to be served on all registered users of the Court's Case Management/Electronic Case File ("CM/ECF") in this case via CM/ECF.

---

[1] Appellant's bankruptcy appeal originally had the following caption and case number: *Gemini Insurance Company v. Boy Scouts of America and Delaware BSA, LLC*, No. 22-cv-01246-RGA. That action was consolidated with the above-captioned action on October 17, 2022 and the Court directed that "[a]ll further filings with this Court will be docketed under the Master Case Number." *See* Order Granting Motion on Stipulation Regarding Appeals From Order Confirming Plan of Reorganization of Boy Scouts of America and Delaware BSA, LLC (D.I. 22).

Dated:  April 10, 2023                    WERB & SULLIVAN

                                          */s/ Brian A. Sullivan*
                                          Brian A. Sullivan (No. 2098)
                                          1225 N. King Street, Suite 600
                                          Wilmington, DE 19801
                                          Telephone: (302) 652-1100
                                          Facsimile: (302) 652-1111
                                          Email:  bsullivan@werbsullivan.com

                                          *Counsel to Appellant Gemini Insurance*
                                          *Company*

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>Debtors. | Chapter 11<br><br>Bankruptcy Case<br>No. 20-10343-LSS<br><br>(Jointly Administered) |
| NATIONAL UNION FIRE INSURANCE CO.<br>OF PITTSBURGH, PA, *et al.*,<br><br>Appellants,<br><br>v.<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>Appellees. | Case No. 22-cv-01237-RGA |

**NOTICE OF APPEAL TO THE UNITED STATES**
**COURT OF APPEALS FOR THE THIRD CIRCUIT**

NOTICE IS HEREBY GIVEN that Appellant General Star Indemnity Company appeals to the United States Court of Appeals for the Third Circuit from the final Order and accompanying Opinion of the United States District Court for the District of Delaware (Hon. Richard G. Andrews), entered  March 28, 2023 (D.I. 150, 151), among other things affirming the *Supplemental Findings of Fact and Conclusions of Law and Order Confirming the Third Modified Fifth Amended Chapter 11 Plan of Reorganization (with Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC* (Bankruptcy D.I. 10316) and accompanying Opinion (Bankruptcy D.I. 10136) of the United States Bankruptcy Court for the District of Delaware (Hon. Laurie S. Silverstein), and all other orders, decisions, and opinions subsumed therein.

The parties to the order appealed from and the names, addresses, and telephone numbers

of their respective attorneys are as follows:

| | |
|---|---|
| National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, and The Insurance Company of the State of Pennsylvania (the "AIG Companies") (Appellants) | **FINEMAN KREKSTEIN & HARRIS PC**<br>Deirdre M. Richards<br>1300 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 538-8331<br>Email: drichards@finemanlawfirm.com<br><br>-and-<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br>Michael A. Rosenthal (*pro hac vice*)<br>Mitchell A. Karlan (*pro hac vice*)<br>James Hallowell (*pro hac vice*)<br>Keith R. Martorana (*pro hac vice*)<br>Seth M. Rokosky (*pro hac vice*)<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 351-4000<br>Email: mrosenthal@gibsondunn.com<br>mkarlan@gibsondunn.com<br>jhallowell@gibsondunn.com<br>kmartorana@gibsondunn.com<br>srokosky@gibsondunn.com<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br>Theodore J. Boutrous Jr. (*pro hac vice*)<br>Richard J. Doren (*pro hac vice*)<br>Blaine H. Evanson (*pro hac vice*)<br>333 South Grand Avenue<br>Los Angeles, California 90071<br>Telephone: (213) 229-7038<br>Email: rdoren@gibsondunn.com<br>bevanson@gibsondunn.com<br>tboutrous@gibsondunn.com<br><br>**FORAN GLENNON PALANDECH PONZI & RUDLOFF P.C.**<br>Susan N.K. Gummow<br>222 N. LaSalle St., Suite 1400<br>Chicago, Illinois 60601<br>Telephone: (312) 863-5000<br>Email: sgummow@fgppr.com |
| Allianz Global Risks US | **TROUTMAN PEPPER HAMILTON SANDERS LLP** |

2

A00432

| | |
|---|---|
| Insurance Company (Appellant) | David M. Fournier (DE Bar No. 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Hercules Plaza<br>1313 Market Street<br>Suite 5100<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: 404.885.3000<br>david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**PARKER, HUDSON, RAINER & DOBBS LLP**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA  30308<br>Telephone: 404.420.4313<br>Facsimile: 404.522.8409<br>hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>-and-<br><br>**McDERMOTT WILL & EMERY LLP**<br>Margaret H. Warner (*pro hac vice*)<br>Ryan S. Smethurst (*pro hac vice*)<br>Alex M. Spisak (*pro hac vice*)<br>The McDermott Building<br>500 North Capitol Street, NW<br>Washington, DC 20001-1531<br>Telephone: 202.756.8228<br>Facsimile: 202.756.8087<br>mwarner@mwe.com<br>rsmethurst@mwe.com<br>aspisak@mwe.com |
| National Surety Corporation and Interstate Fire & Casualty Company (Appellants) | **TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>David M. Fournier (DE Bar No. 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Hercules Plaza, Suite 5100<br>1313 Market Street<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: 302.777.6500 |

3

|  | Facsimile: 302.421.8390<br>david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**PARKER, HUDSON, RAINER & DOBBS LLP**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA  30308<br>Telephone: 404.420.4313<br>Facsimile: 404.522.8409<br>hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>-and-<br><br>**BRADLEY RILEY JACOBS PC**<br>Todd C. Jacobs (*pro hac vice*)<br>John E. Bucheit (*pro hac vice*)<br>Paul J. Esker (*pro hac vice*)<br>500 West Madison Street<br>Suite 1000<br>Chicago, IL 60661<br>Telephone: 312.281.0295<br>tjacobs@bradleyriley.com<br>jbucheit@bradleyriley.com<br>pesker@bradleyriley.com |
| Arch Insurance Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (No. 2898)<br>1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400<br>kmiller@skjlaw.com<br><br>**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**<br>Ronald P. Schiller (*pro hac vice*)<br>Matthew A. Hamermesh (*pro hac vice*)<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>T: (215) 568-6200<br>F: (215) 568-0300 |

4

| | |
|---|---|
| | E: rschiller@hangley.com<br>mhamermesh@hangley.com |
| Argonaut Insurance Company and Colony Insurance Company (Appellants) | **POST & SCHELL, P.C.**<br>Paul Logan (No. 3339)<br>300 Delaware Avenue, Suite 1380<br>Wilmington, DE 19801<br>Telephone: (302) 251-8856<br>Email: plogan@postschell.com<br><br>**POST & SCHELL, P.C.**<br>John C. Sullivan (*pro hac vice*)<br>Kathleen K. Kerns (*pro hac vice*)<br>Four Penn Center – 13th Floor<br>1600 John F. Kennedy Boulevard<br>Philadelphia, PA 19103<br>Telephone: (215) 587-1000<br>jsullivan@postschell.com<br>kkerns@postschell.com<br><br>-and-<br><br>**IFRAH PLLC**<br>George R. Calhoun (*pro hac vice*)<br>1717 Pennsylvania Avenue, N.W. Suite 650<br>Washington, DC 20006<br>Telephone: (202) 840-8758<br>george@ifrahlaw.com |
| Arrowood Indemnity Company (Appellant) | **JOYCE, LLC**<br>Michael J. Joyce (No. 4563)<br>1225 King Street, Suite 800<br>Wilmington, DE 19801<br>Telephone: (302) 388-1944<br>Email: mjoyce@mjlawoffices.com<br><br>-and-<br><br>**COUGHLIN MIDLIGE & GARLAND, LLP**<br>Kevin Coughlin (*pro hac vice*)<br>Lorraine Armenti (*pro hac vice*)<br>Michael Hrinewski (*pro hac vice*)<br>350 Mount Kemble Avenue<br>PO Box 1917<br>Morristown, NJ 07962<br>Telephone: (973) 267-0058<br>Facsimile: 973-267-6442<br>kcoughlin@cmg.law |

5

A00435

| | |
|---|---|
| | larmenti@cmg.law<br>mhrinewski@cmg.law<br><br>-and-<br><br>**CARRUTHERS & ROTH, P.A.**<br>Britton C. Lewis<br>John M. Flynn<br>235 N. Edgeworth Street<br>P.O. Box 540<br>Greensboro, NC  27401<br>Telephone:  (336) 478-1146<br>Facsimile:  (336) 478-1145<br>jmf@crlaw.com<br>bcl@crlaw.com |
| Continental Insurance<br>Company and Columbia<br>Casualty Company<br>(Appellants) | **GOLDSTEIN & MCCLINTOCK LLLP**<br>Maria Aprile Sawczuk (DE #3320)<br>501 Silverside Road<br>Wilmington, DE 19809<br>302-444-6710<br>marias@goldmclaw.com<br><br>-and-<br><br>**LOEB & LOEB LLP**<br>Laura McNally (*pro hac vice*)<br>Emily Stone (*pro hac vice*)<br>321 N. Clark Street, Suite 2300<br>Chicago, IL 60654<br>312-464-3155<br>lmcnally@loeb.com<br>estone@loeb.com |
| Gemini Insurance<br>Company<br>(Appellant) | **WERB & SULLIVAN**<br>**LEGAL ARTS BUILDING**<br>Brian A. Sullivan (No. 2098)<br>1225 N. King Street<br>Suite 600<br>Wilmington, Delaware 19801<br>Telephone: (302) 652-1100<br>Cell: (302) 757-9932<br>Facsimile: (302) 652-1111<br>Email: bsullivan@werbsullivan.com<br><br>**GIEGER LABORDE & LAPEROUOSE, LLC**<br>John E.W. Baay II (*pro hac vice*)<br>701 Poydras Street |

6

A00436

| | |
|---|---|
| | Suite 4800<br>New Orleans, LA 70139<br>Tel.: 504-561-0400<br>Fax: 504-561-1011<br>Email: jbaay@glllaw.com<br><br>-and-<br><br>**KIERNAN TREBACH LLP**<br>William H. White Jr (*pro hac vice*)<br>1233 20th Street, NW<br>8th Floor<br>Washington, DC 20036<br>Tel.: 202-712-7000<br>Fax: 202-712-7100<br>Email: wwhite@kiernantrebach.com |
| General Star Indemnity Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (DE Bar No. 2898)<br>1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400<br>Email: kmiller@skjlaw.com<br><br>-and-<br><br>**WILEY REIN LLP**<br>Mary E. Borja (*pro hac vice*)<br>Gary P. Seligman (*pro hac vice*)<br>Ashley L. Criss (*pro hac vice*)<br>2050 M Street NW<br>Washington, DC 20036<br>Phone: (202) 719-7000<br>Email: mborja@wiley.law<br>gseligman@wiley.law<br>acriss@wiley.law |
| Great American Assurance Company, f/k/a Agricultural Insurance Company; Great American E&S Insurance Company, f/k/a Agricultural Excess and Surplus Insurance Company; and Great | **BODELL BOVÉ, LLC**<br>Bruce W. McCullough (No. 3112)<br>1225 N. King Street, Suite 1000<br>Wilmington, Delaware 19801-3250<br>Telephone: (302) 655-6749<br>bmccullough@bodellbove.com<br><br>-and-<br><br>**CLYDE & CO US LLP** |

7

| | |
|---|---|
| American E&S Insurance Company (Appellants) | Bruce D. Celebrezze (*pro hac vice*)<br>150 California Street \| 15th Floor<br>San Francisco, California 94111<br>Telephone: (415) 365-9800<br>Facsimile: (415) 365-9801<br>bruce.celebrezze@clydeco.us<br><br>**CLYDE & CO US LLP**<br>Konrad R. Krebs (*pro hac vice*)<br>340 Mt. Kemble Avenue \| Suite 300<br>Morristown, NJ 07960<br>Telephone: (973) 210-6700<br>Facsimile: (973) 210-6701<br>konrad.krebs@clydeco.us<br><br>-and-<br><br>**DAVID CHRISTIAN ATTORNEYS LLC**<br>David Christian (*pro hac vice*)<br>105 W. Madison St., Suite 1400<br>Chicago, Illinois 60602<br>Telephone: (312) 282-5282<br>dchristian@dca.law |
| Indian Harbor Insurance Company, on behalf of itself and as successor in interest to Catlin Specialty Insurance Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (No. 2898)<br>1000 West Street, Suite 1501<br>P.O. Box 410<br>Wilmington, DE  19899 [Courier 19801]<br>Telephone: (302) 652-8400<br>Facsimile: (302) 652-8405<br>kmiller@skjlaw.com<br><br>and<br><br>**MOUND COTTON WOLLAN & GREENGRASS LLP**<br>Lloyd A. Gura (*pro hac vice*)<br>Pamela J. Minetto (*pro hac vice*)<br>One New York Plaza 44th Floor<br>New York, NY 10004<br>Tel: (212) 804-4282<br>lgura@moundcotton.com<br>pminetto@moundcotton.com |
| Liberty Mutual Insurance Company, The Ohio Casualty Insurance | **SEITZ, VAN OGTROP & GREEN, P.A.**<br>R. Karl Hill (DE BAR No. 2747)<br>222 Delaware Avenue |

8

| | |
|---|---|
| Company, Liberty Insurance Underwriters, Inc. and Liberty Surplus Insurance Corporation (Appellants) | Suite 1500<br>Wilmington, DE 19801<br>Telephone: (302) 888-0600<br>khill@svglaw.com<br><br>-and-<br><br>**CHOATE, HALL & STEWART LLP**<br>Douglas R. Gooding (*pro hac vice*)<br>Jonathan D. Marshall (*pro hac vice*)<br>Two International Place<br>Boston, MA 02110<br>Telephone: (617) 248-5000<br>dgooding@choate.com<br>jmarshall@choate.com<br><br>-and-<br><br>**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC**<br>Kim V. Marrkand (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 542-6000<br>kvmarrkand@mintz.com |
| Munich Reinsurance America, Inc., formerly known as American Re-Insurance Company (Appellant) | **DILWORTH PAXSON LLP**<br>Thaddeus J. Weaver (DE Bar. No. 2790)<br>704 N. King Street, Suite 500<br>P.O. Box 1031<br>Wilmington, DE  19899-1031<br>(302) 571-8867 (telephone)<br>(302) 351-8735 (facsimile)<br>tweaver@dilworthlaw.com<br><br>-and-<br><br>**DILWORTH PAXSON LLP**<br>William E. McGrath, Jr. (*pro hac vice*)<br>2 Research Way, Suite 103<br>Princeton, NJ  08540<br>(609) 924-6000 (telephone)<br>(215) 893-8537 (facsimile)<br>wmcgrath@dilworthlaw.com |
| Traders and Pacific Insurance Company, Endurance American | **COZEN O'CONNOR**<br>Marla S. Benedek (No. 6638)<br>1201 N. Market Street, Suite 1001 |

9

A00439

| | |
|---|---|
| Specialty Insurance Company, and Endurance American Insurance Company (Appellants) | Wilmington, DE 19801<br>Telephone:  (302) 295-2024<br>Facsimile:  (302) 250-4498<br>mbenedek@cozen.com |
| Old Republic Insurance Company (Appellant) | **MORRIS JAMES LLP**<br>Stephen M. Miller (No. 2610)<br>Carl N. Kunz, III (No. 3201)<br>500 Delaware Avenue, Suite 1500<br>Wilmington, Delaware 19801<br>Telephone: (302) 888-6800<br>Facsimile:  (302) 571-1750<br>smiller@morrisjames.com<br>ckunz@morrisjames.com<br><br>-and-<br><br>**FOX SWIBEL LEVIN & CARROLL LLP**<br>Margaret M. Anderson (*pro hac vice*)<br>Ryan T. Schultz (*pro hac vice*)<br>Adam A. Hachikian (*pro hac vice*)<br>Kenneth M. Thomas (*pro hac vice*)<br>200 W. Madison Street, Suite 3000<br>Chicago, Illinois 60606<br>Telephone: (312) 224-1200<br>Facsimile:  (312) 224-1201<br>panderson@foxswibel.com<br>rschultz@foxswibel.com<br>ahachikian@foxswibel.com<br>kthomas@foxswibel.com |
| Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company), St. Paul Surplus Lines Insurance Company and Gulf Insurance Company (Appellants) | **REGER RIZZO & DARNALL LLP**<br>Louis J. Rizzo, Jr. (DE Bar No. 3374)<br>1521 Concord Pike Suite 305<br>Brandywine Plaza West<br>Wilmington DE  19803<br>Telephone: (302) 477-7100<br>Facsimile: (302) 652-3620<br>lrizzo@regerlaw.com |
| Lujan Claimants<br><br>(Appellants) | **LOIZIDES, P.A.**<br>Christopher D. Loizides (No. 3968)<br>1225 North King Street, Suite 800<br>Telephone: (302) 654-0248<br>Loizides@loizides.com<br><br>-and- |

10

A00440

| | |
|---|---|
| | **LUJAN & WOLFF LLP**<br>Delia Lujan Wolff<br>Suite 300, DNA Bldg.<br>238 Archbishop Flores St.<br>Hagatna, Guam 96910<br>Telephone: (671) 477-8064/5<br>dslwolff@lawguam.com |
| Dumas & Vaughn<br>Claimants<br>(Appellants) | **GELLERT SCALI BUSENKELL & BROWN LLC**<br>Charles J. Brown, III (No. 3368)<br>1201 N. Orange St., 3rd Floor<br>Wilmington, DE 19801<br>Telephone: (302) 425-5813<br>cbrown@gsbblaw.com<br><br>-and-<br><br>**DUMAS & VAUGHN, LLC**<br>Gilion C. Dumas<br>3835 NE Hancock Street, Suite GLB<br>Portland, OR 97212<br>Telephone: (503) 616-5007<br>gilion@dumasandvaughn.com |
| Boy Scouts of America,<br>Delaware BSA, LLC<br>(Debtors/Appellees and<br>Debtors in Possession) | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>dabbott@morrisnichols.com<br>aremming@morrisnichols.com<br>ptopper@morrisnichols.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Jessica C. Lauria (*pro hac vice*)<br>Glenn M. Kurtz (*pro hac vice*)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Email: jessica.lauria@whitecase.com<br>gkurtz@whitecase.com |

| | |
|---|---|
| | – and – <br><br> **WHITE & CASE LLP** <br> Michael C. Andolina <br> Matthew E. Linder <br> Laura E. Baccash <br> Blair M. Warner <br> 111 South Wacker Drive <br> Chicago, Illinois 60606 <br> Telephone: (312) 881-5400 <br> mandolina@whitecase.com <br> mlinder@whitecase.com <br> laura.baccash@whitecase.com <br> blair.warner@whitecase.com <br><br> – and – <br><br> **WHITE & CASE LLP** <br> Ronald K. Gorsich <br> Doah Kim <br> 555 South Flower Street, Suite 2700 <br> Los Angeles, CA 90071 <br> Telephone: (213) 620-7700 <br> rgorsich@whitecase.com <br> doah.kim@whitecase.com |
| Tort Claimants' Committee (Appellee) | **PACHULSKI STANG ZIEHL & JONES LLP** <br> Richard M. Pachulski (*pro hac vice*) <br> Alan J. Kornfeld (*pro hac vice*) <br> Debra I. Grassgreen (*pro hac vice*) <br> Iain A.W. Nasatir (*pro hac vice*) <br> James E. O'Neill (No. 4042) <br> 919 North Market Street, 17th Floor <br> P.O. Box 8705 <br> Wilmington, DE 19899-8705 (Courier 19801) <br> Telephone: (302) 652-4100 <br> Fax: (302) 652-4400 <br> Email: rpachulski@pszjlaw.com <br> akornfeld@pszjlaw.com <br> dgrassgreen@pszjlaw.com <br> inasatir@pszjlaw.com <br> joneill@pszjlaw.com |
| Coalition of Abused Scouts for Justice (Appellee) | **MONZACK MERSKY AND BROWDER, P.A.** <br> Rachel B. Mersky (No. 2049) <br> 1201 North Orange Street, Suite 400 <br> Wilmington, Delaware 19801 <br> Telephone: (302) 656-8162 |

12

| | |
|---|---|
| | Fax: (302) 656-2769<br>Email: rmersky@monlaw.com<br><br>–and–<br><br>**BROWN RUDNICK LLP**<br>David J. Molton, Esq. (*pro hac vice*)<br>Eric R. Goodman, Esq. (*pro hac vice*)<br>Seven Times Square<br>New York, NY 10036<br>Telephone: (212) 209-4800<br>Fax: (212) 209-4801<br>Email: dmolton@brownrudnick.com<br>egoodman@brownrudnick.com<br><br>–and–<br><br>**BROWN RUDNICK LLP**<br>Sunni P. Beville, Esq. (*pro hac vice*)<br>Tristan G. Axelrod, Esq. (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 856-8200<br>Fax: (617) 856-8201<br>Email: sbeville@brownrudnick.com<br>taxelrod@brownrudnick.com |
| Future Claimants'<br>Representative<br>(Appellee) | **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br><br>Robert S. Brady (No. 2847)<br>Edwin J. Harron (No. 3396)<br>Kenneth J. Enos (No. 4544)<br>Ashley E. Jacobs (No. 5635)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Fax: (302) 571-1253<br>Email: rbrady@ycst.com<br>eharron@ycst.com<br>kenos@ycst.com<br>ajacobs@ycst.com<br><br>-and-<br><br>**GILBERT LLP**<br>Kami E. Quinn (*pro hac vice*) |

| | |
|---|---|
| | Rachel H. Jennings (*pro hac vice*)<br>Kyle Y. Dechant (*pro hac vice*)<br>December L. Huddleston (*pro hac vice*)<br>700 Pennsylvania Ave, SE<br>Suite 400<br>Washington, DC 20003<br>Telephone: (202) 772-2200<br>Fax: (202) 772-3333<br>Email: quinnk@gilbertlegal.com<br>jenningsr@gilbertlegal.com<br>dechantk@gilbertlegal.com<br>huddlestond@gilbertlegal.com |
| The Zalkin Law Firm, P.C. and Pfau Cochran Vertetis Amala PLLC (Appellees) | **KTBS LAW LLP**<br>Thomas E. Patterson (*pro hac vice*)<br>Daniel J. Bussel (*pro hac vice*)<br>Robert J. Pfister (*pro hac vice*)<br>Sasha M. Gurvitz (*pro hac vice*)<br>1801 Century Park East, Twenty-Sixth Floor<br>Los Angeles, California 90067<br>Telephone: (310) 407-4000<br>Fax: (310) 407-9090<br>Email: tpatterson@ktbslaw.com<br>dbussel@ktbslaw.com<br>rpfister@ktbslaw.com<br>sgurvitz@ktbslaw.com<br><br>-and-<br><br>**BIELLI & KLAUDER, LLC**<br>David M. Klauder, Esquire (No. 5769)<br>1204 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 803-4600<br>Fax: (302) 397-2557<br>Email: dklauder@bk-legal.com |
| Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, and Navigators Specialty Insurance Company (Appellees) | **BAYARD, P.A.**<br>Erin R. Fay (No. 5268)<br>Gregory J. Flasser (No. 6154)<br>600 North King Street, Suite 400<br>Wilmington, DE 19801<br>Telephone: (302) 655-5000<br>Fax: (302) 658-6395<br>Email: efay@bayardlaw.com<br>gflasser@bayardlaw.com<br><br>-and- |

14

| | **RUGGERI PARKS WEINBERG LLP**<br>James P. Ruggeri (*pro hac vice*)<br>Joshua D. Weinberg (*pro hac vice*)<br>1875 K Street, N.W., Suite 600<br>Washington, D.C. 20006-1251<br>Telephone: (202) 469-7750<br>Fax: (202) 469-7751<br><br>-and-<br><br>**WILMER CUTLER PICKERING HALE AND DORR LLP**<br>Philip D. Anker (*pro hac vice*)<br>7 World Trade Center<br>250 Greenwich Street<br>New York, N.Y. 10007<br>Telephone: (212) 230-8890<br>Fax: (212) 230-8888<br><br>Joel Millar (*pro hac vice*)<br>1875 Pennsylvania Avenue N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 663-6000<br>Fax: (202) 663-6363 |
|---|---|
| Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America<br>(Appellees) | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>800 N. West Street<br>Third Floor Wilmington, Delaware 19801<br>Telephone: 302 999 1540<br>Fax: 302 762 1688<br><br>-and-<br><br>**O'MELVENY & MYERS LLP**<br>Tancred Schiavoni (*pro hac vice*)<br>Times Square Tower<br>7 Times Square<br>New York, New York 10036-6537<br>Telephone: (212) 326-2000<br>Fax: (212) 326-2061<br><br>**O'MELVENY & MYERS LLP**<br>Stephen Warren (*pro hac vice*)<br>400 South Hope Street<br>Los Angeles, California 90071 |

15

| | |
|---|---|
| | Telephone: (213) 430-6000<br>Fax: (213) 430-6407<br><br>**O'MELVENY & MYERS LLP**<br>Jonathan D. Hacker (*pro hac vice*)<br>1625 Eye Street, N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 383-5300 |
| Federal Insurance<br>Company and<br>Westchester Fire<br>Insurance Company<br>(Appellees) | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>8000 N. West Street, Third Floor<br>Wilmington, Delaware 19801<br>Telephone: (302) 999-1540<br><br>-and-<br><br>**SIMPSON THATCHER & BARTLETT LLP**<br>David Elbaum (*pro hac vice*)<br>425 Lexington Avenue<br>New York, New York 10017<br>Telephone: (212) 455-2000 |
| American Zurich<br>Insurance Company,<br>American Guarantee<br>Insurance Company, and<br>Steadfast Insurance<br>Company<br>(Appellees) | **TYBOUT, REDFEARN & PELL**<br>Robert D. Cecil, Jr. (No. 5317)<br>501 Carr Road, Suite 300<br>Wilmington, Delaware 19899<br>Telephone: (302) 658-6901<br>Email: rcecil@trplaw.com<br><br>-and-<br><br>**CROWELL & MORING LLP**<br>Mark D. Plevin (*pro hac vice*)<br>Kevin D. Cacabelos (*pro hac vice*)<br>Three Embarcadero Center, 26th Floor<br>San Francisco, California 94111<br>Telephone: (415) 986-2800<br>Email: mplevin@crowell.com<br>kcacabelos@crowell.com<br><br>Tacie H. Yoon (*pro hac vice*)<br>Rachel A. Jankowski (*pro hac vice*)<br>1001 Pennsylvania Ave., N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 624-2500<br>Email: tyoon@crowell.com<br>rjankowski@crowell.com |

| | |
|---|---|
| Clarendon National Insurance Company, as successor in interest by merger to Clarendon America Insurance Company; River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited, on its own behalf and in turn as successor to St. Katherine Insurance Company Limited); and Zurich American Insurance Company, as successor to Maryland Casualty Company, Zurich Insurance Company, and Maryland General Insurance Company (Appellees) | **BALLARD SPAHR LLP**<br>Matthew G. Summers (No. 5533)<br>Chantelle D. McClamb (No. 5978)<br>919 N. Market Street, 11th Floor<br>Wilmington, Delaware 19801-3034<br>Telephone: (302) 252-4428<br>Fax: (302) 252-4466<br>Email: summersm@ballardspahr.com<br>mcclamb@ballardspahr.com<br><br>-and-<br><br>**STEPTOE & JOHNSON LLP**<br>Harry Lee (*pro hac vice*)<br>John O'Connor (*pro hac vice*)<br>1330 Connecticut Avenue NW<br>Washington, DC 20036<br>Telephone: (202) 429-8078<br>Fax: (202) 429-3902<br>Email: hlee@steptoe.com<br>joconnor@steptoe.com |
| Ad Hoc Committee of Local Councils of the Boy Scouts of America (Appellee) | **DLA PIPER, LLP (US)**<br>R. Craig Martin (No. 5032)<br>1201 North Market Street, Suite 2100<br>Wilmington, Delaware 19801-1147<br>Telephone: (302) 468-5655<br>Email: craig.martin@dlapiper.com<br><br>-and-<br><br>**WACHTELL, LIPTON, ROSEN & KATZ**<br>Richard G. Mason (*pro hac vice*)<br>Douglas K. Mayer (*pro hac vice*)<br>Joseph C. Celentino (*pro hac vice*)<br>Mitchell S. Levy (*pro hac vice*)<br>51 West 52nd Street<br>New York, New York 10019<br>Telephone: (212) 403-1000<br>Email: RGMason@wlrk.com<br>DKMayer@wlrk.com<br>JCCelentino@wlrk.com |

17

A00447

| MSLevy@wlrk.com |
| --- |

Dated: April 10, 2023

SMITH, KATZENSTEIN & JENKINS LLP

*/s/ Kathleen M. Miller*
Kathleen M. Miller (No. 2898)
1000 West Street, Suite 501
P.O. Box 410
Wilmington, DE 19899
Telephone: (302) 652-8400
Email: kmiller@skjlaw.com

-and-

WILEY REIN LLP
Mary E. Borja (admitted *pro hac vice*)
Gary P. Seligman (admitted *pro hac vice*)
Ashley L. Criss (admitted *pro hac vice*)
2050 M Street NW
Washington, DC 20036
Phone: (202) 719-7000
Email:  mborja@wiley.law
gseligman@wiley.law
acriss@wiley.law

*Attorneys for General Star Indemnity Company*

18

**<u>CERTIFICATE OF SERVICE</u>**

I, Kathleen M. Miller, do hereby certify that, on this 10th day April 2023, a true and correct copy of the foregoing *NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT* was served via ECF on all parties who have signed up for electronic filing in this case.

_/s/ Kathleen M. Miller_____
Kathleen M. Miller (DE No. 2898)

**EXHIBIT A**

George A. Davis
Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
George.davis@lw.com

Phillip C. Dublin
Jason Rubin
Akin Gump Strauss Hauer & Feld LLP
1 Bryant Park
New York, New York 10036
pdublin@akingump.com
jrubin@akingump.com

Ted A. Dillman
Helena G. Tseregounis
Latham & Watkins LLP
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Ted.dillman@lw.com
Helena.tseregounis@lw.com

Marty L. Brimmage, Jr.
Lacy M. Lawrence
Akin Gump Strauss Hauer & Feld LLP
2300 N. Field Street, Suite 1800
Dallas, Texas 75201
mbrimmage@akingump.com
llawrence@akingump.com

Michael R. Nestor
Kara Hammond Coyle
Betsy L. Feldman
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
mnestor@ycst.com
kcoyle@ycst.com
bfeldman@ycst.com

Bill Bowden
Michael DeBaeke
Ashby & Geddes
500 Delaware Avenue
P.O. Box 1150
Wilmington, Delaware 19899
wbowden@ashbygeddes.com
mdebaeke@ashbygeddes.com

Timothy J. Fox, Jr.
Office of the United States Trustee for the
District of Delaware
844 N. King Street
Wilmington, Delaware 19801
Timothy.fox@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br><div align="center">Debtors.</div> | Chapter 11<br><br>Bankruptcy Case<br>No. 20-10343-LSS<br><br>(Jointly Administered) |
| NATIONAL UNION FIRE INSURANCE CO.<br>OF PITTSBURGH, PA, *et al.*,<br><br><div align="center">Appellants,</div><br><div align="center">v.</div><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br><div align="center">Appellees.</div> | Case No. 22-cv-01237-RGA |

## NOTICE OF APPEAL TO THE UNITED STATES
## COURT OF APPEALS FOR THE THIRD CIRCUIT

NOTICE IS HEREBY GIVEN that appellant Arrowood Indemnity Company appeals to the United States Court of Appeals for the Third Circuit from the final Order and accompanying Opinion of the United States District Court for the District of Delaware (Hon. Richard G. Andrews), entered  March 28, 2023 (D.I. 150, 151), among other things affirming the *Supplemental Findings of Fact and Conclusions of Law and Order Confirming the Third Modified Fifth Amended Chapter 11 Plan of Reorganization (with Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC* (Bankruptcy D.I. 10316) and accompanying Opinion (Bankruptcy D.I. 10136) of the United States Bankruptcy Court for the District of Delaware (Hon. Laurie S. Silverstein), and all other orders, decisions, and opinions subsumed therein.

The parties to the order appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

| National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, and The Insurance Company of the State of Pennsylvania (the "AIG Companies") (Appellants) | **FINEMAN KREKSTEIN & HARRIS PC**<br>Deirdre M. Richards<br>1300 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 538-8331<br>Email: drichards@finemanlawfirm.com<br><br>-and-<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br>Michael A. Rosenthal (*pro hac vice*)<br>Mitchell A. Karlan (*pro hac vice*)<br>James Hallowell (*pro hac vice*)<br>Keith R. Martorana (*pro hac vice*)<br>Seth M. Rokosky (*pro hac vice*)<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 351-4000<br>Email: mrosenthal@gibsondunn.com<br>mkarlan@gibsondunn.com<br>jhallowell@gibsondunn.com<br>kmartorana@gibsondunn.com<br>srokosky@gibsondunn.com<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br>Theodore J. Boutrous Jr. (*pro hac vice*)<br>Richard J. Doren (*pro hac vice*)<br>Blaine H. Evanson (*pro hac vice*)<br>333 South Grand Avenue<br>Los Angeles, California 90071<br>Telephone: (213) 229-7038<br>Email: rdoren@gibsondunn.com<br>bevanson@gibsondunn.com<br>tboutrous@gibsondunn.com<br><br>**FORAN GLENNON PALANDECH PONZI & RUDLOFF P.C.**<br>Susan N.K. Gummow<br>222 N. LaSalle St., Suite 1400<br>Chicago, Illinois 60601<br>Telephone: (312) 863-5000<br>Email: sgummow@fgppr.com |
| Allianz Global Risks US | **TROUTMAN PEPPER HAMILTON SANDERS LLP** |

| | |
|---|---|
| Insurance Company (Appellant) | David M. Fournier (DE Bar No. 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Hercules Plaza<br>1313 Market Street<br>Suite 5100<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: 404.885.3000<br>david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**PARKER, HUDSON, RAINER & DOBBS LLP**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA 30308<br>Telephone: 404.420.4313<br>Facsimile: 404.522.8409<br>hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>-and-<br><br>**McDERMOTT WILL & EMERY LLP**<br>Margaret H. Warner (*pro hac vice*)<br>Ryan S. Smethurst (*pro hac vice*)<br>Alex M. Spisak (*pro hac vice*)<br>The McDermott Building<br>500 North Capitol Street, NW<br>Washington, DC 20001-1531<br>Telephone: 202.756.8228<br>Facsimile: 202.756.8087<br>mwarner@mwe.com<br>rsmethurst@mwe.com<br>aspisak@mwe.com |
| National Surety Corporation and Interstate Fire & Casualty Company (Appellants) | **TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>David M. Fournier (DE Bar No. 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Hercules Plaza, Suite 5100<br>1313 Market Street<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: 302.777.6500 |

3

A00454

|  | Facsimile: 302.421.8390<br>david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**PARKER, HUDSON, RAINER & DOBBS LLP**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA  30308<br>Telephone: 404.420.4313<br>Facsimile: 404.522.8409<br>hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>-and-<br><br>**BRADLEY RILEY JACOBS PC**<br>Todd C. Jacobs (*pro hac vice*)<br>John E. Bucheit (*pro hac vice*)<br>Paul J. Esker (*pro hac vice*)<br>500 West Madison Street<br>Suite 1000<br>Chicago, IL 60661<br>Telephone: 312.281.0295<br>tjacobs@bradleyriley.com<br>jbucheit@bradleyriley.com<br>pesker@bradleyriley.com |
| Arch Insurance Company<br>(Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (No. 2898)<br>1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400<br>kmiller@skjlaw.com<br><br>**HANGLEY ARONCHICK SEGAL**<br>**PUDLIN & SCHILLER**<br>Ronald P. Schiller (*pro hac vice*)<br>Matthew A. Hamermesh (*pro hac vice*)<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>T: (215) 568-6200<br>F: (215) 568-0300 |

4

| | |
|---|---|
| | E: rschiller@hangley.com <br> mhamermesh@hangley.com |
| Argonaut Insurance Company and Colony Insurance Company (Appellants) | **POST & SCHELL, P.C.** <br> Paul Logan (No. 3339) <br> 300 Delaware Avenue, Suite 1380 <br> Wilmington, DE 19801 <br> Telephone: (302) 251-8856 <br> Email: plogan@postschell.com <br><br> **POST & SCHELL, P.C.** <br> John C. Sullivan (*pro hac vice*) <br> Kathleen K. Kerns (*pro hac vice*) <br> Four Penn Center – 13th Floor <br> 1600 John F. Kennedy Boulevard <br> Philadelphia, PA 19103 <br> Telephone: (215) 587-1000 <br> jsullivan@postschell.com <br> kkerns@postschell.com <br><br> -and- <br><br> **IFRAH PLLC** <br> George R. Calhoun (*pro hac vice*) <br> 1717 Pennsylvania Avenue, N.W. Suite 650 <br> Washington, DC 20006 <br> Telephone: (202) 840-8758 <br> george@ifrahlaw.com |
| Arrowood Indemnity Company (Appellant) | **JOYCE, LLC** <br> Michael J. Joyce (No. 4563) <br> 1225 King Street, Suite 800 <br> Wilmington, DE 19801 <br> Telephone (302) 388-1944 <br> Email: mjoyce@mjlawoffices.com <br><br> -and- <br><br> **COUGHLIN MIDLIGE & GARLAND, LLP** <br> Kevin Coughlin (*pro hac vice*) <br> Lorraine Armenti (*pro hac vice*) <br> Michael Hrinewski (*pro hac vice*) <br> 350 Mount Kemble Avenue <br> PO Box 1917 <br> Morristown, NJ 07962 <br> Telephone: (973) 267-0058 <br> Facsimile: 973-267-6442 <br> kcoughlin@cmg.law |

5

A00456

| | |
|---|---|
| | larmenti@cmg.law<br>mhrinewski@cmg.law<br><br>-and-<br><br>**CARRUTHERS & ROTH, P.A.**<br>Britton C. Lewis<br>John M. Flynn<br>235 N. Edgeworth Street<br>P.O. Box 540<br>Greensboro, NC  27401<br>Telephone:  (336) 478-1146<br>Facsimile:  (336) 478-1145<br>jmf@crlaw.com<br>bcl@crlaw.com |
| Continental Insurance Company and Columbia Casualty Company (Appellants) | **GOLDSTEIN & MCCLINTOCK LLLP**<br>Maria Aprile Sawczuk (DE #3320)<br>501 Silverside Road<br>Wilmington, DE 19809<br>302-444-6710<br>marias@goldmclaw.com<br><br>-and-<br><br>**LOEB & LOEB LLP**<br>Laura McNally (*pro hac vice*)<br>Emily Stone (*pro hac vice*)<br>321 N. Clark Street, Suite 2300<br>Chicago, IL 60654<br>312-464-3155<br>lmcnally@loeb.com<br>estone@loeb.com |
| Gemini Insurance Company (Appellant) | **WERB & SULLIVAN**<br>**LEGAL ARTS BUILDING**<br>Brian A. Sullivan (No. 2098)<br>1225 N. King Street<br>Suite 600<br>Wilmington, Delaware 19801<br>Telephone: (302) 652-1100<br>Cell: (302) 757-9932<br>Facsimile: (302) 652-1111<br>Email: bsullivan@werbsullivan.com<br><br>**GIEGER LABORDE & LAPEROUOSE, LLC**<br>John E.W. Baay II (*pro hac vice*)<br>701 Poydras Street |

6

| | |
|---|---|
| | Suite 4800<br>New Orleans, LA 70139<br>Tel.: 504-561-0400<br>Fax: 504-561-1011<br>Email: jbaay@glllaw.com<br><br>-and-<br><br>**KIERNAN TREBACH LLP**<br>William H. White Jr (*pro hac vice*)<br>1233 20th Street, NW<br>8th Floor<br>Washington, DC 20036<br>Tel.: 202-712-7000<br>Fax: 202-712-7100<br>Email: wwhite@kiernantrebach.com |
| General Star Indemnity Company<br>(Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (DE Bar No. 2898)<br>1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400<br>Email: kmiller@skjlaw.com<br><br>-and-<br><br>**WILEY REIN LLP**<br>Mary E. Borja (*pro hac vice*)<br>Gary P. Seligman (*pro hac vice*)<br>Ashley L. Criss (*pro hac vice*)<br>2050 M Street NW<br>Washington, DC 20036<br>Phone: (202) 719-7000<br>Email: mborja@wiley.law<br>gseligman@wiley.law<br>acriss@wiley.law |
| Great American Assurance Company, f/k/a Agricultural Insurance Company; Great American E&S Insurance Company, f/k/a Agricultural Excess and Surplus Insurance Company; and Great | **BODELL BOVÉ, LLC**<br>Bruce W. McCullough (No. 3112)<br>1225 N. King Street, Suite 1000<br>Wilmington, Delaware 19801-3250<br>Telephone: (302) 655-6749<br>bmccullough@bodellbove.com<br><br>-and-<br><br>**CLYDE & CO US LLP** |

7

A00458

| American E&S Insurance Company (Appellants) | Bruce D. Celebrezze (*pro hac vice*)<br>150 California Street \| 15th Floor<br>San Francisco, California 94111<br>Telephone: (415) 365-9800<br>Facsimile: (415) 365-9801<br>bruce.celebrezze@clydeco.us<br><br>**CLYDE & CO US LLP**<br>Konrad R. Krebs (*pro hac vice*)<br>340 Mt. Kemble Avenue \| Suite 300<br>Morristown, NJ 07960<br>Telephone: (973) 210-6700<br>Facsimile: (973) 210-6701<br>konrad.krebs@clydeco.us<br><br>-and-<br><br>**DAVID CHRISTIAN ATTORNEYS LLC**<br>David Christian (*pro hac vice*)<br>105 W. Madison St., Suite 1400<br>Chicago, Illinois 60602<br>Telephone: (312) 282-5282<br>dchristian@dca.law |
| Indian Harbor Insurance Company, on behalf of itself and as successor in interest to Catlin Specialty Insurance Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (No. 2898)<br>1000 West Street, Suite 1501<br>P.O. Box 410<br>Wilmington, DE  19899 [Courier 19801]<br>Telephone: (302) 652-8400<br>Facsimile: (302) 652-8405<br>kmiller@skjlaw.com<br><br>and<br><br>**MOUND COTTON WOLLAN & GREENGRASS LLP**<br>Lloyd A. Gura (*pro hac vice*)<br>Pamela J. Minetto (*pro hac vice*)<br>One New York Plaza 44th Floor<br>New York, NY 10004<br>Tel: (212) 804-4282<br>lgura@moundcotton.com<br>pminetto@moundcotton.com |
| Liberty Mutual Insurance Company, The Ohio Casualty Insurance | **SEITZ, VAN OGTROP & GREEN, P.A.**<br>R. Karl Hill (DE Bar No. 2747)<br>222 Delaware Avenue |

8

| | |
|---|---|
| Company, Liberty Insurance Underwriters, Inc. and Liberty Surplus Insurance Corporation (Appellants) | Suite 1500<br>Wilmington, DE 19801<br>Telephone: (302) 888-0600<br>khill@svglaw.com<br><br>-and-<br><br>**CHOATE, HALL & STEWART LLP**<br>Douglas R. Gooding (*pro hac vice*)<br>Jonathan D. Marshall (*pro hac vice*)<br>Two International Place<br>Boston, MA 02110<br>Telephone: (617) 248-5000<br>dgooding@choate.com<br>jmarshall@choate.com<br><br>-and-<br><br>**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC**<br>Kim V. Marrkand (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 542-6000<br>kvmarrkand@mintz.com |
| Munich Reinsurance America, Inc., formerly known as American Re-Insurance Company (Appellant) | **DILWORTH PAXSON LLP**<br>Thaddeus J. Weaver (DE Bar. No. 2790)<br>704 N. King Street, Suite 500<br>P.O. Box 1031<br>Wilmington, DE  19899-1031<br>(302) 571-8867 (telephone)<br>(302) 351-8735 (facsimile)<br>tweaver@dilworthlaw.com<br><br>-and-<br><br>**DILWORTH PAXSON LLP**<br>William E. McGrath, Jr. (*pro hac vice*)<br>2 Research Way, Suite 103<br>Princeton, NJ  08540<br>(609) 924-6000 (telephone)<br>(215) 893-8537 (facsimile)<br>wmcgrath@dilworthlaw.com |
| Traders and Pacific Insurance Company, Endurance American | **COZEN O'CONNOR**<br>Marla S. Benedek (No. 6638)<br>1201 N. Market Street, Suite 1001 |

9

A00460

| | |
|---|---|
| Specialty Insurance Company, and Endurance American Insurance Company (Appellants) | Wilmington, DE 19801<br>Telephone:  (302) 295-2024<br>Facsimile:  (302) 250-4498<br>mbenedek@cozen.com |
| Old Republic Insurance Company<br>(Appellant) | **MORRIS JAMES LLP**<br>Stephen M. Miller (No. 2610)<br>Carl N. Kunz, III (No. 3201)<br>500 Delaware Avenue, Suite 1500<br>Wilmington, Delaware 19801<br>Telephone: (302) 888-6800<br>Facsimile:  (302) 571-1750<br>smiller@morrisjames.com<br>ckunz@morrisjames.com<br><br>-and-<br><br>**FOX SWIBEL LEVIN & CARROLL LLP**<br>Margaret M. Anderson (*pro hac vice*)<br>Ryan T. Schultz (*pro hac vice*)<br>Adam A. Hachikian (*pro hac vice*)<br>Kenneth M. Thomas (*pro hac vice*)<br>200 W. Madison Street, Suite 3000<br>Chicago, Illinois 60606<br>Telephone: (312) 224-1200<br>Facsimile:  (312) 224-1201<br>panderson@foxswibel.com<br>rschultz@foxswibel.com<br>ahachikian@foxswibel.com<br>kthomas@foxswibel.com |
| Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company), St. Paul Surplus Lines Insurance Company and Gulf Insurance Company (Appellants) | **REGER RIZZO & DARNALL LLP**<br>Louis J. Rizzo, Jr. (DE Bar No. 3374)<br>1521 Concord Pike Suite 305<br>Brandywine Plaza West<br>Wilmington DE  19803<br>Telephone: (302) 477-7100<br>Facsimile: (302) 652-3620<br>lrizzo@regerlaw.com |
| Lujan Claimants<br><br>(Appellants) | **LOIZIDES, P.A.**<br>Christopher D. Loizides (No. 3968)<br>1225 North King Street, Suite 800<br>Telephone: (302) 654-0248<br>Loizides@loizides.com<br><br>-and- |

| | |
|---|---|
| | **LUJAN & WOLFF LLP**<br>Delia Lujan Wolff<br>Suite 300, DNA Bldg.<br>238 Archbishop Flores St.<br>Hagatna, Guam 96910<br>Telephone: (671) 477-8064/5<br>dslwolff@lawguam.com |
| Dumas & Vaughn<br>Claimants<br>(Appellants) | **GELLERT SCALI BUSENKELL & BROWN LLC**<br>Charles J. Brown, III (No. 3368)<br>1201 N. Orange St., 3rd Floor<br>Wilmington, DE 19801<br>Telephone: (302) 425-5813<br>cbrown@gsbblaw.com<br><br>-and-<br><br>**DUMAS & VAUGHN, LLC**<br>Gilion C. Dumas<br>3835 NE Hancock Street, Suite GLB<br>Portland, OR 97212<br>Telephone: (503) 616-5007<br>gilion@dumasandvaughn.com |
| Boy Scouts of America,<br>Delaware BSA, LLC<br>(Debtors/Appellees and<br>Debtors in Possession) | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>dabbott@morrisnichols.com<br>aremming@morrisnichols.com<br>ptopper@morrisnichols.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Jessica C. Lauria (*pro hac vice*)<br>Glenn M. Kurtz (*pro hac vice*)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Email: jessica.lauria@whitecase.com<br>gkurtz@whitecase.com |

11

A00462

| | |
|---|---|
| | – and –<br><br>**WHITE & CASE LLP**<br>Michael C. Andolina<br>Matthew E. Linder<br>Laura E. Baccash<br>Blair M. Warner<br>111 South Wacker Drive<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>mandolina@whitecase.com<br>mlinder@whitecase.com<br>laura.baccash@whitecase.com<br>blair.warner@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Ronald K. Gorsich<br>Doah Kim<br>555 South Flower Street, Suite 2700<br>Los Angeles, CA 90071<br>Telephone: (213) 620-7700<br>rgorsich@whitecase.com<br>doah.kim@whitecase.com |
| Tort Claimants' Committee (Appellee) | **PACHULSKI STANG ZIEHL & JONES LLP**<br>Richard M. Pachulski (*pro hac vice*)<br>Alan J. Kornfeld (*pro hac vice*)<br>Debra I. Grassgreen (*pro hac vice*)<br>Iain A.W. Nasatir (*pro hac vice*)<br>James E. O'Neill (No. 4042)<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899-8705 (Courier 19801)<br>Telephone: (302) 652-4100<br>Fax: (302) 652-4400<br>Email: rpachulski@pszjlaw.com<br>akornfeld@pszjlaw.com<br>dgrassgreen@pszjlaw.com<br>inasatir@pszjlaw.com<br>joneill@pszjlaw.com |
| Coalition of Abused Scouts for Justice (Appellee) | **MONZACK MERSKY AND BROWDER, P.A.**<br>Rachel B. Mersky (No. 2049)<br>1201 North Orange Street, Suite 400<br>Wilmington, Delaware 19801<br>Telephone: (302) 656-8162 |

|  | Fax: (302) 656-2769<br>Email: rmersky@monlaw.com<br><br>–and–<br><br>**BROWN RUDNICK LLP**<br>David J. Molton, Esq. (*pro hac vice*)<br>Eric R. Goodman, Esq. (*pro hac vice*)<br>Seven Times Square<br>New York, NY 10036<br>Telephone: (212) 209-4800<br>Fax: (212) 209-4801<br>Email: dmolton@brownrudnick.com<br>egoodman@brownrudnick.com<br><br>–and–<br><br>**BROWN RUDNICK LLP**<br>Sunni P. Beville, Esq. (*pro hac vice*)<br>Tristan G. Axelrod, Esq. (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 856-8200<br>Fax: (617) 856-8201<br>Email: sbeville@brownrudnick.com<br>taxelrod@brownrudnick.com |
|---|---|
| Future Claimants'<br>Representative<br>(Appellee) | **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br><br>Robert S. Brady (No. 2847)<br>Edwin J. Harron (No. 3396)<br>Kenneth J. Enos (No. 4544)<br>Ashley E. Jacobs (No. 5635)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Fax: (302) 571-1253<br>Email: rbrady@ycst.com<br>eharron@ycst.com<br>kenos@ycst.com<br>ajacobs@ycst.com<br><br>-and-<br><br>**GILBERT LLP**<br>Kami E. Quinn (*pro hac vice*) |

13

A00464

| | |
|---|---|
| | Rachel H. Jennings (*pro hac vice*)<br>Kyle Y. Dechant (*pro hac vice*)<br>December L. Huddleston (*pro hac vice*)<br>700 Pennsylvania Ave, SE<br>Suite 400<br>Washington, DC 20003<br>Telephone: (202) 772-2200<br>Fax: (202) 772-3333<br>Email: quinnk@gilbertlegal.com<br>jenningsr@gilbertlegal.com<br>dechantk@gilbertlegal.com<br>huddlestond@gilbertlegal.com |
| The Zalkin Law Firm, P.C. and Pfau Cochran Vertetis Amala PLLC (Appellees) | **KTBS LAW LLP**<br>Thomas E. Patterson (*pro hac vice*)<br>Daniel J. Bussel (*pro hac vice*)<br>Robert J. Pfister (*pro hac vice*)<br>Sasha M. Gurvitz (*pro hac vice*)<br>1801 Century Park East, Twenty-Sixth Floor<br>Los Angeles, California 90067<br>Telephone: (310) 407-4000<br>Fax: (310) 407-9090<br>Email: tpatterson@ktbslaw.com<br>dbussel@ktbslaw.com<br>rpfister@ktbslaw.com<br>sgurvitz@ktbslaw.com<br><br>-and-<br><br>**BIELLI & KLAUDER, LLC**<br>David M. Klauder, Esquire (No. 5769)<br>1204 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 803-4600<br>Fax: (302) 397-2557<br>Email: dklauder@bk-legal.com |
| Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, and Navigators Specialty Insurance Company (Appellees) | **BAYARD, P.A.**<br>Erin R. Fay (No. 5268)<br>Gregory J. Flasser (No. 6154)<br>600 North King Street, Suite 400<br>Wilmington, DE 19801<br>Telephone: (302) 655-5000<br>Fax: (302) 658-6395<br>Email: efay@bayardlaw.com<br>gflasser@bayardlaw.com<br><br>-and- |

14

A00465

| | **RUGGERI PARKS WEINBERG LLP**<br>James P. Ruggeri (*pro hac vice*)<br>Joshua D. Weinberg (*pro hac vice*)<br>1875 K Street, N.W., Suite 600<br>Washington, D.C. 20006-1251<br>Telephone: (202) 469-7750<br>Fax: (202) 469-7751<br><br>-and-<br><br>**WILMER CUTLER PICKERING HALE AND DORR LLP**<br>Philip D. Anker (*pro hac vice*)<br>7 World Trade Center<br>250 Greenwich Street<br>New York, N.Y. 10007<br>Telephone: (212) 230-8890<br>Fax: (212) 230-8888<br><br>Joel Millar (*pro hac vice*)<br>1875 Pennsylvania Avenue N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 663-6000<br>Fax: (202) 663-6363 |
|---|---|
| Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America<br>(Appellees) | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>800 N. West Street<br>Third Floor Wilmington, Delaware 19801<br>Telephone: 302 999 1540<br>Fax: 302 762 1688<br><br>-and-<br><br>**O'MELVENY & MYERS LLP**<br>Tancred Schiavoni (*pro hac vice*)<br>Times Square Tower<br>7 Times Square<br>New York, New York 10036-6537<br>Telephone: (212) 326-2000<br>Fax: (212) 326-2061<br><br>**O'MELVENY & MYERS LLP**<br>Stephen Warren (*pro hac vice*)<br>400 South Hope Street<br>Los Angeles, California 90071 |

| | |
|---|---|
| | Telephone: (213) 430-6000<br>Fax: (213) 430-6407<br><br>**O'MELVENY & MYERS LLP**<br>Jonathan D. Hacker (*pro hac vice*)<br>1625 Eye Street, N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 383-5300 |
| Federal Insurance<br>Company and<br>Westchester Fire<br>Insurance Company<br>(Appellees) | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>8000 N. West Street, Third Floor<br>Wilmington, Delaware 19801<br>Telephone: (302) 999-1540<br><br>-and-<br><br>**SIMPSON THATCHER & BARTLETT LLP**<br>David Elbaum (*pro hac vice*)<br>425 Lexington Avenue<br>New York, New York 10017<br>Telephone: (212) 455-2000 |
| American Zurich<br>Insurance Company,<br>American Guarantee<br>Insurance Company, and<br>Steadfast Insurance<br>Company<br>(Appellees) | **TYBOUT, REDFEARN & PELL**<br>Robert D. Cecil, Jr. (No. 5317)<br>501 Carr Road, Suite 300<br>Wilmington, Delaware 19899<br>Telephone: (302) 658-6901<br>Email: rcecil@trplaw.com<br><br>-and-<br><br>**CROWELL & MORING LLP**<br>Mark D. Plevin (*pro hac vice*)<br>Kevin D. Cacabelos (*pro hac vice*)<br>Three Embarcadero Center, 26th Floor<br>San Francisco, California 94111<br>Telephone: (415) 986-2800<br>Email: mplevin@crowell.com<br>kcacabelos@crowell.com<br><br>Tacie H. Yoon (*pro hac vice*)<br>Rachel A. Jankowski (*pro hac vice*)<br>1001 Pennsylvania Ave., N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 624-2500<br>Email: tyoon@crowell.com<br>rjankowski@crowell.com |

16

A00467

| | |
|---|---|
| Clarendon National Insurance Company, as successor in interest by merger to Clarendon America Insurance Company; River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited, on its own behalf and in turn as successor to St. Katherine Insurance Company Limited); and Zurich American Insurance Company, as successor to Maryland Casualty Company, Zurich Insurance Company, and Maryland General Insurance Company (Appellees) | **BALLARD SPAHR LLP**<br>Matthew G. Summers (No. 5533)<br>Chantelle D. McClamb (No. 5978)<br>919 N. Market Street, 11th Floor<br>Wilmington, Delaware 19801-3034<br>Telephone: (302) 252-4428<br>Fax: (302) 252-4466<br>Email: summersm@ballardspahr.com<br>mcclamb@ballardspahr.com<br><br>-and-<br><br>**STEPTOE & JOHNSON LLP**<br>Harry Lee (*pro hac vice*)<br>John O'Connor (*pro hac vice*)<br>1330 Connecticut Avenue NW<br>Washington, DC 20036<br>Telephone: (202) 429-8078<br>Fax: (202) 429-3902<br>Email: hlee@steptoe.com<br>joconnor@steptoe.com |
| Ad Hoc Committee of Local Councils of the Boy Scouts of America (Appellee) | **DLA PIPER, LLP (US)**<br>R. Craig Martin (No. 5032)<br>1201 North Market Street, Suite 2100<br>Wilmington, Delaware 19801-1147<br>Telephone: (302) 468-5655<br>Email: craig.martin@dlapiper.com<br><br>-and-<br><br>**WACHTELL, LIPTON, ROSEN & KATZ**<br>Richard G. Mason (*pro hac vice*)<br>Douglas K. Mayer (*pro hac vice*)<br>Joseph C. Celentino (*pro hac vice*)<br>Mitchell S. Levy (*pro hac vice*)<br>51 West 52nd Street<br>New York, New York 10019<br>Telephone: (212) 403-1000<br>Email: RGMason@wlrk.com<br>DKMayer@wlrk.com<br>JCCelentino@wlrk.com |

| MSLevy@wlrk.com |
|---|

Dated: April 10, 2023

       */s/ Michael J. Joyce*
Michael J. Joyce (No. 4563)
**JOYCE, LLC**
1225 King Street, Suite 800
Wilmington, DE 19801
302-388-1944 (Telephone)
mjoyce@mjlawoffices.com

-and-

Kevin Coughlin, Esquire
Lorraine Armenti, Esquire
Michael Hrinewski, Esquire
**COUGHLIN, MIDLIGE & GARLAND,**
**LLP**
350 Mount Kemble Ave.
PO Box 1917
Morristown, NJ 07962
973-267-0058 (Telephone)
973-267-6442 (Facsimile)
kcoughlin@cmg.law
larmenti@cmg.law
mhrinewski@cmg.law

-and-

John M. Flynn, Esquire
Britton C. Lewis, Esquire
**CARRUTHERS & ROTH, P.A.**
235 N. Edgeworth St.
P.O. Box 540
Greensboro, NC  27401
336-478-1146 (Telephone)
336-478-1145 (Facsimile)
jmf@crlaw.com
bcl@crlaw.com

*Counsel to Arrowood Indemnity Company*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>Debtors. | Chapter 11<br><br>Bankruptcy Case<br>No. 20-10343-LSS<br><br>(Jointly Administered) |
| NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA, *et al.*,<br><br>Appellants,<br><br>v.<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>Appellees. | Case No. 22-cv-01237-RGA[1] |

## NOTICE OF APPEAL TO THE UNITED STATES
## COURT OF APPEALS FOR THE THIRD CIRCUIT

NOTICE IS HEREBY GIVEN that Appellants Traders and Pacific Insurance Company, Endurance American Specialty Insurance Company, and Endurance American Insurance Company, appeal to the United States Court of Appeals for the Third Circuit from the final Order and accompanying Opinion of the United States District Court for the District of Delaware (Hon. Richard G. Andrews), entered March 28, 2023 (D.I. 150, 151), among other things affirming the

---

[1] Appellants' bankruptcy appeal originally had the following caption and case number: *Traders and Pacific Insurance Company, et al. v. Boy Scouts of America and Delaware BSA, LLC*, No. 22-cv-01247-RGA. That action was consolidated with the above-captioned action on October 17, 2022 and the Court directed that "[a]ll further filings with this Court will be docketed under the Master Case Number." *See* Order Granting Motion on Stipulation Regarding Appeals from Order Confirming Plan of Reorganization of Boy Scouts of America and Delaware BSA, LLC [D.I. 22].

*Supplemental Findings of Fact and Conclusions of Law and Order Confirming the Third Modified*

*Fifth Amended Chapter 11 Plan of Reorganization (with Technical Modifications) for Boy Scouts*

*of America and Delaware BSA, LLC* (Bankruptcy D.I. 10316) and accompanying Opinion

(Bankruptcy D.I. 10136) of the United States Bankruptcy Court for the District of Delaware (Hon.

Laurie S. Silverstein), and all other orders, decisions, and opinions subsumed therein.

The parties to the order appealed from and the names, addresses, and telephone numbers

of their respective attorneys are as follows:

| National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, and The Insurance Company of the State of Pennsylvania (the "AIG Companies") (Appellants) | **FINEMAN KREKSTEIN & HARRIS PC** <br> Deirdre M. Richards <br> 1300 N. King Street <br> Wilmington, DE 19801 <br> Telephone: (302) 538-8331 <br> Email: drichards@finemanlawfirm.com <br><br> -and- <br><br> **GIBSON, DUNN & CRUTCHER LLP** <br> Michael A. Rosenthal (*pro hac vice*) <br> Mitchell A. Karlan (*pro hac vice*) <br> James Hallowell (*pro hac vice*) <br> Keith R. Martorana (*pro hac vice*) <br> Seth M. Rokosky (*pro hac vice*) <br> 200 Park Avenue <br> New York, New York 10166 <br> Telephone: (212) 351-4000 <br> Email: mrosenthal@gibsondunn.com <br> mkarlan@gibsondunn.com <br> jhallowell@gibsondunn.com <br> kmartorana@gibsondunn.com <br> srokosky@gibsondunn.com <br><br> **GIBSON, DUNN & CRUTCHER LLP** <br> Theodore J. Boutrous Jr. (*pro hac vice*) <br> Richard J. Doren (*pro hac vice*) <br> Blaine H. Evanson (*pro hac vice*) <br> 333 South Grand Avenue <br> Los Angeles, California 90071 <br> Telephone: (213) 229-7038 <br> Email: rdoren@gibsondunn.com |

| | |
|---|---|
| | bevanson@gibsondunn.com<br>tboutrous@gibsondunn.com<br><br>**FORAN GLENNON PALANDECH PONZI & RUDLOFF P.C.**<br>Susan N.K. Gummow<br>222 N. LaSalle St., Suite 1400<br>Chicago, Illinois 60601<br>Telephone: (312) 863-5000<br>Email: sgummow@fgppr.com |
| Allianz Global Risks US Insurance Company (Appellant) | **TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>David M. Fournier (DE Bar No. 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Hercules Plaza<br>1313 Market Street<br>Suite 5100<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: 404.885.3000<br>david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**PARKER, HUDSON, RAINER & DOBBS LLP**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA  30308<br>Telephone: 404.420.4313<br>Facsimile: 404.522.8409<br>hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>-and-<br><br>**McDERMOTT WILL & EMERY LLP**<br>Margaret H. Warner (*pro hac vice*)<br>Ryan S. Smethurst (*pro hac vice*)<br>Alex M. Spisak (*pro hac vice*)<br>The McDermott Building<br>500 North Capitol Street, NW<br>Washington, DC 20001-1531<br>Telephone: 202.756.8228<br>Facsimile: 202.756.8087<br>mwarner@mwe.com |

3

| | |
|---|---|
| | rsmethurst@mwe.com<br>aspisak@mwe.com |
| National Surety Corporation and Interstate Fire & Casualty Company (Appellants) | **TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>David M. Fournier (DE Bar No. 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Hercules Plaza, Suite 5100<br>1313 Market Street<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: 302.777.6500<br>Facsimile: 302.421.8390<br>david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**PARKER, HUDSON, RAINER & DOBBS LLP**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA  30308<br>Telephone: 404.420.4313<br>Facsimile: 404.522.8409<br>hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>-and-<br><br>**BRADLEY RILEY JACOBS PC**<br>Todd C. Jacobs (*pro hac vice*)<br>John E. Bucheit (*pro hac vice*)<br>Paul J. Esker (*pro hac vice*)<br>500 West Madison Street<br>Suite 1000<br>Chicago, IL 60661<br>Telephone: 312.281.0295<br>tjacobs@bradleyriley.com<br>jbucheit@bradleyriley.com<br>pesker@bradleyriley.com |
| Arch Insurance Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (No. 2898)<br>1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400 |

LEGAL\62780518\1

| | |
|---|---|
| | kmiller@skjlaw.com<br><br>**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**<br>Ronald P. Schiller (*pro hac vice*)<br>Matthew A. Hamermesh (*pro hac vice*)<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>T: (215) 568-6200<br>F: (215) 568-0300<br>E: rschiller@hangley.com<br>mhamermesh@hangley.com |
| Argonaut Insurance Company and Colony Insurance Company (Appellants) | **POST & SCHELL, P.C.**<br>Paul Logan (No. 3339)<br>300 Delaware Avenue, Suite 1380<br>Wilmington, DE 19801<br>Telephone: (302) 251-8856<br>Email: plogan@postschell.com<br><br>**POST & SCHELL, P.C.**<br>John C. Sullivan (*pro hac vice*)<br>Kathleen K. Kerns (*pro hac vice*)<br>Four Penn Center – 13th Floor<br>1600 John F. Kennedy Boulevard<br>Philadelphia, PA 19103<br>Telephone: (215) 587-1000<br>jsullivan@postschell.com<br>kkerns@postschell.com<br><br>-and-<br><br>**IFRAH PLLC**<br>George R. Calhoun (*pro hac vice*)<br>1717 Pennsylvania Avenue, N.W. Suite 650<br>Washington, DC 20006<br>Telephone: (202) 840-8758<br>george@ifrahlaw.com |
| Arrowood Indemnity Company (Appellant) | **JOYCE, LLC**<br>Michael J. Joyce (No. 4563)<br>1225 King Street, Suite 800<br>Wilmington, DE 19801<br>Telephone: (302) 388-1944<br>Email: mjoyce@mjlawoffices.com<br><br>-and- |

| | |
|---|---|
| | **COUGHLIN MIDLIGE & GARLAND, LLP**<br>Kevin Coughlin (*pro hac vice*)<br>Lorraine Armenti (*pro hac vice*)<br>Michael Hrinewski (*pro hac vice*)<br>350 Mount Kemble Avenue<br>PO Box 1917<br>Morristown, NJ 07962<br>Telephone:  (973) 267-0058<br>Facsimile:  973-267-6442<br>kcoughlin@cmg.law<br>larmenti@cmg.law<br>mhrinewski@cmg.law<br><br>-and-<br><br>**CARRUTHERS & ROTH, P.A.**<br>Britton C. Lewis<br>John M. Flynn<br>235 N. Edgeworth Street<br>P.O. Box 540<br>Greensboro, NC  27401<br>Telephone:  (336) 478-1146<br>Facsimile:  (336) 478-1145<br>jmf@crlaw.com<br>bcl@crlaw.com |
| Continental Insurance Company and Columbia Casualty Company (Appellants) | **GOLDSTEIN & MCCLINTOCK LLLP**<br>Maria Aprile Sawczuk (DE #3320)<br>501 Silverside Road<br>Wilmington, DE 19809<br>302-444-6710<br>marias@goldmclaw.com<br><br>-and-<br><br>**LOEB & LOEB LLP**<br>Laura McNally (*pro hac vice*)<br>Emily Stone (*pro hac vice*)<br>321 N. Clark Street, Suite 2300<br>Chicago, IL 60654<br>312-464-3155<br>lmcnally@loeb.com<br>estone@loeb.com |
| Gemini Insurance Company (Appellant) | **WERB & SULLIVAN**<br>**LEGAL ARTS BUILDING**<br>Brian A. Sullivan (No. 2098)<br>1225 N. King Street |

| | |
|---|---|
| | Suite 600<br>Wilmington, Delaware 19801<br>Telephone: (302) 652-1100<br>Cell: (302) 757-9932<br>Facsimile: (302) 652-1111<br>Email: bsullivan@werbsullivan.com<br><br>**GIEGER LABORDE & LAPEROUOSE, LLC**<br>John E.W. Baay II (*pro hac vice*)<br>701 Poydras Street<br>Suite 4800<br>New Orleans, LA 70139<br>Tel.: 504-561-0400<br>Fax: 504-561-1011<br>Email: jbaay@glllaw.com<br><br>-and-<br><br>**KIERNAN TREBACH LLP**<br>William H. White Jr (*pro hac vice*)<br>1233 20th Street, NW<br>8th Floor<br>Washington, DC 20036<br>Tel.: 202-712-7000<br>Fax: 202-712-7100<br>Email: wwhite@kiernantrebach.com |
| General Star Indemnity Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (DE Bar No. 2898)<br>1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400<br>Email: kmiller@skjlaw.com<br><br>-and-<br><br>**WILEY REIN LLP**<br>Mary E. Borja (*pro hac vice*)<br>Gary P. Seligman (*pro hac vice*)<br>Ashley L. Criss (*pro hac vice*)<br>2050 M Street NW<br>Washington, DC 20036<br>Phone: (202) 719-7000<br>Email: mborja@wiley.law<br>gseligman@wiley.law<br>acriss@wiley.law |

7

| | |
|---|---|
| Great American Assurance Company, f/k/a Agricultural Insurance Company; Great American E&S Insurance Company, f/k/a Agricultural Excess and Surplus Insurance Company; and Great American E&S Insurance Company (Appellants) | **BODELL BOVÉ, LLC** <br> Bruce W. McCullough (No. 3112) <br> 1225 N. King Street, Suite 1000 <br> Wilmington, Delaware 19801-3250 <br> Telephone: (302) 655-6749 <br> bmccullough@bodellbove.com <br><br> -and- <br><br> **CLYDE & CO US LLP** <br> Bruce D. Celebrezze (*pro hac vice*) <br> 150 California Street | 15th Floor <br> San Francisco, California 94111 <br> Telephone: (415) 365-9800 <br> Facsimile: (415) 365-9801 <br> bruce.celebrezze@clydeco.us <br><br> **CLYDE & CO US LLP** <br> Konrad R. Krebs (*pro hac vice*) <br> 340 Mt. Kemble Avenue | Suite 300 <br> Morristown, NJ 07960 <br> Telephone: (973) 210-6700 <br> Facsimile: (973) 210-6701 <br> konrad.krebs@clydeco.us <br><br> -and- <br><br> **DAVID CHRISTIAN ATTORNEYS LLC** <br> David Christian (*pro hac vice*) <br> 105 W. Madison St., Suite 1400 <br> Chicago, Illinois 60602 <br> Telephone: (312) 282-5282 <br> dchristian@dca.law |
| Indian Harbor Insurance Company, on behalf of itself and as successor in interest to Catlin Specialty Insurance Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP** <br> Kathleen M. Miller (No. 2898) <br> 1000 West Street, Suite 1501 <br> P.O. Box 410 <br> Wilmington, DE 19899 [Courier 19801] <br> Telephone: (302) 652-8400 <br> Facsimile: (302) 652-8405 <br> kmiller@skjlaw.com <br><br> and <br><br> **MOUND COTTON WOLLAN & GREENGRASS LLP** |

| | |
|---|---|
| | Lloyd A. Gura (*pro hac vice*)<br>Pamela J. Minetto (*pro hac vice*)<br>One New York Plaza 44th Floor<br>New York, NY 10004<br>Tel: (212) 804-4282<br>lgura@moundcotton.com<br>pminetto@moundcotton.com |
| Liberty Mutual Insurance Company, The Ohio Casualty Insurance Company, Liberty Insurance Underwriters, Inc. and Liberty Surplus Insurance Corporation (Appellants) | **SEITZ, VAN OGTROP & GREEN, P.A.**<br>R. Karl Hill (DE Bar No. 2747)<br>222 Delaware Avenue<br>Suite 1500<br>Wilmington, DE 19801<br>Telephone: (302) 888-0600<br>khill@svglaw.com<br><br>-and-<br><br>**CHOATE, HALL & STEWART LLP**<br>Douglas R. Gooding (*pro hac vice*)<br>Jonathan D. Marshall (*pro hac vice*)<br>Two International Place<br>Boston, MA 02110<br>Telephone: (617) 248-5000<br>dgooding@choate.com<br>jmarshall@choate.com<br><br>-and-<br><br>**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC**<br>Kim V. Marrkand (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 542-6000<br>kvmarrkand@mintz.com |
| Munich Reinsurance America, Inc., formerly known as American Re-Insurance Company (Appellant) | **DILWORTH PAXSON LLP**<br>Thaddeus J. Weaver (DE Bar. No. 2790)<br>704 N. King Street, Suite 500<br>P.O. Box 1031<br>Wilmington, DE  19899-1031<br>(302) 571-8867 (telephone)<br>(302) 351-8735 (facsimile)<br>tweaver@dilworthlaw.com<br><br>-and- |

LEGAL\62780518\1

| | |
|---|---|
| | **DILWORTH PAXSON LLP**<br>William E. McGrath, Jr. (*pro hac vice*)<br>2 Research Way, Suite 103<br>Princeton, NJ 08540<br>(609) 924-6000 (telephone)<br>(215) 893-8537 (facsimile)<br>wmcgrath@dilworthlaw.com |
| Traders and Pacific Insurance Company, Endurance American Specialty Insurance Company, and Endurance American Insurance Company (Appellants) | **COZEN O'CONNOR**<br>Marla S. Benedek (No. 6638)<br>1201 N. Market Street, Suite 1001<br>Wilmington, DE 19801<br>Telephone: (302) 295-2024<br>Facsimile: (302) 250-4498<br>mbenedek@cozen.com |
| Old Republic Insurance Company (Appellant) | **MORRIS JAMES LLP**<br>Stephen M. Miller (No. 2610)<br>Carl N. Kunz, III (No. 3201)<br>500 Delaware Avenue, Suite 1500<br>Wilmington, Delaware 19801<br>Telephone: (302) 888-6800<br>Facsimile: (302) 571-1750<br>smiller@morrisjames.com<br>ckunz@morrisjames.com<br><br>-and-<br><br>**FOX SWIBEL LEVIN & CARROLL LLP**<br>Margaret M. Anderson (*pro hac vice*)<br>Ryan T. Schultz (*pro hac vice*)<br>Adam A. Hachikian (*pro hac vice*)<br>Kenneth M. Thomas (*pro hac vice*)<br>200 W. Madison Street, Suite 3000<br>Chicago, Illinois 60606<br>Telephone: (312) 224-1200<br>Facsimile: (312) 224-1201<br>panderson@foxswibel.com<br>rschultz@foxswibel.com<br>ahachikian@foxswibel.com<br>kthomas@foxswibel.com |
| Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company), St. Paul Surplus Lines | **REGER RIZZO & DARNALL LLP**<br>Louis J. Rizzo, Jr. (DE Bar No. 3374)<br>1521 Concord Pike Suite 305<br>Brandywine Plaza West<br>Wilmington DE 19803 |

A00479

| | |
|---|---|
| Insurance Company and Gulf Insurance Company (Appellants) | Telephone: (302) 477-7100<br>Facsimile: (302) 652-3620<br>lrizzo@regerlaw.com |
| Lujan Claimants<br><br>(Appellants) | **LOIZIDES, P.A.**<br>Christopher D. Loizides (No. 3968)<br>1225 North King Street, Suite 800<br>Telephone: (302) 654-0248<br>Loizides@loizides.com<br><br>-and-<br><br>**LUJAN & WOLFF LLP**<br>Delia Lujan Wolff<br>Suite 300, DNA Bldg.<br>238 Archbishop Flores St.<br>Hagatna, Guam 96910<br>Telephone: (671) 477-8064/5<br>dslwolff@lawguam.com |
| Dumas & Vaughn Claimants (Appellants) | **GELLERT SCALI BUSENKELL & BROWN LLC**<br>Charles J. Brown, III (No. 3368)<br>1201 N. Orange St., 3rd Floor<br>Wilmington, DE 19801<br>Telephone: (302) 425-5813<br>cbrown@gsbblaw.com<br><br>-and-<br><br>**DUMAS & VAUGHN, LLC**<br>Gilion C. Dumas<br>3835 NE Hancock Street, Suite GLB<br>Portland, OR 97212<br>Telephone: (503) 616-5007<br>gilion@dumasandvaughn.com |
| Boy Scouts of America, Delaware BSA, LLC (Debtors/Appellees and Debtors in Possession) | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>dabbott@morrisnichols.com<br>aremming@morrisnichols.com<br>ptopper@morrisnichols.com<br><br>– and – |

11

A00480

| | |
|---|---|
| | **WHITE & CASE LLP**<br>Jessica C. Lauria (*pro hac vice*)<br>Glenn M. Kurtz (*pro hac vice*)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Email: jessica.lauria@whitecase.com<br>gkurtz@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Michael C. Andolina<br>Matthew E. Linder<br>Laura E. Baccash<br>Blair M. Warner<br>111 South Wacker Drive<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>mandolina@whitecase.com<br>mlinder@whitecase.com<br>laura.baccash@whitecase.com<br>blair.warner@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Ronald K. Gorsich<br>Doah Kim<br>555 South Flower Street, Suite 2700<br>Los Angeles, CA 90071<br>Telephone: (213) 620-7700<br>rgorsich@whitecase.com<br>doah.kim@whitecase.com |
| Tort Claimants'<br>Committee<br>(Appellee) | **PACHULSKI STANG ZIEHL & JONES LLP**<br>Richard M. Pachulski (*pro hac vice*)<br>Alan J. Kornfeld (*pro hac vice*)<br>Debra I. Grassgreen (*pro hac vice*)<br>Iain A.W. Nasatir (*pro hac vice*)<br>James E. O'Neill (No. 4042)<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899-8705 (Courier 19801)<br>Telephone: (302) 652-4100<br>Fax: (302) 652-4400<br>Email: rpachulski@pszjlaw.com |

12

| | akornfeld@pszjlaw.com<br>dgrassgreen@pszjlaw.com<br>inasatir@pszjlaw.com<br>joneill@pszjlaw.com |
|---|---|
| Coalition of Abused Scouts for Justice (Appellee) | **MONZACK MERSKY AND BROWDER, P.A.**<br>Rachel B. Mersky (No. 2049)<br>1201 North Orange Street, Suite 400<br>Wilmington, Delaware 19801<br>Telephone: (302) 656-8162<br>Fax: (302) 656-2769<br>Email: rmersky@monlaw.com<br><br>–and–<br><br>**BROWN RUDNICK LLP**<br>David J. Molton, Esq. (*pro hac vice*)<br>Eric R. Goodman, Esq. (*pro hac vice*)<br>Seven Times Square<br>New York, NY 10036<br>Telephone: (212) 209-4800<br>Fax: (212) 209-4801<br>Email: dmolton@brownrudnick.com<br>egoodman@brownrudnick.com<br><br>–and–<br><br>**BROWN RUDNICK LLP**<br>Sunni P. Beville, Esq. (*pro hac vice*)<br>Tristan G. Axelrod, Esq. (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 856-8200<br>Fax: (617) 856-8201<br>Email: sbeville@brownrudnick.com<br>taxelrod@brownrudnick.com |
| Future Claimants' Representative (Appellee) | **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br><br>Robert S. Brady (No. 2847)<br>Edwin J. Harron (No. 3396)<br>Kenneth J. Enos (No. 4544)<br>Ashley E. Jacobs (No. 5635)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Fax: (302) 571-1253 |

LEGAL\62780518\1

A00482

| | Email: rbrady@ycst.com<br>eharron@ycst.com<br>kenos@ycst.com<br>ajacobs@ycst.com<br><br>-and-<br><br>**GILBERT LLP**<br>Kami E. Quinn (*pro hac vice*)<br>Rachel H. Jennings (*pro hac vice*)<br>Kyle Y. Dechant (*pro hac vice*)<br>December L. Huddleston (*pro hac vice*)<br>700 Pennsylvania Ave, SE<br>Suite 400<br>Washington, DC 20003<br>Telephone: (202) 772-2200<br>Fax: (202) 772-3333<br>Email: quinnk@gilbertlegal.com<br>jenningsr@gilbertlegal.com<br>dechantk@gilbertlegal.com<br>huddlestond@gilbertlegal.com |
|---|---|
| The Zalkin Law Firm, P.C. and Pfau Cochran Vertetis Amala PLLC (Appellees) | **KTBS LAW LLP**<br>Thomas E. Patterson (*pro hac vice*)<br>Daniel J. Bussel (*pro hac vice*)<br>Robert J. Pfister (*pro hac vice*)<br>Sasha M. Gurvitz (*pro hac vice*)<br>1801 Century Park East, Twenty-Sixth Floor<br>Los Angeles, California 90067<br>Telephone: (310) 407-4000<br>Fax: (310) 407-9090<br>Email: tpatterson@ktbslaw.com<br>dbussel@ktbslaw.com<br>rpfister@ktbslaw.com<br>sgurvitz@ktbslaw.com<br><br>-and-<br><br>**BIELLI & KLAUDER, LLC**<br>David M. Klauder, Esquire (No. 5769)<br>1204 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 803-4600<br>Fax: (302) 397-2557<br>Email: dklauder@bk-legal.com |
| Hartford Accident and Indemnity Company, | **BAYARD, P.A.**<br>Erin R. Fay (No. 5268) |

LEGAL\62780518\1

A00483

| | |
|---|---|
| First State Insurance Company, Twin City Fire Insurance Company, and Navigators Specialty Insurance Company (Appellees) | Gregory J. Flasser (No. 6154)<br>600 North King Street, Suite 400<br>Wilmington, DE 19801<br>Telephone: (302) 655-5000<br>Fax: (302) 658-6395<br>Email: efay@bayardlaw.com<br>gflasser@bayardlaw.com<br><br>-and-<br><br>**RUGGERI PARKS WEINBERG LLP**<br>James P. Ruggeri (*pro hac vice*)<br>Joshua D. Weinberg (*pro hac vice*)<br>1875 K Street, N.W., Suite 600<br>Washington, D.C. 20006-1251<br>Telephone: (202) 469-7750<br>Fax: (202) 469-7751<br><br>-and-<br><br>**WILMER CUTLER PICKERING HALE AND DORR LLP**<br>Philip D. Anker (*pro hac vice*)<br>7 World Trade Center<br>250 Greenwich Street<br>New York, N.Y. 10007<br>Telephone: (212) 230-8890<br>Fax: (212) 230-8888<br><br>Joel Millar (*pro hac vice*)<br>1875 Pennsylvania Avenue N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 663-6000<br>Fax: (202) 663-6363 |
| Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America (Appellees) | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>800 N. West Street<br>Third Floor Wilmington, Delaware 19801<br>Telephone: 302 999 1540<br>Fax: 302 762 1688<br><br>-and-<br><br>**O'MELVENY & MYERS LLP**<br>Tancred Schiavoni (*pro hac vice*)<br>Times Square Tower |

LEGAL\62780518\1

| | |
|---|---|
| | 7 Times Square<br>New York, New York 10036-6537<br>Telephone: (212) 326-2000<br>Fax: (212) 326-2061<br><br>**O'MELVENY & MYERS LLP**<br>Stephen Warren (*pro hac vice*)<br>400 South Hope Street<br>Los Angeles, California 90071<br>Telephone: (213) 430-6000<br>Fax: (213) 430-6407<br><br>**O'MELVENY & MYERS LLP**<br>Jonathan D. Hacker (*pro hac vice*)<br>1625 Eye Street, N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 383-5300 |
| Federal Insurance Company and Westchester Fire Insurance Company (Appellees) | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>8000 N. West Street, Third Floor<br>Wilmington, Delaware 19801<br>Telephone: (302) 999-1540<br><br>-and-<br><br>**SIMPSON THATCHER & BARTLETT LLP**<br>David Elbaum (*pro hac vice*)<br>425 Lexington Avenue<br>New York, New York 10017<br>Telephone: (212) 455-2000 |
| American Zurich Insurance Company, American Guarantee Insurance Company, and Steadfast Insurance Company (Appellees) | **TYBOUT, REDFEARN & PELL**<br>Robert D. Cecil, Jr. (No. 5317)<br>501 Carr Road, Suite 300<br>Wilmington, Delaware 19899<br>Telephone: (302) 658-6901<br>Email: rcecil@trplaw.com<br><br>-and-<br><br>**CROWELL & MORING LLP**<br>Mark D. Plevin (*pro hac vice*)<br>Kevin D. Cacabelos (*pro hac vice*)<br>Three Embarcadero Center, 26th Floor<br>San Francisco, California 94111<br>Telephone: (415) 986-2800<br>Email: mplevin@crowell.com |

16

| | |
|---|---|
| | kcacabelos@crowell.com<br><br>Tacie H. Yoon (*pro hac vice*)<br>Rachel A. Jankowski (*pro hac vice*)<br>1001 Pennsylvania Ave., N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 624-2500<br>Email: tyoon@crowell.com<br>rjankowski@crowell.com |
| Clarendon National Insurance Company, as successor in interest by merger to Clarendon America Insurance Company; River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited, on its own behalf and in turn as successor to St. Katherine Insurance Company Limited); and Zurich American Insurance Company, as successor to Maryland Casualty Company, Zurich Insurance Company, and Maryland General Insurance Company (Appellees) | **BALLARD SPAHR LLP**<br>Matthew G. Summers (No. 5533)<br>Chantelle D. McClamb (No. 5978)<br>919 N. Market Street, 11th Floor<br>Wilmington, Delaware 19801-3034<br>Telephone: (302) 252-4428<br>Fax: (302) 252-4466<br>Email: summersm@ballardspahr.com<br>mcclamb@ballardspahr.com<br><br>-and-<br><br>**STEPTOE & JOHNSON LLP**<br>Harry Lee (*pro hac vice*)<br>John O'Connor (*pro hac vice*)<br>1330 Connecticut Avenue NW<br>Washington, DC 20036<br>Telephone: (202) 429-8078<br>Fax: (202) 429-3902<br>Email: hlee@steptoe.com<br>joconnor@steptoe.com |
| Ad Hoc Committee of Local Councils of the Boy Scouts of America (Appellee) | **DLA PIPER, LLP (US)**<br>R. Craig Martin (No. 5032)<br>1201 North Market Street, Suite 2100<br>Wilmington, Delaware 19801-1147<br>Telephone: (302) 468-5655<br>Email: craig.martin@dlapiper.com<br><br>-and-<br><br>**WACHTELL, LIPTON, ROSEN & KATZ**<br>Richard G. Mason (*pro hac vice*) |

17

| | Douglas K. Mayer (*pro hac vice*)<br>Joseph C. Celentino (*pro hac vice*)<br>Mitchell S. Levy (*pro hac vice*)<br>51 West 52nd Street<br>New York, New York 10019<br>Telephone: (212) 403-1000<br>Email: RGMason@wlrk.com<br>DKMayer@wlrk.com<br>JCCelentino@wlrk.com<br>MSLevy@wlrk.com |
|---|---|

Dated: April 10, 2023
Wilmington, Delaware

By:  /s/ *Marla S. Benedek*
Marla S. Benedek (DE Bar No. 6638)
COZEN O'CONNOR
1201 N. Market Street, Suite 1001
Wilmington, DE 19801
Telephone:  (302) 295-2024
Facsimile:  (302) 250-4498
Email:  mbenedek@cozen.com

*Counsel to Traders and Pacific Insurance Company, Endurance American Specialty Insurance Company, and Endurance American Insurance Company*

18

A00487

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Bankruptcy Case No. 20-10343-LSS |
| | (Jointly Administered) |
| Debtors. | |
| NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA, *et al.*, | Case No. 22-cv-01237-RGA |
| Appellants, | |
| v. | |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | |
| Appellees. | |

### CERTIFICATE OF SERVICE

I, Marla S. Benedek do hereby certify that on April 10, 2023, I caused a copy of the foregoing ***Notice of Appeal to the United States Court of Appeals for the Third Circuit*** to be served on all registered users of the Court's Case Management/Electronic Case File ("CM/ECF") in this case via CM/ECF.

Dated: April 10, 2023
Wilmington, Delaware

By:   /s/ *Marla S. Benedek*

Marla S. Benedek (DE Bar No. 6638)
COZEN O'CONNOR
1201 N. Market Street, Suite 1001
Wilmington, DE 19801
Telephone:  (302) 295-2024
Facsimile:  (302) 250-4498
Email:  mbenedek@cozen.com

*Counsel to Traders and Pacific Insurance Company, Endurance American Specialty Insurance Company, and Endurance American Insurance Company*

LEGAL\62780518\1

A00488

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Bankruptcy Case No. 20-10343-LSS |
| | |
| Debtors. | (Jointly Administered) |
| | |
| NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA, *et al.*, | Case No. 22-cv-01237-RGA |
| | |
| Appellants, | |
| | |
| v. | |
| | |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | |
| | |
| Appellees. | |

## NOTICE OF APPEAL TO THE UNITED STATES
## COURT OF APPEALS FOR THE THIRD CIRCUIT

NOTICE IS HEREBY GIVEN that Appellant Arch Insurance Company appeals to the United States Court of Appeals for the Third Circuit from the final Order and accompanying Opinion of the United States District Court for the District of Delaware (Hon. Richard G. Andrews), entered  March 28, 2023 (D.I. 150, 151), among other things affirming the *Supplemental Findings of Fact and Conclusions of Law and Order Confirming the Third Modified Fifth Amended Chapter 11 Plan of Reorganization (with Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC* (Bankruptcy D.I. 10316) and accompanying Opinion (Bankruptcy D.I. 10136) of the United States Bankruptcy Court for the District of Delaware (Hon. Laurie S. Silverstein), and all other orders, decisions, and opinions subsumed therein.

The parties to the order appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

| National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, and The Insurance Company of the State of Pennsylvania (the "AIG Companies") (Appellants) | **FINEMAN KREKSTEIN & HARRIS PC**<br>Deirdre M. Richards<br>1300 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 538-8331<br>Email: drichards@finemanlawfirm.com<br><br>-and-<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br>Michael A. Rosenthal (*pro hac vice*)<br>Mitchell A. Karlan (*pro hac vice*)<br>James Hallowell (*pro hac vice*)<br>Keith R. Martorana (*pro hac vice*)<br>Seth M. Rokosky (*pro hac vice*)<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 351-4000<br>Email: mrosenthal@gibsondunn.com<br>mkarlan@gibsondunn.com<br>jhallowell@gibsondunn.com<br>kmartorana@gibsondunn.com<br>srokosky@gibsondunn.com<br><br>**GIBSON, DUNN & CRUTCHER LLP**<br>Theodore J. Boutrous Jr. (*pro hac vice*)<br>Richard J. Doren (*pro hac vice*)<br>Blaine H. Evanson (*pro hac vice*)<br>333 South Grand Avenue<br>Los Angeles, California 90071<br>Telephone: (213) 229-7038<br>Email: rdoren@gibsondunn.com<br>bevanson@gibsondunn.com<br>tboutrous@gibsondunn.com<br><br>**FORAN GLENNON PALANDECH PONZI & RUDLOFF P.C.**<br>Susan N.K. Gummow<br>222 N. LaSalle St., Suite 1400<br>Chicago, Illinois 60601<br>Telephone: (312) 863-5000<br>Email: sgummow@fgppr.com |
| Allianz Global Risks US | **TROUTMAN PEPPER HAMILTON SANDERS LLP** |

2

| | |
|---|---|
| Insurance Company (Appellant) | David M. Fournier (DE Bar No. 2812) <br> Marcy J. McLaughlin Smith (DE No. 6184) <br> Hercules Plaza <br> 1313 Market Street <br> Suite 5100 <br> P.O. Box 1709 <br> Wilmington, DE 19899-1709 <br> Telephone: 404.885.3000 <br> david.fournier@troutman.com <br> marcy.smith@troutman.com <br><br> -and- <br><br> **PARKER, HUDSON, RAINER & DOBBS LLP** <br> Harris B. Winsberg (*pro hac vice*) <br> Matthew G. Roberts (*pro hac vice*) <br> 303 Peachtree Street NE <br> Suite 3600 <br> Atlanta, GA  30308 <br> Telephone: 404.420.4313 <br> Facsimile: 404.522.8409 <br> hwinsberg@phrd.com <br> mroberts@phrd.com <br><br> -and- <br><br> **McDERMOTT WILL & EMERY LLP** <br> Margaret H. Warner (*pro hac vice*) <br> Ryan S. Smethurst (*pro hac vice*) <br> Alex M. Spisak (*pro hac vice*) <br> The McDermott Building <br> 500 North Capitol Street, NW <br> Washington, DC 20001-1531 <br> Telephone: 202.756.8228 <br> Facsimile: 202.756.8087 <br> mwarner@mwe.com <br> rsmethurst@mwe.com <br> aspisak@mwe.com |
| National Surety Corporation and Interstate Fire & Casualty Company (Appellants) | **TROUTMAN PEPPER HAMILTON SANDERS LLP** <br> David M. Fournier (DE Bar No. 2812) <br> Marcy J. McLaughlin Smith (DE No. 6184) <br> Hercules Plaza, Suite 5100 <br> 1313 Market Street <br> P.O. Box 1709 <br> Wilmington, DE 19899-1709 <br> Telephone: 302.777.6500 |

3

|  | Facsimile: 302.421.8390<br>david.fournier@troutman.com<br>marcy.smith@troutman.com<br><br>-and-<br><br>**PARKER, HUDSON, RAINER & DOBBS LLP**<br>Harris B. Winsberg (*pro hac vice*)<br>Matthew G. Roberts (*pro hac vice*)<br>303 Peachtree Street NE<br>Suite 3600<br>Atlanta, GA  30308<br>Telephone: 404.420.4313<br>Facsimile: 404.522.8409<br>hwinsberg@phrd.com<br>mroberts@phrd.com<br><br>-and-<br><br>**BRADLEY RILEY JACOBS PC**<br>Todd C. Jacobs (*pro hac vice*)<br>John E. Bucheit (*pro hac vice*)<br>Paul J. Esker (*pro hac vice*)<br>500 West Madison Street<br>Suite 1000<br>Chicago, IL 60661<br>Telephone: 312.281.0295<br>tjacobs@bradleyriley.com<br>jbucheit@bradleyriley.com<br>pesker@bradleyriley.com |
| Arch Insurance Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (No. 2898)<br>1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400<br>kmiller@skjlaw.com<br><br>**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**<br>Ronald P. Schiller (*pro hac vice*)<br>Matthew A. Hamermesh (*pro hac vice*)<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>T: (215) 568-6200<br>F: (215) 568-0300 |

4

| | |
|---|---|
| | E: rschiller@hangley.com<br>mhamermesh@hangley.com |
| Argonaut Insurance Company and Colony Insurance Company (Appellants) | **POST & SCHELL, P.C.**<br>Paul Logan (No. 3339)<br>300 Delaware Avenue, Suite 1380<br>Wilmington, DE 19801<br>Telephone: (302) 251-8856<br>Email: plogan@postschell.com<br><br>**POST & SCHELL, P.C.**<br>John C. Sullivan (*pro hac vice*)<br>Kathleen K. Kerns (*pro hac vice*)<br>Four Penn Center – 13th Floor<br>1600 John F. Kennedy Boulevard<br>Philadelphia, PA 19103<br>Telephone: (215) 587-1000<br>jsullivan@postschell.com<br>kkerns@postschell.com<br><br>-and-<br><br>**IFRAH PLLC**<br>George R. Calhoun (*pro hac vice*)<br>1717 Pennsylvania Avenue, N.W. Suite 650<br>Washington, DC 20006<br>Telephone: (202) 840-8758<br>george@ifrahlaw.com |
| Arrowood Indemnity Company (Appellant) | **JOYCE, LLC**<br>Michael J. Joyce (No. 4563)<br>1225 King Street, Suite 800<br>Wilmington, DE 19801<br>Telephone: (302) 388-1944<br>Email: mjoyce@mjlawoffices.com<br><br>-and-<br><br>**COUGHLIN MIDLIGE & GARLAND, LLP**<br>Kevin Coughlin (*pro hac vice*)<br>Lorraine Armenti (*pro hac vice*)<br>Michael Hrinewski (*pro hac vice*)<br>350 Mount Kemble Avenue<br>PO Box 1917<br>Morristown, NJ 07962<br>Telephone: (973) 267-0058<br>Facsimile: 973-267-6442<br>kcoughlin@cmg.law |

| | |
|---|---|
| | larmenti@cmg.law<br>mhrinewski@cmg.law<br><br>-and-<br><br>**CARRUTHERS & ROTH, P.A.**<br>Britton C. Lewis<br>John M. Flynn<br>235 N. Edgeworth Street<br>P.O. Box 540<br>Greensboro, NC  27401<br>Telephone:  (336) 478-1146<br>Facsimile:  (336) 478-1145<br>jmf@crlaw.com<br>bcl@crlaw.com |
| Continental Insurance<br>Company and Columbia<br>Casualty Company<br>(Appellants) | **GOLDSTEIN & MCCLINTOCK LLLP**<br>Maria Aprile Sawczuk (DE #3320)<br>501 Silverside Road<br>Wilmington, DE 19809<br>302-444-6710<br>marias@goldmclaw.com<br><br>-and-<br><br>**LOEB & LOEB LLP**<br>Laura McNally (*pro hac vice*)<br>Emily Stone (*pro hac vice*)<br>321 N. Clark Street, Suite 2300<br>Chicago, IL 60654<br>312-464-3155<br>lmcnally@loeb.com<br>estone@loeb.com |
| Gemini Insurance<br>Company<br>(Appellant) | **WERB & SULLIVAN**<br>**LEGAL ARTS BUILDING**<br>Brian A. Sullivan (No. 2098)<br>1225 N. King Street<br>Suite 600<br>Wilmington, Delaware 19801<br>Telephone: (302) 652-1100<br>Cell: (302) 757-9932<br>Facsimile: (302) 652-1111<br>Email: bsullivan@werbsullivan.com<br><br>**GIEGER LABORDE & LAPEROUOSE, LLC**<br>John E.W. Baay II (*pro hac vice*)<br>701 Poydras Street |

6

| | |
|---|---|
| | Suite 4800<br>New Orleans, LA 70139<br>Tel.: 504-561-0400<br>Fax: 504-561-1011<br>Email: jbaay@glllaw.com<br><br>-and-<br><br>**KIERNAN TREBACH LLP**<br>William H. White Jr (*pro hac vice*)<br>1233 20th Street, NW<br>8th Floor<br>Washington, DC 20036<br>Tel.: 202-712-7000<br>Fax: 202-712-7100<br>Email: wwhite@kiernantrebach.com |
| General Star Indemnity Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (DE Bar No. 2898)<br>1000 West Street, Suite 501<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400<br>Email: kmiller@skjlaw.com<br><br>-and-<br><br>**WILEY REIN LLP**<br>Mary E. Borja (*pro hac vice*)<br>Gary P. Seligman (*pro hac vice*)<br>Ashley L. Criss (*pro hac vice*)<br>2050 M Street NW<br>Washington, DC 20036<br>Phone: (202) 719-7000<br>Email: mborja@wiley.law<br>gseligman@wiley.law<br>acriss@wiley.law |
| Great American Assurance Company, f/k/a Agricultural Insurance Company; Great American E&S Insurance Company, f/k/a Agricultural Excess and Surplus Insurance Company; and Great | **BODELL BOVÉ, LLC**<br>Bruce W. McCullough (No. 3112)<br>1225 N. King Street, Suite 1000<br>Wilmington, Delaware 19801-3250<br>Telephone: (302) 655-6749<br>bmccullough@bodellbove.com<br><br>-and-<br><br>**CLYDE & CO US LLP** |

7

| | |
|---|---|
| American E&S Insurance Company (Appellants) | Bruce D. Celebrezze (*pro hac vice*)<br>150 California Street \| 15th Floor<br>San Francisco, California 94111<br>Telephone: (415) 365-9800<br>Facsimile: (415) 365-9801<br>bruce.celebrezze@clydeco.us<br><br>**CLYDE & CO US LLP**<br>Konrad R. Krebs (*pro hac vice*)<br>340 Mt. Kemble Avenue \| Suite 300<br>Morristown, NJ 07960<br>Telephone: (973) 210-6700<br>Facsimile: (973) 210-6701<br>konrad.krebs@clydeco.us<br><br>-and-<br><br>**DAVID CHRISTIAN ATTORNEYS LLC**<br>David Christian (*pro hac vice*)<br>105 W. Madison St., Suite 1400<br>Chicago, Illinois 60602<br>Telephone: (312) 282-5282<br>dchristian@dca.law |
| Indian Harbor Insurance Company, on behalf of itself and as successor in interest to Catlin Specialty Insurance Company (Appellant) | **SMITH, KATZENSTEIN & JENKINS LLP**<br>Kathleen M. Miller (No. 2898)<br>1000 West Street, Suite 1501<br>P.O. Box 410<br>Wilmington, DE  19899 [Courier 19801]<br>Telephone: (302) 652-8400<br>Facsimile: (302) 652-8405<br>kmiller@skjlaw.com<br><br>and<br><br>**MOUND COTTON WOLLAN & GREENGRASS LLP**<br>Lloyd A. Gura (*pro hac vice*)<br>Pamela J. Minetto (*pro hac vice*)<br>One New York Plaza 44th Floor<br>New York, NY 10004<br>Tel: (212) 804-4282<br>lgura@moundcotton.com<br>pminetto@moundcotton.com |
| Liberty Mutual Insurance Company, The Ohio Casualty Insurance | **SEITZ, VAN OGTROP & GREEN, P.A.**<br>R. Karl Hill (DE BAR No. 2747)<br>222 Delaware Avenue |

8

| | |
|---|---|
| Company, Liberty Insurance Underwriters, Inc. and Liberty Surplus Insurance Corporation (Appellants) | Suite 1500<br>Wilmington, DE 19801<br>Telephone: (302) 888-0600<br>khill@svglaw.com<br><br>-and-<br><br>**CHOATE, HALL & STEWART LLP**<br>Douglas R. Gooding (*pro hac vice*)<br>Jonathan D. Marshall (*pro hac vice*)<br>Two International Place<br>Boston, MA 02110<br>Telephone: (617) 248-5000<br>dgooding@choate.com<br>jmarshall@choate.com<br><br>-and-<br><br>**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC**<br>Kim V. Marrkand (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 542-6000<br>kvmarrkand@mintz.com |
| Munich Reinsurance America, Inc., formerly known as American Re-Insurance Company (Appellant) | **DILWORTH PAXSON LLP**<br>Thaddeus J. Weaver (DE Bar. No. 2790)<br>704 N. King Street, Suite 500<br>P.O. Box 1031<br>Wilmington, DE  19899-1031<br>(302) 571-8867 (telephone)<br>(302) 351-8735 (facsimile)<br>tweaver@dilworthlaw.com<br><br>-and-<br><br>**DILWORTH PAXSON LLP**<br>William E. McGrath, Jr. (*pro hac vice*)<br>2 Research Way, Suite 103<br>Princeton, NJ  08540<br>(609) 924-6000 (telephone)<br>(215) 893-8537 (facsimile)<br>wmcgrath@dilworthlaw.com |
| Traders and Pacific Insurance Company, Endurance American | **COZEN O'CONNOR**<br>Marla S. Benedek (No. 6638)<br>1201 N. Market Street, Suite 1001 |

9

| | |
|---|---|
| Specialty Insurance Company, and Endurance American Insurance Company (Appellants) | Wilmington, DE 19801<br>Telephone:  (302) 295-2024<br>Facsimile:  (302) 250-4498<br>mbenedek@cozen.com |
| Old Republic Insurance Company (Appellant) | **MORRIS JAMES LLP**<br>Stephen M. Miller (No. 2610)<br>Carl N. Kunz, III (No. 3201)<br>500 Delaware Avenue, Suite 1500<br>Wilmington, Delaware 19801<br>Telephone: (302) 888-6800<br>Facsimile:  (302) 571-1750<br>smiller@morrisjames.com<br>ckunz@morrisjames.com<br><br>-and-<br><br>**FOX SWIBEL LEVIN & CARROLL LLP**<br>Margaret M. Anderson (*pro hac vice*)<br>Ryan T. Schultz (*pro hac vice*)<br>Adam A. Hachikian (*pro hac vice*)<br>Kenneth M. Thomas (*pro hac vice*)<br>200 W. Madison Street, Suite 3000<br>Chicago, Illinois 60606<br>Telephone: (312) 224-1200<br>Facsimile:  (312) 224-1201<br>panderson@foxswibel.com<br>rschultz@foxswibel.com<br>ahachikian@foxswibel.com<br>kthomas@foxswibel.com |
| Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company), St. Paul Surplus Lines Insurance Company and Gulf Insurance Company (Appellants) | **REGER RIZZO & DARNALL LLP**<br>Louis J. Rizzo, Jr. (DE Bar No. 3374)<br>1521 Concord Pike Suite 305<br>Brandywine Plaza West<br>Wilmington DE  19803<br>Telephone: (302) 477-7100<br>Facsimile: (302) 652-3620<br>lrizzo@regerlaw.com |
| Lujan Claimants<br><br>(Appellants) | **LOIZIDES, P.A.**<br>Christopher D. Loizides (No. 3968)<br>1225 North King Street, Suite 800<br>Telephone: (302) 654-0248<br>Loizides@loizides.com<br><br>-and- |

10

A00498

| | |
|---|---|
| | **LUJAN & WOLFF LLP**<br>Delia Lujan Wolff<br>Suite 300, DNA Bldg.<br>238 Archbishop Flores St.<br>Hagatna, Guam 96910<br>Telephone: (671) 477-8064/5<br>dslwolff@lawguam.com |
| Dumas & Vaughn<br>Claimants<br>(Appellants) | **GELLERT SCALI BUSENKELL & BROWN LLC**<br>Charles J. Brown, III (No. 3368)<br>1201 N. Orange St., 3rd Floor<br>Wilmington, DE 19801<br>Telephone: (302) 425-5813<br>cbrown@gsbblaw.com<br><br>-and-<br><br>**DUMAS & VAUGHN, LLC**<br>Gilion C. Dumas<br>3835 NE Hancock Street, Suite GLB<br>Portland, OR 97212<br>Telephone: (503) 616-5007<br>gilion@dumasandvaughn.com |
| Boy Scouts of America,<br>Delaware BSA, LLC<br>(Debtors/Appellees and<br>Debtors in Possession) | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>dabbott@morrisnichols.com<br>aremming@morrisnichols.com<br>ptopper@morrisnichols.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Jessica C. Lauria (*pro hac vice*)<br>Glenn M. Kurtz (*pro hac vice*)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Email: jessica.lauria@whitecase.com<br>gkurtz@whitecase.com |

11

A00499

| | |
|---|---|
| | – and –<br><br>**WHITE & CASE LLP**<br>Michael C. Andolina<br>Matthew E. Linder<br>Laura E. Baccash<br>Blair M. Warner<br>111 South Wacker Drive<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>mandolina@whitecase.com<br>mlinder@whitecase.com<br>laura.baccash@whitecase.com<br>blair.warner@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Ronald K. Gorsich<br>Doah Kim<br>555 South Flower Street, Suite 2700<br>Los Angeles, CA 90071<br>Telephone: (213) 620-7700<br>rgorsich@whitecase.com<br>doah.kim@whitecase.com |
| Tort Claimants' Committee (Appellee) | **PACHULSKI STANG ZIEHL & JONES LLP**<br>Richard M. Pachulski (*pro hac vice*)<br>Alan J. Kornfeld (*pro hac vice*)<br>Debra I. Grassgreen (*pro hac vice*)<br>Iain A.W. Nasatir (*pro hac vice*)<br>James E. O'Neill (No. 4042)<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899-8705 (Courier 19801)<br>Telephone: (302) 652-4100<br>Fax: (302) 652-4400<br>Email: rpachulski@pszjlaw.com<br>akornfeld@pszjlaw.com<br>dgrassgreen@pszjlaw.com<br>inasatir@pszjlaw.com<br>joneill@pszjlaw.com |
| Coalition of Abused Scouts for Justice (Appellee) | **MONZACK MERSKY AND BROWDER, P.A.**<br>Rachel B. Mersky (No. 2049)<br>1201 North Orange Street, Suite 400<br>Wilmington, Delaware 19801<br>Telephone: (302) 656-8162 |

12

A00500

<table>
<tr><td></td><td>Fax: (302) 656-2769<br>Email: rmersky@monlaw.com<br><br>–and–<br><br>**BROWN RUDNICK LLP**<br>David J. Molton, Esq. (*pro hac vice*)<br>Eric R. Goodman, Esq. (*pro hac vice*)<br>Seven Times Square<br>New York, NY 10036<br>Telephone: (212) 209-4800<br>Fax: (212) 209-4801<br>Email: dmolton@brownrudnick.com<br>egoodman@brownrudnick.com<br><br>–and–<br><br>**BROWN RUDNICK LLP**<br>Sunni P. Beville, Esq. (*pro hac vice*)<br>Tristan G. Axelrod, Esq. (*pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 856-8200<br>Fax: (617) 856-8201<br>Email: sbeville@brownrudnick.com<br>taxelrod@brownrudnick.com</td></tr>
<tr><td>Future Claimants'<br>Representative<br>(Appellee)</td><td>**YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br><br>Robert S. Brady (No. 2847)<br>Edwin J. Harron (No. 3396)<br>Kenneth J. Enos (No. 4544)<br>Ashley E. Jacobs (No. 5635)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Fax: (302) 571-1253<br>Email: rbrady@ycst.com<br>eharron@ycst.com<br>kenos@ycst.com<br>ajacobs@ycst.com<br><br>-and-<br><br>**GILBERT LLP**<br>Kami E. Quinn (*pro hac vice*)</td></tr>
</table>

13

A00501

| | |
|---|---|
| | Rachel H. Jennings (*pro hac vice*)<br>Kyle Y. Dechant (*pro hac vice*)<br>December L. Huddleston (*pro hac vice*)<br>700 Pennsylvania Ave, SE<br>Suite 400<br>Washington, DC 20003<br>Telephone: (202) 772-2200<br>Fax: (202) 772-3333<br>Email: quinnk@gilbertlegal.com<br>jenningsr@gilbertlegal.com<br>dechantk@gilbertlegal.com<br>huddlestond@gilbertlegal.com |
| The Zalkin Law Firm, P.C. and Pfau Cochran Vertetis Amala PLLC (Appellees) | **KTBS LAW LLP**<br>Thomas E. Patterson (*pro hac vice*)<br>Daniel J. Bussel (*pro hac vice*)<br>Robert J. Pfister (*pro hac vice*)<br>Sasha M. Gurvitz (*pro hac vice*)<br>1801 Century Park East, Twenty-Sixth Floor<br>Los Angeles, California 90067<br>Telephone: (310) 407-4000<br>Fax: (310) 407-9090<br>Email: tpatterson@ktbslaw.com<br>dbussel@ktbslaw.com<br>rpfister@ktbslaw.com<br>sgurvitz@ktbslaw.com<br><br>-and-<br><br>**BIELLI & KLAUDER, LLC**<br>David M. Klauder, Esquire (No. 5769)<br>1204 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 803-4600<br>Fax: (302) 397-2557<br>Email: dklauder@bk-legal.com |
| Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, and Navigators Specialty Insurance Company (Appellees) | **BAYARD, P.A.**<br>Erin R. Fay (No. 5268)<br>Gregory J. Flasser (No. 6154)<br>600 North King Street, Suite 400<br>Wilmington, DE 19801<br>Telephone: (302) 655-5000<br>Fax: (302) 658-6395<br>Email: efay@bayardlaw.com<br>gflasser@bayardlaw.com<br><br>-and- |

14

A00502

| | **RUGGERI PARKS WEINBERG LLP**<br>James P. Ruggeri (*pro hac vice*)<br>Joshua D. Weinberg (*pro hac vice*)<br>1875 K Street, N.W., Suite 600<br>Washington, D.C. 20006-1251<br>Telephone: (202) 469-7750<br>Fax: (202) 469-7751<br><br>-and-<br><br>**WILMER CUTLER PICKERING HALE AND DORR LLP**<br>Philip D. Anker (*pro hac vice*)<br>7 World Trade Center<br>250 Greenwich Street<br>New York, N.Y. 10007<br>Telephone: (212) 230-8890<br>Fax: (212) 230-8888<br><br>Joel Millar (*pro hac vice*)<br>1875 Pennsylvania Avenue N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 663-6000<br>Fax: (202) 663-6363 |
|---|---|
| Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America<br>(Appellees) | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>800 N. West Street<br>Third Floor Wilmington, Delaware 19801<br>Telephone: 302 999 1540<br>Fax: 302 762 1688<br><br>-and-<br><br>**O'MELVENY & MYERS LLP**<br>Tancred Schiavoni (*pro hac vice*)<br>Times Square Tower<br>7 Times Square<br>New York, New York 10036-6537<br>Telephone: (212) 326-2000<br>Fax: (212) 326-2061<br><br>**O'MELVENY & MYERS LLP**<br>Stephen Warren (*pro hac vice*)<br>400 South Hope Street<br>Los Angeles, California 90071 |

15

A00503

| | |
|---|---|
| | Telephone: (213) 430-6000<br>Fax: (213) 430-6407<br><br>**O'MELVENY & MYERS LLP**<br>Jonathan D. Hacker (*pro hac vice*)<br>1625 Eye Street, N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 383-5300 |
| Federal Insurance<br>Company and<br>Westchester Fire<br>Insurance Company<br>(Appellees) | **STAMOULIS & WEINBLATT LLC**<br>Stamatios Stamoulis (No. 4606)<br>8000 N. West Street, Third Floor<br>Wilmington, Delaware 19801<br>Telephone: (302) 999-1540<br><br>-and-<br><br>**SIMPSON THATCHER & BARTLETT LLP**<br>David Elbaum (*pro hac vice*)<br>425 Lexington Avenue<br>New York, New York 10017<br>Telephone: (212) 455-2000 |
| American Zurich<br>Insurance Company,<br>American Guarantee<br>Insurance Company, and<br>Steadfast Insurance<br>Company<br>(Appellees) | **TYBOUT, REDFEARN & PELL**<br>Robert D. Cecil, Jr. (No. 5317)<br>501 Carr Road, Suite 300<br>Wilmington, Delaware 19899<br>Telephone: (302) 658-6901<br>Email: rcecil@trplaw.com<br><br>-and-<br><br>**CROWELL & MORING LLP**<br>Mark D. Plevin (*pro hac vice*)<br>Kevin D. Cacabelos (*pro hac vice*)<br>Three Embarcadero Center, 26th Floor<br>San Francisco, California 94111<br>Telephone: (415) 986-2800<br>Email: mplevin@crowell.com<br>kcacabelos@crowell.com<br><br>Tacie H. Yoon (*pro hac vice*)<br>Rachel A. Jankowski (*pro hac vice*)<br>1001 Pennsylvania Ave., N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 624-2500<br>Email: tyoon@crowell.com<br>rjankowski@crowell.com |

| | |
|---|---|
| Clarendon National Insurance Company, as successor in interest by merger to Clarendon America Insurance Company; River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited, on its own behalf and in turn as successor to St. Katherine Insurance Company Limited); and Zurich American Insurance Company, as successor to Maryland Casualty Company, Zurich Insurance Company, and Maryland General Insurance Company (Appellees) | **BALLARD SPAHR LLP**<br>Matthew G. Summers (No. 5533)<br>Chantelle D. McClamb (No. 5978)<br>919 N. Market Street, 11th Floor<br>Wilmington, Delaware 19801-3034<br>Telephone: (302) 252-4428<br>Fax: (302) 252-4466<br>Email: summersm@ballardspahr.com<br>mcclamb@ballardspahr.com<br><br>-and-<br><br>**STEPTOE & JOHNSON LLP**<br>Harry Lee (*pro hac vice*)<br>John O'Connor (*pro hac vice*)<br>1330 Connecticut Avenue NW<br>Washington, DC 20036<br>Telephone: (202) 429-8078<br>Fax: (202) 429-3902<br>Email: hlee@steptoe.com<br>joconnor@steptoe.com |
| Ad Hoc Committee of Local Councils of the Boy Scouts of America (Appellee) | **DLA PIPER, LLP (US)**<br>R. Craig Martin (No. 5032)<br>1201 North Market Street, Suite 2100<br>Wilmington, Delaware 19801-1147<br>Telephone: (302) 468-5655<br>Email: craig.martin@dlapiper.com<br><br>-and-<br><br>**WACHTELL, LIPTON, ROSEN & KATZ**<br>Richard G. Mason (*pro hac vice*)<br>Douglas K. Mayer (*pro hac vice*)<br>Joseph C. Celentino (*pro hac vice*)<br>Mitchell S. Levy (*pro hac vice*)<br>51 West 52nd Street<br>New York, New York 10019<br>Telephone: (212) 403-1000<br>Email: RGMason@wlrk.com<br>DKMayer@wlrk.com<br>JCCelentino@wlrk.com<br>MSLevy@wlrk.com |

17

A00505

Dated: April 24, 2023

SMITH, KATZENSTEIN & JENKINS LLP

*/s/ Kathleen M. Miller*
Kathleen M. Miller (No. 2898)
1000 West Street, Suite 501
P.O. Box 410
Wilmington, DE 19899
Telephone: (302) 652-8400
Email: kmiller@skjlaw.com

-and-

HANGLEY ARONCHICK
SEGAL PUDLIN & SCHILLER
Ronald P. Schiller
Matthew A. Hamermesh
One Logan Square, 27th Floor
Philadelphia, PA 19103
T: (215) 568-6200
F: (215) 568-0300
E: rschiller@hangley.com
mhamermesh@hangley.com

*Attorneys for Arch Insurance Company*

18

Case: 23-1664    Document: 62-1    Page: 531    Date Filed: 07/24/2023

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC | ) | Case No. 20-10343 (LSS) |
| | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## OPINION

### Introduction

This is an extraordinary case by any measure.

This is a mass tort case. It involves sexual abuse claims. The debtor, Boy Scouts of America ("BSA"), is a household name. It is a national, nonprofit organization. Over the one hundred plus years of its existence, BSA delivered its Scouting mission through, and in partnership with, tens of thousands of non-debtor entities.

This is a case about trust—or more accurately—lack of trust. Boys and their families put their faith in a lionized institution, which failed many of them. These boys—now men— seek and deserve compensation for the sexual abuse they suffered years ago. Abuse which has had a profound effect on their lives and for which no compensation will ever be enough. They also seek to ensure that to the extent BSA survives, there is an environment where sexual abuse can never again thrive or be hidden from view.

This is a case that has been emotionally charged. 82,209 claimants filed proofs of claim asserting sexual abuse. Claimants have actively participated in this case through an official creditors committee, an ad hoc committee and *pro se*. The court has received over 1000 letters from claimants who each have their own story to tell, many for the first time.

Given what is at stake, it is not surprising that claimants hold strongly different views regarding how this case should conclude, even whether this debtor should continue to exist.

This is also a case about an institution that seeks to continue with its mission. BSA currently serves over one million boys and girls across the country, providing them with opportunities to learn self-sufficiency and leadership skills that can contribute to the betterment of society.

Case: 23-1664    Document: 62-1    Page: 532    Date Filed: 07/24/2023

Case: 23-1664     Document: 62-1     Page: 533     Date Filed: 07/24/2023

## TABLE OF CONTENTS

BACKGROUND ................................................................................................ 1

I.   Prepetition ............................................................................................... 1

     A.  The Delivery of Scouting and the Relationship Between and Among BSA, Local
         Councils and Chartered Organizations ........................................................ 1

         1.  Boy Scouts of America ................................................................... 1

         2.  Local Councils .............................................................................. 2

         3.  Chartered Organizations ................................................................ 5

         4.  Related Non-Debtor Entities .......................................................... 6

     B.  Sexual Abuse Lawsuits .......................................................................... 7

     C.  Overview of the Boy Scouts Insurance Program ...................................... 10

         1.  Coverage Under BSA Insurance Policies ...................................... 10

             a.  Coverage for BSA as the Insured ........................................ 10

             b.  Coverage for Local Councils as Additional Insureds ............. 12

             c.  Coverage for Chartered Organizations as Additional Insureds .. 13

         2.  Overview of Local Council Insurance ............................................ 13

         3.  Chartered Organization Insurance Policies .................................... 14

         4.  Combined Single Limits ................................................................ 14

     D.  Prepetition Coverage Litigation .............................................................. 16

     E.  Prepetition Resolutions and Attempts to Resolve Abuse Claims ................ 19

II.  Postpetition Events ................................................................................... 20

     A.  The Bar Date ........................................................................................ 21

     B.  Mediation ............................................................................................. 24

     C.  The Plan Process and Voting .................................................................. 24

         1.  Solicitation ................................................................................... 24

         2.  The Initial Voting Results .............................................................. 29

         3.  Continued Mediation and Further Insurance Settlements ................ 30

         4.  Additional Settlements with Chartered Organizations ..................... 31

         5.  The Resolution with the TCC ....................................................... 33

         6.  The Settlement Trust Agreement and the Trust Distribution Procedures, as
             Amended .................................................................................... 35

             a.  The Settlement Trust Agreement ......................................... 35

             b.  The Trust Distribution Procedures ....................................... 36

A00509

7.  Chartered Organizations ................................................................ 44

    a.  Contributing Chartered Organizations ..................................... 45

    b.  Participating Chartered Organizations ..................................... 46

    c.  Opt-Out Chartered Organizations ............................................ 47

8.  Youth Protection.............................................................................. 48

9.  Plan Modifications, Supplemental Disclosure and Voting.................. 52

10. The Confirmation Hearing ............................................................... 53

    a.  The Objectors.......................................................................... 53

    b.  Plan Supporters ...................................................................... 56

    c.  The Hearing ............................................................................ 56

JURISDICTION ............................................................................................ 56

DISCUSSION ................................................................................................ 57

I.   Additional Findings Related to Direct Abuse Claims............................ 57

A.  The Aggregate Value of the Direct Abuse Claims ............................. 57

B.  The Potential Available Coverage of Non-Settling Insurance Companies for Allocated and Unallocated Claims ............................................................ 66

C.  The Plan is a 100% Plan with Respect to Direct Abuse Claims ...................... 69

II.  The Settlements.................................................................................... 72

A.  The Settling Insurer Settlements ...................................................... 73

B.  The Settling Insurer Settlements Meet the *Martin* Standard............................ 74

    1.  Hartford................................................................................... 76

    2.  Century.................................................................................... 77

    3.  Zurich...................................................................................... 79

    4.  Clarendon ................................................................................ 80

C.  The Buyback of the Abuse Insurance Policies ................................. 83

    1.  The Abuse Insurance Policies Issued by Hartford and Century as well as the Proceeds of Those Policies are Property of the Estate ........................... 87

    2.  The Automatic Stay Prevents a Sale Free and Clear of the Archbishop's Interests ...................................................................................... 93

        a.  The Buyback of the Abuse Insurance Policies is Not Part of the Claims Resolution Process.................................................... 94

        b.  A Violation of the Automatic Stay Does Not Depend on Whether the Prohibited Action May be Favorable to the Estate .............. 97

        c.  The "Dueling Debtor" Argument Favors the Archbishop ......... 99

ii

3. The Abuse Insurance Policies Can be Sold Free and Clear of the Lujan Claimants' Direct Action Rights ........................................................ 102

    a. The McCarran-Ferguson Act Does Not Reverse Preempt Any Code Section or Plan Provision that Permits the Channeling of Direct Abuse Claims to the Settlement Trust ..................................... 102

    b. Section 363(d)(1) Does Not Apply to the Lujan Claimants' Direct Action Rights .......................................................................... 110

    c. The Abuse Insurance Policies Can be Sold Free and Clear of the Lujan Claimants' Direct Action Rights Under § 363(f) ........................ 111

D. The Releases ........................................................................................... 113

1. The Scouting-Related Releases ........................................................ 114

    a. Definitions ................................................................................ 114

    b. The Third Circuit's Decision in *In re Continental Airlines Holding, Inc.* ................................................................................................ 115

    c. Subject Matter Jurisdiction ..................................................... 117

        i. Bankruptcy Jurisdiction Exists Over Direct Abuse Claims Asserted Against Local Councils and Chartered Organizations ................................................................................................ 117

        ii. Bankruptcy Jurisdiction Exists Over the Direct Abuse Claims Asserted Against the Related Non-Debtor Entities ......... 125

        iii. Bankruptcy Jurisdiction Exists Over Direct Abuse Claims Asserted Against Debtors' Officers and Directors and Other Representatives ............................................................... 125

    d. Statutory Authority ................................................................. 127

    e. The Scouting-Related Releases (Except with Respect to TCJC) Meet the *Continental* Standard ........................................................ 129

        i. The Parties' General Positions ...................................... 131

        ii. The *Master Mortgage* Factors ..................................... 133

            (a) Identity of Interest ................................................. 133

            (b) Contribution of Substantial Assets to the Reorganization ................................................................................................ 140

                (1) Settling Insurers ................................................. 141

                (2) Local Councils ................................................... 141

                (3) The Chartered Organizations ............................. 145

                    (i) United Methodist Entities ............................. 145

                    (ii) The Participating Chartered Organizations .... 146

iii

(iii) The Opt-Out Chartered Organizations ......... 148

(iv) Related Non-Debtor Entities and Representatives ................................................................. 148

(c)   A Substantial Majority of the Impacted Creditors Agree ................................................................. 149

(d)   The Plan Provides a Mechanism for the Payment of All, or Substantially All, of the Claims of the Class or Classes Affected by the Injunction .................................... 149

(e)   The Injunction is Essential to Reorganization Such that Without it There is Little Likelihood of Success ..... ................................................................. 151

iii.    The *Continental* Hallmarks ............................................. 163

E.  The TCJC Settlement .................................................................... 168

III.   The Findings .................................................................................... 171

A.  Finding x: The "Fair and Equitable" Finding .................................. 176

B.  Finding aa: The Historical Consistency Finding ............................. 184

C.  Finding w: The Binding Finding .................................................... 185

D.  Finding y: The Allowed Claim Finding ........................................ 187

E.  Finding z: The Good Faith Finding ............................................... 188

IV.   The Confirmation Standards – Section 1129 .................................... 189

A.  Section 1129(a)(1) ....................................................................... 189

1.  Section 1122 ......................................................................... 190

2.  Section 1123(a) ..................................................................... 194

a.  Section 1123(a)(4) ......................................................... 195

i.   Girl Scouts ................................................................. 195

ii.  The Lujan Claimants and I.G. .................................... 198

b.  Section 1123(a)(5) ......................................................... 200

c.  Section 1123(a)(7) ......................................................... 200

B.  Section 1129(a)(3) ....................................................................... 212

1.  The Certain Insurers' Objection ........................................... 213

a.  The Drafting of the TDP ................................................ 213

b.  The TCC Term Sheet .................................................... 217

c.  Quantum of Liability ..................................................... 222

d.  The Trust Distribution Procedures ............................... 224

iv

e. Statute of Limitations/Negligence ........................................... 232

2. The TDP Fees ..................................................................................... 235

3. The Lujan Claimants' Objection ...................................................... 238

4. Mr. Schwindler's Objection .............................................................. 238

C. Section 1129(a)(7) ........................................................................................... 239

1. Section 1129(a)(7) Applies to Nonprofits........................................ 242

2. All Other Objections are Overruled................................................. 242

V.    Remaining Insurance Issues................................................................................ 248

A. Assignment of Insurance Rights .................................................................. 248

B. Assignment of Non-Debtor Insurance Rights ........................................... 254

C. Indirect Abuse Claims/Setoff and Recoupment/Reinsurance/Self-Insured
Retentions ...................................................................................................... 256

VI.   The United States Trustee's Remaining Objections........................................ 261

A. The Consensual Third-Party Releases ........................................................ 261

B. Exculpation/Exculpation Injunction .......................................................... 267

VII.  Remaining Objections of Pro Se Claimants ..................................................... 268

VIII. Conclusion.............................................................................................................. 269

v

Case: 23-1664     Document: 62-1     Page: 538     Date Filed: 07/24/2023

# BACKGROUND[1]

## I.      Prepetition

### A.  *The Delivery of Scouting and the Relationship Between and Among BSA, Local Councils and Chartered Organizations*

#### 1.  *Boy Scouts of America*

BSA was created as a body corporate and politic of the District of Columbia by An Act of the Seventy-Fourth Congress of the United States on December 6, 1915 and signed into law by President Woodrow Wilson on June 15, 1916.[2]  It is a nonprofit entity.[3]  BSA's mission is to "promote, through organization, and cooperation with other agencies, the ability of boys to do things for themselves and others, to train them in Scoutcraft, and to teach them patriotism, courage, self-reliance, and kindred virtues, using the methods which are now in common use by Boy Scouts."[4]  BSA's Charter calls for an executive board comprised of United States citizens with the number, qualifications and term of office to be set forth in bylaws.[5]

---

[1]  This Opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52, made applicable in contested matters by Federal Rules of Bankruptcy Procedure 7052 and 9014(c).  These findings of fact draw on the trial testimony and the admitted exhibits.  Further, while I am making findings, much of the facts were uncontroverted.  The import of the facts, however, is very much in dispute.  I thank the parties for supplying a joint set of exhibits.  Individual exhibits are referred to as "JTX ___."  Transcripts of hearings [ECF 9341 (Day 1), 9354 (Day 2), 9389 (Day 3), 9406 (Day 4), 9407 (Day 5), 9454 (Day 6), 9455 (Day 7), 9482 (Day 8), 9490 (Day 9), 9497 (Day 10), 9517 (Day 11), 9530 (Day 12), 9562 (Day 13), 9563 (Day 14), 9564 (Day 15), 9578 (Day 16), 9616 (Day 17), 9638 (Day 18), 9639 (Day 19), 9646 (Day 20), 9648 (Day 21), and 9656 (Day 22)] are referred to by day of the trial, e.g. "Day 1 Hr'g Tr."  Capitalized terms not defined herein have the meaning ascribed to them in the Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [ECF 8813].

[2]  JTX 468; *see also* JTX 1-1 at 1.

[3]  JTX 1-1 at 1.

[4]  JTX 1-1 at 1.

[5]  JTX 468 Sec. 5.

1

Today, BSA is governed by a National Executive Board comprised of 72 volunteer members elected yearly at an annual May meeting.[6] The members of the National Executive Board are selected by the voting members of the National Council, who are 1200 volunteers, including the president and council commissioner of each Local Council.[7] Each Local Council also elects one additional Board member per every 5000 members of such Local Council.[8]

The National Executive Board created a 12-person National Executive Committee to carry out the Board's directives and manage BSA's day-to-day affairs.[9] Some of the National Executive Committee members chair various standing committees (e.g. audit, human resources, finance, mission, reputation and strategy committee).[10]

### 2. *Local Councils*

While BSA sets the content and structure of the Scouting program, to accomplish its mission, BSA relies on its 250 Local Councils.[11] A Local Council has jurisdiction over a set

---

[6] Day 1 Hr'g Tr. 19:20-25–20:1-3.

[7] Declaration of Devang Desai in Support of Confirmation of Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [ECF 9279; admitted into evidence Day 1 Hr'g Tr. 75:12-19] ("Desai Decl.") ¶ 6.

[8] Desai Decl. ¶ 6.

[9] Day 1 Hr'g Tr. 20:4-25–21:1.

[10] Day 1 Hr'g Tr. 20:4-25-21:1. Six of its members comprise the Bankruptcy Task Force, which was formed in July 2020 as a working group to interface with BSA's professional advisors on a regular basis to understand the bankruptcy restructuring process and advise the National Executive Committee and the National Executive Board on the process. Day 1 Hr'g Tr. 21:6-21.

[11] Declaration of Brian Whittman in Support of Confirmation of The Third Modified Fifth Amended Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [ECF 9280; admitted into evidence Day 2 Hr'g Tr. 38:6] ("Whittman Decl.") ¶ 14; Declaration of William S. Sugden in Support of Confirmation of The Third Modified Fifth Amended Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [ECF 9316; admitted into evidence Day 5 Hr'g Tr. 127:22-24] ("Sugden Decl.") ¶ 10.

Case: 23-1664     Document: 62-1     Page: 539     Date Filed: 07/24/2023

Case: 23-1664     Document: 62-1     Page: 540     Date Filed: 07/24/2023

geographical area within the United States.[12]  Each Local Council is a separate, independent

non-profit entity organized under the laws of its respective state, but consistent with BSA's

Bylaws and Rules and Regulations.[13]

BSA has an annual chartering process for all Local Councils and BSA can refuse to

renew or revoke a charter at any time in its sole discretion in the best interest of Scouting.[14]

The annual Local Council Charter sets out the relationship between the national

organization and Local Councils.[15]  Each Local Council is charged with ensuring that

BSA's Scouting program is available to all scout units (e.g. troops, dens, packs) in the Local

Council's area.[16]  This is accomplished by, among other things, "maintaining standards in

policies, protecting official badges and insignia and reviewing and making

recommendations regarding unit leadership and finances."[17]

Each Local Council is responsible for its own operations, including programming,

fund raising and recruiting membership into the Scouting program.[18]  Local Councils own

and operate their own camps and provide educational programs and leadership training.[19]

Local Councils collect membership fees and support the sale of Scouting merchandise.[20]

---

[12] JTX 468 Art. VI Sec. 1.

[13] Day 1 Hr'g Tr. 17:9-13; Whittman Decl. ¶ 14; Sugden Decl. ¶ 10; Desai Decl. ¶ 13, JTX 468 Art. VI Sec. 6.

[14] JTX 468 Art. VI Sec. 4; Day 1 Hr'g Tr. 17:14-15; *see e.g.*, JTX 7-3 (BSA-PLAN_00438595).

[15] Day 1 Hr'g Tr. 17:14-17; *see e.g.*, JTX 7-3.

[16] Desai Decl. ¶ 13.

[17] JTX 468 Art. VI Sec. 5; Day 1 Hr'g Tr. 17:18-18:2

[18] Day 1 Hr'g Tr. 17:18-21; *see* Sugden Decl. ¶ 11; Whittman Decl. ¶ 15.

[19] Whittman Decl. ¶ 15.

[20] Sugden Decl. ¶ 11.

3

Local Councils also recruit Scouts and volunteer leaders, provide opportunities for rank advancement and enforce BSA rules and regulations.[21]

In exchange for shared services, other fees and reimbursements and for their assistance in delivering the Scouting mission, BSA provides to Local Councils certain back-office functions, such as IT services and HR services and also permits Local Councils to use BSA's intellectual property, trademarks, logos and badges.[22] BSA also maintains the Boy Scouts of America Retirement Plan for Employees Pension Plan, which covers Local Council employees.[23] The Pension Plan has filed tax returns as a "single employer pension plan" with BSA and all Local Councils defined as a "single controlled group of participating employers under common control."[24]

BSA also has a residual interest in all Local Council property.[25]

---

[21] Whittman Decl. ¶ 15.

[22] Day 1 Hr'g Tr. 17:21-24; Sugden Decl. ¶ 11; Whittman Decl. ¶ 17.

[23] Whittman Decl. ¶ 252 n.46.

[24] Whitman Decl. ¶ 252 n.46.

[25] JTX 468 Art. VI Sec. 1. Article VI, Section 1, Clause 2 of the Boy Scouts of America National Council Bylaws provides:

> Constructive Trust on Council Properties. All funds raised and property owned by local councils in the name of Scouting shall be subject to and in accordance with the principles of a construction trust for the benefit of Scouting as set forth in the Rules and Regulations of [BSA]. The National [Executive] Council may request councils to provide information regarding assets, funds, properties, and indebtedness, and councils shall supply such information in a timely manner. Upon termination of a local council charter or dissolution of a council, all rights of management and ownership of local council property shall become vested in the National [Executive] Council for use in accordance with the Rules and Regulations of [BSA]. Local council articles of incorporation and bylaws shall include or be revised to incorporate this provision at the time of chartering or the next charter renewal.

*See also* JTX 147 Art. X Sec. 2. Article X Section 2 of Local Council Bylaws (October 2017) which, in pertinent part, provides:

> The corporation may hold title to real property in its own name provided it is stated in the deed that in the event of the dissolution of the council or the revocation or lapse of its charter said trustee or trustees will, after satisfying any claims against such unit or council to which

4

### 3. *Chartered Organizations*

To accomplish its mission, BSA also relies on tens of thousands of Chartered Organizations which work directly with Local Councils to help deliver Scouting in their respective local communities.[26] Chartered Organizations can be religious, civic or community institutions.[27] In general, Chartered Organizations provide facilities for Scout meetings and other infrastructure at the local level; they can also provide assistance with selection of troop leaders and volunteers.[28]

The relationship between a Local Council and a Chartered Organization is memorialized in an Annual Unit Charter Agreement which spells out their respective obligations.[29] Among other things, the Local Council is to provide camping opportunities, administrative support and professional staff to assist the Chartered Organization.[30] The exact role of the Chartered Organization can vary. Sometimes a Chartered Organization

---

such real estate may be subject, convey said property or, if sold, pay the net proceeds of such sale in accordance with the Bylaws and Rules and Regulations of the Boy Scouts of America.

The corporation may hold title to real property and maintain accounts wherein securities or funds are deposited in the corporation's name provided, however, in accordance with the Bylaws and Rules and Regulations of the Boy Scouts of America, such assets are deemed to have been raised or obtained for the benefit of Scouting of America and are subject to a constructive trust for the benefit of Scouting. Either the Articles of Incorporation or the Bylaws shall be filed with the applicable state agency maintaining corporate records to provide public notice of such constructive trust and notice that the assets, real property or net proceeds from the conveyance of real property are subject to such a restriction in the event of the dissolution of the local council or the revocation or lapse or its charter.

[26] Sugden Decl. ¶ 55; Whittman Decl. ¶ 16. A complete list of Chartered Organizations can be found at *Boy Scouts of America Restructuring Website*, http://omniagentsolutions.com/bsa/ (last visited July 21, 2022).

[27] Day 1 Hr'g Tr. 18:9-10; Sugden Decl. ¶ 10; Whittman Decl. ¶ 16.

[28] Day 1 Hr'g Tr. 18:12-18; Sugden Decl. ¶ 10; Whittman Decl. ¶ 16.

[29] Whittman Decl. ¶ 16; JTX 264; JTX 358.

[30] Day 1 Hr'g Tr. 17:18-18:2; Desai Decl. ¶ 13; JTX 264.

5

Case: 23-1664     Document: 62-1     Page: 542     Date Filed: 07/24/2023

merely provides use of a building, sometimes members of the organization are volunteers and sometimes members of the organization (or their children) are Scouts.[31]  In any event, for its part, the Chartered Organization utilizes the Scouting program to further the specific goals of the Chartered Organization related to youth character development, career skill development, community service, patriotism and military and veteran recognition or faith-based youth ministry.[32]

The Chartered Organization also participates in Local Council leadership.  The BSA Charter provides that the membership of each Local Council shall consist of a Chartered Organization representative from each Chartered Organization as well as members at large.[33]

### 4. Related Non-Debtor Entities

BSA receives services from six non-debtor affiliates which are directly or indirectly wholly-owned by, or subject to the control of, BSA.  BSA Asset Management, LLC is a Delaware limited liability company providing investment management and advisory services to BSA.[34]  It also manages BSA's and certain Local Councils' investments through the BSA Commingled Endowment Fund, LP ("Endowment Fund").[35]  BSA Endowment Master Trust is a nonprofit trust established for investing funds contributed by BSA and certain Local Councils in the Endowment Fund.[36]  The National Boy Scout Foundation is a

---

[31] Day 5 Hr'g Tr. 97:1-18.

[32] Day 5 Hr'g Tr. 97:1-18.; JTX 264.

[33] JTX 468 Art. VI Sec. 7.

[34] Whittman Decl. ¶ 19.

[35] Whittman Decl. ¶ 19.

[36] Whittman Decl. ¶ 20.

6

nonprofit corporation that partners with certain Local Councils to provide support for major-gift fundraising efforts.[37] Learning for Life is a nonprofit corporation providing career education and mentorship programs.[38] Arrow WV, Inc. is a nonprofit corporation that owns, develops and leases the Summit High Adventure Base in West Virginia to BSA.[39] Atikaki Youth Ventures Inc. and Atikokan Youth Ventures Inc. are nonshare capital corporations formed under the laws of Canada owning and operating portions of the Northern Tier High Adventure Base.[40]

## B. *Sexual Abuse Lawsuits*

Notwithstanding BSA's laudable mission, prepetition, BSA, Local Councils and Chartered Organizations were named as defendants in hundreds of lawsuits in which plaintiffs alleged sexual abuse ("Abuse").[41] The complaints detail horrific allegations ranging from harassment to inappropriate touching to penetration.[42] Some complaints

---

[37] Whittman Decl. ¶ 21.

[38] Whittman Decl. ¶ 22.

[39] Whittman Decl. ¶ 23.

[40] Whittman Decl. ¶ 24.

[41] *See e.g.,* JTX 2232, JTX 2910 through 2923, JTX 2926 through 2930, JTX 2940 through 2942, and JTX 2945. "Abuse" is defined in the Plan as:

> sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, indecent assault or battery, rape, pedophilia, ephebophilia, sexually related psychological or emotional harm, humiliation, anguish, shock, sickness, disease, disability, dysfunction, or intimidation, any other sexual misconduct or injury, contacts or interactions of a sexual nature, including the use of photography, video, or digital media, or other physical abuse or bullying or harassment without regard to whether such physical abuse or bullying is of a sexual nature, between a child and an adult, between a child and another child, or between a non-consenting adult and another adult, in each instance without regard to whether such activity involved explicit force, whether such activity involved genital or other physical contact, and whether there is or was any associated physical, psychological, or emotional harm to the child or non-consenting adult.

Plan Art. I.17.

[42] *See e.g.,* JTX 2911, 2921.

7

detail one event of Abuse while others detail a protracted "grooming" process.[43]  Some

complaints contain lengthy and detailed allegations of rampant child Abuse within Scouting

ranks since at least 1920 and further allege that BSA kept secret records of volunteers who

were alleged to have molested Scouts (the so-called ineligible volunteer files or perversion

files).[44]

     Plaintiffs allege that BSA, Local Councils and Chartered Organizations comprise a

"tightly integrated, hierarchal organizational" under BSA's "control at the top."[45]  Some

complaints allege this relationship places BSA in direct control over Local Councils and

Chartered Organizations[46] while others assert Local Councils and Chartered Organizations

---

[43] See *e.g.*, JTX 2919, 2920, 2921.

[44] *See e.g.,* JTX 2913, 2916, 2921.

[45] *See e.g.,* JTX 2912, 2920, 2921.

[46] *See e.g.,* JTX 2910 ¶ 5 (BSA and the Aloha Council Cahmorro District "have power to appoint, supervise, monitor, restrict and fire each person working with children within the Defendants' Scouting program."); ¶ 6 (at all times the perpetrator "was under the supervision" of BSA and the Aloha Council Cahmorro District.").

8

are acting within their scope of authority as BSA's agents.[47]  Other complaints similarly

allege that adult volunteers are BSA's agents and are approved only with BSA's blessing.[48]

Plaintiffs assert various legal theories for holding some or all defendants liable for the

harm suffered, including negligence, gross negligence, negligent retention, negligent

supervision, fraudulent concealment, willful and wanton misconduct, constructive fraud

and breach of fiduciary duty.[49]  Some complaints contain separate allegations and/or counts

---

[47] *See e.g.*, JTX 8; 2919. *See also* JTX 2921:

> 30.  A local scouting troop cannot exist without the support of a chartering organization that has received a charter from the BSA authorizing the chartering organization to implement and run the BSA's scouting program.

> 35.  This chartering system reveals the BSA's consent to allow local chartering organization to operate the scouting program on its behalf and the chartering organizations' consent to operate the local troops subject to the BSA's control or right to control.  Accordingly, the chartering organizations, such as SILVER SPRINGS SHORES, are the agents of the BSA.

> 36.  The BSA uses a similar structure in relation to its local Councils, such as the NORTH FLORIDA COUNCIL.  The BSA issues a charter to an approved local Council authorizing the local Council to administer the scouting program to the local scout troops within the region on behalf of the BSA.

> 40.  The Chartering system shows the BSA's consent to allow local Councils to operate the scouting program on its behalf within a specific geographic region, and the local Councils consent to operate the scouting program subject to the BSA's control or right to control.  Thus, the local Councils are agents of the BSA.

> 41.  The BSA cannot operate its scouting program without the consent and cooperation of the local Councils and chartering organizations.  Conversely, the chartering organizations and local Councils cannot operate and supervise local scouting troops with the consent of the BSA.

> 42.  At all relevant times, Defendant NORTH FLORIDA COUNCIL and/or Defendant SILVER SPRINGS SHORES were serving as Defendant the BSA's agents by implementing and maintaining the BSA's scouting program on a local level.

[48] *See e.g.*, JTX 8 (BSA-PLAN_01088771) ¶ 42 ("Collectively, BSA, the Local Councils, and the local organizations would select the leaders of the Boy Scout Troops. . . although BSA retained and exercised the ultimate authority to decide who could be a Troop Leader.  BSA also had the right to control the means and manner of staffing, operation, and oversight of any Boy Scout Troop[.]"); JTX 2912, 2913, 2919, 2921.

[49] *See e.g.*, JTX 2910, 2911, 2913, 2921.

9

against each named defendant.[50] Other complaints lump defendants together, or define "Defendants" as all named defendants, attributing all conduct to all defendants.[51] Plaintiffs seek both economic and non-economic damages, punitive damages and non-monetary relief such as posting the names of known abusers, establishing a toll free number to report abuse and sending letters of apology.[52]

### C. Overview of the Boy Scouts Insurance Program

#### 1. Coverage Under BSA Insurance Policies

##### a. Coverage for BSA as the Insured

BSA has had some form of primary and/or excess comprehensive general liability insurance in place covering Abuse claims since at least 1935.[53] The terms of BSA's policies vary over time and include policies that have a per occurrence limit, an aggregate limit or both.[54]

For the years 1935 through most of 1971, and 1979 through approximately 1996, Insurance Company of North America (Century)[55] issued primary insurance policies to BSA

---

[50] *See e.g.,* JTX 2920, 2921.

[51] *See e.g.,* JTX 2917, 2918.

[52] *See e.g.,* JTX 2910 through 2912.

[53] Day 9 Hr'g Tr. 12:10-11; Declaration of Nany Gutzler [ECF 9398; admitted into evidence Day 9 Hr'g Tr. 8:14] ("Gutzler Decl.") ¶ 9. Consistent with the agreement reached by the parties to resolve various motions *in limine*, Ms. Gutzler's testimony (and thus my findings that rely on it) is not being admitted for the purpose of determining insurance coverage issues. *See* Agreed Order Regarding Certain Insurers' Motion *in Limine* to Exclude Opinion Testimony of Nancy Gutzler, Katheryn McNally and Mark Kolman and Denying Certain Insurers' Motion *in Limine* to Exclude Testimony of Michael Burnett [ECF 9411].

[54] Gutzler Decl. ¶¶ 7, 8.

[55] Century Indemnity Company ("Century"), is the successor to CCI Insurance Company, the successor to Insurance Company of North America and Indemnity Insurance Company of North America ("INA"). Century Indemnity Company's Memorandum of Law in Support of Approval of the Century and Chubb Companies' Settlements Incorporated into the Debtors' Chapter 11 Plan [ECF 9111].

A00523

with varying per occurrence limits, but no aggregate limits for Abuse claims.[56] From September 1971 to 1978, Hartford[57] issued primary policies to BSA that also contained per occurrence limits, but no aggregate limits for Abuse claims.[58]

Beginning in 1969 and through 1982, in addition to primary coverage, BSA began to purchase excess insurance policies.[59] The vast majority of the excess policies provided per occurrence limits, but no aggregate limit.[60] Accordingly, once the underlying primary insurance is exhausted, the excess policies may need to pay the per occurrence limits numerous times without exhausting.[61] Certain of the excess policies in these years have settled, but others are available to provide coverage.[62]

Beginning in 1983, BSA insurance policies generally provide for aggregate limits applicable to Abuse claims.[63] BSA also began procuring significantly more excess insurance with higher aggregate limits.[64]

From 1986 through 2018, BSA purchased primary and first-layer excess "matching deductible policies" that require BSA to pay or reimburse deductibles before excess coverage

---

[56] Gutzler Decl. ¶ 9; ¶ 79.

[57] Hartford means Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company and Navigators Specialty Insurance Company ("Hartford").

[58] Gutzler Decl. ¶ 9; ¶ 64.

[59] Gutzler Decl. ¶ 10.

[60] Gutzler Decl. ¶ 10.

[61] Gutzler Decl. ¶ 10; Day 9 Hr'g Tr. 13-14.

[62] Day 9 Hr'g Tr. 13-14.

[63] Gutzler Decl. ¶ 11; Day 9 Hr'g Tr. 14:21-25.

[64] Gutzler Decl. ¶ 11.

11

attaches over and above either a primary policy or a first-layer excess policy.[65]  Also, from

1986 through 2018, BSA purchased multiple layers of excess insurance that, in most years,

provide over $140 million in excess insurance coverage.[66]

From 1983 forward, certain policies are exhausted, and certain insurers are insolvent,

but there is $3.6 billion worth of available aggregated coverage, the actual value of which

will not be known until all claims have hit the policies and been paid.[67]

### b. Coverage for Local Councils as Additional Insureds

Prior to 1971, Local Councils were not covered under BSA insurance policies.[68]

Beginning in 1971 through 1974, BSA gave Local Councils the ability to pay a premium to

become an additional insured under BSA's general commercial liability policies.[69]  Many

Local Councils availed themselves of this opportunity and by 1975 a substantial number of

Local Councils were additional insureds under BSA policies.[70]

From 1975 through the end of 1977, all Local Councils were additional insureds

under Hartford's insurance policies issued to BSA.[71]  Beginning in 1978 through the present,

BSA implemented a General Liability Insurance Program by which all Local Councils were

added as named insureds under insurance policies issued to BSA.[72]

---

[65] Gutzler Decl. ¶ 12; Day 9 Hr'g Tr. 15:15-19.

[66] Gutzler Decl. ¶ 13.

[67] Gutzler Decl. ¶ 11; Day 9 Hr'g Tr. 18:7-12.

[68] Gutzler Decl. ¶ 16.

[69] Gutzler Decl. ¶ 17.

[70] Gutzler Decl. ¶ 17.

[71] Gutzler Decl. ¶ 18; Day 9 Hr'g Tr. 19:6-7.

[72] Gutzler Decl. ¶ 18.

12

Case: 23-1664     Document: 62-1     Page: 549     Date Filed: 07/24/2023

### c. Coverage for Chartered Organizations as Additional Insureds

Prior to 1976, BSA's insurance policies did not include language that referenced Chartered Organizations.[73] Beginning in 1976, BSA policies issued by Hartford included an endorsement referencing "sponsors" as additional insureds.[74] Then, in 1978, BSA began to include Chartered Organizations as insureds under BSA insurance policies, with some variation in coverage provided by primary and excess layers.[75]

### 2. Overview of Local Council Insurance Policies

KCIC (Debtors' retained insurance consultant) undertook significant efforts to locate evidence of insurance purchased separately by Local Councils that may be available to respond to claims of Abuse.[76] KCIC's efforts brought forth primary and secondary evidence that: (i) from 1965 to 1972, the Insurance Company of North America administered a Scout Blanket Liability Program under which Local Councils could apply for insurance with limits of $250,000, $500,000 or $1,000,000.[77] Approximately 300 Local Councils participated in this program.[78] Policies issued under the Scout Blanket Liability Program also insured Chartered Organizations.[79]

Evidence also exists that Hartford, New Hampshire Insurance Company, Travelers Insurance Companies, Maryland Casualty Company and CNA subsidiaries issued policies

---

[73] Gutzler Decl. ¶ 19.

[74] Gutzler Decl. ¶ 19.

[75] Gutzler Decl. ¶ 19.

[76] Gutzler Decl. ¶ 20; Day 9 Hr'g Tr. 19:21-22:11.

[77] Gutzler Decl. ¶ 22.

[78] Gutzler Decl. ¶ 22.

[79] Day 9 Hr'g Tr. 103:22-104:2.

to Local Councils.[80]  Certain of these policies may have included Chartered Organizations

as additional insureds, but others had no reference to Chartered Organizations or sponsors.[81]

### 3. Chartered Organization Insurance Policies

KCIC did not undertake to do any analysis of insurance that Chartered

Organizations may have obtained on their own.

### 4. Combined Single Limits[82]

Separate and apart from any aggregate limits, the primary BSA insurance policies,

while again, varying in terms, generally provide for a Combined Single Limit.  For example,

the INA policy in place for the period 1/1/78 to 1/1/81 provides:

> Regardless of the number of (1) Insureds under this policy, (2) persons or
> organizations who sustain personal injury, property damage or malpractice or (3)
> claims made or suits brought on account of personal injury, property damage or
> malpractice, the Company's liability is limited as follows:
>
> Personal Injury Liability, Property Damage Liability and Malpractice Liability, the
> limit of the company's liability for all damages, including damages for care and loss
> of services, arising out of personal injury, including death at any time resulting there
> from, sustained by one or more persons and for all damages, including damages for
> loss of use, arising out of injury to or destruction of property, shall not exceed the
> amount stated in the declarations as a single limit as the result of any one
> occurrence.
>
> For the purposes of determining the limit of the Company's liability, all personal
> injury, properly damage and malpractice arising out of continuous or repeated
> exposure to substantially the same general conditions shall be considered as arising
> out of one occurrence.

---

[80] Gutzler Decl. ¶¶ 23, 24.

[81] Gutzler Decl. ¶¶ 25, 26; Day 9 Hr'g Tr. 22:7-19, 104:3-105:17.

[82] Because of the voluminous nature of the insurance policies, I asked the parties to submit an
agreed upon representative set of insurance policies for the record.  Day 8 Hr'g Tr. 202:14-23; Day 9
Hr'g Tr. 202:3-11.  This directive resulted in three stipulations: (i) Joint Stipulation Between
Debtors, Century, Hartford, Zurich and Clarendon Regarding Admission of Insurance Policies
[ECF 9508] and (ii) Stipulation Among Debtors and Debtors in Possession, and Munich
Reinsurance America, Inc., formerly known as American Re-Insurance Company, Regarding Policy
NO. M-1027493 [ECF 9510] and (iii) Joint Stipulation Between Debtors and Certain Insurers
Regarding Admission of Insurance Policies [ECF 9529].

14

The inclusion in this policy of more than one insured shall not operate to increase the limits of the company's total liability to all insureds covered by this policy beyond the limits set forth in the declarations. [83]

Similarly, the Hartford policy for the period for 1/1/72 to 1/1/73 provides:

III. Limits of Liability

Regardless of the number of (1) insureds under the policy, (2) persons or organizations who sustain bodily injury or property damage, or (3) claims made or suits brought on account of bodily injury or property damage, the company's liability is limited as follows:

Coverage A – The limit of bodily injury liability stated in the schedule as applicable to "each person" is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one occurrence; but subject to the above provision respecting "each person", the total liability of the company for all damages because of bodily injury liability stated in the schedule as applicable to each occurrence. [84]

---

[83] JTX 4000-2 at BSA-PLAN_00485363 (INA policy for period 1/1/78-1/1/81 issued to BSA); *see also* JTX 4000-4 at BSA-PLAN_00486961 (INA policy for period 3/1/90 to 3/1/91 issued to BSA) (same); JTX 4000-6 at ABC000056262 (INA policy for period October 20, 1967 to October 20, 1970 issued to Keystone Area Council Boy Scouts of America) ("Regardless of the number of (i) Insureds under this policy . . . INA's liability is limited as follows: With respect to Bodily Injury Liability, the limit of liability stated I the declarations as applicable to 'each person' is the limit of INA's liability for all damages because of bodily injury sustained by one person as the result of any one occurrence . . .").

[84] JTX 4000-8 at HFBKPLAN016202 (Hartford policy for period 1/1/72-1/1/73 issued to BSA); JTX 4000-9 at HFBKPLAN015060, HFBKPLAN015184 (Hartford policy for period 1/1/75-1/1/76 issued to BSA) (substantially the same); JTX 4000-10 at BSA-PLAN_00251757 (Hartford policy for period 1/1/77-1/1/78 issued to BSA)("Regardless of the number of (i) insureds under this policy . . .Coverage A — The total liability of the company for all damages, including damages for care and loss of services, because of bodily injury sustained by one or more persons as the result of any one occurrence shall not exceed the limit of bodily injury liability stated in the schedule as applicable to 'each occurrence'."); JTX 4000-11 at HART-BK001457, HART-BK001458 (Hartford policy for period 10/29/70 to 10/29/73 issued to Hawk Mountain Council Boy Scouts) (substantially the same); JTX 4000-12 at HFBKPLAN011755 (Hartford policy for period 7/1/72-8/31/73 issued to Golden Empire Council) (substantially the same); JTX 4000-13 at HFBKPLAN012410 (Hartford umbrella policy effective date 3/10/75 issued to Lewiston Trail Council) ("Limits of Liability: Regardless of the number of persons and organizations who are *insureds* under this policy and regardless of the number of claims made and suits brought against any or all *insureds*, the total limit of the company's liability for *ultimate net loss* resulting from any one occurrence shall be the *occurrence* limit stated in the declarations; provided, however, that the company's liability shall be further limited to the amount stated as the aggregate limit in the declarations with respect to all *ultimate net loss* caused by one or more *occurrences* during each annual period while this policy is in force commencing from its effective date and arising out of either (1) *products-completed operations liability*; or (2) occupational diseases of employees of *insureds*, such limit applying separately to (1) and (2).") .

15

Case: 23-1664    Document: 62-1    Page: 552    Date Filed: 07/24/2023

Century argues that provisions like the above establish that the single limit (e.g. $500,000 per occurrence) is the limit of the policy regardless of the number of insureds.[85] If BSA, a Local Council and a Chartered Organization are all insureds under a BSA purchased policy and the per occurrence limit is $500,000, the insurer must pay, at most, $500,000 for an occurrence of Abuse and not $1,500,000.

### D. *Prepetition Coverage Litigation*

Pre-bankruptcy, BSA, certain Local Councils and multiple insurance companies were litigating insurance coverage issues in two jurisdictions.

In 2017, National Surety Corporation sued BSA, Chicago Area Council, Inc,. Boy Scouts of America and Chicago Area Council Boy Scouts of America, Inc. along with 21 other insurance companies in Illinois state court seeking declaratory relief related to excess liability policies issued to BSA for policy years 1983 and 1984.[86] Specifically, National Surety Corporation alleges that no coverage exists with respect to certain underlying lawsuits alleging Abuse by repeat abuser Thomas Hacker and thus, it had no duty to defend or indemnify its insured.[87] The underlying lawsuits allege that BSA knew that Hacker was a predator and permitted and/or failed to prevent the Abuse. National Surety Company

---

[85] Through counsel's objections to questions directed to Ms. Gutzler, the Guam Committee suggested this is a contested insurance coverage issue. Regardless, I find and conclude for purposes of confirmation only and the issues I must decide that Century's reading of the policy and its position on any coverage dispute is at least as plausible as the Guam Committee's. As such, and as discussed *infra*, any payout on the policy to a Local Council or a Chartered Organization defeats BSA's ability to draw on the policy for the same occurrence.

[86] JTX 162 ¶ 1, JTX 202 ¶ 1.

[87] Thomas Hacker was a notorious abuser who was convicted of sexual misconduct (unrelated to Scouting) in 1970 and was placed in the ineligible volunteer files at that time. He later moved, registered with Scouting under an alias and went undetected. He abused numerous boys. After losing defense motions based on statute of limitations, BSA ultimately settled with sixteen plaintiffs for $89.1 million. *See* Day 2 Hr'g Tr. 122:3-124:7.

16

Case: 23-1664    Document: 62-1    Page: 554    Date Filed: 07/24/2023

asserts multiple reasons for lack of coverage, including that: (i) the alleged conduct was not an "accident," (ii) the alleged conduct was "expected or intended," (iii) punitive damages are not insurable, (iv) the underlying insurance was not exhausted and (v) there is no coverage for personal injury which takes place outside the coverage period.[88]

In this Illinois litigation, the Chubb Defendants and Century assert a counterclaim against BSA and Chicago Area Council.  These insurers allege, among other things, that the policies issued by Century to BSA during the relevant years do not provide coverage for two of the plaintiffs in the underlying lawsuit because the agreed-to settlement amounts were unreasonable or attributable to punitive damages exposure.[89]

In 2018, BSA and certain Local Councils sued The Hartford Accident and Indemnity Co., and First State Insurance Co. in a Texas state court seeking declaratory judgments regarding defendants' coverage obligations.[90]  BSA and the Local Councils allege that they are defendants in lawsuits alleging Abuse over multiple periods and in multiple geographic locations on the theory that BSA and the Local Councils were negligent in failing to prevent the Abuse.  In this coverage action, BSA and the Local Councils assert that a dispute exists because the insurance companies have denied coverage contending that: (i) claims throughout the country against BSA asserting Abuse are the result of a single occurrence and thus the policies are exhausted after payment of one claim; (ii) there is a lack of evidence that certain claimed policies exist; (iii) certain policies are exhausted as aggregate

---

[88] *See generally* JTX 202.

[89] JTX 202 Counterclaim Count I ¶¶ 3-4.

[90] JTX 181.

17

Case: 23-1664     Document: 62-1     Page: 555     Date Filed: 07/24/2023

limits have been paid and (iv) for certain renewed policies, only one occurrence is permitted for all periods.[91]

Separately, in 2018, BSA and certain Local Councils sued Insurance Company of North America, Century Indemnity Company, Allianz Global Risks US Insurance Company ("Allianz") and National Surety Corporation in a Texas state court seeking declaratory relief that coverage is available under numerous insurance policies for several underlying lawsuits alleging Abuse.[92] In the complaint, BSA and the Local Councils allege that "the significant increase in sexual abuse claims over the last several years has resulted in an increase in disputes with [BSA's and plaintiff Local Councils'] insurers.[93] BSA seeks to resolve various disputes with the defendant insurance companies, including application of the First Encounter Agreement[94] to the underlying lawsuits, failure to pay defense costs and

---

[91] JTX 181; *see also* JTX 182. Hartford also filed an adversary proceeding in the bankruptcy case, *see* Adv. Pro. No. 20-50601.

[92] JTX 185.

[93] JTX 185 ¶ 37.

[94] The First Encounter Agreement is between BSA, INA and Century:

Q: Okay. So let's just take a look at that. This is an agreement. Who is it between?

A: The Boy Scouts, along with INA and Century Indemnity.

Q: Okay. And what did you understand this agreement to be?

A: This is the -- what -- what I've been calling it, the "first encounter agreement." It has a section within the agreement that says that they will consider the date of first abuse or the first encounter as the single trigger date.

Q: Okay. And where are you looking, in terms of the application of that first encounter?

A: So Paragraph 7 reads:

"The 'first encounter rule' shall mean that, for purposes of determining coverage under any policy, the date of occurrence pertaining to any sexual molestation claim shall be the date when the first act of sexual molestation took place, even if additional acts of sexual molestation or additional personal injuries arising therefrom also occurred in subsequent

18

failure to indemnify BSA for settlements paid to plaintiffs in the underlying lawsuits.

Further, BSA accuses Allianz of unfair or deceptive acts or practices.

### E. Prepetition Resolutions and Attempts to Resolve Abuse Claims

In August 2016, Debtors retained Ogletree Deakins Nash, Smoak & Stewart, P.C. ("Ogletree") as its national coordinating counsel to oversee Abuse litigation; Bruce Griggs is the engagement partner.[95] At its height, Mr. Griggs oversaw a team of six attorneys and three paralegals working on approximately 350 claims asserting Abuse against BSA, Local Councils and/or Related Non-Debtor Entities.[96] He was aware of claims made against BSA, Local Council and Chartered Organizations together; conversely, Mr. Griggs was not aware of any claims made against a Chartered Organization that did not include claims against either BSA or a Local Council.[97] A claim could consist of a lawsuit or a pre-suit demand letter.[98] From its engagement through February 2020, Ogletree resolved approximately 250 of the 350 claims it was handling.[99]

In preparation for his role as BSA's national coordinating counsel, Mr. Griggs familiarized himself with BSA's prior defense strategy.[100] Prior to Ogletree's retention, BSA

---

policy periods. And all damages arising out of such additional acts of sexual molestation or additional personal injuries shall be deemed to have been occurred" – "incurred during the policy year when the first act of sexual molestation took place."

Day 9 Hr'g Tr. 31:24-32:21.

[95] Declaration of Bruce Griggs in Support of Confirmation of The Third Modified Fifth Amended Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [ECF 9273; admitted into evidence Day 2 Hr'g Tr. 58:9-12] ("Griggs Decl.") ¶ 3.

[96] Griggs Decl. ¶¶ 3, 7.

[97] Griggs Decl. ¶ 6.

[98] Griggs Decl. ¶ 11.

[99] Griggs Decl. ¶ 7.

[100] Griggs Decl. ¶ 4.

19

secured releases for applicable Local Councils and Chartered Organizations when settling cases brought against BSA.[101]  In keeping with BSA's previous practice, Mr. Griggs also obtained releases for Local Councils and Chartered Organizations when settling claims against BSA[102]

In October 2019, BSA invited certain attorneys representing survivors to New York City for a mediation session to attempt an out-of-court resolution of Abuse claims.[103]  The lawsuits were straining BSA's finances and BSA determined it could not continue to address the lawsuits on a case-by-case basis.[104]  At that time, BSA was named as a defendant in approximately 275 lawsuits asserting Abuse and the pace of filings was accelerating driven at least in part by state legislation loosening applicable statutes of limitations.[105]  BSA was also aware of 1400 other claims not yet the subject of lawsuits.[106]  The meeting was unsuccessful.

From 2017 through 2019, BSA spent more than $150 million on settlements and legal and related professional fees and costs in addressing Abuse claims.[107]

## II.   Postpetition Events

Debtors each filed a voluntary petition under chapter 11 of the United States Bankruptcy Code on February 18, 2020 (the "Petition Date").  The filing was driven by the

---

[101]  Griggs Decl. ¶ 4.

[102]  *See e.g.*, JTX 8.

[103]  *See e.g.*, Day 2 Hr'g Tr. 109:11-110:17; JTX 1663, 1664.

[104]  Whittman Decl. ¶ 42.

[105]  Whittman Decl. ¶ 42.

[106]  JTX 1-1 at 3.

[107]  JTX 1-1 at 5.

A00533

prepetition Abuse claims.[108]  Since the filing, BSA and Delaware BSA, LLC have been

operating as debtors-in-possession.[109]

On March 5, 2020, the Office of the United States Trustee ("UST") formed two

committees: a Committee of Unsecured Trade Creditors ("UCC") and a Committee of Tort

Claimants ("TCC").[110]  On April 24, 2020, I appointed James L. Patton as the future claims

representative ("FCR").[111]  Additionally, an ad hoc committee of Local Councils ("Local

Council Committee") formed in the first few days of the case.  On July 24, 2020, a self-

named Coalition of Abused Scouts for Justice ("Coalition") announced its appearance in

the case.  The Coalition is a splinter group from the TCC.[112]

Over 9500 motions, objections or other documents appear on the BSA docket.

### A.  The Bar Date

By Order dated May 26, 2020 ("Bar Date Order"),[113] a bar date of November 16,

2020 ("Bar Date") was set as the date by which all holders of prepetition claims, including

Abuse claims, had to file proofs of claim.  Two different forms of notice and two different

proof of claim forms were approved in the Bar Date Order.  The proof of claim form for

---

[108] Whittman Decl. ¶ 42.

[109] The two bankruptcy cases are jointly administered.  Delaware BSA, LLC has no real operations.

[110] Notice of Appointment of Committee of Unsecured Trade Creditors [ECF 141]; Notice of Appointment of Committee - Tort Claimants [ECF 142].

[111] Order Appointing James L. Patton, Jr., as Legal Representative for Future Claimants, Nunc Pro Tunc to the Petition [ECF 486].

[112] *See* JTX 1-225 ¶ 16.

[113] Order, Pursuant to 11 U.S.C. § 502(b)(9), Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 2002-1(e), 3001-1, and 3003-1, for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, (III) Approve Procedures for Providing Notice of Bar Date and Other Important Information to Abuse Victims, and (IV) Approve Confidentiality Procedures for Abuse Victims [JTX 1-25].

holders of claims unrelated to Abuse allegations is the Official Form 410.  The proof of claim form for survivors of Abuse, titled Sexual Abuse Survivor Proof of Claim, is in six Parts over twelve pages and requests information in both "check the box" and narrative form.

In addition to approving a typical notice process, the Bar Date Order also approved an extensive supplemental noticing campaign designed by an advertising and notification consulting firm.[114]  Based on a review of BSA's historical data (including historical claims) as well as a 2010 Gallup Survey that included a question on Scouting, the consulting firm concluded that over 54% of former Scouts were men over 50 years old.[115]  The campaign, therefore, was designed to reach approximately 95.9% of men age fifty and over in the United States an average of 6.5 times.[116]  The campaign also had the goal of reaching its secondary target of men over 18 and its tertiary target of women over 18.[117]  The campaign included television, radio, print, streaming and online spots directed at broad audiences (readers of national magazines) and targeted audiences (such as the military, USO Centers and BSA media).[118]

The plaintiffs' bar also played an active (some have argued aggressive) role in targeting potential claimants by instituting a massive advertising campaign of its own.  No less than 16 separate firms/entities associated with plaintiff law firms ran at least 10,999

---

[114] JTX 1-14. Declaration of Shannon R. Wheatman, Ph.D in Support of Procedures for Providing Direct Notice and Supplemental Notice Plan to Provide Notice of Bar Date to Abuse Survivors [ECF 556; admitted into evidence by Stipulation ECF 9509] ("Wheatman Decl.").

[115] Wheatman Decl. ¶ 32, ¶ 34.A.iii.

[116] Wheatman Decl. ¶ 93.

[117] Wheatman Decl. ¶ 38.

[118] Wheatman Decl. ¶ 46.

advertisements (ranging from radio spots to thirty minute infomercials) directed at Abuse claimants from May 26, 2020 to August 24, 2020.[119] In response, Debtors filed a motion seeking a supplemental bar date order preventing what Debtors deemed to be false and misleading statements.[120] Many of the plaintiff law firms named in the motion as well as the Coalition objected on First Amendment grounds. After two hearings, supplemental briefing and an announcement of a consensual form of order agreed to by Debtors and several plaintiff law firms, an Order was entered memorializing the agreed-to concessions and ruling on the remaining outstanding objection.[121] The Order provides that those law firms subject to the Order are prohibited from continuing to make statements (i) suggesting that Abuse claimants may remain anonymous; (ii) indicating a specific value of any potential compensation trust and (iii) suggesting that Abuse claimants will never have to be deposed, appear in court or otherwise prove their claims.[122] Any further law firm advertisement is required to refer Abuse claimants to the official claims agent website and to include the Bar Date.

More than 100,000 proofs of claim were filed with Omni Agent Solutions ("Omni"), the claims agent, including 82,209 unique and timely claims asserting Abuse.[123] Many of the same law firms that advertised extensively were retained by thousands of clients alleging Abuse at the hands of BSA.

---

[119] JTX 1-401 ¶ 37.

[120] JTX 1-401 ¶ 42.

[121] JTX 1-409.

[122] JTX 1-409 ¶ 10.A.

[123] Declaration of Makeda S. Murray in Support of Confirmation of Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [ECF 9317; admitted into evidence Day 6 Hr'g Tr. 29:3-6].

Case: 23-1664     Document: 62-1     Page: 561     Date Filed: 07/24/2023

*B. Mediation*

On the first day of the case, Debtors filed a motion seeking to appoint a mediator and send certain matters to mediation. After a contested hearing, by Order dated June 9, 2020, I appointed three mediators "for the purpose of mediating the comprehensive resolution of issues and claims in BSA's chapter 11 case through a chapter 11 plan . . . , which includes, without limitation, all matters that may be the subject of a motion seeking approval by the court of solicitation procedures and/or forms of plan ballots, a disclosure statement, or a confirmation of a chapter 11 plan."[124] Through the beginning of the confirmation hearing, and even thereafter, one or more of the mediators filed twelve mediator reports reporting on progress and attaching term sheets and/or settlement agreements reflecting resolutions reached during the course of mediation.

*C. The Plan Process and Voting*

   *1. Solicitation*

The plan presented for confirmation is the Debtors' Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC. ("Plan").[125] As evident from its title, the Plan is not the first or even the fourth version of a proposed plan of reorganization.

On the first day of the case, Debtors filed a placeholder plan. The Second, Third, Fourth and Fifth Amended plans were filed between March 1, 2021 and September 15,

---

[124] JTX 1-26 ¶ 2. Three mediators became two, and then one, after one resigned and one was terminated.

[125] JTX 1-353.

24

2021.[126] The plan that was originally solicited ("Solicitation Plan") was filed on September 30, 2021,[127] the day after the Disclosure Statement was approved on September 29, 2021.[128]

The Plan classifies Debtors' claims and equity interests into ten classes.[129] Classes 1 (Other Priority Claims) and 2 (Other Secured Claims) are unimpaired, presumed to accept and not entitled to vote. Class 10 (Interests in Delaware BSA) is impaired, deemed to reject and not entitled to vote. The impaired, voting classes are:

| | |
|---|---|
| Class 3A | 2010 Credit Facility Claims |
| Class 3B | 2019 RCF Claims |
| Class 4A | 2010 Bond Claims |
| Class 4B | 2012 Bond Claims |
| Class 5 | Convenience Claims |
| Class 6 | General Unsecured Claims |
| Class 7 | Non-Abuse Litigation Claims |
| Class 8 | Direct Abuse Claims |
| Class 9 | Indirect Abuse Claims |

Per a resolution embodied in a Settlement Term Sheet among Debtors, JPMorgan Chase Bank, N.A. (Debtors' lender) ("JPM") and the TCC, the funded indebtedness held by the holders of claims in Classes 3 and 4 is reinstated with extended maturities to ten years

---

[126] Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [ECF 20]; Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [ECF 2293]; Second Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [ECF 2592]; Third Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [ECF 5368]; Fourth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [ECF. 5484]; Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [ECF 6212].

[127] Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [ECF 6443].

[128] Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [ECF 6445] ("Disclosure Statement").

[129] The Plan and the Solicitation Plan do not differ in their classification of claims.

after the Effective Date, with a two year moratorium on principal payments.[130]  Class 5 Convenience Claims, which are general unsecured claims less than $50,000 (or a claim reduced to that amount), are paid in full.  Holders of Class 6 General Unsecured Claims, which is any claim against a Debtor that is not an administrative claim or a claim in another class, will receive their pro rata share of $25 million.  Debtors project that Class 6 will receive recoveries between 75% and 95%.

Class 7 is comprised of approximately 55 wrongful death and personal injury claims (non-Abuse related) and seven other litigation claims, including the claims of Girl Scouts of the United States of America for trademark infringement.  This class retains the right to receive full payment of its claims from available insurance proceeds, including both Abuse Insurance Policies and Non-Abuse Insurance Policies (both as defined in the Plan).  Any unsatisfied portion of such a claim may also receive $50,000 as a Convenience Class claim. Debtors project a 100% recovery on these claims.

Class 8 is comprised of Direct Abuse Claims.  These are claims of individuals for Abuse.[131]  Class 9 is comprised of Indirect Abuse Claims.  In general, Class 9 claims are claims for contribution, indemnity, reimbursement, or subrogation that could be asserted by insurance companies, Local Councils or Chartered Organizations.  Both Direct Abuse Claims and Indirect Abuse Claims are channeled to a trust ("Settlement Trust") to be

---

[130]  The resolution with JPM is attached to the First Mediators' Report (JTX 1-33 Ex. A) and provides for the treatment of non-Abuse claims, treatment of JPM's secured claims and resolves any estate challenges to JPM's prepetition security interests.

[131]  In the Plan, Direct Abuse Claim means "an Abuse Claim that is not an Indirect Abuse Claim." In turn, the definition of "Abuse Claim" is a lengthy, detailed description identifying those entities against whom a claim of Abuse is asserted.  It includes Future Abuse Claims (as defined in the Plan), Indirect Abuse Claims and Direct Abuse Claims.

26

processed, liquidated and paid in accordance with the Settlement Trust Agreement and the

Trust Distribution Procedures ("TDP").

As set out in the Disclosure Statement, the Solicitation Plan contemplated that

funding for the Settlement Trust would come from multiple sources. One, BSA is to make a

contribution of cash, real property and personal property valued at $219 million. Two,

Local Councils, collectively, are to make a contribution of (x) cash and real property, in the

amount of $500 million, (y) an interest bearing variable obligation note in the amount of

$100 million ("DST Note") and (z) the Local Council Insurance Rights.[132] Three, the

Settlement Trust is to receive all of the insurance rights of BSA, Local Councils and

Contributing Chartered Organizations. Four, pursuant to a settlement among Debtors, the

Coalition, the FCR, the Local Council Committee and the Church of Jesus Christ of the

Latter-Day Saints ("TCJC") attached to the Sixth Mediators' Report, TCJC agrees to make

a cash contribution of $250 million plus certain insurance rights to the Settlement Trust for

---

[132] The definition of Local Council Insurance Rights is:

> Local Council Settlement Contribution. The Local Councils shall make, cause to be made, or be deemed to have made, as applicable, the Local Council Settlement Contribution. If a Local Council is unable to transfer its rights, titles, privileges, interests, claims, demands or entitlements, as of the Effective Date, to any proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity, now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, arising under or attributable to (i) the Abuse Insurance Policies, the Insurance Settlement Agreements, and claims thereunder and proceeds thereof; (ii) Insurance Actions, and (iii) the Insurance Action Recoveries (the **"Local Council Insurance Rights"**), then the Local Council shall, at the sole cost and expense of the Settlement Trust: (a) take such actions reasonably requested by the Settlement Trustee to pursue any of the Local Council Insurance Rights for the benefit of the Settlement Trust; and (b) promptly transfer to the Settlement Trust any amounts recovered under or on account of any of the Local Council Insurance Rights; provided, however, that while any such amounts are held by or under the control of any Local Council, such amounts shall be held for the benefit of the Settlement Trust.

Plan Art. V.S.1.a. The Local Council contribution is dependent upon an acceptable resolution of issues related to Chartered Organizations, including as to insurance and indemnity claims. As discussed *infra*, the Local Council contribution increased as a result of further negotiations.

27

payment of Direct Abuse Claims related to TCJC that arose in connection with its sponsorship of one or more Scouting units.[133] Five, pursuant to a settlement among Debtors, the FCR, the Coalition, the Local Council Committee and Hartford, also attached to the Sixth Mediators' Report, Hartford agrees to make a contribution to the Settlement Trust in the amount of $787 million in exchange for the sale of the Hartford Policies to Hartford free and clear of the interests of all third parties, including additional insureds.[134] Six, there is a mechanism for additional insurance companies to become Settling Insurance Companies by making monetary contributions to the Settlement Trust. Seven, there is a mechanism by which Chartered Organizations can make contributions to the Settlement Trust and become Contributing Chartered Organizations, or can choose one of two other options. Of note, the TCC was not a party to the settlement with Hartford or TCJC.

Consistent with Dr. Bates's valuation at the time (see *infra*), in the Disclosure Statement, Debtors project recoveries for both Direct Abuse Claims and Indirect Abuse Claims based on a range of $2.4 billion to $7.1 billion.[135] The calculation (as qualified in the Disclosure Statement) yields 10-21% on the lower range and 31 to 63% on the higher range, in each instance with additional insurance rights expected to yield up to a 100% recovery.

---

[133] JTX 1-292, Ex. B. As finally documented, Notice of Filing of Exhibits I-1 and J-1 to Debtors' Third Modified Fifth Amended Chapter 11 Plan of Reorganization and Redlines Thereof Ex. 3 [ECF 8816-3], the "TCJC Settlement Agreement."

[134] JTX 1-292, Ex. A. As finally documented, Notice of Filing of Exhibits I-1 and J-1 to Debtors' Third Modified Fifth Amended Chapter 11 Plan of Reorganization and Redlines Thereof Ex. 1 [ECF 8816-1], the "Hartford Settlement Agreement." As set forth in the Disclosure Statement, Hartford's contribution was subject to Hartford's satisfaction with the treatment of Chartered Organizations as it impacts Hartford's Policies. JTX 1-296 at 14-15.

[135] In the Disclosure Statement, Debtors state the estimated amount of Indirect Abuse Claims is unknown since they are unliquidated, contingent and subject to § 502(e). *See* JTX 1-296 at 30 n.44. But, Debtors urge that Indirect Abuse Claims, to the extent viable, are included in the Bates White estimated range because they are capped as set forth in the Trust Distribution Procedures.

28

## 2. *The Initial Voting Results*

As reflected in the Initial Nownes-Whitaker Declaration,[136] with respect to Debtor BSA, the Solicitation Plan received 100% acceptance by Classes 3A, 3B, 4A, 4B, over 98% acceptance by Class 5 and over 99% acceptance by Class 6. With respect to Debtor Delaware BSA, LLC, the Solicitation Plan received 100% acceptance by Classes 3A, 3B, 4A, and 4C. The remaining classes also accepted the Solicitation Plan by the requisite amounts[137] as reflected in the ballot tabulation:

**Debtor BSA**

| <u>Class</u> | <u># Votes</u> | <u>Accept</u> | <u>Reject</u> |
|---|---|---|---|
| Class 7 | 6 | 4 = 66.67% | 2 = 33.33% |
| Class 8 | 53,596 | 39,430 = 73.57% | 14,166 = 26.43% |
| Class 9 | 6710 | 4,666 = 69.57% | 2,042 = 30.43% |

**Debtor Delaware BSA, LLC**

| | | | |
|---|---|---|---|
| Class 9 | 753 | 599 = 79.55% | 154 = 20.45% |

---

[136] Declaration of Catherine Nownes-Whitaker of Omni Agent Solutions Regarding Solicitation of Votes and Final Tabulation of Ballots Cast on the Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [ECF 8345; admitted by Stipulation ECF 9509] ("Initial Nownes-Whitaker Declaration").

[137] Each claimant in Classes 7, 8 and 9 voted his/her/its claim in the amount of $1.00 so that the percentage of acceptance/rejection by number is equivalent to the percentage of acceptance/rejection by amount.

### 3. Continued Mediation and Further Insurance Settlements

Notwithstanding solicitation and as contemplated in the Disclosure Statement,

Debtors and the other mediation parties continued their attempts to resolve disputes.

Settlements reached post-solicitation with Century/Chubb, Zurich and Clarendon[138] add

another $871 million from Settling Insurance Companies as well as an additional $40

million from Local Councils on account of Chartered Organizations.

Attached to the Seventh Mediator's Report filed December 14, 2021, is a Term Sheet

reflecting a settlement among Debtors, Century/Chubb, the Local Council Committee, the

Coalition, the FCR and certain state court council, which, in general (and subject to final

documentation), provides that Century will buy back its insurance policies and obtain

certain releases for a payment of $800 million to the Settlement Trust.[139]  The Century

settlement is significant because, among other things, it established/clarified a baseline for

an acceptable resolution to claims of Chartered Organizations against Abuse Insurance

Policies[140] that had been left to further negotiation in the Hartford Term Sheet.  The Century

settlement also required BSA and Local Councils to make additional contributions to the

Settlement Trust on behalf of Chartered Organizations in the form of: (i) $15 million in cash

and an increase of $25 million in the DST Note from Local Councils ("Supplemental LC

Contribution") and (ii) up to $100 million from BSA and Local Councils tied to future

---

[138]  The settlements with Hartford, Century/Chubb, Zurich and Clarendon are, collectively, the "Settling Insurer Settlements."

[139]  JTX 2834 Ex. A ¶ 3.  As finally documented, JTX 1-355 Ex. 1, the "Century Settlement Agreement."

[140]  Abuse Insurance Policies means "collectively, the BSA Insurance Policies, and the Local Council Insurance Policies.  Abuse Insurance Polices do not includes Non-Abuse Insurance Policies or Postpetition Insurance Policies."  Plan Art I.20.

membership increases on account of Chartered Organizations' continued sponsorship of Scouting Units ("Settlement Growth Payment").

Attached to the Ninth Mediator's Report filed December 22, 2021 is a Term Sheet among Debtors, Zurich,[141] the FCR, the Coalition and the Local Council Committee reflecting, subject to final documentation, a settlement by which Zurich will buy back its insurance policies and obtain certain releases for a payment of $52,500,000 to the Settlement Trust.[142] It is largely modeled after the Century settlement.

Attached to the Tenth Mediator's Report filed January 3, 2022 is a Term Sheet among Debtors, Clarendon,[143] the Local Council Committee, the Coalition and the FCR reflecting, subject to final documentation, a settlement by which Clarendon will buy back its insurance policies and obtain certain releases for a payment of $16,500,000 to the Settlement Trust.[144] It is also largely modeled after the Century settlement.

### 4. *Additional Settlements with Chartered Organizations*

After solicitation, Debtors also continued to work with organized Chartered Organizations to reach resolutions. Attached to the Eight Mediator's Report filed January 3, 2022 is a Term Sheet (subject to final documentation) among Debtors, the United Methodist Ad Hoc Committee ("Methodist Committee"), the Coalition, the Local Council

---

[141] Zurich means American Zurich Insurance Company, American Guarantee & Liability Insurance Company and Steadfast Insurance Company ("Zurich").

[142] JTX 1-312, as finally documented, JTX 1-355 Ex. 2, the "Zurich Settlement Agreement."

[143] Clarendon means Clarendon National Insurance Company (as successor in interest by merger to Clarendon American Insurance Company), River Thames Insurance Company (as successor in interest to UnionAmerica Insurance Company Limited) and Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company) ("Clarendon").

[144] JTX 1-316, as finally documented, JTX 1-355 Ex. 3, the "Clarendon Settlement Agreement."

31

Committee and the FCR reflecting an agreement by which (i) the United Methodist Entities (as defined therein) will contribute $30 million to the Settlement Trust and (ii) the Methodist Committee will recommend to the United Methodist BSA leadership team that it agree to lead a fundraising effort to raise an additional $100 million for the Settlement Trust from other Chartered Organizations.[145] In addition to its financial contribution, the United Methodist Entities agree to continue to partner with BSA as Chartering Organizations through 2036 and cooperate with youth protection efforts. Further, the Methodist Committee agrees to support the Plan and recommend to holders of Direct Abuse Claims that they support the Plan.

Attached to the Twelfth Mediator's Report filed March 17, 2022 is a Term Sheet among Debtors, the Roman Catholic Ad Hoc Committee ("Roman Catholic Committee"), the FCR, the Coalition, the Local Council Committee and certain Settling Insurance Companies by which certain Roman Catholic Entities (as defined in the Term Sheet) are treated as Participating Chartered Organizations under the Plan.[146] The Roman Catholic Committee agrees to work with BSA and Local Councils to improve Scouting at least through the year 2036 and the Roman Catholic Committee commits to encourage the U.S. Council of Bishops to recommend that all Roman Catholic Entities do so as well. The Roman Catholic Committee also agrees to support confirmation of the Plan, withdraw significant confirmation-related discovery requests as well as objections to evidence offered in support of confirmation by Plan supporters and withdraw its own expert reports and its

---

[145] JTX 1-311.

[146] JTX 2959.

32

objection to confirmation. The Roman Catholic Committee also agrees to cooperate and support BSA's youth protection efforts.

### 5. *The Resolution with the TCC*

As set forth above, the TCC did not support the Solicitation Plan, the Settling Insurer Settlements or any of the mediated resolutions. That changed on February 10, 2022 when the Eleventh Mediator's Report was filed.[147] Attached to that report is a Term Sheet among Debtors, the TCC, the FCR, the Coalition, the Local Council Committee and the Pfau/Zalkin claimants ("TCC Term Sheet").[148] The Term Sheet is also supported by numerous state court counsel representing holders of Direct Abuse Claims who agree to recommend that their clients who previously voted to reject the Plan change their votes to acceptances. The terms of the TCC Term Sheet are also subject to definitive documentation, but were to be incorporated into the Plan by way of modifications.

The TCC Term Sheet contains numerous, detailed terms. Some of the highlights (which are discussed more fully *infra*) are:

(i) The TCC will withdraw its opposition to the Plan and the settlements with Hartford, Century/Chubb, Zurich and Clarendon.

(ii) The reworking of the definition of Abuse Claim in the Plan and the introduction of a new term, "Mixed Claim." A Mixed Claim is a Direct Abuse Claim that makes allegations of Abuse related to Scouting and also makes allegations of Abuse occurring prior to the Petition Date that are unrelated to Scouting ("Non Scouting Abuse").

---

[147] JTX 1-350.

[148] The Pfau/Zalkin Claimants are Abuse claimants represented by two separate law firms, The Zalkin Law Firm, P.C. and Pfau Cochran Vertetis Amala PLLC.

A00546

(iii) A return to the treatment of Chartered Organizations embodied in the Solicitation Plan (and a retreat from the offer to Chartered Organizations under the Century settlement) such that Chartered Organizations who do not choose to be Opt-Out Chartered Organizations are now Participating Chartered Organizations and must provide consideration to the Settlement Trustee to become a Contributing Chartered Organization entitled to full releases from holders of Direct Abuse Claims.

(iv) The redirection of the Supplemental LC Contribution so that it is now consideration for the extension of a preliminary injunction prohibiting the continuation of lawsuits against Participating Chartering Organizations/Limited Protected Parties to give them an opportunity to negotiate with the Settlement Trustee to become Contributing Chartered Organizations/Protected Parties.[149]

(v) An additional option in the TDP for liquidation of Direct Abuse Claims—the Independent Review Option.

(vi) The adoption of a specific Youth Protection Program.

(vii) The reconstitution of the composition of the Settlement Trust Advisory Committee (see below) as well as the establishment of voting requirements on certain actions.

(viii) An agreement that Debtors will consult with the TCC, the FCR and the Coalition on the presentation of the testimony of Dr. Bates and Ms. Gutzler at

---

[149] This preliminary injunction has been in place since March 30, 2020.

34

the confirmation hearing as well as certain required findings related to the

same.

The terms of the TCC Term Sheet were ultimately incorporated into the Plan.

### 6. *The Settlement Trust Agreement and the Trust Distribution Procedures, as Amended*[150]

#### a. *The Settlement Trust Agreement*

The Plan contemplates the creation of a Settlement Trust to receive the contributions

from BSA, Local Councils and settling parties.[151] The purpose of the Settlement Trust is to,

among other things:

> assume liability for all Abuse Claims, to hold, preserve, maximize and administer the Settlement Trust Assets [as defined in the Plan], and to direct the processing, liquidation, and payment of all compensable Abuse Claims in accordance with the Settlement Trust Documents [as defined in the Plan].[152]

BSA creates the Settlement Trust pursuant to the Settlement Trust Agreement.[153] The

Settlement Trust is a statutory trust under Chapter 38 of title 12 of the Delaware Code[154] and

it is the § 1123(b)(3)(B) estate representative as specifically spelled out (and qualified) in the

Plan.[155] The beneficial owners of the Settlement Trust ("Beneficiaries") are the holders of

---

[150] Capitalized terms not defined in this Section have the meaning ascribed to them in the TDP. The TDP contain a lot of commentary. To the extent that the commentary is inconsistent with conclusions reached in this Opinion, any future iteration of the TDP should be revised to eliminate the unnecessary rhetoric.

[151] Plan Art. IV.

[152] *See* Plan Art. IV.B.1.

[153] The BSA Settlement Trust Agreement is attached as Exhibit B to the Plan (the "Settlement Trust Agreement").

[154] Settlement Trust Agreement Art. 1.1.

[155] Plan Art. IV.C.2.

A00548

Case: 23-1664     Document: 62-1     Page: 573     Date Filed: 07/24/2023

Abuse Claims (defined in the Settlement Trust as the holders of Class 8 Direct Abuse Claims and Class 9 Indirect Abuse Claims).[156]

In addition to the statutorily required Delaware trustee, the Settlement Trust Agreement provides for one other trustee ("Settlement Trustee").[157] BSA has nominated the Hon. Barbara Houser (ret.) to serve as the Settlement Trustee. The Settlement Trust Agreement also provides for two Claims Administrators to oversee the administration of claims—one each to oversee the Claims Matrix Process/Expedited Distribution election and the Independent Review Option discussed below.[158]

The Settlement Trust Agreement further provides for the creation of a Settlement Trust Advisory Committee ("STAC").[159] Pursuant to the TCC Term Sheet, the STAC will be comprised of three members chosen by the Coalition, three members chosen by the TCC and one member chosen by the Pfau/Zalkin Claimants. All members are lawyers that represent holders of Direct Abuse Claims. As discussed more fully below, the STAC has a certain oversight/consulting role with respect to the Settlement Trustee.

### b. The Trust Distribution Procedures[160]

The TDP create four processes by which Direct Abuse Claims are liquidated and an Allowed Claim Amount (or, a Final Determination) is determined. These processes are: (i) the Expedited Distribution election, (ii) evaluation under the Claims Matrix ("Claims

---

[156] Settlement Trust Art. 1 Sec. 1.6(a); Recital (B).

[157] Settlement Trust Art. 5 Sec. 5.1.

[158] Settlement Trust Art. 4 Sec. 4.1(a).

[159] Settlement Trust Art. 6.

[160] The TDP are attached as Exhibit A to the Plan.

36

Case: 23-1664    Document: 62-1    Page: 574    Date Filed: 07/24/2023

Matrix Process"), (iii) the Tort System Alternative, and (iv) the Independent Review Option.

The Expedited Distribution election permits a holder of a Direct Abuse Claim ("Direct Abuse Claimant") to receive a payment of $3,500 on account of his claim with a minimal level of review. A Direct Abuse Claimant must have timely submitted a "substantially completed" proof of claim signed by the claimant (not his lawyer) under penalty of perjury.[161] He must also have elected the Expedited Distribution on his ballot.[162] Under the TDP, Direct Abuse Claimants will receive their Expedited Payment upon executing certain required releases.[163] Seven thousand three hundred eighty-one (7381) Direct Abuse Claimants made the Expedited Distribution election.[164]

Under the Claims Matrix Process, a Direct Abuse Claimant must: (i) make a Trust Claim Submission to the Settlement Trust, which includes a completed questionnaire signed under oath, the production of all records in his possession, custody or control related to the Abuse (including records regarding past or expected recoveries from any source) and a signed agreement to produce further records and documents upon request of the Settlement Trustee, (ii) consent to a Trustee Interview (including by healthcare professionals) and (iii) consent to a written and/or oral examination under oath, if requested.[165] The Settlement

---

[161] TDP Art. VI.A.

[162] Plan Art. III.B.10(b)(i).

[163] TDP Art. VI.B.

[164] Supplemental Declaration of Catherine Nownes-Whitaker of Omni Agent Solutions Regarding the Submission of Votes and Final Tabulation of Ballots Cast in Connection with the Limited Extended Voting Deadline for Holders of Claims in Class 8 and Class 9 on the Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC. [ECF 9275] ("Supplemental Nownes-Whitaker Declaration").

[165] TDP Art. VII.A.

37

Trustee performs an Initial Evaluation to see if these submissions meet the requisite criteria. If so, the claim submission moves to the next step. If not, the Direct Abuse Claim is a Disallowed Claim.

In the next step, the Settlement Trustee evaluates all claims that were not disallowed for compliance with the General Criteria. These General Criteria are: (i) identification of alleged acts of Abuse; (ii) identification of the abuser by either name or specific information such that the Settlement Trustee can determine whether the alleged abuser was an employee, agent or volunteer of a Protected Party or associated with Scouting and the Abuse directly relates to Scouting activities; (iii) the Abuse is connected to Scouting and a Protected Party "may bear legal responsibility;" (iv) identification of the date of the Abuse directly or through other evidence and (v) identification of the venue or location of the Abuse. If the claim submission meets the General Criteria and the materials submitted do not contain false or deceptive information, the Direct Abuse Claim is deemed an Allowed Abuse Claim. If the submitted materials do not meet the General Criteria or if they contain fraudulent and/or deceptive material, the Direct Abuse Claim is deemed a Disallowed Claim.[166]

An Allowed Abuse Claim is then run through the Claims Matrix and Scaling Factors. The Claims Matrix establishes six tiers of Abuse types and provides a Base Matrix Value and Maximum Matrix Value to each tier, as follows:[167]

---

[166] TDP Art. VII.C.

[167] TDP Art. VIII.A.

38

A00551

| Tier | Type of Abuse | Base Matrix Value | Maximum Matrix Value |
|------|---------------|-------------------|----------------------|
| 1 | Anal or Vaginal Penetration by Adult Perpetrator—includes anal or vaginal sexual intercourse, anal or vaginal digital penetration, or anal or vaginal penetration with a foreign, inanimate object. | $600,000 | $2,700,000 |
| 2 | Oral Contact by Adult Perpetrator—includes oral sexual intercourse, which means contact between the mouth and penis, the mouth and anus, or the mouth and vulva or vagina. Anal or Vaginal Penetration by a Youth Perpetrator—includes anal or vaginal sexual intercourse, anal or vaginal digital penetration, or anal or vaginal penetration with a foreign, inanimate object. | $450,000 | $2,025,000 |
| 3 | Masturbation by Adult Perpetrator—includes touching of the male or female genitals that involves masturbation of the abuser or claimant. Oral Contact by a Youth Perpetrator—includes oral sexual intercourse, which means contact between the mouth and penis, the mouth and anus, or the mouth and vulva or vagina. | $300,000 | $1,350,000 |
| 4 | Masturbation by Youth Perpetrator—includes touching of the male or female genitals that involves masturbation of the abuser or claimant. Touching of the Sexual or Other Intimate Parts (unclothed) by Adult Perpetrator. | $150,000 | $675,000 |

39

Case: 23-1664     Document: 62-1     Page: 577     Date Filed: 07/24/2023

| 5 | Touching of the Sexual or Other Intimate Parts (unclothed) by a Youth Perpetrator.<br><br>Touching of the Sexual or Other Intimate Parts (clothed), regardless of who is touching whom and not including masturbation.<br><br>Exploitation for child pornography. | $75,000 $ | $337,500 |
| 6 | Sexual Abuse-No Touching.<br><br>Adult Abuse Claims | $3,500 | $8,500 |

The Settlement Trustee assigns an Allowed Abuse Claim to one of the six tiers and applies the Scaling Factors to the Base Matrix Value to determine a Proposed Allowed Claim Amount for each Allowed Abuse Claim. While the Maximum Matrix Value is just that— the maximum that can be awarded by the Settlement Trustee in the Claims Matrix Process, the Base Matrix Value is not a minimum amount, but merely a starting point for the calculation of a Proposed Allowed Claim Amount.

If a Direct Abuse Claimant is satisfied with the Proposed Allowed Claim Amount proposed by the Settlement Trustee or takes no further action with respect to it, then it becomes the Allowed Claim Amount.[168]

If a Direct Abuse Claimant is dissatisfied with the Settlement Trustee's Proposed Allowed Claim Amount, he may make a Reconsideration Request within thirty days of receiving the determination.[169] Alternatively, he may notify the Settlement Trustee that he intends to seek a de novo determination of his claim by a court of competent jurisdiction

---

[168] TDP Art. VII.E.

[169] TDP Art. VII.G.

40

A00553

(the "TDP Tort Election.").[170] The Final Determination/Allowed Abuse Amount of a

Direct Abuse Claim that goes through the TDP Tort Election is the amount awarded in the

lawsuit.[171] The Tort System Alternative also includes a STAC Tort Election option which

permits the commencement or continuation of a lawsuit by a Direct Abuse Claimant against

the Settlement Trust to obtain the Allowed Claim Amount.[172] The Allowed Claim Amount

in these instances is the final judgment less any payments actually received and retained by

the Direct Abuse Claimant, but if the claimant receives a judgment in excess of the

Maximum Matrix Value for the applicable tier, that additional amount is subordinate in

right of distribution to the prior payment in full of all other Allowed Abuse Claims.[173] If one

of these methods of liquidation is chosen or permitted, the Settlement Trustee shall provide

notice to any Non-Settling Insurance Companies and seek defense in accordance with the

terms of any relevant insurance policies.[174]

The Independent Review Option contemplates recoveries above the values stated in

the Claims Matrix and is designed to permit Direct Abuse Claimants with higher value

claims to potentially receive a higher award and directly trigger excess insurance

coverage.[175] Under the Independent Review Option, a Direct Abuse Claimant can have his

claim evaluated by a neutral third party (a retired judge with tort experience on a panel

---

[170] TDP Art. XII.A. An Abuse Claimant can also make a TDP Tort Election Claim if dissatisfied
with the results of his Reconsideration Request.

[171] TDP Art. XII.H.

[172] TDP Art. XII.C.

[173] TDP Art. XII.G.

[174] TDP Art. XII.D.

[175] Gutzler Decl. ¶¶ 132-134.

41

A00554

maintained by the Settlement Trust) who makes a Settlement Recommendation to the Settlement Trustee. The Neutral's Settlement Recommendation seeks to replicate the amount a reasonable jury would award taking into account relative shares of fault and the standard of proof applicable under applicable state law.[176] A Direct Abuse Claimant has six months after the Effective Date of the Plan to select this Option.

The submissions required under the Independent Review Option have parallels to those required under the Claims Matrix Process, but, generally require "confirmation of" or "evidence that" the criteria is satisfied. For example, a Direct Abuse Claimant must submit evidence that he was in a Scouting unit by submitting a photograph, a membership card or document that reflects the claimant's rank in Scouting or a sworn statement from a third party, who will agree to a deposition if requested. The Direct Abuse Claimant must also provide evidence that that the claim is timely under an applicable statute of limitations, including satisfying any recognized exceptions under applicable law. And, the Direct Abuse Claimant "shall be subject to" a six hour sworn interview, mental health examination or signed and dated supplemental interrogatories.[177] The Direct Abuse Claimant is also entitled to certain discovery from the Settlement Trust.[178]

The Settlement Trustee is required to provide notice to "any potentially responsible non-settling insurer(s)" of any claim for which the Independent Review Option is selected. Those insurers are given a "reasonable opportunity" to participate in the Independent Review and may review and comment on the Neutral's evaluation, including attending any

---

[176] TDP Art. XIII.A.

[177] TDP Art. XIII.G.

[178] TDP Art. XIII.I.

interview or deposition and raising and presenting (at the insurer's cost) applicable defenses to a claim.[179]

If the Settlement Trustee accepts the Neutral's Settlement Recommendation, that amount is the Allowed Claim Amount of the Direct Abuse Claim.[180] The Settlement Trustee must then provide notice to the applicable Non-Settling Insurance Company(ies) and seek consent. The insurer may elect to pay the Allowed Claim Amount or decline to do so. If the Responsible Insurer declines to pay, the Settlement Trustee may sue under the applicable insurance policies.[181]

If the Settlement Trustee declines to accept the Neutral's recommendation, within forty-five days of service of a notice of rejection, the Direct Abuse Claimant may commence a lawsuit in any court of competent jurisdiction against the Settlement Trust to liquidate his claim.[182]

If the Settlement Trustee accepts a recommendation of zero, the Direct Abuse Claimant shall receive zero and may not pursue any Protected Parties. If the settlement Trustee accepts a recommendation under $1 million the award is paid from the Settlement Trust.[183] If the Settlement Trustee accepts a recommendation that is $1 million or more, the first $1 million of the award is paid from the Settlement Trust and the excess is collected from the Excess Award Fund.[184] The Excess Award Fund is funded from comprehensive

---

[179] TDP Art. XIII.K.

[180] TDP Art. XIII.A.

[181] TDP Art. XIII.K, L.

[182] TDP Art. XIII.A.

[183] TDP Art. XIII.D.

[184] TDP Art. XIII.E.

43

Case: 23-1664     Document: 62-1     Page: 580     Date Filed: 07/24/2023

settlements reached by the Settlement Trustee with a Non-Settling Insurance Company with 80% of such settlement proceeds contributed to the Excess Award Fund, and 20% of the proceeds remaining with the General Trust funds.[185]

Amounts collected by the Settlement Trustee from Non-Settling Insurance Companies in satisfaction of the Accepted Settlement Recommendation from any policy that has applicable aggregate limits are awarded 80% to the Direct Abuse Claimant, with the balance contributed to the General Trust until the Direct Abuse Claimant has collected 80% of the Excess Award Share. Thereafter policy proceeds are divided 70% to the Direct Abuse Claimant and 30% to the General Trust.[186]

If the Neutral's Settlement Recommendation determines that a Chartered Organization not protected by the Channeling Injunction (e.g. an Opt-Out Chartered Organization) is responsible for some or all of a Direct Abuse Claim assigned to the Settlement Trust, at the claimant's request, the Settlement Trustee may assign back to the claimant its right to pursue the Chartered Organization and its insurer for that allocated share. The Direct Abuse Claimant can bring an action in a court of competent jurisdiction against the Chartered Organization and its insurers to obtain a judgment for damages.[187]

### 7. Chartered Organizations

While Chartered Organizations may have claims against Debtors, the lens through which to view them relative to confirmation is as the beneficiary of the channeling injunction and/or the recipient of third-party releases.

---

[185] TDP Art. XIII.L(ii)(a).

[186] TDP Art. XIII.L(i)(3).

[187] TDP Art. XIII.N(iii).

44

Case: 23-1664    Document: 62-1    Page: 582    Date Filed: 07/24/2023

The Plan provides Chartered Organizations with three alternatives. A Chartered Organization can choose to be a Contributing Chartered Organization, a Participating Chartered Organization or an Opt-Out Chartered Organization. These alternatives determine their respective post-confirmation exposure to Abuse Claims and, depending on the choice, also resolve their claims against BSA.

### a. *Contributing Chartered Organizations*

To become a Contributing Chartered Organization, a Chartered Organization must make a monetary contribution to the Settlement Trust. It must also release its rights to or interests in the BSA Insurance Policies and Local Council Insurance Policies[188] as well as its rights in its own insurance policies covering Abuse Claims and claims against both Settling and Non-Settling Insurance Companies. It must also waive all claims against Debtors, including Indirect Abuse Claims.[189]

In exchange for this consideration, all Abuse Claims regardless of when such claims arose are channeled to the Settlement Trust. Further, a Contributing Chartered Organization is a Protected Party and therefore the beneficiary of third-party releases from Releasing Parties, which include holders of Abuse Claims.

TCJC and the United Methodist Entities are the only two Contributing Chartered Organizations at this time.

---

[188] These rights and interests will be assigned to the Settlement Trust or otherwise sold back to the Settling Insurers, as applicable.

[189] *See* Plan Art. I.A.85.

45

*b. Participating Chartered Organizations*

If a Chartered Organization takes no action with respect to its Chartered

Organization status, it is a Participating Chartered Organization.[190]  No monetary

contribution is required.  Instead, a Participating Charter Organization must assign and

transfer to the Settlement Trust all rights, claims, benefits, or Causes of Action under or with

respect to the (a) Abuse Insurance Policies (but not the policies themselves), (b) the

Participating Chartered Organization Insurance Actions, (c) the Insurance Action

Recoveries and (d) the Insurance Settlement Agreements.

In exchange for this contribution of insurance rights as well as contributions made by

others, all Abuse Claims that are alleged to first arise from January 1, 1976 forward are

channeled to the Settlement Trust.  Additionally, any Abuse Claims that pre-date January

1, 1976 are channeled to the Settlement Trust to the extent covered under an Abuse

Insurance Policy issued by a Settling Insurance Company.

---

[190]  Plan Art. I.A.199. provides:

199. "Participating Chartered Organization" means a Chartered Organization (other than a
Contributing Chartered Organization, including the TCJC and the United Methodist Entities)
that does not (a) object to confirmation of the Plan or (b) inform Debtors' counsel in writing on
or before the confirmation objection deadline that it does not wish to make the Participating
Chartered Organization Insurance Assignment.  Notwithstanding the foregoing, with respect to
any Chartered Organization that is a debtor in bankruptcy as of the Confirmation Date, such
Chartered Organization shall be a Participating Chartered Organization only if it advises
Debtors' counsel in writing that it wishes to make the Participating Chartered Organization
Insurance Assignment, and, for the avoidance of doubt, absent such written advisement, none of
such Chartered Organization's rights to or under the Abuse Insurance Policies shall be subject to
the Participating Chartered Organization Insurance Assignment.  A list of Chartered
Organizations that are debtors in bankruptcy and may not be Participating Chartered
Organizations is attached hereto as Exhibit K.  For the avoidance of doubt, any Chartered
Organization that is a member of an ad hoc group or committee that objects to the confirmation
of the Plan shall not be a Participating Chartered Organization.

46

A00559

Case: 23-1664    Document: 62-1    Page: 584    Date Filed: 07/24/2023

A Participating Chartered Organization also becomes a Limited Protected Party and therefore receives releases from Releasing Parties, including holders of Abuse Claims, for all Abuse Claims alleged to have occurred on or after January 1, 1976 (parallel with the channeling of such claims) and any Abuse Claims alleged to have occurred prior to January 1, 1976 that are covered under an insurance policy issued by a Settling Insurance Company that meet certain criteria.[191]

Participating Chartered Organizations also receive the protection of the Post Confirmation Interim Injunction—a twelve-month injunction (subject to further extension) from prosecution of Abuse Claims beginning on the Effective Date—to afford Participating Chartered Organizations an opportunity to negotiate an appropriate contribution with the Settlement Trust to become a Contributing Chartered Organization.[192]  This protection is paid for by the $40 million Supplemental LC Contribution.

All but a couple of hundred of the more than 100,000 Chartered Organizations listed on the Omni website are Participating Chartered Organizations.[193]

### c. *Opt-Out Chartered Organizations*

An Opt-Out Chartered Organization is a Chartered Organization that objected to the Plan or informed Debtors' counsel that it does not wish to become a Participating Chartered Organization.[194]  A Chartered Organization that is itself a debtor in a bankruptcy case as of the Confirmation Date is also placed in this category unless it affirmatively informs Debtors'

---

[191] Plan Art. X.J.3, X.J.6.

[192] Plan Art. X.D.

[193] Day 20 Hr'g Tr. 16-19.

[194] Plan Art. I.A.196.

47

counsel that it wishes to be a Participating Chartered Organization and make the necessary assignments.

An Opt-Out Chartered Organization does not voluntarily relinquish any rights to the BSA Insurance Policies or the Local Council Insurance Policies and retains its own rights in any insurance policies it procured.[195]

An Opt-Out Chartered Organization is not a Protected Party or a Limited Protected Party and does not receive a release. Notwithstanding, Abuse Claims are channeled to the Settlement Trust to the extent that the Abuse Claim is covered by an insurance policy issued by a Settling Insurance Company. This channeling of Abuse Claims effectively acts as a release.

### 8. *Youth Protection*

Direct Abuse Claimants have participated in this case officially through the TCC, unofficially, but in an organized fashion, through the Coalition and *pro se*. Additionally, certain Direct Abuse Claimants testified or provided argument at confirmation. Many of them supported the notion that any resolution with BSA must include enhanced youth protection measures.[196] Certain Direct Abuse Claimants testified that a successful plan of reorganization could not exist without improvements in youth protection sounding in transparency, third-party professional engagement and survivor recognition and activism.[197]

---

[195] Plan Art. V.S.1.g(ii). But, assuming approval of the buyback of its insurance policies under § 363(f), Opt-Out Chartered Organizations will lose their rights or interests in the Abuse Insurance Policies issued by Settling Insurers.

[196] Day 4 Hr'g Tr. 10:22-25. "I can't tell you how many survivors contacted us and said, regardless of whatever financial result comes of this, we want to make sure there is applicable and appropriate youth protection measures."

[197] Day 4 Hr'g Tr. 10:3-11:11; Day 8 Hr'g Tr. 3:11-23.

The TCC did not support the Plan until an agreement on youth protection measures was achieved.

In November 2021, the Coalition formed a Survivor Working Group specifically to engage in negotiations with BSA about youth protection.[198] The Survivor Working Group is comprised of fifteen members of diverse educational backgrounds, employment, economic circumstances and race/ethnic identity.[199] The Survivors Working Group first met with members of BSA's National Executive Committee, the Local Council Committee and Praesidium's[200] child protection experts on November 12, 2021.[201] On December 16, 2021, the Survivors Working Group finalized an "issues list" for BSA's review.[202] BSA responded in late January, 2022 seeking further clarification on issues and solutions.[203] On January 30, 2022, the Survivors Working Group began negotiating with BSA on the exact terms of the youth protection enhancements. The TCC "flanked" the Survivors Working Group for eight days of negotiations before the TCC, the Survivors Working Group and BSA agreed on the terms included in the Eleventh Mediator's Report.[204] Following agreement, both the TCC and the Survivors Working Group support confirmation of the Plan.[205]

---

[198] Day 8 Hr'g Tr. 18:12-24.

[199] Day 8 Hr'g Tr. 20:20-21:2.

[200] Praesidium is a consulting service retained by BSA specializing in preventing Abuse of children and vulnerable adults.

[201] Day 8 Hr'g Tr. 23:10-17.

[202] Day 8 Hr'g Tr. 29:4-9.

[203] Day 8 Hr'g Tr. 29:13-25.

[204] Day 8 Hr'g Tr. 31:16-22.

[205] Day 4 Hr'g Tr. 9:25-11:11; Day 8 Hr'g Tr. 34:23-35:2.

49

Case: 23-1664     Document: 62-1     Page: 586     Date Filed: 07/24/2023

The Youth Protection terms are memorialized as Exhibit L to the Plan and contain numerous, detailed provisions. Some of the highlights are:

(i)   Hiring a "Youth Protection Executive" with responsibilities over all aspects of youth protection including implementing and monitoring policies and trainings at the Local Council and Chartered Organization level.

(ii)  Creating a "Youth Protection Committee" comprised of members from BSA, Local Councils, Chartered Organizations, the TCC, and the Survivors Working Group that will work alongside the Youth Protection Executive in all aspects of youth protection.

(iii) Updating existing BSA policies such as requiring routine criminal background checks, registering all adults staying overnight in connection with Scouting activities as adult leaders and consolidating all aspects of BSA's youth protection materials into a single, accessible, manual.

(iv)  Enhancing training materials to ensure the training is clinically evidence- and research-based and reflective of survivor-informed experiences.

(v)   Integrating youth protection into the Scouting program through educational programs designed to teach Scouts how to recognize and report inappropriate behavior.

(vi)  Enhancing incident reporting procedures through mandatory notifications to an affected Troop's parents, Chartered Organization, Local Council Executive Committee, Youth Protection Executive and Youth Protection Committee when an adult offender is placed on the Volunteer Screening Database.

50

(vii)   Expanding survivor representation by requiring a qualified survivor of Scouting

Abuse to serve on the National Executive Board as well as each Local Council

Executive Board.

(viii)  Promoting survivor recognition by establishing a place of remembrance for all

child Abuse survivors at prominent locations at each of BSA's High Adventure

Bases and creating a survivor-focused path to Eagle Scout.

(ix)    Enhancing volunteer screening by exploring opportunities to both make the

Volunteer Screening Database public and share the database with other youth

servicing organizations.[206]

The agreed-upon terms coupled with BSA's existing youth protection program meet or

exceed industry standards relating to volunteer and employee screening, Abuse

identification and prevention training, internal policies and procedures and response

procedures.[207] Further, the enhanced youth protection program provides a framework for

continuously evaluating and working toward BSA's goal of becoming the "gold standard"

in Abuse prevention.[208]

As both the Direct Abuse Claimants and Debtors recognize, enough is never enough

when it comes to youth protection.[209] The Survivors Working Group did not get every term

---

[206] JTX 1-353 Ex. L. at 1-8.

[207] Day 10 Hr'g Tr. 88:4-23.

[208] Day 10 Hr'g Tr. 99:3-10.

[209] Day 8 Hr'g Tr. 35:10-17; Day 17 Hr'g Tr. 14:9-12.

51

it felt was important.[210]  Overall, however, the Survivors Working Group and TCC are pleased with the enhancements made to youth protection.[211]

### 9. *Plan Modifications, Supplemental Disclosure and Voting*

On February 15, 2022, Debtors filed the Plan incorporating the post-solicitation settlements and resolutions.  They also filed executed versions of the Century Settlement Agreement, the Zurich Settlement Agreement, the Clarendon Settlement Agreement, the Hartford Settlement Agreement and the agreements with TCJC and the United Methodist Ad Hoc Committee.[212]  After a hearing, Debtors submitted supplemental disclosures targeted to holders of claims in Class 8 and Class 9 explaining the modifications.[213]  The notices provided a summary of the modifications to the Plan and offered each holder in Class 8 and Class 9 an opportunity to change his/its vote.  At the conclusion of the extended voting period, the results for Classes 8 and 9 were:

### Debtor BSA

| Class | # Votes | Accept | Reject |
|-------|---------|--------|--------|
| Class 8 | 56,536 | 48,463 = 85.72% | 8,073 = 14.28% |
| Class 9 | 7,239 | 5,966 = 82.41% | 1,273 = 17.59% |

---

[210]  Day 8 Hr'g Tr. 34:8-9.

[211]  Day 8 Hr'g Tr. 35:1-12.

[212]  Notice of Filing of Exhibits I-2, I-3, I-4 and J-2 to Debtors' Third Modified Fifth Amended Chapter 11 Plan of Reorganization [ECF 8817].

[213]  Supplemental Disclosure Regarding Plan Modifications and Summary of Chartered Organizations' Options Under the Debtors' Modified Chapter 11 Plan of Reorganization, Opt-Out Election Procedures for Participating Chartered Organizations, and Supplemental Voting Deadline of March 7, 2022 at 4:00 pm (Eastern Time) for Holders of Class 9 Indirect Abuse Claims [ECF 8904]; Notice of Supplemental Voting Deadline of March 7, 2022 at 4:00 p.m. (Eastern Time) for Holders of Class 8 Direct Abuse Claims and Limited Disclosure Regarding Changes in Debtors' Chapter 11 Plan of Reorganization [ECF 8905].

**Debtor Delaware BSA, LLC**

| Class 9 | 775 | 628 = 81.03% | 147 = 18.97% |

### 10. The Confirmation Hearing

In contemplation of a contested confirmation hearing, on October 8, 2021, I entered a Scheduling Order detailing a discovery schedule for both fact and expert witnesses, containing objection, reply and motions *in limine* deadlines, and establishing a confirmation hearing date of January 24, 2022.[214] Due to discovery disputes and the extended voting deadline the confirmation hearing date was twice extended ultimately commencing on March 14, 2022.

#### a. The Objectors

Objections to all or some aspect of the Plan were timely filed by thirty-nine parties.[215] While several objections (or portions thereof) were resolved before or during the course of the confirmation hearing, ultimately, there is much to be decided. For the most part, the objectors reside in one of two camps—Non-Settling Insurance Companies or holders of Direct Abuse Claims.

Taking the lead role for the Non-Settling Insurance Companies at trial was the Certain Insurers.[216] Their main objection raises issues as to good faith, certain proposed

---

[214] Order (I) Scheduling Certain Dates and Deadlines in Connection with Confirmation of the Debtors' Plan of Reorganization, (II) Establishing Certain Protocols, and (III) Granting Related Relief [ECF 6528].

[215] *See* Addendum A for a list of objections and/or supplemental objections filed.

[216] The Certain Insurers are: (i) the AIG Companies, (ii) The Continental Insurance Company and Columbia Casualty Company, (iii) Indian Harbor Insurance Company on behalf of itself and as successor in interest to Catlin Specialty Insurance Company, (iv) Travelers Casualty and Surety Company, Inc. (f/k/a/ Aetna Casualty & Surety Company), St. Paul Surplus Lines Insurance Company and Gulf Insurance Company; (v) Arrowood Indemnity Company, (vi) Gemini Insurance Company, (vii) National Surety Corporation and Interstate Fire & Casualty Company, (viii) Allianz Global Risks US Insurance Company; (ix) Argonaut Insurance Company and Colony Insurance

53

Case: 23-1664    Document: 62-1    Page: 591    Date Filed: 07/24/2023

findings, and the provisions of the TDP. They also raise specific issues relative to their Indirect Abuse Claims.

On the Direct Abuse Claimant side, three objectors, the Archbishop of Agaña a Corporation Sole, ("Archbishop"), the Lujan Claimants[217] and the Official Committee of Unsecured Creditors for the Archbishop of Agaña ("Guam Committee"),[218] focused on rights held by either the Archbishop or Direct Abuse Claimants with claims against both the Archbishop and BSA. The Archbishop filed its own bankruptcy case under chapter 11 in the District Court of Guam, Territory of Guam, Bankruptcy Division in 2019.[219] The Guam Committee, consisting of seven individuals who hold tort claims against the Archbishop, was appointed by the Office of the United States Trustee. The Lujan Claimants assert claims against both BSA and the Archbishop of Agaña stemming from Abuse perpetrated by Father Louis Brouillard, a Catholic priest and Scoutmaster. They allege that Brouillard abused them not only as a Scoutmaster, but in his capacity as a Catholic priest in settings unrelated to Scouting. The Guam Committee objects to the third-party releases and the buyback of the insurance policies free and clear of the Archbishop's rights as a co-insured

---

Company, (x) Liberty Mutual Insurance Company, (xi) General Star Indemnity Company; (xii) Great American Assurance Company, f/k/a Agricultural Insurance Company; Great American E&S Insurance Company, f/k/a Agricultural Excess and Surplus Insurance Company; and Great American E&S Insurance Company, (xiii) Arch Insurance Company.

[217] Lujan Claimants' Objection to Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC, and Joinder in Objection filed by Guam Committee [ECF 8708] ("Lujan Claimants' Objection").

[218] *See e.g.,* Objection of the Official Committee of Unsecured Creditors for the Archbishop of Agaña (Bankr. D. Guam 19-00010) to the Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [ECF 8683].

[219] *See e.g,.* Joinder of Archbishop of Agaña, a Corporation Sole, to the Roman Catholic Ad Hoc Committee's Objection to the Debtors' Second Modified Fifth Amended Chapter 11 Plan of Reorganization [ECF 8687].

54

A00567

Case: 23-1664    Document: 62-1    Page: 592    Date Filed: 07/24/2023

under the policies. The Lujan Claimants join in those objections and also assert that the

insurance policies may not be sold (or bought back) free and clear of their right to sue

insurers directly under Guam law.[220]

Other Direct Abuse Claimants represented by the law firm of Dumas & Vaughn,

LLC (the "D&V Claimants"), other counsel or appearing *pro se* join in the objections to the

third-party releases as did the Office of the United States Trustee. The Girl Scouts of the

United States of America, Claimant I.G., Mr. Pai, Jane Doe and certain pro se claimants

also raise specific confirmation issues related to their claims.

---

[220] At argument, Debtors raised for the first time the issue of the Guam Committee's standing to object to confirmation. Citing *In re Lifeco Inv. Group, Inc.*, 173 B.R. 478, 487-88 (Bankr. D. Del. 1994), Debtors argue that as a creditor of a creditor (the Archbishop of Agaña), the Committee is not a party-in-interest under § 1109 and so cannot file objections in this case. *See* Day 19 Hr'g Tr. 8:18-9:23. Debtors also assert that the Guam Committee may not participate in this case because it did not receive permission from the Guam bankruptcy court to act on behalf of the Archbishop of Agaña. Debtors submitted into evidence the motion of the Guam Committee in the Guam Bankruptcy for "derivative standing to enforce the automatic stay and take other actions" (JTX 4015) ("Derivative Standing Motion"), the objection of the Archbishop to that motion (JTX 4016, 4017) and numerous other filings in response to the Derivative Standing Motion (JTX 4018 through 4026). The Derivative Standing Motion was ultimately denied, as moot, in a Final Order Approving Stipulation and Denying Derivative Standing Motion as Moot (JTX 4027), which was an agreed order submitted by the Guam Committee and the Archbishop of Agaña. Notwithstanding, the Guam Committee contends that it is a party in interest in the BSA bankruptcy case under the plain meaning of § 1109 and, in any event, it does not need derivative standing to object to confirmation in the BSA case because it did not bring an adversary proceeding. *See* Day 19 Hr'g Tr. 86:19-87:9.

I disagree. The Guam Committee is not a creditor of this estate. Indeed, while members of the Guam Committee may have claims against BSA which they may assert on their own behalf, the Guam Committee, as a committee, has no claims whatsoever against BSA. Moreover, the Guam Committee cites to no case for the proposition that §1109 contemplates that a committee in one bankruptcy case is a party-in-interest in another bankruptcy case. Finally, the Guam Committee cites to no case for the proposition that a committee does not need derivative standing to file an objection in a contested matter (as opposed to an adversary proceeding) when it is asserting a debtor's claims. In this case, where the Guam Committee sought relief to advance the position of the Archbishop of Agaña, and that relief was denied after the Guam Committee agreed to a form of order, I conclude that the Guam Committee does not have standing to appear in this case. Nonetheless, by the time Debtors raised this argument, the Guam Committee had fully participated in the evidentiary portion of the trial and the Archbishop of Agaña thereafter adopted the Guam Committee's legal arguments. *See* Day 19 Hr'g Tr. 176:3-11. Accordingly, I will address the Guam Committee's legal contentions.

### b. Plan Supporters

Responses and/or replies were filed.[221]  Current supporters of the Plan include the UCC, JPM, the TCC, the Coalition and the Local Council Committee.  Hartford, Century, Zurich, Clarendon, the Roman Catholic Committee, the Methodist Committee, TCJC, the Pfau/Zalkin Claimants and certain law firms that represent members of the Coalition are generally supportive of the Plan.

### c. The Hearing

During three weeks of evidentiary hearings twenty-six witnesses were called by live testimony, declaration or a combination of both and portions of six video depositions were played.  Additionally, over one thousand exhibits were admitted into evidence.  Subsequently, I reviewed designated and counter-designated portions of eight depositions.  The record is closed.[222]

I also entertained six days of oral argument, which proceeded in accordance with a chart of "Confirmation Closing Issues" prepared by Debtors.[223]  Each objecting party was provided with an opportunity to present argument on legal issues encompassed within its objection.  A specific time slot was provided for *pro se* objectors.  At the conclusion of argument, I took the matter under advisement.

## JURISDICTION

Jurisdiction exists over this case under 28 U.S.C. § 1334.  Confirmation is a core proceeding under 28 U.S.C. § 157(b)(2).  Except as further discussed below, no objector has

---

[221] *See* Addendum A for a listing of filings made in support of the Plan.

[222] A few evidentiary objections were taken under advisement during trial.  I rule on those herein.

[223] The chart was circulated and discussed at least twice in advance of argument.  During those discussions, I asked if there were any confirmation issues not reflected on the chart.  No party suggested any additional issues.

Case: 23-1664     Document: 62-1     Page: 593     Date Filed: 07/24/2023

contested that this court can enter a final order on confirmation consistent with the United States Constitution.[224]

## DISCUSSION

To confirm a plan of reorganization, a debtor must prove by a preponderance of the evidence that all elements of § 1129 of the Code are satisfied.[225] Preponderance of the evidence means that a fact that the proponent is attempting to prove is more likely to be true than not.[226]

Rulings on several key issues are fundamental to the nature of this Plan and impact many of the § 1129 factors. Accordingly, before walking through § 1129, I will first make additional findings on the aggregate value of the Direct Abuse Claims and the available unsettled insurance.[227] I will then turn to the Settling Insurer Settlements, which involve the buyback of insurance policies "free and clear" and require third-party releases and channeling injunctions. I will then address the "Findings" required under the Plan.

## I.    Additional Findings Related to Direct Abuse Claims

### A.    The Aggregate Value of the Direct Abuse Claims

While the lead up to confirmation suggested that the issue of the aggregate value of Direct Abuse Claims would be a hotly contested matter, the settlement with the TCC

---

[224] Discussion of jurisdictional issues surrounding the third-party releases and channeling injunction are addressed separately, *infra.*

[225] *See e.g., In re Tribune Co.,* 464 B.R. 126, 151-152 (Bankr. D. Del. 2011), *aff'd in part,* 587 B.R. 606 (D. Del. 2018); *In re Purdue Pharma L.P.,* 633 B.R. 53, 61 (Bankr. S.D.N.Y. 2021), *vacated,* 635 B.R. 26 (S.D.N.Y 2021). While the *Purdue Pharma* opinion was vacated, I cite it where I find the reasoning persuasive.

[226] *In re Lafferty,* 2019 WL 10431875 at *3 (Bankr. M.D. Pa. Dec. 20, 2019) ("To establish a fact by the preponderance of the evidence means to prove that the fact is more likely true than not true.") (internal citations omitted).

[227] These findings are made for purposes of confirmation only.

brought relative peace on this front. Part of this resolution resulted in only one valuation expert testifying at trial. Dr. Charles Bates, chairman of Bates White LLC and Debtors' retained expert was qualified without objection as an expert in claim valuation, mass tort matrixes and trust distribution structures. He spent approximately eight hours on the stand.[228] One of his four assignments was to estimate the total value of Direct Abuse Claims and Future Claims as of the filing of the petition assuming the claims would be resolved at values consistent with prepetition settlements. Within the scope of this work, he was asked to evaluate trends in the proofs of claim submitted in the BSA case.

Dr. Bates employed a frequency severity methodology to determine an aggregate value for the Direct Abuse Claims. The frequency severity model is an accepted valuation methodology within the valuation community and Dr. Bates has employed this methodology in every mass tort case in which he has provided expert testimony.[229] The frequency severity model takes guidance from historical claims about their values and characteristics to come up with averages for groups of claims within the historical data pool. It then applies those averages to groups of claims within the subject pool that share similar characteristics to come up with an aggregate valuation of the subject pool.[230] This methodology necessarily includes testing though scenario analysis which requires an

---

[228] Dr. Bates presented his testimony through the use of thirty-four demonstratives. At the conclusion of his testimony, Debtors moved to admit the demonstratives into evidence. I took the matter under advisement. I decline to admit the demonstratives into evidence. While exceedingly helpful, they are not evidence and they present a view of the facts—Dr. Bates's view—not just the facts.

[229] Day 6 Hr'g Tr. 115:4-116:1.

[230] Day 6 Hr'g Tr. 116:11-19.

58

evaluation of the assumptions used to value and group the claims to see the impact on the analysis if factors are changed.

Consistent with the severity frequency methodology, Dr. Bates first analyzed historical data about BSA's prepetition settlements with Abuse claimants as provided to him by Ogletree Deakins.[231] For the most part, Dr. Bates disregarded data pre-dating Ogletree's retention because the recordkeeping pre-Ogletree did not record important facts surrounding the claims; rather it was kept for accounting purposes.[232] Further, the Ogletree data was superior because Dr. Bates could discuss facts of each case with Mr. Griggs, as necessary.[233] The Ogletree data yielded 262 prepetition claims (the "Historical Abuse Claims").

Dr. Bates made several observations about the Historical Abuse Claims. First, there is a wide variation in the settlements amounts.[234] In grouping the Historical Abuse Claims by size of payment to claimants (dismissed without payment, four and five figure payments, six figure payments and seven figure payments), Dr. Bates concluded that a significant amount of the aggregate value of the settlements was concentrated in a small number of high value claims.[235] He further isolated the most severe claims (penetration claims) and observed a distinct bimodal distribution pattern. Fifty-five percent of the claims were resolved for less than $300,000 and about thirty-three percent of the claims settled for over $900,000. Relatively few claims settled for values in between.

---

[231] Day 6 Hr'g Tr. 56:18-21, 100:13-18.

[232] Day 6 Hr'g Tr. 101:14-18.

[233] Day 6 Hr'g Tr. 103:4-10.

[234] Day 6 Hr'g Tr. 104:20-105:15.

[235] Day 6 Hr'g Tr. 106:5-10.

59

To explain the bimodal distribution, Dr. Bates looked at the facts underlying the Historical Abuse Claims and identified repeat abusers as the primary driver of highest settlement values.[236] Dr. Bates equates repeat abuser to institutional responsibility/knowledge.[237] Dr. Bates also observed that the settlement average is higher for claims involving penetration followed by claims involving other sex acts and then claims involving groping/touching. Using this data, Dr. Bates established a benchmark value for penetration claims of $212,500 for once-identified abusers and $975,000 for repeat abusers. He then discounted those values by 54% for claims of other sex acts ($114,750/$526,500) and by one-half again for claims of groping/touching ($57,375/$263,250).

Having analyzed the Historical Abuse Claims and established his benchmarks, Dr. Bates next turned to the proofs of claim filed in the bankruptcy case. Dr. Bates segmented the proofs of claim filed by Direct Abuse Claims ("Proofs of Claim") into categories that overlap the data in the Historical Abuse Claims based on severity (penetration, other sex acts and groping/touching) and whether the abuser was a repeat abuser or once-identified abuser. In order to do so, Dr. Bates excluded Proofs of Claims that did not reflect the name an abuser, where the claims were presumptively barred, where the claimant was not a minor when first abused and which did not contain an allegation of Abuse.[238] He then discounted the Historical Abuse Claims benchmarks by 20% to account for the age difference between the claimants asserting Historical Abuse Claims and claimants who filed the Proofs of

---

[236] Day 6 Hr'g Tr. 112:5-114:20.

[237] Day 6 Tr. 112:5-114:20.

[238] Day 6 Hr'g Tr. 129:22-131:8.

60

Claim.[239]  Dr. Bates also applied assumptions for "other relationships."[240]  Applying the

Historical Abuse Claim benchmarks to this set of data and assumptions results in an

aggregate Initial Benchmark Valuation of $2.5 billion.[241]

To test his assumptions, Dr. Bates next developed a list of "plus" and "minus"

factors that would move the Initial Benchmark Valuation up or down, as applicable.[242]

These factors account for unknowable future possibilities such as (i) a change in the legal

landscape (e.g. passing of revival statutes), (ii) one or more claimants supplying information

not currently contained in the Proofs of Claim or (iii) more future claimants coming

forward.[243]  To account for these, Dr. Bates determined a relative likelihood and the relative

impact of each factor.[244]  He landed on a 50% variance around his first Initial Benchmark

---

[239] The Historical Abuse Claims reflect that the age of the claimant is highly reflective of the claim. Settlement values decrease significantly based on the delay in asserting the allegations. Day 6 Hr'g Tr. 139:9-140:14.

[240] An "other relationship" is a non-BSA relationship between a victim and an abuser.  This is another proxy for institutional responsibility.

[241] The Initial Benchmark Valuation changed over time.  In Spring 2021, when using data from Proofs of Claim in Tranche IV, Dr. Bates arrived at an Initial Benchmark Valuation of $4.75 billion, which was used in connection with Debtors' estimates in the Disclosure Statement.  In Fall, 2021, when using data from the Proofs of Claim in Tranche VI, Dr. Bates arrived at an Initial Benchmark Valuation of $5.84 billion.  This revision in the Initial Benchmark Valuation accounted for (i) the passage of revival statutes in four states and (ii) amendments to several thousand proofs of claim adding the names of abusers and the Abuse suffered.  These changes necessarily raised the Initial Benchmark Valuation.  In continuing to review the Tranche VI data, Dr. Bates observed that there were anomalous single-Abuse claims that resulted in relatively high-value settlements.  Day 6 Hr'g Tr. 183:5-184:5.  Through additional research in the ineligible volunteer files and/or contemporaneous news reports of the Abuse, Dr. Bates learned that claims classified as single abuser claims were, in actuality, repeat abuser claims.  Day 6 Hr'g Tr. 185:9-20.  Updating that information in the Tranche VI data set resulted in the $2.5 billion Initial Benchmark Valuation.  These changes in the Initial Benchmark Valuation were the result of updated information and not any change in the methodology.  Day 6 Hr'g Tr. 186:5-11.

[242] Day 6 Hr'g Tr. 165:8-12; 175:21-176:2.

[243] Day 6 Hr'g Tr. 174:8-180:17.

[244] Day 6 Hr'g Tr. 180:18-25.

61

Case: 23-1664     Document: 62-1     Page: 599     Date Filed: 07/24/2023

Valuation of $4.75 billion to create an appropriate valuation range of $2.4 to $7.1 billion for the Direct Abuse Claims.[245] The valuation range is inclusive of future claims.[246] The range was admittedly large reflective of the inherent uncertainties in the Direct Abuse Claims.[247]

Since the creation of that range, Dr. Bates reviewed the expert reports filed by others in this case, received additional information regarding repeat abusers (*see* fn. 241, *supra*) and performed additional analysis. One of the "biggest questions" Dr. Bates sought to answer was why so many Proofs of Claim were filed in the case as opposed to the prepetition average of fifty per year.[248] He came to two conclusions. The first reason is claimant privacy/hesitancy to come forward in a public setting with their claims.[249] This is reflected in the Proofs of Claim. Ninety-eight percent of the Direct Abuse Claimants did not check the box which would make their proof of claim public and more than eighty-five percent indicated they had never told anyone they were abused.[250] But, holders of Direct Abuse Claimants are willing to come forward in this forum. The second reason is the economic

---

[245] Day 6 Hr'g Tr. 181:1-5.

[246] To determine the impact of future abuse claimants (a plus factor) on his Benchmark Valuation, Dr. Bates performed a regression analysis and estimated that 400 future claims would be asserted. Day 6 Hr'g Tr. 198:20-25–199:1-19. He testified this followed the downward trend in the trajectory of claims since the 1960s. Certain objectors sought to seize on Mr. Patton's testimony that the FCR believes there are 11,000 future claimants. I give no evidentiary weight to that testimony. Mr. Patton was not offered for this purpose, he is not an expert, and there was no support offered for this position.

[247] Day 6 Hr'g Tr. 97:8-23.

[248] Day 6 Hr'g Tr. 135:21-25; 142:15-143:3.

[249] Day 6 Hr'g Tr. 143:4-9.

[250] Day 6 Hr'g Tr. 143:10-22. Dr. Bates's testimony was that 98 percent of survivors did not check the box that would make their proof of claim private. Read in context, that is in error. The proof of claim form provides that the submission **"will be maintained as <u>confidential</u> unless you expressly request that it be publicly available by checking the 'public' box <u>and</u> signing below."** JTX 1475 at 3 (emphasis in original).

considerations of claimants and their attorneys.[251] Dr. Bates observed that "recovery attorneys" did not mass-recruit these Direct Abuse Claimants until the bankruptcy case was imminent. He noted the lack of mass advertising for Abuse cases as compared to mesothelioma cases or Roundup cases, the expense of such advertising and the statute of limitations defenses which could make Abuse cases more expensive to litigate.[252] Based on these observations, Dr. Bates concluded that Abuse claims will not be brought in the tort system unless the value is sufficiently high for law firms to make a reasonable return on investment and claimants to overcome their privacy concerns.[253]

To test his hypothesis, Dr. Bates conducted a thought experiment/economic simulation assuming that a minimum claim value of $200,000 would merit bringing the case in the tort system. He chose $200,000 because the median wealth of the individuals asserting Direct Abuse Claims is between $200,000 and $300,000.[254] A typical 40% contingency fee would yield $80,000 for the law firm, which must cover costs and a profit. The result of his thought experiment confirmed his view that the value of a Direct Abuse Claim, on average, will be less than the average value of Historical Abuse Claims although the aggregate of such claims could be significant. Using a pool of 47,433 claims, he

---

[251] Day 6 Hr'g Tr. 143:4-9.

[252] Day 6 Hr'g Tr. 187:19-188:3.

[253] Day 6 Hr'g Tr. 143:23–145:11. Dr. Bates finds confirmation for his conclusions in the record in this case, specifically JTX 1-225, Verified Statement of Kosnoff Law, Pllc Pursuant to Rule of Bankruptcy Procedure 2019.

[254] Day 6 Hr'g Tr. 156:22-157:23.

63

concluded that only 1171 of them would yield enough value to be filed in the tort system.[255] Dr. Bates concludes that this forum—a mass tort bankruptcy case with TDP that reduce the cost to present claims and at the same time assure relative confidentiality—permit these claims to be filed in the bankruptcy case, when they would not have been filed in the tort system.[256]

This scenario analysis also confirms Dr. Bates's conclusions that the Proofs of Claim pool is generally weaker than the Historical Abuse Claims pool. For example, he believes the link between the abuser and the level of institutional responsibility is tenuous as most abusers were volunteers and not employees, and the vast majority of the claims reflected in the Proofs of Claim reflect once-identified abusers where the vast majority of the Historical Abuse Claims involve repeat abusers.[257]

Having employed a frequency severity methodology, including testing by scenario analysis, Dr. Bates concludes that it is more likely that the value of Direct Abuse Claims is in the lower quartile of his previous range, or between $2.4 and $3.6 billion.[258]

---

[255] Dr. Bates ran this simulation using a pool of the Proofs of Claim created by another expert. Of the 47,433 claims, 46,262 did not have value over the $200,000 assumed value. In this simulation, the average value of a Direct Abuse Claim is $74,000 and the aggregate value is $3,463,600. As applied to the 82,209 Proofs of Claim, Dr. Bates believes at least 70,000 of such claims would not have been brought in the tort system. Day 7 Hr'g Tr. 27:2-10.

[256] Day 6 Hr'g Tr. 146:15-148:18.

[257] Day 7 Hr'g Tr. 27:11-29:10.

[258] Day 6 Hr'g Tr. 97:10-23; See also Day 6 Hr'g Tr. 190:17-191:6.

Q  And do you have a reasonable degree of confidence as an expert in claim valuation that your range of 2.4 to $7.1 billion is an appropriate valuation range for the current abuse claims?

A  I believe it is. I think, to a reasonable degree of scientific certainty, that would be the range, based on the information. It's a wide range, albeit reflective on the uncertainty that exists. But I think that range is a reliable range for that purpose.

Q  And do you have a reasonable degree of confidence as an expert in claim valuation that the value of the current abuse claims will fall within the lower quartile of 2.4 to $3.6 billion?

64

A00577

Notwithstanding his valuation, as Dr. Bates recognizes, only a claim-by-claim analysis performed by the Settlement Trustee as contemplated by the TDP will establish the actual amount of any individual Direct Abuse Claim or the aggregate amount of Direct Abuse Claims.[259]

Dr. Bates's analysis was thorough and credible based on the data available. It was also undisputed. No other expert testified on the aggregate valuation of the Direct Abuse Claims. Cross-examination by the Certain Insurers did not challenge the aggregate valuation of the Direct Abuse Claims. Cross-examination by the Lujan Claimants, the Guam Committee and the D&V Claimants questioned the data points and "pluses" and "minuses" used in Dr. Bates's analysis and emphasized his lack of knowledge of specific facts of the underlying cases. They also established that Dr. Bates did not gather information from the plaintiffs' bar, conduct legal analysis of the import of his "plus" and "minor" factors or review specific complaints. But, none of the objectors challenged his use of the frequency severity model, suggested another analysis or undercut his conclusions. Based on the record and my assessment of Dr. Bates's credibility, there is no reason to disregard Dr. Bates's analysis and conclusions, which I accept for purposes of confirmation as his best estimate of the aggregate valuation of the Direct Abuse Claims. Accordingly, I

---

A  I -- I do. I think that is reflective of the most likely outcome, based on what I know at this time.

[259] Day 6 Hr'g Tr. 128:15-22.

Q  Was it your understanding that the settlement trustee would have the ability to obtain additional data where -- to extent there was any uncertainty in the data that is available today to the proof of claims?

A  The trust distribution procedures have that opportunity and I think require the trustee to develop an additional questionnaire to gather additional information for the use in valuing these claims.

65

conclude based on the record of evidence presented and the information known to date regarding the Direct Abuse Claims, that the aggregate valuation of the Direct Abuse Claims is most likely between $2.4 billion and $3.6 billion.

**B.** *The Potential Available Coverage of Non-Settling Insurance Companies for Allocated and Unallocated Claims*

As set forth in the Background Section, both BSA and Local Councils purchased insurance that responds to Direct Abuse Claims. Ms. Gutzler modeled the value of BSA's and Local Councils' insurance programs by employing a set of assumptions. She testified that this is a routine analysis performed by both insurers and insureds to evaluate coverage potentially available to pay underlying claims.[260] Her task was to allocate tens of thousands of underlying Direct Abuse Claims across thousands of liability policies.[261] Ms. Gutzler was offered and accepted without objection as an expert on allocation of claims to insurance policies.[262]

In order to make an allocation, Ms. Gutzler uses certain factual assumptions regarding policies (based on primary and secondary evidence)[263] as well as allocation methodology assumptions, which are more legal in nature and provided by Debtors' insurance counsel.[264] She also testified that the assumptions are reasonable based on her review of underlying information.[265] The "trigger date" assumption assumes that the date of first Abuse would determine the policy year a claim is allocated to. This assumption is

---

[260] Gutzler Decl. ¶ 32 n.57.

[261] Gutzler Decl. ¶ 42; Day 9 Hr'g Tr. 73:3-17.

[262] Day 9 Hr'g Tr. 8:4-16.

[263] Day 9 Hr'g Tr. 27:11-18.

[264] Gutzler Decl. ¶ 42.

[265] Gutzler Decl. ¶ 42.

66

Case: 23-1664     Document: 62-1     Page: 603     Date Filed: 07/24/2023

consistent with the First Encounter Agreement entered into between BSA and Century in 1996 and followed by many other insurance companies.[266] The "occurrence" assumption (i.e. how many time a policy would pay) is the "survivor" approach (i.e. each survivor, no matter how many times he was abused, is a single occurrence).[267] Ms. Gutzler also assumes an aggregate limit on the matching deductible policies between 1988 and 2008 based on the fact that Zurich and Clarendon, which are higher in the tower, agreed to settle for significant sums relative to her allocation modeling of different assumptions.[268] Finally, Ms. Gutzler assumes joint and several liability among all defendants after discussions with Mr. Griggs as to how BSA handled claims in settlement prepetition.

Applying her allocation model to five of Dr. Bates's aggregate claim valuations, Ms. Gutzler concludes that the potential allocation to solvent Non-Settling Insurance Companies (i.e., not Hartford, Century/Chubb, Zurich and Clarendon) is between $321,319,886 and $400,546,854 depending on which of Dr. Bates's aggregate claim valuation is used.[269]

---

[266] Paragraph 7 of the First Encounter Agreement, as read into the record by Ms. Gutzler, provides:

The first encounter rule shall mean that, for purposes of determining coverage under any policy the date of occurrence pertaining to any sexual molestation claim shall be the date when the first act of sexual molestation took place, even if additional acts of sexual molestation or additional personal injuries arising therefrom also occurred in subsequent policy periods. And all damages arising out of such additional acts of sexual molestation or additional persona injuries shall be deemed to have been occurred – incurred during the policy year when the first act of sexual molestation took place.

Day 9 Hr'g Tr. 32:10-21, 33:5-36:2.

[267] Day 9 Hr'g Tr. 29:2-36:2, 87:13-88:4.

[268] Day 9 Hr'g Tr. 36:24-38:13.

[269] Gutzler Decl. ¶¶ 62, 118; Day 9 Hr'g Tr. 106:24-108:25. In her declaration, Ms. Gutzler provides an allocation for each of Dr. Bates's $2.4 Billion BW Tort Distribution, $3.0 Billion TDP Distribution, $3.3 Billion TDP Distribution, $3.6 Billion TDP Distribution, and $3.6 Billion BW Tort Distribution. Her narrative, and her testimony do not reflect an actual opinion for the $2.4

67

Ms. Gutzler then analyzes potential coverage from Non-Settling Insurance

Companies on policies that receive no allocation in her modeling. The lack of allocation

could be because limits of lower tier policies are not fully exhausted due to the value of

claims allocated to that year. These higher tier policies, however, are still at risk for

coverage depending on the actual determination of claim values in given years. Ms. Gutzler

concludes that the total limits of coverage potentially available under policies issued by

Non-Settling Insurance Companies to both BSA and Local Councils is between

$4,295,878,628 and $4,404,844,433, again, depending on which claim valuation is used.[270]

Ms. Gutzler notes that while it is difficult to precisely quantify the expected value of these

policies without additional information, her experience is that insurers often settle policies

with no current allocation to mitigate risk.[271] Current non-allocation simply means it is less

likely that these insurers will be required to pay out based on current valuation scenarios.[272]

She also opines, however, that the Independent Review Option, which is designed to ensure

that excess layers of coverage are triggered, increases the odds that the value of higher level

excess policies will be unlocked.[273]

Ms. Gutzler's analysis was methodical and credible. It was also undisputed. As

with Dr. Bates, no other expert testified on allocation. While the Guam Committee, on

---

Billion BW Tort Distribution presumably because the Settlement Trust assets exceed $2.4 billion
without these additional sources of funding.

[270] Gutzler Decl. ¶ 121; Day 9 Hr'g Tr. 40:13-41:11. Ms. Gutzler determined the total limits of
coverage potentially available for each of Dr. Bates's $3.0 Billion TDP Distribution, $3.3 Billion
TDP Distribution, $3.6 Billion TDP Distribution, and $3.6 Billion BW Tort Distribution.

[271] Gutzler Decl. ¶ 122.

[272] Gutlzer Decl. ¶ 120.

[273] Gutzler Decl. ¶¶ 131-134.

68

Case: 23-1664     Document: 62-1     Page: 606     Date Filed: 07/24/2023

cross-examination, questioned certain assumptions, the cross-examination did not undermine Ms. Gutzler's credibility nor undercut her opinions. Ms. Gutzler was quite candid that other assumptions could have been employed.[274] Similarly, on cross examination by the Certain Insurers, Ms. Gutzler acknowledged that there are thousands of modeling variations that could be run, though the results might not necessarily differ.[275] But, neither the Guam Committee nor the Certain Insurers offered an expert to opine as to the reasonableness of other assumptions, the unreasonableness of Ms. Gutzler's assumptions or any alternative allocation.

Based on the record and my assessment of her credibility, there is no reason to disregard Ms. Gutzler's analysis and conclusions, which I accept for purposes of confirmation as her best estimate of what coverage may be available based on the potential aggregate values of Direct Abuse Claims. Accordingly, I conclude based on the record of evidence presented and the information known to date regarding the Direct Abuse Claims, that the potential allocation to solvent Non-Settling Insurance Companies is between $321,319,886 and $400,546,854 and the total limits of coverage potentially available under policies issued by Non-Settling Insurance Companies to both BSA and Local Councils is between $4,295,878,628 and $4,404,844,433.

### C. The Plan is a 100% Plan with Respect to Direct Abuse Claims

Based on the testimony of Dr. Bates and Ms. Gutzler, and the value of the contributions and settlements, I conclude that if the Plan is confirmed, Direct Abuse Claims will more likely than not be paid in full. The Initial Benchmark Valuation of the aggregate

---

[274] Day 9 Hr'g Tr. 29:5-31:15.

[275] Day 9 Hr'g Tr. 62:4-15.

A00582

Abuse Claims is $2.5 billion with a range between $2.4 billion and $3.6 billion. The assets available to the Settlement Trust to satisfy those claims are:

| | Initial Funding | Funding Over time |
|---|---|---|
| BSA | $78,200,000[276] | $80,000,000 (BSA Settlement Trust Note) $75,000,000 (Share of Settlement Growth Payment) |
| Local Councils | $515,000,000 | $125,000,000 (DST Note) $25,000,000 (Share of Settlement Growth Payment) |
| Methodist Committee | $30,000,000 | $100,000,000 (Seek to Raise) |
| Insurance Settlements | $1,656,000,000 | |
| Range of Allocated Insurance against Non-Settling Insurance Companies | $321,319,886 - $400,546,854 | |
| Range of Unallocated Insurance against Non-Settling Insurance Companies | $4,295,878,628 - $4,404,844,433 | |
| Additional Contributions Chartered Organizations | Unknown | |

The fully noncontingent funding is $2,484,200,000, which is already within the range of Direct Abuse Claims albeit just slightly, and only $16 million below Dr. Bates's $2.5 billion Initial Benchmark Valuation. The committed, but contingent funding could bring another $200 million into the Settlement Trust. These funds, together with the available allocated insurance against Non-Settling Insurance Companies brings the total to

---

[276] This amount excludes any cash component.

A00583

$3,005,519,886 to $3,084,746.854, well over the Initial Benchmark Valuation and quite comfortably within the aggregate range. Finally, the Settlement Trust assets include an additional $4 billion in currently unallocated insurance against Non-Settling Insurance Companies.[277]

I have excluded from this analysis the $250 million contribution from TCJC because, as set forth below, I cannot approve that settlement as it is based on a release of Non-Abuse Claims. Of course, BSA and TCJC may come to another monetary arrangement and if so, the Settlement Trust Assets will be increased by that amount. Alternatively, the Settlement Trust Assets include whatever claims BSA has against TCJC.

I have also excluded any additional contributions from other Chartered Organizations. Under the Plan, Participating Chartered Organizations may choose to become Contributing Chartered Organizations by contributing funds to the Settlement Trust. I have no evidence, however, from which to draw any conclusions regarding the magnitude of any such contributions. Nonetheless, these Chartered Organizations are also a source of additional funds.

I have also excluded Pachulski Stang's voluntary contribution of 10% of the total amount of fees it bills to the Settlement Trust.[278]

---

[277] I understand that the unallocated insurance is not currently triggered by the modeled claims in the range of $2.4 billion to $3.6 billion. Nonetheless, Ms. Gutzler testified that it is not unusual for insurers to settle policies with no current allocation in order to mitigate risk.

[278] Application of the Official Tort Claimants' Committee for Entry of an Order, Pursuant to 11 U.S.C. §§ 328 and 1103, Fed. R. Bank. P. 2014 and Local Rule 2014-1, Authorizing and Approving the Employment and Retention of Pachulski Stang Ziehl & Jones LLP as Counsel to the Tort Claimants' Committee Effective as of March 4, 2020 [ECF 292] ¶ 9.

71

Case: 23-1664    Document: 62-1    Page: 609    Date Filed: 07/24/2023

Based on the Initial Benchmark Value, the aggregate range of Direct Abuse Claims and the Settlement Trust Assets, I conclude that Debtors have shown by a preponderance of the evidence that Direct Abuse Claims will be paid in full.

## II.    The Settlements

Not every resolution of a disagreement in a bankruptcy case is a settlement for purposes of Bankruptcy Rule 9019. Debtors mediated with numerous parties and entered into various agreements, which they termed "Settlement Agreements" documented by term sheets and/or formally finalized agreements, some of which were eventually baked into the Plan. Certain of these "Settlement Agreements," however, are not truly settlement agreements, but rather consensual resolutions of Plan terms or resolutions of confirmation objections. Here, the Roman Catholic Committee settled its objection to the Plan and became a Participating Chartered Organization. Similarly, the settlement that brought the TCC on board required changes to the Plan in order to resolve its objection and obtain its recommendation that holders of Direct Abuse Claims accept the Plan. Neither of these consensual resolutions requires court approval. Whether these resolutions become effective depends on whether the Plan is confirmed.

Certain actual settlements are not the subject of objections. Those settlements are the settlement between JPM and the Creditors' Committee and the settlement with the Methodist Committee.

The remaining settlements did draw objections. The Guam Committee and the Lujan Claimants object to each of the Settling Insurer Settlements and the Pfau/Zalkin Claimants and Mr. Washburn object to the TCJC settlement. The objections to the TCJC settlement relates solely to the third-party release aspect of the agreement and so will be addressed in that context.

72

A00585

Case: 23-1664    Document: 62-1    Page: 610    Date Filed: 07/24/2023

*A. The Settling Insurer Settlements*

The Settling Insurer Settlements bring an aggregate of $1,656,000,000 to the Settlement Trust from which holders of Abuse Claims will receive distributions. Without these settlements, there is no Plan.

As set forth above, with the help of the mediators, Debtors entered into settlements with Hartford, Chubb, Zurich and Clarendon (collectively, the "Settling Insurers"). The settlements are similar in structure and provide for: (i) the payment by the insurer of an agreed amount on an agreed schedule to the Settlement Trust to be used to pay Abuse Claims; (ii) the assignment of the Local Council Insurance Policies to the estate and the sale of the Local Council Insurance Policies and the BSA Insurance Policies (collectively, the "Abuse Insurance Policies") to the insurer under § 363 free and clear of all claims and interests of all parties; and (iii) a complete release from all parties (i.e. other Protected Parties,[279] the Limited Protected Parties/Participating Chartered Organizations, the FCR, the Coalition and the Settlement Trust) of all causes of action arising out of their respective insurance policies and any liability for Abuse Claims. The settlement also requires the channeling to the Settlement Trust of the claims of holders of Abuse Claims for various periods of time, which differs based on whether the claim relates to a Contributing Chartered Organization, a Participating Chartered Organization or an Opt-Out Chartered Organization. Through this combination of affirmative relief and protections, the Settling Insurers will obtain a complete release of liability for Abuse Claims on behalf of themselves,

---

[279] Protected Parties means Debtors, Reorganized BSA, the Related Non-Debtor Entities, the Local Councils, the Settling Insurance Companies and the Contributing Chartered Organizations, but only with respect to Abuse Claims as defined. Plan Art. I.207.

Case: 23-1664    Document: 62-1    Page: 611    Date Filed: 07/24/2023

the named insured(s) under their policies and any additional insureds (whether specifically named or categorically identified).

As settlements that embody sales of estate property out of the ordinary course, both the standard for approving settlements and the standard for approving sales are relevant to determine whether the settlements can be approved. The channeling and release provisions are measured under the *Continental*[280] standard.

### B. The Settling Insurer Settlements Meet the Martin Standard

In their written objections (both original and supplemental), neither the Guam Committee nor the Lujan Creditors object on the grounds that the Settling Insurer Settlements fail to meet the *Martin*[281] standards. Neither object to the proposed settlement amounts or the settlement of the current or future coverage litigation. Rather, the objections only address two components of the settlements – the third-party releases and the "free and clear" aspect of the buyback of the Abuse Insurance Policies. Nonetheless, at argument, each argued that Debtors' evidence was conclusory. Accordingly, I will briefly address the settlement standard.

Settlements and compromises of estate claims are favored in bankruptcy cases which generally seek to foster consensual resolution.[282] The court should "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise" to determine whether the settlement is fair and equitable.[283]

---

[280] *Gilman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203 (3d Cir. 2000).

[281] *Martin v. Kane (In re A & C Prop.)*, 784 F.2d 1377, 1381 (9th Cir. 1986).

[282] *See e.g., Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Myers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir. 1996) (citation omitted).

[283] *Martin*, 91 F.3d at 393.

A00587

The criteria the court should use in striking this balance are well established in the Third Circuit: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."[284] From a practical perspective, the first and third factors are often considered together.[285]

Whether to approve a settlement is within the sound discretion of the court.[286] The court need not be convinced that the settlement is the best possible compromise to approve it; instead, the court "need only conclude that the settlement falls within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness."[287] Although the court may not substitute the trustee's judgment for its own and instead must undertake its own, independent, reasoned analysis of the claims at issue, "a court may nonetheless take into account the [Trustee's] business judgment in recommending a settlement as well as the opinions of the [Trustee] and the parties to the settlement."[288] Nonetheless, the court does not conduct a "mini-trial" on the merits. Instead, it canvasses the issues to see if the settlement falls below the lowest point in the range of reasonableness.

I conclude that the Settling Insurer Settlements meet the *Martin* standards. The testimony of Mr. Desai, Mr. Whitman, Mr. Patton and Ms. Gutzler all support the

---

[284] *Id.*

[285] *In re W.R. Grace & Co.*, 475 B.R. 34, 78 (D. Del. 2012) (citing *In re Nutraquest*, 434 F.3d 639, 646 (3d Cir. 2006)).

[286] *In re Nortel Networks, Inc.*, 522 B.R. 491, 510 (Bankr. D. Del. 2014) (citation omitted).

[287] *Id.* (quoting *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008)).

[288] *In re NII Holdings, Inc.*, 536 B.R. 61, 100 (Bankr. S.D.N.Y. 2015) (citations omitted).

settlements. Through the Settling Insurer Settlements, Debtors are resolving complex insurance coverage issues, saving years of litigation and expense and yielding more timely recoveries for holders of Direct Abuse Claims. As Mr. Desai testified, in exercising its business judgment to approve each settlement, BSA considered (i) the defenses raised by each insurer to their coverage obligations, (ii) the cost of the litigation if settlement were not reached; (iii) that the Coalition, the FCR and Local Councils all supported these settlements, (iv) the amount of each settlement, (v) any solvency issues and (vi) the role of each insurer in objecting to matters in the bankruptcy case.[289] Further, each Settling Insurer Settlement was the result of arms-length negotiations with the assistance of a mediator.[290]

A summary of the evidence is as follows.

### 1. Hartford

The Hartford settlement brings $787 million into the Settlement Trust.

Hartford brought both prepetition coverage litigation and postpetition coverage litigation against not only BSA, but other insurers challenging its coverage obligations.[291] The insurance coverage litigation raises complex issues, including BSA's duty to cooperate and the "expected and intended" defense to coverage. Further, Hartford took the position that all Abuse equals one occurrence. Ms. Gutzler testified that if Hartford were to prevail on that theory it would substantially limit the amount Hartford would be obligated to pay for Direct Abuse Claims.[292] Such a result would no doubt be seized upon by other insurers.

---

[289] Desai Decl. ¶ 27.

[290] JTX 1-292, 1-312, 1-434, 2834.

[291] See Section I.D., supra; Hartford Accident and Indemnity Company et al. v. Boy Scouts of America et al., Adv. Pro. 20-50601; Whittman Decl.¶¶ 92-94.

[292] Gutzler Decl. ¶ 70.

Mrs. Gutzler also testified that only secondary evidence exists for $26 million of per occurrence limits under Hartford policies, raising another coverage issue to overcome.[293] In addition to its pre- and post-petition coverage litigation, Hartford filed a proof of claim asserting unliquidated claims for contribution, subrogation and/or allocation.[294]

The National Executive Committee met no less than four times before approving the final settlement agreement with Hartford.[295] Its deliberations included active discussions with advisors, followed by directions regarding settlement parameters.[296] Mr. Whittman also concurs in this decision. Mr. Whittman participated in mediation discussions and confirms the arms-length nature of the negotiations.[297]

The Hartford Settlement also resolves the outstanding disputes over the original Hartford settlement.[298]

### 2. *Century*

The Century settlement brings $800 million into the Settlement Trust.

Century and BSA were embroiled in two lawsuits over prepetition coverage obligations.[299] Issues include the application of the First Encounter Agreement, BSA's

---

[293] Gutzler Decl. ¶¶ 71, 72.

[294] JTX 14-37.

[295] Desai Decl. ¶¶ 31-35.

[296] Desai Decl. ¶ 33

[297] Whittman Decl. ¶ 94.

[298] BSA and Hartford agreed to a settlement which was incorporated into an earlier version of the Plan. As part of a restructuring support agreement with the Coalition, the TCC and the FCR, BSA sought declaratory relief that it had no obligation to consummate the agreement and Hartford had no damages as a result. While I approved Debtors' entry into the restructuring settlement agreement, I did not grant the declaratory relief. The Hartford settlement resolves disputes arising out of the first agreement with Hartford.

[299] *See* Section I.D., *supra.*

77

alleged failure to cooperate and BSA's alleged breach of the consent to settlement clauses. Century also asserts that there are no coverage obligations if the underlying claim was barred by a statute of limitations.[300] Further, 12%-15% of the total value of Century's coverage is supported solely by secondary evidence.[301]

The National Executive Committee or Bankruptcy Task Force met no less than eight times before approving the final settlement agreement with Century.[302] In addition to a discussion of the proposed terms of the settlement, BSA's advisors presented the National Executive Committee with an analysis of the Century and Chubb Insurance Groups, their connectedness to BSA and Century's financial health.[303] The presentation also included a comparison to the Hartford Settlement.[304] Further discussions included consideration of the impact on Chartered Organizations, other mediation parties and strategic alternatives.[305]

BSA had significant concerns regarding Century's ability to honor its agreements going forward.[306] The presentations by BSA's advisors included information regarding Century's financials.[307] Century is in runoff paying claims under policies issued by Insurance Company of North America.[308] As Ms. Gutzler testified, "Century is not an income-generating insurer through the continued receipt of premiums and there is

---

[300] *See e.g.*, Gutzler Decl. ¶ 83; JTX 1-143 at 26; JTX 1-281 at 18-19.

[301] Gutzler Decl. ¶ 87.

[302] Desai Decl. ¶¶ 38-45.

[303] Desai Decl. ¶ 41.

[304] Desai Decl. ¶ 41.

[305] Desai Decl. ¶¶ 44, 45.

[306] Day 1 Hr'g Tr. 51:16-52:24.

[307] Day 8 Hr'g Tr. 90:13-18.

[308] Gutzler Decl. ¶ 86.

78

significant uncertainty regarding the assets available to satisfy Century Indemnity

significant uncertainty regarding the assets available to satisfy Century Indemnity

Company's obligations to the Debtors and to Century's other policyholders."[309]

Mr. Whittman advised BSA with respect to the Century settlement and

recommended it be accepted.[310] He, too, was concerned about Century's ability to pay any

future judgments considering, among other things, that Century has a statutory surplus of

$25 million.[311] As was the FCR.[312]

### 3. Zurich

The Zurich settlement brings $52.5 million into the Settlement Trust.

Zurich issued excess insurance to BSA between 1989 and 2018, with underlying

matching-deductible policies between 1989 and 2008.[313] Zurich and BSA were not involved

in prepetition coverage litigation. Nonetheless, throughout the case, Zurich has articulated

coverage defenses that it would assert in the event that BSA and/or the Settlement Trustee

seek coverage, including that it has no coverage obligation unless and until self-insured

---

[309] Gutzler Decl. ¶ 86.

[310] Whittman Decl. ¶¶ 129-131.

[311] Whittman Decl. ¶ 133.

[312] Day 8 Hr'g Tr. 90:13-91:3; *see also* Declaration of James L. Patton, Jr. in Support of Confirmation of the Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [ECF 9395, admitted into evidence (as qualified), Day 7 Hr'g Tr. 101:5-7] ("Patton Decl.") ¶ 22 ("Importantly, it resulted in Century and the Chubb Companies contributing $800 million to the Settlement Trust. I believe this contribution to be substantial in any context, but it is particularly substantial (and was particularly hard-fought) here because of questions surrounding Century's financial viability. The potential for recovery against Century also had to be weighed against the likelihood of protracted future litigation. This likelihood presented a significant risk because of the uncertainty regarding both the success of collecting under the insurance policies as well as the amount of Century's assets that would remain after such litigation. The Century and Chubb Companies Insurance Settlement avoided this outcome while also providing the largest single contribution to the Settlement Trust.").

[313] Gutzler Decl. ¶ 93.

79

retentions of $1 million are paid.[314] Ms. Gutzler testified that Zurich's defenses, if successful, would substantially reduce or even eliminate coverage.[315] She also testified that coverage would be at risk if the matching-deductible policies were determined not to have aggregate limits.[316]

The National Executive Committee met at least three times to discuss the Zurich settlement with its advisors, which was modeled on the Century settlement.[317]

### 4. Clarendon

The Clarendon settlement brings $16.5 million into the Settlement Trust.

Clarendon issued primary policies to certain Local Councils from 1957 to 1979 and excess policies to BSA between 2003 and 2006.[318] The terms of certain policies issued to Local Councils are supported only by secondary evidence which carries with it the risk that a court might find the evidence insufficient to prove the existence or terms of those policies.[319] As with Zurich, the matching-deductible aggregate limit concern is also present

---

[314] See e.g., JTX 1-134 at 1.

[315] Gutzler Decl. ¶ 95

[316] Gutzler Decl. ¶ 95. Ms. Gutzler testified: "Zurich raised a number of the same coverage defenses as the other insurers, which, if successful, would substantially reduce or even eliminate the coverage available for Abuse Claims under their policies. In addition to these litigation risks based on coverage defenses, a substantial amount of the Zurich coverage would be at risk if the underlying Century and Liberty Mutual matching-deductible policies are determined not to have aggregate limits. In such a circumstance, the BSA would be required to pay virtually all claims which did not exceed the per occurrence limit for such matching-deductible policies, regardless of the number of Abuse Claims in the relevant policy term. If Zurich succeeded in arguing that the matching deductible policies had no aggregate limit, the majority of coverage for Abuse Claims allocated to Zurich's excess policies would be at risk."

[317] Desai Decl. ¶¶ 49-51.

[318] Gutzler Decl. ¶ 102.

[319] Gutzler Decl. ¶ 104.

with the Clarendon policies issued to BSA.[320]  Further, the Clarendon insurance policies

contain a $1 million self-insured retention.[321]

The National Executive Committee met at least three times to discuss the Clarendon

settlement with its advisors, which was modeled on the Century settlement.[322]

Ms. Gutzler's allocation analysis also supports each of the Settling Insurer

Settlements.  Ms. Gutzler allocated claims to each of the Settling Insurers using the same

assumptions she used to allocate claims to Non-Settling Insurance Companies.  This

exercise returned the following results:[323]

| Category | $2.4 Billion BW Tort Distribution | $3.0 Billion TDP Distribution | $3.3 Billion TDP Distribution | $3.6 Billion TDP Distribution | $3.6 Billion BW Tort Distribution |
|---|---|---|---|---|---|
| Century/ Chubb | $1,250,666,311 | $1,434,919,710 | $1,546,479,054 | $1,884,155,500 | $1,834,263,558 |
| Hartford | $   477,535,263 | $   698,331,465 | $   765,648,955 | $   767,419,261 | $   716,358,283 |
| Zurich | $     73,826,900 | $     61,216,969 | $     66,183,646 | $     74,187,281 | $     83,752,366 |
| Clarendon | $       3,878,517 | $       6,564,759 | $       7,434,084 | $       9,070,978 | $       7,855,750 |

---

[320]  Gutzler Decl. ¶ 104.

[321]  JTX 4000-15 at BSA-PLAN_00491911.

[322]  Desai Decl. ¶¶ 55-57.

[323]  Gutzler Decl. ¶ 62.

81

Case: 23-1664     Document: 62-1     Page: 619     Date Filed: 07/24/2023

As can be seen from the above, the Hartford payment falls above the highest allocation of claims based on Dr. Bates's aggregate range for Direct Abuse Claims. The Clarendon payment does as well. The Zurich payment, while falling below Ms. Gutzler's allocation, is not so far below that it is unreasonable given potential coverage defenses, cost and delay.

The Century payment is the only payment that falls well below Ms. Gutzler's allocation. But, it is not outside the realm of possibilities (or, below the lowest rung on the ladder). Century and BSA were litigating coverage issues before the bankruptcy cases were filed, the issues are complex and uncertain. As importantly, it is undisputed that, unlike the other carriers, there is significant concern about collection. Century is in runoff with a relatively di minimis surplus capital.

Further, all three groups representing holders of Direct Abuse Claims (the TCC, the Coalition and the FCR) now support the Settling Insurer Settlements. Each has had the opportunity to review the coverage defenses as well as Century's financial status. They have determined to support the settlements individually and collectively. Their support satisfies me that Debtors have met their burden to show that the Settling Insurer Settlements are in the paramount interest of creditors. The expense and delay in resolving these complex issues heightens the need for settlements so that distributions can be made to claimants.

Overall, I find that the claims being compromised bring significant value to the estate, enabling Debtors to fund the Settlement Trust with substantial insurance proceeds in a timely fashion. While the record could perhaps be more fulsome on the actual coverage issues, presiding over this case has brought a general familiarity with the existing (and potential future) coverage disputes that have and are likely to arise in this case absent

82

A00595

Case: 23-1664    Document: 62-1    Page: 620    Date Filed: 07/24/2023

settlement. Of course, I need not decide those issues to approve the Settling Insurer Settlements.

The Guam Committee and the Lujan Claimants believe Debtors should have considered the settlements at more granular levels, including the effect of the Settling Insurer Settlements on the particular claims of the Lujan Claimants. But, the Settling Insurer Settlements qua settlements (i.e. the money coming into the Settlement Trust) does not disadvantage the Lujan Claimants more than other creditors. Given the nature of mass tort litigation, it is impossible to focus on specific creditors when reviewing a resolution of obligations under insurance policies against which coverage can be sought on 82,209 claims. Without these settlements, coverage disputes would have to be determined on a claim-by-claim basis. These aggregate resolutions do away with the need to resolve individual coverage disputes on a large subset of these claims.

As the *Martin* case tells us, the settlement need not be the best that can be achieved, it need only be above the lowest point in the range of reasonableness. Debtors have met this evidentiary hurdle.

### C. *The Buyback of the Abuse Insurance Policies*

Section 363(b) permits the sale of assets of the estate other than in the ordinary course of business. That sale may be free and clear of any interest in that property if one of five disjunctive factors listed in § 363(f) are met.[324]

---

[324] Section 363(f) provides:

(f)    The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –

      (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;

      (2)    such entity consents;

83

Debtors and other plan supporters, including the Settling Insurers, rely on opinions and/or orders entered in mass tort cases permitting the buyback/settlement of insurance policies free and clear of all interests, beginning with *Johns-Manville*.[325]  There, the bankruptcy court approved a settlement with insurers of insurance coverage litigation relating to underlying asbestos lawsuits.  The Second Circuit ruled that because the insurance policies were property of the estate and the bankruptcy court properly exercised jurisdiction over Manville's assets, it could approve a sale free and clear of interests of entities that had derivative rights against the policy, including Manville's distributors who could only recover on liabilities resulting from Manville's conduct.[326]  In *Dow Corning*,[327] the court held that neither a Michigan statute nor a Louisiana direct action statute prevented the sale of debtor's insurance policies free and clear of those interests.  Both of these cases are in the context of the unique complexities present in mass tort bankruptcies, such as this, in which insurance often is the most significant asset to satisfy massive, unliquidated tort liabilities.  And, they were both reorganizations.

---

(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)     such interest is in bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

*See also In re Kellstrom Industries, Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) (analyzing the five disjunctive factors).

[325] *MacArthur Company v. Johns-Manville Corporation (In re Johns Manville Corporation)*, 837 F.2d 89, 90 (2d Cir. 1988).

[326] The Second Circuit also noted, in *dicta*, that asbestos victims with direct liability claims also held derivative rights because they are seeking to collect from Manville's insurance policies based on Manville's conduct. *Id.* at 92.

[327] *In re Dow Corning*, 198 B.R. 214, 233-238, 244-245 (Bankr. E.D. Mich. 1996).

A00597

No Local Council objects to the buyback of the Abuse Insurance Policies to the Settling Insurers free and clear of whatever interests they have as an insured or additional insured under those policies. No Local Council objects to the buyback of the BSA Insurance Policies. And, as part of the Local Council Contribution, Local Councils are assigning to BSA any insurance policies they own (i.e. the Local Council Insurance Policies), which are then being sold to the Settling Insurers. The sale free and clear of their interests, therefore, is clearly consensual and thus permissible under § 363(f)(2).

Similarly, with one exception, no Chartered Organization objects to the buyback or sale of the Abuse Insurance Policies to the Settling Insurers free and clear of whatever interests they have as an additional insured under those policies. The lack of objection of a Chartered Organization is also consensual for purposes of § 363 and, again, permissible under § 363(f)(2).[328]

Only the Lujan Claimants and the Guam Committee (and, therefore, the Archbishop) object to the § 363 sale. They argue that the buyback of the Abuse Insurance Policies is not permitted free and clear of the Archbishop's rights as an additional insured under any BSA policy or a policy issued to the Aloha Council.[329] The Lujan Claimants and

---

[328] *Matter of Tabone, Inc.*, 175 B.R. 855, 858 (Bankr. D. N.J. 1994).

[329] The Lujan Claimants present this argument in jurisdictional terms as well. Lujan Claimants' Objection at 41 ("Lacking jurisdiction over nondebtors' interests in BSA insurance policies, the Court cannot sell the polices free and clear of the coninsureds' interest, including the Archbishop of Agaña's interests, and cannot enjoin the coinsureds from exercising their rights as to the policies."). The Lujan Claimants have no standing to raise the rights of the Archbishop. This objection to the extent it pertains to this issue is overruled.

85

Case: 23-1664    Document: 62-1    Page: 623    Date Filed: 07/24/2023

the Guam Committee also contend that such policies cannot be sold free and clear of the

Lujan Claimants' direct action rights under Guam's direct action statute.[330]

Preliminarily, I note two items. First, as I understand it, there is a dispute over

whether any Settling Insurers issued any insurance policies covering Abuse to the Aloha

Council, and/or whether at the time of the issuance of any policies, the Aloha Council

included the territory of Guam. The Settling Insurers contend they did not. The Lujan

Claimants contend such insurance policies exist. In support of their respective positions, the

Lujan Claimants and Century both designated portions of the December 2, 2021 deposition

of Jesse Lopez, the Rule 30(b)(6) deponent of the Boy Scouts of America for the Hawaii and

Guam chapter.[331] Having reviewed the designated portions of the Lopez deposition and

Schedule 3 to the Plan, which lists insurance policies issued by Insurance Company of

North America to "Aloha (104) Kilauea 1922-1972 (103)" and "Aloha (104); Maui County

1915-2019 (102)," there is insufficient evidence to resolve this dispute. Accordingly, I

cannot rule out the possibility that at least Century issued an insurance policy to the Aloha

Council that may cover Abuse that took place on Guam.[332] Second, the Lujan Claimants

and the Guam Committee make the same arguments with respect to insurance policies

issued to BSA and the Aloha Council. They do not differentiate between the policies issued

---

[330] The Guam Committee does not have standing to raise the arguments of the Lujan Claimants or other individuals who have claims against the Archbishop.

[331] The Lujan Claimants object to Century's designations as they were late filed. While true, I reviewed Century's designated portions, and given my conclusion, I overrule the Lujan Claimants' objection.

[332] While Debtors and the Lujan Claimants stipulated to the admissibility of certain exhibits [ECF 9591], those exhibits do not include any insurance policies issued to the Aloha Council. Further, the exemplar insurance policies in the record do not include any insurance policies issued to the Aloha Council.

86

to BSA and any policies that may have been issued to the Aloha Council. Neither do

Debtors. Accordingly, except where specifically set forth below, neither will I.

### 1. *The Abuse Insurance Policies Issued by Hartford and Century as well as the Proceeds of Those Policies are Property of the Estate*[333]

There is no question that the Abuse Insurance Policies issued by Hartford and

Century to BSA are property of the estate.[334] The BSA Insurance Policies were purchased

by BSA. Any Local Council Insurance Policies, once assigned to BSA in connection with

the Plan, will be property of the estate.[335] Objectors appear to recognize this basic property

right.

The Guam Committee and the Lujan Claimants, however, contend that the proceeds

of the Abuse Insurance Policies issued by Hartford and Century are not property of the

estate. Objectors primarily rely on the Third Circuit's decision in *First Fidelity*.[336] In *First*

*Fidelity*, prepetition, a chapter 13 debtor (McAteer) purchased a credit life insurance policy

as security for a vehicle installment loan and named the lender (First Fidelity) as the

primary beneficiary and himself as the secondary beneficiary. After debtor crammed down

the car loan to fair market value through his chapter 13 plan, he died. The insurance

---

[333] Throughout the confirmation hearing, the Lujan Claimants and the Guam Committee focused their arguments on Abuse claims arising between 1976 and 1983 and on Century and Hartford. *See e.g.,* Guam Committee Objection (listing policies in which the Archbishop has an interest) [ECF 8683] ¶ 6. Neither Zurich nor Clarendon appear to have issued policies during these years. JTX 1040. *See also* JTX-4027 at 1-3. During argument on this issue, however, counsel for the Lujan Claimants stated she was also seeking to preserve whatever rights the Archbishop or the Lujan Claimants have in respect of policies for any year. While this is a bit belated, my conclusions apply equally to Zurich and Clarendon.

[334] *See e.g., ACandS, Inc. v. Travelers Cas. and Sur. Co.*, 435 F.3d 252, 260 (3d Cir. 2006) (citation omitted) ("It has long been the rule in this Circuit that insurance policies are considered part of the property of the bankruptcy estate."); *In re Downey Financial Corp*, 428 B.R. 595 n.29 (Bankr. D. Del. 2010) (collecting cases).

[335] 11 U.S.C. § 541(a)(7).

[336] *First Fidelity Bank v. McAteer*, 985 F.2d 114, 119 (3d Cir. 1993).

company paid the lender an amount consistent with the insurance agreement, but that exceeded the cramdown value. The debtor's wife sought to recover from the lender the amount that exceeded the fair market value. The bankruptcy court ordered the turnover of the difference and the district court affirmed. The Third Circuit reversed. The court held that while the debtor owned the policy, the lender, not the debtor, was the primary beneficiary and neither the debtor's bankruptcy nor the cramdown altered the terms of the policy.

There are multiple ways in which the BSA bankruptcy case and the Abuse Insurance Policies differ from *First Fidelity*. One, BSA or the Local Council, as applicable, both own the Abuse Insurance Policies and is the named insured under the policies.[337] Neither BSA nor the Local Council named another party as the primary beneficiary. Although there may

---

[337] *See e.g.*, JTX 4000-2 at BSA-PLAN_00485360 through BSA-PLAN_00485363. The Declarations page lists the Named Insured as "Boy Scouts of America-National, Regional and all Local Councils." The policy further provides:

PERSONS OR ENTITIES INSURED

The unqualified word "Insured" includes:
(a) The Named Insured, named in the Declarations of this policy.
(b) Scout Officials and employees whether or not registered with the Boy Scouts of America; units and their sponsors (charter organizations), and all volunteer workers working at the request of a scout official whether or not registered with the Boy Scouts of America; any organization or proprietor with respect to real estate management for the Named Insured; as respects Established Camps or Troop Camps, any affiliated troop or council.
(c) Any person, organization, trustee, estate or governmental entity to whom or to which the Named Insured is obligated by virtue of a written contract or by the issuance or existence of a permit, to provide insurance such as is afforded by this policy, but only with respect to operations by or on behalf of the Named Insured or to facilities of, or facilities used by the Named Insured and then only for the limits of liability specified in such contract, but in no event for limits of liability in excess of the applicable limits of liability of this policy.
(d) Any Scout Official as defined herein and any Unit with respect to the use of a non-owned automobile in the scout activities of the Named Insured or any Unit; the donors and owners of non-owned automobile while being used in the scout activities of the Named Insured or any Unit.
(e) Any vendor of Named Insured's products.

88

be additional insureds under many of the Abuse Insurance Policies, no party has a greater right to the proceeds then BSA or the Local Council does. Two, the Lujan Claimants argue that the policy proceeds are not payable to BSA as the policyholder, but to injured persons, including her clients.[338] Unlike in *First Fidelity*, however, the Lujan Claimants have not directed me to any provision of any Abuse Insurance Policy that provides that claimants are insureds. Their position is contrary to the evidence. Three, the insurance company did not dispute liability or coverage in *First Fidelity*. Here, as set forth in the Background Section, not only is liability on the underlying claims an issue, so too, there are numerous coverage disputes. Four the amount owed to First Fidelity is a liquidated amount based on the amount remaining on one car loan. Here, the claims of BSA for coverage under the Abuse Insurance Policies issued by Hartford and Century are based on unliquidated personal injury claims—82,209 of them. The Lujan Claimants' claims against the Aloha Council are similarly unliquidated personal injury claims. While Dr. Bates has placed an aggregate range of value on the claims for purposes of making informed decisions on the standards of confirmation, the actual amount of claims generally, and of claims that could trigger coverage under the policies issued by Hartford and Century is unknown and unknowable without a resolution of each and every claim. Five, First Fidelity involved one insurance policy. Here, there are thousands of Abuse Insurance Policies, numerous of which were issued by Hartford and Century. While Ms. Gutzler allocated liability to the Abuse Insurance Policies issued by the Settling Insurers for purposes of making informed decisions on the standards of confirmation, the actual allocation is unknown and unknowable until

---

[338] *See e.g.,* Day 19 Hr'g Tr. 167:3-13.

89

Case: 23-1664    Document: 62-1    Page: 627    Date Filed: 07/24/2023

not only all of the underlying claims are liquidated, but all of the insurance coverage issues are resolved.

The analysis of whether the proceeds of the Abuse Insurance Policies are property of the BSA estate is more analogous to the cases discussing Directors, Officers and Corporate Liability Insurance Policies (a "D&O Policy").[339] It has long been the law in this district that whether the proceeds of D&O Policies are property of the estate turns on the facts and circumstances of both the policies and the claims asserted.[340] In *Allied Digital*, a chapter 7 trustee sued the debtor's former officers and directors for damages in connection with a leveraged buyout. The directors and officers moved for reimbursement of their defense costs under the corporation's D&O Policy. The D&O Policy provided for coverage for both directors and officers (Coverage A) and coverage for the company that purchased the policy (Coverage B). As described by the court, "the coverage followed the liability." The policy provided direct coverage to directors and officers for judgments and settlements for covered claims as well as defense costs, but only if the corporation had not indemnified them (Coverage A). If the corporation had indemnified the directors and officers, then the corporation would be entitled to reimbursement (Coverage B). The policy also provided direct coverage to the corporation for securities claims, but all securities claims had already been adjudicated and/or were barred by statutes of limitations.

---

[339] *See e.g., Nutraquest*, 434 F.3d at 639 n.4 (generally, insurance policy proceeds are property of the estate, with the exception to that rule arising when policy proceeds only payable to a third party).

[340] *In re Allied Digital Technologies, Corp.*, 306 B.R. 505, 509-510 (Bankr. D. Del. 2004) (D&O Policy); *In re World Health Alternatives*, 369 B.R. 805, 810 (Bankr. D. Del. 2007) (D&O Policy); *In re SN Liquidation, Inc.*, 388 B.R. 579, 584 (Bankr. D. Del. 2008) (D&O Policy); *but see, In re Selectbuild Illinois*, 2015 WL 3452542 at *10 (Bankr. D. Del. 2015) (declining to apply D&O Policy analysis to commercial general insurance policy because there was no assertion that the additional insured's claim to the policy for indemnification would reduce the reorganized debtor's ability to obtain proceeds for its own claims.)

90

A00603

After canvassing case law, the court established four rules:

1. "[w]hen a debtor's liability insurance policy provides direct coverage to the debtor the proceeds are property of the estate, because the proceeds are payable to the debtor."

2. "[w]hen the liability insurance policy only provides direct coverage to the directors and officers the proceeds are not property of the estate."

3. "[w]hen there is coverage for the directors and officers and the debtor, the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution."

4. "[w]hen the liability policy provides the debtor with indemnification coverage but indemnification either has not occurred, is hypothetical, or speculative, the proceeds are not property of the bankruptcy estate."[341]

Because the directors' and officers' defense costs were real, the indemnification coverage to the company was hypothetical, and there was no chance of any securities litigation, the *Allied Digital* court held that the proceeds were not property of the estate.[342] As evidenced by the above rules, however, the "debtor's interest in the proceeds requires protection from depletion and overrides the interest of the directors and officers."[343]

The result of such an analysis here is that the proceeds of the Hartford and Century Abuse Insurance Policies are property of the estate. The Abuse Insurance Policies provide direct coverage—indemnity, and in many cases, defense—to BSA or the Local Council. This indemnification obligation is not hypothetical or speculative. 82,209 unique and

---

[341] *Allied Digital*, 306 B.R. at 512.

[342] *Id.* at 512-13. The court also observed that the trustee's real concern was as a potential judgment creditor (i.e., that the payment of defense costs would reduce policy limits that could pay any judgment the trustee eventually obtained against the directors and officers), not as an insured.

[343] *Id.* at 511. *Allied Digital* and *First Fidelity* are not inconsistent. The *Allied Digital* case does not address a policy with a named primary and named secondary insured.

91

A00604

Case: 23-1664    Document: 62-1    Page: 629    Date Filed: 07/24/2023

timely proofs of claim asserting Direct Abuse Claims were filed against BSA. Depletion of the proceeds of these policies would have an adverse effect on the estate.

The Guam Committee and the Lujan Claimants appear to argue that because many of the relevant Abuse Insurance Policies in their years have no aggregate limits, that payment to the Archbishop under the policies cannot impact BSA or diminish the estate. Even putting aside Hartford's argument that all Abuse equals one occurrence, this argument flies in the face of the Combined Single Limits contained in these same policies. Ms. Gutzler testified that the Combined Single Limit means that all insureds are subject to the single per occurrence limits. In these circumstances, to the extent the Archbishop is allowed to draw on the proceeds to pay the Archbishop's share of liability for a given claimant, it would diminish proceeds that are available to pay BSA's or the Aloha Council's share of liability on those same claims. Whether that is actually the case cannot be known until all of the Lujan Claimants' claims are liquidated, but this impact is neither speculative nor hypothetical. Rather, if I credit the Lujan Claimants' perception of the value of their claims,[344] it is a foregone conclusion that an insurance payment on behalf of the Archbishop would diminish proceeds necessary to pay the Lujan Claimants' claims against BSA. The Lujan Claimants' argument also ignores the premise of this Plan, which is based on the buyback of the policies, bringing almost $1.6 billion into the estate.

Here, there is: (i) a settlement of an insurance policy in a mass tort case which proposes a reorganization, not a liquidation, and in which the insurance policies and proceeds are key assets (ii) a policy that contains either aggregate limits or combined single

---

[344] JTX 2946 (complaint seeking $10 million in damages); Day 19 Hr'g Tr. 214:5-215:21 (alluding to claims of over $5 million each).

limits and (iii) the additional insured (i.e. the Archbishop) has filed a claim against the estate. In this context, I conclude that the Abuse Insurance Policies issued by Hartford and Century and the proceeds of those policies are property of the estate. Accordingly, they can be sold consistent with § 363 (but, as discussed immediately, below also consistent with other applicable provisions of the Bankruptcy Code). To the extent that *SoyNut Butter*[345] and cases cited therein are inconsistent with this analysis, they are not persuasive in this specific context.

### 2.  *The Automatic Stay Prevents a Sale Free and Clear of the Archbishop's Interests*

Section 362(a)(3) provides that the filing of a bankruptcy petition operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."[346] The Guam Committee and the Lujan Claimants argue that the sale of the Abuse Insurance Policies free and clear of the Archbishop's interests as an additional insured is a violation of the stay in the Archbishop's bankruptcy case.[347] In support of their position, they primarily rely on *Palmdale Hills*[348] for the proposition that there is no "bankruptcy to bankruptcy" exception for the automatic stay. In that case, the Ninth Circuit ruled that it is not a violation of the automatic stay for

---

[345] *In re SoyNut Butter Company*, 2018 WL 3689549 (Bankr. N.D. Ill. Aug. 1, 2018) (a liquidating case); *In re Forty-Eight Insulations, Inc.*, 133 B.R. 973, 976 (Bankr. N.D. Ill. 1992) (liquidating case, where relief requested would "enjoin a named insured, who is neither a debtor in this bankruptcy nor a creditor of the Debtor, from asserting claims under an insurance policy that it contracted for and paid.").

[346] 11 U.S.C. § 362.

[347] Whitmann Decl. ¶ 197. As an Opt-Out Chartered Organization, the only rights affected here are the Archbishop's rights as an additional insured under BSA Insurance Policies and Local Council Insurance Policies. The Archbishop retains its rights under BSA Insurance Policies and Local Council Insurance Policies issued by Non-Settling Insurance Companies as well as any insurance policies purchased by the Archbishop, even if issued by a Settling Insurer.

[348] *Palmdale Hills Prop., LLC v. Lehman Commer. Paper, Inc. (In re Palmdale Hills Prop., LLC)*, 654 F.3d 868, 874-875 (9th Cir. 2011).

93

A00606

Debtor A to object in its case to a proof of claim filed by Debtor B, but it is a violation of the automatic stay for Debtor A to seek to subordinate Debtor B's claim. In coming to its conclusion, the court characterizes objecting to a proof of claim as defensive and subordinating a claim as offensive.

Debtors' and certain of the Settling Insurers' response is multi-pronged. First, Debtors argue that they are not attempting to exercise control over property of the Archbishop, but merely resolving a debtor/creditor issue raised by the Archbishop in its proof of claim. Second, Debtors argue that the sale does not violate the automatic stay as to the Archbishop because the Archbishop's bankruptcy estate is receiving the benefit of its bargain under the Abuse Insurance Policies. Finally, Debtors argue, relying on cases in the executory contract context that this court can approve a sale in the "dueling debtor" context. Debtors do not argue that the Archbishop's rights as an additional insured are not property of the Archbishop's estate.

### a. The Buyback of the Abuse Insurance Policies is Not Part of the Claims Resolution Process

The Archbishop of Agaña, through counsel, filed a proof of claim in this case for an unspecified amount delineating two types of claims: an "Insurance Claim" and "a Contingent Claim." It reads in relevant part:

A. The Insurance Claim

The Archbishop asserts a claim against the Debtor, the Debtor's assets and/or the Debtor's insurers for insurance coverage under all insurance policies issued to the Debtor or any of its subsidiaries, councils, chapters or affiliates, under which the Archdiocese or any of its parishes or affiliated entities may be entitled to insurance coverage or some other benefit, whether as a named or additional insured or otherwise, and which may provide coverage for any claims asserted against the Archdiocese or any of its parishes or affiliated entities (i) in the Bankruptcy of the Archdiocese, Case No. 19-00010 (Bankr. D. Guam), or (ii) otherwise arising from known and unknown tort claims involving the Debtor, or any of its subsidiaries,

94

councils, chapters or affiliates, and the Archdiocese or any of its parishes or affiliated entities. The Archdiocese reserves all rights under the policies and at law.

### B. Contingent Claim

The Archdiocese and its parishes and affiliated entities have or may have contingent claims for contribution, indemnification, allocation of fault and/or damages against the Debtor and/or its subsidiaries, councils, chapters or affiliates, none of which are yet matured or liquidated, arising out of or with respect to claims asserted against the Archdiocese or any of its parishes or affiliated entities (i) in the Bankruptcy of the Archdiocese of Guam, Case No. 19-00010 (Bankr. D. Guam), or (ii) otherwise arising from known and unknown tort claims involving the Debtor, or any of its subsidiaries, councils, chapters, or affiliates, and the Archdiocese or any of its parishes or affiliated entities.

### C. No Waiver

The filing of this Proof of Claim is not an acknowledgement or admission that the Bankruptcy Court has jurisdiction over the Archdiocese with respect to any matter other than the Proof of Claim, and the Archdiocese reserves all rights with respect thereto. The Archdiocese does not waive, and hereby expressly reserves all rights to supplement and amend the Proof of Claim from time to time, as it may deem necessary or appropriate. The Archdiocese reserves any and all rights of setoff or recoupment under the Bankruptcy Code of applicable law.[349]

Debtors argue that by looking at the four corners of the proof of claim, the Archbishop has submitted to the jurisdiction of this court for purposes of every interest the Archbishop has in the Abuse Insurance Policies and that BSA is addressing that interest through the Plan.[350]

While Debtors' argument has surface appeal, Debtors cite no case for the proposition that the claims resolution process includes selling property in which a creditor claims an interest (through a proof of claim or otherwise).[351] No doubt, the Archbishop's filing of the

---

[349] Proof of Claim No. 6436, filed 11/13/20. All claims were admitted into evidence as JTX 14. The Archbishop asserts rights on behalf of the Archdiocese, or any of its parishes or affiliated entities that may be entitled to insurance coverage under a policy issued to BSA or any of its subsidiaries, councils, chapters or affiliates.

[350] Jurisdiction does not appear to be the pertinent inquiry. I clearly have jurisdiction to approve a sale under § 363.

[351] Compare In re Millennium Lab Holdings, II, LLC, 945 F.3d 126, 138 (3d Cir. 1999) (noting that the claims-allowance process is not synonymous with the restructuring of the debtor-creditor relationship).

proof of claim permits me to determine whether the Archbishop has an interest in any

Abuse Insurance Policy, but that is not the dispute before me. The sale of the Abuse

Insurance Policies goes beyond determining whether the Archbishop has an interest in any

of the policies and, in fact, assumes that it does. If the Archbishop has no interest in the

Abuse Insurance Policies, then a "free and clear" sale is meaningless, or surplusage, as to it.

Debtors also contend that the "No Waiver" paragraph means that Debtors agreed to

submit all matters related to insurance to this court for determination only reserving its right

to assert jurisdiction-based arguments on other matters. Once, again, I have not been asked

to rule on the Archbishop's claims or determine whether the Archbishop has an interest in

the policies. To the extent that BSA contends that the Archbishop can waive the automatic

stay, as the Guam Committee points out, the Third Circuit appears to disagree.[352]

Notwithstanding, I am troubled by the Archbishop's apparent change of position on

what is sufficient for its purposes. In joining the objection filed by the Roman Catholic

Committee, the Archbishop "object[ed] to any attempt to compromise the additional

insured status of the Chartered Organizations, without a corollary channeling injunction in

its favor in the BSA bankruptcy."[353] That corollary channeling injunction exists, yet, the

Archbishop joined and adopted the Guam Committee's objections during trial. This change

of heart, however, must be sorted by the judge presiding over the Archbishop's bankruptcy

case.

---

[352] *See ACandS,* 435 F.3d at 259 (citing *Maritime Elec. Co. v. United Jersey Bank,* 959 F.2d 1194, 1204 (3d Cir. 1992)).

[353] JTX 4017 (Declaration of James R. Murray, Special Insurance Counsel to The Archbishop of Agaña) ¶ 12.

### b. *A Violation of the Automatic Stay Does Not Depend on Whether the Prohibited Action May be Favorable to the Estate*

Debtors and Hartford both argue that the Plan provides the Archbishop with the benefit of its bargain and so there is no violation of the automatic stay. The argument somewhat mirrors the Archbishop's initial thoughts on the "corollary channeling injunction."

Debtors' argument is: (i) the BSA Insurance Policies issued by Hartford and Century provide for indemnity and defense, (ii) all of the Direct Abuse Claims that the Archbishop could tender to Hartford and Century for defense are being channeled to the Settlement Trust, (iii) the Archbishop, therefore, will never have to defend a Direct Abuse Claim,[354] (iv) the Archbishop will also no longer be responsible for payment of a Direct Abuse Claim because those claims will be paid pursuant to the TDP therefore, (v) Hartford's and Century's indemnity obligations are satisfied and the Archbishop has no further claim for indemnity under the Abuse Insurance Policies. Debtors also point out that the indemnity obligation is not only accelerated and fulfilled, but that it resolves any and all insurance coverage defenses such as the "expected and intended" defense or whether the Archbishop is actually covered by the BSA Insurance Policies. Hartford took a slightly different approach arguing that the automatic stay, and particularly, § 362(a)(3), is meant to prevent acts that diminish the estate. It argued that (i) because the Archbishop will never have to defend against or pay Direct Abuse Claims (ii) there is no diminishment of the Archbishop's estate by selling the policies back to the Settling Insurers.

---

[354] Of course, the Archbishop will have to defend non-Abuse Claims (i.e., abuse claims unrelated to Scouting), but those claims are not covered by the BSA Insurance Policies.

The Guam Committee and the Lujan Claimants respond that this argument is more one of adequate protection. They also argue that § 363 does not negate § 362 and that the Guam bankruptcy court is the court in which the Archbishop's assets are to be administered. I agree.

While, again, Debtors' position has surface appeal, this argument really speaks to adequate protection.[355] Neither Debtors nor Hartford cited me to a case for the proposition that a non-debtor can exercise control over a debtor's property as long as the action does not diminish the value of the property of the estate or even increases it. In *ACandS*, an arbitration proceeding brought prepetition to determine an allocation issue under an insurance policy ended in a postpetition decision that had the "effect" of terminating the debtor's insurance coverage. The debtor moved before a United States District Court to vacate the award, including on the grounds that it violated the automatic stay. The district court denied the motion and affirmed the arbitration award. The Third Circuit reversed. In finding a violation of the automatic stay, the Third Circuit held that "section 362(a)(3) has consistently been interpreted to prevent acts that diminish future recoveries from a debtor's insurance policies."[356] But the Court did not hold the opposite as it did not need to address whether actions that exercise control over property of the estate, but do not diminish the estate, violate the automatic stay. The Third Circuit also rejected the carriers' argument that equity precludes application of the automatic stay. The court ruled that if an equitable exception exists, it rests solely in the bankruptcy court that can grant relief from the stay.

---

[355] The argument is a compelling adequate protection argument for Chartered Organizations not in bankruptcy.

[356] *ACandS*, 435 F.3d at 261.

Here, the exchange of the channeling injunction for the Archbishop's rights as an additional insured under the Abuse Insurance Policies might be an appropriate exchange. The Guam bankruptcy court might lift the stay to permit the exchange to be made, but permission is still required.

### c. The "Dueling Debtor" Argument Favors the Archbishop

Finally, Debtors urge that the automatic stay does not prevent this court from approving the sale because BSA is exercising its fundamental right under the Code to sell its property and/or to confirm a plan. For this proposition, Debtors rely on *Noranda*.[357] There, two companies who were counterparties to a long-term bauxite sales agreement filed separate chapter 11 bankruptcy cases days apart in different courts. The buyer of the bauxite brought a first day motion to reject the contract; the seller of the bauxite brought a first day motion to assume the same contract. Without a discussion of the automatic stay, the court presiding over the buyer's bankruptcy case approved the rejection of the executory contract over the objection of the debtor/seller's argument that the court should apply a heightened standard of scrutiny to the rejection motion. While sympathetic to the debtor/seller's plight, the court found no special statutory treatment for rejection of a contract simply because the counterparty is a debtor.[358]

*Noranda* is distinguishable. First, apparently the debtor/seller did not raise the automatic stay because the court does not address it.[359] Second, rejection of a contract is

---

[357] *In re Noranda Aluminum, Inc.*, 549 B.R. 725 (Bankr. E.D. Mo. 2016).

[358] *See also In re Old Carco LLC*, 406 B.R. 180, 212 (Bankr. S.D.N.Y. 2009).

[359] *See also In re Sun City Investments, Inc.*, 89 B.R. 245, 249 (Bankr. M.D.Fla. 1988) (holding in *dicta* and without discussion that rejecting debtor does not need to file motion for relief from stay in counterparty's bankruptcy case before filing motion to reject contract in its case); *but see In re Railyard Company, LLC*, 562 B.R. 481, 487 (Bankr. D.N.M. 2016) (recognizing that in a dueling debtor case,

simply a breach.[360] With certain exceptions, by rejecting the contract, the debtor is

exercising its right not to perform.[361] While there is certainly an effect on the counterparty

to the contract, the contract still exists. It is not terminated. Third, Debtors cite no case for

the proposition that the breach of a contract by nonperformance is a violation of the

automatic stay.[362]

The "dueling debtor" cases are more prevalent in the proof of claim context

discussed in *Palmdale Hills* where Debtor B files a claim in Debtor A's bankruptcy case.

Generally, courts conclude that no relief from stay is necessary for Debtor A to object to

Debtor B's proof of claim. Conversely, courts generally conclude that it is a violation of the

automatic stay (so that relief from stay is necessary) for Debtor A to seek to subordinate

Debtor B's claim. This differentiation seems to mirror the distinction courts make in

applying § 362(a)(1) in continuing to defend a prepetition complaint filed by a debtor (which

is not a violation of the stay) and continuing to prosecute a counterclaim (which is, and

requires relief from stay).

---

rejection trumps assumption and using that as a basis, in part, to grant relief from stay to permit the
rejecting debtor to litigate the rejection motion to conclusion).

[360] *Mission Products v. Tempnology*, 139 S. Ct. 1652, 1661 (2019).

[361] *Old Carco*, 406 B.R. at 212.

[362] The Supreme Court's most recent pronouncement instructs that § 362(a)(3) prohibits affirmative
actions, not passive actions such as non-performance. *City of Chicago, Illinois v. Fulton*, 141 S.Ct. 585,
590 (2021) ("the language used in § 362(a)(3) suggests that merely retaining possession of estate
property does not violate the automatic stay. Under that provision, the filing of a bankruptcy
petition operates as a "stay" of "any act" to "exercise control" over the property of the estate. Taken
together, the most natural reading of these terms—"stay," "act," and "exercise control"—is that
§ 362(a)(3) prohibits affirmative acts that would disturb the status quo of estate property as of the
time when the bankruptcy petition was filed.").

The *Palmdale* Court explains that in objecting to a claim, Debtor A is not harming Debtor B's estate nor is Debtor A exercising control over Debtor B's estate, but is simply determining whether the claim is one that should be allowed. If the objection is successful, Debtor B "still has the claim, but its façade of validity has been stripped away to reveal that the claim is (and always has been) worthless."[363] Equitable subordination, on the other hand, changes the character of the claim and value of the claim and can even result in a secured creditor's lien being transferred to the estate.[364] While Debtor B starts with a valid, enforceable claim against the estate, by virtue of subordination, the lien could be wrested from Debtor B's estate and given to Debtor A.

While I agree with BSA that it is exercising its fundamental right to sell property of the estate and to confirm a plan, I conclude based on the law presented to me, that the automatic stay prevents me from approving the sale of the Abuse Insurance Policies free and clear of whatever interests the Archbishop has. Through the Plan, I am not being asked to determine what interest the Archbishop may have in the Abuse Insurance Policies or the claim the Archbishop has against the BSA estate. Nor is the Guam Committee or the Lujan Claimants arguing that the automatic stay prevents BSA from selling the Abuse Insurance Policies back to the Settling Insurers or confirming the Plan. Rather, their position is relatively narrow. They argue that the automatic stay prevents the sale of the Abuse Insurance Policies free and clear of the Archbishop's interest. I agree. To be sure, the

---

[363] *Palmdale*, 654 F.3d at 875.

[364] *Id.* at 875-876 (citing 11 U.S.C. § 510(c)(2)).

101

Archbishop's interest may be affected by the sale, but neither objector has argued that this effect is a violation of the automatic stay.[365]

### 3. The Abuse Insurance Policies Can be Sold Free and Clear of the Lujan Claimants' Direct Action Rights

The Lujan Claimants also contend that their direct action rights are an interest in property that cannot be sold "free and clear of" without their consent because (i) the Plan violates the McCarron-Ferguson Act to the extent it extinguishes the Lujan Claimant's right to sue an insurance company and (ii) § 363(d)(1) requires application of non-bankruptcy law to nonprofit entities. Assuming Debtors can sell the Abuse Insurance Policies free and clear of their direct action rights, the Lujan Claimants argue they are not adequately protected.

### a. The McCarran-Ferguson Act Does Not Reverse Preempt Any Code Section or Plan Provision that Permits the Channeling of Direct Abuse Claims to the Settlement Trust

The McCarran-Ferguson Act provides in relevant part: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance."[366] The Act was enacted in response to a Supreme Court decision concluding that insurance transactions are subject to federal regulation under the Commerce Clause.[367] The McCarran-Ferguson Act is intended to confirm that states, not the federal government, can regulate the business of insurance.[368] The McCarran-Ferguson Act, therefore, is an

---

[365] Because, as set forth below, I am approving the channeling injunction, the Archbishop will get the benefit of the insurance buyback in any event.

[366] 15 U.S.C. §1012(b).

[367] *Securities & Exch. Com'n v. National Securities*, 393 U.S. 453, 458-59 (1969).

[368] *Id.*

Case: 23-1664    Document: 62-1    Page: 640    Date Filed: 07/24/2023

exception to the standard preemption rules between federal and state statutes (in certain situations) and is said to "reverse preempt" federal law.[369]

In enacting the McCarron-Ferguson Act, Congress was concerned around regulations regarding the contract of insurance, the type of policy that could be issued, its reliability, interpretation and enforcement.[370] The focus of pre-emptive state regulation is the relationship between the insurance company and its policyholder.[371] "Statutes aimed at protecting or regulating this relationship [between insurer and insured], directly or indirectly, are laws regulating the 'business of insurance.'"[372]

In a thorough Report and Recommendation, Judge Burke recently explained the Third Circuit standard for application of the McCarron-Ferguson Act and the step-by-step analysis the court must undertake.[373] The court must first assess a threshold question: whether the conduct regulated by the state constitutes the "business of insurance." If it does not, the inquiry ends and the McCarran-Ferguson Act does not apply.[374] If the threshold question is answered in the affirmative, then reverse preemption will apply if three requirements are met: (i) the federal law at issue does not specifically relate to the business

---

[369] *In re Patriot National, Inc.*, 623 B.R. 696, 709 (D. Del. 2020).

[370] *National Securities*, 393 U.S. at 460.

[371] *Id.* at 460 (ruling that state regulation of relationship between insurance company and its stockholders does not reverse preempt the Securities Act of 1933 and finding that no conflict exists between the federal law and state law).

[372] *Id.* at 460 (section of the state statute aimed at protecting the interests of those holding stock in insurance companies is a securities regulation, not a regulation of the business of insurance within the meaning of the McCarran-Ferguson Act.); *U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 501 (1993).

[373] *U.S. v. Delaware Department of Insurance*, 2021 WL 3012728 at *10-16 (D. Del. July 16, 2021) *report adopted* 2021 WL 4453606 *10 (D. Del. Sept. 29, 2021) *appeal docketed*, No. 21-3008 (3d Cir. Nov. 1, 2021).

[374] *Id.* at *10.

A00616

of insurance; (ii) the state law regulating the activity was enacted for the purpose of

regulating the business of insurance; and (iii) applying federal law would invalidate, impair

or supersede the state law.[375]

In order to assess the threshold question of whether the challenged conduct

constitutes the "business of insurance" the court must first articulate the challenged

conduct.[376] Here, the Lujan Claimants assert that the McCarron-Ferguson Act reverse

preempts any provision of the Bankruptcy Code that could support the channeling of its

direct action claims against insurance companies to the Settlement Trust. Channeling those

claims, they assert, runs directly counter to the Guam direct action statute which provides

that the Lujan Claimants may sue these insurance companies. The Guam direct action

statute provides:

> Liability Policy: Direct Action. On any policy of liability insurance the injured
> person or his heirs or representatives shall have a right of direct action against the
> insurer within the terms and limits of the policy, whether or not the policy of
> insurance sued upon was written or delivered in Guam, and whether or not such
> policy contains a provision forbidding such direct action, provided that the cause of
> action arose in Guam. Such action may be brought against the insurer alone, or
> against both the insured and insurer.[377]

---

[375] *Id.* at *9 (citing *Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999)).

[376] *Id.* at *12.

[377] 22 G.C.A. § 18305. The Lujan Claimants' universe of alleged prohibited action is much broader
as they argue that "[t]o the extent that the Plan prohibits Lujan Claimants from directly suing
insurers of the BSA, local councils, chartered organization, or any entity against whom Lujan
Claimants or any of them have a claim, the Plan violates the McCarran-Ferguson Act." Lujan
Claimants' Objection at 25-26. The Lujan Claimants only citation to Guam law, however, is to the
Guam direct action statute, which says nothing about suing any party other than an insurance
company.

104

Case: 23-1664     Page: 642     Document: 62-1     Date Filed: 07/24/2023

On its face, the Guam statute's focus is on who can sue an insurance company. While it might seem that ends the analysis, it does not. The court must next determine whether this conduct amounts to the "business of insurance."

The Supreme Court has established three criteria for determining whether a particular practice is part of the business of insurance: "(1) whether the practice has the effect of transferring or spreading a policyholder's risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance industry."[378] "None of these criteria is necessarily determinative in itself."[379]

Applying these three factors to the Guam direct action statute reveals that this statute is not part of the business of insurance. The Guam direct action statute is not directed at the relationship between the insured and the insurer and it does not dictate the terms of the insurance policy. Instead, it is aimed at a non-party to the insurance contract and a party adverse to both the insured, if liability is disputed as it is here, and the insurer. It is not aimed at policyholder protection, but rather at the protection of a stranger to the contract. As for the first factor, permitting an injured party to sue his offender's insurer does not transfer or spread the risk between the insurer and the insured or otherwise address the underwriting of risk. That risk is established at the time the contract is entered into not at the time of suit.[380] As for the second factor, permitting an injured party to sue is not an

---

[378] *Delaware Department of Insurance* at *13 (citing *Sabo v. Metro. Life Ins. Co.,* 137 F.3d 185, 191 (3d Cir. 1988) (citing *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129 (1982); *Group Life & Health Ins. Co. v. Royal Drug Co.,* 440 U.S. 205, 211-21 (1979)).

[379] *Id.* (citing *Pireno,* 458 U.S. at 129).

[380] *See e.g., Fabe,* 508 U.S. at 511 (Scalia, J., dissenting) (describing the spreading of risk in an insurance policy).

105

integral part of the policy relationship between the insurer and the insured. As for the third

factor, the Guam direct action statute is not directed at parties in the insurance industry, or

even a purchaser of insurance. A consideration of these three factors, then, leads to the

conclusion that the Guam direct action statute does not constitute the "business of

insurance" for purposes of the McCarron-Ferguson Act.

Judge Burke notes, however, that the above factors are just the starting point of the

inquiry and so he assesses how the Supreme Court describes the business of insurance. The

Supreme Court in *National Securities* explains:

> Certainly the fixing of rates is part of [the "business of insurance"] ... [t]he
> selling and advertising of policies ... and the licensing of companies and their
> agents ... are also within the scope of the statute. Congress was concerned
> with the type of state regulation that centers around the contract of insurance
> .... The relationship between insurer and insured, the type of policy which
> could be issued, its reliability, interpretation, and enforcement—these were
> the core of the "business of insurance." Undoubtedly, other activities of
> insurance companies relate so closely to their status as reliable insurers that
> they to[o] must be placed in the same class. But whatever the exact scope of
> the statutory term, it is clear where the focus was—it was on the relationship
> between the insurance company and the policyholder. Statutes aimed at
> protecting or regulating this relationship, directly or indirectly[,] are laws
> regulating the "business of insurance."[381]

Arguably, the Guam direct action statute could fall into the "enforcement" language above.

But, the statute in no way protects or regulates the relationship between the insurance

company and the policyholder. In other words, it is not for the protection of policyholders.

Along those lines, the Supreme Court has steadily focused on who the state statute is

aimed at and what it is meant to protect. So, in *National Securities*, the Court looked at two

different sections of a state statute that needed to be satisfied before the State Director of

Insurance could approve a merger between two insurance companies. The first part of the

---

[381] *National Securities*, 393 U.S. at 460 (internal citations omitted).

statute required the Director of Insurance to conclude that the merger would not be inequitable to stockholders of the insurance company and the second section of the statute required that the merger not "substantially reduce the security and service to be rendered to policyholders." The Court concluded that the first section was not a state attempt to regulate the business of insurance because "the state has its attention on stockholder protection; it is not attempting to secure the interests of those purchasing insurance policies."[382] This part of the statute therefore, was not "within the scope" of the McCarran-Ferguson Act.[383] The second part of the statute, which was for the protection of policyholders, was ruled to be related to the business of insurance. Even so, the Court concluded that the McCarron-Ferguson Act did not bar application of the Securities Exchange Act of 1934 because it found no conflict between the state and federal statutes.

Similarly, in *Fabe*,[384] the Court focused on policyholder protection in ruling on the interplay between a federal priority statute, which grants debts owed to the United States government a first priority status and a state priority statute which grants debts to governmental entities a fifth priority status in an insurance company liquidation. In an insurance company liquidation, the governments' claims are behind (i) administrative expenses, (ii) specified wage claims, (iii) policyholders' claims and (iv) claims of general creditors. The Court held that the Ohio priority statute deals with enforcement of the contract by ensuring payment of policyholders and so falls within the "business of insurance" "because it is central to the policy relationship between insurer and insured and

---

[382] *Id.*

[383] *Id.*

[384] *Fabe*, 508 U.S. at 500 (1993).

107

is confined entirely to entities within the insurance industry."[385] Notwithstanding this

general finding, the Court ruled that the Ohio statute was enacted for the purpose of

regulating business to the extent that it regulates policyholders, but "to the extent that it is

designed to further the interests of other creditors, it is not a law enacted for the purpose or

regulating the business of insurance." The Court then held that the priority accorded to

administration expenses "is reasonably necessary to further the goal of protecting

policyholders," but that the priority given to employee wage claims and general unsecured

creditors is not "because their connection to the ultimate aim of insurance is too tenuous."[386]

        Given this guidance, I conclude that the Guam direct action statute was not enacted

for the purpose of regulating insurance because it is designed to further the interests of

injured parties and not policyholders. While the Lujan Claimants cite (and quote) the

statute, they provide no context, either by way of caselaw or legislative history as to the

import of the statute or the legislature's purpose in enacting it.[387] The District Court of

Guam, however, explains that "[d]irect action statutes serve the general purpose of

permitting an injured person to sue the liability insurance carrier directly; thereby, *protecting

the public at large* by providing remuneration from the financially responsible entity."[388]

Further, the Guam District Court describes the direct action as procedural in nature, not

---

[385] *Id.* at 504.

[386] *Id.* at 509.

[387] Neither Debtors nor any objector does an in-depth analysis of the effect, or lack thereof, of the McCarran-Ferguson Act on the ability to channel the Lujan Claimants' claims. The Coalition does suggest in a somewhat conclusory fashion that § 1123(a)(5) preempts the McCarron-Ferguson Act, but it cites no cases for the proposition that § 1123(a)(5) precepts other federal law.

[388] *Heikkila v. Sphere Drake Ins. Underwriting Management, Ltd.*, 1997 WL 995625 at *4 (D. Guam Aug. 29, 1997) (emphasis supplied) (citing *Capital Ins. & Sur. Co. v. Globe Indem. Co.*, 382 F.2d 623, 625 (9th Cir. 1967)).

substantive. The statute is "not a cause of action, but merely a citation of a procedural statute that enables a [p]laintiff to name [a defendant's] insurer(s) in any substantive claim (s)he may have against [defendant]."[389] The goal of this statute, therefore, is not policyholder protection nor does it change the payment provisions of the policy or the spread of risk between the insurer and insured. Instead, it is a procedural law granting standing to sue or, at best, some collection remedy for a creditor of the policyholder in the event the creditor can prove the policyholder's liability and the policy covers the loss.

The Lujan Claimants argue that the above three factors are satisfied relying on *Evans,* a case interpreting the Louisiana direct action statute.[390] The *Evans* Court held that Louisiana's direct action statute reversed preempted the Federal Arbitration Act defeating a defendant insurance company's motion to compel arbitration in a class action lawsuit. *Evans* is distinguishable. First, the analysis of the Louisiana statute was somewhat cursory. Second, the *Evans* court downplays the fact that the Louisiana statute regulates the insured-injured person relationship, not the insurer-insured relationship, addressing it in a footnote. It finds this distinction immaterial because the Louisiana direct action statute expressly provides for an additional intent—that insurance policies are executed for the benefit of all injured persons as well. The Lujan Claimants do not cite to any authority for the proposition that the Guam direct action statute has this purpose, nor do they make that

---

[389] *Cruz Reyes v. U.S.,* 2010 WL 5207583 at *7 (D. Guam Dec. 15, 2010) (dismissing count of a complaint, without leave to amend, as count entitled Direct Action Against Insurers "does not allege anything not alleged elsewhere in the Complaint") (citing *Torres-Troche v. Municipality of Yauco,* 873 F.2d 499, 502 (1st Cir. 1989)) (direct-action statute merely procedural); *Ruiz Rodriguez v. Litton Industries Leasing Corp.,* 574 F.2d 44, 45-46 (1st Cir. 1978) (same).

[390] *Evans v. TIN, Inc.,* 2012 WL 2343162 (E.D. La. June 20, 2012). Lujan Claimants' Objection at 32-33. The Lujan Claimants insert this analysis into the second part of the McCarran-Ferguson standard.

109

Case: 23-1664     Document: 62-1     Page: 647     Date Filed: 07/24/2023

argument. Third, the Guam District Court has stated that the Louisiana direct action statute has "no binding, and little persuasive, effect" on Guam's direct action statute.[391] As that court observed when it ruled in 1997, there is no evidence that the Guam statute was adopted in whole or in part from the Louisiana statute, Louisiana's statute had undergone legislative and judicial modifications that "render any modern comparison [of the two statutes] meaningless," including a major revision after the Guam statute was enacted and the Guam statute remained, as of then, unchanged.[392]

Because I conclude that the Guam direct action statute does not regulate the business of insurance as that term is used in the McCarron-Ferguson Act, I need not perform the second part of the analysis. The Guam direct action statute does not prohibit the channeling of the Lujan Claimants' claims to the Settlement Trust thereby effectively extinguishing their procedural right to sue an insurance company.

### b. *Section 363(d)(1) Does Not Apply to the Lujan Claimants' Direct Action Rights*

The Lujan Claimants next assert that § 363(d)(1) prevents the impairment of their direct action rights, which they argue is impermissible citing to general insurance law equating a buyback of an insurance policy to a rescission of the insurance contract.

Section 363(d)(1) provides:

The trustee may use, sell, or lease property under subsection (b) or (c) of this section—

(i)      in the case of a debtor that is a corporation or trust that is not a moneyed business, commercial corporation, or trust, only in accordance with nonbankruptcy law applicable to the transfer of property by a debtor that is such a corporation or trust.[393]

---

[391] *Heikkila* at *4 n.4.

[392] *Id.*

[393] 11 U.S.C. § 363 (d)(1).

110

A00623

Section 363(d)(1) does not aid the Lujan Claimants. There appears to be little caselaw interpreting this section of the Code. The statutory language and the scant caselaw, however, suggest that § 363(d)(1) is aimed at laws that directly govern the nonprofit debtor in sales of property, not common law of general application to all entities having nothing to do with the entity's status as a nonprofit.[394] This conclusion also comports with § 541(f)[395] and § 1129(a)(16),[396] which the authors of the leading bankruptcy treatise state should be considered together with § 363(d)(1) and "establish a regime in which charitable type organizations in bankruptcy, such as hospitals, cannot be sold to profit-making, taxpaying entities without compliance with state law, such as state laws that require state-law regulatory approval for the sale of not-for-profit hospitals to for-profit buyers."[397] Accordingly, I am not persuaded that the law of general application cited by the Lujan Claimants prevents any impairment of their direct action rights.

    *c.* ***The Abuse Insurance Policies Can be Sold Free and Clear of the Lujan Claimants' Direct Action Rights Under § 363(f)***

    Next, the Lujan Claimants argue that the Insurance Policies cannot be sold free and clear of their direct action rights under § 363(f) because none of the requisites for such a sale

---

[394] *See e.g., In re Gardens Regional Hospital and Medical Center*, 567 B.R. 820, 826 (Bankr. C.D. Cal. 2017) (discussing whether closed nonprofit hospital debtor is required to obtain consent of the state attorney general in light of state statute requiring a nonprofit entity operating a health facility to obtain authorization of attorney general when selling material assets to a for profit entity).

[395] 11 U.S.C. § 541(f) provides: "Notwithstanding any other provision of this title, property that is held by a debtor that is a corporation described in section 501(c)(3) of the Internal Revenue Code of 1986 and exempt from tax under section 501(a) of such Code may be transferred to an entity that is not such a corporation, but only under the same conditions as would apply if the debtor had not filed a case under this title."

[396] 11 U.S.C. § 1129(a)(16) provides: "All transfers of property under the plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust."

[397] 5 COLLIER ON BANKRUPTCY ¶ 541.30 at 541-130 (16th Ed.).

Case: 23-1664    Document: 62-1    Page: 649    Date Filed: 07/24/2023

are met. Debtors and other plan supporters argue that both §363(f)(4) and (f)(5) permit the sale.

Section 363(f)(4) provides that a trustee may sell property free and clear of an interest that is in "bona fide" dispute. Debtors argue that the Lujan Claimants' direct action rights are in dispute because their Direct Abuse Claims are disputed claims. The Lujan Claimants respond that their direct action rights, themselves, are not in dispute even if their Direct Abuse Claims are. Section 363(f)(5) provides that the trustee can sell property free and clear of an interest if "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." Debtors contend that a money judgment is exactly what the Lujan Claimants seek by way of their direct action rights. The Lujan Claimants provide no real response to this contention.

I conclude that the Lujan Claimants can be compelled to accept a money judgment on account of their direct action rights, and agree with Debtors that this remedy is the exact one they seek. Accordingly, I find that Debtors may sell the Abuse Insurance Policies free and clear of the Lujan Claimants' interests.[398]

Finally, the Lujan Claimants' argue that they are entitled to adequate protection. The Lujan Claimants propose that they receive priority rights to the proceeds of the insurance buybacks. As discussed above, however, the Guam direct action statute is procedural in nature. It does not provide the Lujan Claimants with rights in the Abuse Insurance Policies themselves. And, as the statute was enacted to protect the public at large, it is not clear why the Lujan Claimants should take precedence over other claimants who

---

[398] Given this ruling, I need not determine whether the Lujan Claimants' direct action rights are in bona fide dispute.

A00625

would also look to the policy albeit after a judgment. At best, any interest in the Abuse

Insurance Policies is inchoate. The Lujan Claimants have not established that BSA (or any

other insured) is liable for their claims and no evidence of record establishes that BSA, the

Aloha Council or any Chartered Organization has admitted liability to the Lujan Claimants.

Under these circumstances, no adequate protection is required.

 If it were, however, I conclude that the Lujan Claimants are adequately protected.

By processing their claims against the Settlement Trust, they will receive their share of Trust

Assets, including proceeds of the sale. At their election, they can choose the Independent

Review Option and thereby seek recoveries (through the Settlement Trust) from Non-

Settling Insurance Companies. Further, as creditors of an Opt-Out Chartered Organization,

they can pursue their claims directly against any Non-Settling Insurance Companies, even

outside the Settlement Trust. Finally, I have concluded that Direct Abuse Claims will be

paid in full. Given the rights at issue, I find this combination to be sufficient for purposes of

adequate protection in the event it is appropriate.

### D. The Releases

 There are three distinct set of releases in this case. The first set of releases are specific

to the Abuse Claims ("Scouting-Related Releases"). These are found in the Channeling

Injunction (Article X.F and X.G), the Insurance Entity Injunction (Article X.H), Releases

by Holders of Abuse Claims (Article X.J.3) and Releases among Contributing Chartered

Organizations and Settlement Parties (Article X.J.5). Except for the latter, which is a

consensual release among certain parties, the Scouting-Related Releases are nonconsensual

third-party releases. These releases run in favor of the Settling Insurance Companies, Local

Councils, Chartered Organizations and their Representatives and have been the main

subject of contention. The Scouting-Related Releases were demanded by parties making

contributions to the Settlement Trust. Holders of Abuse Claims object to these releases on jurisdictional and other grounds.

The next set of releases are by Debtors and their estates. These releases are found in Releases (Article X.J1 and 2). Debtors' releases are consensual and no party has objected to these releases on jurisdictional basis or otherwise.

The final set of releases are given by all holders of Claims to the Released Parties (Article X.J.4). Creditors in voting classes could choose to opt-out of these releases by checking a box on their ballot or objecting to the Plan.[399] Creditors in non-voting classes could opt-out of these releases by objecting to the Plan. Only the UST has objected to these releases. The UST's objection will be addressed in conjunction with other objections he has made.

### 1. The Scouting-Related Releases

#### a. Definitions

A refresher on a few helpful terms frame the discussion of the Scouting-Related Releases.

The Scouting-Related Releases release claims that holders of Abuse Claims have against Local Councils, Chartered Organizations (Contributing, Participating and Opt-Out), Settling Insurance Companies and their respective Representatives. By definition, these releases relate solely to claims for Abuse that occurs in Scouting. Abuse, Abuse Claims and Scouting are all defined terms and comport with common-sense meanings.

---

[399] Order (I) Approving The Disclosure Statement And The Form And Manner Of Notice, (II) Approving Plan Solicitation And Voting Procedures, (III) Approving Forms Of Ballots, (IV) Approving Form, Manner, And Scope Of Confirmation Notices, (V) Establishing Certain Deadlines In Connection With Approval Of The Disclosure Statement And Confirmation Of The Plan, And (VI) Granting Related Relief [ECF 6438] Ex. 2-3 (Class 5 and Class 6 Ballot), Ex. 2-4 (Class 7 Ballot), Ex. 2-5 (Class 8 Master Ballot).

- Abuse means sexual conduct or misconduct.[400]

- Abuse Claim means a claim against a Protected Party (Debtors, Reorganized BSA, Related Non-Debtor Entities, Local Councils, Contributing Chartered Organizations (TCJC, United Methodists), Settling Insurance Companies and their respective representatives for prepetition Scouting-related Abuse.[401]

- Scouting means any program, activity or service associated with BSA's, any Local Council's, any Related-Non-Debtor Entity's or any Chartered Organization's involvement in or sponsorship of units or programs offered pursuant to BSA's charter.[402]

As can be seen, the concept that Abuse is related to Scouting is embedded in the definition of Abuse Claim. Abuse unrelated to Scouting is not an Abuse Claim and therefore (with the exception of TCJC, which will be separately discussed), is not released.

The distinction between Abuse Claims and non-Scouting related Abuse claims is carried through in the definition of Mixed Claim.

- Mixed Claim means a claim that asserts both an Abuse Claim and a claim of Abuse unrelated to Scouting.[403]

In consistent fashion, the Abuse Claim portion of a Mixed Claim is released under the Plan. Claims for Abuse unrelated to Scouting (with the TCJC exception) are not.

### b. The Third Circuit's Decision in In re Continental Airlines Holding, Inc.[404]

In *Continental*, the Third Circuit was faced with the issue of the validity of plan provisions releasing debtor's officers and directors and permanently enjoining the filing of shareholder class action claims. After canvassing its sister-circuits on the issue and

---

[400] Plan Art. I.17.

[401] Plan Art. I.18.

[402] Plan Art. I.258

[403] Plan Art. I.184.

[404] *Continental*, 203 F.3d 203, 212 (3d Cir. 2000).

reviewing cases that either permitted or prohibited third-party releases, the Court declined to establish a standard as under any applicable standard, the releases before it did not pass muster. The Third Circuit did, however, set forth what it called the "hallmarks" of permissible, nonconsensual releases, namely: fairness and necessity to the reorganization supported by specific factual findings.

In its canvas of other circuits, the Third Circuit noted that some circuits were flexible in "extraordinary cases." For example, in *Drexel* and *Manville*, the Second Circuit upheld releases in plans of reorganization with "widespread claims against co-liable parties" in which consideration was provided to the enjoined parties.[405] The Fourth Circuit upheld such releases in *Robins*, a mass tort case.[406] The Fifth Circuit distinguished these cases from *Zale*, noting that in both *Drexel* and *Manville*, the enjoined claims were channeled to a trust to permit recovery on the enjoined claims.[407]

Since 2000, when *Continental* was decided, the Third Circuit and courts within the circuit have approved plans containing third-party releases when appropriate and consistent with *Continental's* guidelines.[408] Indeed, Judge Dorsey recently approved third-party releases in *Mallinckrodt*, an opioid case.[409]

---

[405] *Id.* (citing *Securities and Exchange Commission v. Drexel Burnham Lambert Group, Inc.*, (*In re Drexel Burnham Lambert Group, Inc.*), 960 F.2d 285, 293 (2d Cir. 1992); *Kane v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 843 F.2d 636, 640, 649 (2d Cir. 1988)).

[406] *Id.* (citing *Menard-Sanford v. Mabey* (*In re A.H. Robins Co.*), 880 F.2d 694, 702 (4th Cir. 1989)).

[407] *Id.* at 213 (citing *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 760 (5th Cir. 1995)).

[408] *See e.g., United Artist Theatre Co. v. Walton (In re United Artists Theatre Co.)*, 315 F.3d 217, 227 (3d Cir. 2003); *In re Global Indus. Tech., Inc.*, 645 F.3d 201, 206 (3d Cir. 2011).

[409] *In re Mallinckrodt PLC*, 639 B.R. 837 (Bankr. D. Del. 2022).

The Third Circuit has also ruled that a bankruptcy court has both statutory and

constitutional authority to enter a final order confirming a plan containing nonconsensual

third-party releases and injunctions if these provisions are "integral to the debtor-creditor

relationship."[410] Notwithstanding its ruling, the Court did not rule on the ultimate issue—

whether the releases were appropriate in the context of that case—as it concluded that the

remainder of the appeal was equitably moot. The Court did, however, once again reference

the *Continental* hallmarks and it stressed the need to approach the granting of nonconsensual

releases "with the utmost care."[411]

Eleven objections to the Scouting-Related Releases were filed by (or on behalf of)

certain holders of Direct Abuse Claims: the Lujan Claimants, the D&V Claimants,

claimants represented by Linder Sattler Rogowsky LLP, claimants represented by Parker

Waichman, Jane Doe, Mr. Cook, appearing pro se, Mr. Cutler, appearing pro se, Mr.

Schwindler, appearing pro se, and Mr. Washburn, appearing pro se. The Guam Committee

also objects as do the Certain Insurers[412] and the UST. The Pfau/Zalkin Claimants object

solely to the third-party release of TCJC.

### c.  Subject Matter Jurisdiction

#### i.  *Bankruptcy Jurisdiction Exists Over Direct Abuse Claims Asserted Against Local Councils and Chartered Organizations*

The Lujan Claimants, the Guam Committee and the D&V Claimants attack the

Scouting-Related Releases and channeling injunction on multiple fronts, beginning with

---

[410]  *Millennium*, 945 F.3d at 126.

[411]  *Id.* at 139.

[412]  Old Republic and Liberty adopted the Certain Insurers' Objection to Confirmation of Debtors' Chapter 11 Plan ("Certain Insurers' Objection") [ECF 8695].

subject matter jurisdiction. Relying on *Pacor*,[413] they argue that bankruptcy jurisdiction does not exist over their respective claims against Local Councils, Chartered Organizations or others that might receive a release or channeling injunction under the Plan because (i) the Lujan Claimants' prepetition lawsuits against the Archbishop have been stayed and any plan confirmed in the Archbishop's case will not release any claims against BSA as the Ninth Circuit prohibits third-party releases, (ii) the D&V Claimants whose claims have been removed to federal courts within the Ninth Circuit cannot receive third-party releases as the Ninth Circuit does not permit them and (iii) whether lawsuits have been filed or not, neither Local Councils nor Chartered Organizations have made contribution or indemnification claims in the prepetition lawsuits filed by the Lujan Claimants or the D&V Claimants so that any resolution of claims against a non-debtor are a mere precursor to a second suit against BSA for indemnification. The argument, therefore, is that there is no related-to jurisdiction over claims sought to be released against these entities. Other holders of Direct Abuse Claims make similar arguments.

None of the objectors address either "arising in" or "arising under" jurisdiction. As Debtors point out, however, this is a confirmation hearing. A confirmation hearing is a proceeding that "by its nature, and not the particular factual circumstance, could arise only

---

[413] *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984).

A00631

in the context of a bankruptcy case."[414]  Bankruptcy jurisdiction exists here, therefore, as this

proceeding "arises in" in this bankruptcy case.[415]

      Notwithstanding, as I have noted in the past, courts and counsel are accustomed to

analyzing third-party releases in the context of related-to jurisdiction and I will do so here.[416]

In *Combustion Engineering*, the Third Circuit focused on related-to jurisdiction (without first

addressing "arising in" jurisdiction).  The Court noted that while there may be a similarity

between an analysis of whether related-to jurisdiction exists and whether claims can

---

[414] *In re New Century TRS Holdings, Inc.*, 505 B.R. 431, 441 (Bankr. D. Del. 2014), *appeal dismissed sub nom., In re New Century TRS Holdings Inc.*, 526 B.R. 562 (D. Del. 2014), *aff'd sub nom., In re New Century TRS Holdings, Inc.*, 619 Fed.Appx. 46 (3d Cir. 2015) (citation omitted).  *See also Stoe v. Flaherty*, 436 F.3d 209, 218 (3d Cir. 2006), *as amended* (Mar. 17, 2006) (citing 1 COLLIER ON BANKRUPTCY ¶ 3.01[4][c][iv] at 3–31 (15th Ed. Rev. 2005) (noting that "administrative matters" such as allowance and disallowance of claims, orders in respect to obtaining credit, determining the dischargeability of debts, discharges, confirmation of plans, orders permitting the assumption or rejection of contracts, are the principal constituents of "arising in" jurisdiction, and that "[i]n none of these instances is there a 'cause of action' created by statute, nor could any of the matters illustrated have been the subject of a lawsuit absent the filing of a bankruptcy case.") (citation omitted)).

[415] *In re Charles St. Afr. Methodist Episcopal Church of Bos.*, 499 B.R. 66, 99 (Bankr. D. Mass. 2013) ("It may or may not be appropriate for a court exercising bankruptcy jurisdiction to confirm a plan containing a third-party release—and, if it is appropriate, the manner and degree of relation of the released claim to the case are certainly factors in the analysis—but the court undoubtedly has jurisdiction to adjudicate the plan, even without recourse to its related-to jurisdiction.").

[416] *See In Millennium Lab Holdings II, LLC.*, 575 B.R. 252, 287 n.160 (Bankr. D. Del. 2017) (questioning whether the traditional related-to analysis is the proper analytical framework with respect to plans containing releases and positing that a related-to analysis might more properly stand as a check on the outer boundaries of permissible releases as a substantive matter and noting the bankruptcy court opinion in *In re Lower Bucks Hosp.*, 471 B.R. 419, 448 n.45 (Bankr. E.D. Pa. 2012), *aff'd sub nom. Bank of N.Y. v. Becker (In re Lower Bucks Hosp.)*, 488 B.R. 303 (E.D. Pa. 2013), *aff'd sub nom. In re Lower Bucks Hosp.*, 571 Fed.Appx. 139 (3d Cir. 2014)), *aff'd*, 591 B.R. 559 (D. Del. 2018), *aff'd on other grounds In re Millennium Lab Holdings, II, LLC*, 945 F.3d 126 (3d Cir. 2019), *cert. denied* 140 S.Ct. 2805 (May 26, 2020)).

119

ultimately be enjoined under a plan, the two analyses are distinct and jurisdiction must exist independent of any plan provisions.[417]

Debtors propose several bases for related-to jurisdiction, but primarily rely on two—an identity of interest between Debtors and the released parties and the impact on property of the estate if Direct Abuse Claimants are allowed to pursue claims against the released parties.

I conclude that related-to jurisdiction exists to grant the releases of Local Councils and Chartered Organizations (and, in the case of the Archbishop, the related orders). First, based on my findings in Section I.A above, I conclude that it takes all three constituencies—BSA, Local Councils and Chartered Organizations—to deliver the Scouting program. BSA sets the structure and content of the Scouting program. BSA charters Local Councils on an annual basis to ensure that Scouting is available in their geographic locations. Local Councils annually charter Chartered Organizations and the two work together to form troops, pacs, dens and other units and to provide Scouting experiences to boys and girls. As Mr. Desai credibly testified, "because of the interconnectedness of a local council with the national organization and our local chartering partners, we can't continue to deliver the mission of Scouting without them."[418] Further, prepetition, plaintiffs often treated BSA, Local Councils and Chartered Organizations as jointly responsible for Direct Abuse Claims, pleading that each was responsible for the conduct not only of themselves, but of others. A lawsuit against a Local Council or a Chartered Organization, therefore, could have an immediate impact on BSA. Plaintiffs allege one harm—a singular Direct Abuse Claim—

---

[417] *In re Combustion Eng'g Inc.*, 391 F.3d 190, 224-225 (3d Cir. 2004).

[418] Day 1 Hr'g Tr. 263:14-264:1.

A00633

and they seek a single recovery from BSA, a Local Council and a Chartered Organization (as well as a perpetrator and perhaps others).

Second, the leadership among BSA, Local Councils and Chartered Organizations is reciprocal in nature. Each Chartered Organization has a seat on the board of its Local Council and each Local Council has two or more members on the National Council that elects the National Executive Board.

Third, from at least 1976 forward, Debtors provided insurance to both Local Councils and Chartered Organizations. As evidenced by the exemplars of the primary insurance policies and based on the findings made in Section I.C, above, while those policies vary in terms, they contain Combined Single Limits which restrict recoveries for a single occurrence regardless of the number of insureds. Accordingly, if an insurer paid out its per occurrence limits to plaintiff A to either a Chartered Organization or Local Council, there would be no insurance remaining to respond to a claim on the policy by BSA for Abuse alleged against it by plaintiff A. Similarly, beginning in 1983, BSA insurance policies provide for aggregate limits applicable to all claims. Payment of any claims against any insured counts against the aggregate limits, thereby depleting the insurance policies.

Fourth, BSA has a residual interest in Local Council property. While that interest is, of course, subject to all superior interests, including the payment of valid claims against the Local Council, that interest is nonetheless property of the estate. Any diminishment of that interest impacts Debtors and property of the estate.

Fifth, Chartered Organizations have asserted contractual and common law claims for indemnification arising out of their relationship with both BSA and Local Councils.[419]

---

[419] *See e.g.,* JTX 14-1 through 14-15.

121

In recognition of the critical roles that Chartered Organizations and Local Councils play in delivery of Scouting, on October 30, 2013, BSA resolved

> I. That the Corporation [BSA] will endeavor to continue to maintain and provide primary general liability insurance for Chartered Organizations for those organizations in connection with covered claims made as a result of the delivery in connection with official scouting activities.

> II. That, in addition to maintaining and providing the aforesaid liability insurance, the Corporation shall defend and indemnify Chartered Organizations, and their employees, directors, officers, members and volunteers, who act in good faith and against whom claims are asserted based upon the Corporation's membership standards.

> III. That the Corporation will indemnify to the fullest extent permitted by the law of the state where the Chartered Organization is domiciled against an award of punitive damages against any Chartered Organization, its employees, directors, officers [sic] members and volunteers who act in "Good Faith". This provision would not apply to any conduct or occurrences prior to the adoption of this Resolution.[420]

Similarly, Local Councils agree to indemnify Chartered Organizations in the Annual Unit Charter Agreement:

> The Local Council agrees to:

> - Provide primary general liability to cover the Chartered Organization, its board, officers, COR, employees, and adult volunteers for authorized Scouting activities. Indemnify the Chartered Organization in accordance with the resolutions and policies of the National Executive Board of the Boy Scouts of America.[421]

For any or all of these reasons, and certainly from a combination of the above, related-to jurisdiction exists over claims made against Chartered Organizations and Local

---

[420] JTX 797. The Resolution also provides:

VII. In civil actions pending or filed against a Chartered Organization, the Corporation's legal counsel will not use the language of the Charter Agreement or the Charter Renewal Agreement, or any similar document outlining the responsibilities of the parties, to shift liability from the Corporation to the Chartered Organization.

[421] JTX 264.

Councils. There is no question that the outcome of a lawsuit against a Chartered

Organization or Local Council can "conceivably have [an] effect on the estate being

administered in [this] bankruptcy case." Plaintiffs, including objectors to jurisdiction,

allege, among other things, that BSA controls Local Councils and Chartered Organizations

and is responsible for their actions (and vice versa). And, any call by Local Councils and

Chartered Organizations on BSA's insurance has the potential to diminish property of the

estate. No second suit is necessary for these impacts to occur. Similarly, the contractual

obligations of BSA and Local Councils to indemnify Chartered Organizations is immediate.

No second lawsuit is necessary to establish the existence of this liability.[422] A ruling in a

lawsuit against a Chartered Organization or Local Council has an immediate impact on

Debtors' estates.

 The Lujan Claimants argue that the automatic stay in the Archbishop's case

necessarily means that claims against the Archbishop could never impact these estates.

That is not at all clear. The plan put forward by the Guam Committee in the Archbishop's

case contains an "offer" to BSA's insurers (founded on the Archbishop's status as a

Chartered Organization and an additional insured under BSA's policies) to settle claims in

that case for $55 million.[423] If approved, and not a violation of BSA's automatic stay, such a

---

[422] The D&V Claimants appear to argue that because the obligations under the Annual Unit Charter Agreement are of recent vintage (and did not exist at the time most of the underlying Direct Abuse Claims occurred), this agreement cannot support related-to jurisdiction. The D&V Claimants cite no law for the proposition that subject matter jurisdiction looks backwards to the time of the underlying harm.

[423] JTX 2657.

Case: 23-1664    Document: 62-1    Page: 661    Date Filed: 07/24/2023

settlement could "conceivably" direct assets away from BSA and its creditors in favor of the Archbishop and its creditors.[424]

Finally, the Lujan Claimants and the D&V Claimants argue that because their clients have sued in states that fall within the jurisdiction of the Ninth Circuit, releases could never be approved in any bankruptcy filed by one of those Local Councils or Chartered Organizations so that any judgment could never impact the estates. Even assuming somehow this argument is relevant, it completely ignores the impact of the shared insurance and the contractual indemnification obligations and those Local Councils and Chartered Organizations who do not file bankruptcy cases.

The test is "conceivable" impact on the estate. In this analysis, I do not have to determine to an absolute certainty that an underlying lawsuit will impact the estate. Based on all the above factors, I conclude that it is more than "conceivable" that such lawsuits will. Bankruptcy jurisdiction exists.

---

[424] The Lujan Claimants also argue that BSA's position that an identity of interest exists between and among BSA, Local Councils and Chartered Organizations is inconsistent with historical positions taken in litigation. The Lujan Claimants cite two state court opinions from the 1990s in which BSA was held not liable for the acts of a Local Council. This argument is not persuasive for several reasons. The cases date to the 1990s and are based on the facts of those cases. The more recent history is that BSA defends its Local Councils and Chartered Organizations, settles its cases, and settles for all BSA parties. Moreover, to the extent inconsistency could defeat jurisdictional arguments, the Lujan Claimants' pleadings in their own prepetition litigation seek to hold BSA liable for the acts of both the Aloha Council and the Archbishop of Agaña, notwithstanding the Lujan Claimants' argument here that I should credit these two 1990 state court cases. *See* Day 21 Hr'g Tr. 88:7-13; 4/21/2022 Lujan & Wolf Letter to Court [ECF 9693].

124

A00637

Case: 23-1664    Document: 62-1    Page: 662    Date Filed: 07/24/2023

ii. **Bankruptcy Jurisdiction Exists Over the Direct Abuse Claims Asserted Against the Related Non-Debtor Entities**

Prepetition, Jane Doe sued BSA, Learning for Life, a Related Non-Debtor Entity, and other entities and/or persons asserting claims based on Abuse. While she has objected to the Scouting-Related Releases, Jane Doe does not assert a lack of bankruptcy jurisdiction.[425]

For many of the same reasons, related-to jurisdiction exists over claims against Related Non-Debtor Entities. Each of the Related Non-Debtor Entities is directly or indirectly wholly owned by BSA and either helps to deliver Scouting (Learning for Life), owns or operates property that BSA uses in delivering its mission (Arrow WV, Inc., Atikaki Youth Ventures Inc. and Atikokan Youth Ventures Inc.) or assists BSA in its financial activities (BSA Asset Management, LLC, BSA Commingled Endowment Fund, BSA Endowment Master Trust, National Boy Scouts of America Foundation). Further, each of these entities is a named insured under various insurance policies.[426] As with Local Councils and Chartered Organizations, a judgment against a Related Non-Debtor Entity will have a "conceivable" impact on the estate. Bankruptcy jurisdiction exists.

iii. **Bankruptcy Jurisdiction Exists Over Direct Abuse Claims Asserted Against Debtors' Officers and Directors and Other Representatives**

The Plan provides Scouting-Related Releases to the "Released Parties" and their "Representatives." Released Parties includes Debtors, Reorganized Debtors and Related

---

[425] No other party with a claim against a Related Non-Debtor Entity participated in the confirmation hearing.

[426] Whittman Decl. ¶ 203 ("All of the Related Non-Debtor Entities are additional insured under certain of the BSA Insurance Policies and they are contributing their rights under those policies as consideration for these releases."); *See e.g.,* JTX 10-36 (Named Insured is "Boy Scouts of America, National Council and all of its affiliates and subsidiaries and all Local Councils and all their affiliates and subsidiaries and Learning for Life."); JTX 10-37 (same).

125

A00638

Non-Debtor Entities.[427] As relevant here, Representatives includes Debtors' officers and

directors. Again, no party has asserted that bankruptcy jurisdiction does not exist over any

claims against Debtors' officers and directors. And, no party to my recollection has asserted

any claim, much less an Abuse Claim, against an officer or director.

Debtors argue that an identity of interest exists between Debtors and their seventy-

two member, volunteer National Executive Board who have engaged on all issues

bankruptcy as well as continuing their regular function overseeing Scouting. Moreover,

BSA's Charter and Bylaws provide the officers and directors with contractual rights to both

indemnification and advancement.[428]

---

[427] Other Released Parties include the Creditors' Committee, the members of the Creditors
Committee in their capacities as such, the Tort Claimants' Committee; the members of the Tort
Claimants Committee in their capacities as such, the FCR, the Coalition, JPM, the Settling
Insurance Companies, the Foundation, in its capacity as lender under the Foundation Loan
Agreement, the Ad Hoc Committee, the members of the Ad Hoc Committee in their capacities as
such, the Creditor Representative, the Contributing Chartered Organizations and the Mediators.

[428] JTX 234 Art XIII Sec. 1.

The Corporation shall indemnify any person who was, is, or is threatened to be made a named
defendant or respondent in any action, suit, or proceeding, civil or criminal (a "Proceeding"),
because such person, or a person of whom such person is the legal representative, (i) is or was a
member of the Executive Board, a committee of the Executive Board, a subcommittee of a
committee of the Executive Board, or an officer of the Corporation; or (ii) while a member of the
Executive Board, a committee of the Executive Board, a subcommittee of the Executive Board,
or an officer of the Corporation, is or was serving at the request of the Corporation as a director,
officer, agent, or employee of another corporation or organization, to the fullest extent that a
nonprofitco1poration may grant indemnification to such a person under applicable law, without
subjecting the Corporation to any income or excise tax under the Internal Revenue Code of
1986, as amended, or the corresponding provision or provisions of any subsequent United States
Internal Revenue law or laws; provided, however, that any right to indemnification from the
Corporation under this provision shall not extend to any matter as to which such person shall
have engaged in wanton or willful misconduct in the performance or neglect of a duty owed to
the Corporation. Any right to indemnification under this provision shall be a contract right and
shall include the right to be paid by the Corporation expenses incurred in defending such
Proceeding in advance of its final disposition to the maximum extent permitted under applicable
law. Any person who has requested an advancement of expenses under this provision and has
not received such advance within 30 days of such request may thereafter bring suit against the
Corporation to recover the unpaid amount of such claim and, if successful in whole or in part,
shall be entitled to be paid also the expense of prosecuting such claim. In any such action, the
burden of proof shall be on the Corporation to prove the claimant is not entitled to such

126

Related-to jurisdiction exists over claims against Debtors' officers and directors by virtue of BSA's indemnification/advancement obligations. If sued, BSA will be required not only to indemnify an officer or director for any losses, but to advance funds to cover defense of any lawsuit.[429] The obligation is established through BSA's charter and bylaws; no second suit is necessary for there to be a conceivable impact on the estate.

Related-to jurisdiction also exists over claims of Representatives of Local Councils and Chartered Organizations due to Local Councils' obligation to indemnify Chartered Organizations. To the extent that indemnification is called upon, it decreases BSA's residual interest in the Local Council, thereby diminishing BSA's bankruptcy estate. Again, no additional lawsuit is necessary for this liability to be triggered or the diminishment of the estate to occur.

### d. Statutory Authority

The Guam Committee, the Lujan Claimants, the D&V Claimants and the United States Trustee argue that there is no statutory authority for a court—bankruptcy or district—to grant third-party releases.

In *Continental*, the Third Circuit stated that the Bankruptcy Code "does not explicitly authorize the release and permanent injunction of claims against non-debtors, except in one instance not applicable here."[430] Notwithstanding, the Court did not adopt the logic of

---

payment. The rights conferred herein shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, bylaw, vote of the Executive Board or a committee or subcommittee thereof, agreement or otherwise. This provision shall not be deemed to limit any power or exclude any right of the Corporation to provide any additional or other indemnity or right, or to maintain insurance or a similar arrangement for or on behalf of any person. If this provision should be invalid or ineffective in any respect, the validity and effect of this provision in any other respect shall not be affected.

[429] *Millennium*, 591 B.R. at 583-84.

[430] *Continental*, 203 F.3d at 211. The one instance is § 524(g).

127

A00640

those courts precluding third-party releases in all instances. Rather, for the next twenty years, the Third Circuit (and courts within this circuit) has permitted nonconsensual third-party releases in narrow circumstances where the releases are fair and necessary to the reorganization.[431] The Third Circuit reiterated that conclusion in *Millennium*, and while it did not reach the merits of the third-party releases granted in that instance, it did conclude that a bankruptcy court is constitutionally authorized to confirm a plan containing nonconsensual third-party releases if it concludes that the releases are integral to the debtor-creditor relationship. While I hesitate to read further into the Court's conclusion, the ruling suggests an implicit recognition that the granting of third-party releases is still permissible as part of the confirmation process.

The granting of such releases, therefore, must be found in the bankruptcy court's ability, in appropriate circumstances, to exercise its inherent equitable power consistent with §§ 105(a), 1123(a)(5) and 1123(b)(6) of the Bankruptcy Code.[432] Section 1123(a)(5) permits a plan to provide adequate means for its implementation and § 1123(b)(6) provides that a plan may include "any other appropriate provision not inconsistent with the applicable provisions of this title." Third-party releases are not inconsistent with other provisions of this title. While the Code does not explicitly authorize releases, neither does it prohibit them. The *Continental* standard aids the court in navigating between these two poles.

The objectors rely heavily on the inclusion of § 524(g) in the Code post-*Manville* for the proposition that nonconsensual third-party releases are not appropriate in any other setting. While § 524(g) permits third-party releases in the asbestos context, it does not

---

[431] *See e.g., United Artists*, 315 F.3d at 227; *Global Indus.*, 645 F.3d at 206.

[432] *See Purdue Pharma*, 633 B.R. at 105 and cases cited therein.

Case: 23-1664    Document: 62-1    Page: 666    Date Filed: 07/24/2023

prohibit them in other contexts. When it enacted § 524(g), Congress included a rule of construction, which provides that: "[N]othing in subsection (a) [what would be codified as § 524(g) and (h)] shall be construed to modify, impair, or supersede any other authority the court has to issue injunctions in connection with an order confirming a plan of reorganization."[433] The legislative history confirms the rule of construction.[434] Section 524(g), therefore, does not prohibit the granting of third-party releases in the non-asbestos context.[435]

For these reasons, I conclude that there is statutory authority to grant third-party nonconsensual releases.

### e. *The Scouting-Related Releases (Except with Respect to TCJC) Meet the Continental Standard*

Notwithstanding that bankruptcy jurisdiction exists and, in appropriate circumstances, I have constitutional authority to enter a final order granting releases, if the releases do not meet the *Continental* standard then they cannot be granted.

---

[433] Bankruptcy Reform Act, Pub. L. 103-394 § 111(b) (1994).

[434] *Purdue Pharma*, 633 B.R. at 102 (citing H.R. Rep. 103-834, 103d Cong., 2nd Sess. 12; 140 Cong. Rec. H10765 (Oct. 4, 1994) ("[S]ection [524(h)] contains a rule of construction to make clear that the special rule being devised for the asbestos claim trust/injunction mechanism is not intended to alter any authority bankruptcy courts may already have to issue injunctions in connection with a plan of reorganization. Indeed, Johns-Manville and UNR firmly believe that the court in their cases had full authority to approve the trust injunction mechanism. And other debtors in other industries are reportedly beginning to experiment with similar mechanisms. The Committee expresses no opinion as to how much authority a bankruptcy court may generally have under its traditional equitable powers to issue an enforceable injunction of this kind. The Committee has decided to provide explicit authority in the asbestos area because of the singular and cumulative magnitude of the claims involved. How the new statutory mechanism works in the asbestos area may help the Committee judge whether the concept should be extended into other areas.")).

[435] Similarly, § 524(e) does not preclude releases in the appropriate context. *See Mallinckrodt*, 639 B.R. at 868 n.70 (releases are not the equivalent of a discharge).

129

A00642

By any measure, the scope and sheer number of releases contemplated in this Plan is extraordinary, if not unprecedented. The Settling Insurers are being granted nonconsensual third-party releases as are Related Non-Debtor Entities, officers and directors and all their Representatives. Debtors also seek releases (full or partial) of 250 Local Councils and over 100,000 Chartered Organizations.[436] But, with perhaps some exceptions,[437] a holder of a Direct Abuse Claim is releasing one Local Council and one Chartered Organization.[438] To be perfectly clear, Perpetrators are not receiving releases.

The size of the claimant pool is also unprecedented (so I am told), at least in the context of sexual abuse cases. The Direct Abuse Claimant pool total is 82,209 unique and timely filed claims. Comparatively, the actual number of parties objecting is few. Seven law firms representing 569 claimants[439] and three claimants appearing *pro se*, object to the releases. While the absolute number of objectors is not insignificant, as a percentage of the Direct Abuse Claimants, they are less than one percent. Nothing in this Opinion is meant to minimize their strongly held positions.

The amount contributed to the Settlement Trust is the also unprecedented (so I am told).

---

[436] While technically not "Released Parties," the Participating Chartered Organizations and the Opt-Out Chartered Organizations benefit from the channeling injunction, which is in the nature of a release, and so should be judged by the same standard.

[437] Approximately 3000 Proofs of Claim assert a claim against two Local Councils. *See* Disclosure Statement Ex. F.

[438] Only the Lujan Claimants argue that certain "orders" within the Archbishop are listed as Chartered Organizations receiving Scouting-Related Releases. The parishes and schools within the Archdiocese have been held to be unincorporated divisions of the Archdiocese and not separate entities. *See e.g.,* JTX 4034 at 8.

[439] The Lujan Claimants (72), the D&V Claimants (67), Linder Sattler Claimants (58, "most of which" voted to reject the Plan), Parker Waichman (331); Pfau/Zalkin (14, 43, respectively). Jane Doe is also represented.

Given the unparalleled nature of this case, I do not make these decisions lightly. I am guided in large part by the nature of this case, the way in which plaintiffs who brought prepetition lawsuits viewed the third parties, the testimony I heard from survivors and, of course, the law.

### i.    *The Parties' General Positions*

Debtors contend that the Scouting-Related Releases are necessary to BSA's successful reorganization as well as to maximize recoveries to holders of Abuse Claims. They argue that the contributions and Scouting-Related Releases are all intertwined. Without the Scouting-Related Releases, the settlements with the Settling Insurers and the resolution with Local Councils could not be achieved. Importantly, without the releases granted to Chartered Organizations, Debtors contend they could not unlock the value of Debtors' insurance assets and the consideration provided by Local Councils. Debtors conclude, therefore, that in these extraordinary cases, the Scouting-Related Releases are fair and necessary to their reorganization.

Objectors question both the necessity for and fairness of the Scouting-Related Releases. With respect to the Settling Insurers, they argue that the releases are driven not by BSA's need, but by the Settling Insurers' need to get out from under their contractual obligations (i.e. the insurers' exposure drove the releases). They argue some lesser amount could have been paid to secure BSA's discharge, but permit additional insureds to continue to access insurance under the very same policies. Objectors further argue that Chartered Organizations did not ask for releases, but are getting them, and have not paid any consideration for their releases. Finally, objectors argue that the releases are not necessary because Debtors filed previous plans, including the Solicitation Plan, which did not contain explicit releases of Chartered Organizations. Objectors also broadly question whether the

131

A00644

releases are fair, asserting that their clients should be able to pursue all non-debtors and that they are not being adequately compensated for their claims otherwise.

Both Debtors and Objectors couched their argument in terms of the *Master Mortgage*[440] factors. While *Master Mortgage* is not the law of the Third Circuit for approval of nonconsensual third-party releases, those factors, as well as others, can inform the analysis of whether the *Continental* hallmarks have been met.[441] The *Master Mortgage* factors are: whether (i) there is an identity of interest between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate; (ii) the non-debtor has contributed substantial assets to the reorganization; (iii) the injunction is essential to reorganization such that without it, there is little likelihood of success; (iv) a substantial majority of the creditors agree to such injunction, specifically, the impacted class, or classes, has "overwhelmingly" voted to accept the proposed plan treatment and (v) the plan provides a mechanism for the

---

[440] *In re Master Mortgage*, 168 B.R. 930, 937 (Bankr. W.D. Mo. 1994).

[441] *Millennium*, 591 B.R. at 584 ("the *Master Mortgage* factors, while helpful guideposts, are not controlling; also, they are not 'an exclusive list of considerations, nor are they a list of conjunctive requirements'"); *see also In re 710 Long Ridge Road Operating Co., II, LLC*, 2014 WL 886433 at *14 (Bankr. D.N.J. Mar. 5, 2014) (holding *Master Mortgage* guideposts are "not considered requirements for the approval of third-party releases, but ... may be instructive to the court"); *Mallinckrodt*, 639 B.R. at 875 n.103 (concluding that it is unnecessary to consider the *Master Mortgage* factors, but, in any event, the factors are satisfied.); *see also Cal. Dep't of Toxic Substances Control v. Exide Holdings, Inc.* (*In re Exide Holdings, Inc.*), 2021 WL 3145612 at *13 (D. Del. July 26, 2021) ("To grant non-consensual releases, a court must assess 'fairness, necessity to the reorganization, and [make] specific factual findings to support these conclusions.' *Continental Airlines*, 203 F.3d at 214. These considerations might include whether: '(i) the non-consensual release is necessary to the success of the reorganization; (ii) the releasees have provided a critical financial contribution to the debtor's plan; (iii) the releasees' financial contribution is necessary to make the plan feasible; and (iv) the release is fair to the non-consenting creditors, *i.e.,* whether the non-consenting creditors received reasonable compensation in exchange for the release.'"). *See also In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 142 (2d Cir. 2005) (deciding whether to grant third-party release "is not a matter of factors and prongs").

132

A00645

payment of all, or substantially all, of the claims of the class or classes affected by the injunction.[442]  Factor (iii) speaks to necessity; the other four factors generally speak to fairness.  I will review these factors, but, of course, return to the *Continental* "hallmarks."

### ii.  The Master Mortgage Factors
#### (a) Identity of Interest

The evidence is clear that there is an identity of interest between Debtors and all entities receiving third-party releases.  Both Mr. Desai and Mr. Sugden testified at length in their declarations and live testimony of the interrelationship between BSA, Local Councils and Chartered Organizations.  As I have previously found, it takes all three levels of organization to deliver Scouting—national, which sets policy and provides administrative services, Local Councils, which charter Chartered Organizations, recruit Scouts and volunteer leaders and enforce BSA rules and regulations, and Chartered Organizations, which provide facilities and use Scouting to further one of their goals of youth character development, career skill development, community service, patriotism, military and veteran recognition or faith-based youth ministry.  Moreover, from 1976 forward BSA included Local Councils and Chartered Organizations as additional insured under the BSA Insurance Policies.

Equally, if not more importantly, Mr. Griggs testified that prepetition, plaintiffs often sued BSA, Local Councils and Chartered Organizations together.  Conversely, he was not aware of any claims made against a Chartered Organization that did not include a claim against either BSA or a Local Council.  Complaints filed prepetition by the Lujan Claimants and the D&V Claimants are no exception.  For example, prepetition, Mr. Aguon (who

---

[442] *Master Mortgage*, 168 B.R. at 935 (canvassing courts and listing factors courts consider in adopting a permissive view of releases).

testified at trial) sued BSA, the Aloha Council and the Archbishop of Agaña (as well as others) asserting that all defendants were negligent in hiring and retaining Brouillard, breached a fiduciary duty and confidential relationship with the plaintiff and are all vicariously liable for the abuser under a theory of respondent superior.  Mr. Aguon also alleges that each defendant is the agent, servant and/or employee of the other defendant, is the alter ego and partner of the other defendants, and each defendant ratified the acts of the others.[443]  So, too, complaints filed by the D&V Claimants naming BSA and TCJC assert that BSA was a "vertically-integrated organization" with BSA at the top of the structure and sponsoring organizations and local councils at the "lower levels."  The D&V Claimants allege that BSA and TCJC "jointly agreed to control and operate Scout troops."[444]  Further,

---

[443]  JTX 2947 ¶ 14 ("Each defendant is the agent, servant and/or employee of other defendants, and each defendant was acting within the course and scope of his, her or its authority as an agent, servant and/or employee of the other defendants."  Defendants, and each of them, are individuals, corporations, alter egos and partnerships of each other and other entities which engaged in, joined in and conspired with the other wrongdoers in carrying out the tortious and unlawful activities described in this Complaint; and defendants, each of them, ratified the acts of the other defendants as described in this Complaint.").

[444]  *See e.g.*, JTX 2912 ¶ 27 ("At all material times to this Complaint, BSA was a vertically-integrated organization.  The national BSA organization was at the top of the structure.  BSA national established goals, standards, and rules for leaders at the lower levels to follow, and BSA national relied upon local employees and volunteers to implement its goals, standards, and rules.  The lower levels of BSA included sponsoring organizations, local councils, troop committees, and troops.  Defendant BSA and LDS Defendants jointly agreed to control and operate Scout troops, such as those troops Plaintiffs were members of, in Idaho.  Troops operated at the lowest level of Scouting, and many Scout troops were "sponsored" by the LDS Defendants through individual wards in the LDS Church.  Defendant BSA and LDS Defendants jointly selected, approved, and/or retained adult volunteers to lead Scout troops, in positions such as Assistant Scoutmasters or Scoutmasters ("Scout leaders").  Defendant BSA possessed the right of final approval of adult volunteers as Scout leaders, including adult volunteers that were also members of the LDS Church.  In the course of operating Scout troops, Defendants also had the right to control the physical details of Scout leaders' performance of their duties on behalf of Defendants.  In performing these duties for Defendants, Scout leaders were acting in the time and space limits of their agency with Defendants, were motivated at least in part by a desire to serve Defendants, and these actions were of a type that they were required to do on behalf of the Defendants."); JTX 2914 ¶ 11 (substantially the same); JTX 2915 ¶ 14 (substantially the same).

134

Case: 23-1664    Document: 62-1    Page: 672    Date Filed: 07/24/2023

they allege that "Defendants fraudulently misrepresented, failed to disclose and/or actively concealed the dangers and prevalence of child abuse in Scouting."[445]

Mr. Desai also testified to the relationship between Debtors and the Non-Debtor Related Entities. Each serves a specific function for BSA and/or Local Councils. And, the only objector asserting a Direct Abuse Claim against a Non-Debtor Related Party asserts claims against BSA, Learning for Life, a Chartered Organization and others. Jane Doe asserts that "[t]he BSA and LFL jointly promoted, facilitated and administered Explorer programs throughout the country, including the Explorer Program sponsored and controlled by [Chartered Organization]."[446] Further, there is no record that any of the Non-Related Debtor Entities is involved in anything other than Scouting.

BSA's Representatives also share an identity of interest with Debtors. As detailed above, BSA's Representatives have both indemnification and advancement rights against Debtors such that a suit against them is, in essence, a suit against Debtors and/or will deplete BSA's assets.

Finally, the Settling Insurers have an identify of interest with Debtors for purposes of a third-party release analysis because they are Debtors' insurers. No holder of a Direct Abuse Claim has argued that he has a separate claim against any Settling Insurer on account of its own conduct. Even the Lujan Claimants' direct action rights are not on account of insurer conduct.

---

[445] *See e.g.,* JTX 2912 ¶ 121.

[446] Objection of Jane Doe to Confirmation of Second Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC and Non-Debtor Releases and Injunctions Therein [ECF 8674] ("Jane Doe Objection") ¶ 8.

135

The Guam Committee and the Lujan Claimants argue that there is no identity of interest between BSA and the Archbishop because the Archbishop and BSA are separate entities and have independent duties to holders of Direct Abuse Claims. They argue that nothing prevents BSA and the Settling Insurers from resolving BSA's liability for Direct Abuse Claims, while preserving the Archbishop's separate liability for those very same claims. The D&V Claimants add that Local Councils are separate entities.

It is true that BSA, Chartered Organizations and Local Councils are separate entities, but that is not the standard. If BSA, Local Councils and Chartered Organizations were not separate entities, then third-party releases would not be needed. Similarly, if BSA, Local Councils and Chartered Organizations did not have separate duties and liability, then, again, third-party releases would not be necessary.[447] Moreover, objectors' position ignores the reality of how these claims have historically been pursued as well as the shared insurance. Their position also ignores how these claims have been settled. As Mr. Griggs testified, BSA took on the defense of claims brought prepetition and settled those claims on behalf of BSA, the Local Council and the Chartered Organization. The Historical Abuse Claim settlement values encompass all facets of Scouting-Related liability—national, Local Council and Chartered Organization.[448]

---

[447] *Purdue Pharma*, 633 B.R. at 104 ("true third-party releases involve claims that are independent of the debtor's estate's claims at least on a legal basis, if not as a factual basis." (citing *Drexel Burnham*, 960 F.2d at 288, 293 (release of securities laws claims against officers and directors proper); *Manville Corp.*, 837 F.2d at 90-92 (claims of co-insured and direct claims of personal injury claimants against debtor's insurance properly enjoined as part of plan's resolution of claims against insurers); *Exide Holdings,* 2021 WL at *15 (claims against plan funders as potentially responsible parties properly enjoined as part of resolution of debtor's cleanup obligations); *Cartalemi v. Karta Corp. (In re Karta Corp.)*, 342 B.R. 45, 50, 56-57 (S.D.N.Y. 2006) (claims against non-debtor affiliates and their fiduciaries)).

[448] The Guam Committee questions whether the settlement values provided by Mr. Griggs to Dr. Bates reflect value for the share of liability of all of BSA, Local Councils and Chartered Organizations. Based on the record, I conclude that it does. *See e.g.,* Griggs Decl. ¶ 9 (Griggs

136

A00649

Significant time was also spent discussing the nature of "derivative liability" or "derivative claims" as it relates to third-party releases. The Lujan Claimants and the D&V Claimants argue that only derivative claims can be released consistent with the *Continental* standards and that the claims against Local Councils and Chartered Organizations are independent and separate of any wrongdoing by BSA.

In a series of decisions in the *W.R. Grace* bankruptcy case,[449] the Third Circuit explored "derivative" claims in the separate context of the statutory requirements of § 524(g). In these decisions, individuals working at Grace's plaint in Montana sued CNA (Grace's insurer) for their asbestos-related injuries. The workers alleged that CNA was aware of their asbestos exposure at the plant as well as the dangers associated with that exposure, and that CNA had an independent duty to warn them of that danger. The workers alleged that when CNA failed to do so, it breached a separate duty owed to those workers.

In exploring claims properly channeled under § 524(g), the Court rejected both a "but for" test and an "own conduct" standard, and instead found that the appropriate inquiry is whether the third party's liability is "wholly separate" from the debtor's or instead depends on it. The court also stated that the workers could not make out a case under the relevant

---

negotiated "settlements of Abuse Claims on behalf of the BSA, Local Councils, and Chartered Organizations"), ¶ 7 ("Between 2017 and 2019, approximately $160 million was spent by, or on behalf of, BSA, Local Councils, and Chartered Organizations in resolving Abuse Claims."), ¶ 37 ("When determining whether to settle a claim and the value of the claim, I would consider (i) the cost of defending the sexual abuse claim through trial and appeal, (2) the degree or risk that the BSA, the Local Council or the Chartered Organization could be found liable by a reasonable jury, and (3) the anticipated amount that a reasonable jury would award."); Day 7 Hr'g Tr. 76:8-21.

[449] *In re W.R. Grace & Co.*, 591 F.3d 164 (3d Cir. 2009) ("*W.R. Grace I*"); *In re W.R. Grace & Co.*, 900 F.3d 126 (3d Cir. 2018) ("*W.R. Grace II*"); *In re W.R. Grace & Co.*, 13 F.4th 279 (3d Cir. 2021) ("*W.R. Grace III*").

137

law without directly implicating Grace's wrongdoing. In applying that standard to the claims at issue, the Court did not divorce itself from the underlying facts pled by the workers.[450] Neither will I do so here.

Direct Abuse Clamaints repeatedly implicate BSA's wrongdoing in their claims against Local Councils and Chartered Organizations. To again take examples from the prepetition Complaints filed by Mr. Aguon and the D&V Claimants, plaintiffs assert that (i) BSA and Local Councils controlled the selection of Scout leaders and exercised ultimate authority over who could be a Scout leader,[451] (ii) BSA conspired with the Local Council and Chartered Organization in carrying out the tortious and unlawful conduct described in the complaint[452] and (iii) BSA was aware of the Abuse perpetrated against scouts since

---

[450] *W.R. Grace III*, 13 F.4th at 288 ("We decline to apply the law with a willful ignorance to the facts of this case.").

[451] JTX 2947 ¶ 6; JTX 2912 ¶ 142 ("Defendant BSA represented that the Scout leaders it selected, controlled and/or approved were appropriate and trustworthy mentors and leaders for young boys"); *See also id.* ¶ 141 ("At all times relevant to this Complaint, Defendant BSA invited and encouraged Plaintiffs to participate in the Scouting program it administered and controlled. Its invitation created a special, fiduciary relationship, wherein Plaintiffs and their parents relied upon Defendant BSA's years of expertise and judgment in selecting morally upright and trustworthy men to lead Scout troops and other Scouting activities, such as BSA Camps. Plaintiffs and their parents gave Defendant BSA authority to act in loco parentis over Plaintiffs at BSA meetings, camping trips, hiking trips, and in private social situations during Scouting activities. Defendant BSA also invited Plaintiffs to enter into a commercial relationship by requiring him to pay yearly dues and other fees and required purchases, in exchange for participating in Scouting.").

[452] JTX 2947 ¶ 14 ("Each defendant is the agent, servant and/or employee of other defendants, and each defendant was acting within the course and scope of his, her or its authority as an agent, servant and/or employee of the other defendants. Defendants, and each of them, are individuals, corporations, alter egos and partnerships of each other and other entities which engaged in, joined in, and conspired with the other wrongdoers in carrying out the tortious and unlawful activities described in this Complaint; and defendants, each of them, ratified the acts of the other defendants as described in this Complaint."); *See also* (JTX 2914) ¶ 11 ("At all material times to this Complaint, BSA was a vertically-integrated organization. The national BSA organization was at the top of the structure. BSA national established goals, standards, and rules for leaders at the lower levels to follow, and BSA national relied upon local employees and volunteers to implement its goals, standards, and rules. The lower levels of BSA included sponsoring organizations, local councils, troop committees, and troops. Many troops were "sponsored" by the LDS Defendants through individual wards in the LDS Church. Defendant BSA and LDS Defendants jointly agreed to control

138

shortly after its inception, kept that information secret and BSA did nothing to change the

Boy Scouts program.[453]

---

and operate Cub Scout and Boy Scout packs, dens, and troops ("troops"), such as those troops Plaintiffs John Does XXI, XXII, [--] and [--] were members of, in Idaho. Defendant BSA selected, approved, and/or retained adult volunteers to lead Scout troops, in positions such as Assistant Scoutmasters or Scoutmasters ("Scout leaders"). In troops sponsored by LDS Defendants, Defendant BSA and the LDS Defendants jointly selected, approved, and/or retained adult volunteers to act as Scout leaders. Defendant BSA possessed the right of final approval of adult volunteers as Scout leaders, including adult volunteers that were also members of the LDS Church. Jn the course of operating Scout troops, Defendant BSA also had the right to control the physical details of Scout leaders' performance of their duties on behalf of Defendant BSA. In troops sponsored by both Defendants, both Defendants had the right to control the physical details of Scouts leaders' performance of their duties. In performing these duties for Defendant, Scout leaders were acting in the time and space limits of their agency with Defendants, were motivated at least in part by a desire to serve Defendants, and these actions were of a type that they were required to do on behalf of the Defendants.").

[453] JTX 2947 ¶ 39 ("Upon information and belief, shortly after its inception, the BSA became aware that a significant number of its adult Scout leaders, employees, servants, officers, volunteers, and/or agents were using their position of trust and authority to manipulate and sexually abuse young boys participating in the BSA's Scouting program."); ¶ 40 ("Surprisingly, the BSA still continued to promote the safety, trustworthiness, and wholesomeness of its program, even though it has been secretly removing scoutmasters for child sexual abuse at an alarming rate since the 1920's. Its own records demonstrate that the BSA has long known yet concealed from its members, Scouts, and Scouts parents that Scouting attracts pedophiles in large numbers and that Scouts, far from being safe, are at heightened risks of sexual abuse by child molesters. The BSA misrepresented to members, Scouts and Scouts parents that the Scouts were safe in Scouting programs and they made this misrepresentation to Norman and Norman's parents and/or guardians."); ¶ 49 ("The BSA and Aloha Council knew that Scouting, a closed system over which the Boys Scouts held exclusive control related to participation and access, was and still continues to be used by child molesters to gain access to and the trust of Scouts, other boys, their families and the community. The BSA and Aloha Council knew the majority of boys were abused during one-on-one situations, and that Norman, Norman's parents and/or guardians, and the families of other Boy Scouts would consider this to be material risk. Nevertheless, the BSA and Aloha Council did nothing to warn Norman, Norman's parents/or guardians, or any of the other Boy Scouts or their parents and/or guardians of the risk of molestation by Scout leaders, employees, servants, officers, volunteers, and/or agents of BSA, and the BSA did nothing to change the Boy Scout program prior to the representations and omissions they made to Norman, Norman's parents and/or guardians, or any other Boy Scouts or their parents and/or guardians regarding Brouillard. Instead the BSA continued to make the same representations and omissions to Norman, Norman's parents and/or guardians, or any of the other Boy Scouts or their parents and/or guardians, knowing they were false and knowing they were being relief upon by them."); *See also* JTX 2912 ¶ 147 ("Despite the special relationship that Defendant BSA maintained with Plaintiffs prior to and during their time in Scouting, Defendant BSA never made any warnings or issued any warning in the Boy Scout Handbook, in materials to Plaintiffs' parents, in the Scout application and registration materials, or elsewhere in BSA materials that Scout leaders were not always safe and trustworthy, that they might make sexual demands or advances, or that significant numbers of Scout leaders had abused boys in the past. This list of

<center>139</center>

Accordingly, to the extent that the constraints on channeling claims found in § 524(g) may be relevant to or informative in non-asbestos mass tort cases,[454] I find on the facts here that claims against Local Councils and Chartered Organizations are not wholly separate from claims against BSA and therefore are "derivative" for purposes of the channeling injunction.

### (b) Contribution of Substantial Assets to the Reorganization

The Plan is based upon the establishment of the Settlement Trust and the Trust Assets contributed to it. The Trust Assets include the $1.656 billion contributed by the Settling Insurers, the $665 million contributed by Local Councils, the $30 million contributed by the United Methodist Entities and BSA's, Local Councils' and the Contributing and Participating Chartered Organizations' rights in BSA's insurance policies and their own policies. I find that each of these contributions—which are both monetary and non-monetary—is substantial in nature and, together with the additional Trust Assets, result in a trust that will pay Direct Abuse Claims in full.[455]

---

omissions is not exclusive. Despite its knowledge of the use of Scouting by child molesters, Defendant BSA knowingly failed to change the Scouting program in any meaningful way to attempt to reduce the number of Scouts abused by Scout leaders until after Plaintiffs' time in Scouting, and nonetheless concealed this material fact.").

[454] The Third Circuit also explored derivative liability in the statutory framework of § 524(g) in *Combustion Engineering. See e.g., Combustion Eng'g*, 391 F.3d 234-238. The Court recognized that injunctions issued in mass tort non-asbestos cases are readily distinguishable from injunctions issued pursuant to § 524(g). *Id.* n.50.

[455] *Mallinckrodt*, 639 B.R. at 874 ("Substantial consideration is being given in exchange for the releases in the form of a well-funded trust to which opioid claimants can turn for potential compensation."). A well-funded trust need not pay claimants in full for the contribution to be substantial. *See Purdue Pharma*, 633 B.R. at 107 (contribution paying only a fraction of allowed claims and leaves third-party with substantial wealth, but fair given the specific factual circumstances of the case).

140

### *(1) Settling Insurers*

As for the Settling Insurers, this analysis is essentially the same as the analysis of whether the settlement was fair under the *Martin* test. I have found each to be fair in light of the coverage issues at play, the allocation analysis performed by Ms. Gutzler and, in the case of Century/Chubb, the concerns regarding collection in the future.

### *(2) Local Councils*

The Local Council contribution was a product of mediation.[456] The total amount of the contribution, which grew over time from an initial offer of $300 million, was negotiated with the Coalition, the TCC and the FCR. The Local Council contribution now consists of $515 million in cash and property, the $125 million DST note, their rights as additional insureds under the BSA Insurance Policies, the contribution of the rights in their own Insurance Policies (which Mr. Whittman valued at between $464 million and $1.13 billion) and their share ($25 million) of the Settlement Growth Payment.

The internal allocation of the Local Council contribution was determined through an iterative process led by the Local Council Committee that resulted in a formula ("Formula") which generated contributions eventually signed off on by all Local Councils. Mr. Sugden, a member of the Local Council Committee testified at length through declaration and on the stand regarding the derivation of the Formula.[457] As Mr. Sugden explained, as a starting point, the amount of the Local Council contribution had to be both acceptable to the claimant constituency and financially achievable for Local Councils.[458] Each Local Council

---

[456] Sugden Decl. ¶¶ 18, 20. This resolution with the TCC, FCR and Coalition, aided by the mediators, was first memorialized in the Restructuring Support Agreement and earlier iterations of the Plan. Sugden Decl. ¶ 47; Whittman Decl. ¶ 208.

[457] *See generally*, Sugden Decl.; Day 5 Hr'g Tr. 130:3-186:16.

[458] Sugden Decl. ¶ 21.

Case: 23-1664    Document: 62-1    Page: 679    Date Filed: 07/24/2023

is a separate entity, differently positioned in terms of financial position, the claims it may face and defenses it may have to claims.[459]

The Formula was viewed as a way to drive a global resolution. The Local Council Committee believed a global resolution was necessary for several reasons. First, it was necessary to unlock the insurance proceeds as each Local Council is an additional insured under BSA's insurance policies. Second, Local Councils' separate viability are in many ways dependent on the viability of every other Local Council and BSA. Local Councils and BSA are part of a control group with respect to their Retirement Plan. The PBGC takes the position that BSA and Local Councils are jointly and severally liable for any termination liability that might arise. Further, BSA is dependent on Local Councils for significant revenue based on membership assessments. Non-participation by some Local Councils could threaten not only the viability of BSA, but BSA's ability to provide services to participating Local Councils. Third, while Local Councils are regional, Scouting has a national profile. A resolution that does not preserve the national character of Scouting would be viewed as a failure by Local Councils and, perhaps, donors and members.[460]

The Formula went through many iterations as it evolved from December 2020 to June 2021. The factors driving the Formula were tweaked during that period, but the underlying factors considered: each Local Council's total net assets, the raw number of claims filed against each Local Council (based on the Bates White data) and the applicable statute of limitations.[461] As a result of conversations with Local Councils as well as a

---

[459] Sugden Decl. ¶ 22.

[460] Sugden Decl. ¶ 26.

[461] Sugden Decl. ¶ 28. Most Local Councils are located in jurisdictions that have not enacted a revival window in which to bring Direct Abuse Claims and many are located in jurisdictions whose state constitution do not permit such legislation. Thus, many Local Council have never defended

142

response to a proposal from BSA (which was rejected by Local Councils), the Local Council Committee added several guardrails to the Formula which capped the amount a Local Council was required to contribute notwithstanding the Formula-generated contribution. Those Guardrails included: (i) limiting the highest amount any Local Council would contribute so that it was not incentivized to file its own bankruptcy case and (ii) ensuring that no Local Council was required to contribute more than the greater of (x) its contribution under the (rejected) BSA proposal or (y) the second iteration of the Formula.[462] Finally, "Bridge the Gap" mechanisms were put in place, notwithstanding the Guardrails, in order to meet the new (and higher) $500 million demand from the Coalition. Those Bridge-the-Gap mechanisms were targeted asks to certain Local Councils who could afford to make a larger contribution while remaining financially viable or who were contributing less than 85% of their liquidity guardrail.[463] The negotiations/discussions with Local Councils took thousands of hours and were among the most complicated negotiations Mr. Sugden has ever undertaken.[464]

The Local Council Committee solicited letters of intent from Local Councils to fund a Local Council contribution in the amount of $500 million (in cash and property). As Mr. Sugden testified, the Local Council Committee was unwilling to support higher amounts

---

Direct Abuse Claims and would consider the likely cost of litigation in their decision to support any global resolution. Sugden Decl. ¶ 26.c.v.

[462] Sugden Decl. ¶ 36.

[463] Sugden Decl. ¶ 39.

[464] Sugden Decl. ¶ 48.

143

because it did not think they would be achievable.[465] The Local Council Committee also supported the DST Note as further consideration.

Mr. Whittman analyzed the Local Council Contribution relative to the insurance rights they are contributing to the Settlement Trust and the rights in the BSA Insurance Policies that they are foregoing. He also analyzed the Formula relative to each Local Council's unrestricted net assets, number of claims and geographic location (for statute of limitations analysis) and ability to contribute. Mr. Whittman concluded that the Formula provided a "fair and reasonable" basis for the allocation and maximized the value that was being contributed to the Settlement Trust.[466] Finally, as further detailed below, Mr. Whittman performed a liquidation analysis and concluded that the Local Council Contribution of $600 million is greater than the aggregate liquidation value of Local Councils.[467]

The Local Council Contribution is substantial. It was the result of negotiation under the auspices of the mediators. It increased over time from $300 million to the current contribution of $665 million in cash and property and the contribution of valuable insurance rights. Further, Mr. Whittman's uncontroverted conclusion is that the contribution to the Plan is greater than the result of a liquidation of Local Councils in the aggregate.

Objectors do not really quibble with the aggregate amount *per se*, but rather focus on the individual Local Council(s) against whom they could assert claims and argue that individual Local Councils are not contributing enough relative to their assets or the number

---

[465] Sugden Decl. ¶ 42.

[466] Whittman Decl. ¶¶ 220-235.

[467] Whittman Decl. ¶ 268.

of claims against them. Similarly, some objectors divide a Local Council's net assets by the number of claims asserted against it in the Proofs of Claim to arrive at a "per claim" amount, which they deem insufficient.[468] But, the Local Council Contribution cannot be viewed in this light. It is a collective contribution made by Local Councils for the benefit of all Local Councils and was arrived at after a year of mediation with the TCC, the Coalition and the FCR, all of whom had an incentive to ensure that the Formula maximized recoveries. The internal allocation was also negotiated to include global participation, which maximized, indeed made possible, the Settling Insurer Settlements. Nothing in the *Continental* hallmarks precludes collective consideration or prevents one party, in appropriate circumstances, from contributing funds for the benefit of another.

### (3) The Chartered Organizations
#### (i) United Methodist Entities

No one objects to the contribution of the United Methodists Entities, which includes a $30 million monetary contribution and rights as an insured or additional insured under the Abuse Insurance Policies, the waiver of their Indirect Abuse Claims and their commitment to raise another $100 million from Chartered Organizations. The United Methodist Entities also agree to remain affiliated with BSA through 2036 and be part of the Survivor Working Group.[469]

I find these contributions to be substantial. The United Methodist Church is a group of affiliated congregations and regional bodies with authority dispersed at different levels.[470]

---

[468] The Disclosure Statement and Plan Supplement provide the necessary information to make these calculations.

[469] Day 5 Hr'g Tr. 103:12-17.

[470] Day 5 Hr'g Tr. 88:5-90:14.

145

A00658

It formed an ad hoc committee to participate in the BSA bankruptcy case, particularly, in the mediation. The $30 million contribution was arrived at as part of the mediation process and will be raised from offering plates across the United Methodist Church in the United States.[471] Not only do the contributions further fund the Settlement Trust, but the settlement with the United Methodist Entities helps unlock the Settling Insurer Settlements as they are additional insureds under the BSA Abuse Policies and it makes the Local Council contribution possible. Moreover, as the United Methodist Entities are currently the largest Chartered Organization group, with more than 184,000 Scouts[472] and 6,183 Chartered Organizations,[473] their commitment to continue to work with Scouting helps to ensure both the future of Scouting and the contribution of the Settlement Growth Payment to the Settlement Trust.

### (ii) The Participating Chartered Organizations

Contributions for the releases/channeling injunction of Participating Chartered Organizations comes in three forms. First, contributions are made on their behalf by others. As previously stated, as a result of further mediation, Local Councils agreed to the Supplemental LC Contribution of $40 million in two forms: an additional contribution from

---

[471] Day 5 Hr'g Tr.97:19-99:1; 103:22-105:9. Each of the 54 conferences committed to their share and 95% of the funds will be raised within the first year. *Id.* 105:25-106:4. Notwithstanding, Bishop Schol is concerned about raising necessary funds: "Our resolution really tries to take into account all the things that survivors are asking for. In terms of our financial settlement, I'll be honest, we were concerned about that, not just because the difficulty of raising that, particularly from congregations and particularly because some of these claims are older claims and congregations where those claims occurred are no longer the same congregation; first things, one of the congregations in New Jersey in the 1970s was an all-white congregation. It had several hundred worshippers. Today, in that urban community, that congregation has about 25 or 30 worshippers, African American, Caribbean, Filipino; it's just a completely different congregation today. The other was that we were promised that the Boy Scouts would care for liabilities as it related to Scouting.").

[472] Whittman Decl. ¶ 139.

[473] Day 5 Hr'g Tr. 95:20–23.

146

a built-in overage to the Formula (at least $15 million) and the increase of the DST note from $100 million to $125 million.[474] While the Supplemental LC Contribution was agreed to in January 2022, it was still the subject of mediation with the TCC, which led to the resolution of the consideration to be paid by or on behalf of Participating Chartered Organizations.[475] Local Councils also agreed to fund 25% of the Settlement Growth Payment, which aligns the future of BSA, Local Councils and Chartered Organizations.[476]

Second, the Participating Chartered Organizations are assigning to the Settlement Trust their rights under BSA Insurance Policies and Local Council Insurance Policies as well any of their own insurance policies to the extent they cover Abuse and are issued by Settling Insurers. Participating Chartered Organizations are also assigning to the Settlement Trust their own causes of action against Non-Settling Insurance Companies for the period prior to January 1, 1976. Third, Participating Chartered Organizations are waiving their Indirect Abuse Claims.

The consideration is substantial when considered together. The waiver of insurance rights assists the $1.67 billion payment made by the Settling Insurers. In addition to the Supplemental LC Contribution paid on their behalf, the waiver of contribution of rights under insurance policies unlocks the Local Council contribution. It also provides the Settlement Trustee a chance to negotiate with Chartered Organizations for additional contributions in exchange for future releases of pre-January 1, 1976 Abuse Claims and to negotiate with Non-Settling Insurance Companies with respect to the $400 million in

---

[474] Sugden Decl. ¶ 56.

[475] Sugden Decl. ¶ 58.

[476] Sugden Decl. ¶ 56.

allocated insurance and $4 billion in unallocated insurance. Thus, the consideration both facilitates the establishment of a Settlement Trust that can pay all claims and eliminates substantial Indirect Abuse Claims.[477]

### (iii) The Opt-Out Chartered Organizations

The Opt-Out Chartered Organizations are not making any of their own contributions to the Settlement Trust. Rather, the claims are being channeled in order to unlock the Settling Insurer Settlements. In other words, a portion of the Settling Insurers' contribution is made on behalf of the Opt-Out Chartered Organizations.[478]

### (iv) Related Non-Debtor Entities and Representatives

The BSA Settlement Trust Contribution is made on behalf of BSA, Related Non-Debtor Entities and their Representatives. The National Boy Scout Foundation is also providing a loan in the amount of $42.8 million, which is critical to ensure BSA's liquidity going forward.[479] Arrow WV, Inc. is continuing to guarantee the JPM loan to BSA and permits BSA the continued use of the Summit High Adventure Base.[480] Related Non-Debtor Entities are also contributing their rights under the BSA Insurance Policies to the Settlement Trust.[481] The Representatives—certainly those on the National Executive Board—are all volunteers.

---

[477] Counsel for the Local Council Committee represented that Chartered Organizations filed 14,000 Indirect Abuse Claims. Day 20 Hr'g Tr. 95:21-24; JTX 14. Such claims could be asserted against both BSA and Local Councils.

[478] Patton Decl. ¶ 32.

[479] JTX 1-33 (Settlement Term Sheet among Debtors, JPM and the UCC).

[480] JTX 1-33 (Settlement Term Sheet among Debtors, JPM and the UCC).

[481] Whittman Decl. ¶ 203.

*(c)  A Substantial Majority of the Impacted Creditors Agree*

After the settlement with the TCC, 85.72% of the Direct Abuse Claimants (who

voted) and 82.41% of the Indirect Abuse Claims (who voted) accepted the Plan.  The

Certain Insurers, the Guam Committee and the D&V Claimants argue that other mass tort

cases have garnered a greater percentage of votes (90% +) while Debtors tout cases that

have received lesser or equal percentages of votes (75%, 82.98%).[482]  The Guam Committee

and the Lujan Claimants also point out that holders of Direct Abuse Claims against the

Aloha Council rejected the Plan as their acceptance rate was only 44.5%.[483]

Given the highly charged nature of this case (including among holders of Direct

Abuse Claims), the overall acceptance rates are a substantial majority.  To the extent that

there is a floor on what is a "substantial majority," the 75% figure in § 524(g) could be used

as a proxy.  I also reject the idea of looking at the vote at the individual Local Council level

or, to the extent possible, Chartered Organization level.  This Plan has been put forth and

solicited as a global resolution.  I recognize that some objectors disagree with that concept

as a matter of first principle.  But, permitting exceptions will unravel the Plan.

*(d)  The Plan Provides a Mechanism for the Payment of All, or Substantially
All, of the Claims of the Class or Classes Affected by the Injunction*

Debtors, the TCC, the Coalition and the FCR all argue that the Plan "provides a

mechanism" for the payment of all or substantially all of the claims in Class 8.  I concluded,

---

[482]  The Certain Insurers cite to eight cases, including *Millenium*, 945 F.3d at 132 (93%) and *In re
AOV Indus.*, 792 F.2d 1140, 1143 (D.C. Cir. 1986) (90%).  *See* Certain Insurers' Objection ¶ 79.
Debtors cite to orders in *In re TK Holdings Inc. (Takata)*, Case No. 17-11375 (BLS) (Bankr. D. Del.
Feb. 21, 2018) (74% to 78.18%) and *The Weinstein Co. Holdings, LLC*, Case No. 18-10601 (MFW)
(Jan. 26, 2021) (82.98%).  *See* Debtors' (I) Memorandum of Law in Support of Confirmation of
Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and
Delaware BSA, LLC and (II) Omnibus Reply to Confirmation Objections ("Debtors' Memorandum
of Law") ¶ 294 n.443-444 [ECF 9114].

[483]  JTX 2948; Day 21 Hr'g Tr. 96:13-97:1.

149

A00662

Case: 23-1664   Document: 62-1   Page: 687   Date Filed: 07/24/2023

based on the information known to date about the Direct Abuse Claims as analyzed by Dr. Bates, that the Plan provides for payment in full.

The Certain Insurers' sole basis for objecting to the Scouting-Related Releases is that this prong of the *Master Mortgage* standard is not satisfied because Class 8 and Class 9 Claims will not be paid in full given that the TDP will "undoubtedly generate claim values that far exceed the values that could be obtained in the tort system."[484] This is simply a rehash of the Certain Insurers' argument that the TDP will result in inflated values for Direct Abuse Claims (*see* Section IV.B, *infra*). In this context, however, the Certain Insurers have no standing to raise the recoveries to another class, and their cursory footnote reference to Class 9 does not fairly raise an issue as to that class.[485] Regardless, payment in full is only one of the five *Master Mortgage* factors and is not necessary to meet the *Continental* hallmarks.[486]

---

[484] *See* Certain Insurers' Objection ¶ 82; Day 22 Hr'g Tr. 66:6-17.

[485] *See* Certain Insurers' Objection ¶ 85 n.126. The entire footnote reads: "There is no guarantee for payment in full of Class 9 claims, which are also impacted by the Channeling Injunction. Even assuming that the updated report by Dr. Bates is accurate, the Debtors do not even attempt to suggest that Class 9 claims will receive similar treatment." Again, at argument, the Certain Insurers paid lip service to their Class 9 claims but focused on whether Class 8 claims were paid in full. Day 21 Hr'g Tr. 60-67.

[486] *Millennium,* 591 B.R. at 586 (finding "payment in full" factor satisfied where recoveries to affected creditors dwarf recoveries in a liquidation); *710 Long Ridge Road,* 2014 WL 886433 (Bankr. D. N.J. Mar. 5, 2014) (approving third-party releases where class rejected plan, but receiving at least a 33% recovery of contingent and unliquidated claims, well in excess of liquidation value); *See also Purdue Pharma,* 633 B.R. at 107 ("More relevant than the prospect of full payment, therefore, is the Third Circuit's focus on the fairness of the settlement to the third-party claimants") (citing *Exide Holdings,* 2021 WL at *13).

150

A00663

*(e) The Injunction is Essential to Reorganization Such that Without it There is Little Likelihood of Success*

The Plan includes a series of agreements that together provide the basis for 82,209 claimants asserting Abuse to seek compensation from a Settlement Trust with assets expected to pay them in full. In order for the Settlement Trust to receive these assets, the Scouting-Related Releases and the channeling of Abuse Claims to the Settlement Trust are required. Parties to the mediation testified that the releases were required by the Settling Insurers so that they could have finality with respect to their settlements. In response to a question of whether it was "theoretically possible" to secure a deal with the Settling Insurers without "one hundred percent" of the releases, Mr. Whittman testified:

> I believe [the releases] were necessary in order to maximize the value of the policies, I believe they were necessary in order to secure this deal that is a set of interlocking, interrelated deals that have been voted on by the constituents that have supported this plan, and I believe that a narrowing of releases, to the extent that it would have been possible to get to some sort of deal would have been a deal that would have been significantly less value for the trust, as any narrowing of release creates risk and any risk creates—economically, logically, you're going to reserve and hold back for that risk.[487]

Mr. Patton, who was also involved in negotiations with the Settling Insurers, among others, concurs:

> The scope of the Channeling Injunction and the issue of who would be included among the Protected Parties and Limited Protected Parties were the subjects of extensive negotiations by and among the Abuse Claimants' Representatives and representatives of the entities who would ultimately become Protected Parties and Limited Protected Parties. Without the Channeling Injunction in its current form, including with respect to Participating Chartered Organizations and Opt-Out

---

[487] Day 11 Hr.'g Tr. 79:11-21. *See also e.g.,* Day 11 Hr'g Tr. 80:2-12 (Mr. Whittman testified: "I don't believe the Hartford would have paid the $787 million it is paying now absent the releases it's receiving in the plan. And, you know, in particular I would note that they had a so-called MFN provision in their term sheet that said that, to the extent that any additional releases were added on by other insurers, they would get the benefit of those releases, and they also had the specific provision in their term sheet related to the need to address chartered organization releases and cover off their exposure for chartered organizations, and that issue was addressed because the term sheet and the settlement agreement.").

151

Chartered Organizations, Settling Insurance Companies would not have entered into the Insurance Settlements.[488]

So, does Mr. Sugden:

> Q      Mr. Sugden, would the settling insurers have made their contributions to the settlement trust without the releases of chartered organizations?
>
> A      Absolutely not.[489]

The same is true for Local Councils. As Mr. Sugden testified:

> The releases and channeling injunctions contained in the Plan are essential to the settlements embodied in the Plan, including the Local Council Settlement Contribution. This is true for the releases/channeling injunctions of Abuse Claims against Local Councils and their Representatives, as well as the releases of Abuse Claims against Chartered Organizations and their Representatives to the extent provided in the Plan.

> First, if Abuse Claims against Local Councils are not channeled to the Settlement Trust, Local Councils will not make the Local Council Settlement Contribution. This is made clear in their letters of intent, which are expressly contingent on "[e]ntry of a channeling injunction and releases covering our Local Council (including any predecessors to our Local Council, and any trusts or entities that support Local Council operations), our Local Council's board members, volunteers and employees (other than alleged perpetrators)." Indeed, it is not reasonable to expect that Local Councils will contribute hundreds of millions of dollars of direct and indirect consideration — in addition to their valuable insurance rights — to the Settlement Trust while still retaining potential liability for Abuse Claims. The same is true for Abuse Claims against any Representatives of a Local Council — without coverage for these individuals, a Local Council will likely face indemnity/ contribution claims from such Representatives, rendering a "global resolution" illusory. Local Councils' ability to continue their operations and to support the Scouting mission depends on complete release of Abuse Claims against them.[490]

---

[488] Patton Decl. ¶ 31.

[489] Day 5 Hr'g Tr. 187:21-24.

[490] Sugden Decl. ¶¶ 67-68. *See also Id.* ¶¶ 69, 70 (footnote omitted):

Local Councils will also not contribute to the Settlement Trust unless Indirect Abuse Claims — including indemnity, contribution, and subrogation claims from insurers and Chartered Organizations — against Local Councils are released and channeled as well. I understand that, since 2014, the form of charter agreement that Local Councils have executed with Chartered Organizations each year contains the following language: "The Local Council agrees to: . . . [i]ndemnify the Charter Organization in accordance with the resolutions and policies of the

A00665

Moreover, BSA's business plan and financial projections are premised on the Plan, which in turn, is premised on the releases for Local Councils, Chartered Organizations and Non-Debtor Related Entities.[491] Membership drives BSA's finances, which in turn depends on Local Councils and Chartered Organizations to both maintain and recruit Scouts.[492] Membership also drives membership revenue and supply sales and "indirectly impacts virtually every other line of the P&L."[493] As previously found, recruitment occurs at the Local Council and Chartered Organization level, not at the national level. As Mr. Whittman testified, without the releases at the Local Council level, he expects there to be

---

National Executive Board of the Boy Scouts of America." Charter Organizations have asserted, including during these chapter 11 cases, that this provision creates a contractual indemnity obligation of Local Councils with respect to any Abuse Claims asserted against a Charter Organization. The Certain insurers have also asserted that they have contingent Indirect Abuse Claims against Local Councils. While Local Councils would likely dispute such claims, the cost and distraction of litigating them would frustrate Local Councils' ability to operate. Again, it is not reasonable to expect that Local Councils will make the substantial financial contribution (including giving up their insurance coverage) contemplated by the Plan while still retaining potential exposure on indemnity/contribution/subrogation claims brought by Chartered Organizations or insurers. Indeed, under the Plan, Local Councils are funding certain protections for Chartered Organizations — see Paragraphs 56 and 57 above. The Local Council that I represent — and all other Local Councils that I have interacted with — would not agree to do so, nor to fund the Local Council Settlement Contribution more generally, if they could still face such litigation from Chartered Organizations regarding Abuse Claims after the Effective Date.

From my personal interactions with Local Councils, I am confident that without the releases and channeling injunctions contained in the Plan of (a) Local Councils, (b) Local Councils' Representatives, (3) Chartered Organizations, and (4) Chartered Organizations' Representatives, Local Councils will not make the Local Council Settlement Contribution or the Supplemental LC Contribution.

[491] Day 5 Hr'g Tr. 34:23-35:14.

[492] Day 5 Hr'g Tr. 36:10-16.

[493] Day 5 Hr'g Tr. 36:10-16. Financial Projections for the years 2021-2025 show Registration Fees and Supply Operations are $811 million of Total Revenues of $1,360 million, or 60%. Other revenue for that period is National Services Fees $43 million, Event/Conference Fees $24 million, High Adventure Bases (gross) $312 million, Contributions and Bequests $50 million, GLIP Revenues/Unit Charter Fees $37 million, National Jamboree Fees $21 million, Other Revenues $62 million. JTX 1118 (Chart 6) as updated by JTX 1435 (Chart 3).

Case: 23-1664    Document: 62-1    Page: 691    Date Filed: 07/24/2023

"significant" Local Council bankruptcy filings.[494] Mr. Sugden concurs.[495] And, based on his interactions with Chartered Organizations during the bankruptcy, Mr. Whittman believes that absent the releases in favor of the Chartered Organizations, there would be a significant impact on membership and operations and the Plan would not be feasible.[496] Conversely, he believes the releases under the Plan in exchange for their insurance rights would not provide a reason for Chartered Organizations to depart.[497]

Based on the evidence presented, I am satisfied that without the Scouting-Related Releases in favor of the Settling Insurers, Non-Debtor Related Entities, Local Councils, Chartered Organizations and their Representatives, the Settling Insurers and Local Councils would not make their monetary contributions to the Settlement Trust. So, too, the Participating Chartered Organizations, Related Non-Debtor Entities and their respective Representatives who are additional insureds would not contribute their insurance rights to the Settlement Trust. The Scouting-Related Releases and Channeling Injunction unlock these monetary contributions as they bring as complete relief as possible for the contributors. The Scouting-Related Releases and the Channeling Injunction are the

---

[494] Day 5 Hr'g Tr. 35:15-24.

[495] *See e.g.,* Sugden Decl. ¶ 11 ("Thus, if a Local Council were to dissolve or file for bankruptcy, it would be difficult for National BSA to reestablish the community ties necessary for a successful Scouting program.").

[496] Day 5 Hr'g Tr. 35:25-36:9; *see also* JTX 725 (8/9/21 email from Bishop David Bard from the United Methodist Church, Methodist Conference (prior to resolution with United Methodist Entities) encouraging churches in his conference to change their relationship with scouting units, not to renew charters (but agree to a Facilities Use Agreement drafted by The United Methodist Church) and stating that BSA needs to propose a better plan that protects your church).

[497] Day 5 Hr'g Tr. 47:2-12. *See also id.* 48:10-15 ("So, in other words, I [Mr. Whittman] believe that the chartered organizations feel that they are well treated or property treated under the plan. That has been evidenced by the fact that relatively few chartered organizations have either opted out of that treatment or have objected to the plan.")

154

A00667

cornerstone of the Plan. Without the global settlement of insurance coverage disputes with BSA's two primary carriers (Hartford and Century) these cases would devolve into a morass of coverage litigation, and recoveries to holders of Abuse Claims would be delayed for countless years. These settlements also provided a template for settlements with Zurich and Clarendon and may serve as the template for future settlements with Non-Settling Insurance Companies.

The same holds true for Local Councils. Local Councils' collective contribution and the Formula that created it seek to ensure that Local Councils do not themselves file bankruptcy proceedings and that Chartered Organizations remain with the Scouting program. Given the interconnected nature of the delivery of Scouting, Local Council existence and continued Chartered Organization affiliation is critical to BSA's existence as a national organization. The recruiting function at the local level ensures membership and, relatedly, BSA's fiscal viability.

Objectors attempt to downplay the necessity of the Scouting-Related Releases on several fronts. First, Objectors argue that the Settling Insurers would have been willing to settle for either the same amount or some lesser amount without the releases and channeling injunctions in favor of Local Councils and Chartered Organizations. Objectors argue that neither BSA, the FCR or presumably the Coalition or the TCC asked directly that the Settling Insurers exclude additional insureds suggesting that the negotiations were not truly rigorous enough. I reject this argument. It is illogical to believe that these settlements could be achieved without releases and this conclusion is supported by the record. The Scouting-Related Releases were the subject of hard-fought negotiations with the help of seasoned mediators. There was no incentive for the Coalition, the TCC or the FCR to leave

money on the table or to hand out releases at whim. Indeed, the TCC did not come on board until after solicitation.

Objectors also argue that Debtors previously filed a standalone plan (the so-called "toggle plan"). This plan was always a backup in the event no other plan could be confirmed. It is not a true resolution and would leave claimants racing to the courthouse, filing suits across the country, and BSA in shambles. While, apparently, Mr. Whittman testified such a plan was feasible in some sense for BSA, the evidence presented calls that unexplored conclusion into question.[498] The uncontroverted testimony is that BSA needs Local Councils and Chartered Organizations to fulfill its mission. A program that is not national in scope will draw fewer donors and members threatening the survival of both Local Councils and BSA.

In any event, "feasible" is not necessarily confirmable nor does it assure substantial—much less full—recoveries for holders of Direct Abuse Claims. The relevant disclosure statement for the toggle plan provides:

> The Plan provides for two paths to reorganize the Debtors. The first plan of reorganization is a "Global Resolution Plan," which provides the framework for global resolution of Abuse Claims against the Debtors, Local Councils, Contributing Chartered Organizations, and Settling Insurance Companies, in exchange for contributions by such parties to the Settlement Trust for the benefit of Abuse victims, including the contribution of substantial insurance assets. The Global Resolution Plan has been designed to maximize and expedite recoveries to Abuse victims. The Debtors strongly encourage all holders of Direct Abuse Claims to vote in favor of the Global Resolution Plan.
>
> If the holders of Abuse Claims do not provide a sufficient number of votes to accept the Plan (or the Bankruptcy Court otherwise finds that the Global Resolution Plan is not confirmable), the Debtors will be required to seek confirmation of the back-up to the Global Resolution Plan, a "BSA Toggle Plan." The BSA Toggle Plan provides for the resolution of Abuse Claims and other Claims against only the Debtors,

---

[498] I say "apparently" because while on cross-examination objectors refer to some earlier testimony that previous plans were feasible, there was no exploration of the topic.

thereby reducing the potential recoveries under the Plan for the holders of Direct Abuse Claims from as much as 100% of their Claims under the Global Resolution Plan to as little as 1% of their Claims. Holders of Direct Abuse Claims must provide a sufficient number of votes in favor of the Plan in order to ensure they will receive the treatment afforded by the Global Resolution Plan and not the treatment provided in the default BSA Toggle Plan.[499]

At the Disclosure Statement hearing, counsel for the TCC expressed strong views on the

toggle plan:

> MR. STANG:   Your Honor, the tort claimants' committee opposed the extension to exclusivity because there's not a single survivor representative group that supports the debtors' plan. The debtor refers to its plan as a toggle plan. It is a death trap plan. It has as Plan A, a bad solution, as Plan B, a worse solution.

---

[499] JTX 1-413 Art. II.A.  *See also id.*:

By contrast, the BSA Toggle Plan does not provide for the resolution of Abuse Claims against Local Councils and Contributing Chartered Organizations. Specifically, unlike the Global Resolution Plan, the BSA Toggle Plan does not "channel" Abuse Claims against the Local Councils and the Contributing Chartered Organizations (along with Abuse Claims against the BSA) to a Settlement Trust. Instead, the BSA Toggle Plan provides a process by which Abuse Survivors may obtain compensation for Abuse from the BSA only. Confirmation of the BSA Toggle Plan, as opposed to the Global Resolution Plan, forces Abuse Survivors to seek compensation on account of their Claims against Local Councils and Chartered Organizations by filing independent lawsuits in the tort system against such entities. This will necessarily entail lengthy, complicated litigation. Unlike the current Chapter 11 Cases, where Abuse Survivors will receive equitable, consistent treatment through one, consolidated process, if the Plan defaults to the BSA Toggle Plan, Abuse Survivors will be competing for judgments and settlements against Local Councils and Chartered Organizations in multiple venues, resulting in a "rush to the courthouse." Moreover, the delays and uncertainties inherent in such a scenario, as well as the more limited contributions that will be made to the Settlement Trust in these Chapter 11 Cases, will likely produce inferior outcomes and recoveries for Abuse Survivors than would be achieved under the Global Resolution Plan.

Indeed, without the ability of the Local Councils and Contributing Chartered Organizations to contribute assets to the Settlement Trust, the Settlement Trust will necessarily have substantially fewer assets to distribute to Abuse Survivors. Additionally, under the BSA Toggle Plan, the BSA is only assigning its own rights and interests to the Insurance Policies to the Settlement Trust, thereby making liquidation of the Insurance Policies more difficult. Additionally, Insurers will not agree to settle piecemeal litigation under the BSA Toggle Plan as opposed to entering into a final global resolution with respect to their policies under the Global Resolution Plan.

Moreover, Local Councils will likely face multiple litigations on account of Abuse Claims that are no longer stayed. Many Local Councils will not have the financial wherewithal or capacity to address numerous litigation claims individually and may choose to file chapter 11 or chapter 7 bankruptcy petitions. This could result in numerous bankruptcy cases across the country, which will significantly impair the ability of any holder of Direct Abuse Claims to receive a recovery from these Local Councils.

157

<p style="text-align: center;">*     *     *</p>

Death trap Plan B is apparently what the tort claimants committee asked for. Well, I guess if somebody had bothered picking up the phone to really ask us about it, they might have heard what the problem is. This is the problem with death trap Plan B. And this was conferred to me by debtors' counsel when we asked about it. Boy Scouts get their discharge. They put in whatever they put in, this combination of property and cash -- mostly property -- there's no backstop for the value, by the way, it's kind of worth it is what it is, and we'll get to that later I guess in (indiscernible). And everyone can go to the local councils and can go to the charter organizations. The reason that there's a death trap Plan B is if the settlement trust reached -- if the litigation that proceeded after confirmation caused a local council to come to the trust and say, can you get us a channeling injunction, a post-confirmation channeling injunction and protection from this litigation, here's enough money to satisfy you, everyone agrees this is right amount of money, can you get us protection, because we're saying uncle; we've had enough. We were clearly told by the Boy Scouts that does not exist under death trap Plan B.[500]

As both Debtors and the TCC stated over a year ago, without the potential for third-party releases, a BSA plan spirals into a "death trap" of litigation with minimal recoveries in sight. Now, the contributions the TCC contemplated have been negotiated and the recoveries contemplated by this Plan to holders of Abuse Claims are assured. Many survivors have been waiting for thirty, forty or even fifty years to tell their stories and receive a meaningful recovery. This Plan makes that happen.

Objectors argue that certain of the Scouting-Related Releases and injunctions are not necessary because they were not in the Solicitation Plan, or certain earlier versions of the Plan. Objectors overlook the nature of the negotiations with the Settling Insurers, which began with Hartford pre-solicitation, followed by Century/Chubb post-solicitation and then Zurich and Clarendon. When the plan was solicited, the agreement with Hartford was contained in a Term Sheet subject to definitive documentation. Several provisions in the

---

[500] Disclosure Statement Hearing May 19, 2021 [ECF 4716] Hr'g Tr. 73:9-14; 80:21-81:16. Plan A contained the first settlement with Hartford, which has been superseded by the Hartford Settlement Agreement.

<p style="text-align: center;">158</p>

<p style="text-align: center;">A00671</p>

Term Sheet contemplated that Hartford would be a Protected Party entitled to releases from holders of Abuse Claims and that it would need to be satisfied with respect to treatment of Chartered Organizations.[501] The Disclosure Statement also clearly provides that Hartford's contribution of $787 million was subject in all respects to a resolution of rights of Chartered Organizations to Hartford's insurance policies and the treatment of Chartered Organizations as it impacts those policies.[502]

On a more specific point, the Lujan Claimants and the Guam Committee argue that the releases and injunctions are unnecessary with respect to the Archbishop because the agreements with the Settling Insurers provide:

> Bankrupt Chartered Organizations. The BSA shall use its best efforts to work with the Roman Catholic Ad Hoc Committee and the Chartered Organizations that are debtors in bankruptcy (the eight bankrupt entities identified on Exhibit K to the Plan, which may be amended to the extent that additional Chartered Organizations file for

---

[501] *See e.g.,* JTX 1-292 at 4 ("(viii) **Chartered Organizations.** Under the Plan, the Debtors, the Coalition, the FCR and the Trust shall secure an assignment to the Trust of, or otherwise resolve to the Parties' satisfaction, Chartered Organizations' rights or claims to coverage under Abuse Insurance Policies issued by Hartford. The Debtors, the Coalition and the FCR shall use their best efforts to settle with the Chartered Organizations."); id ((xi) **Trust Distribution Procedures.** (". . . Hartford shall be included as a releasee in any form of relate attached to the Trust Distribution Procedures to the same extent as BSA, Local Council and Chartered Organizations are, such that Claims for coverage for Claims for Abuse are not made under Abuse Insurance Polices issued by Hartford by, or as a result of Claims of Abuse made by, holders of Abuse Claims who receive payment from the Trust. . . ."); Day 11 Hr'g Tr. 110:17-25 (Mr. Whittman testifying: "What I would note, and I think I said it before, is that The Hartford Settlement Agreement has a specific condition in it, the term sheet, I should say, has a specific condition in it that issued -- I forgot the exact words -- but issues related to chartered organization releases would need to be addressed as a condition of that agreement. And they were not addressed at this time; they were subsequently addressed and incorporated into the current plan in front of the Court.").

[502] *See* Disclosure Statement at 15 ("Hartford is expected to make a contribution of $787 million to the Settlement Trust for the payment of Abuse Claims in exchange for the sale of the Hartford Policies to Hartford free and clear of the interests of all third parties, including any additional insureds under the Hartford Policies, which interests will be channeled to the Settlement Trust; Hartford will be included as a Settling Insurance Company and Protected Party under the Plan, and receive the benefits of the Channeling Injunction. Hartford's contribution is subject to resolution of Chartered Organization rights to Hartford policies in a manner that is acceptable to Hartford. All references throughout this Disclosure Statement to Hartford's contribution assume that Hartford is satisfied with the Plan's treatment of Chartered Organizations as it impacts Hartford Policies. . .").

bankruptcy protection prior to entry of the Confirmation Order, each a "Bankrupt Chartered Organization") to obtain written consent for such Bankrupt Chartered Organizations to consent to the terms of this Agreement. To the extent that a Bankrupt Chartered Organization does not agree to provide written consent to the terms of this Agreement, such Bankrupt Chartered Organization shall automatically be deemed to be an Opt-Out Chartered Organization for all purposes hereunder. The Parties will use reasonable efforts to jointly resolve such non-consent, which may, upon the consent of the Parties, include excluding such Bankrupt Chartered Organization from the protections and benefits otherwise provided herein, provided that the failure to obtain such consent as it applies to the applicable Bankrupt Chartered Organization shall not be deemed a breach of this Agreement by any Party or a failure to satisfy a condition to the effectiveness of the Plan. The Parties consent to the foregoing provisions covering the Settling Insurers to apply to any other Settling Insurance Company. The Settling Insurers reserve all rights and defenses they have under policies issued to Bankrupt Chartered Organizations that do not consent to the terms of this Agreement.[503]

This language suggests an option to negotiate with a bankrupt Chartered Organization to obtain its consent to the settlement agreement, but provides that non-consent is not a breach of the agreement. This is not a concession that such releases are unnecessary. It is a recognition that the automatic stay might pose a challenge to obtaining certain relief. A resolution with Chartered Organizations was required by both the Settling Insurers and Local Councils. Neither is an unreasonable, or somehow extraneous, position. The Settling Insurers are seeking to buy complete relief; they do not want to pay more than once for Abuse Claims by a given claimant. Local Councils also want to pay only once; they understandably do not want to be subject to indemnification claims from Chartered Organizations on the very claims they are resolving.

Further, the Releases and Channeling Injunction while broad in scope align with the years in which insurance was provided. As for the Archbishop, it has chosen to be an Opt-Out Chartered Organization. The Lujan Claimants, therefore, and any other holders of

---

[503] *See e.g.,* JTX 1-355 (Century Settlement Agreement) ¶ 12.

Abuse Claims against the Archbishop are free to immediately pursue their claims against

the Archbishop, consistent with the automatic stay in the Archbishop's bankruptcy case, "to

the extent that" the Abuse Claim is not covered by an insurance policy issued by a Settling

Insurance Company. The relevant part of the Channeling Injunction provides that:

> the sole recourse of any holder of an Opt-Out Chartered Organization Abuse Claim against an Opt-Out Chartered Organization on account of such Opt-Out Chartered Organization Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Opt-Out Chartered Abuse Claim against any Opt-Out Chartered Organization or any property or interest in property of any Opt-Out Chartered Organization.[504]

To emphasize the narrow channeling of Opt-Out Chartered Organization Abuse Claims to

the Settlement Trust, the Plan provides:

> **4.     Reservations. Notwithstanding anything to the contrary in this Article X.F., the Channeling Injunction shall not enjoin:**
>
> **b.     the rights of holders of Abuse Claims to assert such an Abuse Claim against (i) a Limited Protected Party to the extent such Abuse Claims arose prior to January 1, 1976 and are not covered by an insurance policy issued by a Settling Insurance Company and (ii)** *an Opt Out Chartered Organization to the extent that such Abuse Claim is not covered by any insurance policy issued by a Settling Insurance Company.*[505]

Accordingly, the Lujan Claimants are not enjoined from pursuing the Archbishop for Abuse

Claims, but recoveries may not come from an insurance policy issued by a Settling

Insurance Company.[506] Debtors' counsel illustrates by way of example:

---

[504] Plan Art. X.F.1(d). An Opt-Out Chartered Abuse Claim is, by definition, Scouting-related and it must be covered by an insurance policy issued by a Settling Insurance Company. Plan Art. I.195.

[505] Plan Art. X.F.4.b (bold in original; italics supplied).

[506] This concept follows into the Insurance Injunction. Plan Art. X.H.3.(d) ("**Reservations. Notwithstanding anything to the contrary in this Article X.H, the Insurance Entity Injunction shall not enjoin: . . . d. the rights of any Person to prosecute (i) an Abuse Claim against an Opt-Out Chartered Organization** *to the extent that* **such Claim is not covered under an insurance policy by a Settling Insurance Company, or (ii) an Abuse Claim against a Limited Protected Party to the extent that such Abuse Claim arose prior to January 1, 1976 and is not covered under an**

161

A00674

In other words, these Agaña claim holders are not enjoined from asserting their claims against the Archbishop of Agaña prior to 1976, which is when the policies kick in that the settling insurance companies have issued, but even after 1976 to the extent that those claims are not covered by a settling insurance company. I'll give an example. If you have a claim in year 1978, and that 1978 policy was issued by Century to the tune of $500,000, and the Agaña Claimant has a claim of what it believes is $2 million -- and we haven't settled with the excess layers, so we're just talking about the primary layer. The Agaña Claimant -- the claim is channeled up to the $500,000, but if they want to go against the Archbishop of Agaña with respect to the rest, provided it's not covered by a settling insurance company, this language makes it clear that that abuse claim can be asserted against Agaña, even to the extent it's a Scouting-related abuse claim.[507]

As Debtors' counsel explained during argument the phrase "to the extent that" does all the work.[508]

As for Participating Chartered Organizations, all Abuse Claims that first arose prior to January 1, 1976 and are not covered by an insurance policy issued by a Settling Insurance Company are not channeled to the Settlement Trust. Holders of Abuse Claims against Participating Chartered Organizations will be able to sue Participating Chartered Organizations on those claims after the one year (as it may be extended) Limited Protected Party Injunction Date for those claims not channeled.[509] But, if the Abuse Claim first arose after January 1, 1976 or is covered by a Settling Insurance Company, the Settlement

---

insurance policy issued by a Settling Insurance Company.") (bold in original; italics supplied). It also follows to the Releases by Holders of Abuse Claims. Plan Art. X.J.3.

[507] Day 21 Hr'g Tr. 169:23-170:14.

[508] Day 21 Hr'g Tr. 167:15-175:13. The Guam Committee also objects to the Scouting-Related Releases alleging they incentivize the Archbishop to become a Participating Chartered Organization. The choices of the Archbishop are not an issue for this court.

[509] Limited Protected Party Injunction Date means "the twelve (12) month period following the Effective Date, s may be extended pursuant to the Settlement Trust Agreement, to afford Participating Chartered Organizations an opportunity to negotiate an appropriate settlement with the Settlement Trust and become a Contributing Chartered Organization. Art. I.177.

Trustee, not the holder of the Abuse Claim, will pursue those recoveries and/or settle with a Non-Settling Insurance Companies.

To the extent that the Settlement Trustee seeks to settle with a Non-Settling Insurance Companies, in addition to the procedures provided in the Trust Agreement, such a settlement will need to be noticed to holders of Abuse Claims to the extent that the settlement includes Abuse Claims that are not channeled to the Settlement Trust.

### iii. The Continental Hallmarks

Returning to the *Continental* hallmarks, the question is whether the Scouting-Related Releases are fair and necessary to the reorganization? I conclude that they are. For all the reasons I have just stated, these nonconsensual releases are necessary to the reorganization both to confirm this Plan and to ensure that BSA's Scouting program continues. The nonconsensual releases underlie the Plan which is premised on the contributions of over $2.5 billion in cash to the Settlement Trust as well as insurance assets worth up to another $4 billion plus. The undisputed evidence is that without the Scouting-Related Releases, the Settling Insurers would not settle their liability. In that world, even if holders of Direct Abuse Claims were able to sue Local Councils and Chartered Organizations, the insurance proceeds may or may not be available. As I previously held, the BSA Abuse Policies and proceeds are property of the estate, and they will remain so even if the Scouting-Related Releases are not granted. Objectors do not explain how these assets could be unlocked even if judgments against Local Councils or Chartered Organizations are obtained. The Settling Insurer Settlements permit these assets to be accessed more quickly and definitively.

The Scouting-Related Releases are also necessary to bring Local Councils on board. The evidence is unrefuted that without releases for Local Councils and Chartered Organizations, BSA is likely to suffer a drop in membership, significantly affecting revenue

163

A00676

Case: 23-1664    Document: 62-1    Page: 701    Date Filed: 07/24/2023

and putting into serious question BSA's ability to continue as a national organization. BSA needs to resolve the Abuse litigation in order to move forward. While it may still need to play a role in post-confirmation Abuse litigation, this Plan, supported by the Scouting-Related Releases, minimizes BSA's involvement and permits it to focus on its mission.

I also find that the Scouting-Related Releases are fair. As to holders of Direct Abuse Claims, this is a 100% plan, or, as BSA, the TCC, the Coalition and the FCR prefer to say, the Plan provides a mechanism for payment of all or substantially all Direct Abuse Claims. Holders of Direct Abuse Claims are therefore being treated fairly for the releases they are granting. Moreover, the Plan provides for more timely assessment and payment of Direct Abuse Claims and provides for a more equal treatment across claimants who will be assessed consistently under the TDP. The Scouting-Related Releases are also consistent with the way that claimants sued and settled claims with BSA—as a group. Prepetition, claimants, including the Lujan Claimants and the D&V Claimants, treated BSA, Local Councils and the Chartered Organizations as one organization, each liable for the actions of the others and with BSA in ultimate control.

Further, Class 8 accepted this Plan by over 85%. While I understand objectors' strongly held view that they are better off individually if left to their own litigation, this is a mass tort case. There are 82,209 claimants whose views need to be considered, and as I said previously, in the context of this case, I consider 85% to be overwhelming acceptance. Without this Plan, litigation goes one of two ways. Claimants may race to courthouses across the country suing Local Councils and Chartered Organizations. While these entities have other assets, many if not most of these entities are nonprofit organizations whose own assets are subject to restrictions that further delay and complicate recoveries. Alternatively,

164

A00677