Nos. 23-1664, 23-1666, 23-1667, 23-1668, 23-1669, 23-1670, 23-1671, 23-1672
23-1673, 23-1674, 23-1675, 23-1676, 23-1677, 23-1678, 23-1780
(Consolidated)

# United States Court of Appeals
# for the Third Circuit

————————

IN RE: BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC

*Reorganized Debtors,*

NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH PA, ET AL.;
DUMAS & VAUGHN CLAIMANTS; LUJAN CLAIMANTS

V.

BOY SCOUTS OF AMERICA, *et al.,*

*Appellees.*

————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE (LEAD CASE NO. 22-CV-01237 (RGA))

————————

*AMICI CURIAE* BRIEF OF BOY SCOUT CLAIMANTS FLORIAN
GORSKI, THE ESTATE OF HARRY BABCOCK, DOUGLAS
KENNEDY, ROBERT ZILLOX, CRAIG MILLER, KRISTOFER
PYORRE, THEODORE W., AND FRANK S.
IN SUPPORT OF PLAN

————————

**Adam J. Tragone**
*Counsel of Record*
University of Pittsburgh School of Law
321 Barco Law Building
3900 Forbes Avenue
Pittsburgh, PA 15260
AJT180@pitt.edu
*Local Counsel for the Amici Curiae*

Christopher Hurley
Evan Smola
Hurley McKenna & Mertz, P.C.
20 S. Clark St. Ste. 2250
Chicago, IL 60603
churley@hurley-law.com
esmola@hurley-law.com
*Counsel for Amici Curiae Florian Gorski
and Janice Babcock*

Jordan K. Merson
Merson Law, PLLC
950 Third Avenue
18th Floor
New York, New York 10022
(212) 603-9100
jmerson@mersonlaw.com
*Counsel for Amici Curiae Doug Kennedy*

Paul Mones
Paul Mones, P.C.
13101 Washington Blvd.
Los Angeles, CA 90066
(310) 533-7418
paul@paulmones.com
*Counsel for Amici Curiae Robert Zillox
and Craig Miller*

Peter Janci
Crew Janci LLP
1200 NW Naito Parkway, Suite 500
Portland, OR 97209-2829
(503) 306-0224
peter@crewjanci.com
*Counsel for Amici Curiae Kristofer Pyorre*

Kenneth Rothweiler
Eisenberg, Rothweiler,
Winkler, Eisenberg & Jeck, P.C.
1634 Spruce Street
Philadelphia, PA 19103
(215) 546-6636
ken@erlegal.com
*Counsel for Amici Curiae Theodore W. and Frank S.*

**TABLE OF CONTENTS**

**INTEREST AND IDENTITY OF THE AMICI**..........................................................1

**ARGUMENT** ........................................................................................8

**DECLARATIONS**

    Florian Gorski ..............................................................................1

    Janice Babcock.............................................................................2

    Robert Zillox ...............................................................................3

    Craig Miller .................................................................................4

    Kristofer Pyorre...........................................................................5

    Christopher Hurley.......................................................................8

**INTEREST AND IDENTITY OF THE AMICI**

The Plan before this Court represents the last, best chance for tens of thousands of victims of sexual abuse to see justice in their lifetime. The amici expect that a tiny minority of victims – 144 or 0.2% of roughly 82,000 Claimants – will ask this Court to unwind a Plan that will finally put this sad chapter of victims' lives behind them. An unwinding of this Plan is not in the best interest of survivors and will only re-victimize the tens of thousands of men that have already relied upon this widely supported Plan.

Nearly four years ago, the Boy Scouts of America filed for bankruptcy. This filing led to tens of thousands of sexual abuse victims coming forward to tell their stories for the first time, knowing it was their final chance at gaining some measure of justice. Many men had concealed the dark secrets of their sexual abuse from their parents, spouses, and children for decades, only to share those secrets when this bankruptcy finally created a path to closure. This process required the victims to describe in detail their abuse, identify their abusers, and search attics, basements, and websites for evidence of that abuse. This process forced victims to relive some of the worst moments of their lives. Still, BSA abuse victims came forward.

Hard-fought negotiations resulted in a widely supported Plan. That Plan went effective on April 19, 2024. In reliance upon the Plan, victims subjected

themselves to yet another round of questions about their sexual abuse. The Trust

justifiably requested additional information, including more detail about the sexual

abuse experienced by the victims. Further, in circumstances in which documentary

evidence was not available to demonstrate a victim's participation in Scouting, the

Trust requested victims obtain third-party affidavits from friends and family

members. This often required victims to disclose their abuse to those they kept it

secret from.

As victims finally receive compensation and closure, a small handful of

alleged claimants will now ask this Court to unwind all the work done thus far.

They will likely ask that this court rely upon *Purdue* and reverse the orders entered

by the bankruptcy court and district court, sending thousands of victims back to the

drawing board.

This will prolong the suffering and delay the closure necessary for victims to

heal. Such a ruling will hurt the vast majority of victims who support the BSA's

Plan of Reorganization. It will harm the tens of thousands of victims who

justifiably relied upon the effectiveness of the Plan. And it will likely preclude

thousands of men from ever seeing justice: many victims are advanced in age and

in failing health. Many men will die before a resolution is reached.

The *amici*, described below, provide a small sample that details how the

unwinding of this victim-supported Plan harms victims. Each of the men described

2

below timely filed a Proof of Claim in the Boy Scout Bankruptcy. Each individual has relied upon the Plan, and each finds himself at one stage or another along the Trust claim process.

On November 7, 2023, Matthew McDermott sat for a detailed interview in order to complete the Questionnaire requested by the Settlement Trust. He relived his abuse, answered probing questions, and reflected on the long-lasting impact of his abuse upon his life. Two months later, on January 11, 2024, Mr. McDermott committed suicide in a motel room in Cedar Lake, Indiana. Mr. McDermott's twenty-three-year-old son is continuing with his claim, hoping that his father, even after passing, will see some level of justice.

When Florian Gorski was ten years old, one of his adult scout leaders performed oral sex on him on repeated occasions and digitally penetrated him on two occasions. Despite the horrors of his childhood, Mr. Gorski overcame his abuse and started a logistics company in Chicago.

Mr. Gorski, now 77, is dying. He has advanced skin cancer, lymphoma, scleroderma, and congestive heart failure. Mr. Gorski's physician recently told him that he has less than six months to live. In the final months of his life, Mr. Gorski gathered photographs from his time in Scouting and underwent an extensive interview to complete the Questionnaire required by the Trustee. He completed the Trust's implemented process and received an award from the Trust on February 1,

2024. Mr. Gorski relied on the award, executed a release and received his first round of compensation on February 14, 2024.

Since learning of his award, Mr. Gorski has spent some of his final days putting his affairs in order. Like hundreds if not thousands of other claimants, he will not survive the years of legal machinations caused by the unwinding of this Plan.

Harry Babcock timely filed a claim in 2020 but died of sepsis on May 10, 2022. Harry and his wife Janice were married for 54 years, and Janice never knew the full extent of Harry's sexual abuse. At the end of his life, Mr. Babcock finally disclosed everything that happened to him to his wife of over five decades.

Mr. Babcock's Scoutmaster and Assistant Scoutmaster took turns molesting him about a dozen times over two summers. His Assistant Scoutmaster would fondle Mr. Babock and his friend while on his boat off the coast of Long Island. Mr. Babcock's Scoutmaster molested him late at night when Mr. Babcock was in his tent.

When Mr. Babcock finally told his wife about the abuse, he begged Mrs. Babcock to follow through with his Claim. Mrs. Babcock honored those wishes and relied upon the Boy Scout Bankruptcy Plan by hiring probate counsel to continue the Claim.

Doug Kennedy's sexual abuse included forced oral copulation and sodomy. He complained to others that his abuser was following him around, looking at him in the shower, and grabbing boys' genitals while in the pool. Nothing was done to address this abuse, but he did his best to move on in his life. He earned his Ph.D. and became a college professor.

Dr. Kennedy co-chaired the Tort Claimant's Committee throughout the Boy Scouts bankruptcy and testified in support of the Plan at the confirmation hearing before the Bankruptcy Court. In his capacity as Committee co-chair, Dr. Kennedy routinely communicated and still communicates with fellow child sexual abuse survivors about both the bankruptcy and each individual's experience. Since the Boy Scouts declared bankruptcy, over a dozen child sexual abuse survivors in this bankruptcy have indicated to Dr. Kennedy that they want to end their lives. When confronted with further delay, as the handful of Appellant-victims seek, numerous survivors of child sexual abuse in scouting have explicitly told Dr. Kennedy that they do not know how much more they can take if this process drags out any longer. The legal delays exacerbate the severe trauma endured by the victim claimants.

When Robert Zillox was a little boy, his Cub Scout leader sexually abused him in western New York. For decades, Mr. Zillox buried the memories of that

abuse, hoping to move on with his life. The Boy Scout bankruptcy left Mr. Zillox with a choice: seek justice by filing a claim or continue to suppress the memories of his abuse. Mr. Zillox chose to file a claim, but doing so has re-introduced the feelings of anger and shame that he hoped were behind him. Mr. Zillox has done everything the Boy Scout Settlement Trust has asked of him. Mr. Zillox has submitted documents supportive of his claim and completed the required Questionnaire. Doing so was painful but necessary, and now Mr. Zillox awaits a decision from the Trust. Delay only leaves the wounds of Mr. Zillox's past open when now is the time for closure.

When Craig Miller was 10, his Scoutmaster sexually molested him at a Scout camp in the Santa Monica Mountains. Mr. Miller has lived with the memory of his abuse for decades. Wanting to serve others led him to a life in law enforcement, and Mr. Miller has been a Los Angeles County Deputy Sheriff for 30 years. Mr. Miller wants a resolution that will relieve him of the immense guilt, shame, and anxiety that he has held on to for over 50 years. Continued delay in reaching such a resolution is not in the best interest of Mr. Miller or the interest of the vast majority of sexual abuse survivors.

Scoutmaster Douglas Young abused Kristofer Pyorre and nine other boys, including Mr. Pyorre's brother, between 2014 and 2017. The abuse led to Young's criminal conviction for sexual abuse of minors. Mr. Pyorre relied upon the

confirmed and effective Plan, elected to pursue an Independent Review of his claim within the Trust, and paid $10,000.00 in administrative fees. Years have passed since Mr. Pyorre came forward, and continued delay only exacerbates the injuries suffered at the hands of Scoutmaster Young.

Theodore W.'s scout leader abused him between 1975 and 1980. Theodore experienced anal penetration and endured forced oral copulation on multiple occasions. This abuse changed him forever. For forty-plus years, Theodore has been afraid of the dark and suffers from nightmares and insomnia. Theodore tried to commit suicide by firearm and was hospitalized for suicidal ideation. His suicidal ideation and clinical depression are ongoing. Through the Questionnaire, Theodore told the Trustee about his abuse and lifetime of suffering. The process dredged up terrible memories, and Theodore now has suicidal thoughts almost daily. A reversal of the district court and bankruptcy court order will only delay any possible recovery for Theodore. Theodore fears that if the implementation of the bankruptcy is delayed, he will not be able to move on, and his suicidal thoughts will continue.

Frank S. is 89 years old. Between 1946 and 1948, Frank's Scout leader forced him to perform oral sex on him in the basement of St. Patrick's Church after scout meetings. Frank's friends learned of the abuse and teased Frank. Frank's abuse caused anger, bitterness, anxiety, and depression in Frank over the last 75

years. The emotional toll of the abuse estranged Frank from his family and ended his marriage. Given his advanced age and health conditions, it is doubtful that Frank will live long enough to see the claim through, should this Court unwind the Plan.

## ARGUMENT

Victims are dying, and their rights are expiring with them. Victims relied upon the orders of lower courts and the precedents of various courts nationwide in voting favorably on the Boy Scouts of America bankruptcy Plan. That Plan is now being implemented, victims are steps away from closure, and only 144 out of 82,000 victims seek reversal from this Court.

Christopher Hurley and his firm Hurley McKenna & Mertz (HMM) represent approximately 4,000 claimants who timely filed proofs of claim in this bankruptcy. Since the Effective Date and release of a Claims Questionnaire by the Trustee, most of those 4,000 individuals sat for detailed interviews about some of the most sensitive secrets they kept for decades. Of the thousands of men represented by HMM that have given interviews and submitted their Questionnaire, 451 have received their awards. The finality and closure associated with receiving an award – an acknowledgement of the horrors experienced as a youth – is virtually always cathartic and a step forward in the healing process.

Unfortunately, though, many of HMM's clients did not have the opportunity to see their claims through. HMM has identified 197 individuals who died between timely filing a Proof of Claim Form by the November 2020 deadline and completing a Trust Questionnaire. Given that HMM represents roughly 5% of the total claimants, the number of deceased victims probably approaches 4,000 or more. More will die without obtaining justice if this Court unwinds the Plan.

Often, victims hiring HMM and other law firms never disclose to their families the existence of their Claim because doing so would require disclosing their abuse. When those individuals die, their deaths pose a myriad of ethical questions, including whether attorneys should inform surviving family members of abuse when the Decedent never did. Unlike most traditional cases, when a victim of sexual abuse in Scouting dies, their claim often dies with them.

The firms seeking reversal represent about 144 victims. HMM alone represents 197 victims *who have died* while the BSA Bankruptcy was pending. The equities rest with delivering compensation and finality before more victims die. It is time for victims to begin the healing process. This Court should not allow attorneys representing a small subset of aggrieved victims to derail the implementation of a Plan that delivers closure to the overwhelming majority of victims supporting the Plan.

/s/ Adam J. Tragone

**Adam J. Tragone**
  *Counsel of Record*

University of Pittsburgh School of Law.
321 Barco Law Building
3900 Forbes Avenue
Pittsburg, PA 15260
AJT180@pitt.edu
*Local Counsel for the Amici Curiae*

Christopher Hurley
Evan Smola
Hurley McKenna & Mertz, P.C.
20 S. Clark St. Ste. 2250
Chicago, IL 60603
churley@hurley-law.com
esmola@hurley-law.com
*Counsel for Amici Curiae Florian
Gorski and Janice Babcock*

Jordan K. Merson
Merson Law, PLLC
950 Third Avenue
18th Floor
New York, New York 10022
(212) 603-9100
jmerson@mersonlaw.com
*Counsel for Amici Curiae Doug Kennedy*

Paul Mones
Paul Mones, P.C.
13101 Washington Blvd.
Los Angeles, CA 90066
(310) 533-7418

paul@paulmones.com
*Counsel for Amici Curiae Robert Zillox*
*and Craig Miller*

Peter Janci
Crew Janci LLP
1200 NW Naito Parkway, Suite 500
Portland, OR 97209-2829
(503) 306-0224
peter@crewjanci.com
*Counsel for Amici Curiae Kristofer Pyorre*

Kenneth Rothweiler
Eisenberg, Rothweiler,
Winkler, Eisenberg & Jeck, P.C.
1634 Spruce Street
Philadelphia, PA 19103
(215) 546-6636
ken@erlegal.com
*Counsel for Amici Curiae Theodore W.*
*Frank S.*

# CERTIFICATE OF COMPLIANCE

I hereby certify this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32. This brief contains 2085 words, excluding the items set forth in Federal Rule of Appellate Procedure 32(f).

I further certify that this brief complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5) and Federal Rule of Appellate Procedure 32(a)(6). A proportionally spaced typeface was used, as follows:

Name of typeface: Times New Roman
Point size: 14
Line spacing: Double

This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of the electronic brief is identical to the text of paper copies and because Microsoft Defender was run on the file containing the electronic version of this brief and no viruses were detected.

Dated:     August 7, 2024          /s/ Adam J. Tragone

**Adam J. Tragone**

*Counsel of Record*

University of Pittsburgh School of Law.
321 Barco Law Building
3900 Forbes Avenue
Pittsburg, PA 15260
AJT180@pitt.edu
*Local Counsel for the Amici Curiae*

## CERTIFICATE OF SERVICE

I, Adam J. Tragone, hereby certify that on August 7, 2024, I caused a copy of the foregoing *AMICI CURIAE* **BRIEF OF BOY SCOUT CLAIMANTS FLORIAN GORSKI, THE ESTATE OF HARRY BABCOCK, DOUGLAS KENNEDY, ROBERT ZILLOX, CRAIG MILLER, KRISTOFER PYORRE, THEODORE W., AND FRANK S. IN SUPPORT OF PLAN** to be served on all registered users of the Court's Case Management Electronic Case File ("CM/ECF") in this case via CM/ECF.

Dated:    August 7, 2024        /s/ Adam J. Tragone

**Adam J. Tragone**

*Counsel of Record*

University of Pittsburgh School of Law
321 Barco Law Building
3900 Forbes Avenue
Pittsburgh, PA 15260
AJT180@pitt.edu
*Local Counsel for the Amici Curiae*

## <u>DECLARATION OF FLORIAN GORSKI</u>

1. I am 77 years and reside in Mokena, Illinois. My physician has diagnosed me with skin cancer, lymphoma, scleroderma and congestive heart failure, along with other health issues.

2. My physician has certified under penalties of perjury that there is a "substantial medical doubt" that I will survive beyond six months.

3. I was sexually abused by an adult leader in Scouting. My abuse included oral sex and two instances of digital penetration.

4. Despite the difficulties caused by my abuse, I was able to start a logistics company on the southside of Chicago.

5. Over the last several months, I have taken a number of steps towards finalizing my Boy Scout Trust submission, including: a) undergoing a detailed interview about my abuse; b) finding a submitting photographs of myself in scouting; c) answering the follow-up questions of my attorney; d) signing under oath my Claim Questionnaire; e) reviewing my award with my attorney; f) executing a Settlement Release with the Trust.

6. Once I received my award, I consulted with my accountant about the award and how to plan my final affairs.

7. Given my age and health conditions, I do not want any further delays in these proceedings. I and other victims have suffered enough.

8. I declare under penalties of perjury of the State of Illinois, that the foregoing is true and correct to the best of my knowledge and belief.

/s/ Florian Gorski           
Florian Gorski

## <u>DECLARATION OF JANICE BABCOCK</u>

1. I am 77 years old and reside in Raleigh, North Carolina.

2. My husband of 54 years, Harry Babcock, died of sepsis on May 10, 2022.

3. In September 2020, Harry timely filed a Proof of Claim in the Boy Scouts Bankruptcy.

4. For decades, I did not know the extent of the abuse that Harry suffered during his childhood.

5. Eventually, at the very end of Harry's life, he finally disclosed the extent of his abuse.

6. He disclosed his abuse, at least in part, because he wanted me to follow through with his claim and see it through to the end. He begged me to do so.

7. I understand that, in order to continue with Harry's claim, I need to be appointed as the Administrator of his Estate. I hired probate counsel to assist me and recently received copies of the documents appointing me Administrator.

8. I know Harry would have wanted to see justice during his lifetime and, unfortunately, he did not. I do not believe that further delay is good for me or good for the many victims of sexual abuse that filed claims in this case.

9. I declare under penalties of perjury of the State of North Carolina, that the foregoing is true and correct to the best of my knowledge and belief.


/s/ Janice Babcock
Janice Babcock

## <u>DECLARATION OF ROBERT ZILLIOX</u>

1. My name is Robert Zillox and I am 58 years old.

2. I was sexually abused by my Cub Scout leader in western New York between 1974 and 1975 when I was just a little boy.

3. The fact that the abuse occurred so many years ago has never disappeared but was suppressed and buried in my attempt to move on with my life.

4. The impact the abuse had back at the time it occurred has not been lost. I have had to undergo counseling to deal with serious episodes of anxiety, depression, and the varied symptoms of post-traumatic stress disorder once again.

5. My decision to file a bankruptcy claim and re-visit the memories and the effects of such abuse re-introduced feelings of anger, shame, which I thought I had resolved and from which I had moved on.

6. To stay the bankruptcy proceedings and to delay outcomes of victim/survivors would further delay and deny the closure needed to move on with my life and the lives mentally and emotionally of so many who have been left with the scars of the sexual abuse at issue.

7. Therefore, I respectfully ask that the court deny this request for a stay in the bankruptcy proceedings.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.

_____

Robert Zilliox
*BSA Claimant and Abuse Survivor*

Doc ID: bf909a3fd7646833b2a6d8f4cbffee122b2459d9

## <u>DECLARATION OF CRAIG MILLER</u>

1. My name is Craig Miller, and I am 64 years old and I am a Los Angeles County Deputy Sheriff and have been involved in law enforcement for 30 years.

2. In or around 1969 when I was 10, I was sexually abused by my Boy Scout leader in my hometown of Pacific Palisades, California.

3. I can recall the abuse inflicted upon me like it was yesterday.

4. The abuse occurred at a local Scout camp located in the Santa Monica mountains.

5. This horrific memory has been with me my entire life and has caused me irreparable harm, extreme mental anguish, feelings of shame, guild, and anxiety.

6. As of this date, there have been thousands of sexual abuse claims filed against the Boy Scouts of America.

7. I and I know the overwhelming majority of my fellow scout claimants want to see the BSA bankruptcy proceed along its current path and not be stalled as I have waited for justice now for four years since the BSA filed for bankruptcy.

8. I respectfully ask that the court deny this request for a stay in the bankruptcy proceedings.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.

*Craig W Miller*

_____

Craig Miller
*BSA Claimant and Abuse Survivor*

Doc ID: e71b46d06d777c2a1fde8da2aa8195eac25b2f67

# DECLARATION OF KRISTOFER PYORRE

I, Kristofer Pyorre, hereby declare as follows:

1. I was born in 2002. I am currently 21 years old.

2. Between approximately 2014 and 2017, when I was approximately 12 to 14 years old, I was a Boy Scouts in Troop 420 in Lebanon, Oregon.

3. My Scoutmaster in Troop 420 was Douglas Young, Jr.

4. Throughout my participation in scouting, I was repeatedly, sadistically sexually abused by Scoutmaster Douglas Young. I estimate that I was abused on hundreds of separate occasions, which included the most invasive types of sexual abuse contemplated under the Trust Distribution Procedures, including sadomasochism and my perpetrator taking photographs and videos of the abuse.

5. In January of 2018, Douglas Young was criminally convicted for his sexual abuse of me and nine (9) other boy scouts from our troop in the criminal case of *State of Oregon vs Douglas James Young, Jr.,* Linn County Circuit Court (OR) Case No. 17CR16884. One of the other boy scouts for which Douglas Young was convicted of sexual abuse was my younger brother. It is my understanding that Young was ultimately sentenced to more than 23 years in prison.

Doc ID: c92dd81e99424700347eb99690c6b95599f958fb

6. In May of 2018, a civil lawsuit was filed on my behalf against the Boy Scouts of America and the Cascade Pacific Council of the Boy Scouts of America in state court in Oregon. That case is: *Andrew Dow, Brian Doe, and Carl Doe v. Boy Scouts of America and Cascade Pacific Council*, Multnomah County Circuit Court (OR) Case No. 18CV22349. A date-certain civil trial was set in my case for June 1, 2020.

7. After my case had been pending for nearly two full years and about three months before we were set to begin trial in my case, the Boy Scouts filed for bankruptcy and my case was removed to federal court and stayed.

8. I have now been involved in litigation and awaiting resolution of my claims against the Boy Scouts of America and Cascade Pacific Counsel for nearly six years.

9. The BSA Settlement Trust was recently paid $10,000 to facilitate an Independent Review of my case.

10. I have been eager to get my case resolved for many years.

11. Throughout the nearly six years that this litigation has been pending, I have continued to struggle with significant mental health symptoms as a result of the sexual abuse I suffered in Scouting. These symptoms cause challenges and impairments in many areas of my life. Without the compensation that is owed to me, I am left to shoulder these burdens largely on my own. I am

Doc ID: c92dd81e99424700347eb99690c6b95599f958fb

very frustrated to learn that this process may be further delayed by a stay of the Boy Scout's bankruptcy plan.

12. Every additional delay in the resolution of my claims causes me additional stress and frustration and exacerbates the injuries I have suffered as a result of sexual abuse in scouting.

I hereby declare the above statements are true and correct to the best of my knowledge and belief, and I understand that they are made for use as evidence in court and are subject to penalty for perjury.

Dates this 14th day of February 2024.

_____

Kristofer Pyorre

Doc ID: c92dd81e99424700347eb99690c6b95599f958fb

## <u>DECLARATION OF CHRISTOPHER HURLEY</u>

1. I have been admitted to practice law in the State of Illinois since 1984.

2. I began representing sexual abuse victims in litigation over 20 years ago.

3. I currently represent approximately 4,000 sexual abuse victims who timely filed claims in the Boy Scouts of America bankruptcy. Our firm represents approximately 5% of all claimants.

4. Since the plan's effective date and the release of the trustee's questionnaire, attorneys from my firm, alongside a team of paralegals and social workers, conducted interviews of thousands of survivors of sexual abuse. As of today's date, the overwhelming majority of our clients have undergone a detailed interview about some of the most sensitive topics imaginable: their sexual abuse and the ramifications of that abuse. Those individuals have submitted a Questionnaire to the Trustee. Of those that have submitted a Questionnaire, 451 have already received an award.

5. Our clients that have received an award from the Trustee often characterize receipt of the award as a final step towards closure.

6. Further, most of our clients have had to search for memorabilia or other evidence of their time in Scouting in order to prove their participation. This can include obtaining signed affidavits from friends and family, a traumatizing event because many clients had never disclosed their abuse to their family.  This process has served as a new injury for many of our clients and serves as a painful reminder of their abuse.

7. On numerous occasions over the last several years we have had clients call and threaten suicide. This has occurred with such frequency that we have had to train staff on how to

respond. We maintain a list of suicide helplines and mental health resources that we routinely refer clients to.

8. Many of our clients are elderly, and we continually learn that one or another has died. Sometimes the victim's family or friends inform us of the death when we reached out to try to set up interviews with the client.  On other occasions, when we lost communication with a client, we confirm the claimant's death through database or online searches. To date, our firm has identified 197 clients who have died between the time of filing their Proof of Claim and today's date.

9. The deaths of claimants in sexual abuse cases pose difficult questions for lawyers. Sometimes the family knows of the claim and therefore, of the abuse. Often though, Claimants have hidden their claim from their family because such secrecy is necessary to avoid disclosure of their abuse. We are then confronted with ethical questions about disclosure after their death of an individual's sexual abuse.

10. Delay will inevitably result in additional victims dying before receiving compensation and closure. And for those who survive, additional delay and uncertainty will cause a new injury for the vast majority of our clients.

11. I declare under penalties of perjury of the State of Illinois, that the foregoing is true and correct to the best of my knowledge and belief.

/s/ Christopher Hurley

Christopher Hurley
Hurley McKenna & Mertz, P.C.
20 S. Clark St. Ste. 2250
Chicago, IL 60603
*Counsel for Amici Curiae Florian Gorski
and Janice Babcock*