Case No. 23-1664

# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

**BOY SCOUTS OF AMERICA and DELAWARE BSA, LLC**

**Debtors.**

**LUJAN CLAIMANTS**

**Appellants,**

**v.**

**BOY SCOUTS OF AMERICA, et al**

**Appellees.**

**Case No. 23-1664**

_____

Appeal from the United States
District Court, District of Delaware, Case No. 22-cv-01237-RGA[1]

_____

## LUJAN CLAIMANTS' PETITION FOR REHEARING EN BANC

_____

LOIZIDES, P.A.
Christopher D. Loizides
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 654-0248

LUJAN & WOLFF LLP
Delia Lujan Wolff
238 Archbishop Flores St., Suite 300
Hagatna, Guam 96910
Telephone: (671) 477-8064/5

Attorneys for Appellants Lujan Claimants

---

[1]    Case number 22-cv-01237-RGA is a lead case consolidated with District Court cases 22-cv-01237, 22-cv-01238, 22-cv-01239, 22-cv-01240, 22-cv-01241, 22-cv-01242, 22-cv-01243, 22-cv-01244, 22-cv-01245, 22-cv-01246, 22-cv-01247, 22-cv-01249, 22-cv-01250, 22-cv-01251, 22-cv-01252, 22-cv-01258, and 22-cv-01263. Lujan Claimants' appeal is docketed in the District Court at 22-cv-01258-RGA.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES                                                          ii

RULE 35.1 STATEMENT OF COUNSEL                                               1

INTRODUCTION                                                                 3

BACKGROUND                                                                   4

ARGUMENT                                                                     7

   I.  The majority's decision to apply §363(m) to plan sales
      conflicts with Third Circuit precedent and places this Court
      in the minority among circuits considering the question.        7

   A.  Expanding §363(m) to apply to plan sales conflicts with this
      Court's prior decisions.                                        7

   B.  By applying §363(m) to the Confirmation Order, the majority
      deepens a circuit split and places this Court in the minority.  9

   II.  Dismissal of the appeal conflicts with the Supreme Court's
      decision in MOAC Mall.                                          11

   III. En banc review is necessary to address whether §363 can be
      used to allow into a reorganization plan and protect from
      appellate review unlawful provisions including nonconsensual
      third-party releases invalidated in Purdue.                     13

   IV. The majority's finding of related-to jurisdiction over
      claims between nondebtors conflicts with Third Circuit
      precedent and is unsupported by the record.                     15

JOINDER                                                                      18

CONCLUSION                                                                   18

COMBINED CERTIFICATIONS                                                      20

EXHIBIT 1:  PANEL OPINION

EXHIBIT 2:  JUDGMENT

# <u>TABLE OF AUTHORITIES</u>

**Cases**

<u>Cinicola v. Scharffenberger,</u> 248 F.3d 110 (3d Cir. 2001) .............................. 1,8,13

<u>Harrington v. Purdue Pharma L.P.,</u> 603 U.S. 204 (2024)............................ 1,3,13,15

<u>In re Bardos,</u> No. CC-13-1316-PaKuBl, 2014 WL 3703923
  (B.A.P. 9th Cir. July 25, 2014)...........................................................................9,10

<u>In re Combustion Eng'g, Inc.,</u> 391 F.3d 190 (3d Cir. 2005) ...................... 1,3,15,16

<u>In re Energy Future Holdings,</u> 949 F.3d 806 (3d Cir. 2020) ..................................1,8

<u>In re Fieldwood Energy LLC,</u> 93 F.4th 817 (5th Cir. 2024) ...................................10

<u>In re ICL Holding Co.,</u> 802 F.3d 547 (3d Cir. 2015)........................................ 1,7,14

<u>In re Joshua Slocum Ltd.,</u> 922 F.2d 1081 (3d Cir. 1990) .........................................9

<u>In re Made in Detroit, Inc.,</u> 414 F.3d 576 (6th Cir. 2005) .....................................10

<u>In re One2One Commc'ns,</u> LLC, 805 F.3d 428 (3d Cir. 2015) ..............................12

<u>In re PWS Holding Corp.,</u> 228 F.3d 224 (3d Cir. 2000)........................................1,7

<u>In re Texas Extrusion Corp.,</u> 844 F.2d 1142 (5th Cir. 1988)..................................10

<u>Miami Ctr. Ltd. P'ship v. Bank of New York,</u> 838 F.2d 1547 (11th Cir. 1988).....10

<u>MOAC Mall Holdings LLC v. Transform Holdco LLC,</u>
  598 U.S. 288 (2023) ............................................................................... 1,3,11,12

<u>Pacor, Inc. v. Higgins,</u> 743 F.2d 984 (3d Cir 1984) ........................................ 1,3,15

**Statutes**

11 U.S.C. § 363 ................................................................. 3,6,7,8,9,12,13,14

11 U.S.C. § 363(b) ............................................................... 7,8,10,11,13

11 U.S.C. § 363(c) ............................................................... 7,8,10,11,13

11 U.S.C. § 363(l) ...............................................................................7

11 U.S.C. § 363(m) ..............................................3,7,8,9,10,11,12,13,14,

11 U.S.C. § 363(o) ...............................................................................7

11 U.S.C. § 364(e) ...........................................................................9,12

11 U.S.C. § 365 ...................................................................................9

11 U.S.C. § 1123(a)(5)(B) ....................................................................9

**L.A.R. 35.1 STATEMENT OF COUNSEL**

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to decisions of the United States Court of Appeals for the Third Circuit and the Supreme Court of the United States, and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court, *i.e.*, the panel's decision is contrary to the decisions of this Court in In re PWS Holding Corp., 228 F.3d 224 (3d Cir. 2000), In re ICL Holding Co., 802 F.3d 547 (3d Cir. 2015), In re Energy Future Holdings, 949 F.3d 806 (3d Cir. 2020), Cinicola v. Scharffenberger, 248 F.3d 110 (3d Cir. 2001), In re Combustion Eng'g, Inc., 391 F.3d 190 (3d Cir. 2004), and Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir 1984), and the Supreme Court in MOAC Mall Holdings LLC v. Transform Holdco LLC, 598 U.S. 288 (2023), and that this appeal involves a question of exceptional importance, *i.e.*, whether 11 U.S.C. §363 can be used as a backdoor to allow into a plan and shield from appellate scrutiny nonconsensual third-party releases which the Supreme Court found unlawful in Harrington v. Purdue Pharma L.P., 603 U.S. 204 (2024).

*/s/ Christopher D. Loizides*
Christopher D. Loizides
Loizides, P.A.
1225 North King Street, Suite 800
Wilmington, DE 19801
Phone: 302.654.0248
Email: loizides@loizides.com

and

LUJAN & WOLFF LLP

*/s/ Delia Lujan Wolff*
Delia Lujan Wolff
Suite 300, DNA Bldg.
238 Archbishop Flores St.
Hagatna, Guam 96910
Phone: (671) 477-8064/5
Facsimile: (671) 477-5297
Email:  dslwolff@lawguam.com

*Attorneys for Lujan Claimants*

## **INTRODUCTION**

The majority's decision to dismiss this appeal of plan confirmation as statutorily moot "stretches" 11 U.S.C. §363(m) in contravention of that statute's clear indication that it does not apply to plan sales, thereby conflicting with this Court's earlier decisions recognizing the difference between §363 sales and plan sales and deepening a circuit split while placing this Court in the minority. In doing so, the majority preserves and bars review of plan provisions that the Supreme Court in Harrington v. Purdue Pharma L.P., 603 U.S. 204 (2024), found unlawful less than one year ago—and, as the concurrence presciently observes, opens a wide door to further misuse of §363(m). Dismissal of the appeal also conflicts with the Supreme Court's decision in MOAC Mall Holdings LLC v. Transform Holdco LLC, 598 U.S. 288 (2023), holding that §363(m) takes as a given that courts will exercise jurisdiction over covered authorizations and that §363(m) only constrains the effect of successful reversal or modification of covered authorizations.

The majority's finding of related-to jurisdiction based independently on shared insurance and automatic contractual indemnification radically broadens bankruptcy courts' jurisdiction over third-party claims against nondebtors, on the heels of Purdue's narrowing bankruptcy courts' power over these claims. Ignoring both the holding in In re Combustion Eng'g, Inc., 391 F.3d 190 (3d Cir. 2004), and this Court' seminal test in Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir 1984), the

3

majority finds related-to jurisdiction despite a lack of evidence in the record to support either BSA's shared insurance with all nondebtors at all relevant times and BSA's automatic indemnification liability as to nondebtors.[1]

## **BACKGROUND**

Lujan Claimants are 75 survivors of child sexual abuse in Guam who hold a unique position in this case in the strength of their claims, the extent to which those claims were vetted, and available third-party sources of recovery. Most were boy scouts. All were abused in scouting, the earliest in 1955 and the latest in 1981. After Guam eliminated its statute of limitations for past child sexual abuse in 2016, all Lujan Claimants, except two, filed lawsuits against the Boy Scouts of America ("BSA") for their abuse. In fact, more than 25% of the 275 lawsuits pending against BSA at the time BSA filed for bankruptcy in 2020 are Lujan Claimants' lawsuits.[2] Prepetition, at least 70 Lujan Claimants were deposed by BSA and engaged in extensive discovery. All Lujan Claimants have direct action claims against insurers and independent, non-derivative claims against other nondebtors, including local councils, chartered organizations and non-chartered Roman Catholic Entities. Lujan Claimants each value their claims against nondebtors to be worth millions of dollars

---

[1] This petition focuses on issues where the majority opinion conflicts with Third Circuit precedent. Lujan Claimants do not waive but reserve any and all other arguments in any petition for writ of certiorari.

[2] This is unlike more than 82,000 other abuse Survivors who filed proofs of claim in BSA's bankruptcy case and had no prepetition lawsuits pending against BSA.

4

but, under the plan, will receive no more than a tiny fraction of that. Their claims against nondebtors were stolen for the benefit of the Settling Insurers and other nondebtors who paid nothing.

Over the objections of Lujan Claimants and others, the Bankruptcy Court confirmed a plan of reorganization on September 8, 2022, that provides for the nonconsensual release and injunction of third-party claims against nondebtors, unprecedented in breadth. In addition to BSA, more than 250 local councils, over 100,000 chartered organizations, an unknown number of nonchartered-Roman Catholic Entities, and numerous insurers are discharged of liability for claims of Survivors alleging child sexual abuse in scouting. Lujan Claimants appealed the nonconsensual third-party releases and injunctions[3] in BSA's plan, among other plan errors.

Included as part of the plan are insurance policy buybacks which involve the denominated "sale" by BSA of its liability insurance policies as well as local council liability policies in which BSA has no interest. As the "sale" or cancellation of an insurance policy cannot relieve the insurer of liability for asserted claims, the "sale" of the policies did not do the Settling Insurers much good. What they were really after was not estate assets (i.e., BSA policies)—what §363(m) protects on its face— but the Survivors' claims against them—claims that are indisputably not estate

---

[3] "Releases" refers both to the nonconsensual third-party releases and injunctions.

5

property.  Other nondebtors such as local councils, chartered organizations, and non-chartered Roman Catholic Entities (who are not insured under any of the purchased policies) also benefit from the releases.  The "sales" were approved by the Bankruptcy Court in a single order, i.e., the order confirming the plan ("the Confirmation Order").  No separate motion was ever filed under § 363.

Lujan Claimants timely appealed to the District Court, which affirmed.  Lujan Claimants repeatedly moved for stays of the Confirmation Order, which were denied except for a 6-day stay by the Supreme Court.  After this Court denied stay, the plan purportedly went into effect on April 19, 2023.  Several months later, BSA and Settling Insurers filed motions to dismiss the appeals based on equitable and statutory mootness.  A three-judge panel of this Court refused to grant dismissal on either basis, stating that "[t]he Appellees' arguments leave us unpersuaded at this preliminary stage that equitable or statutory mootness apply in the particular circumstances of this case."  ECF 163 at 3.  No material changes have occurred since then to warrant the majority's dismissal for statutory mootness.  The only significant event occurred at the Supreme Court six months later.

On June 27, 2024, the Supreme Court issued its landmark opinion in Purdue, holding that the Bankruptcy Code does not authorize a bankruptcy court to grant nonconsensual third-party releases—and presumably putting an end to this abusive practice.  Yet, less than one year later, the majority issued a decision dismissing this

appeal as statutorily moot and preserving the same nonconsensual third-party releases invalidated in <u>Purdue</u>.  A Judgment was filed May 13, 2025.

## **ARGUMENT**

I.    **The majority's decision to apply §363(m) to plan sales conflicts with Third Circuit precedent and places this Court in the minority among circuits considering the question.**

### A. Expanding §363(m) to apply to plan sales conflicts with this Court's prior decisions.

This Court has long recognized that §363 sales are outside a plan of reorganization.  <u>In re PWS Holding Corp.</u>, 228 F.3d 224, 229-30 (3d Cir. 2000) ("§ 363 … governs the sale of assets outside of the reorganization plan"); <u>In re ICL Holding Co.</u>, 802 F.3d 547, 549 (3d Cir. 2015) (§363 sale is "outside a plan of reorganization").  This is consistent with the text of §363, which Judge Rendell emphasized in her concurrence "distinguishes between sales under § 363(b) and (c) and sales under a plan," (Concurring Op. at 4), and provides "clear indication that [§363(m)] does not apply to sales in reorganization plans," (<u>id.</u> at 2.).  The concurrence explained:

> Subsection § 363(l) applies to the "use[,] sale, or lease of property" that occurs "under subsection (b) or (c) of [§363] or a plan under chapter 11 … of this title."  By contrast, §363(m) applies only to a sale or lease authorized "under subsection (b) or (c) of [§ 363]."  Similarly, § 363(o) applies to "a sale under [§363]," and has been interpreted (albeit, in decisions that do not bind this Court) to apply to § 363 sales only, not plan sales.  Tellingly, the drafters of subsection (o) originally considered language that would have made the provision applicable to a "sale by a trustee or transfer under a plan of reorganization."  In the

7

end, however, Congress adopted narrower language, such that the provision applies to only a "sale under this section," and not a "transfer under a plan of reorganization." Similarly, the drafters of § 363(m) could have considered (and adopted) language that brought plan sales within its ambit. Instead, § 363(m) narrowly applies to § 363(b) and (c) sales, not plan sales. As the majority notes, "the inclusion of language in one section of a statute, but omission of it in another, generally 'convey[s] a difference in meaning[.]'"

(Concurring Op. at 4-5 (internal citations omitted).) The majority's decision to treat the insurance policy buybacks—sales entirely within BSA's plan—as §363 sales renders Congress' careful efforts to distinguish between these transactions meaningless and should not stand.

The majority's reliance on <u>In re Energy Future Holdings ("EFH")</u>, 949 F.3d 806 (3d Cir. 2020), and <u>Cinicola v. Scharffenberger</u>, 248 F.3d 110 (3d Cir. 2001), to apply §363(m) to the Confirmation Order is misplaced because those cases involved the bankruptcy court first issuing an order preliminarily approving a §363 sale and then a second order authorizing the sale. <u>EFH</u>, 949 F.3d at 819-20; <u>Cinicola</u>, 248 F.3d at 122.[4] In those cases, §363(m) applied to the appeal of the second order because the second order was "inextricably intertwined" with the first order approving the sale and the bankruptcy court clearly intended the second order to operate in conjunction with the first order. <u>EFH</u>, 949 F.3d at 819-20; <u>Cinicola</u>, 248

---

[4] This Court in <u>EFH</u> placed significant reliance on its prior holding in <u>Cinicola</u>. But it may be noted that <u>Cinicola</u> itself involved two separate orders, neither of which were confirmation orders. In any case, there was only one order here—a confirmation order, not a sale order.

8

F.3d at 125-26. Here, there is no separate pre-confirmation §363 order first approving the policy buybacks; the sales were approved only by the Confirmation Order. Therefore, the Confirmation Order is not inextricably intertwined with any §363 sale order and the Bankruptcy Court did not clearly intend the Confirmation Order to operate in conjunction with any other sale order, which does not exist. Those cases do not support the majority's decision.

Importantly, this Court previously recognized that only two provisions of the Bankruptcy Code—11 U.S.C. §§363(m) and 364(e)—specifically require a stay pending appeal. In re Joshua Slocum Ltd., 922 F.2d 1081, 1085 (3d Cir. 1990). Acknowledging that §363(m) does not apply to assignments of leases under 11 U.S.C. §365, this Court "decline[d] to interpret the mootness principles in such a way that would, in effect, create a third situation where parties are required to seek a stay, i.e., the assignment of leases under §365." Id. By extending §363(m)'s protection to plan confirmation, the majority departs from precedent and does exactly what this Court earlier declined to do.

### B. By applying §363(m) to the Confirmation Order, the majority deepens a circuit split and places this Court in the minority.

Most circuits considering the question have held or strongly suggested that §363(m) does not apply to plan sales. The Ninth Circuit has held that §363(m) did not apply to a sale under a plan because such sales "are not subject to §363, but are authorized by [11 U.S.C. §1123(a)(5)(B)]." In re Bardos, No. CC-13-1316-PaKuBl,

9

2014 WL 3703923, at *9 (B.A.P. 9th Cir. July 25, 2014). The Eleventh Circuit has held that "§ 363(m) … applies only to the sale of the debtor's property by the trustee pursuant to §363(b) or (c). Section 363(m) does not apply where the debtor's assets have been sold . . . pursuant to a plan of liquidation." Miami Ctr. Ltd. P'ship v. Bank of New York, 838 F.2d 1547, 1553 (11th Cir. 1988). Although declining at that time to decide whether a plan sale can be shielded by §363(m), the Fifth Circuit has doubted whether §363 applies to a sale of property pursuant to a reorganization plan since "[t]here is a definite implication that [§363(b) and (c)] concern the trustee's authority during the administration of the estate and not at the final disposition of the property of the estate pursuant to a plan of reorganization." In re Texas Extrusion Corp., 844 F.2d 1142, 1165 (5th Cir. 1988).

Rather than following this Court's earlier approach to §363, the majority takes this Court down a path joined only by the Sixth Circuit. Lujan Claimants have found that only the Sixth Circuit has explicitly held that §363(m) applies to a plan sale.[5] In re Made in Detroit, Inc., 414 F.3d 576, 582-83 (6th Cir. 2005). However, that court failed to address §363's language which clearly distinguishes between §363(b) and (c) sales and plan sales and provides that §363(m) only applies to §363(b) or (c) sales. In contrast, Lujan Claimants have raised this textual argument which the

---

[5] In In re Fieldwood Energy LLC, the Fifth Circuit affirmed a district court's dismissal of an appeal of a plan sale as statutorily moot, but it did not specifically address whether §363(m) applies to plan sales. 93 F.4th 817, 821-25 (5th Cir. 2024).

concurrence held valid.

## II.   Dismissal of the appeal conflicts with the Supreme Court's decision in MOAC Mall.

In <u>MOAC Mall</u>, the Supreme Court held that §363(m) does not limit an appellate court's adjudicatory capacity, but that it "takes as a given the exercise of judicial power over any authorization under § 363(b) or § 363(c)."  598 U.S. at 299. The Supreme Court stated that, "given § 363(m)'s clear expectation that courts will exercise jurisdiction over a covered authorization, it is surely permissible to read its text as merely cloaking certain good-faith purchasers or lessees with a targeted protection of their newly acquired property interest, applicable even when an appellate court properly exercises jurisdiction."  <u>Id.</u> at 300. Instead of limiting judicial power, §363(m) is "a mere restriction on the effects of a valid exercise of that power when a party successfully appeals a covered authorization."  <u>Id.</u> at 303. And that constraint is "inapplicable where the sale … was made to a bad-faith purchaser … , or if the sale … is stayed pending appeal, or … if the court does something other than 'revers[e] or modif[y]' the authorization."  <u>Id.</u> at 299.

<u>MOAC Mall</u> means that §363(m) cannot be invoked to dismiss an appeal.  If there is Article III jurisdiction, appellate courts must hear the appeal on the merits and reverse, modify, or do something other than reverse or modify.  Nothing in §363(m) mandates that appellate courts first determine as a threshold issue whether effective relief can be granted without affecting the validity of the sale, before

11

hearing the appeal. Unlike the chicken-or-the-egg mystery, it is obvious which must come first—a successful reversal or modification of a covered authorization, followed by a "mere restriction on the effects of a valid exercise of that power."

In In re One2One Commc'ns, LLC, 805 F.3d 428 (3d Cir. 2015), Judge Krause expressed similar reasoning. In rejecting the argument that the Bankruptcy Code "express[es] a policy favoring the finality of bankruptcy decisions" through 11 U.S.C. §§ 363(m), 364(e), and 1127(b)," and that equitable mootness fills a gap in the Code created by the absence of a provision limiting appellate review of plan confirmation orders, Judge Krause stated: "By their terms, §§ 363(m) and 364(e) do not prevent an appellate court from *hearing* an appeal, or even from granting a particular remedy; they simply prevent the appellate court's remedy from affecting certain transactions." Id. at 443 (Krause, J., concurring) (emphasis in original).

The majority opinion dismissing the appeal clearly contravenes MOAC Mall. Rather than exercise its "unflagging" jurisdiction over the appeal of the Confirmation Order (which Lujan Claimants maintain is not a covered authorization) and decide whether to reverse, modify, or do something else, the majority first focuses on whether certain aspects of §363(m) apply—§363 sale, lack of stay, good faith purchaser, relief—and then dismisses the appeal when it concludes that certain relief requested by Lujan Claimants would affect the validity of the insurance policy buybacks. The majority fails to hear the appeal and then fails to turn to remedy only

12

after first hearing the appeal.  The majority's outright dismissal without hearing the appeal grossly exceeds §363(m)'s "mere restriction on the effects of a valid exercise of [jurisdiction over a covered authorization]" and is an abdication of Congress' "clear expectation that courts will exercise jurisdiction over a covered authorization."

If §363(m) applies, whether relief can be fashioned that does not affect the validity of the sale should be determined by lower courts.  See Cinicola, 248 F.3d at 128 (this Court remanding to district court the issue of whether the requested relief would affect the validity of the §363 transaction).  Limited relief is available, e.g., providing adequate compensation to Lujan Claimants for their interests in the policies and proceeds and re-classifying Lujan Claimants.  ECF 66 at 61-64, 74-75.

## III.  En banc review is necessary to address whether §363 can be used to allow into a reorganization plan and protect from appellate review unlawful provisions including nonconsensual third-party releases invalidated in Purdue.

The majority's dismissal of the appeal as statutorily moot sets a "dangerous transactional precedent," (Concurring Op. 10), providing a road map for plan proponents to protect from appellate review nonconsensual third-party releases invalidated in Purdue.  Under the majority's reasoning, merely authorizing a sale in a plan purportedly under §363(b) or (c) and claiming that unlawful plan provisions such as the nonconsensual third-party releases are integral to the sale are enough to meet certain requirements for §363(m) to apply.

13

The concurrence rightly concludes that the majority's approach invites "mischief" by plan proponents. (Concurring Op. 15.). "So long as a court authorizes an intra-plan sale under § 363, the other plan provisions are shielded from review, as they may have conceivably affected the sale price." (Id. at 9.)  As discussed earlier, this is contrary to the language of §363(m), which clearly indicates it does not apply to plan sales.

The majority wrongly suggests that its ruling is "narrow." (Op. 36.)  The majority's decision to extend §363(m)'s protection to local councils, chartered organizations, and nonchartered Roman Catholic Entities "flies in the face" of ICL Holding Co., where this Court stated that "while § 363(m) aims to make sales of estate property final and inject predictability into the sale process, we don't think it does so at all costs and certainly not for non-purchasers."  802 F.3d at 554.  As none of these nondebtors are parties to the sales, the majority erroneously expands §363(m) to bar review of Lujan Claimants' challenge to the nonconsensual release of their claims against these nondebtors.   Indeed, the majority's holding could subject almost any transaction to protection under §363(m).  As the concurrence argues eloquently:

> What happened here goes far beyond what § 363 contemplates.  Rather than merely protecting the purchaser's "newly acquired property interest," the majority shields from review the non-consensual third-party releases that the Supreme Court invalidated in Purdue.  This sets a dangerous transactional precedent, one that will result in Article III courts not having the capacity to review Confirmation Orders if the

14

parties agree to call key intra-plan transactions "sales." Indeed, today's decision relegates the Supreme Court's holding in Purdue to a mere plan-drafting guide

As the majority's decision revitalizes unlawful releases struck down in Purdue, rehearing en banc is essential to address this issue of exceptional importance.

## IV. The majority's finding of related-to jurisdiction over claims between nondebtors conflicts with Third Circuit precedent and is unsupported by the record.

In determining subject matter jurisdiction over Lujan Claimants' claims against nondebtors, the majority failed to apply the test set forth in Pacor, which is "the seminal test for determining 'related to' jurisdiction over third party claims." Combustion Eng'g, 391 F.3d at 226. Under the test, if a primary lawsuit between two nondebtors would have no effect on the debtor's estate and was at best a mere precursor to a second lawsuit asserting a potential third-party claim for indemnification against the debtor, then there is no related-to jurisdiction over the primary lawsuit. Id. Here, there is at most only the first lawsuit and no second lawsuit brought by a nondebtor against BSA for indemnification has accrued and, thus, there can be no related-to jurisdiction over Lujan Claimants' claims against nondebtors.

The majority erroneously found related-to jurisdiction based on the independent grounds of shared insurance and contractual indemnification. This

15

conflicts with <u>Combustion Eng'g</u>, where this Court noted that courts finding related-to jurisdiction over claims against nondebtors based in part on shared insurance policies have relied not only on extensive record findings regarding the terms and operation of the subject policies, but also on additional evidence of automatic liability against the debtor.  <u>Id.</u> at 232-33.   Here, there were no findings regarding the terms and operation of each of the policies and there is no evidence of automatic liability against BSA.  Even if there were automatic liability, there are no second lawsuits filed against BSA for indemnification.  Thus, the majority erred in finding that either shared insurance or contractual indemnification alone may be sufficient to establish related-to jurisdiction.

The record does not support the majority's finding of related-to jurisdiction based on shared insurance.  The table below shows the extent of BSA's sharing of insurance with nondebtors, which was only as to insurance policies bought by BSA ("BSA Insurance").

| Entity | Period of Shared BSA Insurance with BSA |
|---|---|
| Local Councils | 1976 to present (except Hartford 1976-1977) |
| Chartered Organizations (e.g., Archbishop of Agana) | 1976 to present (except Hartford 1976-1977) |
| Non-chartered Roman Catholic Entities (e.g., Capuchin Franciscans) | Never |

16

In fact, the majority found only that "BSA and the nondebtor, would-be defendants shared liability insurance coverage since at least 1976," (Op. 31), reflecting that BSA did not share its insurance with nondebtors prior to 1976.  There is no evidence that BSA ever shared insurance with non-chartered Roman Catholic Entities such as the Capuchin Franciscans, against whom all but 2 Lujan Claimants have scouting abuse claims.  Also, there is no evidence that BSA was insured under any separate insurance policies purchased by nondebtors.  Therefore, there can be no related-to jurisdiction over Lujan Claimants' claims against local councils and chartered organizations for abuse that occurred before 1976, no related-to jurisdiction over Lujan Claimants' claims against non-chartered Roman Catholic Entities, and no related-to jurisdiction over Lujan Claimants' claims against insurers that separately insured any nondebtors, based on shared insurance.

The record also does not support the majority's finding that BSA had non-contingent, automatic indemnity obligations.  The majority erroneously found related-to jurisdiction based on indemnity obligations between BSA and nondebtors that automatically result in indemnification liability against BSA.  (Op. 31-32.)  The majority did not address any of the numerous arguments raised by Lujan Claimants against BSA's automatic indemnification liability, such as the lack of any prepetition agreement by BSA to indemnify local councils, BSA's admission in its solicited Disclosure Statement openly denying indemnification liability as to chartered

organizations, BSA's active pursuit (through the filing of a proof of claim and amended proof of claim) for indemnification and contribution for child sexual abuse claims in Guam against bankrupt chartered organization Archbishop of Agana, BSA's history of settling scouting abuse claims in Guam without settling claims against the chartered organization, and the lack of any argument or evidence that BSA is automatically liable to indemnify non-chartered Roman Catholic Entities.

## JOINDER

Lujan Claimants join in the Petition for Rehearing of the D&V Claimants and incorporate it as if fully stated herein.

## CONCLUSION

For the foregoing reasons, the Court should grant rehearing en banc.

Dated:  May 27, 2025.

Respectfully submitted,

*/s/ Christopher D. Loizides*
Christopher D. Loizides
Loizides, P.A.
1225 North King Street, Suite 800
Wilmington, DE 19801
Phone: 302.654.0248
Email: Loizides@loizides.com

and

LUJAN & WOLFF LLP

*/s/ Delia Lujan Wolff*
Delia Lujan Wolff
Suite 300, DNA Bldg.
238 Archbishop Flores St.

18

Hagatna, Guam 96910
Phone: (671) 477-8064/5
Facsimile: (671) 477-5297
Email:  dslwolff@lawguam.com

*Attorneys for Lujan Claimants*

## COMBINED CERTIFICATIONS

I hereby certify the following:

1. At least one of the attorneys whose names appear on this petition is a member of the bar of this Court.

2. This petition complies with the type-volume requirements set forth in Federal Rule of Appellate Procedure 40(d)(3)(A) because the petition contains 3,829 words. The petition also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a) because it was prepared in 14-point Times New Roman font, a proportionally spaced typeface, using Microsoft Word.

3. On May 27, 2025, I electronically filed the foregoing petition with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

4. Pursuant to L.A.R. 40.1(a), no paper copies of this petition will be filed unless directed by the Clerk.

5. This document was scanned for viruses using Norton™ 360 Deluxe, and no virus was detected.

Dated:  May 27, 2025.                    Respectfully submitted,

_/s/ Christopher D. Loizides_
Christopher D. Loizides
Loizides, P.A.
1225 North King Street, Suite 800

20

Wilmington, DE 19801
Phone: 302.654.0248
Email: Loizides@loizides.com